IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE DEBTORS
TO REDACT CERTAIN PERSONALLY IDENTIFIABLE
INFORMATION, (II) APPROVING THE FORM AND MANNER OF
NOTIFYING CREDITORS OF COMMENCEMENT OF THESE CHAPTER 11 CASES
AND OTHER INFORMATION, AND (III) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than 5:00 p.m. (prevailing Central Time) on November 12, 2024.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on November 12, 2024, at 5:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's homepage. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of the Debtors (as defined below) in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

1

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this emergency motion (this "Motion"):[2]

### Relief Requested

1. By this Motion, and pursuant to sections 105(a), 107(c), and 521 of title 11 of the United States Code (the "Bankruptcy Code"), rules 1007 and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and section F of the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Procedures"), the Debtors seek entry of an order, substantially in the form annexed hereto (the "Order"), (a) authorizing the Debtors to redact personal identifying information from documents filed with the Court (as defined below) in these chapter 11 cases (including any Creditor Matrix, Schedule, or Statement (each as defined below)), (b) approving the form and manner of notifying creditors of the commencement of these chapter 11 cases and other information, and (c) granting related relief.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges,* General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). In addition, the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot

---

[2] The facts and circumstances supporting this Motion are set forth in the *Declaration of Timothy J. Dragelin as Chief Restructuring Officer and Chief Financial Officer of Wellpath Holdings, Inc. and Certain of its Affiliates and Subsidiaries in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed contemporaneously herewith and incorporated by reference herein. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

4.  Venue of these chapter 11 cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5.  Wellpath is the premier provider of localized, high quality, compassionate care to vulnerable patients in challenging clinical environments. Wellpath is the leading medical and mental health services provider in correctional facilities, inpatient and residential treatment facilities, forensic treatment facilities, and civil commitment centers. Headquartered in Nashville, Tennessee with operations in approximately 420 facilities across 39 states, Wellpath provides outsourced solutions to the correctional healthcare and behavioral healthcare industries. Wellpath offers an array of healthcare services to its federal, state, and local government partners, including on-site medical services, telehealth and mental health programs, and pharmacy management. Wellpath employs more than 13,000 people and serves nearly 200,000 patients daily.[3]

6.  On November 11, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.  Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

---

[3] Additional information about the Debtors' businesses and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the First Day Declaration.

Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no statutory committee has been appointed or designated.

## Basis for Relief

**I.  Redaction of Certain Confidential Information of Individuals is Warranted.**

8. Bankruptcy Local Rule 9037-1 acknowledges that "[c]ertain documents are routinely redacted to remove personal identifying information or other content that is not relevant to a decision by the Court," and, "[i]n those instances," provides that "(i) the document may be filed in redacted form only; (ii) no document should be filed that contains the redacted information; and (iii) the balance of this Rule 5003-1 [sic] does not apply." BLR 9037-1(b). As a result, the Debtors believe that they already have the authority to redact personal identifying information from documents filed with the Court in these chapter 11 cases. Nevertheless, out of an abundance of caution, the Debtors respectfully seek entry of an order authorizing the redaction of personal identifying information from any document filed or to be filed with the Court in these chapter 11 cases, so as to protect individuals and to prevent the Debtors from potentially violating applicable data privacy and protection laws or regulations.

**A.  Disclosure of Confidential Information May Result in Harm to Individuals**

9. Section 107(c) of the Bankruptcy Code enables a court to issue orders that protect parties from the potential harm that could result from disclosing personal identifying information:

> The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:

4

> A. Any means of identification (as defined in section 1028(d) of title 18 [of the United States Code]) contained in a paper filed, or tobe filed, in a case under [the Bankruptcy Code].
>
> B. Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(1). Title 18 of the United States Code defines "means of identification" as:

> any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, *including* any—
>
> (A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number.

