**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
THE DEBTORS TO MAINTAIN AND ADMINISTER THEIR
EXISTING CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO AND (II) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than 5:00 p.m. (prevailing Central Time) on November 12, 2024.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on November 12, 2024, at 5:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's homepage. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1]  A complete list of the Debtors (as defined below) in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this emergency motion (this "Motion"):[2]

## Relief Requested

1.      By this Motion, and pursuant to section 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek entry of interim and final orders, substantially in the forms annexed hereto (the "Interim Order" and "Final Order"), (a) authorizing, but not directing, the Debtors, in their sole discretion, to maintain, continue, administer, renew, replace, implement new, and terminate any and all Customer Programs (as defined below) and honor and fulfil the prepetition obligations related thereto,  (b) authorizing the applicable banks and financial institutions to receive, process, honor, and pay all checks or wire transfers used by the Debtors to satisfy the foregoing, and (c) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges,* General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  In addition, the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot

---

[2]     The facts and circumstances supporting this Motion are set forth in the *Declaration of Timothy J. Dragelin as Chief Restructuring Officer and Chief Financial Officer of Wellpath Holdings, Inc. and Certain of its Affiliates and Subsidiaries in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed contemporaneously herewith and incorporated by reference herein.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

4. Venue of these chapter 11 cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5. Wellpath is the premier provider of localized, high quality, compassionate care to vulnerable patients in challenging clinical environments. Wellpath is the leading medical and mental health services provider in correctional facilities, inpatient and residential treatment facilities, forensic treatment facilities, and civil commitment centers.  Headquartered in Nashville, Tennessee with operations in approximately 420 facilities across 39 states, Wellpath provides outsourced solutions to the correctional healthcare and behavioral healthcare industries.  Wellpath offers an array of healthcare services to its federal, state, and local government partners, including on-site medical services, telehealth and mental health programs, and pharmacy management. Wellpath employs more than 14,000 people and serves nearly 200,000 patients daily.[3]

6. On November 11, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

---

[3]     Additional information about the Debtors' businesses and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the First Day Declaration.

Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no statutory committee has been appointed or designated.

### The Debtors' Customer Programs[4]

8.     The Debtors are a leading medical and mental health services provider in correctional facilities, inpatient and residential treatment facilities, forensic treatment facilities, and civil commitment centers.  The Debtors' businesses are comprised of three divisions that provide compassionate and necessary care to vulnerable patients.  The Debtors' first division services local jails and other detention centers, the second division provides care to state and federal prisons, and the third division operates inpatient and residential treatment facilities.  The Debtors' three divisions share a common goal:  to provide high-quality, compassionate medical and mental healthcare services to those who need it most.

9.     The Debtors' customers generally comprise of county jails, community facilities, state and federal prisons, as well as patients in inpatient and resident treatment facilities.  In order to provide high-quality medical and mental health services to the Debtors' patients, the Debtors have provided certain reimbursement and accommodations to both their customers and patients (such programs, as described below, collectively, the "Customer Programs").[5]

---

[4]   Although this Motion is intended to be comprehensive, the Debtors may have inadvertently omitted one or more of the Customer Programs.  The Debtors request relief with respect to all of the Customer Programs regardless of whether every such Customer Program is specifically identified herein.

[5]   As described in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Honor and Incur Obligations to Professional Corporations and (B) Obtain New Professional Corporation Contracts, (II) Extending Statutory Protections to Professional Corporations, and (III) Granting Related Relief* (the "Professional Corporation Motion") filed contemporaneously herewith, the Debtors are required to provide certain Customer Programs pursuant to certain applicable PC Management Services Agreements (as defined in the Professional Corporation Motion).  The Debtors estimate that, as of the Petition Date, they owe a *de minimis* amount on account of the Customer Programs under the PC Management Services Agreement (collectively, the "PC Customer Programs").  By this Motion, the Debtors also request authority to (a) pay and honor, in their discretion, the prepetition obligations on account of the PC Customer Programs in the ordinary course of business and (b) continue honoring the PC Customer Programs in the ordinary course of business on a post-petition basis.

