## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) HONOR AND INCUR OBLIGATIONS TO PROFESSIONAL CORPORATIONS AND (B) OBTAIN NEW PROFESSIONAL CORPORATION CONTRACTS, (II) EXTENDING STATUTORY PROTECTIONS TO PROFESSIONAL CORPORATIONS, AND (III) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than 5:00 p.m. (prevailing Central Time) on November 12, 2024.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on November 12, 2024, at 5:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's homepage. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1]   A complete list of the Debtors (as defined below) in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this emergency motion (this "Motion"):[2]

## Relief Requested

1.      By this Motion, and pursuant to sections 105(a), 362, 363 and 525 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek entry of an order, substantially in the form annexed hereto (the "Order"), (a) authorizing, but not directing, the Debtors to (i) honor, pay, or otherwise satisfy any and all prepetition and post-petition obligations incurred in relation to the Professional Corporations (as defined below), including obligations pursuant to the Existing Professional Corporation Contracts (as defined below) and (ii) enter into and honor, pay, or otherwise satisfy any and all prepetition and post-petition obligations related to attracting, seeking, entering into, and maintaining New Professional Corporation Contracts (as defined below), (b) extending the (i) automatic stay under section 362 of the Bankruptcy Code and (ii) Anti-discrimination Provisions (as defined below), to the Professional Corporations on a limited basis, (c) authorizing the applicable banks and financial institutions to receive, process, honor, and pay all checks or wire transfers used by the Debtors to pay and satisfy the foregoing, and (d) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order*

---

[2]   The facts and circumstances supporting this Motion are set forth in the *Declaration of Timothy J. Dragelin as Chief Restructuring Officer and Chief Financial Officer of Wellpath Holdings, Inc. and Certain of its Affiliates and Subsidiaries in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed contemporaneously herewith and incorporated by reference herein.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

*of Reference to Bankruptcy Judges,* General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  In addition, the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

4.      Venue of these chapter 11 cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**<u>Background</u>**

5.      Wellpath is the premier provider of localized, high quality, compassionate care to vulnerable patients in challenging clinical environments. Wellpath is the leading medical and mental health services provider in correctional facilities, inpatient and residential treatment facilities, forensic treatment facilities, and civil commitment centers.  Headquartered in Nashville, Tennessee with operations in approximately 420 facilities across 39 states, Wellpath provides outsourced solutions to the correctional healthcare and behavioral healthcare industries.  Wellpath offers an array of healthcare services to its federal, state, and local government partners, including on-site medical services, telehealth and mental health programs, and pharmacy management. Wellpath employs more than 13,000 people and serves nearly 200,000 patients daily.[3]

6.      On November 11, 2024 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

---

[3]    Additional information about the Debtors' businesses and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the First Day Declaration.

7.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no statutory committee has been appointed or designated.

### The Professional Corporations

8.      A material portion of the Debtors' revenue is derived from providing management and administrative services to various affiliated entities that, in turn, provide medical services to patients.  Because the Debtors operate nationwide in the United States, they are subject to a variety of state laws regulating entities that administratively support medical providers, practice medicine, or both.   To comply with the variety of laws regulating their businesses and contractual arrangements, the Debtors utilize a structure commonly known in the industry as a "friendly professional corporation" structure, pursuant to which the Debtors contract with and provide various management and administrative services to professional entities (collectively, the "Professional Corporations") that are owned exclusively by licensed physicians affiliated with the Debtors (collectively, the "PC Physicians") in accordance with applicable requirements.  This structure provides the Debtors with certain control over the non-clinical business management and administrative functions of the Professional Corporations, while allowing the PC Physicians to focus on providing high- quality medical services to patients rather than managing the non-clinical aspects of the Professional Corporations.  In these arrangements, the PC Physicians are either employed directly by the Professional Corporations or are separately employed directly by the Debtors pursuant to typical employment agreements for non-clinical services.

4

9.     As of the Petition Date, the Debtors provide management and administrative services to 18 Professional Corporations.  The clinicians working at the Professional Corporations provide general practice clinical services, psychiatry care, and dental care, among other clinical services, to patients.   In 2023, Professional Corporations in the aggregate generated over $674,000,000 in revenue for the benefit of the Debtors.

