IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS TO ENFORCE THE AUTOMATIC STAY OR IN THE ALTERNATIVE EXTEND THE AUTOMATIC STAY TO NON-DEBTOR DEFENDANTS**

> **Emergency relief has been requested. Relief is requested not later than 5:00 p.m. (prevailing Central Time) on November 12, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on November 12, 2024, at 5:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's homepage. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of the Debtors (as defined below) in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

1

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):[2]

### Preliminary Statement

1. As of the Petition Date, certain of the Debtors were defendants in numerous lawsuits stemming from the Debtors' business operations. Although the Debtors are named in all of these lawsuits (collectively, the "Lawsuits"), and undisputably stayed under the Bankruptcy Code, many of the Lawsuits also name non-Debtors, including (a) certain Professional Corporations and their respective PC Physicians (each as defined in the PC Motion)[3], (b) the directors and officers of certain of the Debtors' non-Debtor affiliates (collectively, the "D&Os"), and (c) the Debtors' consultant and private equity sponsor, H.I.G. Capital, LLC ("HIG" and, collectively, with the Professional Corporations, the PC Physicians, and the D&O's, the "Non-Debtor Defendants"). As of the Petition Date, there are more than 1,500 claims and Lawsuits outstanding against the Debtors and the Non-Debtor Defendants, the vast majority of which involve issues concerning the quality of medical care provided to incarcerated individuals. Many of these Lawsuits are active, have hearings scheduled within the next few weeks, and require timely deliverables from the Debtors within the near future unless the Court enforces or otherwise

---

[2] The facts and circumstances supporting this Motion are set forth in the *Declaration of Timothy J. Dragelin as Chief Restructuring Officer and Chief Financial Officer of Wellpath Holdings, Inc. and Certain of its Affiliates and Subsidiaries in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed contemporaneously herewith and incorporated by reference herein. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3] The *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Honor and Incur Obligations to Professional Corporations and (B) Obtain New Professional Corporation Contracts, (II) Extending Statutory Protections to Professional Corporations, and (III) Granting Related Relief* (the "PC Motion") filed contemporaneously herewith contains additional background on the Debtors' relationship with the Professional Corporations and the Debtors' contractual obligations with respect to the Professional Corporations' operations. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the PC Motion.

extends the Automatic Stay (as defined below) to cover both the Debtors and the Non-Debtor Defendants in the Lawsuits.

2. These Lawsuits, especially the ones involving the quality of medical care, assert, among other things, derivative theories of liability, including generalized alter ego and similar claims, which, effectively treat such Lawsuits against any of the Non-Debtor Defendants as a direct inquiry into the actions of the Debtors themselves. The Debtors' ability to conduct these chapter 11 cases in an efficient, timely, and ultimately successful manner is dependent on their ability to focus on the various transactions contemplated by the RSA, including the sale of all of the Debtors' assets in accordance with the proposed bidding procedures filed with the Court (as defined below).[4] The Debtors are concerned that the plaintiffs in these Lawsuits will take the position that the automatic stay (the "<u>Automatic Stay</u>") under section 362 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") does not apply to the Non-Debtor Defendants. By this Motion, the Debtors seek an order enforcing the Automatic Stay or, in the alternative, extending the Automatic Stay to the Non-Debtor Defendants named in the Lawsuits, pursuant to section 362(a) of the Bankruptcy Code, until a chapter 11 plan can be confirmed.

3. The Debtors are currently in the infancy of these chapter 11 cases, where they are working to implement an orderly transition into chapter 11 and set the foundation to market and sell substantially all of their assets, or otherwise reorganize, in accordance with the terms and conditions of the RSA. This work requires the utmost focus of all parties contributing to the

---

[4] *See Debtors' <u>Emergency</u> Motion for Entry of Orders (I)(A) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Entry Into a Stalking Horse Purchase Agreement for the Recovery Solutions Assets, (C) Authorizing the Recovery Solutions Expense Reimbursement, (D) Authorizing the Potential Selection of Stalking Horse Bidders for the Remaining Assets and Approving Related Remaining Asset(s) Bid Protections, (E) Establishing Related Dates and Deadlines, (F) Approving the Form and Manner of Notice Thereof, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* filed contemporaneously herewith.

