IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 24-90533-11 |
| | § | HOUSTON, TEXAS |
| WELLPATH HOLDINGS, INC., | § | MONDAY, |
| | § | NOVEMBER 18, 2024 |
| DEBTOR. | § | 1:00 P.M. TO 1:16 P.M. |

**BIDDING PROCEDURES (VIA ZOOM)**

BEFORE THE HONORABLE ALFREDO PEREZ
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                          SEE NEXT PAGE

(Recorded via CourtSpeak; No log notes.)

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

```
 1                    APPEARANCES (VIA ZOOM):

 2

 3  FOR THE DEBTORS:              MCDERMOTT WILL & EMERY, LLP
                                  Marcus A. Helt, Esq.
 4                                Felicia G. Perlman, Esq.
                                  2501 North Harwood Street
 5                                Suite 1900
                                  Dallas, TX  75201
 6                                214-210-2801

 7  FOR THE AD HOC LENDER
    GROUP:                        AKIN GUMP STRAUSS HAUER
 8                                & FELD, LLP
                                  Scott Alberino, Esq.
 9                                2300 N. Field Street
                                  Suite 1800
10                                Dallas, TX  75201
                                  214-969-2885
11

12  FOR THE US TRUSTEE:           OFFICE OF THE US TRUSTEE
                                  Susan Hersh, Esq.
13                                515 Rusk St., Ste. 3516
                                  Houston, TX  77002
14                                202-590-7962

15

16  (Please also see Electronic Appearances.)

17

18

19

20

21

22

23

24

25
```

1        **HOUSTON, TEXAS; MONDAY, NOVEMBER 18, 2024; 1:00 P.M.**

2        THE COURT: All right. Good afternoon. This is
3   Judge Perez and we're here on the Wellpath Holdings Bid
4   Protections Motion at Docket Number 21. That's case Number
5   24-90533.
6        Counsel, please register your appearances on my
7   webpage. That's how we keep track of appearances.
8        Would everybody please mute their lines? There's
9   a lot of people on, and I don't want to have to go to the
10  hand raising feature. So please, everyone, mute their
11  lines.
12       And first we'll take appearances here in the
13  courtroom and then we'll take appearances on the phone.
14       MR. HELT: Good afternoon, Your Honor. Marcus
15  Helt of McDermott, Will & Emery on behalf of the Debtors.
16  With me in the courtroom is my partner, Felicia Perlman.
17  She will take the lead today.
18       THE COURT: Thank you.
19       MR. HELT: Thank you, Your Honor.
20       THE COURT: Okay. On the line who wishes to make
21  an appearance?
22       MR. ALBERINO: Your Honor, I'll go first. Scott
23  Alberino from Akin Gump on behalf of the Ad Hoc Lender
24  Group.
25       THE COURT: Okay. Thank you.

1        MS. HERSH:  Good afternoon, Your Honor.  Susan
2   Hersh for the United States Trustee.
3        THE COURT:  Okay.  Thank you very much.
4        All right.  Does anyone else wish to make an
5   appearance?
6     (No audible response.)
7        THE COURT:  All right.  If you want to speak later
8   on, just let me know and you can note your appearance then,
9   but please go to my webpage and make the appearance there
10  because that's how we keep track of it.
11       Okay.  Ms. Perlman?
12       MS. PERLMAN:  Thank you, Your Honor.  Felicia
13  Perlman of McDermott, Will & Emery, proposed counsel for the
14  Debtors.
15       We're here today on our Bid Procedures Motion and
16  we appreciate you seeing us on an expedited basis.
17       We have received no objections to the relief
18  requested.  We have reached out to the United States Trustee
19  to confirm that she has no comments or objections to the
20  proposed Order, as well.
21       We did receive one request from counsel to certain
22  of the sureties to make the statement on the Record
23  regarding the relief, which I'll do now just so I do not
24  forget later.
25       There's nothing in the Bid Procedures Order or any

