IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In Re:

CASE NO: 24-90533 (ARP)
CHAPTER 11
(JOINTLY ADMINISTERED)

WELLPATH HOLDINGS, INC., *et. al.,*
                        Debtors.

_____/

## CLAIMANTS GRACIENNE MYERS and DANIEL MYERS MOTION FOR RELIEF FROM AUTOMATIC STAY TO ALLOW INSURANCE COVERED LIABILITY ACTION TO PROCEED

This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.

Represented parties should act through their attorney.

There will be a hearing on this matter on December 19, 2024 at 9:00 a.m.,Via video Conference: https://meet.goto.com/JudgePerez  Or Telephonic Participation: : 1-832-917-1510/ Conference Room: 282694

Claimants, GRACIENNE MYERS and DANIEL MYERS, ("Claimants"), by and through counsel, and pursuant to 11 U.S.C. §362(d), and the *Amended Interim Order Enforcing Automatic Stay*, [ECF#69], move the Court to grant relief to Claimants from the automatic stay, ("Motion"), and in support state:

1.      Claimants seek relief from stay to allow their state court lawsuit pending since 2023 to proceed given there is an insurance policy providing Debtors with protection, legal fees and costs and a jury in that action is in the best position to liquidate the amount of the claims.

2.      In 2023, Claimants sued non-debtor, TB Isle Resort, LLP, for the traumatic brain injury GRACIENNE MYERS suffered from the defendants negligence. The suit was filed in Miami-Dade Circuit Court, in and for the State of Florida *Gracienne Myers and*

*Daniel Myers vs TB Isle Resort LP,* Case No.: 2023- 24472 CA 01, ("State Court Action"). A true copy of the *Amended Complaint* filed in the State Court Action is attached to this Motion as Exhibit "A", and made a part hereof.

3.      On October 1, 2024, 901 45TH STREET WEST PALM BEACH FLORIDA BEHAVIORAL HEALTH HOSPITAL COMPANY, LLC, ("Debtor"), and, its employee, TARIKA WYNDS, ("Wynds"), were joined in the State Court Action based on their negligence when Claimant GRACIENNE MYERS came under their care for her psychosis from the traumatic brain injury, and she ended up being a victim of a sexual assault from another patient in Debtor's care.

4.      Claimant, DANIEL MYERS, sued the Debtor and Wynds in the State Court Action for contracting the sexually transmitted disease which Debtor falsely advised him his wife had not contracted.

5.      The Debtor and the related debtors are covered for these incidents by a primary insurance policy with $3,000,000 per claimant in limits. The policy also covers defense costs and fees. See, attached to this Motion and made a part hereof as Exhibit "B", the Texas Instrument Insurance Policy.  In addition the Debtors have a number of additional excess insurance policies described in the attached affidavit of the Debtor's Director of Insurance. See Exhibit "C".

6.      On November 19, 2024, the Debtor filed a *Notice of Stay*, attaching the *Amended Interim Order Enforcing Automatic Stay* of this Court. The *Notice of Stay* is attached to this Motion as Exhibit "D" and made a part hereto.

7.      Where, as here, there is adequate protection to the Debtor and the related debtors, the State Court Action should be permitted to proceed to jury trial in state court to liquidate the amount of the claim against the related debtor 901 45TH STREET WEST PALM BEACH FLORIDA BEHAVIORAL HEALTH HOSPITAL COMPANY, LLC, and, its employee,

TARIKA WYNDS. *In re New York Medical Group, P.C.*, 265 B.R. 408 (S.D.N.Y., 2001) (relief from stay granted to claimant to proceed with medical malpractice action, not only to the extent of insurance coverage, but to judgment, with the excess becoming a claim against the bankruptcy estate.)

8.    Adequate "cause" exists to grant the relief sought in the Motion pursuant to 11 U.S.C.362(d). The Debtor has liability insurance to cover the claims brought against the Debtor in the State Court Action. TB Isle Resort, LLP, the other named defendant in the State Court Action is not a debtor in any bankruptcy. To the extent the applicable insurance may be insufficient to cover any judgment to be entered in the State Court Action in favor of the Claimants, Claimants will file a proof of claim in these chapter 11 cases.

9.    Claimant respectfully requests that this Motion be heard on December 5, 2024 as per the Interim Order as there are state court hearings set on this case on December 11, 2024 and December 13, 2024.

WHEREFORE, Claimants, request this Honorable Court to grant relief from the automatic stay and authorize the State Court Action, as defined in the Motion to proceed and/or allow this Motion to be heard on December 5, 2024 or before the scheduled hearing date set forth above and granting such other and further relief as appropriate under the circumstances.

## <u>CERTIFICATE OF CONFERENCE</u>

I HEREBY Certify that undersigned counsel attempted to resolve the above issue and the relief sought in this Motion, by speaking with Steve Szanzer, Esq., of McDermott Will & Emery, LLP, Debtor's counsel on November 25, 2024. Mr. Szanzer indicated he could not agree with the relief sought in the Motion at this time.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 26, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record or pro se parties authorized manner for those counsel or parties who are authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

BEHAR, GUTT & GLAZER, P.A.
Attorneys for Gracienne & Daniel Myers
DCOTA, 1855 Griffin Road, Suite A-350
 Ft. Lauderdale, Florida 33004
Telephone: (954)266-3710
Fax: (954) 266-3709
Email: bsb@bgglaw.com
Secondary: jgarcia@bgglaw.com

By: /s/ Brian S. Behar
BRIAN S. BEHAR
FBN: 727131

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO: 2023-24772-CA-01

GRACIENNE MYERS and
DANIEL MYERS,

      Plaintiffs,

vs.

TB ISLE RESORT LP, 901 45TH STREET
WEST PALM BEACH FLORIDA
BEHAVIORAL HEALTH HOSPITAL
COMPANY, LLC, and TARIKA WYNDS,

      Defendants.

_____/

## AMENDED COMPLAINT

      Plaintiffs, GRACIENNE MYERS (hereinafter GRACIENNE) and DANIEL MYERS,

(hereinafter DANIEL) sue the Defendants, TB ISLE RESORT LP (hereinafter TURNBERRY),

901 45TH STREET WEST PALM BEACH FLORIDA BEHAVIORAL HEALTH HOSPITAL

COMPANY, LLC (hereinafter NBH), and TARIKA WYNDS, and allege:

      1.     This is a negligence action for damages in excess of $75,000.

      2.     Plaintiffs, GRACIENNE MYERS and DANIEL MYERS are husband and wife,

are residents of Palm Beach County, Florida, are above the age of 18, and are each sui juris.

      3.     Defendant TURNBERRY is a Foreign Limited Partnership registered to do

business in the State of Florida with its principal office in Miami Dade County, Florida.

4. Defendant NBH is a foreign corporation registered to do business in Florida and is conducting business in West Palm Beach, Florida in the name, NEURO BEHAVIORAL HOSPITAL NORTH.

5. Defendant TARIKA WYNDS is a resident of Palm Beach County and in all respects *sui juris*.

## FACTS

6. At all times material, Defendant TURNBERRY owned and operated the country club resort, marina, and golf course properties known generally as Turnberry Yacht and Country Club, located in Aventura, Florida.

7. At all times material, Defendant TURNBERRY used the registered fictitious name, "JW Marriot Miami Turnberry Resort & Spa".

8. On or about December 29, 2021, GRACIENNE was Defendant TURNBERRY's invitee and was dining outside at one of the Defendant's restaurants located in close proximity to the golf course on the property, when she was struck by a golf ball causing serious closed head injuries manifesting as a brain injury with accompanying mental health issues which worsened over time.,

9. On or about May 7, 2023, GRACIENNE, as a result of a severe deterioration of her mental health resulting in the need for involuntary commitment, was admitted as a psychiatric patient and invitee of Defendant NBH. Defendant WYNDS was assigned to monitor and report the activities and whereabouts of Plaintiff, GRACIENNE MYERS. WYNDS did not provide medical or healthcare treatment to GRACIENNE MYERS. During this time while under Defendant NBH's care, MYERS was found having non-consensual sexual intercourse with

2

another incompetent psychiatric patient of the psychiatric facility. As a result of that intercourse, unbeknownst to GRACIENNE, she contracted a disease. Upon her discharge from the facility she transferred that disease to her husband, DANIEL.

## **COUNT 1-NEGLIGENCE AGAINST TURNBERRY (GRACIENNE)**

10.     Plaintiff GRACIENNE MYERS readopts and re-alleges paragraphs 1-9.

11.     At all times material, TURNBERRY, as the owner and operator of the property as improved, had a non-delegable duty to provide a reasonably safe environment for folks such as GRACIENNE which duty included providing reasonable measures to protect diners at the restaurant from errant hit golf balls.

12.     At that time and place, TURNBERRY fell below the requisite standard of care and breached its duty of care by failing to ensure that there were reasonable protections in the area where GRACIENNE was dining to protect against golf balls from hitting patrons of the restaurant.

13.     TURNBERRY knew or should have known of the potential danger and risk to patrons in this area given the foreseeability of errantly hit golf balls coming into the outside seating restaurant area.

14.     TURNBERRY had a duty to:

a)  have and utilize protective screens, nets, or similar devices in place to stop a golf ball from coming into contact with patrons;

b)  warn patrons of the danger of golf balls coming into the area; and,

c)  take reasonable steps to protect patrons from the foreseeable and known risk

3

of golf balls coming into this area.

15.    TURNBERRY breached its duty of care:

    a)  by failing to have the screen, net, or similar device in place on the date and time of this incident;

    b)  by failing to warn patrons such as GRACIENNE of this danger; and,

    c)  by failing to take reasonable steps to protect patrons such as GRACIENNE from the foreseeable and known risk of golf balls coming into this area.

16    As a result of the above negligence, GRACIENNE was struck in the head by a golf ball resulting in significant bodily injury, including a traumatic brain injury which caused mental deterioration and psychiatric symptoms, resulting in the need for neurologic treatment and psychiatric hospitalization, unwanted disease, resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical, and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of previously existing conditions. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, GRACIENNE MYERS demands judgment for compensatory damages against TB ISLE RESORTS LP., taxable costs, and such other relief as is appropriate under the circumstances and demands trial by jury.

## COUNT II- CLAIM AGAINST TURNBERRY (DANIEL)

17.    Plaintiff DANIEL MYERS readopts and re-alleges paragraphs 1-2,8-9, and 11-16.

18.    As a result of the above negligence DANIEL sustained bodily injury, resulting

4

pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical, and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of previously existing conditions. These losses are either permanent or continuing, and DANIEL will suffer the losses in the future and as a result of the severe injuries to his wife, DANIEL has lost her support, services, and consortium in the past and in the future.

WHEREFORE, DANIEL MYERS demands judgment for compensatory damages against TB ISLE RESORTS LP., taxable costs, and such other relief as is appropriate under the circumstances and demands trial by jury.

### COUNT III – NEGLIGENCE AGAINST NBH (GRACIENNE)

19.    Plaintiff GRACIENNE MYERS readopts and re-alleges paragraphs 1-9.

20.    On or about May 7, 2023, having been Baker Acted into Defendant NBH for psychosis, GRACIENNE was Defendant's invitee and under its care and control under the circumstances.

21.    At all times material, NBH, as the owner and operator of the hospital, had a non-delegable duty to provide a reasonably safe environment for folks such as GRACIENNE which duty included protecting GRACIENNE from herself and other patients.

22.    At that time and place, NBH breached its duty of ordinary care by failing to properly monitor and protect GRACIENNE such that she would not be able to engage in non-consensual sexual intercourse with another person.

23.    NBH knew or should have known of the potential danger and risk to folks such as GRACIENNE who under the circumstances of her admission was a danger to both herself and to

others, given her mental status, and given the mental status of other folks in NBH's facility at the time.

24.     NBH had a duty to provide such protection to its invitees including adequate and reasonable monitoring and security measures to prevent harm or injury.

25.     NBH breached its duty of care by failing to institute and implement such protections and security measures such that its invitees in the facility were able to engage in non-consensual sexual intercourse.

27     As a result of the above negligence, GRACIENNE suffered significant bodily injury and disease, resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical, and nursing care and treatment, loss of earnings and/or earning capacity. These losses are permanent or continuing, and GRACIENNE will suffer the losses in the future.

WHEREFORE, GRACIENNE MYERS demands judgment for compensatory damages against NBH taxable costs, and such other relief as is appropriate under the circumstances and demands trial by jury.

### COUNT IV-  NEGLIGENCE AGAINST NBH (DANIEL)

28.     Plaintiff DANIEL MYERS readopts and re-alleges paragraphs 19-27.

29.     Defendant NBH had a duty to use reasonable care with respect to its discharge of GRACIENNE. In connection therewith, Defendant, NBH, upon learning that GRACIENNE had a non-consensual sexual encounter with another incompetent patient, reasonable care required that Defendant NBH test GRACIENNE for sexually transmitted diseases and/or advise DANIEL that before he and GRACIENNE engage in sexual relations as husband and wife, that

*SCOTT JAY FEDER, P.A.*
*4649 Ponce de Leon Boulevard, Suite 402, Coral Gables, Florida 33146*

GRACIENNE be tested for sexually transmitted diseases. Alternatively, Defendant, NBH voluntarily undertook a duty to test GRACIENNE for sexually transmitted diseases but was negligent in failing to test GRACIENNE properly. Defendant NBH was further negligent by reporting to DANIEL that GRACIENNE tested negative for sexually transmitted diseases, when in fact she contracted herpes from the non-consensual sexual encounter and transferred that disease to DANIEL.

30.     As result of the above negligence, DANIEL has suffered significant bodily injury, resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of medical care and treatment, loss of earnings and/or earning capacity, and aggravation of pre-existing conditions, and as a result of the severe injuries to his wife, DANIEL, has lost her support, services and consortium. These losses are permanent or continuing and DANIEL will suffer the losses in the future.

WHEREFORE, DANIEL MYERS demands judgment for compensatory damages against NBH taxable costs, and such other relief as is appropriate under the circumstances and demands trial by jury.

### COUNT V-MEDICAL NEGLIGENCE AGAINST NBH (GRACIENNE)

31.     Plaintiff GRACIENNE MYERS, readopts and realleges paragraphs 1-9 and 20-27.

32.     Alternatively, in the event it is determined that the monitor was a healthcare professional and was exercising healthcare as defined in Chapter 766 of the Florida Statutes, Plaintiff has fully complied with Chapter 766 of the Florida Statutes requirements before filing this action.

7

*SCOTT JAY FEDER, P.A.*
*4649 Ponce de Leon Boulevard, Suite 402, Coral Gables, Florida 33146*

33.     As a result of the negligence, GRACIENNE suffered nonconsensual sexual intercourse resulting in significant bodily injury and disease, resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical, and nursing care and treatment, loss of earnings and/or earning capacity and aggravation of pre-existing conditions. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, GRACIENNE MYERS demands judgment for compensatory damages against NBH, taxable costs, and such other relief as is appropriate under the circumstances and demands trial by jury.

### COUNT VI CLAIM FOR MEDICAL NEGLIGENCE AGAINST NBH (DANIEL)

34.     Plaintiff, Daniel Myers readopts and realleges paragraphs 31-33.

35.     As result of the above negligence, DANIEL has suffered significant bodily injury, resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of medical care and treatment, loss of earnings and/or earning capacity, and aggravation of pre-existing conditions, and as a result of the severe injuries to his wife, DANIEL, has lost her support, services and consortium. These losses are permanent or continuing and DANIEL will suffer the losses in the future.

