**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| WELLPATH HOLDINGS, INC. et al.,[1] | ) Case No. 24-90533 (ARP) |
| | ) |
| Debtors. | ) |
| | ) |

**RESPONSE OF CERTAIN CLAIMANTS TO DEBTORS' EMERGENCY MOTION FOR
ENTRY OF INTERIM AND FINAL ORDERS TO ENFORCE THE AUTOMATIC STAY
OR IN THE ALTERNATIVE EXTEND THE AUTOMATIC STAY TO NON-DEBTOR
DEFENDANTS**

The plaintiffs in the Lawsuits reflected in **Exhibit A** hereto (collectively, the "Claimants"),

creditors of the Debtors in the above-captioned chapter 11 case, respond to the *Debtors'*

*Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the*

*Alternative Extend the Automatic Stay to Non-Debtor Defendants* [ECF No. 17] (the "Stay

Motion")[2] as follows:

## PRELIMINARY STATEMENT

1.      The Stay Motion misrepresents the law and facts to obtain relief to which the

Debtors are not entitled. The styling of the Stay Motion and the *Amended Interim Order Enforcing*

*the Automatic Stay* [ECF No. 69] (the "Interim Stay Order") aside, the relief sought is not merely

the enforcement of Bankruptcy Code § 362(a). At a *minimum*, the Debtors seek to extend the

automatic stay beyond the scope of the statutory language. That is not supportable on the bases

asserted in the Motion under Fifth Circuit law. Moreover, what the Debtors really seek is a

preliminary or temporary injunction. That request is not procedurally proper and does not assert

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath.

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Motion.

the required elements, particularly that the threatened injury to the Debtors outweighs the threatened harm to the claimants, and that the injunctive relief will not disserve the public interest. The Debtors' desire to move at breakneck speed does not justify running roughshod over the procedural and substantive rights afforded other parties in interest by the Bankruptcy Code and the Bankruptcy Rules.

2.      In the Fifth Circuit, the automatic stay does not apply to non-debtor entities absent affirmative action to *extend* the automatic stay. *Monson v. McClenny*, 2024 WL 4719892, 2024 U.S. Dist. LEXIS 204784, at *3 (S.D. Tex. June 24, 2024) (collecting cases); *Everitt v. Pneumo Abex, LLC*, 703 F. Supp. 2d 630, 638 (S.D. Miss. 2009); *In re Bidermann Indus. U.S.A.*, 200 B.R. 779, 782 (Bankr. S.D.N.Y. 1996); *see also Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) (reasoning that a bankruptcy court may "invoke" § 362 to stay proceedings against nonbankrupt co-defendants). And it is black letter law that the automatic stay does not (a) prevent severance of the debtor, *e.g.*, *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983), (b) prevent obtaining discovery, *e.g.*, *Groner v. Miller (In re Miller)*, 262 B.R. 499, 503-505 (B.A.P. 9th Cir. 2001); *Premier Pipe, LLC v. J.D. Fields & Co. (In re Hallwood Energy L.P.)*, 2009 Bankr. LEXIS 2398, 2009 WL 2601294 at *25-26 n.6 (Bankr. S.D. Tex. Aug. 24, 2009) ("Discovery between two non-debtor parties is not a violation of the automatic stay."), or (c) divest other courts jurisdiction to determine the effect of the automatic stay in proceedings before those courts, *e.g.*, *La. Marine Operators, LLC v. JRC Marine, LLC*, 2021 U.S. Dist. LEXIS 144718, 2021 WL 4050924 at *7 (E.D. La. Aug. 3, 2021) (quoting *Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990)). The relief requested in the Stay Motion would ***not*** merely enforce the automatic stay and any argument to the contrary is nonsense.

3.      Under applicable Fifth Circuit law, extension of the stay is appropriate only where there exists an identity between the debtor and the third-party defendant such that the debtor may be said to be the real defendant and a judgment against the third party will be a judgment against the debtor. *E.g.*, *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)); *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 111 (Bankr. S.D. Tex. 2014). The Debtors point to the assertion of alter ego claims in the Lawsuits and certain indemnification language in support of this identity of interest. None of the Claimants here assert alter ego claims and it is doubtful that such claims are present in very many of the other Lawsuits. Indemnification creates an identity of interest only where the non-debtor party "is entitled to ***absolute indemnity*** by the debtor on account of any judgment that might result against them in the case." *In re Divine Ripe, L.L.C.*, 538 B.R. 300, 312 (Bankr. S.D. Tex. 2015) (quoting *A.H. Robins Co.*, 788 F.2d at 999) (emphasis supplied). The indemnification provisions related to the Professional Corporations and the D&Os are clearly not absolute based on the representations in the Stay Motion—such indemnities are limited to wrongful acts of the Debtors and claims brought by or in the right of the Debtors, respectively— and the scope of indemnity related to HIG is unclear based on the ostensibly quoted indemnity language.

4.      The Debtors also assert that the automatic stay should be extended to all of the Lawsuits in their entirety because the Lawsuits would place a burden on the Debtors. That is not a recognized basis for extending the automatic stay in the Fifth Circuit and instead requires a separate injunction sought through an adversary proceeding.[3] The requirement for an adversary

---

[3] For the avoidance of doubt, the Claimants dispute the factual basis for the Debtor's assertion. The Lawsuits are already stayed as to the Debtors absent separate relief from the stay, which would include any "deliverables" from the Debtors.

proceeding not only provides important procedural protections to the Claimants here and similarly situated claimants but also is necessary to establish personal jurisdiction—through the issuance and service of a summons—and clarifies the relevant substantive inquiry. To issue a preliminary or temporary injunction, the Court will need to evaluate, among other things, whether the threatened injury to the movant outweighs the threatened harm an injunction may cause the parties opposing the injunction, and whether the granting of the injunction will not disserve the public interest. *E.g.*, *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). The Debtors would have the burden of proving these elements by a "clear showing," *e.g.*, *In re Phila. Newspapers, LLC*, 407 B.R. 606, 617 (E.D. Pa. 2009) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)), but have not made any meaningful assertions or arguments about them in the Stay Motion. The Claimants should not be forced to face trial by ambush on these issues at the hearing on the Stay Motion because the Debtors failed to seek their relief under the appropriate procedure.

