**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WELLPATH HOLDINGS, INC. et al.,[1] | ) | Case No. 24-90533 (ARP) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**RESPONSE IN OPPOSITION TO DEBTORS' EMERGENCY MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS TO ENFORCE THE AUTOMATIC STAY OR IN
THE ALTERNATIVE EXTEND THE AUTOMATIC STAY TO NON-DEBTOR
DEFENDANTS**
[Relates to ECF No. 17]

Jordan Deppe, Deceased, by and through his Successor in Interest, Michael Deppe; and

Michael Deppe, Individually ("Deppe Plaintiff"); and John Adena, Deceased, by and through his

Co-Successors in Interest, Circe Adena and Richard Adena; Circe Adena, Individually, and

Richard Adena, Individually ("Adena Plaintiffs," and together with Deppe Plaintiff, the

"Claimants"), civil rights claimant-creditors of certain Debtors in the above-captioned chapter 11

case, file this response ("Response") in opposition to *Debtors' Emergency Motion for Entry of
Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic
Stay to Non-Debtor Defendants* [ECF No. 17] (the "Stay Motion")[2] and state as follows:

**SUMMARY**

Claimants are parents of young men who died while pretrial detainees in the Shasta County,

California jail.  They have waited years to obtain justice. The Stay Motion seeks to extend the

automatic stay beyond the scope of section 362(a) and Fifth Circuit law to <u>unidentified</u> non-debtor

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath.

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Stay Motion.

entities and individuals. Claimants' litigation against the Debtor Defendants (as defined below) also includes several non-debtor parties who are not employed or owned by the Debtor Defendants. Staying all the Claimants' litigation through a date uncertain while the Debtors pursue their chapter 11 case creates an extreme hardship on the Claimants. Claimants are willing to sever out or dismiss Debtor Defendants from their litigation and proceed with their claims against the non-debtor entities and individuals. Based on disclosures in the Claimants' litigation, there are insurance policies covering the non-debtor parties, which are separate and distinct from the Debtors' own coverage. If a final order extending the stay to Non-Debtor Defendants is entered, Claimants' ability to vindicate their rights in the litigation and obtain compensation from the non-debtor entities and individuals via insurance policies is hindered. Claimants request that the Court deny the Stay Motion, or alternatively, Claimants request that the Court exercise its discretion to tailor any final order to allow Claimants to sever or dismiss the Debtor Defendants from litigation and proceed with their cases.

## **BACKGROUND**

A. **Claimants' Cases**

1.      Claimants are the plaintiffs in two wrongful death cases pending in the United States District Court for the Eastern District of California. The cases are entitled *Deppe v. Shasta County, et al.*, E.D. Cal. Case No. 2:22-CV-00187-DAD-JDP (the "Deppe Case"), and *Adena v. Shasta County, et al.*, E.D. Cal. Case No. 2:21-CV-00770-DC-DMC (the "Adena Case," and together with the Deppe Case, "Claimants' Cases").

2.      Claimants are represented by the law firm of Haddad & Sherwin LLP in Oakland, California. Attached hereto and incorporated herein as **Exhibit 1** is the Declaration of Julia

2

Sherwin in support of this Response, and as **Exhibit 2**, the Declaration of Michael J. Haddad in support of this Response.

3.      Two of the Debtors in this jointly administered bankruptcy case, Wellpath LLC and Wellpath Management, Inc. (together, "Wellpath Defendants"), are defendants in the Claimants' Cases. However, there are several non-debtor parties as defendants in each case. In the Deppe Case, non-debtor defendants include:

> i.Shasta County, California;
>
> ii.Shasta County Sheriff-Coroner Eric Magrini;
>
> iii.Shasta County Captain Gene Randall;
>
> iv.Shasta County Lieutenant Dale Marlar;
>
> v.California Forensic Medical Group, Inc. ("CFMG");
>
> vi.Sanaz Parsa, M.D.;
>
> vii.Traci Lewis, L.M.F.T.;
>
> viii.Shea Phinney, L.M.F.T.; and
>
> ix.Daniel Dellwo P.A.

4.      In the Adena Case, non-debtor defendants include:

> i.Shasta County, California;
>
> ii.Shasta County Deputy Joseph Grady;
>
> iii.Shasta County Deputy Nathaniel Neves;
>
> iv.Shasta County Deputy Hector Cortez;
>
> v.CFMG;
>
> vi.Traci Lewis, L.M.F.T.;
>
> vii.Pam Johansen, L.C.S.W.;

viii. Daniel Dellwo, P.A.; and

ix. Amanda Ream, R.N.

5. The Deppe Case involves the jail suicide of 25-year-old military veteran Jordan Deppe at the Shasta County, California, jail on January 7, 2021. (Deppe Case ECF No. 73, First Amended Complaint). Mr. Deppe was severely mentally ill, had been diagnosed with schizophrenia, schizoaffective disorder, and major depression, and had a long history of multiple suicide attempts, suicidal gestures, and suicidal ideation. The Deppe Plaintiff is Jordan Deppe's father individually and as successor-in-interest. The case was filed on January 28, 2022. Ex. 1, ¶ 6.

6. In the Deppe Case, non-expert discovery is complete and expert disclosures are due December 13, 2024. The parties completed extensive voluminous written discovery and 12 depositions. The Deppe Plaintiff has already incurred significant expense in expert work to prepare for timely expert disclosures and reports. All motions, including dispositive motions, are due June 13, 2025, and all pretrial filings are due August 19, 2025. The final pretrial conference is August 26, 2025; and trial is October 27, 2025. Ex. 1, ¶ 7.

7. The Adena Case involves the severe beating of John Adena by jail deputies, causing extensive internal hemorrhaging, a Common Carotid Artery dissection, polydipsia and hyponatremia, resulting in the death of 31-year-old John Adena at the Shasta County, California jail on September 21, 2019. The Adena Plaintiffs are John Adena's parents individually and as successors-in-interest. The case was filed on April 29, 2021. Ex. 1, ¶ 8.

8. In the Adena Case, fact discovery is almost complete, and the close of fact discovery is January 17, 2025. The parties have completed 33 depositions and exchanged many thousands of pages of documents. Expert disclosures are due March 14, 2025, and the Adena

Plaintiffs have already incurred significant expense in experts' work to prepare their reports. Ex. 1, ¶ 9.

9.      Haddad & Sherwin LLP has handled several cases against the Wellpath Defendants, and their affiliates and predecessors, over many years in the State of California. Since the founding of "Wellpath" after the merger of Correctional Medical Group Companies ("CMGC") and Correct Care Solutions ("CCS"), Wellpath has asserted that the correctional healthcare it provides in California jails is provided by CFMG, a California corporation which is one of the named defendants in each of the Claimants' Cases. The contract for the provision of correctional healthcare with Shasta County, California is signed by CFMG. CFMG has not filed bankruptcy. Ex. 1, ¶ 10.

10.     At the time of the deaths of Jordan Deppe and John Adena, Shasta County had a contract with CFMG that was in effect. Ex. 1, ¶ 11.

11.     The contract required CFMG to maintain at least $2,000,000 in professional liability insurance coverage for each occurrence. The contract further required that any deductible or self-insured retention exceeding $100,000 must be disclosed to Shasta County and is subject to Shasta County's approval. The contract also required that Shasta County and its employees be additional insureds. Ex. 1, ¶ 12.

12.     In the Claimants' Cases, the Wellpath Defendants have asserted that the healthcare in Shasta County jail is provided by CFMG and its employees, and not by Wellpath. Ex. 1, ¶ 13.

13.     In the Claimants' Cases, the defendants have claimed that Eliud Garcia, M.D., and Defendants Daniel Dellwo, Traci Lewis, L.M.F.T., Shea Phinney, L.M.F.T., Pam Johansen, L.C.S.W., and Sanaz Parsa, M.D. are all employed or contracted by CFMG or other non-debtor entities. Ex. 1, ¶¶ 14-19.

14.     On November 18, 2024, the United States District Court in the Deppe Case issued a minute order staying only the claims against Debtor Wellpath LLC. Ex. 1, ¶ 20.

15.     On November 25, 2024, the United States District Court in the Adena Case issued a minute order staying the claims against Wellpath LLC and also non-debtor CFMG's employees based on Wellpath's representations to the Court, and without allowing a response from Claimants. Ex. 1, ¶ 21.

16.     Both cases currently are in a posture where the parties typically would attempt to mediate or otherwise negotiate a full settlement of all claims. Settlement is all but impossible while the bankruptcy stay continues against non-debtor defendant CFMG and its employees, even though they appear to be covered by at least $3 million in disclosed insurance in the Deppe Case and probably an equal amount in the Adena Case. Ex. 2, ¶ 17.

**B.  Attempts to Confer and Obtain Insurance Information; Harm to Claimants**

17.     On November 27, 2024, Haddad & Sherwin LLP proposed a stipulation to defense counsel in the Claimants' Cases to dismiss all claims against the Wellpath Defendants with each side to bear their own costs and fees necessitated by the claims against those two parties. In exchange, in the Adena Case, Haddad & Sherwin LLP requested a stipulation to proceed with pending claims against the remaining non-debtor defendants without any bankruptcy stay (as the district court in the Deppe Case already ordered). Ex. 2, ¶ 7.

18.     In the Claimants' Cases, Haddad & Sherwin LLP proposed for each remaining medical defendant to produce any insurance policies that may provide coverage in these cases as already required by Federal Rule of Civil Procedure 26(a)(1)(A)(iv) and as requested in previously-served requests for production of documents. To date, Haddad & Sherwin LLP has not

received a response to the proposed stipulation from counsel for the Wellpath Defendants or any of the other medical, non-debtor defendants in the Claimant's Cases. Ex. 2, ¶ 7.

19.     In their Rule 26 initial disclosures in the Adena Case on September 17, 2021, Wellpath Defendants, CFMG, and the individual medical employee defendants stated: "A request has been made for a copy of the policy of insurance for the defendants in this action and a copy will (sic) provided on receipt from the carrier." In their Rule 26 initial disclosures in the Deppe Case on June 10, 2022, Defendants CFMG, medical employees, and Wellpath Defendants stated they are jointly insured by Allied World with combined policy limits of $3,000,000.00. Ex. 2, ¶ 9.

20.     Haddad & Sherwin LLP also has not received the required and long overdue insurance policies from any of the medical defendants, including the Wellpath Defendants. To date, the Wellpath Defendants and the non-debtor defendants in the Claimants' Cases have not produced the insurance policies that provide coverage for claims made in these two cases, despite the requirement to do so under the Federal Rules of Civil Procedure, and despite Haddad & Sherwin LLP's repeated requests for this information. Ex. 2, ¶ 8.

21.     If Claimants were permitted, as they have proposed by stipulation, to dismiss all claims against the two Wellpath Defendants with each side to bear their own costs and fees necessitated by the claims against those two parties, and to proceed with pending claims against the remaining non-debtor defendants without any bankruptcy stay (as the district court already has ordered in the Deppe Case), then all parties, including Shasta County and its employees, could now attempt to reach a global settlement of all claims in the district court, or otherwise move Claimants' Cases toward trial. Ex. 2, ¶ 18.

22.     Claimants are the grieving parents of young men who died in the Shasta County jail in part due to the deliberate indifference to their serious medical needs by medical defendants

in these cases, including the individual actors and CFMG. Jordan Deppe's father has had to wait almost four years, and John Adena's parents have had to wait over five years, for these cases to proceed after their sons' deaths. These parents deserve to have their civil claims heard or resolved without undue delay – especially from a bankruptcy stay of proceedings against Wellpath Defendants who are not  necessary to the resolution of their claims. Ex. 2, ¶ 19.

23.     It would be a substantial and undue hardship on the Claimants in these two wrongful death cases for the bankruptcy stay to be permanently extended to include non-debtor defendants, including CFMG and its employees, and Shasta County and its employees. Ex. 2, ¶ 13.

## OBJECTION TO STAY MOTION

**A. The Stay Motion fails to list the specific names of the "Non-Debtor Defendants."**

24.     As a preliminary matter, the Stay Motion does not list the names of the specific Professional Corporations[3], PC Physicians, and D&Os that comprise the pool of Non-Debtor Defendants to which Debtors are requesting an extension of  the automatic stay. Instead, the Debtors sought a stay of *all* Lawsuits in their entirety and improperly shifted the burden to the Claimants and other plaintiffs to prove that the stay should not be extended with respect to their particular claims against Non-Debtor Defendants.

