UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In Re:** | § | **Chapter 11** |
| | § | |
| **WELLPATH HOLDINGS, INC.,** et al., | § | **Lead Case No.** 24-90533 (ARP) |
| | § | **Case No.** 24-90556 |
| *Debtors.* | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**PLAINTIFF DAWN CRAWFORD, IN HER CAPACITY AS ADMINISTRATRIX FOR THE ESTATE OF MARC CRAWFORD'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW THE PENDING CLAIMS BROUGHT AGAINST THE DEBTOR PURSUANT TO 42 U.S.C. § 1983 TO PROCEED**

This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.

Represented parties should act through their attorney.

There will be a hearing on this matter on January 9, 2025, at 11 AM via video conference: https://meet.goto.com/JudgePerez, or Telephonic Participation: 832-917-1510, Conference Code: 282694.

Plaintiff, Dawn Crawford, in her capacity as Administratrix of the Estate of Marc Crawford "Plaintiff" or "Crawford"), hereby submits this Motion for Relief from the Automatic

1

Stay to Allow the Pending claims pursuant to 42 U.S.C. § 1983 against the Debtor, Correct Care Solutions, LLC n/k/a Wellpath, LLC (hereinafter referred to as "Debtor"), to Proceed (hereinafter referred to as "Motion"), and respectfully shows the Honorable Court as follows:

## I.
### INTRODUCTION

This matter involves Crawford's request to continue the pre-petition 42 U.S.C. § 1983 action against the Debtor in the court where it has been filed. The automatic stay, while critical protection for debtors, is not intended to indefinitely delay the resolution of pre-petition claims, especially when such claims are distinct from the administration of the bankruptcy estate and unlikely to prejudice its assets. Here, Plaintiff has demonstrated that cause exists, as the continuation of the 42 U.S.C. § 1983 action will not harm the bankruptcy estate but is essential to protect Crawford's ability to seek accountability and damages for the significant harm suffered. By granting this Motion, the Court will enable the continuation of litigation in the filing court, the appropriate venue for adjudicating the specialized claims at issue. Furthermore, the equities in this matter weigh heavily in favor of Crawford, a party whose interests would be severely prejudiced by further delay.

## II.
### FACTUAL AND PROCEDURAL BACKGROUND

Marc Crawford, a former resident of Madison County, was released from the hospital in early May, 2017, after having a stent placed in his kidney and following receiving care for a recurrence of his stage 4 lung cancer. When he was released from the hospital, he was hopeful that the plan developed by his oncologist for the care and treatment of his cancer would lead to remission and that he would eventually become cancer-free. Of course, at the time he was a medically vulnerable individual who had been prescribed multiple medications essential to his survival and the management of pain associated with his cancer. He had scheduled follow-up appointments for

2

chemotherapy and consultation with his oncologist that he knew he needed to keep if he was to survive this recurrence of his cancer.

Unfortunately, he was arrested at his home on May 25, 2017 in relation to charges arising from a traffic incident. He was then incarcerated as a pre-trial detainee at Madison County Detention Center ("MCDC") from May 25, 2017 through May 30, 2017. During this time, he was denied any medical treatment for his health issues by Madison County Detention Center (and its agents Tom Jones, Doug Thomas, and Nolan Winkler), and its healthcare provider Southern Health Partners, Inc. (and its providers Kayla Frye, and Roy Washington), and was subjected to numerous medical errors that resulted in adverse side-effects, over-medication, and deterioration of his health.

Crawford was eventually transported to Kentucky State Reformatory ("KSR") on May 31, 2017. Despite presenting with severely elevated heart rate, difficulty breathing, and a painfully swollen leg, the KSR medical providers refused to treat him for any of these medical conditions. At the time, the Debtor was the contracted healthcare provider for KSR inmates. Medical staff at KSR, including Janice Garth, Kirstie Proctor, and Sheridan Thomas, ignored Crawford's complaints of pain, and failed to provide him with either his prescribed narcotics or breathing treatments. Medical staff also failed to provide his chemotherapy treatment. On June 20, 2017, Garth scheduled an appointment for Crawford with an oncologist for July 5, 2017. Unfortunately, Crawford passed away only four days later—on June 24—and never visited an oncologist after his arrest.

