IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **In re:**<br><br>**WELLPATH HOLDINGS, INC.,** *et al.*<br><br> **Debtors.** | Chapter 11 Case No.: 24-90533 (ARP)<br><br>MOTION TO LIFT AUTOMATIC STAY<br><br>Date: February 18, 2025<br>Time: 2:00 PM<br>Courtroom: 400<br><br>The Honorable Alfredo R. Perez |

**MOTION TO LIFT AUTOMATIC STAY**

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MATTER ON FEBRUARY 18, 2025 AT 2:00 PM, IN COURTROOM 400, 515 RUSK, HOUSTON, TX 7702.**

Deborah Wagner ("Plaintiff") in the *Deborah Wagner v. Wellpath Management, Inc., et al,* Case no.: CU0001661 with the Nevada County Superior Court in and for the State of California ("*Wagner Action*"), hereby moves the Court, pursuant to 11 U.S.C. §362(d), for relief from the Automatic Stay ordered in this proceeding. The *Wagner Action* alleged multiple causes of action against Wellpath Management, Inc. and other defendants under California Government Code Section 12940, California Labor Code Section 1102.5, related to Defendants' harassment,

1

discrimination and retaliation against Plaintiff. Defendant California Forensic Medical Group and Defendant George McKnight terminated Plaintiff from employment as a Registered Nurse on February 14, 2024. To the extent that Wellpoint's defense is covered by insurance, then Plaintiff Wagner should be able to proceed against the available insurance policies. All other Defendants, including Defendant CFMG, Defendant McKnight, Defendant Walsh and Defendant Nevada County should be prepared to respond to the complaint and to participate in anticipated discovery in this matter since the automatic stay does not apply to non-debtor parties. .

### A. Summary of the Wagner Action

The *Wagner v. Wellpoint* action arises out of Plaintiff Deborah Wagner's services as a California Registered Nurse who provided care and treatment for the injured and sick inmates of the Wayne Brown Correctional Facility in Nevada County (referred to as "WBCF"). (Wagner Complaint, Ex. 1 to Goodman Decl.). Plaintiff Wagner was first hired by Wellpath Management Inc. (referred to as "Wellpath") and California Forensic Medical Group, Inc. (referred to as "CFMG") in June 2016 to provide nursing services in the Solano County jail. (Ex. 1, ¶13). She cleared a background check and then competently performed her nursing duties in the Solano County facility.

On or about January 1, 2021, Nevada County and CFMG entered into a 3 and a half year contract for CFMG to provide healthcare services to the inmates in the Nevada County jail, in exchange for a payment not to exceed $13,728,168. (Ex. 1, ¶14; see also the CFMG-Nevada County Contract Ex. 2). Nevada County required CFMG to provide a minimum level of medical staffing at WBCF. Nevada County required that CFMG obtain several different insurance policies as a condition of the professional services contract, including Employers' Liability Insurance with limits of no less than $1 million. (Ex. 2, Exhibit C to contract, pg. 89).

In May 2021, Plaintiff Wagner was internally recruited by Wellpath and CFMG to work as a nurse at WBCF. George McKnight was CFMG's supervisor for the medical staff for the County jail. (Ex. 1, ¶15). Defendant McKnight assigned Wagner to serve as nurse primarily responsible for Medication Assisted Treatment (referred to as "MAT") for inmates dependent on

opioids. Nevada County issued a security clearance for Plaintiff to enter the jail to perform her nursing duties. (Ex. 1, ¶16).

Plaintiff Wagner competently performed her duties as an RN at the County jail, but observed numerous instances in which patient safety was compromised. (Ex. 1, ¶17). Plaintiff Wagner complained to her supervisor McKnight that the staff didn't have adequate staffing, tools and/or resources to care for patients at WBCF. (Ex. 1, ¶19). McKnight was openly hostile to Plaintiff's complaints. (Ex. 1, ¶19). Plaintiff escalated her complaints to Wellpath's Human Resources Administrator starting in May 2022. (Ex. 1, ¶21). In retaliation, McKnight then informed Plaintiff she was taking "too many breaks." (Ex. 1, ¶21). Plaintiff reported to McKnight that another co-worker was harassing her because Plaintiff had attempted to stop the co-worker from bullying another employee. McKnight dismissed Plaintiff's complaints. (Ex. 1, ¶22).