18 U.S.C. § 1028(d)(7) (emphasis added).

10. While transparency is important to the judicial process, Congress recognized a counterbalancing interest in enacting section 107(c)(1) of the Bankruptcy Code: the need to protect the identities and privacy of individuals who have dealings with debtors. The language of both statutes cited above demonstrates Congress's desire for courts to have flexibility to protect individuals' identities. Section 107(c)(1)(B) of the Bankruptcy Code allows a bankruptcy court to shield "[o]ther information" apart from "means of identification," and the definition of "means of identification" is itself a non-exhaustive list of personal identifying information. *See* 2 Collier on Bankruptcy P 107.04 (16th 2023). Accordingly, although an individual creditor's home address is not explicitly enumerated as a "means of identification," it is nevertheless within the broad scope of section 107(c)(1)(B) of the Bankruptcy Code and should be protected to avoid risks of, among other things, identity theft, domestic violence, harassment, stalking, or phishing scams.[4] *See* Hr'g

---

[4] This risk in relation to section 107(c)(1) of the Bankruptcy Code is not speculative and has manifested in recent chapter 11 cases. For example, as described in the "creditor matrix motion" filed in *In re Charming Charlie Holdings Inc.*, No. 19-11534 (CSS) (Bankr. D. Del. Jul. 11, 2019) [Docket No. 4], the abusive former partner of a debtor's employee used the publicly accessible creditor and employee information filed in the case to track the employee at her new address, which had not been publicly available until then, forcing the employee to change addresses again. *See id.* In a more recent case, customers of a cryptocurrency company received phishing emails

Tr. at 37:25–38:5, *In re THG Holdings LLC*, No. 19-11689 (JTD) (Bankr. D. Del. Aug. 22, 2019) [Docket No. 180] ("I think [that the list in 18 U.S.C. § 1028(d) is] an inclusive list. It wouldn't seem to make much sense that I could order the names [of individuals] not to be disclosed, but [their] addresses had to be; that wouldn't make any sense to me.").

11. Courts in this district have not only granted the requested relief, but have also expounded on the importance of authorizing debtors to redact individual creditors' personal identifying information, including home addresses. Indeed, the Court recently overruled an objection to the redaction of individuals' personal information recognizing the need to be "overly protective" and stating that the Court was "simply not willing to put individuals' futures at risk when they come to a bankruptcy case in an involuntary way." H'rg Tr. at 33:19–35:24, *In re Nielsen & Bainbridge, LLC*, Case No. 23-90071 (DRJ) (Bankr. S.D. Tex. Feb. 9, 2023) [Docket No. 103].

12. In this case, the interest in public access to judicial records and papers is outweighed by the risk of identity theft to individuals and other natural persons, including individuals who are employees, directors, officers, or individual equity holders of the Debtors, whose personal identifying information would otherwise be disclosed absent the relief sought herein. *See In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733 (D. Del. 2018), *aff'd sub nom. In re A C & S Inc.*, 775 F. App'x 78 (3d Cir. 2019) (denying disclosure of personal identifying information where "the risks of misuse and harm to individuals would greatly outweigh any value [such personal identifying information] could possibly have"). There is minimal, if any, benefit to the public of publishing personal identifying information of such individuals. The public disclosure

---

from purported legal advisors of the debtors. *See In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Nov. 30, 2022) [Docket No. 1527].

of such information would create an undue risk of identity theft for the affected individuals, as well as open the door to other potential risks to such individuals' safety and welfare.

13. Recognizing the need for transparency, the Debtors propose to provide unredacted copies of any creditor matrix (the "Creditor Matrix"), schedule of assets or liabilities (the "Schedules"), statement of financial affairs (the "Statements"), or other document filed with the Court or to be filed with the Court in these chapter 11 cases and redacted pursuant to the Order, and limitations imposed by the Patient Information Motion (as defined below), to (a) the Court, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), and counsel to any statutory committee appointed in these chapter 11 cases and (b) any party in interest upon a request to the Debtors (email being sufficient) or to the Court that sets forth a reasonable basis for the request that is reasonably related to these chapter 11 cases. Furthermore, to the extent notice and/or service by mail (as opposed to email) is required or requested, the Debtors will instruct their proposed claims and noticing agent, Epiq Corporate Restructuring, LLC ("Epiq"), to serve individuals at their personal home addresses, ensuring that each individual will receive the same notices in these chapter 11 cases as all other creditors without the unnecessary public disclosure of their home address. Finally, nothing in the Order would (x) preclude a party in interest's right to file a motion requesting that the Court unseal information redacted in accordance with the Order or (y) waive or otherwise limit the service of any document upon, or the provision of any notice to, any individual whose personal identifying information was sealed or redacted in accordance with the Order.