10.     The Customer Programs promote customer satisfaction and inure to the goodwill of the Debtors' businesses and the value of their brand.  Maintaining the goodwill of their customers is critical to the Debtors' ongoing operations in these chapter 11 cases and is necessary to maximize value for the benefit of the Debtors' stakeholders.

**I.      Staffing Reimbursement Program.**

11.     In the ordinary course of business, the Debtors' customers may require the Debtors to meet certain staffing levels based on the customer's staffing needs at the time of execution of such customer's contract (the "Staffing Level Requirements").  The Debtors must issue reimbursements, or are subject to offsets or recoupments for reimbursement, for, among other things, overpayments made by customers relating to the Staffing Level Requirements (the "Staffing Reimbursement Program").  The Debtors reconcile and pay the Staffing Reimbursement Program on a monthly basis.  The obligations associated with the Staffing Reimbursement Program are generally netted against future accounts receivable; however, from time-to-time, the Debtors pay certain of the obligations in cash.

12.     At times, customer staffing level needs fluctuate based on patient population and other unforeseen circumstances.  Additionally, the Debtors, at times, may face staffing shortages based on labor market demands and other factors outside of the Debtors controls.  Accordingly, from time-to-time, the Debtors incur amounts under the Staffing Reimbursement Program.

13.     The Debtors estimate that, as of the Petition Date, approximately $4,700,000 in prepetition obligations remain due and owing under the Staffing Reimbursement Programs, of which approximately $3,920,000 will become due and owing during the first 30 days of these chapter 11 cases.  The Debtors seek authority to (a) pay and honor, in their discretion, the prepetition obligations on account of the Staffing Reimbursement Programs in the ordinary course

of business and (b) continue honoring the Staffing Reimbursement Program in the ordinary course of business on a post-petition basis.

## II.    Insurance Refunds.

14.    In the ordinary course of business, the Debtors receive payments from healthcare insurers for services provided to patients.  Under applicable regulations,[6] as well as the Debtors' contracts with Medicare, the Debtors must refund any overpayments received from a healthcare insurer or Medicaid on account of services rendered to patients (such refunds, the "Insurance Refunds").  Overpayments resulting in Insurance Refunds derive from, among other things, (a) duplicate payments remitted for the same service, (b) overpayment by an insurer, (c) changes in original charges billed, thereby reducing the amount owed for the service, and (d) payments made by an insurer for services rendered after termination of coverage.

15.    The Debtors estimate that, as of the Petition Date, approximately $80,000 remains outstanding on account of prepetition obligations related to Insurance Refunds, of which approximately $59,000 will be due and owing during the first 30 days of these chapter 11 cases. The Debtors seek authority to (a) pay and honor, in their discretion, the prepetition obligations on account of Insurance Refunds in the ordinary course of business and (b) continue honoring and fulfilling such obligations in the ordinary course of business on a post-petition basis.

## III.    Patient Refunds.

16.    In the ordinary course of business, the Debtors operate treatment facilities that may bill patients for medical services provided to patients.  After a patient pays the Debtors for medical services, a "credit balance" may occur when the payments and/or adjustments in total exceed the

---

[6]    A final rule promulgated by the Centers for Medicare & Medicaid Services, an agency within the Department of Health and Human Services, requires providers and suppliers receiving funds under the Medicare program to report and return overpayments by the later of (a) the date that is 60 days after the date an overpayment is identified and (b) the due date of any corresponding cost report, if applicable.  *See* 42 CFR §§ 401 and 402.

gross charges on a patient's account.  Once this credit balance has been identified and validated, the Debtors issue a credit or refund to the patient (the "Patient Refunds").  These Insurance Refunds derive from, among other things, (a) processing duplicate payments, (b) errors in the amount of a patient's bill, (c) the patient pays an initial out-of-pocket estimate for their treatment plan at certain of the Debtors' medical facilities, but services rendered under such plan are less than estimated, and (d) a change of insurance coverage for the applicable patient.