## The Professional Corporation Contracts

10.     The Debtors' relationships with the Professional Corporations are contractual in nature.  In most cases, Debtor entities provide management and other services in accordance with management services agreements entered into with the Professional Corporations (the "PC Management Services Agreements").  The management services provided by the Debtors pursuant to the PC Management Services Agreements typically include, but are not limited to, the following:  managing provider enrollment in government and commercial payor programs; managing billings and collections; granting licenses allowing the Professional Corporations to use the Debtors' computer software and hardware; arranging for the purchase of supplies; ordering medical equipment; hiring non-clinical and administrative personnel; protecting confidential information; assisting with licensing and accreditation; and supporting the implementation of policies and procedures, accounting and budgeting, contract negotiations, general legal services and litigation needs, tax support, marketing and advertising needs, facility and fixture maintenance, quality assurance and compliance, and other day-to-day administrative needs  (such services, collectively, the "PC Management Services").

11.     In addition to the PC Management Services Agreements, there are several other contracts that govern the relationships between the Debtors, the PC Physicians, and the Professional Corporations (collectively with the PC Management Services Agreements, the "Professional Corporation Contracts"), as applicable, including the following:

- **Lease Agreements**.  Certain Professional Corporations are parties to real property leases that may contain or be accompanied by guarantees with third party landlords.  A Debtor entity may guarantee a Professional Corporation's lease payments pursuant to a real property lease or a lease guarantee (collectively, the "PC Lease Guarantees"); and

- **Stock Transfer Agreements**.  The Debtors and certain PC Physicians are parties to agreements (the "Stock Transfer Agreements") that restrict the transfer of a PC Physician's stock in a Professional Corporation, thereby ensuring a streamlined transition of ownership and the compliance with state professional entity requirements in the event of certain transfer events (*e.g.,* death and disability).  These restrictions in the Stock Transfer Agreements are intended to promote continuity of care for the patients and the continuation of administrative services by the Debtors.

### The Debtors' Obligations Under the Professional Corporation Contracts

12.     The Debtors have various ongoing obligations and incur certain costs under the Professional Corporation Contracts.  For instance, the Debtors maintain general liability insurance for liabilities arising from the Debtors' obligations under the PC Management Services Agreements (the "Insurance Coverage").

13.     The Debtors may also be required, pursuant to the PC Management Services Agreements, to pay income taxes ("Income Tax Payments") on behalf of the Professional Corporation.  The Debtors file consolidated federal taxes with certain Professional Corporations, while the Professional Corporations file individually (or jointly with other Professional Corporations if there are shared owners) for state tax purposes.  Additionally, the Debtors may collect a Professional Corporation's accounts receivable, including from governmental and commercial payors, as permitted, and deposit such collections into such Professional Corporation's bank account (such services, the "Collection Services").

14.     Under the Stock Transfer Agreements, the Debtors have authority to ensure that the Professional Corporation is duly licensed and qualified, which may require the Debtors to incur certain legal and operational costs (collectively, the "Licensing Costs," and, together with the PC Management Services, the Insurance Coverage, the Income Tax Payments, the Collection Services,

and all other costs arising from the Professional Corporation Contracts, the "PC Operating Costs").

15.     In 2023, the Debtors remitted approximately $720,000,000 to the PC Physicians and vendors as part of the PC Operating Costs pursuant to the Existing Professional Corporation Contracts.  The Debtors believe that, as of the Petition Date, no prepetition amounts are due and payable under the Existing Professional Corporation Contracts.  The Debtors are seeking authority to pay the PC Operating Costs pursuant to the Cash Management Motion[4], the Taxes Motion[5], the Insurance Motion[6], and the Wages Motion[7], as applicable.  For the avoidance of doubt, to the extent not authorized by relief requested in those motions, the Debtors seek authority to (a) pay accrued and outstanding PC Operating Costs, regardless of whether asserted prior to, on, or after the Petition Date, (b) continue paying all PC Operating Costs as they become due and in the ordinary course of business on a post-petition basis, and (c) continue providing the applicable PC Lease Guarantees.

16.     In addition to the PC Operating Costs, at times the Debtors also pay, pursuant to the PC Management Services Agreements, the Professional Corporation's legal expenses and indemnify the Professional Corporation for certain losses, including, to the extent applicable,

---

[4]    *See Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts, and (B) Maintain Existing Business Forms and Books and Records, (II) Waiving Deposit Requirements, (III) Allowing Intercompany Transactions and Affording Administrative Expense Priority to Post-Petition Intercompany Claims, and (IV) Granting Related Relief,* filed contemporaneously herewith.

[5]    *See Debtors' Emergency Motion for Entry of an Order (I) Authorizing Debtors to Pay Certain Prepetition Taxes and Fees and (II) Granting Related Relief* (the "Taxes Motion"), filed contemporaneously herewith.