Debtors' operations, and any distractions to litigate the various Lawsuits (which focus on the Debtors' actions and, as a result, would necessitate the Debtors' participation) would distract the Debtors' management, employees, and already limited in-house legal team from crucial restructuring tasks, deplete the Debtors' scarce resources, and hinder the Debtors' ability to maximize value pursuant to the transactions contemplated by the RSA, all to the detriment of all parties in interest in these chapter 11 cases.

4. As detailed in the PC Motion, the Debtors, pursuant to certain PC Management Services Agreements with the Professional Corporations, indemnify the Professional Corporations and the PC Physicians for losses caused in conjunction with the Professional Corporations' operations (including patient care provided by the PC Physicians) and frequently defend and settle related disputes, actions, and lawsuits, and reimburse for costs related thereto. Accordingly, any costs, expenses, or losses incurred by the Professional Corporations, or the PC Physicians would actually be borne by the Debtors' estates. Similarly, the Debtors owe indemnification obligations to HIG under its professional services agreement and transaction services agreement (together, the "HIG Management Agreements"), and the Debtors' organization documents afford the D&Os standard indemnification protections. As such, any costs, expenses, or losses incurred by HIG or the D&Os would be reimbursable by the Debtors' estates. In addition, a number of the Lawsuits against the Debtors and Non-Debtor Defendants name HIG as a defendant under derivative general alter-ego theory of liability or other similar theories, despite HIG having no involvement in the conduct that allegedly gave rise to the plaintiffs' alleged injuries–other than being the Debtors' consultant and private equity sponsor –which first requires, at a minimum, a liability finding against the Debtors before any liability can be found with a Non-Debtor Defendant. Thus, for all practical purposes, the plaintiffs' claims against the Non-Debtor

Defendants are essentially claims against the Debtors.  As a result, allowing the Lawsuits to proceed would necessitate the direct involvement of the Debtors, their management, their personnel intimately involved in the Debtors' operations, and their already limited in-house legal team, which would undoubtably diminish the Debtors' ability to focus on these chapter 11 cases in such a pivotal time period.  Furthermore, most of the discovery adduced to date has come from the Debtors and the Professional Corporations.  Indeed, if the Lawsuits are allowed to continue or proceed, of which there are more than 1,500 current claims and suits, they would require substantial time commitments from the Debtors' key personnel and would saddle the Debtors' estates with significant costs, both of which are detrimental to the Debtors' estates and parties in interest.

5. Under black letter law, as the Court has recognized, the Automatic Stay bars continued prosecution of actions that would ultimately require recovery from the Debtors and, as such, the Debtors believe that the foregoing circumstances warrant the enforcement or, in the alternative, extension of the Automatic Stay.  As the Fifth Circuit has recognized, extension of the Automatic Stay is appropriate when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against a third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003).  Clearly, a Lawsuit alleging liability based on alter ego or other similar theories meets this standard.  *See Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir. 1987) (stating that alter ego remedies are available when there is such an identity of interest between the parties such that all separateness between the parties has ceased).  As described further below, courts routinely extend the Automatic Stay to non-debtor third-party co-defendants under this test where, as here, continued litigation would

cause the estates to further expend funds on account of an indemnity obligation (an issue that posed substantial costs for the Debtors prepetition), divert management's and in-house counsel's attention and resources from the transactions contemplated by the RSA (including the marketing and sale process for substantially all of the Debtors' assets and formulating a chapter 11 plan), and expose the Debtors to the risk of collateral estoppel.

6. By contrast, any prejudice to the plaintiffs in continuing the stay of their Lawsuits would be minimal. In accordance with the terms and conditions set forth in the RSA (including the case milestones), the Debtors expect to propose a chapter 11 plan in the coming months, with a confirmation hearing to be held in the first quarter of 2025. *See In re Cleveland Integrity Services, Inc.*, Case No. 23-90052 (CML) (Bankr. S.D. Tex. Mar. 7, 2023) [Docket No. 144] Pgs. 77-84 (extending the automatic stay on an interim basis to non-debtors indemnified by the debtors to allow the debtors to focus on the ongoing sale process.).

## Relief Requested

7. By this Motion, and pursuant to section 362(a) of the Bankruptcy Code, the Debtors seek entry of interim and final orders, substantially in the forms annexed hereto (the "Interim Order" and "Final Order"), enforcing the Automatic Stay or in the alternative extending the Automatic Stay to the Non-Debtor Defendants solely in their capacities as defendants in the Lawsuits until consummation of a chapter 11 plan in these chapter 11 cases.