1 proposed Purchase and Sale Agreement or any other document,
2 agreement, or instrument contemplated by any of the
3 foregoing shall be deemed to waive any rights, remedies or
4 defenses that any of the Debtor sureties have or may have
5 under applicable bankruptcy and non-bankruptcy laws or under
6 any indemnification agreements, surety bonds, or related
7 agreements or in sureties' collateral relating thereto.
8          As noted at the First Day Hearing, Your Honor, we
9 entered into Chapter 11 with an RSA that provides for an
10 expedited sale for the recovery solutions business, followed
11 by two paths to a restructuring for the local Government and
12 State and Federal businesses, either through a 363 sale or
13 equitization under a Plan.
14          This hearing today is the first step in that
15 process.  The Bidding Procedures set forth a dual track
16 process with a shorter time line for the recovery solutions
17 sale because of the pre-petition marketing process for those
18 assets, in the import of that sale closing, prior to
19 significant IRFPs that come due in January, and then a
20 longer time line for the local Government and State and
21 Federal business.
22          In support of the Bid Procedures Motion, we have
23 filed two Declarations.  Both of our Declarants are in the
24 virtual courtroom today in case anyone has questions for
25 them.

1                We have the Declaration of Christian Tempke from
2  Lazard, which is on the Docket Number 21 at Exhibit A, and
3  the Declaration of Jason Shoenholtz as the Debtor's
4  healthcare investment banker from MTS Partners, LP, Docket
5  Number 21, Exhibit B.
6                We respectfully request that the Court enter these
7  Declarations into evidence.
8                THE COURT:  All right.  Just give me one second.
9         (Pause in the proceedings.)
10               THE COURT:  All right.  Does anyone object to the
11 admission of the Declaration of Mr. Christian Tempke found
12 on the Exhibit List at Docket Number 99-1?
13        (No audible response.)
14               THE COURT:  All right.  Does anyone object to the
15 Declaration of Mr. Jason Shoenholtz found at Exhibit
16 Number 99-2?
17        (No audible response.)
18               THE COURT:  All right.  Does anyone wish to cross-
19 examine either Mr. Tempke or Mr. Shoenholtz?
20        (No audible response.)
21               THE COURT:  All right.  Hearing none, both
22 Exhibit 99-1 and 99-2 will be admitted.
23        (Exhibits 99-1 and 99-2 received in evidence.)
24               MS. PERLMAN:  Thank you, Your Honor.
25               Your Honor, as we discussed at the First Day

1  Hearing and as is set forth in Mr. Shoenholtz' Declaration,
2  the sale process of the recovery solutions business was
3  launched in April of this year.  Lazard and MTS contacted
4  over 140 parties.  Of those, more 70 perspective bidders
5  signed NDAs and at the end of June, the Debtors received six
6  preliminary indications of interest as part of a first round
7  process.
8         The Debtors continue to provide diligence and
9  continue the marketing process.  However, despite the
10 marketing process, there was only one second round bid
11 submitted for a reduced valuation.
12        The process continued through August and September
13 of this year.  At the end of that, however, the Debtors had
14 not received any acceptable bids.
15        Aware of their upcoming maturities, they put the
16 marketing process on pause and moved to negotiate with their
17 Ad Hoc Lender Group the RSA that began these cases.
18        The RSA contemplates the sale of substantially all
19 of the recovery solutions assets to a stalking horse bidder,
20 composed of certain of the lenders via a credit bid that is
21 memorialized in the Recovery Solutions Stalking Horse
22 Agreement that was filed with our Bid Procedures.
23        The RSA also provides for the marketing and sale
24 process for the local Government and State and Federal
25 assets on a separate time line.

1          With respect to the recovery solution assets, the
2  Bid Procedures request a bid deadline of December 13th, an
3  auction if bids are received of December 16th, subject to
4  the Court's availability a sale hearing of December 23rd
5  with an objection deadline of December 18th.
6          I would note that if the Debtors receive
7  consolidated bids for all the assets, it would be on this
8  time line.
9          With respect to separate bids for the State and
10 Federal and/or local Government business, the bid deadline
11 would be January 20th with an auction of January 28th, a
12 sale hearing subject to your availability of February 4th,
13 and a bid deadline of January 31st.
14         We want to note that with respect to the sale of
15 the local Government and State and Federal businesses, any
16 successful bid pursuant to the Bid Procedures must provide a
17 wind-down budget acceptable to the Debtors to ensure our
18 ability to administer the wind-down of the Debtors' estates.
19         With respect to the recovery solutions business,
20 we seek approval of the Stalking Horse Agreement with
21 certain of our lenders.  The Debtors negotiated this
22 agreement at arm's-length with the potential purchaser, RS
23 Purchaser, LLC.  The Stalking Horse Agreement provides for a
24 credit bid of $375 million and an expense reimbursement up
25 to $2 million.