WHEREFORE, DANIEL MYERS demands judgment for compensatory damages against NBH taxable costs, and such other relief as is appropriate under the circumstances and demands trial by jury.

*SCOTT JAY FEDER, P.A.*
*4649 Ponce de Leon Boulevard, Suite 402, Coral Gables, Florida 33146*

## COUNT VII- NEGLIGENCE AGAINST TARIKA WYNDS

36.     Plaintiff, GRACIENNE MYERS, readopts and realleges paragraphs, 1-9 and 19-27.

37.     At all times material, TARIKA WYNDS was assigned to monitor and supervise GRACIENNE MYERS for her protection.

38.     Defendant WYNDS had a duty to use reasonable care with respect to her monitoring, supervision and protection of Plaintiff.

39.     Defendant WYNDS breached that duty by failing to properly monitor, supervise and protect Plaintiff on the first morning of her admission, including by failing to account for Plaintiff's whereabouts.

40.     As a result of Defendant WYNDS negligence, GRACIENNE suffered significant bodily injury and disease, resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical, and nursing care and treatment, loss of earnings and/or earning capacity. These losses are permanent or continuing, and GRACIENNE will suffer the losses in the future.

WHEREFORE, GRACIENNE MYERS demands judgment for compensatory damages against Defendant WYNDS, taxable costs, and such other relief as is appropriate under the circumstances and demands trial by jury.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all matters so triable as a matter of right.

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Florida ePortal on this 1st day of October 2024 on Eric C. Sage, Esq., Mitrani, Rynor, Adamsky & Toland, P.A., 1200 Weston Road, Penthouse, Weston, FL 33326 (esage@mitrani.com, service@mitrani.com, kscaggs@mitrani.com, aschlossberg@mitrani.com).

SCOTT JAY FEDER, P.A.
Attorneys for Plaintiffs
4649 Ponce De Leon Boulevard, Suite 402
Coral Gables, Florida 33146
Telephone:     (305) 669-0060
Facsimile:     (305) 669-4220
E-Service:     Scottj8@aol.com
assistantscottjfeder@hotmail.com

By:___*/s/Scott Jay Feder*_____
          Scott Jay Feder
          Florida Bar No. 359300

and

MANDINA & GINSBERG, PLLC
Attorneys for Plaintiffs
Laurel Court - Suite 107
15500 New Barn Road
Miami Lakes, Florida 33014
Tel:     (305) 358-ll8l
Fax:     (305) 231-7900
E-Service:
marcginsberg@mg-trialattorneys.com

By:     /s/Marc R Ginsberg_____
          Marc R. Ginsberg
          Florida Bar No. 333336



**TEXAS INSURANCE COMPANY**
**NAIC No. 16543**
**10805 Old Mill Road**
**Omaha, Nebraska 68154**





**TEXAS INSURANCE COMPANY**
**NAIC No. 16543**
**10805 Old Mill Road**
**Omaha, Nebraska 68154**

**This Policy Consists of:**

• Declarations
• One or more coverage parts

**Coverage Part Consists of:**

• One or more coverage forms
• Applicable forms and endorsements

**In Witness Whereof,** we have caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

President                                              Secretary

**Questions about your Insurance?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance resolving a complaint, call or write to the following (please include your policy or claim number in all correspondence):

**In the event of a claim, please notify the following:**

Email:        PolicyServices@auw.com
                  cc: Claims@usqrisk.com
Mail:         attn : Policy Services
                  Texas Insurance Company
                  10805 Old Mill Road
                  Omaha, Nebraska 68154
Phone:       (877) 234-4420



STR-SLD-TN-NAC-2107-001

**POLICYHOLDER NOTICE**

**TENNESSEE SURPLUS LINES DISCLOSURE**

**This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus lines coverage pursuant to the Tennessee insurance statutes.**

**Surplus Lines Broker:**　　**Robert Allen**

　　　　　　　　　　　　　　**CRC Group dba Pro-Praxis Insurance**

　　　　　　　　　　　　　　**32 Old Slip, 4th Floor**

　　　　　　　　　　　　　　**New York, NY 10005**

STR-OFAC-CW-NAC-2107-001

---

## POLICYHOLDER NOTICE

**US TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")**
**ADVISORY NOTICE TO POLICYHOLDERS**

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist Organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's website – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**STR-OFAC-CW-NAC-2107-001**

**STR-TRID-CW-NAC-2107-001**

# POLICYHOLDER NOTICE

## NOTICE OF TERRORISM INSURANCE COVERAGE – TRIA DECLINED

This Notice is issued in accordance with the terms and conditions of the Terrorism Risk Insurance Act, as amended (the "Act").

You are hereby notified that coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the Act, as explained in the Policyholder Disclosure notice, (1) was made available to you; and (2) you declined or failed to confirm the purchase of such coverage. Therefore, this insurance does not provide coverage for losses directly resulting from any "act of terrorism" as defined by the Act except to the extent, if any, otherwise provided by this Policy.

**INSTRUCTION TO THE BROKER**

You are instructed to deliver a copy of this notice to our insured.

## POLICYHOLDER NOTICE

### NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION

If you want to learn more about the compensation Texas Insurance Company pays its agents and brokers please contact:

Email:  PolicyServices@auw.com
Mail:   attn : Policy Services
        Texas Insurance Company
        10805 Old Mill Road
        Omaha, Nebraska 68154

This Notice is provided on behalf of Texas Insurance Company.

Exhibit "B"

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# INFORMATION PAGE

---

**THIS POLICY CONTAINS COVERAGES WRITTEN ON A CLAIMS-MADE BASIS. IT IS DELIVERED AS SURPLUS LINES INSURANCE COVERAGE IN ACCORDANCE WITH THE SURPLUS LINES INSURANCE LAWS OF YOUR STATE.**

---

**THE COMPANY**:  Texas Insurance Company

**POLICYHOLDER:**  CCS-CMGC Parent Holdings, LP
3340 Perimeter Hill Dr.
Nashville, TN 37211

**POLICY NUMBER:**  BUQSTRTTN011300_050001_03

**POLICY PERIOD BEGINNING:**  15th March 2023

---

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# COVER PAGE

---

**THIS POLICY CONTAINS COVERAGES WRITTEN ON A "REIMBURSEMENTS MADE" BASIS. IT IS DELIVERED AS SURPLUS LINES INSURANCE COVERAGE IN ACCORDANCE WITH THE SURPLUS LINES INSURANCE LAWS OF YOUR STATE.**

---

In consideration of the payment of the premium, and in reliance upon the statements and representations in the applications for insurance and the **Coverage Summary, we** agree to provide the insurance contained in the **policy.**

THE COMPANY:   Texas Insurance Company

POLICYHOLDER:  CCS-CMGC Parent Holdings, LP
                3340 Perimeter Hill Dr.
                Nashville, TN 37211

POLICY NUMBER: BUQSTRTTN011300_050001_03

The **policy** consists of this **Cover Page** and the following forms:

Title
_____

Coverage Summary
Definitions Part
General Conditions
General Exclusions
HIPAA Civil Monetary Penalty Endorsement
Professional Legal Defense Coverage Part
Correctional Medicine Civil Rights Endorsement
Sexual Misconduct Coverage Part
General Liability Coverage Part
General Aggregate Limit Endorsement
Professional Liability Coverage Part
Amendatory Endorsement – Policyholder Responsibilities
Amendatory Endorsement – "Pollution Incident"
Amendatory Endorsement – Removal of Products & Completed Ops Exclusion
Cross Policy Liability Exclusion
Condition Precedent to Policy Benefits Endorsement
Non-Reinstating Limit of Liability per Professional Incident or Occurrence
Collateral Related Reduction in Limits Endorsement
Incident Reporting
Broad Form Insured Endorsement
Limited Company Authorization Amendatory Endorsement – CMGC
Additional Insured Endorsement – Primary Non-Contributory
Blanket Additional Insured Endorsement
Waiver of Subrogation Endorsement
Communicable Disease Exclusion
Sanction Limitation Exclusion Endorsement
Confidential or Personal Information Disclosure Endorsement

If any provision of the **policy** changes, **we** will issue an endorsement stating the effective date of any changes. Terms appearing in the **policy** in **bold face print** are defined in the Definitions section.

IN WITNESS WHEREOF, **we** have caused the **Cover Page** to be signed by **our** President and Secretary. The **policy** is effective only if countersigned on the **Coverage Summary** by **our** duly authorized representative.


                Secretary                              President

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# COVERAGE SUMMARY

1.   Policyholder and Address: CCS-CMGC Parent Holdings, LP          Majority Risk Location:
     3340 Perimeter Hill Dr          Same as Mailing Address
     Nashville, TN 37211

2.   Policy Number:          BUQSTRTTN011300_050001_03

3.   Policy Period: From 3/15/2023 to 3/15/2024 12:01 a.m. Standard Time at the address of the Policyholder as stated above.

4.   Premium:          ███████

5.   Limits of Liability:

     Health Care Facility General Liability Coverage Part (COVERAGES A, B and C):
     (1)   Each Occurrence Limit (COVERAGE A) Products & Completed Operations Included     $   3,000,000
     (2)   Fire Damage Limit (COVERAGE A)     $      100,000
     (3)   Personal Injury and Advertising Injury Limit (COVERAGE B)     $   3,000,000
     (4)   General Aggregate Limit     $   6,000,000

     Health Care Facility Professional Liability Coverage Part (COVERAGES C, D and E):
     (1)   Each Professional Incident (COVERAGE C)     $   3,000,000
     (2)   Each Occurrence Limit (COVERAGES D and E)     $   3,000,000
     (3)   General Aggregate Limit     $   6,000,000

6.   Condition Precedent to Policy Benefits:     $   6,000,000

7.   Retroactive Dates (if applicable):
     Health Care Facility General Liability Coverage Part (COVERAGES A and B):     March 15, 2021
     Health Care Facility Professional Liability Coverage Part (COVERAGES C, D and E):     November 15, 2013

**8.**   Scheduled Facilities:     Each **Scheduled Facility** on file with Company

9.   Covered Subsidiaries and Other Insureds:     On file with Company

Countersigned by:

_____
Authorized Representative

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# DEFINITIONS PART

As used in the **policy**, the following terms shall have the following meanings:

**Administration** means:

1. Giving counsel to **employees** with respect to **employee benefit programs**;
2. Interpreting **employee benefit programs**;
3. Handling of records and processing of claims in connection with **employee benefit programs**; and
4. Effecting enrollment, termination or cancellation of **employees** under **employee benefit programs**; provided all such benefits are provided by the **policyholder**.

**Advertising injury** means injury arising out of one or more of the following offenses, which takes place at or from a **scheduled facility**:

1. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2. Oral or written publication of material that violates a person's right of privacy;

3. Misappropriation of advertising ideas or style of doing business; or

4. Infringement of copyright, title or slogan.

**Assertion of liability** means a written demand claiming that an **insured** is liable for a **professional incident** or **occurrence**. An **assertion of liability** will be deemed to have been made when such **assertion of liability** is received by such **insured** or his representative.

**Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.

**Benefit error** means any negligent act, error or omission in the **administration** of the **employee benefit programs** of the **policyholder**. A series of related acts, errors or omissions shall be deemed to be a single **benefit error**, regardless of the number of claims, claimants who sustain **damages**, or number of **insureds** against whom such claims are made, and such **benefit error** will be deemed to have occurred at the earliest of such negligent acts, errors or omissions.

**Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a certified act of terrorism:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Cover Page** means the Cover Page, or any renewal or modification thereof, forming a part of the **policy**. The terms of the **Cover Page** which is in effect at the time coverage attaches (which may be the time an event occurs or the time a report is made, as described in the respective Coverage Part) will apply to any claim or **suit**, even if the **policy** is later amended.

**Coverage effective date** means the date so designated in the **Coverage Summary**.

**Coverage Summary** means the Coverage Summary, or any renewal or modification thereof, forming a part of the **policy**. The terms of the **Coverage Summary** which is in effect at the time coverage attaches (which may be the time an event occurs or the time a report is made, as described in the respective Coverage Part) will apply to any claim or **suit**, even if the **policy** is later amended.

**Coverage territory** means the United States of America (including its territories and possessions), and Puerto Rico.

**Covered subsidiary** means (1) any **subsidiary** so designated on the **Coverage Summary** and (2) any **subsidiary** created or acquired during the **policy period**; provided that, within sixty (60) days after the creation or acquisition thereof,

the **policyholder** provides full details of the transaction under which the **subsidiary** was created or acquired, the **policyholder** pays any applicable premium, and the **subsidiary** is added as an **insured** by endorsement to the **policy**.

**Damages** means all amounts of money which are reimbursable under this **policy** because of any **professional incident, injury**, or **property damage**.

**Defense costs** means all expenses incurred in the investigation, adjustment, settlement and adjudication of any claim or **suit**, including legal fees and expenses; provided that this definition shall not include any expenses incurred by, or on behalf of, any Third Party Administrator that may adjust, manage or otherwise handle any claim covered by this policy


**Discharge of pollutants** means:

1. The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

    a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**;

    b. At or from any premises, site or location which is or was at any time used by an **insured** for the handling, storing, disposing, processing or treating of **pollutants**;

    c. Which are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for an **insured** or any person for whom an **insured** may be legally responsible; or

    d. At or from any premises, site or location on which an insured or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

        (1) If the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

        (2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of **pollutants**; or

2. Any loss, cost or expense arising out of any:

    a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**, or

    b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

**Employee** means a person on the regular payroll of the **policyholder**, an **other insured** or a **covered subsidiary** who has federal income taxes withheld from his or her compensation and who has an assigned work schedule.

**Employee benefit programs** means group life insurance, group accident and health insurance, profit sharing plans, pension plans, employee stock subscription plans, worker's compensation, unemployment insurance, social security and disability benefits insurance, or any other similar plan, provided in whole or in part by the **policyholder**.

**Employment practices claim** means any claim asserted pursuant to statutory or common law by any past, present or prospective **employee** for or arising out of alleged (1) wrongful dismissal, discharge or termination, either actual or constructive, of employment, (2) wrongful failure to employ or promote, (3) failure to grant tenure, (4) sexual or workplace harassment of any kind, (5) discrimination as to any term, condition, benefit or privilege of employment, (6) failure to provide adequate employee policies and procedures, (7) negligent hiring, supervision or retention of any **employee**, (8) employment related misrepresentations, (9) invasion of privacy, (10) tort of outrage or intentional infliction of emotional distress or (11) violation of any **federal employment law**, including regulations promulgated thereunder or any similar state or local law.

**Extended reporting period** means any period of time after expiration of the **policy period** during which any claim or **suit** may be **reported**, under a Coverage Part providing coverage on a claims-made basis, by reason of the issuance of a **reporting endorsement**.