5.     To the extent that the Court considers those unaddressed preliminary injunction factors in connection with the Stay Motion—which the Claimants contend would be improper— the Court should deny issuing the injunctive relief requested by the Debtors. All of the Claimants here and likely the vast majority of the other claimants against the Debtors have direct claims against individuals or governmental entities that are legally separate and distinct from the claims against any of the Debtors. By and large, the claims against non-debtors are not about the "quality of medical care" the Debtors provided but rather the violation of constitutional rights and failure to meet detention standards by governmental entities or their contractors and the callous indifference to the suffering of helpless, often dying, people. Requiring the claimants to each separately retain bankruptcy counsel and argue to this court why the stay should not be extended to them would impose a greater burden than requiring the Debtors—represented by competent

proposed bankruptcy counsel already involved in the matter and with a deep bench of more than 1,300 attorneys—to determine the particular Lawsuits that might interfere with the reorganization if they continue against non-debtors and address those Lawsuits specifically. The disservice to the public interest is undoubtable. While the automatic stay prevents the people harmed (or, too often, their estates) from seeking to recover from the Debtors, it does not prevent them from seeking recovery and justice from the governmental entities or other non-debtors. But that would be the effect of the relief sought by the Debtors. This perverse outcome is not required by the Bankruptcy Code, and the Court should not exercise any discretion it has to that end. Doing so would be contrary to the public interest expressed by Congress though 42 U.S.C. § 1983, the Federal Tort Claims Act, the Americans with Disabilities Act, and other statutes underlying the lawsuits.

6.      Moreover, even if the stay could and should be extended to certain claims or certain Lawsuits in their entirety under Fifth Circuit law and the present procedure, the relief sought in the Stay Motion is remarkably overbroad. Rather than identifying the Lawsuits against HIG that would be subject to indemnity, or the Lawsuits that require deliverables from the Debtors and might interfere with the Debtors' reorganization efforts, the Debtors have decided to seek the stay of *all* Lawsuits in their entirety and improperly shift the burden on to claimants to prove that the stay should not be extended with respect to their particular claims against non-debtors. That has no basis in law and should be rejected.

7.      Ultimately, the Stay Motion should be denied entirely without prejudice to the Debtors seeking more limited relief or seeking the same relief in a procedurally proper manner. To alleviate the confusion already caused by the Interim Stay Order, the order denying the Stay Motion should indicate that the stay does ***not*** prevent (a) severance of the Debtors or bifurcation of proceedings to proceed against non-debtor entities, (b) settlement with non-debtor entities or

the approval of such settlements, (c) obtaining discovery from non-debtor entities, (d) dismissing the Debtors from pending proceedings, or (e) obtaining injunctive relief against non-debtor entities.

8.       While chapter 11 bankruptcy is a powerful and flexible tool, it is constrained by the Bankruptcy Code, Bankruptcy Rules, and applicable caselaw. While those constraints might inconvenience the Debtors somewhat, they are inextricable parts of the process that provides the Debtors with that tool in the first place. It should not be forgotten that the default is that people get their day in court, claims get paid, and judges get to determine how to manage their own dockets. What the Debtors seek in the Stay Motion and through their chapter 11 cases generally is extraordinary and only justified to the extent that it strictly complies with applicable law. The Court's job is to make sure that is the case.

## ARGUMENT

### A.  The Debtors are not seeking the mere enforcement of the Automatic Stay.

9.       The automatic stay is a creature of statute. Bankruptcy Code § 362(a) creates and sets out the extent of this stay, providing in its entirety:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

6

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

11 U.S.C. § 362(a). Only actions against the Debtor and property of the estate are proscribed by the statute.

10.     While the automatic stay perhaps may be extended to non-debtor entities in exceptional circumstances, the extension requires a specific action of the bankruptcy court to apply beyond the statutory language. *Monson v. McClenny*, 2024 WL 4719892, 2024 U.S. Dist. LEXIS 204784, at *3 (S.D. Tex. June 24, 2024) (collecting cases); *Everitt v. Pneumo Abex, LLC*, 703 F. Supp. 2d 630, 638 (S.D. Miss. 2009); *In re Bidermann Indus. U.S.A.*, 200 B.R. 779, 782 (Bankr. S.D.N.Y. 1996). Absent such extension, the automatic stay ***does not*** apply against non-debtors or actions necessary to continue litigation against non-debtor defendants. *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983) ("We join those courts concluding that the protections of § 362 neither apply to co-defendants nor preclude severance.").

7

11.     The entire point of the Stay Motion is to have the automatic stay do more than Bankruptcy Code § 362(a) otherwise does. The automatic stay does not prevent severance or bifurcation of an action to proceed against non-debtors, *Wedgeworth*, 706 F.2d at 544, but that is presumably prohibited under the Interim Stay Order. The automatic stay does not prevent discovery from third parties (or even the debtor), *e.g.*, *Groner v. Miller (In re Miller)*, 262 B.R. 499, 503-505 (B.A.P. 9th Cir. 2001); *Premier Pipe, LLC v. J.D. Fields & Co. (In re Hallwood Energy L.P.)*, 2009 Bankr. LEXIS 2398, 2009 WL 2601294 at *25-26 n.6 (Bankr. S.D. Tex. Aug. 24, 2009) ("Discovery between two non-debtor parties is not a violation of the automatic stay."), but that is the result of indiscriminately staying the Lawsuits in their entirety. And the automatic stay does not divest other courts of jurisdiction to determine the applicability of the automatic stay to proceedings before them, *e.g.* *La. Marine Operators, LLC v. JRC Marine*, LLC, 2021 U.S. Dist. LEXIS 144718, 2021 WL 4050924 at *7 (E.D. La. Aug. 3, 2021) (quoting *Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990)), but the Interim Stay Order expressly provides that the Court retains "exclusive jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement" of that order. While the Claimants assert that what the Debtors seek amounts to a separate injunction, at a minimum it constitutes an extension of the automatic stay rather than enforcement.