25.     Significantly, Claimants and other plaintiffs are unable to identify and distinguish which defendant parties are contemplated for a final order on the Stay Motion. At the very minimum, Debtors should be able to provide the identities of the Professional Corporations and

---

[3] The *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Honor and Incur Obligations to Professional Corporations and (B) Obtain New Professional Corporation Contracts, (II) Extending Statutory Protections to Professional Corporations, and (III) Granting Related Relief* (ECF No. 15, the "PC Motion") provides the following definition: "[T]he Debtors utilize a structure commonly known in the industry as a 'friendly professional corporation' structure, pursuant to which the Debtors contract with and provide various management and administrative services to professional entities (collectively, the 'Professional Corporations') that are owned exclusively by licensed physicians affiliated with the Debtors (collectively, the 'PC Physicians')…"

PC Physicians with whom they have executory contracts that must be listed on the Debtors' schedules. Claimants object to the lack of clarity and transparency in the Stay Motion regarding what specific parties are potentially implicated by the requested stay extension. The Debtors should be required to provide a list of all Non-Debtor Defendants, and the "unusual circumstances" that would warrant a stay extension, before entry of any final order on the Stay Motion in order for the Debtors to meet their burden for extending the stay to non-debtors.

**B.  The Stay Motion seeks unsupported and overreaching relief as to Non-Debtors.**

i.  The Standard the Debtors Must Meet

26.    The Stay Motion seeks, and the *Amended Interim Order Enforcing the Automatic Stay* [ECF No. 69] (the "Interim Stay Order") provides, a national blanket stay on all litigation where any Debtor is named.

27.    Section 362(a) of the Bankruptcy Code provides that only actions against a debtor and property of the estate are protected by the automatic stay. 11 U.S.C. § 362(a). "It is clearly established that the automatic stay does not apply to non-bankrupt codefendants of a debtor, 'even if they are in a similar legal or factual nexus with the debtor.'" *McConathy v. Foundation Energy Fund*, 111 F.4th 574, 582 (5th Cir. 2024).

28.    The automatic stay does not apply to non-debtor entities and individuals absent affirmative action to expand the automatic stay to them. Absent such extension, the automatic stay does not apply against non-debtors or actions necessary to continue litigation against non-debtor defendants. *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983) ("We join those courts concluding that the protections of § 362 neither apply to co-defendants nor preclude severance."). The Debtors bear the burden of proving by a preponderance standard that the automatic stay should be extended to third party entities. *Nat'l Oilwell Varco, L.P. v. Mud King*

*Prod., Inc.*, 2013 WL 1948766, at *3 (S.D. Tex. May 9, 2013); *In re Aearo Techs. LLC*, 642 B.R. 891, 911 (Bankr. S.D. Ind. 2022).

29.     Any extension of the stay to a non-debtor party requires a showing of unusual circumstances. *Matter of Zale Corp.*, 62 F.3d 746, 761 (5th Cir. 1995); *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997). Courts have found two primary examples of such unusual circumstances warranting extension of the stay to non-debtor parties.

30.     First, extension of the automatic stay is appropriate where there exists an identity between a debtor and the third-party defendant such that the debtor may be said to be the real party defendant and a judgment against the third-party defendant will be a judgment against the debtor. *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 111 (Bankr. S.D. Tex. 2014); *McCartney*, 106 F.3d at 510. However, the mere "presence of identical allegations against the debtor and non-debtor defendants are an insufficient ground to extend the stay to the nondebtors." *National Oilwell Varco, L.P.*, 2013 WL 1948766 at *2.

31.     Second, extension of the automatic stay is appropriate "where stay protection is essential to the debtor's efforts of reorganization." *Matter of Zale Corp.*, 62 F.3d at 761; *McCartney*, 106 F.3d at 510 (citing *In re Lazarus Burman Associates*, 161 B.R. 891, 899–900 (Bankr.E.D.N.Y.1993). If neither circumstance exists, courts "may not enjoin the third-party action." *Matter of Zale Corp.*, 62 F.3d at 761.

32.     Accordingly, it is the Debtors' burden to show: (1) there are one or more Professional Corporations, PC Physicians, or D&Os named in the Claimants' Cases that the Debtors assert is a Non-Debtor Defendant(s) to which Debtors are requesting the Court extend the automatic stay; and (2) the Debtors must demonstrate the "unusual circumstances" described

above, by a preponderance of evidence, that the automatic stay should be extended to such identified Non-Debtor Defendants in Claimants' Cases.

ii.     The Debtors Fail to Meet the Required Standard to Extend the Stay

33.     The Debtors assert three broad and unsupported bases for extension of the automatic stay to the *unidentified* Non-Debtor Defendants: (i) the Debtors and the Non-Debtor Defendants share an identity of interests due to alter ego or overlapping claims; (ii) the Debtors and the Non-Debtor Defendants share an identity of interest through indemnity obligations; and (iii) continued litigation would burden the estates and key Debtor personnel. The Debtors' bases are either inapplicable to the claims in the Claimants' lawsuits or insufficient for an extension of the automatic stay to Non-Debtor Defendants.

34.     Here, Claimants assert direct claims against governmental (Shasta County) entities and individuals that are legally separate and distinct from the claims asserted against the Debtor Defendants. Liability against those parties does not require liability against the Debtors and a finding of liability against those parties may not necessarily result in liability against the Debtors.

35.     Further, Claimants' pursuit of their claims against Shasta County and its employees would have no impact on the Debtors' ability to reorganize under chapter 11. There is no actual identity of interests between Debtors and Shasta County and its employees. Also, Shasta County does not fall into any of the categories of non-debtor defendants as to which Debtors specifically seek a stay. *See* Stay Motion, ¶ 1 (seeking a stay as to "certain Professional Corporations and their respective PC Physicians", the directors and officers of certain of the Debtors' non-Debtor affiliates", and the "Debtors' consultant and private equity sponsor, HIG"). Regarding CFMG and its employees, the Debtors have not articulated that CFMG is a Professional Corporation to which it seeks an extension of the automatic stay. Thus, the Stay Motion fails to show that the Claimants'

Cases involves an "identity of interest" between the non-debtor parties and the Debtors to which to extend the stay.

36.     Debtors argue that "Professional Corporations," "D&Os" or "HIG" may be able to assert "indemnification claims" against the Debtors. Stay Motion, ¶¶ 8-10, 14-15. However, Claimants have not named any D&Os or HIG as defendants. Further, because the Debtors fail to individually list who they deem a Professional Corporation or a PC Physician, the Debtors failed to meet their burden to extend the automatic stay to non-debtor parties based on indemnifications.

37.     Lastly, fact discovery is closed in one of the Claimants' Cases, and nearly finished in the other.  Claimants are ready to proceed with expert disclosures and discovery, potential mediation or settlement negotiations with the non-debtor entities and individuals, and trial in the Claimants' Cases. Claimants have already offered to sever or dismiss the two Defendant Debtors from the Claimants' Cases. Therefore, there is nothing for the Debtors and their key personnel to do further at this time in the Claimants' Cases except for provide the requested insurance policies covering the defendants in the Claimants' Cases, which should not be burdensome. The insurance policy of CFMG, which includes Shasta County and its employees as additional insured, is completely outside the scope of the Debtors' bankruptcy and estate property.

38.     The bases provided by the Debtors in the Stay Motion to extend the stay to non-debtors are inadequate to meet their burden under the two unusual circumstances examples warranting extension of the stay to non-debtor parties.

**C.  If the Stay Motion is granted on a final basis, the order should allow Claimants to take certain actions.**

39.     Claimants request that the Court deny the Stay Motion. Alternatively, Claimants request that the Court exercise its discretion to allow Claimants to take the following actions without violation of the automatic stay: (a) severance of the Debtors or bifurcation of actions to

12

proceed against non-debtor entities, (b) settlement with non-debtor entities or the approval of such settlements, (c) obtaining discovery from non-debtor entities, (d) dismissing the Debtors from Claimants' Cases, or (e) obtaining declaratory or injunctive relief against non-debtor entities.

### D. Reservation of Rights

40.     Claimants reserve the right to amend or supplement this Response prior to final hearing on the Stay Motion and to seek relief from the automatic stay.

<u>**CONCLUSION**</u>

Based on the foregoing, Claimants request that the Court deny the Stay Motion. Alternatively, Claimants request that any final order on the Stay Motion be provides that Claimants to take the following actions without violation of the automatic stay: (a) severance of the Debtors or bifurcation of actions to proceed against non-debtor entities, (b) settlement with non-debtor entities or the approval of such settlements, (c) obtaining discovery from non-debtor entities, (d) dismissing the Debtors from Claimants' Cases, or (e) obtaining declaratory or injunctive relief against non-debtor entities.

Respectfully submitted,

/s/ Catherine A. Curtis
Jason M. Rudd, Tex. Bar No. 24028786
Catherine A. Curtis, Tex. Bar No. 24095708
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, TX 75204
Phone: (214) 692-6200
Fax: (214) 692-6255
jason.rudd@wickphillips.com
catherine.curtis@wickphillips.com

*Counsel for Jordan Deppe, Deceased, by and through his Successor in Interest, Michael Deppe; and Michael Deppe, Individually; and John Adena, Deceased, by and through his Co-Successors in Interest, Circe Adena and Richard Adena; Circe Adena, Individually, and Richard Adena, Individually*

## CERTIFICATE OF CONFERENCE

Pursuant to L.B.R. 9013-1, on November 27, 2024, Haddad & Sherwin LLP, California counsel for Claimants, attempted to confer with counsel for the Debtor Defendants in the Claimants' Cases regarding the relief requested by and through the Stay Motion. As of the time of this Response, counsel for the Debtor Defendants have not responded to the attempt to resolve the matter and, therefore, it is presented to the Court for resolution.

*/s/ Catherine A. Curtis*
Catherine A. Curtis

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served at the time of filing, (a) by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service in the above captioned case and (b) the following by separate email:

mhelt@mwe.com; fperlman@mwe.com; bgiordano@mwe.com; jjumbeck@mwe.com; cwurzelbacher@mwe.com; sszanzer@mwe.com; cdingman@mwe.comnicholas.zluticky@stinson.com; zachary.hemenway@stinson.com; lucas.schneider@stinson.com; salberino@akingump.com; mbrimmage@akingump.com; kdoorley@akingump.com; taylorb@akingump.com; brosen@proskauer.com; ebarak@proskauer.com; ddesatnik@proskauer.com; ppossinger@proskauer.com; jamie@aswtlawyers.com; nathan.rugg@bfkn.com; alexander.berk@bfkn.com; aaron.guerrero@bondsellis.com; bryan.prentice@bondsellis.com; sandron@broward.org; credentials@browardhealth.org; credentials@browardhealth.org; jgarfinkle@buchalter.com; jwishnew@cahill.com; jlevitin@cahill.com; jwishnew@cahill.com; cpower@cokinoslaw.com; tgibbs@cokinoslaw.com; emyles@cokinoslaw.com; ccountsreceivable@correctrxpharmacy.com; mshawley@diamondpharmacy.com; gsleis@diamondpharmacy.com; oag@dc.gov; jprostok@forsheyprostok.com; blake.berryman@icloud.com; madeyemo@grsm.com; john@johndevlinlaw.com; yelena.archiyan@katten.com; cashposters@labcorp.com; jjggarrotto@msn.com; greggarrotto@msn.com; dallas.bankruptcy@lgbs.com; austin.bankruptcy@lgbs.com; houston.bankruptcy@lgbs.com; jparsons@mvbalaw.com; mms.eft@mckesson.com; contact@mclaren.org; jcornwell@munsch.com; bfunk@munsch.com; arperez@munsch.com; bob.bruner@nortonrosefulbright.com; maria.mokrzycha@nortonrosefulbright.com; administration@oagguam.org; ha.nguyen@usdoj.gov; matt@parmet.law; rachel.irving@pharmacorr.com; himroi@phoebehealth.com; sgoodman@pivothealthaz.com; pivothealthaz@gmail.com; info@primehealthcare.com; casey.roy@rsbfirm.com; kericksen@regionalonehealth.org; dipannita.s@sonata-software.com; attorney.general@alaska.gov; ag@la.as.gov; aginfo@azag.gov; oag@arkansasag.gov; attorney.general@coag.gov; attorney.general@ct.gov; attorney.general@delaware.gov; agcarr@law.ga.gov; hawaiiag@hawaii.gov; bankruptcy@ag.idaho.gov; webteam@ag.iowa.gov; constituentservices@ag.louisiana.gov; constituentservices@ag.louisiana.gov; attorney.general@maine.gov; oag@oag.state.md.us; miag@michigan.gov; attorney.general@ago.mo.gov; ago.info.help@nebraska.gov; aginfo@ag.nv.gov; attorneygeneral@doj.nh.gov; ndag@nd.gov; trish.lazich@ohioattorneygeneral.gov; donna.hope@oag.ok.gov; attorneygeneral@doj.state.or.us; consumers@attorneygeneral.gov; ag@riag.ri.gov; odcmail@sccourts.org; odcmail@sccourts.org; consumerhelp@state.sd.us; agbankcal@ag.tn.gov; complaints@oag.texas.gov; bankruptcy@agutah.gov; bankruptcy@agutah.gov; ago.info@vermont.gov; serviceatg@atg.wa.gov; serviceatg@atg.wa.gov; communications@wvago.gov; dojbankruptcynoticegroup@doj.state.wi.us; evelyn.meltzer@troutman.com; dabney.carr@troutman.com; sarah.bures@troutman.com; chelsey.noble@troutman.com; info@usvidoj.com; info@usvidoj.com; upmarquette@verisma.com

*/s/ Catherine A. Curtis*
Catherine A. Curtis

14

# EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WELLPATH HOLDINGS, INC. et al.,[1] | ) | Case No. 24-90533 (ARP) |
| | ) | |
| Debtor. | ) | |

## DECLARATION OF JULIA SHERWIN IN SUPPORT OF RESPONSE IN OPPOSITION TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS TO ENFORCE THE AUTOMATIC STAY OR IN THE ALTERNATIVE EXTEND THE AUTOMATIC STAY TO NON-DEBTOR DEFENDANTS

I, Julia Sherwin, attest and declare as follows:

1.      I am an attorney licensed to practice law in the States of California and Michigan. I am a partner in the Oakland, California, law firm of Haddad & Sherwin LLP.