A Complaint was filed in the United States District Court for the Eastern District of Kentucky against John Tilley (Secretary of Kentucky's Public Safety and Justice Cabinet), James Erwin, MCDC (and its agents and officers Doug Thomas, Tom Jones, and Nolan Winkler), Southern Health Partners, Inc. (and its providers Kayla Frye and Roy Washington), KSR (and its agents and officers Aaron Smith and Jahrell Johnson), and Debtors, as Correct Care Solutions, LLC (and its providers Janice Garth, Sheridan Thomas, Kirstie Proctor, and Dr. Elton Amos), on

3

November 26, 2018 (the "Crawford Litigation"). The Crawford Litigation was docketed as *Crawford v. Tilley, et al.,* 5:18-cv-00623-CHB-MAS. A copy of the First Amended Complaint filed in the Crawford Litigation is attached hereto as <u>Exhibit A</u>.

The allegations in the Crawford Litigation are that Crawford was a victim of a health care model utilized in Kentucky's correctional facilities that runs counter to national standards and falls far short of meeting inmates' critical medical needs. The Complaint alleges that the Kentucky Justice and Public Safety Cabinet (the "Cabinet"), MCDC, KSR, and the private health care providers with which they contracted, including the Debtor and Southern Health Partners, Inc. ("Southern Health"), had in force unconstitutional policies, practices, and customs that caused inmates, including Crawford, to suffer constitutional deprivations in relation to the provision of health care services. Like many other Kentucky inmates, Crawford fell victim to this culture of indifference and suffered a horrible, avoidable death.

The Crawford Litigation has been actively litigated over the past several years. The parties to the Crawford Litigation, including Debtor, were previously operating under a Scheduling Order, pursuant to which all parties submitted expert reports regarding Crawford's claims. The Debtor's expert reports were served upon Crawford on October 28, 2024. The case thereafter proceeded to the expert discovery phase of litigation, with deadlines for the filing of summary judgment motions having been established by the District Court's Scheduling Order.

On November 11, 2024, the Debtor filed a voluntary Petition for Bankruptcy under Chapter 11 of the Bankruptcy Code. On November 12, 2024, the Debtor filed its Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants. On the same day, the Court ordered that "[t]he final hearing [] on the Motion shall be held on December 5, 2024, at 3:00 p.m. [].[1] Any

---

[1] Upon review of the docket in this action, it appears the hearing on this Motion has been rescheduled for December 11, 2024, at 9:30 a.m.

objections or responses to entry of a Final Order on the Motion shall be filed and served on the Notice Parties and counsel to any statutory committees appointed in these Chapter 11 cases so as to be actually received on or before 4:00 p.m. [] on December 2, 2024.  The Debtors shall serve a copy of this Interim Order on the Notice Parties within five business days of the date hereof. In the event that no objections to the entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without the need for the Final Hearing." "The Lawsuits are stayed in their entirety, including the plaintiffs' claims against the Non-Debtor Defendants, on an interim basis pursuant to section 362 of the Bankruptcy Code."

Debtor filed a Suggestion of Bankruptcy and Notice of Stay in the Crawford Litigation on November 15, 2024.  The District Court entered an Order staying the Crawford Litigation on November 21, 2024.

The stay entered by this Court and corresponding stay entered by the District Court in the Crawford Litigation halts all ongoing litigation and collection activities against the Debtor, including the Crawford Litigation.  It poses significant impediments to the resolution of Crawford's claims not only against Debtor, but also against the other <u>thirteen</u> defendants in the Crawford Litigation, delaying the determination of liability and the damages owed to Crawford.

## III.
### ARGUMENT & AUTHORITIES

**1. The Plaintiff Has Met the Legal Standard for Relief from the Automatic Stay.**

To proceed with the continuation of a pre-petition lawsuit against the Debtor, the Plaintiff is required to seek and obtain relief from the automatic stay.  "When a bankruptcy petition is filed, most judicial actions against the debtor commenced before the filing of the petition are automatically stayed. *See* 11 U.S.C. § 362(a)(1). The automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations. According to Section 362(d), the

5

bankruptcy court may lift the stay "for cause." Because the Code provides no definition of what constitutes "cause," courts must determine when relief is appropriate on a case-by-case basis.. Bankruptcy judges have broad discretion in determining what constitutes sufficient cause to grant relief from stay under section 362(d)(1)." *Herlihy v. DBMP LLC*, No. 3:24-CV-00558-KDB, 2024 U.S. Dist. LEXIS 195633, at *4 (W.D.N.C. Oct. 28, 2024).