Plaintiff also observed and complained about McKnight creating a hostile environment based on sex in which preferred shifts were awarded to staff members who flirted with McKnight. Plaintiff also observed that McKnight ignored violations of safety regulations perpetrated by his favorites. (Ex. 1, ¶22). Plaintiff's complaints to Wellpath's HR department about the hostile environment were ignored. (Ex. 1, ¶23).

By October 2022, Plaintiff was alarmed by the repeated violations of regulations, including the frequent "under-staffing" which compromised patient care. (Ex. 1, ¶24). After Plaintiff was threatened with violence by another nurse, she went to Wellpath's HR Director again since she was concerned about her safety and McKnight had refused to intervene. (Ex. 1, ¶27). At Wellpath's request, Plaintiff provided her voluminous daily logs which documented a pattern of policy and regulatory violations. (Ex. 1, ¶27). Instead of investigating Plaintiff's grievances, Wellpath informed McKnight of the complaints. (Ex. 1, ¶28). McKnight placed Plaintiff on administrative leave in January 2023 and issued a "corrective action" form. (Ex. 1, ¶28). Plaintiff was returned to work after Wellpath investigated McKnight's claims. (Ex. 1, ¶28).

Throughout 2023, Plaintiff repeatedly complained to McKnight, CFMG and Wellpath's counsel about deficient staffing support for the MAT program, in addition to numerous regulatory violations. (Ex. 1, ¶31). From Plaintiff's perspective, the most egregious violations that she reported to Wellpath and CFMG's management about related to the continuous short-staffing at the facility. (Ex. 1, ¶36). Plaintiff's complaints were ignored.

In November 2023, Defendant McKnight refused to accept that Plaintiff was sick when she had to take a few sick days off during the Thanksgiving holiday week. (Ex. 1, ¶ 39). Defendant McKnight insisted that Plaintiff's sick days were unexcused. (Ex. 1, ¶39). Plaintiff informed Wellpath's lawyers about her concerns that a pattern of safety violations at WBCF was compromising patient safety; her concerns were ignored. In February 2024, Plaintiff requested that two corrective action reports issued by McKnight be removed because they were unwarranted. (Ex. 1, ¶48). McKnight then issued a third "corrective action" report in February 2024; but the stated grounds were in conflict with Wellpath's attendance policies. (Ex. 1, ¶49).

On February 14, 2024, Plaintiff reported to work at WBCF but her key card had been deactivated by the Nevada County Sheriff's Office for unknown reasons. (Ex. 1, ¶51). Defendant McKnight informed Plaintiff she was terminated because her security clearance was revoked. (Ex. 1, ¶52). Subsequent to Plaintiff's termination, the National Commission on Correctional Health Care inspected WBCF and purportedly "passed" the facility. (Ex. 1, ¶54). Plaintiff was reported replaced by a lower-cost Licensed Vocational Nurse. (Ex. 1, ¶54).

After filing her administrative claim with the State of California Civil Rights Department and her tort claims with Nevada County, on October 15, 2024, Plaintiff filed her lawsuit in Nevada County Superior Court against Wellpath, CFMG, Nevada County, McKnight and Nevada County Sheriff Captain Mike Walsh, alleging causes of action of 1) hostile work environment based on sex, 2) sex/gender based discrimination, 3) FEHA retaliation, 4) failure to prevent harassment, discrimination and retaliation, 5) wrongful termination in violation of public policy, 6) Labor Code Section 1102.5 (prohibiting retaliation for reporting violations of statute or regulation), 7) aiding and abetting retaliation, 8) negligence and 9) intentional infliction of

4

emotional distress. (Goodman Decl., ¶2; see also Ex. 1, referred to as the *Wagner v. Wellpath Action*).

### B. The Existing Stay in this Court

On November 25, 2024, Defendant CFMG served its Notice of Bankruptcy and Stay of Action in this matter. (See Ex. 3 to Goodman Declaration). CFMG's noticed referenced Wellpath Holdings' chapter 11 bankruptcy filed in this court on November 11, 2024.