14. Accordingly, the privacy concerns at issue here outweigh the interest in public access to judicial proceedings and support entry of the Order. The Debtors, therefore, respectfully request that the Court permit the Debtors to redact personal identifying information of any

individual or other natural person from any document filed or to be filed with the Court in these chapter 11 cases (including any Creditor Matrix, Schedule, or Statement), as described herein, with unredacted copies to be provided in accordance with the Order and the order approving the Patient Information Motion.

### B. Disclosure of Confidential Information May Violate Data Privacy and Protection Laws and Regulations

15. Data privacy and protection laws and regulations have been or are being enacted both in the United States and in several key international jurisdictions. In the United States, various state legislatures have enacted, and a number of other states are considering proposals for, comprehensive data privacy laws, including Texas. For example, on May 28, 2023, the Texas legislature passed the Texas Data Privacy and Security Act (the "TDPSA") that, upon the completion of certain procedural formalities, would become effective July 1, 2024, unless Governor Gregg Abbott vetoes it. If the TDPSA becomes law, it would be more widely applicable than the nine laws passed to date in other states by, among other things, its unique applicability standard. Once enacted, the TDPSA privacy requirements would apply to persons that (a) conduct business in Texas or produce products or services consumed by Texas residents, (b) process or engage in the sale of personal data, or (c) are not small businesses as defined by the United States Small Business Administration.

16. Similarly, the California Consumer Privacy Act (the "CCPA") provides data privacy rights for California residents, imposes operational requirements on covered companies, and levies civil penalties for violations. In addition to the CCPA, the California Privacy Rights Act (the "CPRA"), which took effect in January 2023, expands the rights granted under the CCPA, imposes additional notice and opt out-obligations on covered companies, and includes increased civil penalties for violations. The CCPA and the CPRA may apply to the Debtors given that certain

of the Debtors' operations and employees are located in California, and certain of the Debtors may process personal information of creditors as well as individual equity holders that are California residents. The Debtors may qualify as CCPA Entities because the Debtors conduct business in California and their annual gross revenue for 2023 exceeded $2,200,000,000.

17. The CPRA includes an affirmative obligation on covered companies to process personal information only as reasonably necessary and proportionate to achieve the purposes for which the personal information was collected or processed or for another disclosed purpose compatible with the context of the original collection. The Debtors respectfully submit that the disclosure of personal identifying information of individuals and other natural persons (including individual creditors) is unnecessary for the purpose of the relevant parties reviewing amounts owed to those individuals as part of these chapter 11 cases. Indeed, redaction would be a significantly less intrusive way to achieve this purpose and, consequently, disclosure of this information would risk violating the CPRA.

18. Moreover, as operators of hospitals, a large proportion of the Debtors' creditors are current and former patients. The Debtors propose to further protect the confidential information of the patients pursuant to specific procedures, as more fully described in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Implementation of Procedures to Maintain and Protect Confidential Health Information and (II) Granting Related Relief* (the "Patient Information Motion") filed contemporaneously herewith.[5]

19. As a result of the foregoing, out of an abundance of caution, the Debtors respectfully submit that it is appropriate to authorize the Debtors to redact from any paper filed or

---

[5] For the avoidance of doubt, notwithstanding the request to file a separate Patient List (as defined in the Patient Information Motion), the Debtors believe that the protections sought herein, if approved, would apply to the Patient List in addition to the relief requested therein.

to be filed with the Court in these chapter 11 cases the names, home and email addresses, and personal identifying information of any of the Debtors' individual creditors and equity security holders, to the extent applicable, to ensure that the Debtors are not exposed to potential civil liability and significant financial penalties. Absent the relief requested herein, the Debtors (a) may be in violation of applicable data privacy law and HIPAA, thereby exposing them to severe monetary penalties that could threaten the Debtors' operations during this sensitive stage of their efforts to maximize the value of their estates, (b) would unnecessarily render individuals more susceptible to identity theft, and (c) could jeopardize the safety of employees, contract workers, former employees, vendors, suppliers, and other individual creditors or individual equity holders who, unbeknownst to the Debtors, are survivors of domestic violence, harassment, or stalking by publishing their home and email addresses without any advance notice or opportunity to opt out or take protective measures. This risk is not merely speculative—in at least one recent chapter 11 case, the abusive former partner of a debtor's employee exploited the publicly accessible creditor and employee information filed in the chapter 11 case to track the employee to her new address, which had not been publicly available until then, forcing the employee to change addresses again for her safety.[6]