17.     The Debtors believe that they do not presently owe any prepetition amounts on account of Patient Refunds; however, out of an abundance of caution, the Debtors seek authority to continue (a) issuing and paying Patient Refunds resulting from prepetition transactions and (b) honoring and fulfilling such obligations in the ordinary course of business on a post-petition basis.

**IV.     MCIP Rebates.**

18.     In the ordinary course of business, the Debtors enter into customer contracts with California local governments to provide inpatient hospital services, including inpatient psychiatric services, and physician services to certain inmates in correctional facilities that participate in Medi-Cal County Inmate Program ("MCIP").[7]  If a customer participates in MCIP, either the customer or California's Department of Health Care Services, may satisfy the Debtors' claim for the patient's inpatient services.  At times, Medicare, Medicaid, and other insurance providers may also provide the Debtors proceeds for these inpatient services, which then require the Debtors to rebate a corresponding amount to either the customer or California's Department of Health Care

---

[7]     MCIP is a voluntary program that provides California counties that entered into an agreement with California's Department of Health Care Services set amounts needed to satisfy the respective county's responsibility to reimburse California's Department of Health Care Services for the nonfederal share of MCIP service costs incurred by California's Department of Health Care Services.  *See* Cal. Welf. & Inst. Code §§ 14053.7, 14053.8.

Services to prevent the Debtors from recouping twice for the services provided to the patient (the "MCIP Rebates").

19.     The Debtors estimate that, as of the Petition Date, approximately $1,100,000 remains outstanding on account of prepetition obligations relating to MCIP Rebates, of which approximately $900,000 will be due and owing during the first 30 days of these chapter 11 cases. The Debtors seek authority to (a) pay, in their discretion, the prepetition obligations on account of MCIP Rebates in the ordinary course of business and (b) continue honoring and fulfilling such obligations in the ordinary course of business on a post-petition basis.

**V.     Government Contract Rebates.**

20.     The Debtors' customer contracts include contracts with state and local governments to provide services to jails and other detention centers (the "Government Customer Contracts"). The Government Customer Contracts often require the Debtors' customers to pay a monthly fee for the Debtors' professional services, as well as revenue caps that may result in the Debtors issuing a rebate to the customer (the "Government Contract Rebates").  The Government Contract Rebates vary depending on the Government Customer Contract and are comprised of three categories:  (a)  rebates for any amounts under a revenue cap; (b) a shared-risk rebate program where any amounts under the revenue cap are split between the Debtors and their customer; and (c) a tiered rebate program that provides a sliding scale based on aggregate yearly expenses, which may result in the Debtors issuing a rebate.  The Debtors reconcile and pay the Government Contract Rebates on a monthly, quarterly, or yearly basis depending on the Government Customer Contract.  The obligations associated with the Government Contract Rebates are generally netted against future accounts receivable; however, from time-to-time, the Debtors pay certain of the obligations in cash.

21.     The Debtors estimate that, as of the Petition Date, approximately $7,100,000 remains outstanding on account of prepetition obligations related to Government Contract Rebates, of which approximately $5,900,000 will be due and owing during the first 30 days of these chapter 11 cases.  The Debtors seek authority to (a) pay, in their discretion, in the prepetition obligations on account of Government Contract Rebates in the ordinary course of business and (b) continue honoring and fulfilling such obligations in the ordinary course of business on a post-petition basis.

**VI.     Discharge Plan Program.**

22.     In the ordinary course of business, the Debtors work closely with customers on behalf of their patients to provide patients with a discharge plan to facilitate a smooth transition into society and reduce the need for future mental health intervention (the "Discharge Plan Program").  The Discharge Plan Program complies with certain local and state government guidelines and statutes, as well as various of the Debtors' contractual obligations.  The discharge plans may include, among other things, providing patients (a) a 30-day supply of medications, (b) first month's rent payment, (c) a small amount of spending money, and (d) an emergency notification card with a picture ID in a wallet, when deemed necessary based on patient history. The Discharge Plan Program is critical to supporting the Debtors' patients' successful transition into society.