[6]    *See Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Insurance Coverage Entered into Prepetition and Satisfy Prepetition Obligations Related Thereto, (B) Honor and Renew the Premium Financing Agreements Entered into Prepetition and Satisfy Obligations Related Thereto, (C) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies, (D) Continue to Pay Brokerage Fees, and (E) Maintain the Surety Bond Program and Letters Of Credit, and (II) Granting Related Relief* (the "Insurance Motion"), filed contemporaneously herewith.

[7]    *See Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, (B) Continue Employee Benefits Programs, and (II) Authorizing Current and Former Employees to Proceed with Outstanding Workers' Compensation Claims, and (III) Granting Related Relief* (the "Wages Motion"), filed contemporaneously herewith.

losses caused by the Debtors' provision of the management services (the "PC Indemnity and Legal Expense Obligations").  Accordingly, the Debtors seek the authority, but not direction, to (a) pay prepetition any outstanding prepetition PC Indemnity and Legal Expense Obligations in the ordinary course of business, (b) continue to honor in the ordinary course of business any PC Indemnity and Legal Expense Obligations relating to the Existing Professional Corporation Contracts, and (c) honor any PC Indemnity and Legal Expense Obligations relating to new Professional Corporation Contracts entered into during these chapter 11 cases (the "New Professional Corporation Contracts").

17.    The Debtors' ability to continue to provide management and administrative services to Professional Corporations will constitute a material source of the Debtors' operating revenues during these chapter 11 cases.  As of the Petition Date, the Debtors provide management services to 18 Professional Corporations and are party to Professional Corporation Contracts under which they currently perform services or performance is set to commence in the future (collectively, the "Existing Professional Corporation Contracts").

18.    The Debtors' ability to (a) maintain, in their discretion, certain of the Existing Professional Corporation Contracts in the ordinary course and potentially execute extension options thereto and (b) attract, seek, enter into, and secure New Professional Corporation Contracts is important to the success of the Debtors' ongoing operations.  The inability to provide management services per desired existing relationships, or develop new management services relationships with Professional Corporations, could greatly inhibit the Debtors' ability to support the Professional Corporations in providing high-quality clinical care to patients and fulfill their contractual obligations under PC Management Services Agreements.  The expiration, default, termination, or cancellation of certain of the Existing Professional Corporation Contracts, or the failure to execute New Professional Corporation Contracts, may negatively impact the Professional

Corporations' ability to provide high-quality patient care.  Relatedly, the Debtors' obligations to indemnify the Professional Corporations and remit certain payments on behalf of the Professional Corporations in accordance with the Existing Professional Corporation Contracts helps facilitate the Debtors' ongoing business of providing medical care.  Even short-term interruptions to the Debtors' performance under certain of the Existing Professional Corporation Contracts could threaten the Debtors' ability to continue operating their businesses, to the detriment of all of their stakeholders and existing patients.  Further, the harm to the Debtors' reputation that would result from an inability to perform under the Existing Professional Corporation Contracts would likely restrict the Debtors' ability to obtain New Professional Corporation Contracts, thereby threatening the Debtors' ability to generate revenue and effectuate a successful restructuring.

## **Basis for Relief**

I.    **Honoring and Paying Prepetition and Post-petition Obligations in Connection with Existing Professional Corporation Contracts and Attracting and Entering into New Professional Corporation Contracts Constitute a Sound Exercise of the Debtors' Business Judgment and is Necessary for the Preservation of the Debtors' Estates.**

19.    The Debtors believe that their activities and obligations in connection with the Professional Corporations—related to both (a) honoring and paying prepetition and post-petition obligations in connection with Existing Professional Corporation Contracts and (b) attracting and entering into New Professional Corporation Contracts —would be in the ordinary course of their businesses because (y) they are commonplace and routine in the Debtors' industry and (z) the Debtors have regularly honored and paid such obligations, including the PC Operating Costs.  As a result, the Debtors believe that paying such amounts is warranted under section 363(c) of the Bankruptcy Code, which authorizes a debtor to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1).  Nevertheless, out of an abundance of caution, the Debtors seek entry of an order authorizing the Debtors to honor and pay any prepetition and post-petition obligations in

connection with Existing Professional Corporation Contracts, and attracting and entering into New Professional Corporation Contracts, to the extent that such authorization is required under section 363(b) of the Bankruptcy Code.