## Jurisdiction and Venue

8. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).

9. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). In addition, the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

10. Venue of these chapter 11 cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

11. Wellpath is the premier provider of localized, high quality, compassionate care to vulnerable patients in challenging clinical environments. Wellpath is the leading medical and mental health services provider in correctional facilities, inpatient and residential treatment facilities, forensic treatment facilities, and civil commitment centers. Headquartered in Nashville, Tennessee with operations in approximately 420 facilities across 39 states, Wellpath provides outsourced solutions to the correctional healthcare and behavioral healthcare industries. Wellpath offers an array of healthcare services to its federal, state, and local government partners, including on-site medical services, telehealth and mental health programs, and pharmacy management. Wellpath employs more than 13,000 people and serves nearly 200,000 patients daily.[5]

12. On November 11, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

13. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and rule 1015-1 of

---

[5] Additional information about the Debtors' businesses and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the First Day Declaration.

the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no statutory committee has been appointed or designated.

### PC Management Services Agreements

14. Professional Corporations are a key component of the Debtors' operations. Under the Debtors' Management Services Agreements with the Professional Corporations, the Debtors are required to:

> The [Debtors] will indemnify, defend and hold harmless the Management Company, its Affiliates and their respective directors, managers, officers, equity holders, employees, agents (including the Management Company Representative), successors and permitted assigns (collectively, the "Management Company Indemnified Parties") from and against all losses, liabilities, demands, claims, actions or causes of action, regulatory, legislative or judicial proceedings or investigations, assessments, levies, fines, penalties, damages, costs and expenses (including reasonable attorneys', accountants', investigators' and experts' fees and expenses) incurred in connection with the defense or investigation of any claim ("Damages") sustained or incurred by any Management Company Indemnified Party arising from or related to illegal activity, intentional misconduct, negligence or breach of this Agreement by the Company and its directors, managers, officers, equity holders, employees, agents, successors and permitted assigns (the "Company Indemnified Parties").

CFMG Management Services Agreement, § 7.1.

15. Accordingly, the Professional Corporations may be able to assert an indemnification claim against the Debtors for any expenses incurred and damages ordered in connection with the Lawsuits.

### D&Os' Indemnification Provision

16. The D&Os, in connection with the services they provide the Debtors, are party to certain indemnification provisions that require the Debtors to indemnify the D&Os under certain circumstances:

8

> Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether brought by or in the right of the corporation or any of its subsidiaries and whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), or any appeal of such proceeding, by reason of or arising out of the fact that such person, or any other person for whom such person is the legal representative, is or was a director or officer of the corporation or is or was serving at the request of the corporation as a director, officer, manager, general partner, employee, fiduciary, or agent of another corporation or of a partnership, limited liability company, joint venture, trust or other enterprise, shall be indemnified and held harmless by the corporation to the fullest extent which it is empowered to do so by the DGCL

Amended and Restated Bylaws of CCS-CMGC Intermediate Holdings 2, Inc., Art. V § 1.

17. Accordingly, the D&Os may be able to asset an indemnification claim against the Debtors for any expenses incurred and damages ordered in connection with the Lawsuits.

## HIG Management Agreements

18. In connection with services provided by HIG to the Debtors, HIG and the Debtors are party to certain indemnification provisions which require the Debtors to indemnify HIG under certain circumstances:

> The [Debtors] and its subsidiaries shall jointly and severally indemnify, defend and hold harmless the [HIG] and its present and future officers, directors, stockholders, members (both managing and otherwise), partners (both general and limited), managers, affiliates, employees, representatives and agents (the "Indemnified Parties") from and against all losses, claims, liabilities, suits, costs, damages and expenses (including attorneys' fees) to which such Indemnified Party may become subject under any applicable law, regulation, claim made by any third party or otherwise, relating to or arising out of the engagement of [HIG] pursuant to, and the performance by the [HIG] or any [HIG] Related Party of the services contemplated by or in connection with, this Agreement, and the [Debtors] will reimburse any Indemnified Party for all costs and expenses (including attorneys' fees and expenses) (collectively, "Claims") as they are incurred in connection with the investigation of, preparation for or defense of any pending or threatened claim, or any action or proceeding arising therefrom, whether or not such Indemnified Party is a party hereto.