1               With respect to the local Government and State and
2  Federal business, the Debtors do not currently have a
3  Stalking Horse Agreement, but the Bid Procedures request the
4  Debtors' ability, authorization, but not direction, to enter
5  into a Stalking Horse Agreement should they deem in their
6  business judgment it be in the best interest of the estates
7  and requests the ability to provide a break-up fee not to
8  exceed 3 percent of the purchase price and expense
9  reimbursement up to a million dollars.
10              If the Debtors enter into a Stalking Horse
11 Agreement, the Bid Procedures provide that we would file a
12 notice of the Stalking Horse Agreement and provide parties
13 an opportunity to object to the proposed Stalking Horse
14 Agreement.
15              The Bid Procedures also set forth notice
16 procedures for the mailing and publication of a sale notice,
17 the notice of determination of a qualified bids, the notice
18 of hearing if there is no auction, as well as a post-auction
19 notice.  We believe that these notice procedures constitute
20 adequate and reasonable notice of the key dates and
21 deadlines for the sale process.
22              The Bid Procedures also provide notice procedures
23 for the assumption and assignment of contracts to allow
24 parties opportunity to object to proposed cures, as well as
25 a process to provide adequate -- information regarding the

1    adequate assurance of future performance.
2              Your Honor, I'm happy to answer any other
3    questions you may have about the Bidding Procedures.
4              THE COURT:  So I have a few mostly by way of
5    clarification.  The seller cure cap, $10 million, that's
6    just in connection with this Stalking Horse Agreement with
7    respect to the RS assets only?
8              MS. PERLMAN:  Correct.
9              THE COURT:  Okay.  And so, presumably if the
10   Debtor doesn't have any money, they'll have to borrow that
11   money from the DIP, use it to do the cure, and then kind of
12   round trip it with interest?
13             MS. PERLMAN:  That could be correct.
14             THE COURT:  Okay.  Just wanted to make sure I did
15   do that.
16             With respect to the wind-down reserve budget,
17   paragraph 33, hopefully by that time there will be a
18   Committee in place so that that would be subject to, I
19   guess, consensus among the various parties.
20             What happens if you can't reach agreement as to
21   what an acceptable wind-down budget is?
22             MS. PERLMAN:  Your Honor, hopefully at that point
23   we will be able to reach an agreement regarding that and if
24   not, we will be back before you to help us reach an
25   agreement as to that.

```
 1                THE COURT:  All right.  Okay, understood.
 2                And then the one area that I was a little confused
 3   is what happens with the insurance assets?  Because in the
 4   acquired assets it says that all third party policies are
 5   acquired except for the D&O policy, any property and
 6   casualty policy, they're all acquired except for the
 7   policies in which the Debtors are self-insured with respect
 8   to the avoidance actions, okay?  So it says that in the
 9   acquired assets.
10                In the excluded assets, it says that all
11   self-insurance policies and anything having to do with
12   corrections, and then there's a paragraph 2.2(j) which seeks
13   to say that all insurance policies of the Debtors are
14   excluded.
15                MS. PERLMAN:  Your Honor, to my understanding --
16   and we have Mr. Alberino on behalf of the lenders on, as
17   well as others who can clarify me, that insurance that was
18   specifically and only with respect to recovery solutions
19   could be an acquired asset, but no other insurance would be
20   an acquired asset.  It was an excluded asset.
21                THE COURT:  Okay.  Let me --
22                MR. ALBERINO:  I see what you're saying, Your
23   Honor.  This is Scott Alberino from Akin.
24                2.2(j) seems to say all insurance policies of the
25   sellers are excluded.
```