**Federal employment law** means any of the following laws, as amended:

1. Fifth and Fourteenth Amendments to the United States Constitution;

2. Civil Rights Act of 1866 (42 U.S.C. § 1981);

3. Civil Rights Act of 1871 (42 U.S.C. § 1983);

4. Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.), including, but not limited to, the Pregnancy Discrimination Act;

5. Age Discrimination in Employment Act of 1967 (29 U.S.C. § 623, et seq.), including, but not limited to, the Older Workers Benefit Protection Act;

6. Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.);

7. Civil Rights Act of 1991 including, but not limited to, 42 U.S.C. § 1981a;

8. Equal Pay Act of 1963 (29 U.S.C. § 206(d)(i)); and

9. Family and Medical Leave Act of 1993 (29 U.S.C. § 2601, et seq.).

**Injury** means **bodily injury, personal injury,** or **advertising injury.**

**Insured** means any person or organization qualifying as such under the respective Coverage Part.

**Insured contract** means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement;

4. An obligation as required by ordinance, to indemnify a municipality, except in connection with work for a municipality; or

5. An elevator maintenance agreement.

An **insured contract** does not include that part of any contract or agreement that indemnifies any person or organization for damage by fire to premises rented or loaned to an **insured.**

**Leased employee** means a person leased to the **policyholder** or **covered subsidiary** by a labor leasing firm, under a written agreement between the **policyholder** or **covered subsidiary** and the labor leasing firm, to perform duties related to the conduct of the **policyholder's,** or **covered subsidiary's,** business.

**Loading or unloading** means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto;**

2. While it is in or on an aircraft, watercraft or **auto;** or

3. While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered;

but **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **auto.**

**Managed care organization** means a health maintenance organization, physician provider organization, preferred provider organization, physician/hospital organization, independent practice association, managed services organization or other organization responsible for managing or financing the delivery of health care to patients.

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which takes place at or from a **scheduled facility.**

**Other insurance** means any valid and collectible insurance, self-insurance, self-insured retention, self-insured trust, or risk transfer instrument of any kind, other than this **policy,** that provides defense or indemnity to any **insured** for any claim, loss, liability or damages covered by this **policy.**

**Other insured** means a person or organization so designated in the **Coverage Summary** or by an endorsement to the **policy.**

**Personal injury** means injury, other than **bodily injury,** arising out of one or more of the following offenses, which takes place at or from a **scheduled facility:**

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

**Policy** shall have the meaning given on the **Cover Page.**

**Policyholder** means the person or organization so designated on the **Cover Page.**

**Policy period** names the period specified as such in the **Coverage Summary**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and wastes (including materials to be recycled, reconditioned or reclaimed).

**Professional health care services** means:

1.  Medical, surgical, dental, x-ray or nursing treatment, including the furnishing or dispensing of food, beverages, drugs or medical, dental or surgical supplies or appliances in connection therewith;

2.  Handling of or performing postmortem examinations on human bodies; and

3.  Service by any **insured** as a member of a formal accreditation, standards review or similar professional board or committee of the **policyholder**, having jurisdiction over the health care provided by the **policyholder**, or acting at the written direction of any such board or committee.

**Professional incident** means any act or omission in the furnishing of **professional health care services**, occurring at or from a **scheduled facility**, or as emergency care, rendered gratuitously and in good faith, at the scene of an accident. Any such act or omission, together with all other acts or omissions in the furnishing of **professional health care services** to any one person shall be considered one **professional incident**. In no event shall separate, discrete events or injuries that occur during a single professional procedure or course of treatment constitute more than one **professional incident**. For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **professional incident**, and a continuing course of treatment or repeated exposure to substantially the same conditions constitutes a single **professional incident**.

**Property damage** means:

1.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**Report, reported,** and **reporting** mean, when used with respect to a **professional incident, occurrence**, **injury**, or medical payment which has become the subject of an **assertion of liability**, the receipt by **our** Claims Department, from an **insured** or its representative, of a copy of the **assertion of liability** and written notice specifying (1) the date the **assertion of liability** was received, (2) the date, time, and place of the **professional incident, occurrence**, **injury**, or medical payment which forms the basis of the **assertion of liability**, (3) a description of such **professional incident, occurrence**, **injury**, or medical payment, (4) the name, address, and age of the patient or claimant, and (5) the names of witnesses, including other treating physicians. If **we** have designated a form for the **reporting** of claims or **suits**, the **report** must be made by means of such form, which must be fully completed and signed as provided therein. Disclosure of incidents by an **insured** as a part of engineering or loss control services or claims audits made in connection with self- insured retention programs shall not be considered the **reporting** of a claim or **suit**.

**Reporting endorsement** means an endorsement to a Coverage Part which provides coverage on a claims-made basis providing for an **extended reporting period**.

**Retroactive date** means the retroactive date applicable to a Coverage Part which provides coverage on a claims-made basis, as specified in the **Coverage Summary.**

**Scheduled facility** means (1) a health care facility listed in the **Coverage Summary** or (2) a health care facility which is acquired, rented or occupied by the **policyholder** during the **policy period**; provided that, within sixty (60) days after the acquisition or occupation thereof, the **policyholder** provides full details of the transaction under which the facility was acquired or occupied, the **policyholder** pays any applicable premium, and the facility is added as a **scheduled facility** by endorsement to the **policy**. Mobile or ambulatory services, such as home health care or air-ambulance services, provided out of or from a **scheduled facility**, will be considered as having been provided at such **scheduled facility**.

**Subsidiary** means any entity of which the **policyholder** has or controls the right to elect or appoint more than fifty percent (50%) of the directors or trustees.

**Suit** means a civil proceeding in which damages are alleged against an **insured** which would be covered by the **policy**.

**Suit** includes:

1.  An arbitration proceeding in which such damages are claimed and to which an **insured** must submit or does submit with **our** consent; or

2.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which an **insured** submits with **our** consent.

**Third-party payor** means an insurance company, Medicare, Medicaid or other person or organization which by law or agreement is or may be liable for all of or a portion of the cost of medical care provided to patients by the **policyholder**, provided the **third-party payor** shall not include a person or organization owned or controlled by, or under common ownership or control with, the **policyholder.**

**We, our** and **us** refer to the insurance company issuing the **policy**, which is designated as "THE COMPANY" on the **Cover Page**.

# HEALTH CARE FACILITY LIABILITY POLICY
## REIMBURSEMENT FORM
## GENERAL CONDITIONS

### I.    LIMITS OF LIABILITY AND DEDUCTIBLES

The limits of liability specified in the **Coverage Summary** shall apply to all claims or suits made or brought against any or all **insureds** regardless of the number of: a) Insureds; b) Claims made or suits; c) persons or organizations making claims or suits. The limit of liability specified in the **Coverage Summary** as "each incident" is the most **we** will reimburse for the sum of all **damages** and **defense costs** paid by the policyholder during the policy period resulting from any one **professional incident** or **occurrence** to which this insurance applies. The limit of liability stated in the **Coverage Summary** as "annual aggregate" is the most **we** will reimburse for the sum of all **damages** and **defense costs** paid by the policyholder during the policy period resulting from all **professional incidents** or **occurrences** to which this insurance applies. **We** shall have the right to allocate **damages** and **defense costs** among claimants and **insureds** as **we** deem appropriate.

If a Self-Insured Retention is shown in the **Coverage Summary**, **our** liability arises only after the **policyholder** has paid **damages** and **defense costs** in an amount equal to the Self-Insured Retention.

If a "Deductible" is shown for any **insured** in the **Coverage Summary**, the **policyholder** shall be liable for payment of all **damages** and **defense costs** with respect to each **professional incident** and or **occurrence** in an amount equal to the Deductible shown in the **Coverage Summary**. **Our** limit of liability will be reduced by any Deductible amount for which we make a reimbursement payment to the **policyholder**.

If a Condition Precedent to Policy Benefits is shown in the **Coverage Summary**, **our** liability arises only after the **policyholder** has paid **damages** and **defense costs** in an amount equal to the Condition Precedent to Policy Benefits.

### II.    RIGHTS AND DUTIES OF POLICYHOLDER

Unless named as an **insured** in the **Coverage Summary**, the **policyholder** is not an **insured** and shall have no coverage under this **policy**. However, the **policyholder** shall pay all premiums or fees, receive all return premiums, if any, provide any consents, including consent to settle, as may be required, and receive all notices and invoices under this **policy**. All provisions in the General Conditions which are applicable to the **insureds** shall also apply to the **policyholder**.

### III.    INSPECTION AND AUDIT

**We** shall be permitted but not obligated to inspect any **insured's** property and operations at any time. Neither **our** right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any **insured** or others, to determine or warrant that such property or operations are safe, healthful, or in compliance with any law, rule or regulation.

**We** may examine and audit the **policyholder's** books and records at any time during the **policy period** and extensions thereof, and within three years after the final termination of the **policy**, as far as they relate to the subject matter of this insurance.

### IV.    INSUREDS' DUTIES

A.    When any payment for **damages** or **defense costs** is made by the policyholder during the policy period and to which this insurance applies such payments must be **reported** to **us** as soon as possible, but not later than 60 days thereafter.

B.    If **we** exercise **our** right to defend any claim or suit to which this insurance applies, each **insured** shall cooperate with **us** and, upon **our** request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to such **insured** because of injury with respect to which insurance is afforded under this **policy**, and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

C.    No **insured** shall alter, destroy, or dispose of patient records or otherwise misrepresent or conceal facts pertinent to any incident, claim or suit.

D.    If any **insured** makes a payment for **damages** or **defense costs** to which this insurance applies and which is to be reimbursed during the policy period, such **insured** shall provide to us all documentation evidencing the payment to be reimbursed, including but not limited to, evidence of the date and substance of the **professional incident** or **occurrence** giving rise to the payment the date the payment was made, the type of liability incurred, and the amount of the payment.

Failure by any **insured** to comply with its obligations under the **policy** shall be grounds for **us** to terminate the **policy**.

## V.   CLAIMS AGAINST US

No claim shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this **policy**, nor until the amount of any **insured's** obligation to pay shall have been finally determined either by judgment against an **insured** after actual trial or by written agreement of such **insured**, the claimant, and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this **policy** to the extent of the insurance afforded by this **policy**. No person or organization shall have any right under this **policy** to join **us** as a party to any action against an **insured** to determine the **insured**'s liability, nor shall **we** be impleaded by an **insured** or any legal representative.

## VI.   OTHER INSURANCE

The insurance provided by this **policy** is excess over any **other insurance** and will not contribute or participate in any defense or indemnity until all **other insurance** has been exhausted.

## VII.   SUBROGATION

In the event of any reimbursement under this **policy**, **we** shall be subrogated to any **insured's** rights of recovery therefor against any person or organization, and any such **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. No **insured** shall do anything to prejudice such rights.

## VIII.   ASSIGNMENT

No **insured** may assign any interest in this **policy**. If, however, any **insured** shall die, such insurance as afforded by this **policy** shall apply to such **insured's** legal representative, as an **insured**, but only while acting within the scope of the representative's duties as such. No **insured** shall assign any cause of action against **us** that relates to or arises in connection with this **policy**, or that is based on allegations that **we** did not fulfill **our** obligations to any **insured** in good faith.

## IX.   CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not affect a waiver or change in any part of this **policy** or estop **us** from asserting any right under the terms of this **policy**; nor shall the terms of this **policy** be waived or changed, except by endorsement issued to form a part of this **policy**.

## X.   CANCELLATION OR EXPIRATION

This **policy**, or coverage of any **insured** thereunder, may be canceled by the **policyholder** by mailing to **us** written notice stating when thereafter the cancellation shall be effective. This **policy**, or coverage of any **insured** thereunder, may be canceled by **us** by mailing to the **policyholder**, at the address shown in the **Coverage Summary**, written notice stating when such cancellation shall be effective, in accordance with applicable state law. The effective date and hour of cancellation stated in the notice shall become the end of the **policy period** for each **insured** to which such cancellation applies. Delivery of such written notice either by the **policyholder** or by **us** shall be equivalent to mailing. Upon cancellation or expiration of the **policy**, **we** will have no further liability or obligation under the **policy**. All fees are fully earned and nonrefundable. Bankruptcy, insolvency or failure of any **insured** or any **insured's** estate to satisfy in full all requirements of the Condition Precedent to Policy Benefits Endorsement (if the **policy** includes such endorsement) or a change in corporate control or corporate form of the **policyholder** will cause the immediate cancellation of this **policy** and shall relieve **us** of any of **our** obligations hereunder.

## XI.   NON-RENEWAL OF POLICY

This **policy** is hereby non-renewed upon expiration. While neither the **policyholder** nor **we** have any obligation to renew this **policy**, we may elect to offer reinstatement. Any such reinstatement will be issued on the policy forms and endorsements then in effect, in accordance with **our** rules, rates, rating plans and applicable fees.

## XII.   FRAUD AND MISREPRESENTATIONS

By acceptance of this **policy**, all **insureds** agree that the statements in the **Coverage Summary** and in their respective applications or renewal applications for insurance are their agreements and representations, that this **policy** is issued in reliance upon the truth of such representations, and that this **policy** embodies all agreements existing between themselves and **us** or any of **our** agents relating to this insurance. In the event of any fraud, material misrepresentation or omission by any **insured** in any application or renewal application for insurance, this **policy** is void as to the party committing such fraud, material misrepresentation or omission, and no coverage will be afforded to such party under this **policy**.

## XIII.   ARBITRATION

Both the **insureds** and **we** acknowledge that this agreement evidences a transaction involving interstate commerce. Any dispute, claim or controversy arising out of, relating to or in connection with this **policy**, its subject matter or its negotiation, as to the existence, validity, interpretation, performance, non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud, deceit, or suppression of any material fact or breach of fiduciary duty shall be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq. (The United States Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association. Such arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party to arbitration shall bear its own arbitration costs and expenses. However, in the event any party is required to file a petition or commence any such other proceeding to compel arbitration, the arbitrator may award that party reasonable attorney's fees and costs incurred in having to bring such action. The arbitrator shall have the discretion to order a pre-hearing exchange of information by the parties, including, without limitation, production of requested documents, exchanging of summaries of testimony of proposed witnesses, and examination by deposition of parties. Notwithstanding contrary state law or regulation, the arbitrator shall have the authority to award any remedy or relief allowed under the provisions of the United States Arbitration Act, including, without limitation, specific performance of any obligation created under this **policy**, the awarding of punitive damages, the issuance of an injunction, or the imposition of sanctions for abuse or frustration of the arbitration process. Any arbitration award shall be in writing and shall specify the factual and legal bases of the award. Judgment on the award rendered by the arbitrator shall be final and may be entered in any court having jurisdiction thereof. The provisions hereof shall be a complete defense to any suit, action, or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, claim or controversy arising under this **policy**.

If **we** maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in any county in which **we** maintain such office in such state. If **we** do not maintain an office in the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located, the arbitration shall proceed in the county that includes the capital of the state in which the address of the **policyholder** (as specified in the **Coverage Summary**) is located.

## XIV.   GOVERNING LAW

This **policy** shall be construed, and the legal relations between **us** and the **insureds** (and anyone claiming under the **insureds**) shall be determined, in accordance with the laws of the state in which the address of the **policyholder**, as specified in the **Coverage Summary**, is located, except that the Federal Arbitration Act (Title 9 of the United States Code) shall apply to the rights and obligations of the parties to submit any dispute, claim or controversy arising under this **policy** to arbitration, as provided in Section XIII above.

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# GENERAL EXCLUSIONS

**A.**   **NUCLEAR ENERGY LIABILITY EXCLUSION**

   **1.**   The **policy** does not apply:

   a.   to **bodily injury** or **property damage**:

   (1)   With respect to which any **insured** is also insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2)   Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the such **insured** is, or had the **policy** not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

   b.   under any Medical Payments coverage, to expenses incurred with respect to **bodily injury** resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization;

   c.   to **bodily injury** or **property damage** resulting from the "hazardous properties" of "nuclear material," if:

   (1)   The "nuclear material" (1) is at any nuclear facility owned by, or operated by or on behalf of, any **insured** or (2) has been discharged or dispersed therefrom;

   (2)   The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any **insured**; or

   (3)   The **bodily injury** or **property damage** arises out of the furnishing by any **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility.