12.     The Debtors reference in passing insurance as a potential basis for the relief they request.  The Debtors assert that "certain Non-Debtor Defendants are listed as an additional insured party under the Debtors' insurance policies" and such insurance policies constitute property of the estate. Stay Motion ¶ 23. The Debtor's need to prove that, but even if it is true—a dubious proposition in light of the Debtors' inaccurate and incomplete representations about the indemnities described *infra* in Section B.ii—that would at most justify prohibiting the insurance

policies from paying out to those other non-debtor named insureds or staying actions against the "certain" Non-Debtor Defendants that are listed as additional insureds. But even that requires scrutiny—payments by non-debtor named insureds could potentially meet any require deductibles or self-insurance retentions to the benefit of the Debtors and their creditors.

**B. The Debtors have not articulated elements sufficient for extension of the automatic stay.**

13.     Bankruptcy Code § 362 "is rarely . . . a valid basis on which to stay actions against non-debtors." *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001). Under Fifth Circuit caselaw, the stay should be extended "to non-bankrupt co-defendants only when there is a formal or contractual relationship between the debtor and non-debtors such that a judgement against one would in effect be a judgment against the other." *In re Divine Ripe, L.L.C.*, 538 B.R. 300, 312 (Bankr. S.D. Tex. 2015) (citing *Arnold*, 278 F.3d at 436); *see also In re Xenon Anesthesia of Tex.*, PLLC, 510 B.R. 106, 111 (Bankr. S.D. Tex. 2014) (holding the same and that the burden of proof is the party seeking extension of the stay). The Debtors assert three bases for extension of the automatic stay: (i) the Debtors and the Non-Debtor Defendants, as defined in the Stay Motion, share an identity of interests due to the overlapping nature of the claims, (ii) the Debtors and the Non-Debtor Defendants share an identity of interest through indemnity obligations, and (iii) continued litigation would burden the estates and key personnel of the Debtors. These are all either untrue as to the Claimants (and likely the vast majority of Lawsuits) and/or legally insufficient for extension of the automatic stay. Moreover, it is doubtful that the atextual identity interests exception survives recent Supreme Court precedent.

     *i.*   *The Debtors and the Non-Debtor Defendants do not share an identity of interests due to the causes of action asserted by the Claimants.*

14.     The Debtors allege in the Stay Motion that there is an identity of interests between the Debtors and the Non-Debtor Defendants—defined in the Stay Motion as the Professional

Corporations and their PC Physicians, D&Os, and HIG—because the causes of actions allege alter-ego and other similar theories. Stay Motion ¶ 28. Not a single Lawsuit brought by the Claimants here (the "Claimants' Lawsuits") asserts liability against anyone on a theory of alter ego. Each of the Claimants' Lawsuits assert claims directly against third parties—in each case including at least one governmental entity or public official—for those parties' own conduct. Liability against those parties does not *require* liability of the Debtors and a finding of liability against those parties would not necessarily result in liability of the Debtors.

ii. *The Debtors and Non-Debtor Defendants do not share an identity of interests due to the alleged indemnification obligations.*

15. The Debtors also assert that indemnification obligations under management services agreements with the Professional Corporations (the "PC Management Services Agreements"), the Debtors' corporate bylaws (the "Bylaws"), and services agreements with HIG (the "HIG Services Agreements") establish an identity of interests. This is facially unsupportable with respect to the PC Management Services Agreements and Bylaws based on the ostensibly quoted language in the Stay Motion. And while it might be supportable with respect to the HIG Services Agreements—although still not fully supported by the Stay Motion—it would not apply to any of the Claimants' Lawsuits or (in all likelihood) the vast majority of other Lawsuits.

16. Indemnification forms the basis for extending the automatic stay only where the non-debtor party "is entitled to ***absolute indemnity*** by the debtor on account of any judgment that might result against them in the case." *Id.* (quoting *A.H. Robins Co.*, 788 F.2d at 999 (emphasis supplied). *A.H. Robins* illustrates the kind of absolute indemnity that could form the basis for extending the automatic stay to a non-debtor. Where the guarantor of a debtor's obligation is entitled to indemnification from the debtor on account of any judgment rendered against him because of his guaranty extension of the automatic stay is appropriate because any judgement

against the guarantor would be in effect a judgment against the debtor. *A.H. Robins Co.*, 788 F.2d at 999; *see also Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (indicating that the Fifth Circuit has adopted the exception to the general rule only where there is such an identity of interests that that the debtor is the real party in interest and the judgement would be in effect a judgement against the debtor). The point is that a judgement against the guarantor in that situation automatically liquidates a claim against the debtor and its bankruptcy estate.