2.      I have personal knowledge of the matters set forth herein. If called as a witness, I could and would testify competently to the matters set forth below.

3.      My law firm represents the Plaintiffs in two wrongful death cases pending in the United States District Court for the Eastern District of California.  The cases are entitled *Deppe v. Shasta County, et al.*, E.D. Cal. Case No. 2:22-CV-00187-DAD-JDP (the "Deppe Case"), and *Adena v. Shasta County, et al.*, E.D. Cal. Case No. 2:21-CV-00770-DC-DMC (the "Adena Case," and together with the Deppe Case, "Claimants' Cases").   The background of each case is described below.

4.      Two of the debtors in this bankruptcy matter, Wellpath LLC and Wellpath Management, Inc. (jointly herein identified as "Wellpath Debtors"), are defendants in the

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath.

**DECLARATION OF JULIA SHERWIN**                                                                    Page 1

Claimants' Cases.  However, several non-debtor parties are defendants in each case.  In the Deppe Case, non-debtor defendants include Shasta County, California; Shasta County Sheriff-Coroner Eric Magrini; Shasta County Captain Gene Randall; Shasta County Lieutenant Dale Marlar; California Forensic Medical Group, Inc. ("CFMG"); Sanaz Parsa, M.D.; Traci Lewis, L.M.F.T.; Shea Phinney, L.M.F.T.; and Daniel Dellwo P.A.

5.      In the Adena Case, non-debtor defendants include Shasta County, California; Shasta County Deputy Joseph Grady; Shasta County Deputy Nathaniel Neves; Shasta County Deputy Hector Cortez; CFMG; Traci Lewis, L.M.F.T.; Pam Johansen, L.C.S.W.; Daniel Dellwo, P.A.; and Amanda Ream, R.N.

6.      The Deppe Case involves the jail suicide of 25-year-old military veteran Jordan Deppe at the Shasta County, California jail on January 7, 2021.  (Deppe Case ECF No. 73, First Amended Complaint).  Mr. Deppe was severely mentally ill, had been diagnosed with schizophrenia, schizoaffective disorder, major depression, and had a long history of multiple suicide attempts, suicidal gestures, and suicidal ideation.  The plaintiff in the Deppe Case is Jordan Deppe's father and legal Successor-in-Interest, Michael Deppe ("Deppe Plaintiff").  The case was filed on January 28, 2022.

7.      In the Deppe Case, non-expert discovery is complete and expert disclosures are due December 13, 2024.  The parties completed extensive voluminous written discovery and 12 depositions.  The Plaintiff in the Deppe case has already incurred significant expenses in expert work to prepare for timely expert disclosures and reports.  All motions, including dispositive motions, are due June 13, 2025, and all pretrial filings are due August 19, 2025.  The final pretrial conference is August 26, 2025; trial is October 27, 2025.

**DECLARATION OF JULIA SHERWIN**                                        Page 2

8.      The Adena Case involves the severe beating of John Adena by jail deputies, causing extensive internal hemorrhaging, a Common Carotid Artery dissection, polydipsia and hyponatremia, resulting in the death of 31-year-old John Adena at the Shasta County, California jail on September 21, 2019.  The plaintiffs in the Adena Case are John Adena's parents and legal Co-Successors-in-Interest, Richard and Circe Adena ("Adena Plaintiffs").  The case was filed on April 29, 2021.

9.      In the Adena Case, fact discovery is almost complete, and the close of fact discovery is January 17, 2025.  The parties have completed 33 depositions and exchanged many thousands of pages of documents.  Expert disclosures are due March 14, 2025, and the Adena Plaintiffs have already incurred significant expenses in experts' work to prepare their reports.

10.     My partner, Michael J. Haddad, and I have handled several cases against the Wellpath Debtors and their predecessor companies, over many years, in the State of California. Counsel for the Wellpath entities in our cases refer to the entities jointly as "Wellpath."  Since the founding of Wellpath after the merger of Correctional Medical Group Companies ("CMGC") and Correct Care Solutions ("CCS"), Wellpath has asserted that the correctional healthcare it provides in California jails is provided by CFMG, a California corporation which is one of the defendants in the Claimants' Cases.  The contract for the provision of correctional healthcare with Shasta County, California is signed by CFMG.  CFMG has not filed bankruptcy.

11.     Attached hereto as **Exhibit A** is a true and correct copy of pertinent excerpts of the Shasta County contract with CFMG that was in effect at the time of the deaths of Jordan Deppe and John Adena, which were produced to my office by Shasta County's counsel.  John Adena's death occurred during the Second Amendment contract period.  Jordan Deppe's death occurred during the Third Amendment contract period.

**DECLARATION OF JULIA SHERWIN**                                                           Page 3

12.     The contract required CFMG to maintain at all times at least $2,000,000 in professional liability insurance coverage for each occurrence.  The contract further required that any deductible or self-insured retention exceeding $100,000 must be disclosed to Shasta County and is subject to Shasta County's approval.  The contract also required that Shasta County and its employees be additional insureds.  (**Exhibit A,** Shasta County and CFMG Contract, pp. 25-26, sections 13(C), 13(F)(1) and (F)(3)).

13.     In the Claimants' Cases, Wellpath has taken the position that the healthcare in Shasta County jail is provided by CFMG and its employees, and not by Wellpath.

14.     Defendant Daniel Dellwo's Physician Assistant Delegation of Services Agreement, a true and correct copy of which is attached hereto as **Exhibit B**, is on CFMG letterhead.  Daniel Dellwo is a defendant in both of the Claimants' Cases.  Defendant Dellwo's managing physician who signed the CFMG Delegation of Services Agreement is Eliud Garcia, M.D.

15.     Dr. Garcia testified that he has been an independent contractor for CFMG since the late 1990's.  Attached hereto as **Exhibit C** is a true and correct copy of excerpts of the deposition transcript of Eliud Garcia M.D., taken in the Adena Case on August 22, 2024.  (Garcia Dep. p. 9:6-11).

16.     Traci Lewis, L.M.F.T. is a defendant in both of the Claimants' Cases.  Defendant Lewis has testified that her paychecks come from CFMG and her work identification badge says CFMG on it.  Attached hereto as **Exhibit D** is a true and correct copy of excerpts of the deposition of defendant Traci Lewis, L.M.F.T., taken in the Deppe Case on July 17, 2024.  (Lewis Dep. pp. 16:25, 17:17-19).

17.     Shea Phinney, L.M.F.T., is a defendant in the Deppe Case. She testified she believes her paychecks come from CFMG.  Attached hereto as **Exhibit E** is a true and correct

copy of excerpts of the deposition of defendant Shea Phinney, L.M.F.T., taken in the Deppe Case on April 30, 2024. (Phinney Dep. pp. 113:19-114:6).

18.     Pam Johansen, L.C.S.W., is a defendant in the Adena Case.  She testified, "I'm actually hired by CFMG," and her paychecks and tax statements are from CFMG.  Attached hereto as **Exhibit F** is a true and correct copy of excerpts of the deposition of defendant Pam Johansen, L.C.S.W., taken in the Adena Case on July 2, 2024. (Johansen Dep. p. 9:10-17).

19.     Psychiatrist Sanaz Parsa, M.D., is a defendant in the Deppe Case.  She testified she was employed by a completely separate legal entity unrelated to the debtors in this bankruptcy proceeding, Orbit Telehealth.  Attached hereto as **Exhibit G** is a true and correct copy of excerpts of the deposition of defendant Sanaz Parsa, M.D., taken in the Deppe Case on July 18, 2024.  (Parsa Dep. p. 11:15-22).

20.     On November 18, 2024, the United States District Court in the Deppe Case issued a minute order staying only the claims against Wellpath LLC in that case, as follows (ECF No. 90):

**MINUTE ORDER (Text Only Entry) issued by Courtroom Deputy for District Judge Dale A. Drozd on 11/18/2024: On 11/15/2024, defendant Wellpath LLC filed a [89] suggestion of bankruptcy and a notice of an automatic stay of these proceedings as to defendant Wellpath LLC. Having reviewed defendant Wellpath LLC's [89] suggestion and notice, this action is hereby stayed as against defendant Wellpath LLC pursuant to 11 U.S.C. § 362(a). Defendant Wellpath LLC shall file a status report within 90 days of the date of this minute order, and every 90 days thereafter, to advise the court of the status of the bankruptcy proceedings. This action may proceed against the other defendants. See _United States v. Dos Cabezas Corp._, 995 F.2d 1486, 1491 (9th Cir. 1993) ("[U]nless the assets of the bankrupt estate are at stake, the automatic stay does not extend to actions against parties other than the debtor, such as codebtors and sureties."); see also _In re Miller_, 262 B.R. 499, 503-504 (B.A.P. 9th Cir. 2001).**

21.     On November 25, 2024, the United States District Court in the Adena Case issued a minute order staying the claims against Wellpath LLC and also non-debtor CFMG's employees

based on Wellpath's representations to the Court, and without allowing a response from Plaintiffs, as follows (ECF No. 109):

**MINUTE ORDER issued by Courtroom Deputy C. Schultz for District Judge Dena M. Coggins on 11/25/2024: Pursuant to the [103] [106] [108] Notices of Stay due to Bankruptcy Proceedings filed by Defendants Wellpath LLC; Wellpath Management, Inc.; Tracy Lewis, L.M.F.T.; Pam Johansen, L.C.S.W.; Daniel Dellwo, P.A.; and Amanda Ream, R.N. ("Wellpath Defendants"), this action is STAYED pursuant to 11 U.S.C. § 362(a) as to Plaintiffs' claims brought against the Wellpath Defendants. However, absent any argument to the contrary, the action may proceed against the other Defendants. *See In re Miller*, 262 B.R. 499, 503-504 & n.6 (B.A.P. 9th Cir. 2001). The Wellpath Defendants shall file a Status Report within 90 days of the date of this Order, and every 90 days thereafter, to advise the court of the status of its bankruptcy proceedings. In addition, in light of this Order, the pending [97] [98] Motions are administratively TERMINATED, to be reactivated by the court when the stay is lifted. Accordingly, the hearing on the [97] [98] Motions currently set for 12/20/2024 is VACATED. (Text Only Entry)**

22.     As set forth in the Declaration of Michael J. Haddad filed herewith, the Deppe Plaintiff and Adena Plaintiffs have offered to dismiss the Wellpath Debtors from the Claimants' Cases, so that these two civil rights wrongful death cases may proceed without delay. As discussed in Mr. Haddad's declaration, staying the Claimants' Cases while the Wellpath Debtors pursue their bankruptcy cases creates an extreme hardship on the Deppe Plaintiff and Adena Plaintiffs in the Claimants' Cases.

23.     I have personal knowledge of the facts stated in this declaration. If called upon to testify to same, I am competent to do so.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration was executed in Oakland, California, on December 5, 2024.

/s/     *Julia Sherwin*
_____
JULIA SHERWIN

**DECLARATION OF JULIA SHERWIN**                                        Page 6

# EXHIBIT A

No Withholding

## PERSONAL SERVICES AGREEMENT BETWEEN THE COUNTY OF SHASTA AND CALIFORNIA FORENSIC MEDICAL GROUP, INC.

This agreement is entered into between the County of Shasta, a political subdivision of the State of California, through its Sheriff's Office and Probation Department ("County") and California Forensic Medical Group, Inc. ("Contractor") for the purpose of providing comprehensive health care and specified mental health care services to inmates in the Shasta County Jail, Shasta County Juvenile Rehabilitation Center, and Shasta County Adult Rehabilitation Center (collectively, the "Parties" and individually a "Party").

Section 1.    **DEFINITIONS**.

    A.    Jail: The Shasta County Main Jail located at 1655 West Street, Redding, CA, hereinafter referred to as "Jail".

    B.    JRF: The Shasta County Juvenile Rehabilitation Facility located at 2684 Radio Lane, Redding, CA, hereinafter referred to as "JRF" or "Juvenile Rehabilitation Facility".