"The legislative history indicates that cause may be established by a single factor such as "a desire to permit an action to proceed in another tribunal," or lack of any connection with or interference with the pending bankruptcy case." H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977). See also *In re Drexel Burnham Lambert Group, Inc.*, 113 Bankr. 830, 838 n.8 (Bankr. S.D.N.Y. 1990) (citing various findings of § 362(d)(1) "cause" to permit litigation in another forum such as liquidation of a personal injury, arbitration or specialized jurisdiction claim)." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

"Bankruptcy courts have devised a three-prong test to determine whether an automatic stay should be lifted to allow continuation of a pending lawsuit. See *In re Bock Laundry Machine Co.*, 37 BR 564, 566 (Bankr N D Ohio 1984). The first prong assesses whether any "great prejudice to either the bankrupt estate or the debtor will result from the continuation of a civil suit." *Id*. The second prong is to determine whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor. The third prong requires the court to examine whether the creditor has a probability of success on the merits of his case. *Id*." *In re Martha Wash. Hosp.*, 157 B.R. 392, 395 (N.D. Ill. 1993).

"The Bankruptcy Code expressly addresses the issue of burden of proof in a section 362(d)(1) motion. The party requesting relief has the initial burden of going forward and, thus, is required to make a showing of cause in support of lifting the stay. The party opposing relief has the burden of proof to show that it is entitled to continuation of the stay. Section 362(g) places

the burden of proof on the debtor for all issues other than "the debtor's equity in property." 11 U.S.C. § 362(g)(1).[Citation omitted]." *In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997).

Given the above standards, Crawford has satisfied his burden of proof and established sufficient grounds for relief from the automatic stay under 11 U.S.C. § 362(d)(1). First, continuing the pre-petition litigation will not result in significant prejudice to the Debtor or the bankruptcy estate. The claims against the Debtor are likely subject to insurance coverage, which would shield the bankruptcy estate from financial liability. On the other hand, maintaining the stay would impose undue hardship on Crawford, by delaying her ability to seek justice and closure – not just against the Debtor, but also against the more than a dozen additional defendants in the Crawford Litigation. Crawford's claims are analogous to personal injury claims, and courts consistently recognize that lifting the stay to allow personal injury or wrongful death claims to proceed in an appropriate forum is both equitable and consistent with legislative intent. Finally, Crawford has a reasonable probability of success on the merits. Therefore, granting relief from the automatic stay is justified and necessary.

**2. The Court Should Lift the Automatic Stay to Allow the Pending 42 U.S.C. § 1983 Action in the District Court.**

"The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case. [Citation omitted]." *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014).

Granting relief from the automatic stay to allow the continuation of the Crawford Litigation in the District Court will not prejudice the Debtor's bankruptcy estate. Courts frequently lift the automatic stay to permit litigation in another forum when doing so does not unduly burden the estate or jeopardize the interests of creditors. In *In re Holtkamp*, 669 F.2d 505 (7th Cir. 1982), the court determined that the order lifting the stay did not jeopardize the

bankruptcy estate because defendant-appellant's insurance company assumed full financial responsibility for defending the suit. *Id* at 508-509. The interests of the judicial economy weigh in favor of permitting the Crawford Litigation to go forward as it does not require the expertise of the bankruptcy court.

In this case, lifting the stay is justified because the continuation of the litigation will not materially impact the administration of the Debtor's bankruptcy estate for the following reasons:

### A. Determination of Liability in the Proper Forum.

The Crawford Litigation is pending in the District Court, which has jurisdiction over the underlying claims and is the most appropriate forum for determining the liability of the Debtor. The claims against the Debtor under 42 U.S.C. § 1983 require specialized legal and factual determinations related to constitutional claims, and the practices of Kentucky correctional facilities.