### C. Status of the Wagner Action in the California Superior Court, County of Nevada

All Defendants have been served with the Wagner Complaint. (Goodman Decl. ¶6). Only Nevada County and Captain Walsh have indicated an intent to proceed to defend this matter. (Goodman Decl. ¶6). As of the date of filing this motion, no party has appeared in the Wagner case. No discovery has been conducted. (Goodman Decl. ¶6).

### D. Applicable Law

#### 1. Automatic Stays Under §362(a) Do Not Apply to Non-Debtor Defendants Absent Special Circumstances

11 U.S.C. § 362(a)(1), which provides for an automatic stay "applicable to all entities, of . . . the continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . ." However, the Fifth Circuit Court of Appeal has interpreted the "all entities" portion of the statute to mean "all entities proceeding against the debtor," and not non-debtor co-defendants. (*Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 544 (1983)). The automatic stay in this matter does not extend past Wellpath Management as a subsidiary of Debtor Wellpath Holdings.

This ruling has been consistently followed to the present time. (See *Arnold v. Garlock,* 278 F.3d 426, 436 (5th Cir. 2001)( holding that "Section 362 is rarely . . . a valid basis on which to stay actions against non-debtors."); *McConathy v. Foundation Energy Fund*, 111 F.4th 574, 582 (5th Cir. 2024)(finding that "[t]t is clearly established that the automatic stay does not apply

5

to non-bankrupt co-defendants of a debtor, 'even if they are in a similar legal or factual nexus with the debtor.'" (internal citations omitted). "'The well-established rule is that an automatic stay of judicial proceedings against one defendant does not apply to proceedings against co-defendants.'" *Id.* (internal citations omitted).)

Here, Wellpath's role in providing administrative support to CFMG, McKnight and Plaintiff is the reason it was named as a Defendant. The mere "presence of identical allegations against the debtor and non-debtor defendants are an insufficient ground to extend the stay to the nondebtors." (*National Oilwell Varco, L.P. v. Mud King Products*, 2013 WL 1948766 at *2 (S.D. Tex. 2013); see also *In Re Divine Ripe, LLC*, 538 B.R. at 312). Moreover, courts have declined to extend the automatic stay to non-debtor defendants when the liability of the non-debtor defendant is "independent of the debtor's liability."( *In Re Meyerland Company,* 82 B.R. 831, 833 (S.D. Tex. 1988)).

A special or unusual circumstance that would extend the automatic stay to a non-debtor defendant is when there is "an actual, as opposed to an alleged or potential identity of interests, such that a judgment against the non-bankrupt party would in fact be a judgment against the bankrupt party." (*In Re: Divine Ripe, LLC*, 538 B.R. 300, 312 (S.D. Tex. 2015)). Under the circumstances, Plaintiff could readily obtain judgment against any of the non-debtor defendants without resulting in a judgment against Wellpath.

The burden of proof to show that "unusual circumstances" exist warranting extension of the stay to a non-debtor is on the party seeking to extend the stay. (*National Oilwell Varco*, 2013 WL 1948766 at *3). Here, CFMG will not be able to meet this burden. In this instance, Wellpath Management is identified as part of the numerous entities identified as under the umbrella of Wellpath Holdings, who is seeking Chapter 11 protection. None of the other named defendants are expressly protected by the automatic stay provisions under Section 362.

### 2. Automatic Stays Under §362(a) Can Be Lifted for Cause

Under 11 U.S.C. §362(d)(1), the court may grant relief and lift a stay for "cause". Cause is not defined in the statute. However, courts have broad discretion to define cause and lift a stay.

See *Herlihy v. DBMP LLC*, No. 3:24-CV-00558-KDB, 2024 U.S. Dist. LEXIS 195633, at *4 (W.D.N.C. Oct. 28, 2024).  Here, it is respectfully submitted that good cause exists to lift the stay.