20.    The Debtors propose to provide an unredacted version of the Creditor Matrix and any other redacted applicable filings, subject to limitations imposed by the order approving the Patient Information Motion, to (a) this Court, (b) the U.S. Trustee, (c) Epiq, (d) counsel to any statutory committee appointed in these chapter 11 cases, and (e) any party in interest upon a request

---

[6]  The incident, which took place during the first *Charming Charlie* chapter 11 proceedings in 2017, is described in the "creditor matrix motion" filed in *In re Charming Charlie Holdings, Inc.*, Case No. 19-11534 (CSS) (Bankr. D. Del. Jul. 11, 2019) [ECF No. 4].

to the Debtors or to the Court that is reasonably related to these chapter 11 cases, subject to the restrictions of the CCPA and the CPA.

21. For these reasons, the Debtors respectfully submit that cause exists to authorize the Debtors, pursuant to section 107(c)(1) of the Bankruptcy Code, Bankruptcy Local Rule 9037-1(b), and in compliance with any applicable data privacy and protection laws and regulations, to redact from any document filed or to be filed with the Court in these chapter 11 cases (including any Creditor Matrix, Schedule, or Statement) the names, home and email addresses, and personal identifying information of (a) individual creditors, including the Debtors' employees, directors, and officers, as well as individual equity holders, (b) individuals who are customers, vendors (to the extent such vendors have registered business information that constitutes personal identifying information), or other commercial counterparties, (c) individuals where such information has been provided to, and is being processed by, an organization with an establishment located in any other jurisdiction that has data privacy and protection laws and regulations (and with respect to such information processed by an organization with an establishment located in such jurisdictions), and (d) individuals or other natural persons, with unredacted copies to be provided in accordance with the Order and any limitations imposed by the order approving the Patient Information Motion.

## II. The Proposed Manner and Form of Notices to Creditors is Appropriate.

### A. Service by Email to Creditors is Warranted.

22. Although the Bankruptcy Rules generally require notices to be served on creditors at their addresses, they give significant latitude to bankruptcy courts for modifying the general rule. *See* Fed. R. Bankr. P. 2002(m) and 9007. Bankruptcy courts have explicit authority to modify the manner in which notice is given. *See* Fed. R. Bankr. P. 2002(m). Accordingly, the Debtors

11

request authority to serve their creditors by email, where an email account is available to the Debtors.

23.     Not only is email service likely the most efficient and cost-effective manner by which service of all interested parties can be completed, it is also more likely to facilitate creditor responses. In addition, this method of service will help alleviate administrative burdens and costs on the Debtors' estates, given the exceptionally large number of patients treated by the Debtors who would need to receive service.

      **B.**    **Constructive Notice to Patients is Warranted.**

24.     Over the past five years, the Debtors provided care to approximately 6,500,000 incarcerated or detained patients across 41 states. In the ordinary course, the Debtors experience a high turnover rate in their patient population due to their patients' various lengths of incarceration or detention (ranging from overnight stays to long-term sentences). When the Debtors provide care, the patients reside at the facility in which they are incarcerated or detained and their files maintained by the Debtors reflect such residency. However, once a patient exits a facility, the Debtors no longer have access to such patient's address or contact information. Given the size and transient nature of the Debtors' patient population, (a) the Debtors do not have the current addresses or contact information for the numerous patients for whom the Debtors provided care but the patients are no longer incarcerated or detained at a facility and (b) providing individual notice of every filing in these chapter 11 cases to every current and former patient would be administratively burdensome to the Debtors' estates.