23.     The Debtors estimate that, as of the Petition Date, approximately $50,000 in prepetition obligations remain due and owing under the Discharge Plan Program, of which approximately $50,000 will become due and owing during the first 30 days of these chapter 11 cases.  The Debtors seek authority to (a) pay and honor, in their discretion, the prepetition obligations on account of the Discharge Plan Program in the ordinary course of business and (b) continue honoring the Discharge Plan Program in the ordinary course of business on a post-petition basis.

**Basis for Relief**

24.     If the Debtors are unable to continue and honor the Customer Programs, the Debtors risk providing high-quality medical and mental health services to the Debtors' patients. The Debtors operate in a highly competitive and highly regulated sector that requires the Debtors to maintain certain Customer Programs. A significant portion of the value of the Debtors' businesses is, and will be, dependent upon the Debtors providing exceptional and reliable medical and mental health services to their patients. As such, the Debtors' failure to honor the Customer Programs and fulfil the obligations thereunder would result in an irreparable loss of customer support and confidence, thereby undermining the Debtors' efforts to maximize value for their estates for the benefit of all stakeholders during these chapter 11 cases. The relief requested in this Motion will help minimize any disruption in the Debtors' business operations, thereby preserving the value of the Debtors' businesses and estates. For the foregoing reasons, the Debtors seek authority to honor and fulfil prepetition and post-petition obligations relating to the Customer Programs in the ordinary course of business.

**I.     Honoring and Fulfilling the Customer Programs Constitutes a Sound Exercise of the Debtors' Business Judgment and is Necessary for the Preservation of the Debtors' Estates.**

25.     The Debtors believe that the payment of the Customer Programs would be in the ordinary course of their businesses because (a) they are commonplace and routine in the Debtors' industry and (b) the Debtors consistently and regularly fulfill such obligations. As a result, the Debtors believe that fulfilling their obligations relating to the Customer Programs is warranted under section 363(c) of the Bankruptcy Code, which authorizes a debtor to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1). Nevertheless, out of an abundance of caution, the Debtors seek entry of the Interim Order and Final Order authorizing the Debtors to fulfill their

10

obligations relating to the Customer Programs to the extent that such authorization is required under section 363(b) of the Bankruptcy Code.

26.     Section 363(b)(1) of the Bankruptcy Code empowers a court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor.  *See In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business").  Courts emphasize that the business judgment standard is not an onerous standard; rather it "is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011); *In re Perez*, 339 B.R. 385, 399 n. 14 (Bankr. S.D. Tex. 2006), *aff'd sub nom. Perez v. Peake*, 373 B.R. 468 (S.D. Tex. 2007) ("Section 363(b) should be interpreted liberally to provide a bankruptcy judge with substantial freedom to tailor his orders to meet differing circumstances and to avoid shackling the judge with unnecessary rigid rules." (cleaned up)).  As such, courts exhibit "[g]reat judicial deference . . . to [a debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005).  Indeed, as long as a transaction "appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to [enter into the transaction] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the Bankruptcy Code." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (cleaned up).

27.     The Debtors submit that, to the extent that the use of property of the estate is implicated here, the relief requested in this Motion represents a sound exercise of the Debtors'

business judgment, is necessary to avoid immediate and irreparable harm, and is justified under section 363 of the Bankruptcy Code. As noted above, the failure to fulfill the obligations relating to the Customer Programs could have a material adverse impact on the day-to-day operations of the Debtors' businesses, cause an irreparable loss of customer support and confidence, and impair the value of the Debtors' estates. If the Debtors are prohibited from honoring and maintaining the Customer Programs consistent with their past business practices, customers and patients may lose confidence in the Debtors' ability to provide high-quality medical and mental health services to patients. Ultimately, the damage from refusing to honor the Customer Programs far exceeds the costs associated with honoring prepetition obligations and continuing these practices. The relief requested herein will protect the Debtors' goodwill during this critical time and enhance the Debtors' ability to maximize value for their estates.