20.     Section 363(b)(1) of the Bankruptcy Code empowers a court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business"). Courts emphasize that the business judgment standard is not an onerous standard; rather it "is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011); *In re Perez*, 339 B.R. 385, 399 n. 14 (Bankr. S.D. Tex. 2006), *aff'd sub nom. Perez v. Peake*, 373 B.R. 468 (S.D. Tex. 2007) ("Section 363(b) should be interpreted liberally to provide a bankruptcy judge with substantial freedom to tailor his orders to meet differing circumstances and to avoid shackling the judge with unnecessary rigid rules." (cleaned up)). As such, courts exhibit "[g]reat judicial deference . . . to [a debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005). Indeed, as long as a transaction "appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to [enter into the transaction] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the Bankruptcy Code." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (cleaned up).

21.     The Debtors submit that, to the extent that the use of property of the estate is implicated here, the relief requested in this Motion represents a sound exercise of the Debtors'

business judgment, is necessary to avoid immediate and irreparable harm, and is justified under section 363 of the Bankruptcy Code.   As noted above, the Debtors have various ongoing obligations arising under the Professional Corporation Contracts, and failure to continue to satisfy such obligations risks disruption of a material source of the Debtors' operating revenues during these chapter 11 cases.   The Debtors' ability to (a) maintain, in their discretion, Existing Professional Corporation Contracts in the ordinary course and potentially execute extension options thereto and (b) attract, seek, enter into, and secure New Professional Corporation Contracts is critical to the Debtors' long-term success and viability.

22.     Furthermore, the Debtors submit that honoring and paying prepetition and post-petition obligations in connection with the Existing Professional Corporation Contracts, and to the extent relevant, any New Professional Corporation Contracts, is necessary and appropriate and, therefore, may be authorized by this Court under section 105(a) of the Bankruptcy Code, pursuant to what is referred to interchangeably as the "doctrine of necessity" or "necessity of payment rule." The doctrine of necessity functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable powers to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.   *See In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (applying the rule where the "Debtors' businesses [would be] seriously damaged by the delay required to satisfy the court that a particular creditor should be paid its prepetition claim outside of a confirmed plan"); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (noting that a court may authorize payment of prepetition claims when payment is essential to continued operation of the debtor, such as where there is a "possibility that the creditor will employ an immediate economic sanction, failing such payment"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for the payment of pre-petition claims" under the doctrine of necessity).

23.     The United States Supreme Court first articulated the doctrine of necessity 140 years ago, in *Miltenberger v. Logansport Ry. Co.*, in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership.  *See Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 311–12 (1882); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989). This doctrine has become an accepted component of modern bankruptcy jurisprudence, and courts' application of it largely adheres to the Supreme Court's reasoning in *Miltenberger*.  *See Ionosphere Clubs.*, 98 B.R. at 175–76; *In re Equalnet Commun. Corp.*, 258 B.R. 368, 369 (Bankr. S.D. Tex. 2000) (noting that "courts in this district" have applied this doctrine "primarily out of common sense and the presence of a legal or factual inevitability of payment"); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity").

24.     The Court's power to utilize the "doctrine of necessity" in these chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); *see also U.S. v. Energy Res. Co.*, 495 U.S. 545, 549 (1990) (section 105(a) of the Bankruptcy Code is "consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships").   "The debtor-in-possession's role as the equivalent of a trustee under § 1107(a) and its duty to protect the going-concern value of an operating business in a Chapter 11 provides the bridge that makes application to the Doctrine of Necessity necessary or appropriate to carry out the provisions of the Bankruptcy Code."  *In re CEI Roofing, Inc.*, 315 B.R. 50, 56 (Bankr. N.D. Tex. 2004) (cleaned up).

25.     The doctrine of necessity is frequently invoked early in a reorganization, particularly in connection with those chapter 11 sections that relate to payment of prepetition

claims. For instance, courts have acknowledged "the principle that a bankruptcy court may exercise its equity powers under § 105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" *In re StructureLite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (citations omitted). In some situations, a "per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932. Accordingly, pursuant to section 105(a) of the Bankruptcy Code, the Court is empowered to grant the relief requested herein.