9

HIG Transaction Services Agreement, § 9; HIG Professional Services Agreement, § 9.

19. Accordingly, HIG may be able to assert an indemnification claim against the Debtors for any expenses incurred and damages ordered in connection with the Lawsuits.

**Basis For Relief**

**I. The Court Should Enforce the Automatic Stay as to the Lawsuits.**

20. The Automatic Stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (quoting H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296); *Halo Wireless, Inc. v. Alenco Commc'ns, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012) (same). "The purpose of the automatic stay" is to "give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the Debtor's assets." *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986) (citations omitted); *In re Cowin*, 864 F.3d 344, 352 (5th Cir. 2017) (same).

21. The Automatic Stay protects estate assets by automatically staying any action "to recover a claim against the debtor." 11 U.S.C. §362(a)(1), (3); *see A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) (finding that section 362(a)(3) of the Bankruptcy Code "directs stays of any action, *whether against the debtor or third-parties*, to obtain possession or to exercise control over property of the debtor") (emphasis in original).

22. There is no dispute that the plaintiffs' claims asserted directly against the Debtors are attempts to "recover a claim against the debtor" and are, therefore, stayed under section 362(a)(1) of the Bankruptcy Code.[6] But the plaintiffs' claims against the Non-Debtor Defendants

---

[6] Moreover, in those cases involving HIG as a defendant, the plaintiffs solely assert generalized *alter ego* claims against HIG, seeking to charge HIG with the responsibility for the Debtors' alleged misdeeds, which claims are, as a matter of law, property of the Debtors' bankruptcy estates and, therefore, encompassed by the automatic stay. *See S.I. Acquisition*, 817 F.2d at 1153) ("We, therefore, conclude that Eastway's alter ego action is a right of

are *also* attempts to "recover a claim against the debtor" because "the liability of the nonbankrupt is not independent of the debtor's liability and a judgment against the nonbankrupt will be binding upon the debtor's estate." *S.I. Acquisition*, 817 F.2d at 1148 (recognizing that "where the debtor and the nonbankrupt party can be considered one entity or as having a unitary interest, a section 362(a)(1) stay may suspend an action against a nonbankrupt codefendant"). Therefore, these actions against the Non-Debtor Defendants must also be stayed.

23. Furthermore, certain Non-Debtor Defendants are listed as an additional insured party under the Debtors' insurance policies. Section 362(a)(3) of the Bankruptcy Code bars a plaintiff from bringing suits that would deplete the debtor's insurance because the insurance coverage is property of the estate. *See A.H. Robins*, 788 F.2d at 1008 (insurance contracts are property of the estate); *In re Quigley Co., Inc.*, 676 F.3d 45, 53 (2d Cir. 2012) (claims paid out of insurance that is joint property among the debtor and a non-debtor could directly affect the debtor's bankruptcy estate). The right to coverage under the shared insurance policies is property of the Debtors' estates and prosecution of a claim against a covered Non-Debtor Defendant would deplete proceeds available to the Debtors, thereby reducing assets available to the Debtors' estates.

## II.     **In the Alternative, the Court Should Extend the Automatic Stay to the Non-Debtor Defendants.**

24. Even if the plaintiffs' claims against the Non-Debtor Defendants are not automatically stayed, it is clear in the Fifth Circuit that Court may *extend* the Automatic Stay to proceedings against a Debtor's co-defendants where "there is such identity between the debtor and

---

action belonging to S.I.A. and, as such, is "property of the estate" within the meaning of section 541(a)(1). Accordingly, the automatic stay of section 362(a)(3) applies to Eastway's state action.")

the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs.*, 349 F.3d at 825 (quoting *A.H. Robins*, 788 F.2d at 999) (noting that extension of the Automatic Stay to a non-debtor party is warranted where a contract imposes joint liability between a non-debtor party and debtor, and thus an identity of interests exists); *see also Fed. Life Ins. Co. (Mut.) v. First Fin. Grp., Inc.*, 3 B.R. 375, 376 77 (S.D. Tex. 1980) (extending the Automatic Stay to non-debtor parties where allegations against non-debtor parties and debtors arose from the same factual and legal basis); *see also In re Envision Healthcare Corporation*, Case No. 23-90342 (CML) (Bankr. S.D. Tex. May 15, 2023) [Docket No. 106] (extending the Automatic Stay to non-debtor parties to whom the Debtors owe indemnity obligations).