1              THE COURT:  Yep.
2              MR. ALBERINO:  Yet, for the stalking and acquired.
3    Obviously that was --
4              THE COURT:  Yes.  I was having a hard time
5    reconciling that.  Sorry.
6              MR. ALBERINO:  No, I would ask you to send us a
7    bill, Your Honor, for doing our job, but I think that would
8    be inappropriate.
9              There's obviously a bust here in the document that
10   needs to be fixed and we could -- I could suggest if you
11   want to give us a few minutes to retest what's important, we
12   can talk offline with the group.
13             My understanding was that we were acquiring
14   insurance policies that were kind of relevant to operation
15   of the RS business, so it could be -- we may need to clean
16   that language up.
17             THE COURT:  Okay.  So does that include the
18   self-insurance policies, too?
19             MS. PERLMAN:  It does not, I believe.
20             THE COURT:  Okay.  There's a bust there, too.
21             MS. PERLMAN:  It is only third party -- we will go
22   back to the document and clarify it and file with --
23   assuming that you approve the Bid Procedures Order, file an
24   Amended Purchase Agreement for the Stalking Horse Purchase
25   Agreement that clarifies these points with respect to

1  insurance and submit a redline of that to your chambers, as
2  well.
3              THE COURT:  Okay.  Does anyone else wish to be
4  heard with respect to the Bid Procedures?
5       (No audible response.)
6              THE COURT:  Those are the only comments that I
7  have.
8              MS. PERLMAN:  With that, Your Honor, we would
9  respectfully request the entrance of the Bid Procedures
10 Order, pursuant to what I just stated that we will submit it
11 with an Amended Purchase Agreement.
12             THE COURT:  Okay.  Before I rule on that, does
13 anyone else wish to be heard with respect to the Bid
14 Procedures?
15      (No audible response.)
16             THE COURT:  All right.  Hearing none, I've
17 reviewed the motion.  I only had a couple of questions.  You
18 know, to the extent those questions are -- and I'm not
19 saying what the deal should be, I'm just saying I had a hard
20 time understanding --
21             MS. PERLMAN:  What the document meant to be clear.
22             THE COURT:  -- what the document said.
23             MS. PERLMAN:  Understood.  We appreciate your
24 help, Your Honor.
25             THE COURT:  And -- but having said all that, I've

1   reviewed the motion.  I think I have the jurisdiction in
2   order to approve the Bid Procedures.  I think that the Bid
3   Procedures are a good exercise of the Debtors' business
4   judgment, so I will go ahead and I will approve the Bid
5   Procedures as presented, you know, subject to the
6   clarification on this insurance point.
7           MS. PERLMAN:  Thank you, Your Honor.
8           Can we reach out to chambers to set those sale
9   hearing dates?
10          THE COURT:  Yeah, absolutely yes.  And on the
11  23rd, I will be remote, so we can certainly have a hearing.
12  I just won't be here.
13          MS. PERLMAN:  That's good to hear, Your Honor.
14          THE COURT:  So you don't have to --
15      (Laughter)
16          THE COURT:  Okay.  So -- and February 4th, I don't
17  think there's any issue that day, but just check with
18  Mr. Laws.
19          MS. PERLMAN:  Perfect.  Thank you very much, Your
20  Honor.
21          THE COURT:  All right.  Anyone else wish to be
22  heard?
23      (No audible response.)
24          THE COURT:  All right.  Well, thank you very much.
25  and we're in recess.

15

1     MS. PERLMAN:  Thank you.

2     MR. ALBERINO:  Thank you, Your Honor.

3  (Hearing concluded at 1:16 p.m.)

4                  * * * * *

5     *I certify that the foregoing is a correct*

6  *transcript to the best of my ability from the electronic*

7  *sound recording of the ZOOM/video/telephonic proceedings in*

8  *the above-entitled matter.*

9  */S/ MARY D. HENRY*

10 *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

11 *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

12 *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

13 *JTT TRANSCRIPT #69353*

14 *DATE FILED:  NOVEMBER 21, 2024*

15

16

17

18

19

20

21

22

23

24

25