   **2.**   As used in this exclusion:

   "Hazardous properties" include radioactive, toxic or explosive properties.

   "Nuclear material" means "source material," "special nuclear material" or "byproduct material."

   "Source material," "special nuclear material" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

   "Waste" means any waste material (1) containing "byproduct material" and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of "nuclear facility" under paragraph (1) or (2) thereof.

   "Nuclear facility" means

   a.   Any "nuclear reactor";

   b.   Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing "spent fuel," or (iii) handling, processing or packaging "waste";

   c.   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if any time the total amount of such material in the custody of an **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   d.   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

This exclusion does not apply to the liability of any **insured**, otherwise covered by the **policy**, arising out of the practice of nuclear medicine or activities related to nuclear medicine by the **policyholder**.

**B.    ASBESTOS EXCLUSION**

The **policy** does not apply to liability for **bodily injury**, **property damage**, disability, shock, mental anguish or mental injury at any time arising out of the manufacture of, mining of, use of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of any **insured** to indemnify any party because of damages arising out of such **bodily injury**, **property damage**, disability, shock, mental anguish, or mental injury at any time as a result of the manufacture of, mining of, use of, or exposure to asbestos products, asbestos fibers, or asbestos dust.

**C.    CAPS ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

With respect to any one or more **certified acts of terrorism**, we will not reimburse any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY REIMBURSEMENT FORM
## HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA) CIVIL MONETARY PENALTY ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

THIS ENDORSEMENT MODIFIES THE PROFESSIONAL LIABILITY COVERAGE PART OF THE **POLICY.**

**We** shall reimburse the **policyholder** all sums that an **insured** shall become legally obligated to pay as a Civil Monetary Penalty as a result of a HIPAA Civil Violation first alleged against an **insured** during the **policy period** or any applicable extended reporting period, arising out of any HIPAA Civil Violation committed or alleged to have been committed by an **insured** or by any person for whose actions the **insured** is legally responsible, provided that:

1.  such HIPAA Civil Violation

    a.  arises out of the rendering of or failure to render **professional health care services** by the **insured**; and

    b.  is committed or alleged to have been committed on or after the **retroactive date**; and

2.  prior to the effective date of this **policy**, the **insured** had no knowledge of such HIPAA Civil Violation or any fact, circumstance, situation, or incident that may have resulted in a HIPAA Civil Violation.

The most **we** will reimburse for the combined total of Civil Monetary Penalties and Legal Expenses for each HIPAA Civil Violation first alleged during the **policy period** or any applicable extended reporting period shall not exceed the Limit of Liability stated below as applicable to Each HIPAA Civil Violation. Subject to the foregoing, the most **we** will reimburse for the combined total of Civil Monetary Penalties and Legal Expenses for all HIPAA Civil Violations first made during the **policy period** or any applicable extended reporting period shall not exceed the Limit of Liability stated below as applicable to All HIPAA Civil Violations.

1.  $0                    Each HIPAA Civil Violation
2.  $0                    All HIPAA Civil Violations

The above-stated limits of liability are contained within, and not in addition to, the Limits of Liability stated on the **Coverage Summary**. Any reimbursements made pursuant to this endorsement will erode the Limits of Liability stated on the **Coverage Summary**.

The **insured** shall **report** an alleged HIPAA Civil Violation to **us** within ten (10) days of receipt of notice, by the **insured** or anyone on his behalf.  The **insured** must provide such **report** prior to incurring any legal fees or legal expenses related to such matter.

For purposes of this endorsement only, the following terms shall have the following meanings:

1.  "Civil Monetary Penalty" means a monetary penalty assessed as a result of a HIPAA Civil Violation.

2.  "HIPAA Civil Violation" means a civil violation of the Health Insurance Portability and Accountability Act or any amendment or modification of that act.

3.  "Legal Expenses" means reasonable and necessary fees, costs, and expenses incurred in the investigation, defense, and appeal of any HIPAA Civil Violation, but does not include any Civil Monetary Penalty or any wages, salaries, or fees of any **insured**.

All other provisions of the **policy** shall remain unchanged.

Health Care Professional Liability Policy
Reimbursement Form
Health Insurance Portability and Accountability Act
(HIPPA) Civil Monetary Penalty Endorsement

Page 1 of 1

# HEALTH CARE PROFESSIONAL LIABILITY POLICY REIMBURSEMENT FORM
# PROFESSIONAL LEGAL DEFENSE COVERAGE PART

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

THIS ENDORSEMENT MODIFIES THE PROFESSIONAL LIABILITY COVERAGE PART OF THE **POLICY.**

Limits of Liability:

Each **Covered Investigation**:   $25,000

Each **Covered Audit**:   $25,000

Each **Policy Period**:   $150,000

## I.  DEFINITIONS

Terms appearing in **bold face print** shall have the meanings given in DEFINITIONS PART. In addition:

**Appointed counsel** means the attorney or firm of attorneys that, in **our** sole discretion, is either (1) appointed by **us** in writing, or (2) appointed by a **covered insured** with **our** prior written approval, to defend a **covered insured** in any **covered investigation**.

**Audit expenses** means fees and expenses of an accountant or other consultant engaged by a **covered insured** in connection with any **covered audit**. **Audit expenses** do not include any taxes, penalties or other expenses incurred by a **covered insured**.

**Covered audit** means any audit or review of billing or medical records undertaken by a **covered insured** in response to an investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

**Covered insured** means any **insured** under the Professional Liability Coverage Part of the **policy**.

**Covered investigation** means any one or more of the following:

A.  An investigation or proceeding commenced by the governmental or regulatory agency charged with determining whether the **covered insured** participated in the improper transfer of a patient ("dumping"), in violation of the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended ("COBRA/EMTALA").

B.  An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with laws regulating Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid), to determine whether the **covered insured** provided **professional health care services** improperly to a patient covered by Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid).

**C.**  An investigation or proceeding commenced by a **utilization and quality control peer review organization**, but only at the level of such investigation or proceeding in which sanctions may be imposed on the **covered insured.**

D.  An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Clinical Laboratory Improvement Amendments of 1988 ("CLIA"), whether or not the **covered insured** was in violation of such regulations.

E.  An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with regulations pertaining to the Health Insurance Portability and

Accountability Act of 1996 ("HIPAA") or the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90") including all OBRA Acts updating OBRA '90, whether or not the **covered insured** was in violation of such regulations.

F.   An investigation or proceeding commenced by the governmental or regulatory agency charged with the enforcement of compliance with the Occupational Safety and Health Administration ("OSHA") regulations pertaining to bloodborne pathogens, whether or not the **covered insured** was in violation of such regulations.

G.   A subpoena or request received by the **covered insured**, requiring the **covered insured** to testify in a trial or deposition, or to provide other discovery, other than as an expert witness, in connection with a legal proceeding (1) arising out of a **professional incident**, but (2) in which the **covered insured** is not a party.

H.   A claim or investigation instituted by a patient of the **covered insured** alleging errors or omissions by the **covered insured** in billing statements for **professional health care services** rendered to such patient.

I.   A disciplinary proceeding initiated by a licensure commission, board of ethics or similar professional body, which accuses a **covered insured** of, or investigates an accusation that a **covered insured** engaged in, improper or unprofessional conduct in the course of such **covered insured's** medical practice. An investigation or proceeding commenced by any federal or state agency alleging violation by any **covered insured** of Medicare or Medicaid laws, rules or regulations relating to reimbursement for medical services.

J.   An investigation or proceeding commenced by a hospital or its medical staff for the purpose of revocation, non-renewal, termination, suspension, modification or restriction of an insured's staff privileges or for the purpose of peer review or credentialing.

K.   A proceeding alleging violation of the federal Anti-Kickback statute or liability under the Federal False Claims Act or the Patient Protection and Affordable Care Act.

**Criminal prosecution** means any governmental action seeking enforcement of criminal laws, including offenses for which conviction could result in imprisonment.

**Legal expenses** means the normal, reasonable and customary charges of the **appointed counsel** in defending a **covered insured** in any **covered investigation**, including reasonable out-of-pocket charges incurred by such **appointed counsel**. **Legal expenses** does not include damages, fines, judgments or penalties that may be assessed in any **covered investigation** or paid in any settlement thereof, or expenses incurred in the defense of any **criminal prosecution**.

**Utilization and quality control peer review organization** means a utilization and quality control peer review organization under contract with the U. S. Department of Health and Human Services to review the professional activities of physicians and other health care practitioners and providers under the federal Social Security Act, as amended, while acting within the scope of its duties under such contract.

## II.   INSURING AGREEMENT

Subject to the applicable limit of liability stated above, **we** agree to reimburse the **policyholder** for all **legal expenses** (in excess of any applicable Self-Insured Retention, Deductible, or Condition Precedent to Policy Benefits) incurred by a **covered insured** in the course of a **covered investigation**, provided that:

**A.**   the incident giving rise to the **covered investigation** occurs after the **retroactive date** applicable to such **covered insured** and prior to the termination of the **policy;**

B.   the **covered insured** first receives written notice of the commencement of the **covered investigation** within the **policy period**; and

C.   the **covered investigation** is first **reported** during the **policy period**; and

D.   the incident giving rise to the **covered investigation** is not the subject of any previous or current claim for professional liability which has been reported to another insurance company or self-insured retention or trust or any other risk transfer instrument providing coverage to the **insured**.

Subject to the applicable limit of liability stated above, **we** agree to reimburse the **policyholder** for all **audit expenses** (in excess of any applicable Self-Insured Retention, Deductible, or Condition Precedent to Policy Benefits) incurred by a **covered insured** in the course of a **covered audit**, provided that:

A.  the acts or omissions of the **covered insured** giving rise to the **covered audit** occurred after the **retroactive date** applicable to such **covered insured** and prior to the termination of the **policy**;

B.  the **covered insured** first receives written notice of the investigation or proceeding to which the **covered audit** relates within the **policy period**; and

C.  such investigation or proceeding is first **reported** during the **policy period**.

**PERSONS INSURED**

Only **covered insureds** are insured under this Coverage Part.

**III.    LIMIT OF LIABILITY**

The limit of liability specified above as "Each Covered Investigation" and the limit of liability specified above as "Each Covered Audit" is the most **we** will reimburse the **policyholder** for any one **covered investigation** or any one **covered audit**, respectively. The limit of liability specified above as "Each Policy Period" is the most we will reimburse the **policyholder** for all **covered investigations** and all **covered audits** which are first **reported** during the **policy period**.

All **covered investigations** and **covered audits** arising out of the same underlying facts or events, whenever and wherever initiated, are deemed to be one **covered investigation** or **covered audit**, even if related **covered investigations** or **covered audits** comprising such single **covered investigation** and **covered audit** were made in more than one **Policy Period**.

**IV.    REPORTING ENDORSEMENT PROVISIONS**

If a **Reporting Endorsement** is issued for a **covered insured**, the period for **reporting covered investigations** under this Coverage Part shall be automatically extended for the duration of the **Reporting Endorsement**, but only for the **reporting** of **covered investigations** which are otherwise covered hereunder. Termination or cancellation of the **Reporting Endorsement** shall automatically terminate the period for **reporting covered investigations** under this Coverage Part.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# REIMBURSEMENT FORM
# CORRECTIONAL MEDICINE CIVIL RIGHTS ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**  BUQSTRTTN011300_050001_03

THIS ENDORSEMENT MODIFIES THE PROFESSIONAL LIABILITY COVERAGE PART OF THE **POLICY.**

Paragraph g of Item 2, <u>Exclusions</u>, of COVERAGE C: HEALTH CARE FACILITY PROFESSIONAL LIABILITY COVERAGE is hereby deleted and replaced with the following:

g.  Liability arising out of any antitrust violation (except for liability arising from service by an **insured** as a member of a formal accreditation, standards review or similar quality control professional board or committee of the **policyholder**, or actions taken at the direction of such a board or committee, for which coverage is otherwise afforded), unfair competition, discrimination, or any other act or omission which violates any statute, ordinance or regulation imposing any fine, penalty or other sanction, including but not limited to attorneys' fees; however, this exclusion does not apply to liability for civil rights violations arising under the Civil Rights Act of 1871 (42 U.S.C. § 1983), any amendments thereto, or any similar state statutes, provided that such liability arises out of the rendering of or failure to render **professional health care services** by an **insured** to any natural person.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# REIMBURSEMENT FORM
# SEXUAL MISCONDUCT COVERAGE PART

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**  BUQSTRTTN011300_050001_03

THIS ENDORSEMENT MODIFIES THE PROFESSIONAL LIABILITY COVERAGE PART OF THE **POLICY.**

Limits of Liability**:**        $3,000,000 Each **Covered Investigation**

                     $6,000,000 Each **Policy Period**

## I.   DEFINITIONS

Terms appearing in **bold face print** shall have the meanings given in form Definitions Part. In addition:

**Appointed counsel** means the attorney or firm of attorneys that, in **our** sole discretion, is either (1) appointed by **us** in writing, or (2) appointed by a **covered insured** with **our** prior written approval, to defend a **covered insured** in any **covered investigation**.

**Covered insured** means any **insured** under the Professional Liability Coverage Part of the **policy**.

**Covered investigation** means a claim or investigation instituted by a patient of the **covered insured** alleging sexual misconduct or harassment by the **covered insured** or any person for whose acts or omissions the **covered insured** is legally responsible in the course of providing **professional health care services** to such patient.

**Covered location** means any location listed on this endorsement for which the **policyholder** is required by contract to provide sexual misconduct coverage.

**Criminal prosecution** means any governmental action seeking enforcement of criminal laws, including offenses for which conviction could result in imprisonment.

**Legal expenses** means the normal, reasonable and customary charges of the **appointed counsel** in defending a **covered insured** in any **covered investigation**, including reasonable out-of-pocket charges incurred by such **appointed counsel**. **Legal expenses** does not include damages, fines, judgments or penalties that may be assessed in any **covered investigation** or paid in any settlement thereof, or expenses incurred in the defense of any **criminal prosecution**.

## II.   INSURING AGREEMENT

Subject to the applicable limit of liability stated above, **we** agree to reimburse the **policyholder** all sums (in excess of any applicable Self-Insured Retention, Deductible, or Condition Precedent to Policy Benefits) that the **covered insured** shall become legally obligated to pay as **damages** or **legal expenses** incurred by such **covered insured** in the course of a **covered investigation**, provided that:

A.    the alleged sexual misconduct or harassment giving rise to the **covered investigation** occurs (1) on or after the **retroactive date** applicable to such **covered insured** as listed below and (2) prior to the Termination Date applicable to such **covered insured** as listed below or the date of termination of the insurance provided by the **policy** to the **covered insured**, whichever is earlier;

B.    the **covered insured** first receives written notice of the commencement of the **covered investigation** within the **policy period**;

C.    the **covered investigation** is first **reported** during the **policy period**;

D.    the alleged sexual misconduct or harassment giving rise to the **covered investigation** occurs at a **covered location**;

E.    for claims of direct liability against a **covered insured**, the alleged sexual misconduct or harassment giving rise to the **covered investigation** was not malicious or intentionally wrongful; and

F.  for claims of vicarious liability against a **covered insured**, the **covered insured** did not know and reasonably could not have known, at the time of the alleged sexual misconduct or harassment, of prior sexual misconduct or harassment by the person alleged to have committed the act or omission giving rise to the **covered investigation**.

## III.  PERSONS INSURED

Only **covered insureds** are insured under this Coverage Part.