17.     With respect to the PC Management Services Agreement, the Debtors ostensibly quote section 7.1 of a document referred to as the "CFMG Management Services Agreement." Stay Motion ¶ 14. The referenced language is unambiguously **_not_** an absolute indemnity:

> The [Debtors] will indemnify, defend and hold harmless the Management Company, its Affiliates and their respective directors, managers, officers, equity holders, employees, agents (including the Management Company Representative), successors and permitted assigns (collectively, the "Management Company Indemnified Parties") from and against all losses, liabilities, demands, claims, actions or causes of action, regulatory, legislative or judicial proceedings or investigations, assessments, levies, fines, penalties, damages, costs and expenses (including reasonable attorneys', accountants', investigators' and experts' fees and expenses) incurred in connection with the defense or investigation of any claim ("Damages") sustained or incurred by any Management Company Indemnified Party **_arising from or related to illegal activity, intentional misconduct, negligence or breach of this Agreement by the Company and its directors, managers, officers, equity holders, employees, agents, successors and permitted assigns (the "Company Indemnified Parties")._**

Stay Motion ¶ 14. The Debtors are not indemnifying the Professional Corporations for the actions of the Professional Corporations, but rather only the "illegal activity, intentional misconduct, negligence or breach of [the PC Management Services Agreement]" by the Debtors. A judgment against a Professional Corporation would not result in an obligation against the Debtors unless the Professional Corporation proved those further acts. No claim against the Debtors would be

11

automatically liquidated. Indeed, the Debtors weakly allege that "the Professional Corporations **_may_** be able to assert an indemnification claim against the Debtors for any expenses incurred and damages ordered in connection with the Lawsuits." Stay Motion ¶ 15 (emphasis supplied). The mere possibility does not satisfy the standard. And, of course, it would only apply to the Lawsuits that asserted claims against a Professional Corporation.

18.     With respect to the Bylaws, the Debtors ostensibly quote Art. V § 1 of the document referred to as the "Amended and Restated Bylaws of CCS-CMGC Intermediate Holdings 2, Inc." Stay Motion ¶ 16. The scope of that language is decidedly limited and likely not applicable to many—if any—of the Lawsuits:

> Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, **_whether brought by or in the right of the corporation or any of its subsidiaries_** and whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), or any appeal of such proceeding, by reason of or arising out of the fact that such person, or any other person for whom such person is the legal representative, is or was a director or officer of the corporation or is or was serving at the request of the corporation as a director, officer, manager, general partner, employee, fiduciary, or agent of another corporation or of a partnership, limited liability company, joint venture, trust or other enterprise, shall be indemnified and held harmless by the corporation to the fullest extent which it is empowered to do so by the DGCL[.]

Stay Motion ¶ 16. The language specifically references actions brought by the Debtors directly or through a derivative action "in the right of" the Debtors. Claimants are undoubtedly barred from pursuing such actions by the automatic stay, but that is because those actions by the Debtors or in the right of the Debtors are property of the estate. None of the Claimants are asserting a derivative action on behalf of the Debtors and, on information and belief, few if any of the Lawsuits to which the Debtors seek the stay extended assert such claims. It is hard to see what this has to do with most of the 1,500+ Lawsuits and why the Debtors could not separately address any in which that

is an issue. Moreover, Section 145(b) of the Delaware General Corporation Law only allows indemnification if the appropriate court "determine[s] upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery or such other court shall deem proper." Del. Code Ann. tit. 8, § 145. That is not an absolute indemnity by any stretch of the imagination.

19.     With respect to the HIG Services Agreements, the Debtors ostensibly quote section 9 of documents referred to as the "HIG Transaction Services Agreement" and the "HIG Professional Services Agreement." Stay Motion ¶ 18. While the ostensible language from the HIG Services Agreements at least have the *form* of an absolute indemnity, whether any of the Lawsuits would fall within the scope of that indemnity is dubious:

> The [Debtors] and its subsidiaries shall jointly and severally indemnify, defend and hold harmless the [HIG] and its present and future officers, directors, stockholders, members (both managing and otherwise), partners (both general and limited), managers, affiliates, employees, representatives and agents (the "Indemnified Parties") from and against all losses, claims, liabilities, suits, costs, damages and expenses (including attorneys' fees) to which such Indemnified Party may become subject under any applicable law, regulation, claim made by any third party or otherwise, ***relating to or arising out of the engagement of [HIG] pursuant to, and the performance by the [HIG] or any [HIG] Related Party of the services contemplated by or in connection with, this Agreement***, and the [Debtors] will reimburse any Indemnified Party for all costs and expenses (including attorneys' fees and expenses) (collectively, "Claims") as they are incurred in connection with the investigation of, preparation for or defense of any pending or threatened claim, or any action or proceeding arising therefrom, whether or not such Indemnified Party is a party hereto.

Stay Motion ¶ 18. The extent of this indemnity is not clear from the Stay Motion—there is no description of what these agreements cover—but certainly not *all* of the Lawsuits assert claims against HIG and those that do may assert matters unrelated to the HIG Services Agreements. None

of the Claimants here assert causes of action against HIG. Likely hundreds of other Lawsuits would similarly have the stay improperly extended to non-debtor defendants for no good reason under the relief requested in the Stay Motion.

20.     The Debtors do not even identify—let along establish—indemnification rights with respect to the vast majority of the non-debtor defendants at issue in the Claimants' Lawsuits. To the extent that such indemnification obligations exist, the Debtors should not be allowed to raise that issue at the hearing on the Stay Motion.

> iii.   _The burden of continued litigation is not grounds for extension of the automatic stay, but rather an injunction pursuant to Bankruptcy Code § 105(a)._

21.     The Debtors also assert that extension of the stay is appropriate where the litigation "'could interfere with the reorganization of the debtor' or 'would frustrate the statutory scheme of chapter 11 or diminish the debtor's ability to formulate a plan of reorganization.'" Stay Motion ¶¶ 25, 31. This is a misstatement of the law, at least in the Fifth Circuit. While this might be a consideration in whether a bankruptcy court grants a preliminary injunction under Bankruptcy Code § 105(a), that requires different procedure that would prevent the overbreadth of the relief requested in the Stay Motion and Interim Stay Order. The authorities cited by the Debtors demonstrate this distinction.

22.     The Debtors first reference _Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)_, 115 F. App'x 565, 570 (3d Cir. 2004), in support of this asserted basis for an extension of the stay. Stay Motion ¶ 25. But that unreported opinion involved the denial of a Rule 60(b) motion to clarify an **_injunction_** issued under Bankruptcy Code § 105 that was requested and issued through an adversary proceeding. _Id._ at 567-68. The procedure at issue contradicts what the Debtors attempt to do through the Stay Motion.