    C.    ARC: The Shasta County Adult Rehabilitation Center to be located at 2415 Breslauer Way, Redding, CA, projected to be in operation by December 2018, hereinafter referred to as "ARC" or "Adult Rehabilitation Center".

    D.    Opening Day: "Opening Day" of the ARC is the date, as provided by written notice from the County Executive Officer to Contractor, in which the ARC will be operational and accepting inmates.

    E.    Inmate: Individual detained or incarcerated in the Jail, ARC, or JRF. Contractor's medical services responsibilities for inmates under this agreement commence in accordance with **Section 2.B.** of this agreement.

Section 2.    **RESPONSIBILITIES OF CONTRACTOR.**

    A.    **Performance of Services**:

        1).    Pursuant to the terms and conditions of this agreement, Contractor shall provide the specific services in conformity with Institute for Medical Quality (IMQ) accreditation guidelines and applicable provisions of Title 15 of the California Code of Regulations to inmates in the Jail, JRF, and ARC. Contractor shall adhere to all applicable laws and regulations relating to California Code of Regulations and IMQ accreditation guidelines.

        2).    Contractor shall determine the method, details, and means of performing the services under this agreement subject to the provisions of this agreement and **Exhibit A** attached hereto and incorporated herein.

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2667

No Withholding

# PERSONAL SERVICES AGREEMENT BETWEEN THE COUNTY OF SHASTA AND CALIFORNIA FORENSIC MEDICAL GROUP, INC.

This agreement is entered into between the County of Shasta, a political subdivision of the State of California, through its Sheriff's Office and Probation Department ("County") and California Forensic Medical Group, Inc. ("Contractor") for the purpose of providing comprehensive health care and specified mental health care services to inmates in the Shasta County Jail, Shasta County Juvenile Rehabilitation Center, and Shasta County Adult Rehabilitation Center (collectively, the "Parties" and individually a "Party").

**Section 1.**   **DEFINITIONS**.

    A.    Jail: The Shasta County Main Jail located at 1655 West Street, Redding, CA, hereinafter referred to as "Jail".

    B.    JRF: The Shasta County Juvenile Rehabilitation Facility located at 2684 Radio Lane, Redding, CA, hereinafter referred to as "JRF" or "Juvenile Rehabilitation Facility".

    C.    ARC: The Shasta County Adult Rehabilitation Center to be located at 2415 Breslauer Way, Redding, CA, projected to be in operation by December 2018, hereinafter referred to as "ARC" or "Adult Rehabilitation Center".

    D.    Opening Day: "Opening Day" of the ARC is the date, as provided by written notice from the County Executive Officer to Contractor, in which the ARC will be operational and accepting inmates.

    E.    Inmate: Individual detained or incarcerated in the Jail, ARC, or JRF. Contractor's medical services responsibilities for inmates under this agreement commence in accordance with **Section 2.B.** of this agreement.

**Section 2.**   **RESPONSIBILITIES OF CONTRACTOR.**

    A.    **Performance of Services**:

        1).    Pursuant to the terms and conditions of this agreement, Contractor shall provide the specific services in conformity with Institute for Medical Quality (IMQ) accreditation guidelines and applicable provisions of Title 15 of the California Code of Regulations to inmates in the Jail, JRF, and ARC. Contractor shall adhere to all applicable laws and regulations relating to California Code of Regulations and IMQ accreditation guidelines.

        2).    Contractor shall determine the method, details, and means of performing the services under this agreement subject to the provisions of this agreement and **Exhibit A** attached hereto and incorporated herein.

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2667

work or the provision of services undertaken pursuant to this agreement by Contractor, or any of Contractor's subcontractors, any person employed under Contractor, or under any Subcontractor, or in any capacity. Contractor shall also defend and indemnify County for any adverse determination made by the Internal Revenue Service or the State Franchise Tax Board and/or any other taxing or regulatory agency and shall defend, indemnify, and hold harmless County with respect to Contractor's "independent contractor" status that would establish a liability on County for failure to make social security deductions or contributions or income tax withholding payments, or any other legally mandated payment. The provisions of this paragraph are intended to be interpreted as broadly as permitted by applicable law. This provision shall survive the termination, expiration, or cancellation of this agreement.

B.   For professional services provided under this agreement, Contractor shall indemnify, defend, and hold harmless County, its elected officials, officers, employees, agents, and volunteers from and against any and all claims, demands, actions, losses, liabilities, damage, and costs, including reasonable attorneys' fees, arising out of or resulting from the negligent performance of the professional services provided under this agreement. Contractor shall also, at Contractor's own expense, defend the County against any suit or action brought against County founded upon any claim, action or proceeding which is based upon the work or the provision of services undertaken pursuant to this agreement. The words "professional services" shall be interpreted as defined in Civil Code section 2782.8, as it may be amended from time to time. The provisions of this paragraph are intended to be interpreted as broadly as permitted by applicable law.

**Section 13.   <u>INSURANCE COVERAGE</u>.**

A.   Without limiting Contractor's duties of defense and indemnification, Contractor and any subcontractor shall obtain, from an insurance carrier authorized to transact business in the State of California, and maintain continuously during the term of this agreement Commercial General Liability Insurance, including coverage for owned and non-owned automobiles, and other insurance necessary to protect the County and the public with limits of liability as follows:

1)   Commercial General Liability covering in the minimum amount of $2,000,000 combined single limit (CSL) bodily injury and property damage each occurrence and $5,000,000 aggregate, including personal injury, broad form property damage, products/completed operations.

2)   Commercial Automobile Liability coverage in the minimum of $1,000,000 CSL bodily injury and property damage including owned, non-owned, and hired automobiles.

Such insurance shall be primary as to any other insurance maintained by County.

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2690

B.   Contractor and any subcontractor shall obtain and maintain continuously required Workers' Compensation and Employer's Liability Insurance to cover Contractor, subcontractor, Contractor's partner(s), subcontractor's partner(s), Contractor's employees, and subcontractor'(s') employees with an insurance carrier authorized to transact business in the State of California covering the full liability for compensation for injury to those employed by Contractor or subcontractor. Each such policy shall be endorsed to state that the Workers' Compensation carrier waives its right of subrogation against the County, its elected officials, officers, employees, agents, and volunteers which might arise in connection with this agreement.  Contractor hereby certifies that Contractor is aware of the provisions of section 3700 of the Labor Code, which requires every employer to insure against liability for workers' compensation or to undertake self-insurance in accordance with the provisions of the Labor Code, and Contractor shall comply with such provisions before commencing the performance of the work or the provision of services pursuant to this agreement.

C.   Contractor and any subcontractor shall obtain and maintain continuously Professional Medical Liability (malpractice coverage), including Professional Dental Liability coverage, in the minimum amount of $2,000,000 each occurrence and $5,000,000 aggregate, and shall further indemnify and hold County harmless from any and all claims arising out of the performance of duties of the Provider under the Contract, whether that performance be by the Provider or Provider's subcontractors. If the "claims made" coverage is provided, continuing liability coverage ("tail") of at least five years must be in force.

D.   Without limiting any of the obligations or liabilities of Contractor or subcontractor, Contractor and any subcontractors shall carry and maintain Cyber Liability insurance with limits of not less than $1,000,000 for each occurrence and an annual aggregate of $2,000,000 covering claims involving privacy violations, information theft, damage to or destruction of electronic information, intentional and/or unintentional release of private information, alteration of electronic information, extortion and network security. Such coverage is required only if any products and/or services related to information technology (including hardware and/or software) are provided on behalf of County under this agreement and for claims involving any professional services for which Contractor is engaged with or providing on behalf of County under this agreement for as long as respective, applicable statute(s) of limitation or response are in effect relating to the specific purposes of this Agreement to cover any and all claims.

E.   Contractor shall require subcontractors to furnish satisfactory proof to County that liability and workers' compensation and other required types of insurance have been obtained and are maintained similar to that required of Contractor pursuant to this agreement.

F.   With regard to all insurance coverage required by this agreement:

(1)   Any deductible or self-insured retention exceeding $100,000 for Contractor or subcontractor shall be disclosed to and be subject to

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2691

==approval by the County Risk Manager== prior to the effective date of this agreement.

(2)   If any insurance coverage required hereunder is provided on a "claims made" rather than "occurrence" form, Contractor or subcontractor shall maintain such insurance coverage with an effective date earlier or equal to the effective date of this agreement and continue coverage for a period of three years after the expiration of this agreement and any extensions thereof. In lieu of maintaining post-agreement expiration coverage as specified above, Contractor or subcontractor may satisfy this provision by purchasing tail coverage for the claims-made policy. Such tail coverage shall, at a minimum, provide the insurance coverage required hereunder for claims received and reported three years after the expiration date of this agreement.

(3)   ==All insurance== (except workers' compensation and professional liability) ==shall include an endorsement== or an amendment to the policy of insurance ==which names Shasta== *County, its elected officials, officers, employees, agents, and volunteers as additional insureds* and provides that coverage *shall not be reduced or canceled without 30 days written prior notice certain to the County.* Any available insurance proceeds in excess of the specified minimum limits and coverage pursuant to the terms of this agreement shall be applicable to the Additional Insured. The additional insureds coverage shall be equal to Insurance Service Office endorsement CG 20 10 for on-going operations, and CG 20 37 for completed operations.

(4)   Each insurance policy (except for workers' compensation and professional liability policies), or an endorsement thereto, shall contain a "separation of insureds" clause which shall read:

"Separation of Insureds.

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.   As if each Named Insured were the only Named Insured; and

b.   Separately to each suit insured against whom a claim is made or suit is brought."

(5)   Contractor shall provide the County with an endorsement or amendment to Contractor's policy of insurance as evidence of insurance protection before the effective date of this agreement.

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2692

**IN WITNESS WHEREOF**, County and Contractor have executed this agreement on the dates set forth below.  By their signatures below, each signatory represents that he/she has the authority to execute this agreement and to bind the Party on whose behalf his/her execution is made.

**COUNTY OF SHASTA**

Date:_____          _____
                                      PAM GIACOMINI, Chairman
                                      Board of Supervisors
                                      County of Shasta
                                      State of California

ATTEST:
LAWRENCE G. LEES
Clerk of the Board of Supervisors

By:_____
            Deputy

Approved as to form:                   **RISK MANAGEMENT APPROVAL**
RUBIN E. CRUSE, JR
County Counsel
                                       By: _____Date:_____
_____Date:_____                   Jim Johnson
By: Adam Pressman                             Risk Management Analyst I
     Senior Deputy County Counsel


                                       **INFORMATION TECHNOLOGY REVIEW**


                                       By:_____Date:_____
                                              Tom Schreiber
                                              Chief Information Officer

                                       **CONTRACTOR**


Date: 6/16/16                          By: _____
                                              Donald Myll
                                              Chief Financial Officer

                                       Tax I.D.#:  on file


CFMG – Jail/ARC/JRF                    Page 33 of 33

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2699

**IN WITNESS WHEREOF**, County and Contractor have executed this agreement on the dates set forth below.  By their signatures below, each signatory represents that he/she has the authority to execute this agreement and to bind the Party on whose behalf his/her execution is made.

**COUNTY OF SHASTA**

Date: _____JUN 2 8 2016_____

PAM GIACOMINI, Chairman
Board of Supervisors
County of Shasta
State of California

ATTEST:
LAWRENCE G. LEES
Clerk of the Board of Supervisors

By: _____
          Deputy

Approved as to form:
RUBIN E. CRUSE, JR
County Counsel

_____ Date: 6/17/16
By: Adam Pressman
      Senior Deputy County Counsel

**RISK MANAGEMENT APPROVAL**

By: _____ Date: 6/16/16
      Jim Johnson
      Risk Management Analyst I

**INFORMATION TECHNOLOGY REVIEW**

By: _____ Date: 6-16-2016
      Tom Schreiber
      Chief Information Officer

**CONTRACTOR**

Date: _____

By: _____
      Donald Myll
      Chief Financial Officer

      Tax I.D.#:  on file

CFMG – Jail/ARC/JRF                    Page 33 of 33

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2700

==SECOND AMENDMENT== TO THE AGREEMENT BETWEEN
THE COUNTY OF SHASTA AND CALIFORNIA FORENSIC MEDICAL GROUP, INC.
FOR THE PURPOSE OF PROVIDING COMPREHENSIVE HEALTH CARE AND
SPECIFIED MENTAL HEALTH CARE SERVICES TO INMATES IN THE
SHASTA COUNTY JAIL AND THE SHASTA COUNTY
JUVENILE REHABILITATION CENTER

This Second Amendment is entered into between the County of Shasta, a political subdivision of the State of California, through its Sheriff's Office and Probation Department ("County") and California Forensic Medical Group, Inc. ("Contractor").