"Under 28 U.S.C.S. §§ 157(b)(2)(B), (b)(2)(O), and (b)(5), only a district court can determine personal injury tort and wrongful death claims against a debtor -- a bankruptcy judge simply does not have jurisdiction to liquidate such claims. This is so notwithstanding the broad grant of jurisdiction to the bankruptcy courts under 28 U.S.C.S. §§ 1334 and 157 (b)(1) generally. Congress simply concluded that personal injury tort (and wrongful death) claims were types of claims that the bankruptcy courts cannot hear and determine." *Mercado v. Fuchs (In re Fuchs)*, No. 05-36028-BJH-7, 2006 Bankr. LEXIS 4543, at *1 (Bankr. N.D. Tex. Jan. 26, 2006.) "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere. [Citation omitted]." *In re Martha Wash. Hosp., supra* at 395.

Allowing the Crawford Litigation to proceed in the District Court aligns with these jurisdictional directives. The District Court is well-equipped to handle the procedural and

substantive complexities of the case, ensuring a fair and efficient adjudication without requiring the bankruptcy court to address matters beyond its statutory purview.

### B. Potential Insurance Coverage.

The claims asserted against the Debtor in the Crawford Litigation may be subject to coverage under the Debtor's liability insurance policies. If insurance coverage applies, any damages awarded in the Crawford Litigation will be satisfied by the insurer, not from the Debtor's estate. Courts have consistently held that when litigation is likely to be covered by insurance, the risk of prejudice to the Debtor's bankruptcy estate is minimal. "Where the claim is one covered by insurance or indemnity, continuation of the action is to be permitted because hardship to the debtor is likely to be outweighed by hardship to plaintiff." *In re Phila. Athletic Club, Inc.*, 9 B.R. 280, 280 (Bankr. E.D. Pa. 1981.) "Numerous courts permit the automatic stay to be lifted when the movant is simply seeking to establish the fact and amount of the debtor's liability and the movant has stipulated that any recovery will be sought from the debtor's insurer or a codefendant." *In re Peterson*, 116 B.R. 247, 248 (D. Colo. 1990.)

In this instance, the Debtor has produced to Crawford several insurance policies that appears to provide coverage for the Debtor and related debtors for these types of incidents, with a policy limit of $(unknown at this time) per claimant. The policies also appear to cover defense costs and fees. There is adequate protection to the Debtor, the Crawford Litigation should be permitted to proceed to a jury trial in District Court. Crawford has asserted claims against several providers associated with the Debtor. It is unclear whether those providers are covered by their own insurance policies or whether the Debtor's insurance policies will be required to provide them with indemnification. The continuation of the litigation will primarily serve to determine the Debtor's liability and the amount of any covered damages without diminishing the Debtor's bankruptcy estate assets available to other creditors.

### 3. Hardship to the Plaintiff Outweighs Any Burden on the Debtor.

"[T]he stay is not meant to be indefinite or absolute, and in appropriate instances, relief may be granted.[Citation omitted]." *In re Rexene Prods*. Co., *supra* at 576. "The second factor balances the hardship to Movants in continuing the stay with the hardship to the Debtor in lifting the stay. Here again, the court finds the equities greatly favor Crawford. The hardship to Crawford in denying relief is considerable, whereas the prejudice to the Debtor in denying relief, as discussed in the first prong, is very slight, if any." *Id* at 577. Also, in *In re Hudgins*, 102 B.R. 495, 498 (Bankr. E.D. Va. 1989), the court held that the stay be lifted as to [Plaintiff] to allow her to continue her personal injury action against the debtor, reasoning that resolving the personal injury claim promptly would facilitate the debtor's financial reorganization. The court also held that it lacked authority to determine the venue for the personal injury litigation.

Further, "The mere cost of defense, however, is ordinarily considered an insufficient basis for denying relief from the stay." *Wiley v. Hartzler (in Re Wiley)*, 288 B.R. 818, 823 (B.A.P. 8th Cir. 2003).