The courts have adopted a list of factors to be considered in deciding if there is "cause" to lift a stay for a particular case. The *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) decision enumerated the following twelve factors to consider:

1) Granting relief will allow full adjudication of the moving party's claims in the pending courts, ensuring a complete resolution of liability and damages;
2) The claims are limited to insurance proceeds, which are non-estate assets and do not affect the administration of the bankruptcy case;
3) Whether the other proceeding involves debtor as a fiduciary;
4) Whether a specialized tribunal has been established to hear the particular cause of action;
5) Whether the debtor's insurance carrier is expected to provide a defense and indemnify against any judgment, minimizing any burden on the estate;
6) Whether the action primarily involves third parties;
7) Whether litigation in the other forum would prejudice the interests of other creditors;
8) Whether the judgment claim arising from the other action is subject to equitable subordination;
9) Whether the moving party's success would result in a judicial lien avoidable by the debtor;
10) If it would serve the interests of judicial economy and the expeditious and economical resolution of litigation;
11) Whether the proceedings have progressed to the point that parties are ready for trial; and
12) Impact of the stay on the parties and the balance of harm.

E. **Application of "Cause" Factors For Lifting a Stay Favors Plaintiff**

    1.    **The Factors Considered**

In this instance, only one Defendant, Wellpath Management, appears to be within the umbrella of Wellpath Holding's Chapter 11 filing. Plaintiff was an employee of CFMG. McKnight was an employee of CFMG. Nevada County's professional service contract to provide medical services at WBCF was with CFMG. Under the express terms of the CFMG-Nevada County's contract, employer's liability insurance was required with a minimum of a $1,000,000 limit. (Ex. 2). Assuming that CFMG complied with the terms of its professional services contract, there should be an employer's liability coverage to defend one or more of the claims against CFMG.

> **Factor 1: Granting relief will allow full adjudication of the moving party's claims in the pending courts, ensuring a complete resolution of liability and damages.**

Plaintiff was wrongfully terminated from her employment with CFMG after spending several years attempting to redress safety issues at WBCF. Her insistence that patients' safety needed to be prioritized is what led to her termination. Plaintiff's supervisor, McKnight, has individual liability for his harassment of Plaintiff. Judicial economy is promoted by allowing this matter to proceed against the non-debtor Defendants. Granting relief from this stay will allow Plaintiff to litigate her case in Nevada County Superior Court.

> **Factor 2: The claims are limited to insurance proceeds, which are non-estate assets and do not affect the administration of the bankruptcy case.**

Since Wellpath's Chapter 11 filing occurred before Plaintiff was allowed to "discover" the extent of insurance policies available to defend defendants and/or indemnify Plaintiff for her losses, it is premature to draw the conclusion that the claims are limited to insurance proceeds for Wellpath. But this factor is not relevant to the court's consideration allowing this matter to proceed against non-debtor Defendants.

8

**Factor 3: Whether the other proceeding involves debtor as a fiduciary.**

Wellpath provided administrative support services for CFMG and CFMG's employees, including Plaintiff Wagner. Wellpath is not considered a "fiduciary" of Plaintiff in this wrongful termination case.

**Factor 4: Whether a specialized tribunal has been established to hear the particular cause of action**

A specialized tribunal has not been established to adjudicate Plaintiff's wrongful termination claim.

**Factor 5: Whether the debtor's insurance carrier is expected to provide a defense and indemnify against any judgment, minimizing any burden on the estate.**

As indicated herein, CFMG was obligated to have Employer's Liability insurance to comply with its professional services contract with Nevada County. At this point, it is unknown whether this insurance will cover the conduct of Wellpath in performing administrative services for CFMG and its employees.

**Factor 6: Whether the action primarily involves third parties.**

This case primarily concerns third party defendants arising out of Plaintiff's employment relationship with Defendant CFMG, her subordinate position relating to her supervisor George McKnight and Nevada County's control of access into the WBCF facility. The state court case be readily litigated without requiring Wellpath to participate.

**Factor 7: Whether litigation in the other forum would prejudice the interests of other creditors.**

No other creditors of Wellpath should be prejudiced if Plaintiff Wagner is permitted to pursue her state court case against the non-debtor Defendants.

**Factor 8: Whether the judgment claim arising from the other action is subject to equitable subordination.**

While this Wellpath bankruptcy was filed before any discovery was conducted reflecting on Wellpath's relationship with CFMG, this does appear to be a case where the principals of equitable subordination would apply.

**Factor 9: Whether the moving party's success would result in a judicial lien avoidable by the debtor**.

Plaintiff would be able to obtain judgments against the non-debtor Defendants without a judicial lien being asserted against debtor.