25.     While recognizing the importance of notifying creditors of the commencement of these chapter 11 cases, the Debtors propose to widely publish, as soon as practicable after entry of the Order, the Notice of Commencement (as defined below) in multiple national publications, in

local publications for regions in which the Debtors operate, and publications that are most likely to be circulated to the patient community, including *The New York Times*, *USA Today*, and *Prison Legal News*. In addition, the Debtors request authority, but not direction, to (a) distribute the Notice of Commencement to organizations that support the Debtors' patient population and (b) request that the organizations post and/or distribute the information to its members. Furthermore, the Debtors request authority, but not direction, to post a copy of the Notice of Commencement to its information bulletin board accessible to its patient populations within each respective facility. The Debtors believe that the foregoing efforts would ensure that current and former patients would receive constructive notice of the commencement of these chapter 11 cases. Finally, during the pendency of these chapter 11 cases, the Debtors will continue to provide certain information utilizing the foregoing constructive noticing efforts, thereby affording their current and former patients the greatest opportunity to receive notice.

26. The Debtors submit that implementation of the procedures requested herein are appropriate in these chapter 11 cases and are well within the Court's equitable powers under section 105(a) of the Bankruptcy Code.

III. **Service of the Notice of Commencement in the Manner Described Herein is Appropriate.**

27. Bankruptcy Rule 2002(a) provides, in relevant part, that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of: the meeting of creditors under § 341 or § 1104(b) of the Code." Fed. R. Bankr. P. 2002(a). Bankruptcy Rule 2002(f) similarly provides that notice of the order for relief shall be sent by mail to all creditors. *See* Fed. R. Bankr. P. 2002(f). Finally, the Complex Procedures require that "the lead debtor in a jointly administered Complex Case must . . . if a

13

Claims Agent has been appointed,[7] use a Court-approved modified version of the Official Form 309F1 (Notice of Chapter 11 Case) to reflect the procedures approved for the services provided by the Claims Agent." Complex Procedures § 14(b).

28. The Debtors propose to comply with the foregoing requirements by instructing Epiq to serve a notice of commencement, substantially in the form attached to the Order as **Exhibit 1** (the "Notice of Commencement"), on all parties listed on the Creditor Matrix advising them of (a) the commencement of these chapter 11 cases, (b) the meeting of creditors under section 341 of the Bankruptcy Code once such meeting has been scheduled by the U.S. Trustee, and (c) of certain other information. Service of the Notice of Commencement on the Creditor Matrix would not only avoid confusion among creditors, but would prevent the Debtors' estates from incurring unnecessary costs associated with serving multiple notices to the parties listed on the Creditor Matrix. As such, the Debtors submit that service of the Notice of Commencement via the proposed methods is warranted and would satisfy the aforementioned noticing requirements set forth in the Bankruptcy Rules and the Complex Procedures.

### IV.  The Relief Requested Herein May Be Authorized Under Section 105(a) of the Bankruptcy Code.

29. Finally, section 105(a) of the Bankruptcy Code confers the Court with broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets. *See In re Young*, 416 F. App'x 392, 398 (5th Cir. 2011)

---

[7] For the avoidance of doubt, the applicability of section 14(b) of the Complex Procedures depends on the Court's entry of orders granting the (a) *Debtors' Emergency Motion For Entry of an Order (I) Directing Joint Administration of these Chapter 11 Cases and (II) Granting Related Relief* and (b) *Debtors' Emergency Ex Parte Application For Entry of an Order Authorizing the Employment and Retention of Epiq Corporate Restructuring, LLC as Claims, Noticing, and Solicitation Agent*, each filed contemporaneously herewith.

(recognizing that "[s]ection 105(a) of Title 11 permits the bankruptcy court to exercise broad authority"); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105 of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings") (citing *U.S. v. Energy Res. Co.*, 495 U.S. 545, 549 (1990)); *In re Nixon*, 404 F. App'x 575, 578 (3d Cir. 2010) ("It is well settled that the court's power under § 105(a) is broad.") (citation omitted); *In re Trevino*, 599 B.R. 526, 542–43 (Bankr. S.D. Tex. 2019) (noting that the bankruptcy court has "broad authority" under section 105(a) of the Bankruptcy Code); *In re Padilla*, 379 B.R. 643, 667 (Bankr. S.D. Tex. 2007) ("Section 105(a) gives bankruptcy courts broad authority to take actions necessary and appropriate for administering and enforcing the Bankruptcy Code and . . . 'authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code.'") (citations omitted).

30. Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interests of the Debtors' estates and stakeholders. Denying this relief may cause (a) the Debtors to improperly or illegally disclose personal identifying information, which may subject them to severe monetary penalties, to the detriment of the Debtors' estates and economic stakeholders, (b) individuals to be more easily susceptible to identity theft and cybercrime, (c) individuals who are, unbeknownst to the Debtors, survivors of harassment, stalking, or other forms of violence—or who are being sought for any number of other nefarious reasons—to face danger to their and their family's personal, physical, and mental safety, security, and wellbeing, and (d) a needless waste the Debtors' time and resources to the detriment of the Debtors' estates, creditors, and other stakeholders. Accordingly, the Debtors respectfully request that the Court enter the Order granting the relief requested herein.

**Emergency Consideration**

31. Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003. Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fed. R. Bankr. P. 6003. As set forth in this Motion and the First Day Declaration, the Debtors believe that an orderly transition into chapter 11 is critical to the viability of the Debtors' businesses, operations, and estates and that any delay in granting the relief requested herein could cause immediate and irreparable harm. Failure to receive the requested relief during the first 21 days of these chapter 11 cases could imperil the Debtors' restructuring and cause immediate and irreparable harm. Accordingly, the Debtors submit that the relief requested herein satisfies the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

**Reservation of Rights**

32. Nothing contained herein or any actions taken pursuant to the relief requested in this Motion is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is

16

an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  Likewise, if the Court grants the relief sought herein, any payment or transfer made pursuant to the Court's order is not intended, and should not be construed as, an admission as to the amount, priority, character, or validity of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

33.     Notice of this Motion will be provided to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders; (d) counsel to the Ad Hoc Group; (e) counsel to the Prepetition First Lien Administrative Agent; (f) counsel to the Prepetition Second Lien Administrative Agent; (g) the Office of the United States Attorney for the Southern District of Texas; (h) the state attorneys general for states in which the Debtors conduct business; (j) the Internal Revenue Service; (i) the Securities and Exchange Commission; and (j) any party identified in section E of the Procedures for Complex Cases in the Southern District of Texas (collectively, the "Notice Parties").  A copy of this Motion and the Order approving it will also be made available on the Debtors' case information website located at https://dm.epiq11.com/Wellpath.  Based on

the urgency of the circumstances surrounding this Motion and the nature of the relief requested, the Debtors respectfully submit that no other or further notice is required.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Dated: November 12, 2024<br>Dallas, Texas | */s/ Marcus A. Helt*<br>Marcus A. Helt (Texas Bar #24052187)<br>MCDERMOTT WILL & EMERY LLP<br>2501 N. Harwood Street, Suite 1900<br>Dallas, Texas 75201-1664<br>Telephone:   (214) 295-8000<br>Facsimile:    (972) 232-3098<br>Email:          mhelt@mwe.com<br><br>-and-<br><br>Felicia Gerber Perlman (*pro hac vice* admission pending)<br>Bradley Thomas Giordano (*pro hac vice* admission pending)<br>Jake Jumbeck (*pro hac vice* admission pending)<br>Carole Wurzelbacher (*pro hac vice* admission pending)<br>Carmen Dingman (*pro hac vice* admission pending)<br>MCDERMOTT WILL & EMERY LLP<br>444 West Lake Street, Suite 4000<br>Chicago, Illinois 60606-0029<br>Telephone:   (312) 372-2000<br>Facsimile:    (312) 984-7700<br>Email:          fperlman@mwe.com<br>                    bgiordano@mwe.com<br>                    jjumbeck@mwe.com<br>                    cwurzelbacher@mwe.com<br>                    cdingman@mwe.com<br>-and-<br><br>Steven Z. Szanzer (*pro hac vice* admission pending)<br>MCDERMOTT WILL & EMERY LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Telephone:   (212) 547-5400<br>Facsimile:    (212) 547-5444<br>Email:          sszanzer@mwe.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and accurate to the best of my knowledge, information, and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ Marcus A. Helt
Marcus A. Helt

**Certificate of Service**

I certify that, on November 12, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Marcus A. Helt
Marcus A. Helt