28. Finally, the Debtors submit that honoring and fulfilling the Customer Programs is necessary and appropriate and, therefore, may be authorized by this Court under section 105(a) of the Bankruptcy Code, pursuant to what is referred to interchangeably as the "doctrine of necessity" or "necessity of payment rule." The doctrine of necessity functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable powers to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (applying the rule where the "Debtors' businesses [would be] seriously damaged by the delay required to satisfy the court that a particular creditor should be paid its prepetition claim outside of a confirmed plan"); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (noting that a court may authorize payment of prepetition claims when payment is essential to continued operation of the debtor, such as where there is a "possibility that the creditor will employ an immediate economic sanction, failing such

payment"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for the payment of pre-petition claims" under the doctrine of necessity).

29.     The United States Supreme Court first articulated the doctrine of necessity 140 years ago, in *Miltenberger v. Logansport Ry. Co.*, in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership.  *See Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 311–12 (1882); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989). This doctrine has become an accepted component of modern bankruptcy jurisprudence, and courts' application of it largely adheres to the Supreme Court's reasoning in *Miltenberger*.  *See Ionosphere Clubs.*, 98 B.R. at 175–76; *In re Equalnet Commun. Corp.*, 258 B.R. 368, 369 (Bankr. S.D. Tex. 2000) (noting that "courts in this district" have applied this doctrine "primarily out of common sense and the presence of a legal or factual inevitability of payment"); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity").

30.     The Court's power to utilize the "doctrine of necessity" in these chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); *see also U.S. v. Energy Res. Co.*, 495 U.S. 545, 549 (1990) (section 105(a) of the Bankruptcy Code is "consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships").  "The debtor-in-possession's role as the equivalent of a trustee under § 1107(a) and its duty to protect the going-concern value of an operating business in a Chapter 11 provides the bridge that makes application

to the Doctrine of Necessity necessary or appropriate to carry out the provisions of the Bankruptcy Code." *In re CEI Roofing, Inc.*, 315 B.R. 50, 56 (Bankr. N.D. Tex. 2004) (cleaned up).

31.     The doctrine of necessity is frequently invoked early in a reorganization, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.  For instance, courts have acknowledged "the principle that a bankruptcy court may exercise its equity powers under § 105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" *In re StructureLite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (citations omitted).  In some situations, a "per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, the Court is empowered to grant the relief requested herein.

32.     Here, the Debtors' ability to honor and fulfill the obligations relating to the Customer Programs in a timely manner is critical to the ongoing operation of the Debtors' businesses, as discussed above, and therefore necessary to the Debtors' successful restructuring. The Debtors believe that any prepetition amounts that they will pay in respect of Customer Programs would be small relative to the size of the Debtors' estates.  As noted above, the failure to satisfy the Customer Programs could have a material adverse impact on the day-to-day operations of the Debtors' businesses and cause irreparable loss of customer support and confidence, thus potentially substantially diminishing the value of the Debtors' estates.  If the Debtors are prohibited from honoring and fulfilling the obligations relating to Customer Programs consistent with their past business practices, customers and patients may lose confidence in the Debtors' ability to provide high-quality medical and mental health services.  Ultimately, the

damage from refusing to honor the Customer Programs far exceeds the costs associated with honoring prepetition obligations and continuing these practices. The relief requested herein will protect the Debtors' goodwill during this critical time and enhance the Debtors' ability to maximize value for their estates. For the Debtors to satisfy what would be relatively small prepetition amounts due as obligations relating to Customer Programs to avoid such outcomes is in the best interests of the Debtors, their estates, and all of the Debtors' stakeholders and other parties in interest. Accordingly, honoring and fulfilling the obligations relating to the Customer Programs falls within the sound business judgment of the Debtors and would benefit, rather than prejudice, the Debtors' creditors by preserving the property of the Debtors' estates. The Debtors, therefore, submit that the relief requested herein is appropriate under the doctrine of necessity and section 105(a) of the Bankruptcy Code.

33.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interests of the Debtors' estates and stakeholders. Absent this relief, the value of the Debtors' estates would suffer, possibly precipitously. Consequently, the Debtors' stakeholders would benefit if the requested relief is granted.