26. Here, the Debtors' ability to maintain, in their discretion, certain of the Existing Professional Corporation Contracts and secure New Professional Corporation Contracts in a timely manner is an important part of the Debtors' ongoing operation of their businesses, which could be negatively impacted under certain circumstances if the relationships with certain PC Physicians and Professional Corporations are adversely affected by these chapter 11 cases. Many of these relationships comprise an important part of the Debtors' businesses, and interruptions to the Debtors' ability to continue meeting their obligations to such parties in the ordinary course may hinder the Debtors' success in these chapter 11 cases. Furthermore, the interruption, expiration, termination, or cancellation of certain of the Existing Professional Corporation Contracts, or the failure to execute New Professional Corporation Contracts, may hamper the Debtors' ability to generate revenue and effectuate a successful restructuring. Accordingly, the Debtors' ability to perform under desired Existing Professional Corporation Contracts falls within the sound business judgment of the Debtors and would benefit, rather than prejudice, the Debtors' creditors by preserving the property of the Debtors' estates. The Debtors, therefore, submit that the relief requested herein is appropriate under the doctrine of necessity and section 105(a) of the Bankruptcy Code.

27.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interests of the Debtors' estates and stakeholders.  Absent this relief, the value of the Debtors' estates would suffer, possibly precipitously.  Consequently, the Debtors' stakeholders would benefit if the requested relief is granted.

## II.     The Automatic Stay and Anti-Discrimination Provisions Should be Extended to the Professional Corporations Pursuant to Section 105 of the Bankruptcy Code.

28.     Pursuant to section 362 of the Bankruptcy Code, the automatic stay enjoins all persons from, among other things, taking any action to obtain possession of property of the estate or to exercise control over property of the estate.  *See* 11 U.S.C. § 362(a)(3).   Though the automatic stay usually only applies to the debtors, the Fifth Circuit has recognized that "an exception to this general rule does exist, and a bankruptcy court may invoke § 362 to stay proceedings against non-bankrupt co-defendants where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'"  *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).   Courts have also extended the automatic stay under section 362 of the Bankruptcy Code to non-debtors through the equitable powers of section 105 of the Bankruptcy.  *See A.H. Robins Co.*, 788 F.2d at 1003.

29.     The Fifth Circuit has also recognized that extending the automatic stay is appropriate when the non-debtor co-defendants are indemnified by the debtor.  *See Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001).   Furthermore, the automatic stay can be extended when "actions against non-debtors . . . involve property of the estate or would have a significant impact on the debtor's ability to reorganize."  *Carway v. Progressive Cnty. Mut. Ins. Co.*, 183 B.R. 769, 775 (S.D. Tex. 1995) (citing *In re Kelton Motors Inc.*, 121 B.R. 166, 193 (Bankr. D. Vt.

1990)).    Such "party's interest must be so intertwined that it is considered to be the real party

in interest."  *Id.* (quoting *A.H. Robins Co.*, 788 F.2d at 1001).

30.    Additionally, section 525 of the Bankruptcy Code prohibits and enjoins any and all

governmental units from, among other things, (a) denying, revoking, suspending, or refusing to

renew any permit, license, charter, franchise, or other similar grant to any Debtor, (b) placing

conditions upon such a grant to any Debtor, or (c) discriminating against any Debtor with respect

to such a grant, solely because the Debtor is a debtor under the Bankruptcy Code, may have been

insolvent prior to the Petition Date, is insolvent during the pendency of these chapter 11 cases, or

has not paid a dischargeable debt (collectively, the "Anti-Discrimination Provisions").

31.    The Debtors seek to extend the automatic stay and Anti-Discrimination

Provisions to the Professional Corporations on a limited basis solely with respect to actions

against the Professional Corporations that may be triggered under the Professional Corporation

Contracts or the Professional Corporations' organizational documents.    As discussed above,

the Debtors maintain an interest in the Professional Corporations, and the Professional Corporation

Contracts the Professional Corporations' organizational documents constitute executory contracts

subject to section 365 of the Bankruptcy Code.    Creditor or governmental interference with the

functioning of the Professional Corporations would, thus, implicate the property of the Debtors'

estates.    Furthermore, the Professional Corporations compose a significant part of the Debtors'

business, as the Debtors rely on the revenue stream pursuant to the Debtors' ownership interests in

the Professional Corporations.    The ability of the Professional Corporations to operate normally

without the threat of creditor intrusion is critical to the reorganization efforts of the Debtors and

any  limitations on the Professional Corporations' ordinary course operations would have an

outsized impact on the property of the Debtors' estates and the Debtors' ability to reorganize.

32.     The Debtors also seek this relief due to the indemnification obligations owed by the Debtors to certain Professional Corporations under the applicable Professional Corporation Contracts.  The Debtors both owe formal PC Indemnity and Legal Expense Obligations to certain of the Professional Corporations and also frequently defend and settle certain disputes arising from the PC Management Services Agreements in accordance with their business judgment.   Such indemnification obligations effectively render the Debtors the primary defendant in these disputes.  Thus, a judgment against the Professional Corporation essentially represents a judgment against the Debtors.     Accordingly, extending the automatic stay in this limited circumstance is appropriate in light of the Debtors' indemnification obligations to the Professional Corporations.