25. Likewise, the Court may also extend the Automatic Stay to litigation that "could interfere with the reorganization of the debtor" or "would frustrate the statutory scheme of chapter 11 or diminish the debtor's ability to formulate a plan of reorganization." *In re W.R. Grace & Co.*, 115 F. App'x 565, 570 (3rd Cir. 2004) (quoting *A.H. Robins*, 828 F.2d at 1025 and *In re Johns-Manville*, 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983)); *In re McConathy*, 2021 Bankr. LEXIS 1569, at *10 (Bankr. W.D. La. June 14, 2021) ("It is widely recognized that actions involving non-debtors that would have an 'adverse impact' upon the property of the estate are subject to the automatic stay under § 362(a)(3) [of the Bankruptcy Code].").

26. Here, both rationales support extending the Automatic Stay to the Non-Debtor Defendants in the Lawsuits: *first*, the Debtors and the Non-Debtor Defendants share an identity of interests because the plaintiffs' claims against the Non-Debtor Defendants are claims against the Debtors in all but name only, rendering the Debtor the real party in interest. *Second*, the

Debtors are obligated to indemnify the Non-Debtor Defendants. And t*hird*, continued litigation would divert management's and in-house counsel's resources from the path-critical tasks of marketing and selling substantially all of the Debtors' assets and formulating, proposing, and confirming a chapter 11 plan over the next few months.

### A. The Debtors and the Non-Debtor Defendants Share an Identity of Interests Due to the Overlapping Nature of the Claim.

27. In the Fifth Circuit, a shared identity of interests exists between non-debtor parties and the debtor where "allegations raised against co-defendants are 'inextricably interwoven' with claims against the debtor, such that severance of the claims would be inappropriate." *Gigi's Cupcakes, LLC v. 4 Box LLC*, No. 3:17-CV-3009-B, 2019 WL 1767003, at *3 (N.D. Tex. Apr. 22, 2019) (internal citation omitted); *see Fed. Life*, 3 B.R. at 376-77 ("[T]he Court is persuaded that the automatic stay applies to judicial proceedings against a debtor in bankruptcy and its codefendants when, as here, the allegations against them arise from the same factual and legal basis.").[7]

28. Undoubtably linking the identity of interest between the Debtors and Non-Debtor Defendants is the nature of many of the Lawsuits, asserting causes of action alleging alter-ego and other similar theories. Claims of alter-ego and other similar theories by their nature result in a complete overlap between the Debtors and the Non-Debtor Defendants, as they require complete involvement by the Debtors because, after all, the alter-ego and other similar theories claims themselves effectively treat such claims against any of the Non-Debtor Defendants as a direct

---

[7] *See also In re W.R. Grace & Co.*, 386 B.R. 17, 32 (Bankr. D. Del 2008) (granting stay as to non-debtor defendants where the overlap of issues in the two proceedings would "duplicate expenses and unnecessarily divert if not deplete the resources and assets of the estate"); *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510–11 (3d Cir. 1997) (enjoining an action against non-debtor where the debtor "was, in essence, the real party in interest") (collecting cases); *In re Ionosphere Clubs Inc.*, 124 B.R. 635, 642 (S.D.N.Y. 1991) (lawsuit against co-defendants would involve, burden, and directly affect debtor, and would likely prejudice debtor's future defense of identical claims based upon identical fact).

13

inquiry into the actions of the Debtors themselves. As such, there can be little doubt that the plaintiffs' claims against the Non-Debtor Defendants are "inextricably interwoven" with their claims against the Debtors: the claims against the Non-Debtor Defendants allege injuries resulting from the operations of the Debtors and/or the Professional Corporations or the Non-Debtor Defendants' relationships with the Debtors. It is, therefore, imperative to stay the Lawsuits for many reasons, one of which is to protect the Debtors' rights to actually litigate these Lawsuits when the time is proper, after exiting chapter 11.[8] To permit the Lawsuits to move forward at this juncture poses a serious risk to the Debtors' ability to mount a fulsome defense and meaningfully participate in the Lawsuits, thereby exposing the Debtors to the risk of collateral estoppel.