## IV.  LIMIT OF LIABILITY

The limit of liability specified above as "Each Covered Investigation" is the most **we** will reimburse for the sum of all **damages** and **legal expenses** to all **covered insureds** resulting from any one **covered investigation**. The limit of liability specified above as "Each Policy Period" is the most **we** will reimburse for the sum of all **damages** and **legal expenses** to all **covered insureds** resulting from all **covered investigations** which are first **reported** during the **policy period**. The above-stated limits of liability are contained within, and not in addition to, the Limits of Liability stated on the **Coverage Summary,** applicable to the Professional Liability Coverage Part. Any payments made pursuant to this endorsement will erode the Limits of Liability stated on the **Coverage Summary**. **We** shall not be legally obligated to reimburse the **policyholder** for any paid **damages** or **legal expenses** for a **covered investigation** if the limit of liability applicable to the Professional Liability Coverage Part of the **policy** has been exhausted.

## V.  REPORTING ENDORSEMENT PROVISIONS

If a **Reporting Endorsement** is issued for a **covered insured**, the period for **reporting covered investigations** under this Coverage Part shall be automatically extended for the duration of the **Reporting Endorsement**, but only for the **reporting** of **covered investigations** which are otherwise covered hereunder. Termination or cancellation of the **Reporting Endorsement** shall automatically terminate the period for **reporting covered investigations** under this Coverage Part.

| Covered Location | Retroactive Date | Termination Date |
|---|---|---|
| Any **Scheduled Facility** contracting with the **Policyholder** For the provision of **professional healthcare services** | 11/15/2013 | 3/15/2024 |

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# GENERAL LIABILITY COVERAGE PART

## SECTION I:  COVERAGES

### COVERAGE A: BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

A. During the **policy period** only**, we** will reimburse the **policyholder** those sums that an **insured** becomes fully and finally legally obligated to pay as **damages** and **defense costs** because of **bodily injury** or **property damage** which (i) occurs during the of the **policy period**, (ii) is caused by an **occurrence,** (iii) occurs within the **coverage territory**, (iv) is first **reported** during the **policy period**; and (v) is actually paid by the **policyholder** during the **policy period**. **Our** obligation to make any reimbursement is subject to (a) applicable limits of liability stated in the **Coverage Summary**; (b) any Self-Insured Retention stated in the **Coverage Summary**, (c) any Deductible stated in the **Coverage Summary** and (d) any condition precedent to policy benefits stated in the **Coverage Summary**.

2. Exclusions

The insurance provided by COVERAGE A does not apply to:

a. **Bodily injury** or **property damage** expected or intended from the standpoint of an **insured**. This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

b. **Bodily injury** or **property damage** for which an **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

   (1) That an **insured** would have in the absence of the contract or agreement; or

   (2) Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **insured** are deemed to be damages because of **bodily injury** or **property damage**, provided:

      (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

      (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. Any obligation of an **insured** under a worker's compensation, employer's liability, disability benefits or unemployment compensation law or any similar law.

d. **Bodily injury** or **property damage** sustained by any **insured** whether or not such **bodily injury** or **property damage** arises out of the activities or operations of any other **insured**.

e. **Bodily injury** to:

   (1) An **employee** of an **insured** arising out of and in the course of his or her employment or duties;

   (2) A **leased employee** of an **insured** arising out of and in the course of his or her employment or duties;

   (3) A past, present or prospective **employee** or **leased employee** of an **insured**, arising from any **employment practices claim**; or

   (4) Any relative or member of the family or household of a past, present or prospective **employee** or **leased employee** as a consequence of (1), (2) or (3) above.

This exclusion applies:

   (1) Whether an **insured** is or may be liable as an employer or in any other capacity; and

   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

f.   Liability arising from the **discharge of pollutants**; provided that this exclusion does not apply to **bodily injury** or **property damage** arising out of heat, smoke or fumes from a hostile fire at a **scheduled facility**. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

g.   **Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any **insured**. Use includes operation and **loading or unloading**.

   This exclusion applies even if the claims against any **insured** allege negligence or other wrongdoing in the supervision, training or monitoring of others by that **insured**, if the **occurrence** which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft that is owned or operated by or rented or loaned to any **insured**.

   This exclusion does not apply to:

   (1)   Parking an **auto** on, or on the ways next to, **scheduled facilities**, provided the **auto** is not owned by or rented or loaned to any **insured**; or

   (2)   **Bodily injury** or **property damage** arising out of the operation of any:

      (a)   cherry picker or similar device mounted on an automobile or truck chassis and used to raise or lower workers; or

      (b)   air compressor, pump or generator, including spraying, welding, building cleaning or lighting equipment.

h.   **Bodily injury** or **property damage** due to war, whether or not declared, civil war, insurrection, rebellion, or revolution, or to any act or condition incident to any of the foregoing.

i.   **Bodily injury** or **property damage** due to the rendering of or failure to render **professional health care services**.

j.   **Property damage** to:

   (1)   Property owned, rented or occupied by any **insured**;

   (2)   Property any **insured** sells, gives away or abandons, if the **property damage** arises out of any part of those premises;

   (3)   Property loaned to any **insured**; or

   (4)   Personal property in the care, custody or control of any **insured**.

   This exclusion does not apply to **property damage** to structures or portions thereof rented to the **policyholder**, including structures permanently attached thereto, if such **property damage** arises from fire; provided that the most **we** will pay for **property damage** arising from any such fire is the amount shown in the **Coverage Summary** as the Fire Damage Limit.

k.   **Bodily injury** to any person while practicing for or participating in any sports or athletic contest or exhibition sponsored by an **insured**.

l.   **Bodily injury** or **property damage** for which any **insured** may be held liable by reason of:

   (1)   Causing or contributing to the intoxication of any person;

   (2)   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   (3)   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies only if the **policyholder** is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

m.   Liability arising out of any (1) willful, wanton, fraudulent (whether intentional or unintentional), dishonest, criminal, reckless, malicious or oppressive act or omission; or (2) conduct which is outrageous, demonstrates conscious indifference to consequences, or evidences intentional, reckless or careless disregard for the rights or safety of others.

n.   **Bodily injury** or **property damage** arising from any defect in goods or products developed, manufactured, assembled, sold, handled, leased or distributed by any **insured**; provided that this exclusion does not apply to **bodily injury** or **property damage** resulting from goods (other than drugs

or medical supplies) sold by an **insured** in a gift shop, cafeteria or other concession maintained at a **scheduled facility**.

o.   Liability arising from the operation or management by any **insured** of a **managed care organization**.

p.   Liability for damages arising from (1) any claim which was initially asserted against an **insured** prior to the **coverage effective date**, (2) any claim if either such claim or the circumstances giving rise to such claim were reported to a previous insurer prior to the **coverage effective date**, (3) any **occurrence** that an **insured**, prior to the **coverage effective date**, was aware of, should have been aware of, or could have reasonably foreseen or discovered would give rise to a claim or **suit**, or (4) any claim arising out of or related to, or derived from the same or essentially the same facts as, any claim pending prior to the **coverage effective date**.

q.   **Bodily injury** arising out of **personal injury** or **advertising injury**.

r.   Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured**.

s.   Liability for any **damages** or **defense costs**, unless the **occurrence**, claim or **suit** or demand for **damages** is reported in writing to **us** during the **policy period**, regardless of the other terms and conditions of the **Policy**.

## COVERAGE B: PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

1.   Insuring Agreement

a.   During the policy period only, **we** will reimburse the **policyholder** those sums that an **insured** becomes fully and finally legally obligated to pay as **damages** and **defense costs** because of **personal injury** or **advertising injury** to which this insurance applies. **Our** obligation to make any reimbursement is subject to (a) applicable limits of liability stated in the **Coverage Summary**; (b) any Self-Insured Retention stated in the **Coverage Summary**; (c) any Deductible stated in the **Coverage Summary** and (d) any condition precedent to policy benefits stated in the **Coverage Summary**.

b.   This insurance applies only to:

(1)   **Personal injury** caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for an **insured**; and

(2)   **Advertising injury** caused by an offense committed in the course of advertising the goods, products or services of the **policyholder**;

but only if the offense was not committed before the **retroactive date** and a claim for damages because of the **personal injury** or **advertising injury** is first **reported** during the **policy period**.

2.   Exclusions

The insurance provided by COVERAGE B does not apply to:

a.   **Personal injury** or **advertising injury**:

**(1)**   Arising out of oral or written publication of material, if done by or at the direction of an **insured** with knowledge of its falsity;

(2)   Arising out of oral or written publication of material whose first publication took place before the **retroactive date**;

(3)   Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of an **insured**; or

(4)   For which an **insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability the **insured** would have had in the absence of the contract or agreement.

b.   **Advertising injury** arising out of:

(1)   Breach of contract;

(2)   The failure of goods, products or services to conform with advertised quality or performance;

(3)   The wrong description of the price of goods, products or services; or

(4)   An offense committed by an **insured** whose business is advertising, broadcasting, publishing or telecasting.

c.   **Personal injury** or **advertising injury** sustained by any **insured** whether or not such **personal injury** or **advertising injury** arises out of the activities or operations of any other **insured**.

   d.    **Personal injury** to:

     (1)    An **employee** or volunteer of an **insured** arising out of and in the course of employment or duties by such **insured**;

     (2)    A **leased employee** of an **insured** arising out of and in the course of employment or duties by such **insured**;

     (3)    A past, present or prospective **employee**, volunteer or **leased employee** of an **insured**, arising from any **employment practices claim**; or

     (4)    Any relative or member of the family or household of a past, present or prospective **employee**, volunteer or **leased employee** as a consequence of (1), (2) or (3) above.

     This exclusion applies:

     (1)    Whether an **insured** is or may be liable as an employer or in any other capacity; and

     (2)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

   e.    **Personal injury** or **advertising injury** due to the rendering of or failure to render **professional health care services**.

   f.    Liability arising out of any (1) willful, wanton, fraudulent (whether intentional or unintentional), dishonest, criminal, reckless, malicious or oppressive act or omission; or (2) conduct which is outrageous, demonstrates conscious indifference to consequences, or evidences intentional, reckless or careless disregard for the rights or safety of others.

   g.    Liability arising from the **discharge of pollutants**.

   h.    Liability for damages arising from (1) any claim which was initially asserted against an **insured** prior to the **coverage effective date**, (2) any claim if either such claim or the circumstances giving rise to such claim were reported to a previous insurer prior to the **coverage effective date**, (3) any offense that an **insured**, prior to the **coverage effective date**, was aware of, should have been aware of, or could have reasonably foreseen or discovered would give rise to a claim or **suit**, or (4) any claim arising out of or related to, or derived from the same or essentially the same facts as, any claim pending prior to the **coverage effective date**.

   i.    Liability arising from the operation or management by any **insured** of a **managed care organization**.

   j.    Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured**.

   k.    Liability for any **damages** or **defense costs**, unless the **personal injury, advertising injury**, claim or **suit** or demand for **damages** is reported in writing to **us** during the **policy period**, regardless of the other terms and conditions of the **Policy**.

## SECTION I: WHO IS AN INSURED

Each of the following is an **insured** under this Coverage Part to the extent set forth below:

1.    The **policyholder** and any **other insured**;

2.    If the **policyholder** is a partnership, any partner thereof, but only with respect to that partner's liability as such;

3.    If the **policyholder** is an entity other than a partnership, any executive officer, administrator, stockholder, member of the board of directors, trustees or governors of the **policyholder**, member or manager while acting within the scope of that person's duties as such;

4.    Any **covered subsidiary**;

5.    **Employees**, other than executive officers, but only for acts within the scope of their employment by the **policyholder** or a **covered subsidiary**;

6.    **Leased employees**; provided, that **leased employees** are not **insureds** if covered by a policy of insurance provided by the labor leasing firm under which their services are provided;

7.    Volunteer workers for the **policyholder** or a **covered subsidiary**, but only while acting at the direction of the **policyholder** or such **covered subsidiary**, and within the scope of their duties;

8.    Persons enrolled as students, other than physicians, surgeons and dentists in training, enrolled in formal training programs offered by the **policyholder**, but only in connection with their performance of, or failure to

perform, duties relating to the training programs in which they are enrolled; and

9.   Any person (other than an **employee**) or any organization while acting as a real estate manager for the **policyholder**.

# HEALTH CARE FACILITY LIABILITY POLICY
## REIMBURSEMENT FORM
## GENERAL AGGREGATE LIMIT ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

The **policy** is hereby amended as follows:

Notwithstanding any other provision of the **policy**, and irrespective of the Limits of Liability depicted on the **Coverage Summary** for each **insured**, the cumulative total amount **we** will reimburse the **policyholder** on behalf of all **insureds** in combination for all **professional incidents** and **occurrences** that are **reported** during the **policy period** shall not exceed Six Million Dollars ($6,000,000).

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# PROFESSIONAL LIABILITY COVERAGE PART

## SECTION I:  COVERAGE

### COVERAGE C: HEALTH CARE FACILITY PROFESSIONAL LIABILITY COVERAGE

1.    INSURING AGREEMENT

During the **policy period** only, **we** will reimburse the **policyholder** those sums that an **insured** becomes fully and finally legally obligated to pay as **damages** and **defense costs** because of any **professional incident** which (i) occurs on or after the **retroactive date and before the end of the policy period,** (ii) occurs within the coverage territory, (iii) is first **reported** during the **policy period**; and (iv) are actually paid by the **policyholder** during the **policy period**. **Our** obligation to make any reimbursement is subject to (a) applicable Limits of Liability stated in the **Coverage Summary**;
(b) any Self-Insured Retention stated in the **Coverage Summary**; (c) any Deductible stated in the **Coverage Summary;** and (d) any Conditions Precedent to Policy Benefits stated in the **Coverage Summary**.

This insurance applies to **professional incidents** arising out of **professional services** rendered within the United States of America, its possessions and territories, provided that any resulting claim or suit is prosecuted within the United States of America, its possessions or territories. This insurance does not apply to any claim or suit asserted, filed, pursued, or prosecuted in or pursuant to the authority of any court, tribunal, or other governmental or legal authority outside the jurisdiction of the United States of America, its possessions and territories.