23.     The second authority cited by the Debtors is *In re McConathy*, 2021 Bankr. LEXIS 1569; 2021 WL 2405734 (Bankr. W.D. La. June 11, 2021). Stay Motion ¶ 25. That case involved a state court action to determine ownership of oil and gas rights and assert claims for damages that would have the ancillary effect of determining the bankruptcy estate's interest in the same property. *Id.* at *3-4, *9-10. A former chapter 7 debtor claimed that he acquired the mineral rights before filing bankruptcy but failed to disclose the interests in his bankruptcy case. *Id.* at *1-2. *7-8. The interests therefore remained property of the estate. *Id.* at *2.  When the bankruptcy court reopened the case, it ordered that all actions involving estate property—including the pending litigation to determine the debtor's interest in the property—were stayed. *Id.* Notwithstanding this, the debtor and his counsel continued pursuing the litigation, the chapter 7 trustee filed a motion to enforce the stay, and the debtor and the trustee entered an agreed order pursuant to that motion to enforce. *Id.* The non-debtor parties filed a motion to modify the stay to allow their actions to go forward, *id.*, the decision on which the Debtors cited in the Stay Motion. Although the bankruptcy court denied the motion, it did so because the litigation would have the effect of determining the estate's interest in the mineral rights:

> In this case, every count in the Kansas petition would require the state court to adjudicate whether the non-debtor parties have a rightful claim to the mineral rights at issue. But in making that determination, the Kansas court would also decide whether the estate has a rightful claim to the mineral rights because a determination of one party's fractional interest ***necessarily*** affects the remaining parties claiming to hold the remaining fractional interests.

*Id.* at *11 (emphasis supplied). This is a far cry from the proposition for which the Debtors cite the authority. Further, the case demonstrates the kind of individualized determination that is required.

24.     The third authority cited by the Debtors is *In re Phila. Newspapers, LLC*, 407 B.R. 606, 609 (E.D. Pa. 2009). Stay Motion ¶ 31. In that case, the question on appeal was whether the

bankruptcy court's issuance of a ***preliminary injunction*** was an abuse of discretion. *Id.* at 611. The U.S. District Court for the Eastern District of Pennsylvania expressly described the separate analysis required for issuing the injunction and extending the stay that, in that court's view, were often conflated. *Id.* Further, while the district court's reasoning included analysis of how the diversion of resources from the continuation of litigation against non-debtors would impact the debtor's ability to reorganize, that was not the sole basis for the decision, and the reasoning does not comport with applicable Fifth Circuit law, which requires an identity of interest.

25.     The last authority referenced by the Debtors in support of this basis for relief is *Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*, 354 B.R. 45 (Bankr. S.D.N.Y. 2006). Stay Motion ¶ 31. This decision was from an adversary proceeding in which the bankruptcy court extensively addressed the standards to obtain a preliminary injunction under Bankruptcy Code § 105. *Id.* at 48-49. Additionally, as indicated in the parenthetical to the Debtors' citation, the effect of the litigation on the debtor's key personnel was only one factor, along with an absolute indemnity. *Id.* at 50. The bankruptcy court made that determination based on the evidence presented and about a particular lawsuit, after reasoning that the Debtor had the burden of demonstrating that the circumstances warranted extending the stay. *Id.* at 49-50. But there is no absolute indemnity here except *perhaps* with respect to HIG, and the relief requested by the Stay Motion is overly broad.

26.     Other authorities cited in the Stay Motion for different propositions also demonstrate that a preliminary injunction is necessary. These include:

- *Quigley Company, Inc. v Law Officers of Peter G. Angelos (In re Quigley Co., Inc.)*, 676 F.3d 45 (2d Cir. 2012)—cited sub nom. In re Quigley Co., Inc. in paragraph 23 of the Stay

Motion—which involved the appeal of an order enforcing a preliminary injunction barring certain litigation against third parties.

- *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 386 B.R. 17 (Bankr. D. Del. 2008)—cited sub nom. In re W.R. Grace & Co. in footnote 7 of the Stay Motion—which involved debtor, as plaintiff in an adversary proceeding, moving for the expansion of a preliminary injunction against the defendants.

- *Eastern Airlines Inc. v. Rolleston et. al. (In re Ionosphere Clubs Inc.)*, 124 B.R. 635, 636 (S.D.N.Y. 1991)—cited sub nom. In re Ionosphere Clubs Inc. in footnote 7 of the Stay Motion—which was an appeal of an order entering a preliminary injunction under Bankruptcy Code § 105 preventing the continuation of a lawsuit against third parties.

If the Debtors were unaware of the necessity of a preliminary injunction in light of the authorities referenced—and adversary proceedings and preliminary injunctions sought in *Tehum Care Services, Inc v. Those Parties Listed in Appendix A to the Complaint (In re Tehum Care Services, Inc)*, Adv. Proc. No. 23-03049 (Bankr. S.D. Tex.) and *Red River Talc LLC v. Those Parties Listed on Appendix A to Complaint and John and Jane Does 1-1000 (In re Red River Talc LLC)*, Adv. Proc No. 24-03194 (Bankr. S.D. Tex.)—that merely calls into question the propriety of the rapid pace at which the Debtors seek to conduct these cases.

C. **The relief requested in the Stay Motion, if supportable at all, must be requested through an adversary proceeding seeking an injunction and meet the requirements for a preliminary/temporary injunction.**

27.     As described above, Bankruptcy Code § 362(a) does not provide for the relief that the Debtors seek. What the Debtors want—and what their justifications for that relief point to—requires a preliminary injunction under Bankruptcy Code § 105 sought through an adversary proceeding. In addition to being required by the Bankruptcy Rules, it is necessary for the Court to

have jurisdiction over the enjoined parties, to protect the procedural and substantive rights of the Claimants and other similarly situated claimants, and to clarify the requirements for the relief requested.