R E C I T A L S

**WHEREAS**, County and Contractor have previously entered into an agreement on June 28, 2016 (effective July 1, 2016), for the purpose of providing comprehensive health care and specified mental health care services to inmates in the Shasta County Jail, Shasta County Juvenile Rehabilitation Center, and Shasta County Adult Rehabilitation Center ("Original Agreement"); and

**WHEREAS**, the Original Agreement was amended by the Board of Supervisors on December 11, 2018, to modify compensation provisions to address additional inmates in the Shasta County Jail and to remove provisions related to the Adult Rehabilitation Center ("First Amendment"); and

**WHEREAS**, County and Contractor desire to amend the Agreement to clarify compensation, clarify billing, and modify **Exhibit A** to become **Exhibit A-1** to reflect additional staffing ("Second Amendment"); and

**WHEREAS**, the Original Agreement, First Amendment, and Second Amendment are collectively referred to as the "Agreement."

**NOW, THEREFORE**, the Agreement is amended as follows:

I.     Section 2.A.2). of Section 2. **RESPONSIBILITIES OF CONTRACTOR** is hereby amended in its entirety as follows:

   2).     Contractor shall determine the method, details, and means of performing the services under this agreement subject to the provisions of this agreement and **Exhibit A-1** attached hereto and incorporated herein.

Second Amendment to CFMG Agreement                                      Page 1 of 6

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2705

II.     Section 3.A. of Section 3. **RESPONSIBILITIES OF CONTRACTOR AND COUNTY REGARDING FACILITY STAFFING AND PERSONNEL** is hereby amended in its entirety as follows:

A.      Contractor shall maintain adequate personnel to provide the services required herein. Contractor shall maintain the staffing pattern, hours, and availability as specified in **Exhibit A-1,** as the minimum staffing level. Any modification of the proposed staffing pattern specified in **Exhibit A-1** shall require an amendment to this agreement signed by both Parties.

III.    Subsections A. and B. of Section 5. **COMPENSATION** shall be amended in its entirety to read as follows:

A.  Contractor shall be compensated for the services prescribed in this agreement as follows:

1).  For the period July 1, 2016 through June 30, 2017, monthly:
Jail:     $235,835
JRF:    $  18,720

For the period July 1, 2017 through June 30, 2018, monthly:
Jail:     $242,910
JRF:    $  19,282

For the period July 1, 2018 through December 31, 2018, monthly:
Jail:     $250,197
JRF:    $  19,860

For the period January 1, 2019 through June 30, 2019, monthly:
Jail:                                      $250,197
Jail Incremental Pricing:      $  39,365
JRF:                                      $  19,860

2).  For the period July 1, 2019 through June 30, 2020:

a).     Jail: monthly payment in the amount of $289,562 plus one CPI adjustment applied July 1, 2019 for monthly payments through June 30, 2020.  The CPI adjustment is the change in the Consumer Price Index (CPI) from July 1st of the previous year.  The CPI adjustment will be calculated as the percentage change in the Consumer Price Index (CPI) as of February of each year, not to exceed 3.5%.  The CPI is defined as Urban Wage Earners and Clerical Workers, West Urban Region, Medical Care as published by the Bureau of Labor Statistics (BLS).

b).     JRF: monthly payment in the amount of $19,860 plus one CPI adjustment applied July 1, 2019 for monthly payments through

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2706

June 30, 2020.  The CPI adjustment is the change in the Consumer Price Index (CPI) from July 1st of the previous year.  The CPI adjustment will be calculated as the percentage change in the Consumer Price Index (CPI) as of February of each year, not to exceed 3.5%.  The CPI is defined as Urban Wage Earners and Clerical Workers, West Urban Region, Medical Care as published by the Bureau of Labor Statistics (BLS).

3).   For the period July 1, 2020 through June 30, 2021:

    a).   Jail: monthly payment in an amount equal to the monthly payment as of June 1, 2020 plus one CPI adjustment applied July 1, 2020 for monthly payments through June 30, 2021.  The CPI adjustment is the change in the Consumer Price Index (CPI) from July 1st of the previous year.  The CPI adjustment will be calculated as the percentage change in the Consumer Price Index (CPI) as of February of each year, not to exceed 3.5%.  The CPI is defined as Urban Wage Earners and Clerical Workers, West Urban Region, Medical Care as published by the Bureau of Labor Statistics (BLS).

    b).   JRF: monthly payment in an amount equal to the monthly payment as of June 1, 2020 plus one CPI adjustment applied July 1, 2020 for monthly payments through June 30, 2021.  The CPI adjustment is the change in the Consumer Price Index (CPI) from July 1st of the previous year.  The CPI adjustment will be calculated as the percentage change in the Consumer Price Index (CPI) as of February of each year, not to exceed 3.5%.  The CPI is defined as Urban Wage Earners and Clerical Workers, West Urban Region, Medical Care as published by the Bureau of Labor Statistics (BLS).

B.   1). For the Jail, in addition to the compensation specified in **Section 5.A.,** for the period July 1, 2016 through December 31, 2018, the following shall apply:

    a).   A per diem charge of $4.11 will be paid by County for each inmate at the Jail in excess of 343 average daily population in any calendar month.

    b).   In any calendar month, if the Jail average daily population falls below 343, Contractor shall rebate to County a per diem of $4.11 per inmate below the average daily population of 343.

    c).   The per diem payments and/or rebates will be reconciled quarterly.

    d).   The per diem rates listed in this **Section 5.B.** shall be increased annually on July 1, 2017 and July 1, 2018 by 3%.

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2707

2). For the Jail, in addition to the compensation specified in **Section 5.A.,** for the period January 1, 2019 through June 30, 2021, the following shall apply:

a).　A per diem charge of $4.36 will be paid by County for each inmate at the Jail in excess of 435 average daily population in any calendar month.

b).　In any calendar month, if the Jail average daily population falls below 435, Contractor shall rebate to County a per diem of $4.36 per inmate below the average daily population of 435.

c).　The per diem payments and/or rebates will be reconciled quarterly.

d).　The per diem rates listed in this Section 5.B. shall be increased annually on July 1, 2019 and July 1, 2020 by 3%.

3). For the JRF, in addition to the compensation specified in **Section 5.A.,** for the period July 1, 2016 through June 30, 2021, the following shall apply:

a).　A per diem charge of $2.36 will be paid by County for each inmate at the JRF in excess of 30 average daily population in any calendar month.

b).　In any calendar month, if the JRF average daily population falls below 30, Contractor shall rebate to County a per diem of $2.36 per inmate below the average daily population of 30.

c).　The per diem payments and/or rebates will be reconciled quarterly.

d).　The per diem rates listed in this **Section 5.B.** shall be increased annually on July 1, 2017, July 1, 2018, July 1, 2019, and July 1, 2020 by 3%.

IV.　Subsections A. and B. of Section 6. **BILLING AND PAYMENT** shall be amended in its entirety to read as follows:

A.　Contractor shall submit to Sheriff's Jail Division (1655 West Street, Redding, CA 96001) a monthly statement of Jail services rendered as prescribed in this agreement by the fifth day of each month for services rendered the preceding month.  County shall make payment within 30 days of receipt of Contractor's correct and approved statement or invoice.

B.　Contractor shall submit to Probation Department, a monthly statement of JRF services rendered as prescribed in this agreement by the fifth day of each month for services rendered the preceding month.  County shall make payment within 30 days of receipt of Contractor's correct and approved statement or invoice.

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2708

V.        **REAFFIRMATION**

In all other respects, the Agreement, as amended, and any attachments, remains in full force and effect.

VI.       **ENTIRE AGREEMENT**

The Agreement, as amended, and any attachments, constitute the entire understanding between County and Contractor.

VII.      **EFFECTIVE DATE**

Unless otherwise provided, this Second Amendment shall be deemed effective December 1, 2018.

*SIGNATURE PAGE FOLLOWS*

Second Amendment to CFMG Agreement                                    Page 5 of 6

SHASTA CO RESP TO RFPD-1 THIRD SUPP_2709

**IN WITNESS WHEREOF**, the Parties hereto have executed this Second Amendment to the Agreement. By their signatures below, each signatory represents that he/she has the authority to execute this Second Amendment and to bind the Party on whose behalf his/her execution is made.

**COUNTY OF SHASTA**

Date: _7/16/19_

LEONARD MOTY, CHAIRMAN
Board of Supervisors
County of Shasta
State of California

ATTEST:

LAWRENCE G. LEES
Clerk of the Board of Supervisors

By:_____
                Deputy

Approved as to form:
RUBIN E. CRUSE, JR
County Counsel

By: Adam Pressman
      Senior Deputy County Counsel

Date: _6/24/19_

**CONTRACTOR**

By: _Cindy Watson_

Cindy Watson
Chief Operating Officer, CFMG, Inc.

Tax I.D.#:  on file

Second Amendment to CFMG Agreement                    Page 6 of 6

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2710

**THIRD AMENDMENT TO THE AGREEMENT BETWEEN
THE COUNTY OF SHASTA AND CALIFORNIA FORENSIC MEDICAL GROUP, INC.
FOR THE PURPOSE OF PROVIDING COMPREHENSIVE HEALTH CARE AND
SPECIFIED MENTAL HEALTH CARE SERVICES TO INMATES IN THE
SHASTA COUNTY JAIL AND THE SHASTA COUNTY
JUVENILE REHABILITATION CENTER**

This Third Amendment is entered into between the County of Shasta, a political subdivision of the State of California, through its Sheriff's Office and Probation Department ("County") and California Forensic Medical Group, Inc. ("Contractor").

R E C I T A L S

**WHEREAS**, County and Contractor have previously entered into an agreement on June 28, 2016 (effective July 1, 2016), for the purpose of providing comprehensive health care and specified mental health care services to inmates in the Shasta County Jail, Shasta County Juvenile Rehabilitation Center, and Shasta County Adult Rehabilitation Center ("Original Agreement"); and

**WHEREAS**, the Original Agreement was amended by the Board of Supervisors on December 11, 2018, to modify compensation provisions to address additional inmates in the Shasta County Jail and to remove provisions related to the Adult Rehabilitation Center ("First Amendment"); and

**WHEREAS**, the Original Agreement was amended by the Board of Supervisors on July 16, 2019, to amend the Agreement to clarify compensation, clarify billing, and modify **Exhibit A** to become **Exhibit A-1** to reflect additional staffing ("Second Amendment"); and

**WHEREAS**, County and Contractor desire to amend the Agreement to correct two amounts due to an inadvertent transposition ("Third Amendment"); and

**WHEREAS**, the Original Agreement, First Amendment, Second Amendment, and Third Amendment are collectively referred to as the "Agreement."

**NOW, THEREFORE**, the Agreement is amended as follows:

I.      Subsection A. of Section 5. **COMPENSATION** shall be amended in its entirety to read as follows:

A. Contractor shall be compensated for the services prescribed in this agreement as follows:

1). For the period July 1, 2016 through June 30, 2017, monthly:
Jail:    $235,835
JRF:    $ 18,720

Third Amendment to CFMG Agreement                                    Page 1 of 4

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2712

For the period July 1, 2017 through June 30, 2018, monthly:
Jail:    $242,910
JRF:    $  19,282

For the period July 1, 2018 through December 31, 2018, monthly:
Jail:    $250,197
JRF:    $  19,860

For the period January 1, 2019 through June 30, 2019, monthly:
Jail:                                          $250,197
Jail Incremental Pricing:          $  39,635
JRF:                                          $  19,860

2). For the period July 1, 2019 through June 30, 2020:

   a).   Jail: monthly payment in the amount of $289,832 plus one CPI
         adjustment applied July 1, 2019 for monthly payments through June
         30, 2020.  The CPI adjustment is the change in the Consumer Price
         Index (CPI) from July 1st of the previous year.  The CPI adjustment
         will be calculated as the percentage change in the Consumer Price
         Index (CPI) as of February of each year, not to exceed 3.5%.  The
         CPI is defined as Urban Wage Earners and Clerical Workers, West
         Urban Region, Medical Care as published by the Bureau of Labor
         Statistics (BLS).

   b).   JRF: monthly payment in the amount of $19,860 plus one CPI
         adjustment applied July 1, 2019 for monthly payments through June
         30, 2020.  The CPI adjustment is the change in the Consumer Price
         Index (CPI) from July 1st of the previous year.  The CPI adjustment
         will be calculated as the percentage change in the Consumer Price
         Index (CPI) as of February of each year, not to exceed 3.5%.  The
         CPI is defined as Urban Wage Earners and Clerical Workers, West
         Urban Region, Medical Care as published by the Bureau of Labor
         Statistics (BLS).

3). For the period July 1, 2020 through June 30, 2021:

   a).   Jail: monthly payment in an amount equal to the monthly payment
         as of June 1, 2020 plus one CPI adjustment applied July 1, 2020 for
         monthly payments through June 30, 2021.  The CPI adjustment is
         the change in the Consumer Price Index (CPI) from July 1st of the
         previous year.   The CPI adjustment will be calculated as the
         percentage change in the Consumer Price Index (CPI) as of February
         of each year, not to exceed 3.5%. The CPI is defined as Urban Wage
         Earners and Clerical Workers, West Urban Region, Medical Care as
         published by the Bureau of Labor Statistics (BLS).