Here, Crawford suffered extreme deprivations of his constitutional rights at the hands of Debtor and other defendants named in the Crawford Litigation. Delaying the resolution of his claims due to the automatic stay exacerbates the prejudice to Crawford and his Estate while offering no corresponding benefit to the Debtor's bankruptcy estate. The automatic stay can severely prejudice Crawford by delaying the resolution of the Crawford Litigation. This will delay Crawford's financial relief. Prolonged delays can complicate or jeopardize Crawford's ability to litigate his claims effectively, including potential difficulties in preserving evidence or ensuring witness availability. Granting the relief from the automatic stay will serve the best interest of Crawford's Estate.

### 4. The Probability of Success on the Merits.

While a final determination on the merits is reserved for the District Court, Crawford has a

reasonable probability of success on the merits, meeting the standard necessary for relief from the automatic stay. Courts have noted that the threshold for demonstrating a probability of success on the merits for purposes of lifting the stay is "very slight" and needs only to show that the claims are not frivolous or without factual foundation. *In re Rexene Prods. Co., supra* at 578. Crawford meets this standard.

Crawford's claims arising under 42 U.S.C. § 1983 are well-founded in both legal precedent and factual support, as evidenced by the expert reports of Dr. Radha Sadacharan, attached hereto as <u>Exhibit</u> <u>B</u>, and Dr. Laurie Lyckholm, attached hereto as <u>Exhibit</u> <u>C</u>. The allegations in the Crawford Litigation and the reports of Dr. Sadacharan and Dr. Lyckholm (<u>Exs.</u> <u>A</u>, <u>B</u>, and <u>C</u>), articulate specific instances of constitutional violations against the Debtor. Crawford's experts conclude, with detailed citation to the relevant medical records and policies, that the Debtor's actions directly caused Crawford's death. The Debtor provided medical, psychiatric, nursing, medication, and health care to prisoners and detainees at KSR pursuant to a contract with the Kentucky Department of Corrections. Crawford's experts have concluded that the Debtor's failure to fulfill its duty to provide adequate care to Crawford resulted in his preventable death.

Thus, the claims against the Debtor are not speculative. Crawford's 42 U.S.C. § 1983 claims assert violations of Crawford's constitutionally protected rights. Allowing the Crawford Litigation to proceed will provide Crawford the opportunity to have these claims fully adjudicated without prejudicing the Debtor or the bankruptcy estate. Accordingly, the probability of success on the merits further supports lifting the automatic stay to allow the continuation of the Crawford Litigation in the District Court.

## IV.
### CONCLUSION

Crawford has satisfied the legal standards for relief from the automatic stay under 11 U.S.C. § 362(d)(1). The continuation of the Crawford Litigation in the District Court will not

unduly prejudice the Debtor or the bankruptcy estate, particularly because any potential liability is likely subject to insurance coverage. Conversely, maintaining the stay would impose significant hardship on Crawford by delaying the resolution of critical claims constitutional violations, matters that require the expertise of the District Court. Moreover, the Plaintiff has demonstrated a reasonable probability of success on the merits, satisfying the minimal threshold required for lifting the stay. Allowing the litigation to proceed promotes judicial economy, ensures that the claims are resolved in the proper forum, and aligns with the equitable principles underlying the Bankruptcy Code.

Therefore, Crawford respectfully requests the Court to grant the Plaintiff's Motion for Relief from Automatic Stay to Allow the Pending 42 U.S.C. § 1983 Claims against the Debtor to proceed in the District Court.

December 11, 2024                                    Respectfully Submitted,

                                           */s/ Jessica Winters*
                                           Jessica Winters
                                           The Winters Law Group LLC
                                           432 S. Broadway, Suite 2B
                                           Lexington, KY 40508
                                           jessica@thewinterslawgroup.com
                                           *Counsel for Plaintiff*

### CERTIFICATE OF CONFERENCE
(Bankruptcy Local Rule 4001-1)

This is to certify that I have attempted to confer with the Debtor's Counsel, Marcus A. Helt, concerning this Motion but have been unable to establish contact with him. Given the pressing time constraints, I am proceeding to file this Motion, assuming it may either be opposed or unopposed.

**CERTIFICATE OF SERVICE**

This is to certify that on December 11, 2024, I caused a true and correct copy of the foregoing document to be served upon the following via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/Jessica Winters

*Counsel for Dawn Crawford*