**Factor 10: If it would serve the interests of judicial economy and the expeditious and economical resolution of litigation.**

Plaintiff has a meritorious retaliation, discrimination and harassment case arising out of her years of providing nursing services for CFMG at the Nevada County jail. The interests of judicial economy militate in lifting the stay to allow Plaintiff to litigate her claims against the non-debtor Defendants.

**Factor 11: Whether the proceedings have progressed to the point that parties are ready for trial**

This factor is not relevant since no discovery has been conducted into Plaintiff's claims or any of the defendants' defenses.

**Factor 12: Impact of the stay on the parties and the balance of harm.**

The impact of this stay is extremely prejudicial to Plaintiff since she will effectively have the adjudication of her claims significantly delayed. Since there isn't any question that Nevada County and Captain Walsh should not be able to escape liability because of Wellpath's bankruptcy, if the automatic stay isn't lifted there will be a significant delay in conducting any litigation against non-debtor defendants. Moreover, CFMG shouldn't be able to get a "free pass" for fostering illegal employment practices simply because Wellpath is reorganizing. Finally, McKnight's role as a harasser shouldn't be discarded simply because Wellpath seeks Chapter 11 protection. Delay significantly harms the Plaintiff here. The likelihood that evidence will be lost, including witnesses' recollections dimmed over the passage of time or unlawful employment practices by CFMG continuing unabated at WBCF is very real. In a case where the medical provider placed profits over people, there is an urgent need to move the civil case along despite Wellpath's bankruptcy.

Plaintiff is significantly prejudiced if this bankruptcy stay essentially shuts down litigation in its entirety.  She lost her job in February 2024 and has been unable to find employment.  She was highly traumatized by the environment at WBCF and is unable to obtain closure since this litigation ground to a complete standstill before it even was able to gain any traction.

In recognition of this court's requirements to "meet and confer" with the parties, Plaintiff's counsel has "met and conferred" with parties through their counsel.  Nevada County and Walsh are prepared to vigorously defend the case now despite the bankruptcy and may even have filed a demurrer in response to the complaint.  (Goodman Decl. ¶6).  Counsel for CFMG has responded to the inquiry by Plaintiff's counsel that the bankruptcy broadly encompasses all related parties, including McKnight.  (Ex. 5, Goodman Decl. ¶8).

### F. Conclusion

The automatic stay afforded by Section 362 should not apply to non-debtors or even to a debtor (such as Wellpath) to the extent there is insurance coverage available to defend and/or indemnify the parties for Plaintiff's claim. Nevada County and Captain Walsh have already acted as if the bankruptcy stay doesn't apply to them.  CFMG and McKnight should be required to appear and defend this matter since they are both non-debtors.  To the extent that Wellpath Management is a subsidiary of Wellpath Holdings (the disclosed debtor), Plaintiff should be able to proceed up to the limits of available Employers' Liability Insurance as required by the Nevada County professional services contract.   It is respectfully submitted that the motion for leave from the automatic stay be granted.

Dated: December 24, 2024                              Respectfully Submitted,

                                                                    **GOODMAN LAW CORPORATION**

By: _____
            Karen M. Goodman, Counsel *Pro Hac Vice* for Plaintiff Deborah K. Wagner

11

## CERTIFICATE OF CONFERENCE

(Bankruptcy Local Rule 4001-1)

      I hereby certify that I have attempted to confer with the Debtor's Counsel, Mark E. Stamelos, Allison Saunders, and Caleb Lee, by email on December 20, 2024. Ms. Saunders responded to my email, stating that she understood this Court's November 12, 2024 Order Enforcing the Automatic Stay to apply to all current and former employees, and affiliated companies of the Debtors. We were unable to reach an agreement on the requested relief.

Dated: December 24, 2024

                                                Karen M. Goodman, Counsel *Pro Hac Vice* for Plaintiff Deborah K. Wagner

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 12, 2024, I caused a true and correct copy of the foregoing Motion to Lift Stay and Declaration of Karen M. Goodman to be served upon via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas upon all parties who have entered an appearance in this case and are registered to receive electronic service.

Dated: December 24, 2024

                                                           Karen M. Goodman, Counsel *Pro Hac Vice* for Plaintiff Deborah K. Wagner