**II.     The Court Should Authorize Applicable Banks and Financial Institutions to Honor and Process Related Checks and Transfers.**

34.     The Debtors also request that the Court authorize all applicable banks and financial institutions to (a) receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date (provided that funds are available in the Debtors' accounts to cover the checks and fund transfers), and (b) rely on the Debtors' designation of any particular check as approved by the Interim Order or Final Order.

35.     The Debtors believe that they have sufficient liquidity to pay the amounts set forth in this Motion in the ordinary course of business and have implemented controls to ensure that prepetition claims will not be paid out except as authorized by the Court.  The Debtors, therefore, submit that the payment-processing procedures described in this Motion are appropriate.

## Emergency Consideration

36.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003.  Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fed. R. Bankr. P. 6003.  As set forth in this Motion and the First Day Declaration, the Debtors believe that an orderly transition into chapter 11 is critical to the viability of the Debtors' businesses, operations, and estates and that any delay in granting the relief requested herein could cause immediate and irreparable harm.  The Debtors also believe that they may need to make upcoming payments on account of the Customer Programs during the first 21 days of these chapter 11 cases.  Failure to receive the requested relief during the first 21 days of these chapter 11 cases could imperil the Debtors' restructuring and cause immediate and irreparable harm.  Accordingly, the Debtors submit that the relief requested herein satisfies the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

**Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)**

37.     To implement successfully the relief sought herein, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances.  The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates and economic stakeholders.  Accordingly, the Debtors respectfully submit that ample cause exists to justify the (a) finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and (b) waiving of the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

**Reservation of Rights**

38.     Nothing contained herein or any actions taken pursuant to the relief requested in this Motion is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code,

(f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  The Debtors also expressly reserve their rights to contest any claims related to the Customer Programs under applicable bankruptcy and non-bankruptcy law.  Likewise, if the Court grants the relief sought herein, any payment or transfer made pursuant to the Court's order is not intended, and should not be construed as, an admission as to the amount, priority, character, or validity of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **Notice**

39.    Notice of this Motion will be provided to the following parties or their respective counsel:   (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders; (d) counsel to the Ad Hoc Group; (e) counsel to the Prepetition First Lien Administrative Agent; (f) counsel to the Prepetition Second Lien Administrative Agent; (g) the Office of the United States Attorney for the Southern District of Texas; (h) the state attorneys general for states in which the Debtors conduct business; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; and (k) any party identified in section E of the *Procedures for Complex Cases in the Southern District of Texas* (collectively, the "Notice Parties").  A copy of this Motion and the orders approving it will also be made available on

the Debtors' case information website located at https://dm.epiq11.com/Wellpath.  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested, the Debtors respectfully submit that no other or further notice is required.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order, substantially in the forms annexed hereto, granting the relief requested herein and such other and further relief as the Court deems appropriate under the circumstances.

Dated:  November 12, 2024
Dallas, Texas

/s/ Marcus A. Helt

Marcus A. Helt (Texas Bar #24052187)
MCDERMOTT WILL & EMERY LLP
2501 N. Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone:      (214) 295-8000
Facsimile:      (972) 232-3098
Email:            mhelt@mwe.com

-and-

Felicia Gerber Perlman (*pro hac vice* admission pending)
Bradley Thomas Giordano (*pro hac vice* admission pending)
Jake Jumbeck (*pro hac vice* admission pending)
Carole Wurzelbacher (*pro hac vice* admission pending)
Carmen Dingman (*pro hac vice* admission pending)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone:      (312) 372-2000
Facsimile:      (312) 984-7700
Email:            fperlman@mwe.com
                     bgiordano@mwe.com
                     jjumbeck@mwe.com
                     cwurzelbacher@mwe.com
                     cdingman@mwe.com

-and-

Steven Z. Szanzer (*pro hac vice* admission pending)
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone:      (212) 547-5400
Facsimile:      (212) 547-5444
Email:            sszanzer@mwe.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and accurate to the best of my knowledge, information, and belief.  This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Marcus A. Helt*
Marcus A. Helt

## **Certificate of Service**

I certify that, on November 12, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s Marcus A. Helt*
Marcus A. Helt