### III.   The Court Should Authorize Applicable Banks and Financial Institutions to Honor and Process Related Checks and Transfers.

33.     The Debtors also request that the Court authorize all applicable banks and financial institutions to (a) receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date (provided that funds are available in the Debtors' accounts to cover the checks and fund transfers), and (b) rely on the Debtors' designation of any particular check as approved by the Order.

34.     The Debtors believe that they have sufficient liquidity to pay the amounts set forth in this Motion in the ordinary course of business and have implemented controls to ensure that prepetition claims will not be paid out except as authorized by the Court.  The Debtors, therefore, submit that the payment-processing procedures described in this Motion are appropriate.

<u>**Emergency Consideration**</u>

35.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003.  Bankruptcy Rule 6003 provides

that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fed. R. Bankr. P. 6003. As set forth in this Motion and the First Day Declaration, the Debtors believe that an orderly transition into chapter 11 is critical to the viability of the Debtors' businesses, operations, and estates and that any delay in granting the relief requested herein could cause immediate and irreparable harm. The Debtors also believe that they may need to make upcoming payments on account of obligations under Professional Corporation Contracts during the first 21 days of these chapter 11 cases. Failure to receive the requested relief during the first 21 days of these chapter 11 cases could imperil the Debtors' restructuring and cause immediate and irreparable harm. Accordingly, the Debtors submit that the relief requested herein satisfies the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

## Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

36. To implement successfully the relief sought herein, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances. The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates and economic stakeholders. Accordingly, the Debtors respectfully submit that ample cause exists

17

to justify the (a) finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and (b) waiving of the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## **<u>Reservation of Rights</u>**

37.     Nothing contained herein or any actions taken pursuant to the relief requested in this Motion is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease (including any Professional Corporation Contract) pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  The Debtors also expressly reserve their rights to contest any claims related to any Professional Corporation Contract under applicable bankruptcy and non-bankruptcy law.  Likewise, if the Court grants the relief sought herein, any payment or transfer made pursuant to the Court's order is not intended, and should not be construed as, an admission as to the amount, priority, character, or

validity of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

38.     Notice of this Motion will be provided to the following parties or their respective counsel:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders; (d) counsel to the Ad Hoc Group; (e) counsel to the Prepetition First Lien Administrative Agent; (f) counsel to the Prepetition Second Lien Administrative Agent; (g) the Office of the United States Attorney for the Southern District of Texas; (h) the state attorneys general for states in which the Debtors conduct business; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; and (k) any party identified in section E of the *Procedures for Complex Cases in the Southern District of Texas* (collectively, the "Notice Parties").  A copy of this Motion and the Order approving it will also be made available on the Debtors' case information website located at https://dm.epiq11.com/Wellpath.  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested, the Debtors respectfully submit that no other or further notice is required.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as the Court deems appropriate under the circumstances.

Dated:  November 12, 2024
Dallas, Texas

*/s/ Marcus A. Helt*
Marcus A. Helt (Texas Bar #24052187)
MCDERMOTT WILL & EMERY LLP
2501 N. Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone:      (214) 295-8000
Facsimile:      (972) 232-3098
Email:            mhelt@mwe.com

-and-

Felicia Gerber Perlman (*pro hac vice* admission pending)
Bradley Thomas Giordano (*pro hac vice* admission pending)
Jake Jumbeck (*pro hac vice* admission pending)
Carole Wurzelbacher (*pro hac vice* admission pending)
Carmen Dingman (*pro hac vice* admission pending)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone:      (312) 372-2000
Facsimile:      (312) 984-7700
Email:            fperlman@mwe.com
                       bgiordano@mwe.com
                       jjumbeck@mwe.com
                       cwurzelbacher@mwe.com
                       cdingman@mwe.com

-and-

Steven Z. Szanzer (*pro hac vice* admission pending)
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone:      (212) 547-5400
Facsimile:      (212) 547-5444
Email:            sszanzer@mwe.com


*Proposed Counsel to the Debtors and Debtors in Possession*

## **Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and accurate to the best of my knowledge, information, and belief.  This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Marcus A. Helt*
Marcus A. Helt

## **Certificate of Service**

I certify that, on November 12, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Marcus A. Helt*
Marcus A. Helt