### B. The Debtors and the Non-Debtor Defendants Share an Identity of Interests Through Indemnification Obligations.

29. The Debtors' indemnification obligations separately establish a shared identity of interests. That is because where a debtor is contractually obligated to indemnify a non-debtor party, "a judgment against one would in effect be a judgment against the other." *Nat'l Oilwell Varco, L.P. v. Mud King Prods., Inc.*, 2013 WL 1948766, at *2, *6 (S.D. Tex. May 9, 2013). Here, as detailed above and in the PC Motion, the Debtors are obligated to indemnify the Professional

---

[8] *See, e.g., Trustees of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(k) Sav. Plan v. ENOBRAC Plumbing Inc.*, 2018 WL 3635049, at *16 (E.D.N.Y. Feb. 12, 2018) (extending stay to the bankrupt's party's affiliates where complaint did not allege independent liability, explaining that "a veil piercing theory that the debtor has abused the corporate form and its alter ego should be held liable for the obligations of the debtor, is an action against the debtor," and concluding that "[i]t would be "illogical" to conclude such a claim was anything but one against the debtor, even though nominally against a third party"); *Abrams v. Integrated Pro Servs., LLC*, 2015 WL 7458604, at *4 (E.D. La. Nov. 24, 2015) (granting an extension of the automatic stay to non-debtor co-defendants because "[t]he claims by and against [debtor] are inextricably interwoven with the claims by and against his non-debtor co-defendants."); *Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, 2018 WL 8369102, at *1 (M.D. Fla. Oct. 5, 2018) ("The sole basis, if any, for recovery from the non-bankrupt Defendants would be based on the very same facts … And, if this matter were to proceed here as to the non-bankrupt Defendants, and in the Bankruptcy Court as to [debtor], duplicative discovery, multiple hearings and inconsistent results could ensue, causing inefficiency and piecemeal litigation."); *Federal Life Ins. Co. (Mutual) v. First Financial Group of Texas, Inc.*, 3 B.R. 375 (S.D.Tex. 1980) (same); *Rupp v. Cloud Nine Ltd.* (*In Re Cloud Nine, Ltd.*), 3 B.R. 202 (Bankr. D.N.M. 1980) (same).

Corporations and the PC Physicians for "any" liability or losses (including defense costs) pursuant to certain PC Management Services Agreements with the Professional Corporations. Not only do the Debtors have formal PC Indemnity and Legal Expense Obligations to certain of the Professional Corporations, but they also frequently defend and settle certain disputes arising from the PC Management Services Agreements in accordance with their business judgment. The Debtors also owe similar indemnification obligations to HIG and the D&Os under the HIG Management Agreements and their organizational documents, respectively. As such, any costs, expenses, or losses incurred by HIG or the D&Os would also be reimbursable by the Debtors' estates.

30. The foregoing indemnification obligations effectively render the Debtors the primary defendant in these disputes. Thus, a judgment against any of the Non-Debtor Defendants essentially represents a judgment against the Debtors. That alone suffices under the Fifth Circuit's test. *See Nat'l Oilwell Varco*, 2013 WL 1948766, at \*2, 5 (staying action against third parties because debtor's indemnification obligations to third parties created an identity of interests); *Am. Honda Fin. Corp. v. Salyer*, 2007 WL 1158114, at \*3 (S.D. Miss. Apr. 18, 2007) ("Fifth Circuit precedent . . . allows a court to extend the automatic stay . . . by applying the 'identity of interest' exception in cases in which a contractual indemnification agreement exists between a debtor and non-debtor defendant."); *Gigi's Cupcakes*, 2019 WL 1767003, at \*1 (same). Accordingly, extending the automatic stay in this limited circumstance is appropriate in light of the Debtors' indemnification obligations.

### C. Continued Litigation Would Burden the Estates and Key Personnel at a Pivotal Moment in the Chapter 11 Cases

31. Although the foregoing alone justifies extension of the Automatic Stay, additional factors further support it. Indeed, continued litigation in the Lawsuits would force key employees