2.    Exclusions

The insurance provided by COVERAGE C does not apply to:

a.    Liability assumed by any **insured** under any contract or agreement, whether oral, written or implied, except that this exclusion does not apply to any liability the **insured** would have had in the absence of the contract or agreement.

b.    Liability arising out of any (1) willful, wanton, fraudulent (whether intentional or unintentional), dishonest, criminal, reckless, malicious or oppressive act or omission; or (2) conduct which is outrageous, demonstrates conscious indifference to consequences, or evidences intentional, reckless or careless disregard for the rights of others.

c.    **Injury** to any past, present or prospective **employee**, volunteer worker, **leased employee**, medical staff member, partner, director, officer, trustee or member of the **policyholder** or **covered subsidiary** unless arising from the treatment of any such person as a patient of the **policyholder** or **covered subsidiary**.

d.    Any obligation for which an **insured** or any carrier acting as insurer may be held liable under any worker's compensation, unemployment compensation, disability benefits, or any similar law.

e.    **Injury** arising out of the ownership, maintenance, operation, use, **loading or unloading** of any **auto**, watercraft or aircraft; provided, that this exclusion does not apply to **injury** arising out of the **loading or unloading** of patients from an ambulance or air ambulance. This exclusion applies even if the claims against any **insured** allege negligence or other wrongdoing in the supervision, training or monitoring of others by that **insured**, if the **occurrence** which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft that is owned or operated by or rented or loaned to any **insured**.

f.    Liability arising out of any act or omission of an **insured** (1) for which such **insured** does not hold any required license to perform, (2) which occurs during any time such **insured's** license to practice his or her profession has been suspended, revoked or voluntarily surrendered or (3) which constitutes a violation of any restriction imposed upon such license.

g.    Liability arising out of any antitrust violation (except for liability arising from service by an **insured** as a member of a formal accreditation, standards review or similar quality control professional board or committee of the **policyholder**, or actions taken at the direction of such a board or committee, for which

coverage is otherwise afforded), unfair competition, discrimination, or any other act or omission which violates any statute, ordinance or regulation imposing any fine, penalty or other sanction, including but not limited to attorneys' fees.

h.    Damages because of **injury** arising from the **discharge of pollutants**.

i.    Liability for damages arising from (1) any claim which was initially asserted against an **insured** prior to the **coverage effective date**, (2) any claim if either such claim or the circumstances giving rise to such claim were reported to a previous insurer prior to the **coverage effective date**, (3) any **professional incident** that an **insured**, prior to the **coverage effective date**, was aware of, should have been aware of, or could have reasonably foreseen or discovered would give rise to a claim or **suit**, or (4) any claim arising out of or related to, or derived from the same or essentially the same facts as, any claim pending prior to the **coverage effective date**.

j.    Liability arising from the operation or management by any **insured** of a **managed care organization**.

k.    Liability for punitive or exemplary damages (including any multiple of compensatory damages, such as double or treble damages) awarded against an **insured**.

**COVERAGE D: INSURANCE CLAIM ERRORS AND OMISSIONS LIABILITY COVERAGE**

1.    <u>Insuring Agreement</u>

During the **policy period** only, **we** will reimburse the **policyholder** those sums that an **insured** becomes fully and finally legally obligated to pay as **damages** and **defense costs** because of any claims made against such **insured** by any **employee,** former **employee** or beneficiary of such **employee** or former **employee** arising out of an **insurance claim error or omission** which (i) occurs on or after the **retroactive date** and before the end of the **policy period**, (ii) occurs within the coverage territory and (iii) are actually paid by the **policyholder** during the **policy period**. **Our** obligation to make any reimbursement is subject to (a) applicable Limits of Liability stated in the **Coverage Summary**; (b) any Self-Insured Retention stated in the **Coverage Summary**; (c) any Deductible stated in the **Coverage Summary;** and (d) any Conditions Precedent to Policy Benefits stated in the **Coverage Summary**.

This insurance applies to claims arising out of **insurance claims errors or omissions** rendered within the United States of America, its possessions and territories, provided that any resulting claim or suit is prosecuted within the United States of America, its possessions or territories. This insurance does not apply to any claim or suit asserted, filed, pursued, or prosecuted in or pursuant to the authority of any court, tribunal, or other governmental or legal authority outside the jurisdiction of the United States of America, its possessions and territories.

2.    <u>Exclusions</u>

The insurance provided by COVERAGE D does not apply to:

a.    **Bodily injury**, **property damage**, **advertising injury** or **personal injury**.

b.    Liability assumed by any **insured** under any contract or agreement, whether oral, written or implied, except that this exclusion does not apply to any liability that would be imposed on the **insured** by law in the absence of the contract or agreement.

c.    Any obligation of an **insured** under a worker's compensation, employer's liability, disability benefits or unemployment compensation law or any similar law.

d.    Damages sustained by any **insured**, whether or not such damages arise out of the activities or operations of any other **insured**.

e.    Damages sustained by any **employee**, volunteer or **leased employee** of an **insured** or any past, present or prospective **employee**, volunteer or **leased employee** of an **insured**.

f.    Damages arising from the **discharge of pollutants**.

g.    Damages due to the rendering of or failure to render **professional health care services**.

h.    Liability for damages arising from (1) any claim which was initially asserted against an **insured** prior to the **coverage effective date**, (2) any claim if either such claim or the circumstances giving rise to such claim were reported to a previous insurer prior to the **coverage effective date**, (3) any **insurance claim error or omission** that an **insured**, prior to the **coverage effective date**, was aware of, should have been aware of, or could have reasonably foreseen or discovered would give rise to a claim or **suit**,

or (4) any claim arising out of or related to, or derived from the same or essentially the same facts as, any claim pending prior to the **coverage effective date**.

i.    Liability arising out of any (1) willful, wanton, fraudulent (whether intentional or unintentional), dishonest, criminal, reckless, malicious or oppressive act or omission; or (2) conduct which is outrageous, demonstrates conscious indifference to consequences, or evidences intentional, reckless or careless disregard for the rights or safety of others.

j.    Liability arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any **insured**. Use includes operation and **loading and unloading**. This exclusion applies even if the claims against any **insured** allege negligence or other wrongdoing in the supervision, training or monitoring of others by that **insured**, if the **occurrence** which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft that is owned or operated by or rented or loaned to any **insured**.

k.    Damages arising out of any **benefit error**.

l.    Liability arising from unauthorized access to or use of the **insured's** electronic data processing system.

m.    Liability resulting from an **insured's** insolvency, receivership, bankruptcy, liquidation or financial inability or other inability to pay or perform its obligations or conduct its business.

n.    Liability arising from any violation of or alleged violation of any federal, state or local law, statute, ordinance, rule or regulation, including, without limitation, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sections 1961 et seq., and any amendments thereto; the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, and amendments thereto; and Medicare and Medicaid laws (including anti-fraud and abuse amendments to the Social Security Act).

**o.**    Liability arising from the operation or management by any **insured** of a **managed care organization**.

## COVERAGE E: EMPLOYEE BENEFIT PROGRAMS LIABILITY COVERAGE

1.    <u>Insuring Agreement</u>

During the policy period only, we will reimburse those sums that an insured becomes fully and finally legally obligated to pay as damages and defense costs because of any claims made against such insured by any employee, former employee or beneficiary of such employee or former employee, arising out of any benefit error that (i) occurs after the retroactive date and before the end of the policy period, (ii) occurs within the coverage territory and (iii) are actually paid by the policyholder during the policy period. Our obligation to make any reimbursement is subject to (a) applicable Limits of Liability stated in the Coverage Summary; (b) any Self-Insured Retention stated in the Coverage Summary; (c) any Deductible stated in the Coverage Summary; and (d) any Conditions Precedent to Policy Benefits stated in the Coverage Summary.

This insurance applies to claims arising out of **benefit errors** rendered within the United States of America, its possessions and territories, provided that any resulting claim or suit is prosecuted within the United States of America, its possessions or territories. This insurance does not apply to any claim or suit asserted, filed, pursued, or prosecuted in or pursuant to the authority of any court, tribunal, or other governmental or legal authority outside the jurisdiction of the United States of America, its possessions and territories.

2.    <u>Exclusions</u>

The insurance provided by COVERAGE E does not apply to:

a.    **Bodily injury**, **property damage**, **advertising injury** or **personal injury**.

b.    Any claim against an **insured** if there is a final legal determination that such **insured** knowingly did something dishonest or intentionally or recklessly violated any law (provided, however, that this exclusion does not apply to any other **insured** where there is no legal finding that such other **insured** actively joined in doing the dishonest act or intentionally or recklessly violated any law).

c.    Any claim based upon the **insured's** failure to comply with any law concerning workers' compensation, employer's liability, unemployment insurance, social security or disability benefits.

d.    Any claim based upon:

(1)    failure of any investment program, individual securities or savings program to perform as represented by an **insured**; or

(2)    advice given by an **insured** in connection with participation or non-participation in stock subscription plans or savings programs.

e.    Any claim arising out of the failure of the **insured** or any insurer, fiduciary, trustee or fiscal agent to perform any of their duties or obligations or to fulfill any of their guarantees with respect to:

(1)    the payment of benefits under **employee benefit programs**; or

(2)    the providing, handling or investing of funds.

f.    Any claim assumed by an **insured** under a contract or agreement.

g.    Any claim resulting from personal profit or advantage gained by an **insured** without the legal right to the gain.

h.    Any claim for the return of compensation paid to an **insured** if a court determines that the payment was illegal.

i.    Liability of any **insured** for taxes, fines or penalties imposed by law.

j.    Any claim for benefits that are lawfully paid or payable to a beneficiary from the funds of an **employee benefit program**.

k.    Any claim that results from failure to maintain adequate insurance or bonds.

l.    Liability for damages arising from (1) any claim which was initially asserted against an **insured** prior to the **coverage effective date**, (2) any claim if either such claim or the circumstances giving rise to such claim were reported to a previous insurer prior to the **coverage effective date**, (3) any **benefit error** that an **insured**, prior to the **coverage effective date**, was aware of, should have been aware of, or could have reasonably foreseen or discovered would give rise to a claim or **suit**, or (4) any claim arising out of or related to, or derived from the same or essentially the same facts as, any claim pending prior to the **coverage effective date**.

m.    Liability arising out of any (1) willful, wanton, fraudulent (whether intentional or unintentional), dishonest, criminal, reckless, malicious or oppressive act or omission; or (2) conduct which is outrageous, demonstrates conscious indifference to consequences, or evidences intentional, reckless or careless disregard for the rights or safety of others.

n.    Liability arising from unauthorized access to or use of the **insured's** electronic data processing system.

o.    Liability resulting from an **insured's** insolvency, receivership, bankruptcy, liquidation or financial inability or other inability to pay or perform its obligations with respect to an **employee benefit program**.

p.    Liability arising from any violation of or alleged violation of any federal, state or local law, statute, ordinance, rule or regulation, including, without limitation, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sections 1961 et seq., and any amendments thereto; the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, and amendments thereto; and Medicare and Medicaid laws (including anti-fraud and abuse amendments to the Social Security Act).

q.    Liability assumed by an **insured** as an insurer or reinsurer.


## SECTION II: WHO IS AN INSURED

Each of the following is an **insured** under this Coverage Part to the extent set forth below:

1.    The **policyholder** and any **other insured**;

2.    If the **policyholder** is a partnership, any partner thereof, but only with respect to that partner's liability as such;

3.    If the **policyholder** is an entity other than a partnership, any executive officer, administrator, stockholder, member of the board of directors, trustees or governors of the **policyholder**, member or manager while acting within the scope of that person's duties as such;

4.    Any **covered subsidiary**;

5.    All professional and non-professional **employees** including any independent contractors who otherwise provide **professional healthcare services** on behalf of or at the direction of the policyholder (other than physicians, surgeons, dentists, interns, externs, residents, physician assistants, nurse midwives, CRNAs, nurse practitioners, and perfusionists) while acting within the scope of their duties for an **insured**;

6.   All volunteer workers (other than physicians, surgeons, dentists, interns, externs, residents, physician assistants, nurse midwives, CRNAs, nurse practitioners, and perfusionists) doing volunteer work for an **insured** while acting within the scope of their duties for such **insured**;

7.   Members of the medical staff of the **policyholder**, while acting within the scope of their duties as members of credentialing, utilization review, quality assurance, professional standards review or similar professional boards or committees of the **policyholder**, or acting at the express written direction of any such board or committee; provided, however, that the insurance provided to such members of the medical staff shall be excess of any other valid and collectible insurance which may apply;

8.   Administrators, superintendents, chief executive officers, medical directors, and department heads (including the head of the medical staff), while acting within such capacities and within the scope of their administrative duties for the **policyholder**; and

9.   Persons enrolled as students, other than physicians, surgeons and dentists in training, enrolled in formal training programs offered by the **policyholder**, but only in connection with their performance of, or failure to perform, duties relating to the training programs in which they are enrolled.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# REIMBURSEMENT FORM
# AMENDATORY ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

The **policy** is hereby amended as follows:

## POLICYHOLDER RESPONSIBLE FOR ALL SERVICING AND CLAIMS HANDLING

The **policyholder** agrees to indemnify **us** and hold **us** harmless against any and all claims, liabilities, judgments, costs, and reasonable attorney fees for any and all acts or omissions of the **policyholder** in all servicing aspects of this **policy**, including but not limited to the following responsibilities:

    a)   Underwriting;
    b)   Claims;
    c)   Certificates of Insurance;
    d)   Regulatory Filings; and
    e)   Credentialing.

The **policyholder** agrees to an additional premium of ███████ for each **covered investigation**, **professional incident** or **occurrence** that becomes **reported** during the **policy period.**

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# AMENDATORY ENDORSMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

THIS ENDORSEMENT MODIFIES THE GENERAL LIABILITY COVERAGE PART OF THE **POLICY** AS FOLLOWS:

The definition of **occurrence** as shown in the Definitions Part of the **policy** is hereby deleted and replaced with the following:

**Occurrence** means:

1.  With respect to **bodily injury** and **property damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that takes place at or from a **scheduled facility**;

2.  Any activity by an **insured** that results in **personal injury** or **advertising injury**; or

3.  Any one or more of the following perils when involving patient(s) at a **scheduled facility**:

    a.  Fire;
    b.  Lightning;
    c.  Explosion;
    d.  Heat, smoke, or fumes;
    e.  Structural collapse of the building;
    f.  Elevator malfunction;
    g.  Windstorm or hail;
    h.  Riot or strike;
    i.  Aircrafts or vehicles;
    j.  Earthquake or flood; or
    k.  Sprinkler maintenance.

All other terms and conditions of the **policy** remain unchanged.

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# AMENDATORY ENDORSMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**  BUQSTRTTN011300_050001_03

THIS ENDORSEMENT MODIFIES THE GENERAL LIABILITY COVERAGE PART OF THE **POLICY** AS FOLLOWS:

The following definition is hereby added to the Definitions Part.

**Pollution incident** means the application of herbicides and pesticides to the green house at Columbia Regional Medical Center by the manager of the Horticulture Program, provided that such application of herbicides and pesticides meets all applicable standards mandated by any federal, state, or local government or regulatory authority.

Notwithstanding any other provision of the **policy**, Exclusion f of COVERAGE A: BODILY INJURY AND PROPERTY DAMAGE LIABILITY shall not apply to any **pollution incident** first alleged during the **policy period**. The limit of liability specified below as "Each Pollution Incident Limit," is the most **we** will reimburse for the sum of all **damages** and **defense costs** paid by the **policyholder** during the **policy period** resulting from any one **pollution incident.** The limit of liability specified below as "All Pollution Incidents Limit," is the most **we** will reimburse for the sum of all **damages** and **defense costs** paid by the **policyholder** during the **policy period** resulting from all **pollution incidents.**

1. Each **Pollution Incident** Limit:     $ 50,000
2. All **Pollution Incidents** Limit:      $100,000

The above-stated limits of liability are contained within, and not in addition to, the Limits of Liability stated on the **Coverage Summary**. Any reimbursements made pursuant to this endorsement will erode the Limits of Liability stated on the **Coverage Summary**.

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# AMENDATORY ENDORSMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

THIS ENDORSEMENT MODIFIES THE GENERAL LIABILITY COVERAGE PART OF THE **POLICY** AS FOLLOWS:

The above-numbered **policy** is hereby modified as follows:

Paragraph n of Section 2, Exclusions of the General Liability Coverage Part is deleted in its entirety.

## HEALTH CARE FACILITY LIABILITY POLICY REIMBURSEMENT FORM

## CROSS POLICY LIABILITY EXCLUSION

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

In consideration of the premium at which the **policy** has been written, the **policy** will neither defend nor pay **damages** on behalf of an **insured** because of any **professional incident** or **occurrence** for which any insurance coverage is available to the **insured** on any policy of insurance, other than this **policy**, written by any direct or indirect subsidiary of Texas Insurance Company.