28.     Bankruptcy Rule 7001(7) provides that a proceeding to obtain an injunction or other equitable relief, except through a plan, requires an adversary proceeding. As described above, the relief sought by the Debtors would cover actions against entities not covered by Bankruptcy Code § 362 as well as the kinds of actions that are not prohibited by the automatic stay. Indeed, it would prevent actions against not only the Non-Debtor Defendants (as defined in the Stay Motion) but *all* entities involved in a Lawsuit in which the Debtor is also a party, purport to remove jurisdiction from other courts to interpret the effect of the order on the Lawsuits pending before those courts, and prevent discovery against non-debtor entities.  That is not just "extending" the stay. It is a separate injunction, which requires personal jurisdiction to issue.[4] *SEC v. Stanford Int'l Bank, Ltd.*, 112 F.4th 284, 292 (5th Cir. 2024) ("Injunctions bind people, not property, so all injunctions require *in personam* jurisdiction.").

29.     Among the additional process and procedural rights conferred by the adversary rules are those necessary to establish personal jurisdiction over the enjoined parties. Bankruptcy Rule 7004(a)(1)—by incorporation of provisions of Federal Rule of Civil Procedure 4(a)—requires the issuance of a summons to a defendant containing certain information. This summons must be served upon the defendant. Fed. R. Bankr. P. 7004(b). That the law requires this is sufficient, but there are practical concerns. Here, the Debtors did not serve the Stay Motion until

---

[4] There bases for stays and injunctions, resulting in different authority and jurisdiction for courts to impose or enforce the automatic stay compared to injunctions. The automatic stay is rooted in the law of moratory—the government's power to safeguard the diffuse economic interests of the people—while injunctions arise from a particular court's jurisdiction and inherent authority over individuals and property. *In re Ace Track Co.*, 556 B.R. 887, 894 n.6 (Bankr. N.D. Ill. 2016). Consequently, the automatic stay can apply to the whole world even absent personal jurisdiction. Injunctions, however, require personal jurisdiction. *SEC v. Stanford Int'l Bank, Ltd.*, 112 F.4th at 292.

November 18, 2024 [ECF No. 122]—just fourteen (14) days before the response deadline and six (6) days *after* the Interim Stay Order was entered—which would not pass muster in an adversary proceeding. Even in a request for an emergency TRO, the movant must at least *attempt* to provide notice beforehand. The Debtors did not bother and instead simply styled their request an "enforcement" of the automatic stay and claimed that notice would be provided.[5]

30.     The requirement for an injunction also matters substantively. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by *a clear showing*, carries the burden of persuasion." *In re Phila. Newspapers, LLC*, 407 B.R. at 617 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The prerequisites for a preliminary or temporary injunction are: (1) a substantially likelihood that the movant will prevail on the merits, (2) a substantial threat that the movant will suffer irreparable injury in the injunction is not granted, (3) the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction, and (4) that the granting of the injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *In re Phila. Newspapers, LLC*, 407 B.R. at 617; *Angel v. Tauch (In re Chiron Equities, LLC)*, 552 B.R. 674, 697 (Bankr. S.D. Tex. 2016); *Yukos Oil Co. v. Russian Fed'n (In re Yukos Oil Co.)*, 320 B.R. 130, 135 (Bankr. S.D. Tex. 2004). The Stay Motion lacks any meaningful allegations or argument related to the second and third elements required for a preliminary or temporary injunction.

31.     It is doubtful that the threatened injury to the Debtors outweighs the combined harm to the claimants at large or even just the particular Claimants here. For the reasons set out *infra* in Section D, the relief sought by the stay motion is patently overbroad. The Debtors' requested relief

---

[5] The Stay Motion says that notice "will be provided to all claimants or, where applicable, counsel to . . . the plaintiffs in the Lawsuits" but was silent that that notice would be provided *a week after the filing*. Certainly, that notice occurred on a different timeframe than the notice going out to the other "Notice Parties." Whether that amounted to intentional lack of candor or was merely an unintentional lapse, it demonstrates why the process matters.

applies to *all* Lawsuits, including those that do not implicate any legitimate concern the Debtors raise and seemingly would preclude continuing actions against non-debtors that would have no effect on the Debtors' estates. Requiring each of the claimants to retain bankruptcy counsel and initiate a proceeding to demonstrate why their particular Lawsuit should not be stayed against non-debtors—rather than the Debtors establishing the need for such exceptional relief—unjustifiably shifts the burden. The Debtors' proposed counsel has a deep bench that could competently analyze the Lawsuits. The Debtors' passing assertion that the effect on claimants will be minimized because the Debtors desire to proceed at a breakneck pace—at the detriment of the claimants' rights and ability to participate meaningfully in the bankruptcy—does not meet the burden. At most, the issue is uncertain. The law requires the Debtors to make a clear showing.

32.     What is clear, however, is that the injunctive relief that the Debtors seek would disserve the public interest. There is a governmental entity or public official defendant in each of the Claimants' Lawsuits with independent liability. On information and belief, a large majority of the Lawsuits include causes of action under 42 U.S. Code § 1983 for violations of constitutional rights under the color of state law or similar causes of action.[6] The only one of the Claimants' Lawsuits that does not assert such a cause of action instead asserts a claim under the Federal Tort Claims Act (FTCA) for the direct liability of the United States government in operating an immigration detention facility.[7] Several others assert claims against governmental entities under the Americans with Disabilities Act (29 U.S.C. § 12131 et seq.) and the Rehabilitation Act (29

---

[6] The Claimant in *Ontiveros v. Bd. of Cnty. Comm'rs of San Juan, et al.*, Case No. D-1116-CV-2023-01315 (11th Judicial District Court for N.M.) is seeking recovery against the Board of County Commissioners of the County of San Juan under, among other statutes, the New Mexico Civil Rights Act, which provides for similar relief as Section 1983.