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2713

b). JRF: monthly payment in an amount equal to the monthly payment as of June 1, 2020 plus one CPI adjustment applied July 1, 2020 for monthly payments through June 30, 2021. The CPI adjustment is the change in the Consumer Price Index (CPI) from July 1st of the previous year. The CPI adjustment will be calculated as the percentage change in the Consumer Price Index (CPI) as of February of each year, not to exceed 3.5%. The CPI is defined as Urban Wage Earners and Clerical Workers, West Urban Region, Medical Care as published by the Bureau of Labor Statistics (BLS).

## II. **REAFFIRMATION**

In all other respects, the Agreement, as amended, and any attachments, remains in full force and effect.

## III. **ENTIRE AGREEMENT**

The Agreement, as amended, and any attachments, constitute the entire understanding between County and Contractor.

## IV. **EFFECTIVE DATE**

Unless otherwise provided, this Third Amendment shall be deemed effective December 1, 2018.

*SIGNATURE PAGE FOLLOWS*

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2714

**IN WITNESS WHEREOF**, the Parties hereto have executed this Third Amendment to the Agreement. By their signatures below, each signatory represents that he/she has the authority to execute this Third Amendment and to bind the Party on whose behalf his/her execution is made.

**COUNTY OF SHASTA**

Date: _9 - 5 -19_

_____
TOM BOSENKO, SHERIFF-CORONER
Shasta County Sheriff's Office

Date: _8|22|19_

_____
TRACIE NEAL, CHIEF PROBATION OFFICER
Shasta County Probation

Approved as to form:
RUBIN E. CRUSE, JR
County Counsel

_____   8/16/19
By: Adam Pressman
     Senior Deputy County Counsel

**CONTRACTOR**

Date: _8|9|19_

By: _____
    Cindy Watson
    Chief Operating Officer, CFMG, Inc.

Tax I.D.#:   on file

Third Amendment to CFMG Agreement                                    Page 4 of 4

SHASTA CO RESP TO RFPD-1_THIRD SUPP_2715

# EXHIBIT B

**Exhibit 2**

Garcia, E.
08/22/24
aptus.



# CFMG
## California Forensic Medical Group
### I N C O R P O R A T E D

***DELEGATION OF SERVICES AGREEMENT***
***BETWEEN SUPERVISING PHYSICIAN AND PHYSICIAN ASSISTANT***
***(Title 16, CCR, Section 1399.540)***

**PHYSICIAN ASSISTANT (PA)** __Daniel Dellwo__ graduated from __Idaho State University__ PA training program in **2014.** He took the licensing examination for PAs recognized by the State of California (e.g., Physician Assistant National Certifying Examination (NCCPA) on **September 11, 2014.** License # **56133** was granted by the Physician Assistant Board **10/12/2018** and expires **5/31/2020**, unless renewed.

**SUPERVISION REQUIRED.** The PA named above (hereinafter referred to as PA) will be supervised in accordance with written supervisor guidelines required by Section 3502 of the Business and Professions Code and Section 1399.545 of the Physician Assistant Regulations. The written supervisor guidelines are incorporated with the attached document entitled, "Supervising Physician's Responsibility for Supervision of Physician Assistants."

**AUTHORIZED SERVICES.** The PA is authorized by the physician whose name and signature appear below to perform all the tasks set forth in subsections (a), (d), (e), (f), and (g) of Section 1399.541 of the Physician Assistant Regulations, when acting under the supervision of the herein named physician. Those procedures specified in the practice protocols or which the supervising physician specifically authorizes.

a) The PA is authorized to write and sign drug orders for Schedule: II III IV V without advance approval *(circle authorized schedule(s)).* The PA has taken and passed the drug course approved by the Board on *Oct. 2014* (attach certificate). DEA registration #: __MDS3322752__

**OR**

b) The PA is authorized to write and sign drug orders for Schedule: II, III, IV, V with advance patient specific approval *(circle authorized schedule(s)).* DEA registration #: **MDS3322752**

1 of 3

CFMG - 001639



## CFMG
**California Forensic Medical Group**
I N C O R P O R A T E D

### SUPERVISING PHYSICIAN'S RESPONSIBILITY FOR SUPERVISION OF PHYSICIAN ASSISTANT

**SUPERVISOR**   _Eliud Garcia, MD_ is licensed to practice in California as a physician and surgeon with medical license number __G46157____. Hereinafter, the above-named physician shall be referred to as the supervising physician.

**SUPERVISION REQUIRED.** The Physician Assistant (PA) named in the attached Delegation of Services Agreement will be supervised by the supervising physician in accordance with these guidelines, set forth as required by Section 3502 of the Business and Professions Code and Section 1399.545 of the Physician Assistant Regulations, which have been read by the physician whose signature appears below.

**The physician shall review, countersign, and date within seven (7) days the medical record of any patient cared for by the PA for whom the physician's prescription for Schedule II medications was transmitted or carried out.**

**REPORTING OF PHYSICIAN ASSISTANT SUPERVISION.** Each time the PA provides care for a patient and enters his or her name, signature, initials, or computer code on a patient's record, chart or written order, the PA shall also enter the name of his or her supervising physician who is responsible for the patient. When the PA transmits an oral order, he or she shall also state the name of the supervising physician responsible for the patient.

**MEDICAL RECORD REVIEW.** One or more of the following mechanisms, as indicated below, by a check mark ☒, shall be utilized by the supervising physician to partially fulfill his/her obligation to adequately supervise the actions of the Physician Assistant named __Daniel Dellwo.__

☐ Examination of the patient by a supervising physician the same day as care is given by the PA.

☐ The supervising physician shall review, audit, and countersign every medical record written by the PA within _____ of the encounter. (Number of Days May-Not Exceed 30)

☒ The physician shall audit the medical records of at least 5% of patients seen by the PA under any protocols which shall be adopted by the supervising physician and the PA. The physician shall select for review those cases which by diagnosis, problem, treatment, or procedure represent, in his or her judgment, the most significant risk to the patient.

☐ Other mechanisms approved in advance by the Physician Assistant Board may be used. Written documentation of those mechanisms is located at _____. (Give Location)

---

**BACK UP PROCEDURES: In the event this supervising physician is not available when needed, the following physician(s) has (have) agreed to be a consultant(s) and/or to receive referrals:**

Raymond, Herr, MD (Preventive Care)_____        Phone: __303-919-8338__
(Printed Name and Specialty)

_____
(Back-up Physician's Signature)

3 of 3

CFMG - 001640



**CFMG**
**California Forensic Medical Group**
I N C O R P O R A T E D

**CONSULTATION REQUIREMENTS.** The PA is required to always and immediately seek consultation on the following types of patients and situations (e.g., patient's failure to respond to therapy; PA's uncertainty of diagnosis; patient's desire to see physician; any conditions which the PA feels exceeds his/her ability to manage, etc.)

**MEDICAL DEVICES AND PHYSICIAN'S PRESCRIPTIONS.** The PA may transmit by telephone to a pharmacist, and orally or in writing on a patient's medical record or a written prescription drug order, the supervising physician's prescription in accordance with Section 3502.1 of the Business and Professions Code.

The supervising physician authorizes the delegation and use of the drug order form under the established practice protocols and drug formulary. **(YES)** __X__     (NO)_____

The PA may also enter a drug order on the medical record of a patient at **Shasta County Jail / Juvenile Hall** in accordance with Physician Assistant Regulations and other applicable laws and regulations. Any medication handed to a patient by the PA shall be authorized by the supervising physician's prescription and be pre-packaged and labeled in accordance with Sections 4076 of the Business and Professions Code.

**PRACTICE SITE.** All approved tasks may be performed for care of patients in this office or clinic located at **Shasta County Jail / Juvenile Hall (Redding, California).**

**EMERGENCY TRANSPORT AND BACKUP.** In a medical emergency, phone 911 to summon an ambulance.

The **Shasta Regional Medical Center** emergency room at (phone #) **(530) 244-5353** is to be notified that a patient with an emergency problem is being transported to them for immediate admission. Give the name of the admitting physician. Tell the ambulance crew where to take the patient and brief them on known and suspected health condition of the patient. Notify **Dr. Garcia** immediately (or within __60__ minutes).

**PHYSICIAN ASSISTANT DECLARATION**

My signature below signifies that I fully understand the foregoing Delegation of Services Agreement, having received a copy of it for my possession and guidance, and agree to comply with its terms without reservations.

| | | |
|---|---|---|
| _signature_ | Eliud Garcia, MD | 11/5/18 |
| **Physician Signature (Required)** | **Physician Printed Name** | **Date** |
| _signature_ | Daniel Dellwo | 11/5/18 |
| **PA Signature (Required)** | **PA Printed Name** | **Date** |

2 of 3

CFMG - 001641

# EXHIBIT C

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF CALIFORNIA

3

4    JOHN ADENA, Deceased, by and      ) Case No.:
     through his Co-Successors in      ) 2:21-cv-00770-
5    Interest, CIRCE ADENA and RICHARD ) MCE-DMC
     ADENA; CIRCE ADENA, Individually, )
6    and RICHARD ADENA, Individually,  )
                                       )
7                       Plaintiffs,    )
                                       )
8          vs.                         )
                                       )
9    SHASTA COUNTY, a public entity;   )
     SHASTA COUNTY SHERIFF-CORONER TOM )
10   BOSENKO, in his individual        )
     capacity; CAPTAIN DAVE KENT; SHASTA )
11   COUNTY JAIL DEPUTIES KIRK SCHRITTER,)
     DEVIN HURTE, DEPUTY DIAZ, EMMANUAL )
12   ALCAZAR, ZACHARY JURKIEWICZ, JOSEPH )
     GRADY, NATHANIAL NEVES, HECTOR     )
13   CORTEZ; CALIFORNIA FORENSIC MEDICAL )
     GROUP, INC., a California          )
14   corporation; WELLPATH MANAGEMENT,  )
     INC., a Delaware corporation;      )
15   WELLPATH LLC, a Delaware Limited   )
     Liability Company; TRACY LEWIS,    )
16   L.M.F.T.; PAM JOHANSEN, L.C.S.W.;  )
     DANIEL DELLWO, P.A.; and DOES 1-20; )
17   individually, jointly and severally,)
                                       )
18                       Defendants.    )
     _____)

19

20       REMOTE VIDEO DEPOSITION OF DR. ELIUD GARCIA

21                       VOLUME 1

22              Pebble Beach, California

23              Thursday, August 22, 2024

24

25   Reported by:  DENISE MARLOW, RPR, CSR No. 11631
     Job No. 10147578, PAGES 1 - 57

1   sports medicine trauma interests.  So there's a

2   local racetrack called Laguna Seca Raceway in

3   Monterey, California.  I'm the medical director for

4   that.  And as part of that, I'm a chief medical

5   officer for certain sanctioning organizations and --

6   that are international.  I also do work as an

7   independent contractor for CFMG.

8       Q.  How long have you been an independent

9   contractor for CFMG?

10      A.  Quite a while.  Want to say since the late

11  1990s.

12      Q.  Do you know Taylor Fithian quite well, then?

13      A.  I do know Taylor, yes.

14      Q.  And I understand you're board-certified by

15  the American Board of Emergency Medicine.  Are you

16  board-certified by the American College of Emergency

17  Physicians?

18      A.  They do not do board certification.  It's

19  only the American boards that do certification.