15

of the Debtors, including the Debtors' limited in-house legal team, to become involved in the day-to-day management of the Lawsuits, thereby diverting attention from the value-maximizing efforts required in connection with the transactions contemplated by the RSA (including the marketing and sale process for substantially all of the Debtors' assets and formulating a chapter 11 plan), all to the detriment of all parties in interest in these chapter 11 cases.  As provided above, most of the Lawsuits seek damages for the quality medical care. Then, a number of Lawsuits go on to assert causes of action alleging alter-ego and other similar theories, which, as inferred by the term "alter-ego," effectively treats such Lawsuits against any of the Non-Debtor Defendants as a direct inquiry into the actions of the Debtors themselves.  This would require the utmost attention by the Debtors' key personnel at a time when such precious resources should be focused on carrying out these highly demanding chapter 11 cases.  This provides yet another basis to extend the Automatic Stay. *See, e.g., In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 614 (E.D. Pa. 2009) (holding that refusal to extend the stay to non-debtor parties would divert "the time and energy of key personnel from the reorganization effort at a critical time in the formulation of the plan"); *Calpin Corp. v. Nev. Power Co.*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006) (extending stay where liability of non-debtor was contingent on liability of debtor, debtor risked being subject to collateral estoppel, debtor was required to indemnify non-debtor defendant, and continuance of cases would distract key personnel from debtor's reorganization efforts).

**Emergency Consideration**

32. Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003. Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a

motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fed. R. Bankr. P. 6003. As set forth in this Motion and the First Day Declaration, the Debtors believe that an orderly transition into chapter 11 is critical to the viability of the Debtors' businesses, operations, and estates and that any delay in granting the relief requested herein could cause immediate and irreparable harm. The Debtors will also need to respond to the Lawsuits during the first 21 days of these chapter 11 cases. Failure to receive the requested relief during the first 21 days of these chapter 11 cases could imperil the Debtors' restructuring and cause immediate and irreparable harm. Accordingly, the Debtors submit that the relief requested herein satisfies the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

## Reservation of Rights

33. Nothing contained herein or any actions taken pursuant to the relief requested in this Motion is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (g) a waiver or limitation of

the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

### Notice

34. Notice of this Motion will be provided to the following parties or their respective counsel:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders; (d) counsel to the Ad Hoc Group; (e) counsel to the Prepetition First Lien Administrative Agent; (f) counsel to the Prepetition Second Lien Administrative Agent; (g) all claimants or, where applicable, counsel to the plaintiffs in the Lawsuits; (h) the Office of the United States Attorney for the Southern District of Texas; (i) the state attorneys general for states in which the Debtors conduct business; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; and (l) any party identified in section E of the Procedures for Complex Cases in the Southern District of Texas (collectively, the "Notice Parties").  A copy of this Motion and the orders approving it will also be made available on the Debtors' case information website located at https://dm.epiq11.com/Wellpath.  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested, the Debtors respectfully submit that no other or further notice is required.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order, substantially in the forms annexed hereto, granting the relief requested herein and such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated:  November 12, 2024<br>Dallas, Texas | */s/ Marcus A. Helt*<br>Marcus A. Helt (Texas Bar #24052187)<br>MCDERMOTT WILL & EMERY LLP<br>2501 N. Harwood Street, Suite 1900<br>Dallas, Texas 75201-1664<br>Telephone:     (214) 295-8000<br>Facsimile:      (972) 232-3098<br>Email:            mhelt@mwe.com<br><br>-and-<br><br>Felicia Gerber Perlman (*pro hac vice* admission pending)<br>Bradley Thomas Giordano (*pro hac vice* admission pending)<br>Jake Jumbeck (*pro hac vice* admission pending)<br>Carole Wurzelbacher (*pro hac vice* admission pending)<br>Carmen Dingman (*pro hac vice* admission pending)<br>MCDERMOTT WILL & EMERY LLP<br>444 West Lake Street, Suite 4000<br>Chicago, Illinois 60606-0029<br>Telephone:     (312) 372-2000<br>Facsimile:      (312) 984-7700<br>Email:            fperlman@mwe.com<br>                      bgiordano@mwe.com<br>                      jjumbeck@mwe.com<br>                      cwurzelbacher@mwe.com<br>                      cdingman@mwe.com<br><br>-and-<br><br>Steven Z. Szanzer (*pro hac vice* admission pending)<br>MCDERMOTT WILL & EMERY LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Telephone:     (212) 547-5400<br>Facsimile:      (212) 547-5444<br>Email:            sszanzer@mwe.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and accurate to the best of my knowledge, information, and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Marcus A. Helt*
Marcus A. Helt

**Certificate of Service**

I certify that, on November 12, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Marcus A. Helt*
Marcus A. Helt