# HEALTH CARE FACILITY LIABILITY POLICY REIMBURSEMENT FORM
# CONDITION PRECEDENT TO POLICY BENEFITS ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

The **policy** is hereby modified as follows:

Notwithstanding any other provision of the **policy**, as a condition precedent to **our** obligation to pay any part of the coverage limit, the **insured** must first make documented payment of losses and expenses totaling <u>Six Million Dollars</u> ($6,000,000) that would otherwise be covered by the **policy**, and **our** aggregate limit of liability will be reduced by that amount.

# HEALTH CARE FACILITY LIABILITY POLICY REIMBURSEMENT FORM NON-REINSTATING LIMIT OF LIABILITY PER PROFESSIONAL INCIDENT OR OCCURRENCE

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

The **policy** is hereby amended as follows:

The limit of liability applicable to a **professional incident** or **occurrence** at the time such **professional incident** or **occurrence** is **reported** is reduced by all amounts paid, in any concurrent or previous **policy** period, by **us** or the **policyholder** for all **defense costs**, whenever incurred, and all **damages**, whenever paid.

**Damages** means all amounts of money which are reimbursable under this **policy** because of any **professional incident**, **injury**, or **property damage**, as well as any and all pre-judgement interest, post-judgement interest, poundage, bond premiums in the event of the need to post bonds under any circumstance, including appellate bonds, and any other costs associated with **damages** paid on behalf of an **insured** or the **policyholder**.

Health Care Professional Liability Policy
Reimbursement Form
Non-Reinstating Limit of  Liability
Per Professional Incident or Occurrence

Page 1 of 1

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# COLLATERAL RELATED REDUCTION IN LIMITS ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

The **policy** is hereby modified as follows:

Notwithstanding any other provision of the **policy**, as a condition precedent to **our** obligation to pay any part of the coverage limit for a **professional incident**, **occurrence**, or other event triggering coverage, the **policyholder** must (1) provide collateral to **us** totaling the amount of the General Aggregate Limit shown on the **Coverage Summary**; and (2) provide documentation acceptable to **us** showing that the **policyholder** has replenished any amount of collateral eroded by prior payments.  Additionally, if the **policyholder** fails to replenish the amount of the collateral to an amount equal to the General Aggregate Limit shown on the **Coverage Summary** within ten (10) days of reporting a covered **professional incident**, **occurrence**, or other event triggering coverage to **us**, then the General Aggregate Limit of Liability for the **policy** shall be reduced to the amount of the collateral then held in trust for **our** benefit.

# HEALTH CARE PROFESSIONAL LIABILITY POLICY
# REIMBURSEMENT FORM
# INCIDENT REPORTING

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

Definitions Part of the **policy** is hereby amended as follows:

**Report, reported,** and **reporting** mean the receipt by **our** Claims Department, from an **insured** or its representative, of written notice of a claim or **suit** which has been made or filed, or which an **insured** reasonably expects to be made or filed, under any Coverage Part providing coverage on a claims-made basis, specifying (1) the date, time, and place of the **medical incident, occurrence**, **benefit error**, **injury**, or medical payment to which this insurance applies, (2) a description of the **professional incident, occurrence**, **benefit error**, **injury**, or medical payment to which this insurance applies, (3) the name, address, and age of the patient or claimant, (4) the names of witnesses, including treating physicians, and (5) the circumstances resulting in the **professional incident, occurrence**, **benefit error**, **injury**, or medical payment to which this insurance applies. If **we** have designated a form for the **reporting** of claims or **suits**, the **report** must be made by means of such form, which must be fully completed and signed as provided therein. Disclosure of incidents by an **insured** as a part of engineering or loss control services or claims audits made in connection with self-insured retention programs shall not be considered the **reporting** of a claim or **suit**.

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# BROAD FORM INSURED ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**  BUQSTRTTN011300_050001_03

THIS ENDORSEMENT MODIFIES THE PROFESSIONAL LIABILITY COVERAGE PART OF THE **POLICY**

The above-numbered policy is hereby modified as follows:

SECTION II (WHO IS AN INSURED) of the Professional Liability Coverage Part is hereby amended to add the following at the end thereof:

10. With respect to COVERAGE C only, all employed, contracted, or volunteer physicians, surgeons, dentists, interns, externs, residents, physician assistants, nurse midwives, CRNAs, nurse practitioners, and perfusionists while providing **professional healthcare services** on behalf of or at the direction of the **policyholder** and while acting within the scope of their duties as employees, contractors, or volunteers.

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# LIMITED COMPANY AUTHORIZED AMENDATORY ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

THIS ENDORSEMENT IS CONSIDERED A PART OF THE **POLICY** AND MODIFIES THE GENERAL LIABILITY COVERAGE PART OF THE **POLICY** AS FOLLOWS:

Additional Insured

Each entity shown in the Schedule below is included as an additional insured under the above-described Coverage Part(s) of the **policy,** but only with respect to vicarious liability arising solely and entirely out of the operations of the **policyholder.**

SCHEDULE OF ADDITIONAL INSUREDS:

CCS-CMGC Intermediate Holdings, Inc.
CCS-CMGC Holdings, Inc.

# HEALTH CARE FACILITY LIABILITY POLICY REIMBURSEMENT FORM

# ADDITIONAL INSURED – PRIMARY NON-CONTRIBUTORY ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

THIS ENDORSEMENT MODIFIES THE GENERAL LIABILITY COVERAGE PART AND THE PROFESSIONAL LIABILITY COVERAGE PART OF THE **POLICY** AS FOLLOWS:

The following are included as an additional insured(s) under the above-described Coverage Part(s) of the **policy,** but only with respect to vicarious liability arising solely and entirely out of the operations of the **policyholder.** The coverage provided by this **policy** shall be primary and non-contributory, provided that the alleged acts or omissions giving rise to the liability are otherwise covered by the **policy**.

SCHEDULE OF ADDITIONAL INSUREDS:

Any organization to whom the **policyholder** is obligated by valid written contract.

# HEALTH CARE FACILITY LIABILITY POLICY
# REIMBURSEMENT FORM
# BLANKET ADDITIONAL INSURED ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**  BUQSTRTTN011300_050001_03

THIS ENDORSEMENT MODIFIES THE GENERAL LIABILITY COVERAGE PART AND THE PROFESSIONAL LIABILITY COVERAGE PART OF THE **POLICY** TO ADD ONE OR MORE ADDITIONAL INSUREDS.

The above-numbered **policy** is hereby modified as follows:

Each of the following is included as an additional insured under the above-described Coverage Part(s) of the **policy**, but only with respect to the vicarious liability arising solely and entirely out of the operations of the **policyholder**:

ADDITIONAL INSUREDS

All persons or organizations required by valid written contract with the **policyholder** to be named as additional insureds.

# WAIVER OF SUBROGATION ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03


THIS ENDORSEMENT MODIFIES THE GENERAL CONDITIONS OF THE **POLICY** AS FOLLOWS:


Section VII. SUBROGATION of the GENERAL CONDITIONS is amended by adding the following:

**We** waive any right of recovery **we** may have against the additional insured(s) shown in the Schedule below because of reimbursements **we** make under this **policy** for vicarious liability arising solely and entirely from the operations of the **policyholder**.



SCHEDULE OF ADDITIONAL INSURED(S)

Any organization to whom the **policyholder** is obligated by valid written contract.

# COMMUNICABLE DISEASE EXCLUSION ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

THIS ENDORSEMENT MODIFIES THE **GENERAL EXCLUSIONS** OF THE **POLICY** AS FOLLOWS:

**GENERAL EXCLUSIONS** is amended to include the following exclusion:

**Communicable Disease, Epidemic and Pandemic**

arising out of, based upon, in connection with, resulting from, contributed to by or attributable to, directly or indirectly, in whole or in part, any actual, alleged or suspected:

1. **Communicable Disease;** or
2. **Epidemic** or **Pandemic**.

For the purposes of this endorsement the following definitions are added:

**Epidemic** means a widespread occurrence of a **Communicable Disease** which affects a disproportionately large number of individuals constituting an increase in the number of cases of such **Communicable Disease** above what is normally expected within a population, community or region over a particular period of time.

**Pandemic** means an **Epidemic**, which the World Health Organization has declared to be, or assessed or characterized as a pandemic in any public statement.

**Communicable Disease** means an illness or disease caused by the infection, presence and growth of pathogenic biologic agents in an individual human or other animal host, including but not limited to any bacteria, virus, mold, mildew, fungi, parasite or other vector and which biologic agents or its toxins are directly or indirectly transmitted to infected individuals by physical contact with an infectious person, consuming contaminated foods or beverages, contact with contaminated body fluids, contact with contaminated inanimate objects, inhalation, being bitten by an infected  animal, insect or tick, or other means.. **Communicable Disease** includes coronavirus disease 2019 (COVID-19) or any other disease caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV 2) (previously known as 2019-nCoV), or any disease caused by any mutation or variation of SARS-CoV 2.

# SANCTION LIMITATION AND EXCLUSION CLAUSE

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

# CONFIDENTIAL OR PERSONAL INFORMATION DISCLOSURE ENDORSEMENT

**POLICYHOLDER:**   CCS-CMGC Parent Holdings, LP
**ENDORSEMENT EFFECTIVE DATE:** 15th March 2023
**POLICY NUMBER:**   BUQSTRTTN011300_050001_03

This policy does not apply to "bodily injury", "property damage", "personal and advertising injury", or any other loss, cost, defense fee, expense, injury, damage, claim, dispute or "suit", however caused, in whole or in part arising out of, resulting from, or in any way related to any actual or alleged:

**a.** unauthorized or improper access to, collection, use or disclosure of, or failure to protect any non-public confidential or personal information in the form of "electronic data", including, but not limited to, any patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of non-public information;

**b.** violation of any statute, regulation, common-law, or any other law regulating or protecting access to, collection, use or disclosure of, or failure to protect any non-public confidential or personal information in the form of "electronic data".

For purposes of this endorsement, "electronic data" includes, but is not limited to, information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

This exclusion applies to, among other things, damages or amounts associated with any notification costs, credit monitoring expenses, forensic expenses, public relations expenses, or any other loss, cost or expense, whether incurred by you or others, arising out of any access to, collection, use or disclosure of, or failure to protect any non-public confidential or personal information that is subject to this exclusion.

This exclusion does not apply, however, to:

**a.** "Direct bodily injury", which, for purposes of this endorsement only means: bodily injury, sickness or disease sustained by a person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time; or

**b.** "Direct property damage", which, for purposes of this endorsement only means: physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur  at the time of the physical injury that caused it.

Tangible property does not include any information, facts, programs, instructions, commands, electronic data, and anything else stored as or on, created or used on, or transmitted to or from computers or their software, including, but not limited to, systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices, networks, clouds, or other media used with electronically controlled equipment.

Health Care Facility Liability Policy
Reimbursement Form
Confidential or Personal Information Disclosure
Exclusion Endorsement

Page 1 of 1

## AFFIDAVIT OF JAMES SEITZ

STATE OF TENNESSE       )

COUNTY OF DAVIDSON   )

BEFORE ME, the undersigned authority, on this day personally appeared JAMES SEITZ, who being by me duly sworn, deposed and stated as follows:

1.      My name is James Seitz. I am over twenty-one (21) years of age, have never been convicted of a felony or crime involving moral turpitude, and am fully qualified to make this Affidavit. I have personal knowledge of all the facts recited here, and those facts are true and correct.

2.      I am employed by Wellpath, LLC as the Director of Insurance with knowledge of insurance coverage pertaining to Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC. I have knowledge of the insurance coverage information pertaining to the possible claims asserted by Gracienne Myers against 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC and Wellpath Recovery Solutions, LLC.

3.      The following are the insurance policies, which are applicable to this claim:

a.      Texas Insurance Company ("Texas Insurance") provides Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC liability insurance through Texas Insurance Policy No. BUQSTRTTN011300_050001_03 effective March 15, 2023 through March 15, 2024. The named insured under the Policy is CCS-CMGC Parent Holdings, L.P., and Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC are subsidiaries of this company.  Thus,

Affidavit of James Seitz                                                                                                      Page 1

Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC are covered under the policy. The shared per claim limit under the Texas Insurance Policy on this potential claim is $3,000,000 with an aggregate limit of $6,000,000. A redacted copy of this policy is attached hereto as Exhibit "A".

   b.  AXA XL Insurance Company Ltd. ("AXA"), through Lloyd's America, Inc.. provides Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC liability insurance through AXA Policy No. B0146HCUSA2300348 effective March 15, 2023 through March 15, 2024. The named insured under the Policy is CCS-CMGC Parent Holdings, L.P., and Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC are subsidiaries of this company. Thus, Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC are covered under the policy. The shared per claim limit under the AXA Policy for Wellpath Recovery Solutions, LLC on this potential claim is $5,000,000 with an aggregate limit of $5,000,000. The AXA policy is in excess of a $15,000,000 SIR. A redacted copy of this policy is attached hereto as Exhibit "B".

   c.  Allied World Assurance Company (U.S.) Inc. ("Allied World") provides Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC liability insurance through Allied World Policy No. 0312-7790 effective March 15, 2023 through March 15, 2024. The named insured under the Policy is CCS-CMGC Parent Holdings, L.P.. Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC are subsidiaries of this company. Thus, Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC are covered under the policy. The shared per claim limit under the Allied World

Affidavit of James Seitz                            Page 2

Policy on this potential claim is $2,000,000 with an aggregate limit of $2,000,000. The Allied World Policy is in excess of an AXA XL Insurance Company Ltd ("AXA") $5,000,000 limit / aggregate and the excess SIR limit of $15,000,000. A redacted copy of this policy is attached hereto as Exhibit "C".

      d.     AXA XL Insurance Company UK Ltd. ("AXA XL Excess"), through Lloyd's America, Inc. and XL Global Services Inc., provides Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC excess liability insurance through Unique Market Reference B1820WLS23D165 and is effective March 15, 2023 through March 15, 2024. The excess policy follows the Allied World Policy No. 0312-7790 . The named insured under AXA XL Excess Policy is CCS-CMGC Parent Holdings, L.P., and Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC are subsidiaries of this company. Thus, Wellpath Recovery Solutions, LLC and 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC are covered under the policy. The shared per claim limit under the AXA XL Excess Policy on this potential claim is $3,000,000 with an aggregate limit of $3,000,000, and is only available once the underlying excess policies and the SIR is exhausted. A redacted copy of this policy is attached hereto as Exhibit "D".

      4.     In addition, enclosed please find the redacted Declarations pages for these policies, which identify 901 45th Street West Palm Beach Behavioral Health Hospital Company, LLC and Wellpath Recovery Solutions, LLC as covered entities as additional named insureds under the above-identified insurance policies. The redacted Declaration pages are attached hereto as Exhibit "E".

[SIGNATURE AND NOTARY ON FOLLOWING PAGE]

**FURTHER AFFIANT SAYETH NOT.**

*James Seitz*

JAMES SEITZ
Director of Insurance

STATE OF TENNESSE        )

COUNTY OF DAVIDSON   )

                                          30
     Subscribed and sworn to before me this _____ day of September, 2024.

*Tiffany Loxley*

Notary Public, State of Tennessee

(SEAL)

Online Notary Public.
Notarization facilitated by
SIGNIX®

My Commission Expires:   09/07/2026

Affidavit of James Seitz                                                     Page 4

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 2023-24772-CA-01

GRACIENNE MYERS and
DANIEL MYERS,

     Plaintiffs,

Vs

TB ISLE RESORT LP, 901 45TH STREET
WEST PALM BEACH FLORIDA
BEHAVIORAL HEALTH HOSPITAL
COMPANY, LLC and TARIKA WYNDS,

     Defendants.