[7] In *Vargas v United States et al.*, Case No. 5:23-cv-00380-JWH-SP (C.D. Cal.), the Claimant is seeking recovery against the United States under the FTCA. On information and belief, this Claimant will be filing a separate joinder to this Response outlining the specific facts of that Lawsuit.

U.S.C. § 794(A)). By and large, the thrust of the Lawsuits is not the obvious fact that the Debtors provide substandard medical care, but rather the inhumane treatment of incarcerated or detained individuals and the attendant violation of their constitutional and statutory rights. People died while begging for help that was callously and vindictively refused. Corrections officers stood by and watched as inmates' health obviously deteriorated and affirmatively refused to connect mentally ill inmates with court-ordered resources. The automatic stay may prevent holding the Debtors accountable, but it should ***not*** prevent proceeding against the correctional officers, governments, or other individuals and entities that are responsible just because a blanket stay is marginally more convenient for the Debtors. This Court should not override Congress's clear policy choices by granting discretionary injunctive relief.

33.     These issues should be before the Court under the proper procedure. The Debtors should present their basis for why the balance of harms favors their desired blanket stay and why that blanket stay does not disserve public policy. That is the Debtors' burden under the law. The Claimants and other similarly situated claimants should then have the opportunity to respond with their arguments and evidence. This is what due process requires. The Debtors should not be able to do what they appear poised to do here and assert a position in the Stay Motion and then shift course at the hearing and present previously unexpressed evidence and arguments. The Stay Motion should be denied without prejudice to the Debtors seeking appropriate relief under the proper procedure.

### D.  A blanket stay of all Lawsuits in their entirety is overbroad and should not be imposed by the Court.

34.     Even if the arguments and allegations in the Stay Motion were legitimate and the procedure of the Stay Motion allowed the Court to grant the relief requested—both of which the Claimants dispute—the *most* they would support is extending the stay to the specifically defined

Non-Debtor Defendants (i.e., the Professional Corporations, PC Employees, D&Os, and HIG).[8] The Debtors repeatedly reference these "Non-Debtor Defendants" in the Stay Motion, but go on to request relief that would stay *all* of the Lawsuits in their entirety, including other non-debtor defendants not identified, and even purport to divest other courts of jurisdiction to interpret the effect of this Court's order on the proceedings before them.

35.     The harm that would result from this overbroad relief is material. As an example, in one of the Claimants' Lawsuits—*Alameda County Male Prisoners, et al. v. Alameda County Sheriff's Office*, *et al.*, Case No. 3:19-cv-07423 JSC (N.D. Cal.)—a class action settlement with the Alameda County defendants has been reached providing for certain injunctive relief resolving the issues going forward. *See* **Exhibit B** hereto. Approval of the U.S. District Court for the Northern District of California is required to effectuate that settlement, but the continuation of the Lawsuit is ostensibly barred by the Interim Stay Order. The Debtors certainly contend that the litigation is stayed and filed a "Suggestion of Bankruptcy and Notice of Stay" attaching this Court's Interim Stay Order. *See* **Exhibit C** hereto. In other of the Claimants' Lawsuits, the governmental defendants have indicated a desire to settle but effectuating that settlement will require action in the Lawsuits from the Claimants, the governmental entity, and the relevant court. *E.g.*, Notice of Settlement, *Vargas v United States of America*, Case No. 23-cv-00380 (N.D. Cal.), attached hereto as **Exhibit D**. The relief requested in the Stay Motion also ostensibly prohibits the Claimants from pursuing discovery from non-debtor entities, severing or dismissing the Debtors from the Lawsuits, or dismissing non-debtor entities from the Lawsuits.

---

[8] For the avoidance of doubt, the Claimants assert that (a) there is no basis for extending the stay to the Professional Corporations, PC Employees, or D&Os under the allegations in the Stay Motion and (b) the Debtors should not be allowed to argue something contrary to the Stay Motion at the hearing thereon. Whether extension of the stay to HIG is appropriate depends on the scope of the HIG Services Agreements and the claims asserted in particular Lawsuits.

36.     None of these prohibitions are required by the Bankruptcy Code or necessary or appropriate based on the allegations set out in the Stay Motion. It should not be up to the Claimant's to figure out what—if anything—the Debtors actually need and pare down the relief requested. The Debtors have had at least twenty-one (21) days to get a handle on the Lawsuits. In reality, they had longer. The Debtors' CRO has been in a C-level position with the company since December 2022 and undoubtedly the Lawsuits were analyzed as part of the Debtors' alleged prepetition marketing process. The Stay Motion should be denied in its entirety and the Debtors allowed to refile—under the correct procedure—seeking more tailored relief.

**E.  The order denying the Stay Motion should clarify matters that are _not_ stayed to resolve the confusion from the Interim Stay Order.**

37.     The Court entered the Interim Stay Order based on the incorrect representations at the first day hearings that it merely affirmed the existing extent of the automatic stay. That is not true, and this has caused significant confusion among trial courts in which the Lawsuits are pending. The order denying the Stay Motion should remedy this situation by clarifying the extent of the automatic stay.

38.     A number of courts, apparently familiar with the extent of the automatic stay, indicated initially that the stay did not apply to non-debtors and that the matter would continue with respect to such non-debtors. For example, in *Capaci v. Dsraj et al.*, Case No. 7:24-cv-04626-pmh (S.D.N.Y.), the U.S. District Court for the Southern District of New York entered an order finding that although the automatic stay applied to Wellpath, LLC and Wellpath NY, LLC, the Court saw no reason to stay the actions against other defendants. *See* **Exhibit E** hereto. Subsequently, the Debtors filed another notice referencing the Interim Stay Order and asserting that, because the Debtor is defendant, the matter can not proceed at all. The U.S. District Court,

apparently puzzled by the basis for this, entered an order scheduling a status conference on December 2, 2024. *See* **Exhibit F** hereto.