20      Q.  I see.  Are you a --

21      A.  That --

22      Q.  I'm sorry.

23      A.  That is an organization.

24      Q.  Are you a member of ACEP?

25      A.  I'm a fellow of the American Academy of

```
 1              REPORTER'S CERTIFICATION

 2

 3         I, the undersigned, a certified Shorthand

 4   Reporter of the State of California, do hereby

 5   certify:

 6         That the foregoing proceedings were taken

 7   before me at the time and place herein set forth;

 8   that the witness in the foregoing proceedings,

 9   prior to testifying, was administered an oath; that

10   a record of the proceedings was made by me using

11   machine shorthand which was thereafter transcribed

12   under my direction; that the foregoing transcript is

13   a true record of the testimony given.

14         Further, that if the foregoing pertains to

15   the original transcript of a deposition in a Federal

16   Case, before completion of the proceedings, review

17   of the transcript [ X ] was [   ] was not requested.

18

19         IN WITNESS WHEREOF, I have hereunto

20   subscribed my name this 6th day of September, 2024.

21

22                                  Denise Marlow

23                    _____

24                    Denise Marlow, CSR No. 11631

25
```

# EXHIBIT D

```
 1                  UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF CALIFORNIA

 3

 4   JORDAN DEPPE, Deceased, by and
     through his Successor in Interest,
 5   MICHAEL DEPPE; and MICHAEL DEPPE,
     individually,
 6
                       Plaintiff,
 7
     vs.                          Case No. 2:22-cv-00187-DAD-JDP
 8
     SHASTA COUNTY, a public entity; SHASTA
 9   COUNTY SHERIFF-CORONER ERIC MAGRINI,
     in his individual capacity; CAPTAIN
10   GENE RANDALL; WELLPATH INC., a Delaware
     corporation; WELLPATH MANAGEMENT, INC.,
11   a Delaware corporation; WELLPATH LLC, a
     Delaware limited liability company;
12   CALIFORNIA FORENSIC MEDICAL GROUP, INC.,
     a California corporation; SANAZ PARSA,
13   M.D.; TRACI LEWIS, L.M.F.T.; SHEA PHINNEY,
     L.M.F.T.; DANIEL DELLWO, P.A.; and DOES 1-
14   20; individually, jointly and severally,

15                     Defendants.
     _____/
16

17                     *** NON CONFIDENTIAL **

18                     REMOTE DEPOSITION OF

19                     TRACI LEWIS, L.M.F.T.

20                     Wednesday, July 17, 2024

21

22
     Reported by:
23
     SHANNON TAYLOR-SCOTT
24   CA CSR No. 10067

25   JOB No. 10142969
```

Traci Lewis, L.M.F.T.

1   A.   Behavioral health consultant.

2   Q.   Were you working -- well, strike that.

3        Is Shasta Community Health Center a Shasta County

4   behavioral health or mental health services project or is

5   it an independent company?

6   A.   Independent.

7   Q.   What did you do as a behavioral health consultant

8   for the Shasta Community Health Center?

9   A.   I was in training to meet with patients.

10  Q.   What was your next position?

11  A.   The Shasta County Jail.

12  Q.   When did you first start working at the Shasta

13  County Jail?

14  A.   August of 2018.

15  Q.   Do you recall specifically when in August?

16  A.   I believe it's the 20th.

17  Q.   By the time -- well, strike that.

18       You have an understanding that there have been

19  corporate mergers and restructuring so that CFMG became a

20  part of CMGC, Correctional Medical Group Companies, which

21  merged with Correct Care Solutions to form Wellpath,

22  right?

23       MS. BECKER:  Objection.

24       You can answer to the extent you know.

25       THE WITNESS:  I get paychecks from CFMG.  I don't

1    know about the other stuff.

2    BY MS. SHERWIN:

3        Q.   Well, you understand that -- strike that.

4             Are you still working in Shasta County Jail?

5        A.   Yes.

6        Q.   Have you been working in Shasta County Jail

7    consistently since August of 2018?

8        A.   Yes.

9        Q.   You understand that the policies and procedures

10   that you're required to follow when you're working in

11   Shasta County Jail are Wellpath policies and procedures,

12   right?

13       A.   Correct.

14       Q.   And your work email is an email address

15   @wellpath.us, right?

16       A.   Correct.

17       Q.   And any identification badges that you wear at the

18   jail say "Wellpath" on them, right?

19       A.   My badge says "CFMG".

20       Q.   When did your badge start saying "CFMG"?

21       A.   I got the badge the first week I was employed

22   here.

23       Q.   You understand that your job description is a

24   Wellpath job description, right?

25             MS. BECKER:  Objection to the form of the

```
 1              REPORTER'S CERTIFICATION

 2          I, the undersigned, a Certified Shorthand Reporter

 3     of the State of California, do hereby certify:

 4          That the foregoing proceedings were taken

 5     before me at the time and place herein set forth; that any

 6     witnesses in the foregoing proceedings, prior to

 7     testifying, were administered an oath; that a record of

 8     the proceedings was made by me, using machine shorthand,

 9     which was thereafter transcribed under my direction; that

10     the foregoing transcript is a true record of the testimony

11     given.

12          Further, that if the foregoing pertains to the

13     original transcript of a deposition in a Federal Case,

14     before completion of the proceedings, review of the

15     transcript [ X ] was [ ] was not requested.

16          I further certify I am neither financially

17     interested in the action nor a relative or employee

18     of any attorney or any party to this action.

19          IN WITNESS WHEREOF, I have this date subscribed my

20     name.

21
       Dated:  August 1, 2024
22

23     _____

24              SHANNON TAYLOR-SCOTT

25              CA CSR No. 10067
```

# EXHIBIT E

```
 1              UNITED STATES DISTRICT COURT

 2            EASTERN DISTRICT OF CALIFORNIA

 3   JORDAN DEPPE, Deceased, by  )
     and through his Successor in )
 4   Interest, MICHAEL DEPPE; and )
     MICHAEL DEPPE, Individually, )
 5                                )
                  Plaintiff,      )
 6                                ) Case No.
     vs.                          ) 2:22-cv-00187-DAD-JDP
 7                                )
     SHASTA COUNTY, a public      )
 8   entity; SHASTA COUNTY        )
     SHERIFF-CORONER ERIC MAGRINI,)
 9   in his individual capacity;  )
     CAPTAIN GENE RANDALL;        )
10   WELLPATH INC., a Delaware    )
     corporation; WELLPATH        )
11   MANAGEMENT, INC., a Delaware )
     Corporation; WELLPATH LLC, a )
12   Delaware Limited Liability   )
     Company; CALIFORNIA FORENSIC )
13   MEDICAL GROUP, INC., a       )
     California Corporation; SANAZ)
14   PARSA, M.D.; TRACI LEWIS,    )
     L.M.F.T.; SHEA PHINNEY,      )
15   L.M.F.T.; DANIEL DELLWO,     )
     P.A.; and DOES 1-20,         )
16   individually, jointly and    )
     severally,                   )
17                                )
                  Defendants.     )
18   _____)

19

20          VIDEO-RECORDED DEPOSITION OF

21             SHEA PHINNEY, L.M.F.T.

22            Tuesday, April 30, 2024

23

24   REPORTED BY:  JANE GROSSMAN, CSR No. 5225

25   Job No. 10139351
```

Shea Phinney, L.M.F.T.

```
 1   BY MS. ANDERSEN:
 2        Q.   Do you recall any communications with
 3   custody staff about Mr. Deppe?
 4        A.   I do not recall any communication with
 5   them.
 6        Q.   Okay.  And by "custody staff," I'm
 7   including sergeants, lieutenants, and captains from
 8   Shasta County as well.
 9             Do you recall any communications with any
10   custody staff about Mr. Deppe -- Mr. Deppe?
11        A.   No, ma'am.
12        Q.   Okay.  That's all the questions I have.
13             Thank you.
14             MS. SHERWIN:  Any other questions?
15             MR. JURENKA:  Really quickly for me.
16                       ---oOo---
17             EXAMINATION BY MR. JURENKA
18   BY MR. JURENKA:
19        Q.   Shea, do you receive a paycheck for your
20   work at Placer County Jail?
21        A.   Yes.
22        Q.   And who's the employer on that paycheck?
23        A.   I'm not sure.  Well- - Well- -- Wellpath
24   or CFMG.
25             On the actual paycheck that I receive
```

1    currently?

**2**        Q.    Yes.

3        A.    I believe it's CFMG is what comes to me.

4              It -- it's automatically deposited, so I

5    don't often look at it.  But I do believe it's

6    CFMG.

7              MR. JURENKA:  Okay.  That's all I have.

8    Thank you.

9              MS. SHERWIN:  No further questions.

10             Thank you, Ms. Phinney.

11             I'll see you at the trial in this case.

12             We're going off the record at --

13             THE REPORTER:  Wait a minute.  Just one

14    second.

15             MS. SHERWIN:  Oh, sorry.

16             THE REPORTER:  May I have transcript

17    orders?

18             MS. SHERWIN:  I have a standing order,

19    Jane.

20             THE REPORTER:  I know.  Okay.  Thank you.

21             Counsel?

22             MR. ROSENTHAL:  And for me it's the same

23    as this morning's deposition --

24             THE REPORTER:  Thank you.

25             MR. ROSENTHAL:  -- an electronic -- an

**Shea Phinney, L.M.F.T.**

1           CERTIFICATE OF REPORTER

2           I, JANE GROSSMAN, a Certified Shorthand

3   Reporter, hereby certify that the witness in the

4   foregoing deposition was by me duly sworn, via

5   videoconference, to tell the truth, the whole truth,

6   and nothing but the truth in the within-titled

7   cause; that said deposition is a true record and was

8   taken in shorthand by me, a disinterested person, at

9   the time and place therein stated, and that the

10  testimony of said witness was thereafter reduced to

11  typewriting, by computer, under my direction and

12  supervision; that before completion of the

13  deposition, review of the transcript [ ] was [ X ] was

14  not requested.  If requested, any changes made by

15  the deponent (and provided to the reporter) during

16  the period allowed are appended hereto.

17          I further certify that I am not of counsel

18  or attorney for any of the parties to said

19  deposition, nor in any way interested in the events

20  of this cause, and that I am not related to any of

21  the parties thereto.

22

23  Dated: May 7, 2024

24  _____

25          JANE GROSSMAN, CSR No. 5225

# EXHIBIT F

```
 1              UNITED STATES DISTRICT COURT

 2             EASTERN DISTRICT OF CALIFORNIA

 3

 4   JOHN ADENA, Deceased, by and through ) Case No. 2:21-
     his Co-Successors in Interest, CIRCE ) cv-00770-MCE-DMC
 5   ADENA and RICHARD ADENA; CIRCE ADENA,)
     Individually, and RICHARD ADENA,     )
 6   Individually,                        )
                                          )
 7                        Plaintiffs,     )
                                          )
 8          vs.                           )
                                          )
 9   SHASTA COUNTY, a public entity;      )
     SHASTA COUNTY SHERIFF-CORONER TOM    )
10   BOSENKO, in his individual capacity; )
     CAPTAIN DAVE KENT; SHASTA COUNTY     )
11   JAIL DEPUTIES KIRK SCHRITTER, DEVIN  )
     HURTE, DEPUTY DIAZ, EMMANUAL ALCAZAR,)
12   ZACHARY JURKIEWICZ, JOSEPH GRADY,    )
     NATHANIAL NEVES, HECTOR CORTEZ;      )
13   CALIFORNIA FORENSIC MEDICAL GROUP,   )
     INC., a California corporation;      )
14   WELLPATH MANAGEMENT, INC., a         )
     Delaware corporation; WELLPATH LLC,  )
15   a Delaware Limited Liability         )
     Company; TRACY LEWIS, L.M.F.T.; PAM  )
16   JOHANSEN, L.C.S.W.; DANIEL DELLWO,   )
     P.A.; and DOES 1-20; individually,   )
17   jointly and severally,               )
                                          )
18                        Defendants.     )
     _____)
19

20        REMOTE DEPOSITION OF PAMELA STOWERS JOHANSEN

21                        VOLUME 1

22                    Chico, California

23                  Tuesday, July 2, 2024

24

25   Reported by:  DENISE MARLOW, RPR, CSR No. 11631
     Job No. 10141644, PAGES 1 - 188
```

1        A.  I feel comfortable.  I feel like I've been

2    well-prepared with the ground rules.

3        **Q.  Okay.  Have you reviewed anything before your**

4    **deposition?**

5        A.  Yes, I have.

6        **Q.  What have you reviewed?**

7        A.  I have reviewed the paperwork that was sent to

8    me, including the complaint, including the medical

9    records, including most of the policies from CFMG.