_____/

## NOTICE OF STAY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, 901 45th STREET WEST PALM BEACH FLORIDA BEHAVIORAL HEALTH HOSPITAL COMPANY, LLC and TARIKA WYNDS, Defendants, in the above-captioned proceeding, and file this *Notice of Stay* and would respectfully show the Court the following:

1.    On November 11, 2024 (the "Petition Date"), Wellpath Holdings, Inc. and certain of its debtor affiliates (the "Debtor") filed *Voluntary Petitions for Non-Individuals Filing Bankruptcy* for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (Houston Division) (the "Bankruptcy Court"). The Debtors' chapter 11 cases are being jointly administered for procedural purposes only under the lead Case No. 24-90533-(ARP).

2.      On November 12, 2024, the Bankruptcy Court entered an *Amended Interim Order Enforcing the Automatic Stay* [Docket No. 69] (the "Stay Order"), pursuant to which the above-captioned proceeding, among other lawsuits filed as of the Petition Date in which a Debtor is named as one of the defendants therein, is stayed in its entirety, including the plaintiff's claims against the non-Debtor defendants, on an interim basis pursuant to section 362 of the Bankruptcy Code. A copy of the Stay Order is attached hereto as **Exhibit 1**.

3.      On November 14, 2024, the Bankruptcy Court entered an *Amended Order (I) Authorizing the Debtors to (A) Honor and Incur Obligations to Professional Corporations, and (B) Obtain New Professional Corporation Contracts, (II) Extending Statutory Protections to Professional Corporations, and (III) Granting Related Relief* [Docket No. 91] (the "PC Stay Order"), pursuant to which the above-captioned proceeding, among other lawsuits filed as of the Petition Date in which a professional corporation associated with a Debtor (the "Professional Corporation") is named as a defendant or one of the defendants therein, is stayed in its entirety, including the Plaintiff's claims against the Professional Corporation. A copy of the PC Stay Order is attached hereto as **Exhibit 2.**

4.      Pursuant to the PC Stay Order and section 362 of the Bankruptcy Code, the commencement of the Debtors' chapter 11 cases operate as an interim stay applicable to all persons (and all those acting for or on their behalf) and all governmental units (and all those acting for or on their behalf), of:

a.   "[T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against any Professional Corporation that (i) was or could have been commenced before the Petition Date, or an act to recover a claim against any Professional Corporation that

arose prior to the Petition Date, and (ii) may trigger the Debtors' indemnity obligations to such Professional Corporation under the applicable Professional Corporation Contract or such Professional Corporations' organizational documents;

b. [T]he enforcement, against any Professional Corporation or against property of any Professional Corporation, of a judgment (i) obtained before the Petition Date and (ii) which triggered the Debtors' indemnity obligations to such Professional Corporation under the applicable Professional Corporation Contract or such Professional Corporations' organizational documents;

c. [A]ny act to obtain possession of, or exercise control over, property of any Professional Corporation that may trigger the Debtors' indemnity obligations to such Professional Corporation under the applicable Professional Corporation Contract or such Professional Corporations' organizational documents;

d. [A]ny act to create, perfect, or enforce any lien against property of any Professional Corporation to the extent that (i) such lien secures a claim that arose before the Petition Date and (ii) it triggered the Debtors' indemnity obligations to such Professional Corporation under the applicable Professional Corporation Contract or such Professional Corporations' organizational documents; and;

e. [A]ny act to collect, assess, or recover a claim against any Professional Corporation that (i) arose before the Petition Date and (ii) may trigger the Debtors' indemnity obligations to such Professional Corporation under the applicable Professional Corporation Contract or such Professional Corporations' organizational documents. PC Stay Order ¶ 4.

5.     As a result of the extension of the automatic stay to the Defendants, all parties are stayed from any further continuation of these proceedings until such time as the Bankruptcy Court may order otherwise.

6.     The automatic stay has not been lifted or otherwise modified; the automatic stay referenced above remains in effect.

7.     The Defendants reserve their rights to bring an action in the Bankruptcy Court for any violation of the automatic stay.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that this Court take notice of the PC Stay Order and the automatic stay, and that further action be stayed and for such other and further relief as to which it may be justly entitled.

This 19th day of November, 2024.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing was electronically submitted via the Clerk's e-Portal this 19th day of November, 2024, to all parties of record.

**BILLING, COCHRAN, LYLES,
MAURO & RAMSEY, P.A.**
Las Olas Square, Suite 600
515 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
(954) 764-7150/(954) 764-7279 (facsimile)
ftl-pleadings@bclmr.com
*Attorneys for Defendants*
*901 45th Street West Palm Beach Florida*
*Behavioral Health Hospital Company, LLC and*
*Tarika Wynds*

By:     */s/ Jeffery R. Lawley*
        JEFFERY R. LAWLEY
        Florida Bar No.: 0596027
        jrl@bclmr.com
        LORI B. LEWELLEN
        Florida Bar No. 637696
        lbl@bclmr.com

# EXHIBIT 1

Case 24-90533   Document 69   Filed in TXSB on 11/12/24   Page 1 of 3

United States Bankruptcy Court
Southern District of Texas

**ENTERED**
November 12, 2024
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| | (Joint Administration Requested) |
| Debtors. | **Re Docket No.: 17** |

### AMENDED INTERIM ORDER ENFORCING THE AUTOMATIC STAY

Upon the emergency motion (the "Motion")[2] of the above-captioned debtors and debtors

in possession (collectively, the "Debtors") for entry of interim and final orders, pursuant to section

362(a) of the Bankruptcy Code, enforcing the Automatic Stay in the Lawsuits[3] or in the alternative

extending the application of the Automatic Stay to the Non-Debtor Defendants until

consummation of a chapter 11 plan in these chapter 11 cases, as more fully described in the Motion;

and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant

to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D.

Tex. May 24, 2012) (Hinojosa, C.J.); and the Court having found that this is a core proceeding

pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent

with Article III of the United States Constitution; and the Court having found that venue of the

Chapter 11 Cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§

1408 and 1409; and given that notice of the Motion having been provided to the Notice Parties,

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3]   For the purposes of this Interim Order, "Lawsuits" shall mean any lawsuits filed as of the Petition Date in which a Debtor is named as one of the defendants therein.

and this Interim Order being served on the Notice Parties in accordance with paragraph 1 hereof, notice shall be deemed adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion, and at the Hearing establish just cause for the relief granted herein; and this Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled, in each case, with prejudice; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**

1.      The final hearing (the "Final Hearing") on the Motion shall be held on December 5, 2024, at 3:00 p.m. (prevailing Central Time).  Any objections or responses to entry of a Final Order on the Motion shall be filed and served on the Notice Parties and counsel to any statutory committees appointed in these chapter 11 cases so as to be actually received on or before 4:00 p.m. (prevailing Central Time) on December 2, 2024.  The Debtors shall serve a copy of this Interim Order on the Notice Parties within five business days of the date hereof.  In the event that no objections to the entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without the need for the Final Hearing.

2.      The Lawsuits are stayed in their entirety, including the plaintiffs' claims against the Non-Debtor Defendants, on an interim basis pursuant to section 362 of the Bankruptcy Code.

3.      Nothing in this Interim Order shall prejudice the right of any creditor to seek relief from the Automatic Stay pursuant to section 362 of the Bankruptcy Code.

4.      Any Bankruptcy Rule or Bankruptcy Local Rule that might otherwise delay the effectiveness of this Interim Order is hereby waived, and the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry

5.      The Debtors are authorized to take any action deemed necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Interim Order without seeking further order of the Court.

6.      The Court shall retain exclusive jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Signed: November 12, 2024

Alfredo R Pérez
United States Bankruptcy Judge

# EXHIBIT 2

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 14, 2024

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| | (Joint Administration Requested) |
| Debtors. | **Re: Docket No. 15** |

**AMENDED ORDER (I) AUTHORIZING THE DEBTORS TO
(A) HONOR AND INCUR OBLIGATIONS TO PROFESSIONAL
CORPORATIONS AND (B) OBTAIN NEW PROFESSIONAL CORPORATION
CONTRACTS, (II) EXTENDING STATUTORY PROTECTIONS TO
PROFESSIONAL CORPORATIONS, AND (III) GRANTING RELATED RELIEF**

Upon the emergency motion (the "Motion")[2] of the above-captioned debtors and debtors

in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing, but

not directing, the Debtors to (i) honor, pay, or otherwise satisfy any and all prepetition and post-

petition obligations incurred in relation to the Professional Corporations, including obligations

pursuant to the Existing Professional Corporation Contracts and (ii) enter into and honor, pay, or

otherwise satisfy any and all prepetition and post-petition obligations related to attracting, seeking,

entering into, and maintaining New Professional Corporation Contracts, (b) extending the

(i) automatic stay under section 362 of the Bankruptcy Code and (ii) Anti-discrimination

Provisions, to the Professional Corporations on a limited basis, (c) authorizing the applicable banks

and financial institutions to receive, process, honor, and pay all checks or wire transfers used by

the Debtors to pay and satisfy the foregoing, and (d) granting related relief, as more fully described

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed
claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11
cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.); and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these chapter 11 cases and related proceedings being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed and considered the Motion and the First Day Declaration; and this Court having held a hearing to consider the relief requested in the Motion on a final basis (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy any and all prepetition and post-petition obligations incurred in relation to the Professional

2

Corporations, including obligations pursuant to Existing Professional Corporation Contracts in the ordinary course of business.

2.     The Debtors are authorized, but not directed, to enter into New Professional Corporation Contracts, in the ordinary course of business; *provide, however*, that the Debtors must provide counsel to the DIP Lenders and counsel to the Ad Hoc Group at least five business days' advance notice prior to entering into any New Professional Corporations Contracts.

3.     The Debtors' contractual relationships with the Professional Corporations and the PC Physicians, and the Professional Corporation Contracts are entitled to the protections set forth in sections 541(c) and 365(e) of the Bankruptcy Code to the maximum extent permitted by law.

4.     Subject to paragraphs 6 and 7 below, pursuant to section 362 of the Bankruptcy Code, the commencement of these chapter 11 cases shall operate as an interim stay pending further order by the Court, applicable to all persons (and all those acting for or on their behalf) and all governmental units (and all those acting for or on their behalf), of:

        a.   the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against any Professional Corporation that (i) was or could have been commenced before the Petition Date, or an act to recover a claim against any Professional Corporation that arose prior to the Petition Date, and (ii) may trigger the Debtors' indemnity obligations to such Professional Corporation under the applicable Professional Corporation Contract or such Professional Corporations' organizational documents;

        b.   the enforcement, against any Professional Corporation or against property of any Professional Corporation, of a judgment (i) obtained before the Petition Date and (ii) which triggered the Debtors' indemnity obligations to such Professional Corporation under the applicable Professional Corporation Contract or such Professional Corporations' organizational documents;

        c.   any act to obtain possession of, or exercise control over, property of any Professional Corporation that may trigger the Debtors' indemnity obligations to such Professional Corporation under the applicable Professional Corporation Contract or such Professional Corporations' organizational documents;

   d. any act to create, perfect, or enforce any lien against property of any Professional Corporation to the extent that (i) such lien secures a claim that arose before the Petition Date and (ii) it triggered the Debtors' indemnity obligations to such Professional Corporation under the applicable Professional Corporation Contract or such Professional Corporations' organizational documents; and

   e. any act to collect, assess, or recover a claim against any Professional Corporation that (i) arose before the Petition Date and (ii) may trigger the Debtors' indemnity obligations to such Professional Corporation under the applicable Professional Corporation Contract or such Professional Corporations' organizational documents.

  5. Subject to paragraphs 6 and 7 below and pending further order by the Court, pursuant to section 525 of the Bankruptcy Code (and subject to the exceptions set forth in section 525(a) of the Bankruptcy Code), a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, any Professional Corporation on account of (a) the commencement of these chapter 11 cases, (b) the Debtors' insolvency, or (c) the fact that the Debtors have not paid a debt that is dischargeable in these chapter 11 cases.

  6. Within five business days of the date hereof, the Debtors shall serve a copy of this Order on the Notice Parties and each plaintiff (or, where applicable, their counsel) in any lawsuit filed as of the Petition Date in which a Debtor is named as one of the defendants therein, and all persons and governmental entities listed on the certificate of service filed in connection with such service (the "Service Notice") shall be bound by the relief granted in paragraphs 4 or 5 of this Order on an interim basis pending entry of a further order of this Court.

  7. Nothing contained herein shall prejudice any person's or governmental unit's right to object to the relief granted in paragraphs 4 or 5 of this Order (a "Section 362/525 Objection"); however, such Section 362/525 Objection must (a) be in writing, (b) comply with the Bankruptcy

Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the *Procedures for Complex Cases in the Southern District of Texas*, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with this Court and served on the Debtors so as to be actually received on or before 4:00 p.m. (prevailing Central Time) on December 27, 2024 (which shall not be less than 44 days after the date hereof) (the "Objection Deadline"). Any person or governmental entity listed on the Service Notice that fails to timely file and serve a Section 362/525 Objection shall be bound by, and be prohibited from contesting, the relief granted in paragraphs 4 and 5 of this Order, as the Court may enter an order granting the relief set forth in paragraphs 4 or 5 of this Order on a final basis without the need for a final hearing. If a Section 362/525 Objection is timely filed and served, the Debtors may, without further order from this Court, resolve such Section 362/525 Objection by mutual agreement with the objecting party. If any Section 362/525 Objections are filed and not resolved prior to the expiration of the Objection Deadline, a hearing shall be held on January 14, 2025 at 9:00 a.m. (prevailing Central Time) to adjudicate said Section 362/525 Objection(s).

8.     Nothing in this Order shall prejudice the right of any creditor to seek relief from the automatic stay pursuant to section 362 of the Bankruptcy Code.

9.     Nothing in this Order shall limit the applicability of section 362(b) of the Bankruptcy Code.

10.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Order shall be deemed (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order

granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease (including any Professional Corporation Contract) pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

11.    Notwithstanding anything to the contrary in this Order, in the event of any conflict or inconsistency between the terms of this Order and the terms of any order of this Court approving the post-petition secured debtor-in-possession financing facility and the use of cash collateral (any such order, a "Financing Order"), including any documentation with respect to such financing and any budget or cash flow forecasts in connection therewith, the terms of the applicable Financing Order (including any documentation with respect to such financing and any budget or cash flow forecasts in connection therewith) shall govern. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of any Financing Order.

12.    All applicable banks and financial institutions are hereby authorized to receive, process, honor, and pay all such checks, drafts, wire transfers, and other forms of payment evidencing amounts paid by the Debtors under this Order, regardless of whether presented prior to, on, or after the Petition Date. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks and fund transfers are issued or authorized

6

to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

13.   The Debtors are authorized, but not required, to issue, in their sole discretion, new post-petition checks, or to effect post-petition fund transfers, for obligations relating to the Professional Corporations to replace any checks, drafts, wire transfers, and other forms of payment that have been dishonored or rejected.

14.   Any Bankruptcy Rule or Bankruptcy Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

15.   The Debtors are authorized to take any action necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of this Court.

16.   This Court retains exclusive jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: November 14, 2024

Alfredo R Pérez
United States Bankruptcy Judge

7