39.     Additionally, in some of the Claimants' Lawsuits, the governmental entities have agreed to a settlement and desire to go forward with that settlement. The settlements in *Alameda County Male Prisoners, et al. v. Alameda County Sheriff's Office, et al.* and *Vargas v. United States et al.* are reflected in filings with the trial courts and therefore referenced in this Response, but other Claimants have or will have prospective settlements against governmental entities requiring court approval. This would not be barred by the automatic stay and any order of this Court that would prohibit a governmental entity from accepting responsibility or remedying harm caused would be the very definition of disserving public interest. However, the existence of the Interim Stay Order may cause confusion that should be expressly remedied.

40.     The proposed order attached hereto (the "Proposed Order") addresses these issues and provides clarity on the extent of the automatic stay. It provides that the Interim Stay Order is vacated and the Automatic Stay does not preclude (a) severance of the Debtors or bifurcation of proceedings to pursue claims against non-debtor entities, (b) settlement with non-debtor entities or the approval of such settlements, (c) obtaining discovery from non-debtor entities, (d) dismissing the Debtors from pending proceedings, or (e) obtaining injunctive relief against non-debtor entities. None of those things are prohibited by the automatic stay.

## CONCLUSION

41.     Based on the foregoing, the Court should enter the Proposed Order denying the Stay Motion without prejudice to the Debtors seeking appropriate relief through the appropriate procedure. The relief requested in the Stay Motion is not justified. In their haste, the Debtors have overlooked what the law requires. The Court should remind them.

Dated: December 2, 2024                    **SHANNON & LEE LLP**

                                           /s/ *R. J. Shannon*
                                           R. J. Shannon
                                           State Bar No. 24108062
                                           2100 Travis Street, STE 1525
                                           Houston, Texas 77002
                                           Tel. (713) 714-5770
                                           rshannon@shannonleellp.com

                                           *Bankruptcy Co-Counsel to the Claimants for the*
                                           *Limited Purpose of Responding to the Stay Motion*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served (a) by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service in the above captioned case and (b) by separate email on the following:

mhelt@mwe.com; fperlman@mwe.com; bgiordano@mwe.com; jjumbeck@mwe.com; cwurzelbacher@mwe.com; sszanzer@mwe.com; cdingman@mwe.comnicholas.zluticky@stinson.com; zachary.hemenway@stinson.com; lucas.schneider@stinson.com; salberino@akingump.com; mbrimmage@akingump.com; kdoorley@akingump.com; taylorb@akingump.com; brosen@proskauer.com; ebarak@proskauer.com; ddesatnik@proskauer.com; ppossinger@proskauer.com; jamie@aswtlawyers.com; nathan.rugg@bfkn.com; alexander.berk@bfkn.com; aaron.guerrero@bondsellis.com; bryan.prentice@bondsellis.com; sandron@broward.org; credentials@browardhealth.org; credentials@browardhealth.org; jgarfinkle@buchalter.com; jwishnew@cahill.com; jlevitin@cahill.com; jwishnew@cahill.com; cpower@cokinoslaw.com; tgibbs@cokinoslaw.com; emyles@cokinoslaw.com; ccountsreceivable@correctrxpharmacy.com; mshawley@diamondpharmacy.com; gsleis@diamondpharmacy.com; oag@dc.gov; jprostok@forsheyprostok.com; blake.berryman@icloud.com; madeyemo@grsm.com; john@johndevlinlaw.com; yelena.archiyan@katten.com; cashposters@labcorp.com; jjggarrotto@msn.com; greggarrotto@msn.com; dallas.bankruptcy@lgbs.com; austin.bankruptcy@lgbs.com; houston.bankruptcy@lgbs.com; jparsons@mvbalaw.com; mms.eft@mckesson.com; contact@mclaren.org; jcornwell@munsch.com; bfunk@munsch.com; arperez@munsch.com; bob.bruner@nortonrosefulbright.com; maria.mokrzycha@nortonrosefulbright.com; administration@oagguam.org; ha.nguyen@usdoj.gov; matt@parmet.law; rachel.irving@pharmacorr.com; himroi@phoebehealth.com; sgoodman@pivothealthaz.com; pivothealthaz@gmail.com; info@primehealthcare.com; casey.roy@rsbfirm.com; kericksen@regionalonehealth.org; dipannita.s@sonata-software.com; attorney.general@alaska.gov; ag@la.as.gov; aginfo@azag.gov; oag@arkansasag.gov; attorney.general@coag.gov; attorney.general@ct.gov; attorney.general@delaware.gov; agcarr@law.ga.gov; hawaiiag@hawaii.gov; bankruptcy@ag.idaho.gov; webteam@ag.iowa.gov; constituentservices@ag.louisiana.gov; constituentservices@ag.louisiana.gov; attorney.general@maine.gov; oag@oag.state.md.us; miag@michigan.gov; attorney.general@ago.mo.gov; ago.info.help@nebraska.gov; aginfo@ag.nv.gov; attorneygeneral@doj.nh.gov; ndag@nd.gov; trish.lazich@ohioattorneygeneral.gov; donna.hope@oag.ok.gov; attorneygeneral@doj.state.or.us; consumers@attorneygeneral.gov; ag@riag.ri.gov; odcmail@sccourts.org; odcmail@sccourts.org; consumerhelp@state.sd.us; agbankcal@ag.tn.gov; complaints@oag.texas.gov; bankruptcy@agutah.gov; bankruptcy@agutah.gov; ago.info@vermont.gov; serviceatg@atg.wa.gov; serviceatg@atg.wa.gov; communications@wvago.gov; dojbankruptcynoticegroup@doj.state.wi.us; evelyn.meltzer@troutman.com; dabney.carr@troutman.com; sarah.bures@troutman.com; chelsey.noble@troutman.com; info@usvidoj.com; info@usvidoj.com; upmarquette@verisma.com

*/s/R. J. Shannon*
R. J. Shannon