10       **Q.  And the policies that you reviewed were Wellpath**

11   **policies.  Right?**

12       A.  They are, but it's confusing because I'm

13   actually hired by CFMG.  But the paperwork says

14   Wellpath.

15       **Q.  Are you currently employed by any company**

16   **related to CFMG or Wellpath?**

17       A.  My paycheck and my tax statements say CFMG.

18       **Q.  And you're currently employed by the company?**

19       A.  Yes.

20       **Q.  Do you have work e-mail?**

21       A.  I work full time at the Butte County Jail.

22       **Q.  Do you have work e-mail, an e-mail address for**

23   **work?**

24       A.  I do but I usually use my university e-mail

25   because I've had it for 37 years.

```
 1              REPORTER'S CERTIFICATION

 2

 3         I, Denise Marlow, Certified Shorthand Reporter

 4    in and for the State of California, do hereby certify:

 5

 6         That the witness named in the foregoing

 7    deposition was, before the commencement of the

 8    deposition, duly administered an oath in accordance

 9    with the Code of Civil Procedure Section 2094; that

10    the testimony and proceedings were reported

11    stenographically by me and later transcribed through

12    computer-aided transcription under my direction and

13    supervision; that the foregoing is a true record of the

14    testimony and proceedings taken at that time.

15

16         IN WITNESS WHEREOF, I have hereunto subscribed

17    my name this 16th day of July, 2024.

18

19                         Denise Marlow

20                    _____

21                    Denise Marlow, CSR No. 11631

22

23

24

25
```

# EXHIBIT G

```
 1              UNITED STATES DISTRICT COURT

 2             EASTERN DISTRICT OF CALIFORNIA

 3

 4   JORDAN DEPPE, Deceased, by and )
     through his Successor in      )
 5   Interest, MICHAEL DEPPE; and  )
     MICHAEL DEPPE, Individually,  )
 6                                 )  CASE NO.
                                   )  2:22-cv-00187-DAD-
 7             Plaintiff,          )  JDP
                                   )
 8                vs.             )
                                   )
 9   SHASTA COUNTY, a public entity;
     SHASTA COUNTY SHERIFF-CORONER
10   ERIC MAGRINI, in his individual
     capacity; CAPTAIN GENE RANDALL;
11   WELLPATH INC., a Delaware
     corporation; WELLPATH
12   MANAGEMENT, INC., a Delaware
     Corporation; WELLPATH LLC, a
13   Delaware Limited Liability
     Company; CALIFORNIA FORENSIC
14   MEDICAL GROUP, INC., a
     California Corporation; SANAZ
15   PARSA, M.D.; TRACI LEWIS,
     L.M.F.T.; SHEA PHINNEY,
16   L.M.F.T.; DANIEL DELLWO,P.A.;
     and DOES 1-20; individually,
17   jointly and severally,,

18

19  _____

20        DEPOSITION of SANAZ PARSA, M.D., taken on

21   behalf of the Plaintiff, beginning at 10:05 a.m.

22   on Thursday, July 18, 2024, before Joan Grier,

23   Certified Shorthand Reporter No. 8958.

24

25
```

Defendants.

```
 1              So, Brian, you got yourself a junket to
 2    Florida?
 3              MR. ROSENTHAL:  I always go to where my clients
 4    are.
 5              MS. SHERWIN:  There you go.  It's very
 6    beautiful.  I've been there one time.
 7              THE WITNESS:  It's very hot.
 8              MS. SHERWIN:  Yeah, very hot.
 9         Q.  So when it says July 1st of 2018, to the
10    present, as an adult telepsychiatrist for
11    Orbit Telehealth in California -- I'm sorry.  Please be
12    patient with me and let me get my question in the
13    record.  I know it's a very unnatural way of speaking,
14    but Courts have us do all sorts of unnatural things.
15              So I notice on your CV that you worked from
16    July 1st of 2018, to the present, according to your CV,
17    as an adult telepsychiatrist with Orbit Telehealth in
18    California.
19              That's the employer that you worked for when
20    you were providing telepsychiatry services at Wellpath;
21    is that correct?
22         A.  Yes.
23         Q.  Are you still working as an adult
24    telepsychiatrist with Orbit Telehealth?
25         A.  No, I'm not.
```

```
1   STATE OF CALIFORNIA    )    ss
    COUNTY OF ALAMEDA       )
2

            I, Joan Grier, hereby certify that the
3   witness in the foregoing deposition named

4

5                     SANAZ PARSA, M.D.

6

7   was by me duly sworn to testify to the truth, the whole
    truth, and nothing but the truth in the within-entitled
8   cause; that said deposition was taken at the time and
    place herein named; that the testimony of said witness was
9   reported by me, a certified shorthand reporter and a
    disinterested person, and thereafter transcribed into
10  typewriting.

11         And I further certify that I am not of counsel or
    attorney for either or any of the parties to said
12  deposition, nor in any way interested in the outcome of
    the cause named in said caption.

13

14  __X__Reading and Signing was requested.

15  _____Reading and Signing was waived.

16  _____Reading and Signing was not requested.

17

18

19  Date: 7/30/24

20

21  _____
    Joan Grier, C.S.R. #8958
22

23

24

25
```

**Page 141**

# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| WELLPATH HOLDINGS, INC. et al.,[1] | ) Case No. 24-90533 (ARP) |
| | ) |
| Debtor. | ) |

DECLARATION OF MICHAEL J. HADDAD IN SUPPORT OF RESPONSE IN
OPPOSITION TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS TO ENFORCE THE AUTOMATIC STAY OR IN THE
ALTERNATIVE EXTEND THE AUTOMATIC STAY TO NON-DEBTOR DEFENDANTS

I, Michael J. Haddad, attest and declare as follows:

1.      I am an attorney licensed to practice law in the States of California and Michigan.
I am a partner in the Oakland, California, law firm of Haddad & Sherwin LLP.

2.      I have personal knowledge of the matters set forth herein.  If called as a witness, I
could and would testify competently to the matters set forth below.

3.      My firm represents the plaintiffs in two wrongful death cases entitled *Deppe v.
Shasta County, et al.*, E.D. Cal. Case No. 2:22-CV-00187-DAD-JDP (the "Deppe Case"), and
*Adena v. Shasta County, et al.*, E.D. Cal. Case No. 2:21-CV-00770-DC-DMC (the "Adena Case,"
and together with the Deppe Case, "Claimants' Cases").  Two of the debtors in this bankruptcy
matter, Wellpath LLC and Wellpath Management, Inc. (jointly herein identified as "Wellpath
Debtors"), are defendants in the Claimants' Cases.

4.      However, several non-debtor parties are defendants in each case.  In the Deppe
Case, non-debtor defendants include Shasta County, California; Shasta County Sheriff-Coroner

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and
noticing agent at https://dm.epiq11.com/Wellpath.

**DECLARATION OF MICHAEL J. HADDAD**                                                      **Page 1**

Eric Magrini; Shasta County Captain Gene Randall; Shasta County Lieutenant Dale Marlar; California Forensic Medical Group, Inc. ("CFMG"); Sanaz Parsa, M.D.; Traci Lewis, L.M.F.T.; Shea Phinney, L.M.F.T.; and Daniel Dellwo P.A.

5.      In the Adena Case, non-debtor Defendants include Shasta County, California; Shasta County Deputy Joseph Grady; Shasta County Deputy Nathaniel Neves; Shasta County Deputy Hector Cortez; CFMG; Traci Lewis, L.M.F.T.; Pam Johansen, L.C.S.W.; Daniel Dellwo, P.A.; and Amanda Ream, R.N.

6.      A brief description of each case is included in the declaration of my partner, Julia Sherwin, at paragraphs 6 and 7, filed herewith. As quoted in Ms. Sherwin's declaration at paragraphs 20 and 21, the district courts in each case have issued minute orders limiting the effect of the bankruptcy stay to certain parties in each case.

7.      On November 27, 2024, we proposed to defense counsel in the Claimants' Cases to stipulate to dismiss all claims against the Wellpath Debtors with each side to bear their own costs and fees necessitated by the claims against those two defendants. In exchange, in the Adena Case, we requested a stipulation to proceed with pending claims against the remaining non-debtor defendants without any bankruptcy stay (as the district court in the Deppe Case had already ordered). In the Claimants' Cases, we proposed for each remaining medical defendant to produce any insurance policies that may provide coverage in these cases as already required by Federal Rule of Civil Procedure 26(a)(1)(A)(iv) and as requested in previously-served requests for production of documents. To date, we have not received a response to the proposed stipulation from counsel for the Wellpath Debtors or any of the other medical, non-Debtor, defendants in the cases.

8.     We also have not received the required and long overdue insurance policies from any of the medical defendants, including the Wellpath Debtors. To date, the Wellpath Debtors and the non-Debtor defendants in the Claimants' Cases have not produced the insurance policies that provide coverage for claims made in these two cases, despite the requirement to do so under the Federal Rules of Civil Procedure, and despite our repeated requests for this information.

9.     In their Rule 26 initial disclosures in the Adena Case on September 17, 2021, Wellpath Debtors, CFMG, and the individual medical employee defendants stated: "A request has been made for a copy of the policy of insurance for the defendants in this action and a copy will (sic) provided on receipt from the carrier." In their Rule 26 initial disclosures in the Deppe Case on June 10, 2022, Defendants CFMG, medical employees, and Wellpath Debtors stated: "Defendants are jointly insured by Allied World, 199 Water Street 25th Floor New York, New York 10038, (212) 635-5533. The policy and claim numbers are BUQSTRTTN013100-05000-01-2021-03-15, with combined policy limits of $3,000,000.00. A copy of said policy declaration is available for inspection and copying."

10.     On September 2, 2021 in the Adena Case, and on August 8, 2022 in the Deppe Case, we served Plaintiffs' First Request for Production of Documents on all medical Defendants, including the Wellpath Debtors, in these cases seeking: **"all DOCUMENTS concerning insurance and/or pooled risk management coverage, including but not limited to complete insurance policies, declaration sheets, and pooled risk agreements, which may cover any Defendant for any claims alleged in this matter."** In the Adena Case, defense counsel representing all medical defendants responded again that a copy of the insurance policy had been requested and would be produced. To date, no insurance-related documents have been produced in Adena. In Deppe, Defendants produced only the declaration sheet to an insurance policy.

**DECLARATION OF MICHAEL J. HADDAD**                              Page 3

11.     On November 13, 19, 20, and 22, 2024, I again requested Lindsey Romano and/or her associate attorney, Frank Bailey (counsel for CFMG, Wellpath Debtors, as well as for individual medical Defendants in both cases) to send us all insurance policies that may provide coverage for non-debtor CFMG and the individual medical employees in both cases.  To date, although in both cases the medical Defendants have stated in writing that the requested insurance policies exist, they still have not produced any insurance policies.

12.     When I spoke with Ms. Romano by telephone on November 19, 2024, I also asked her to check with her clients to see whether they would agree to carve out CFMG, Shasta County, the individual defendants, and CFMG's insurance policies from the permanent bankruptcy stay in just the Claimants' Cases.  I followed up by email asking Ms. Romano to please respond within a day or two if possible, given the short deadlines in these pending bankruptcy proceedings.  To date, we have not received any response.

13.     It would be a substantial and undue hardship on our clients in these two wrongful death cases for the bankruptcy stay to be permanently extended to include non-debtor defendants, including CFMG and its employees, and Shasta County and its employees.

14.     In the Deppe Case, non-expert discovery is complete and expert disclosures are due December 13, 2024. The parties completed extensive voluminous written discovery and 12 depositions.  Plaintiffs have already incurred significant expense in expert work to prepare for timely expert disclosures and reports.  All motions, including dispositive motions, are due June 13, 2025, and all pretrial filings are due August 19, 2025.  The final pretrial conference is August 26, 2025; trial is October 27, 2025.

15.     In the Adena Case, fact discovery is almost complete, and the close of fact discovery is January 17, 2025.  The parties have completed 33 depositions and exchanged many

**DECLARATION OF MICHAEL J. HADDAD**                                                    Page 4

thousands of pages of documents.  Expert disclosures are due March 14, 2025, and the plaintiffs have already incurred significant expense in experts' work to prepare their reports.

16.     At least in the Adena Case, where the district court has stayed all proceedings against non-debtor CFMG and its employees, expert disclosures and discovery would effectively need to be continued for all parties during the partial stay, since it cannot practically or efficiently be done piecemeal given interwoven issues of causation, training, and policies.  The parties in the Adena Case cannot prepare the case for trial or even dispositive motions while the partial stay remains in place, which for practical purposes prevents full expert discovery.

17.     Both cases currently are in a posture where the parties typically would attempt to mediate or otherwise negotiate a full settlement of all claims.  Settlement is all but impossible while the bankruptcy stay continues against non-debtor defendant CFMG and its employees, even though they appear to be covered by at least $3 million in disclosed insurance in the Deppe Case and probably an equal amount in the Adena Case.  Moreover, all the plaintiffs have offered to dismiss the Wellpath Debtors from Claimants' Cases so they can proceed without delay.

18.     If the plaintiffs in the Claimants' Cases were permitted, as they have proposed by stipulation, to dismiss all claims against the Wellpath Debtors with each side to bear their own costs and fees necessitated by the claims against those two Defendants, and to proceed with pending claims against the remaining non-debtor defendants without any bankruptcy stay (as the district court already has ordered in the Deppe Case), then all parties, including Shasta County and its employees, could now attempt to reach a global settlement of all claims in the district court, or otherwise move Claimants' Cases toward trial.

19.     Our clients are the grieving parents of young men who died in the Shasta County jail, in part due to the deliberate indifference to their medical needs by medical Defendants in these

cases, including the individual actors and CFMG. Jordan Deppe's father has had to wait almost four years, and John Adena's parents have had to wait over five years, for these cases to proceed after their sons' deaths. These parents deserve to have their civil claims heard or resolved without undue delay – especially from a bankruptcy stay of proceedings against Wellpath Debtors who are not even necessary to the resolution of the plaintiffs' claims. Additionally, Shasta County and the individual defendants continue to have this litigation and the financial exposure from it on their books while the Wellpath Debtors help themselves to yet another delay from this bankruptcy proceeding.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration was executed in Oakland, California, on December 5, 2024.


*/s/ Michael J. Haddad*
MICHAEL J. HADDAD