# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** § | JOINTLY ADMINISTERED | |
| WELLPATH HOLDINGS, INC., et al., § | **Case No. 24-90533** | |
| § | CHAPTER 11 | |
| **Debtors.** § | | |

___

| | | |
|---|---|---|
| § | | |
| HASNA ALAOUI AKA HASNA JALAL § | | |
| § | | |
| **Movant,** § | | |
| § | | |
| § | | |
| v. § | HON. ALFREDO R. PÉREZ | |
| § | | |
| § | | |
| WELLPATH HOLDINGS, INC., et al., § | | |
| § | | |
| § | | |
| **Respondents** § | | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW THE PENDING PERSONAL INJURY CLAIM AGAINST DEBTOR TO PROCEED

___

This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.

Represented parties should act through their attorney.

There will be a hearing on this matter via video conference on February 18, 2025, at 2:00PM, via Video Conference: https://meet.goto.com/JudgePerez or telephonic participation: 1-832-917-1510/Conference room: 282694

--

1.     Movant/Plaintiff HASNA ALAOUI AKA HASNA JALAL (hereinafter referred to as "MOVANT" or "PLAINTIFF"), hereby submits this Motion for Relief from the Automatic Stay to allow the pending personal injury claim against WELLPATH HOLDINGS, INC., et al. (hereinafter referred to as "DEBTOR" or "WELLPATH") to proceed, and states as follows:

## INTRODUCTION

2.     PLAINTIFF respectfully requests that this Court issue an order granting relief under 11 U.S.C. § 362(d) and the Amended Interim Order Enforcing the Automatic Stay [ECF#69], lifting the stay on PLAINTIFF'S personal injury claim against WELLPATH brought under 42 U.S.C. § 1983, among other claims.  The litigation, currently pending in the Superior Court of New Jersey, Hudson County, names DEBTOR and several non-debtors as defendants.  While the automatic stay provides essential protection for debtors, it is not intended to indefinitely delay the resolution of claims, particularly those that are unrelated to the administration of the bankruptcy estate and pose little risk to its assets.

3.     As discussed further below, PLAINTIFF has demonstrated sufficient cause for lifting the stay.  Allowing the pre-petition lawsuit to proceed will not compromise the bankruptcy estate or interfere with its administration.  Rather, it will enable PLAINTIFF to seek justice and pursue damages for the substantial harm she suffered.

4.     By granting this Motion, the Court will permit the case to continue in its original forum, the Superior Court of New Jersey, which is well-suited to handle the claims at issue.  Furthermore, the equities in this matter clearly favor PLAINTIFF, as additional delays would severely prejudice her ability to secure accountability and just compensation.

## FACTUAL AND PROCEDURAL BACKGROUND

5. On or about August 12, 2022, at approximately 9:00AM, PLAINTIFF was in the vicinity of NJ Division of Child Protection and Permanency located at 690 Broadway, Bayonne, NJ 07002, when she was arrested by several members of the BAYONNE POLICE DEPARTMENT (hereinafter referred to as "BPD")[1] including OFFICERS PERLA ESTEVEZ and JOHN AND JANE DOE ONE THROUGH FIVE.

6. During her arrest and detention, PERLA ESTEVEZ and JOHN AND JANE DOE ONE THROUGH FIVE used excessive force upon PLAINTIFF, including placing her in excessively tight handcuffs.

7. Following PLAINTIFF'S arrest, she was transported to the HUDSON COUNTY CORRECTIONAL CENTER ("HCCC"), a correctional facility situated in Hudson County, New Jersey, and established by the Hudson County government (hereinafter referred to as "COUNTY").

8. DEBTOR was a medical service provider contracted by COUNTY to deliver healthcare services at HCCC to detainees, including PLAINTIFF.[2]

9. JOHN AND JANE DOE SIX THROUGH THIRTEEN were correction's officers, detectives, supervisors, policy makers, officials, employees, medical personnel, staff, and/or agents employed by COUNTY, HCCC, and/or DEBTOR all of whom were assigned to work at HCCC.[3]

10. During her detention at HCCC, PLAINTIFF suffered a serious medical event(s) which included her bleeding and vomiting blood, hematemesis, seizing, body tremors, left-sided

---

[1] BPD is an agency of the CITY OF BAYONNE (hereinafter referred to as "CITY").

[2] HCCC and DEBTOR act under the power and authority of COUNTY.

[3] At this time, the identities and employers of JOHN AND JANE DOE SIX THROUGH THIRTEEN is unknown to PLAINTIFF. Based on information and belief, this information is known to DEBTOR.

facial droop, bi-lateral leg weakness, sensory loss difficulty/inability speaking, and altered mental status.

11. PLAINTIFF was denied appropriate care by COUNTY, HCCC, and/or DEBTOR by and through JOHN AND JANE DOE SIX THROUGH THIRTEEN.

12. While PLAINTIFF was amidst her medical episode(s), COUNTY/HCCC/WELLPATH employees, agents and/or staff, and other relevant personnel, including JOHN AND JANE DOE SIX THROUGH THIRTEEN, repeatedly assaulted PLAINTIFF by among other things, and while acting in concert, grabbing, striking and placing parts of their body on top of PLAINTIFF, and restraining her in tight handcuffs including while she was seizing.

13. JOHN AND JANE DOE SIX THROUGH THIRTEEN, engaged in unconstitutional conduct by denying her medical care, ignoring her medical requests, using excessive force upon her by placing her in tight handcuffs, and assaulting her during her medical event(s), causing significant physical pain and injury.

14. COUNTY, HCCC, and DEBTOR failed to establish and implement adequate policies and procedures to address the needs of individuals like PLAINTIFF, resulting in her injuries. These deficiencies included the failure to implement effective screening processes for detainees during initial detention, neglect in recognizing and addressing detainees' medical needs, inappropriate responses to emergent medical conditions, and insufficient training of staff, employees, and agents to prevent the improper use of physical restraint on individuals experiencing seizures.

15. As a result, PLAINTIFF suffered physical and emotional injuries, including partial and temporary paralysis, loss of motor function, inability to move portions of her body, pain, swelling, bruising, and pain.

16. On August 13, 2024, PLAINTIFF filed a complaint in the Superior Court of New Jersey, Hudson County against CITY; BPD; COUNTY; HCCC; WELLPATH; PERLA ESTEVEZ; and JOHN AND JANE DOES ONE THROUGH THIRTEEN, under index number HUD-L-003034-24 ("The Lawsuit") seeking a jury trial. Annexed hereto and made a part hereof as **Exhibit "A"** is a copy of PLAINTIFF'S Summons and Verified Complaint.

17. On October 17, 2024, DEBTOR filed a motion to dismiss, contending that PLAINTIFF failed to state a claim upon which relief can be granted. Upon receipt of DEBTOR'S motion, PLAINTIFF drafted a response which included a cross motion to Amend PLAINTIFF'S Summons and Verified Complaint to address any perceived deficiencies and further clarify the allegations. Annexed hereto and made a part hereof as **Exhibit "B"** is a copy of PLAINTIFF Supplemental Summons and Verified First Amended Complaint.[4]

18. On November 12, 2024, the Court entered an "Amended Interim Order Enforcing the Automatic Stay." The Order provides that any lawsuits filed against DEBTOR as of the date of the bankruptcy petition shall be "stayed in their entirety, including the Plaintiffs' claims against the Non-Debtor Defendants, on an interim basis pursuant to section 362 of the Bankruptcy Code." See [ECF#69].

19. PLAINTIFF now moves the Court for relief from the Automatic Stay.

---

[4] In light of the Amended Interim Order Enforcing the Automatic Stay the Supplemental Summons and Verified First Amended Complaint was not filed.

**ARGUMENT AND AUTHORITIES**

    I.    **Relief Should be Granted For Plaintiff For Cause**

    20.    "When a bankruptcy petition is filed, most judicial actions against the debtor commenced before the filing of the petition are automatically stayed". See 11 U.S.C. §362(a)(1). A stay, however, is allowed to be lifted "for cause", per Section 362(d). As the Code is silent on what constitutes cause, courts have broad discretion in determining what constitutes sufficient cause in granting relief from stay. See In re Tucson Estates, 912 F.2d 1162 (9th Cir.1990); In re Tex. State Optical, Inc., (188 B.R. 552, 556 (Bankr. E.D. Tex. 1995) (noting "for cause" is a purposely "broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations.")

    21.    While the Bankruptcy Code does not explicitly define "cause," bankruptcy courts, including in this district, have interpreted the term through a three-prong test used to assess whether a stay should be lifted. See In the Matter of Rexene Prods. Co., 141 B.R. 574 (Bankr. D. Del. 1992); In re Bock Laundry Machine Co., 37 BR 564, (Bankr N D Ohio 1984); see also In re Kao, No. 15–31193–H3–13, 2015 WL 9412744, at *2 (Bankr. S.D. Tex., December 21, 2015). The three-prong test as involves considering:

    i)    Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor;

    ii)    Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the suit; and

    iii)    Whether the creditor has a probability of success on the merits of their case.

In the Matter of Rexene Prods. Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992).

A. **The Hardship to Plaintiff by Maintaining the Stay Outweighs the Hardship to the Debtor**

22. The balance of hardships strongly supports lifting the automatic stay, as PLAINTIFF faces significant prejudice from further delays, while the potential impact on DEBTOR is minimal and mitigated by likely insurance coverage.

23. Courts generally evaluate whether the hardship caused to the non-bankrupt party by maintaining the stay outweighs the hardship to the debtor. If the non-bankrupt party's hardship is greater, courts are more likely to lift the stay. See In re Marvin Johnson's Auto Service, Inc., 192 B.R. 1008 (Bankr. N.D. Ala. 1996). Courts have often allowed personal injury claims to proceed, where the interests of creditors (including the plaintiff) in having the litigation advance outweigh the debtor's interest in maintaining the stay. See In re Marvin Johnson's Auto Service, Inc., 192 B.R. 1008 (Bankr. N.D. Ala. 1996); In re Rexene Products Co., 141 B.R. 574 (Bankr. D. Del. 1992) (finding Plaintiff's right to pursue their personal injury claim was paramount, and the potential impact on the debtor's bankruptcy process was insufficient to warrant the stay's continuation). Further, when the debtor has insurance to cover the potential liabilities arising from the lawsuit, the risk to the bankruptcy estate is minimized, making it more likely that the stay will be lifted. See In re 234-6 West 22nd Street Corp., 214 B.R. 751 (Bankr. S.D.N.Y. 1997) (the court, lifting the stay, noted that the debtor's insurance coverage mitigated the risk to the bankruptcy estate, and that the personal injury action was relatively straightforward and already initiated, making it more efficient to allow it to continue outside the bankruptcy proceedings).

a. **The Stay Prevents the Plaintiff from Litigating their Claim**

24. In the present case, PLAINTIFF is a party to an ongoing personal injury action in New Jersey, in which DEBTOR is one of several defendants. PLAINTIFF initiated the action prior to DEBTOR'S bankruptcy filing, a fact that supports allowing the case to proceed. The

continuation of the stay would significantly obstruct PLAINTIFF's ability to effectively prosecute her case and secure a timely resolution. The stay prevents PLAINTIFF from engaging in necessary discovery, filing motions, or identifying all responsible parties, particularly with impending federal filing deadlines approaching. This delay not only hinders efforts to apportion liability among the Defendants but also risks excluding key parties from the action. Additionally, certain defendants in the Lawsuit, such as CITY/BPD, have not yet responded to PLAINTIFF'S Summons and Complaint, and the stay has effectively blocked PLAINTIFF from filing motions for default or seeking other remedies from the court. Without relief, PLAINTIFF faces unjust accusations of failing to prosecute her case and substantial prejudice to her claims. Given these circumstances, it is essential for discovery and case progression to resume without further delay.

    b. **<u>Failure to lift the Stay Risks the Loss of Evidence</u>**

    25.    Further, prolonged delays pose a significant risk of irreparable harm to PLAINTIFF's lawsuit by jeopardizing the preservation of critical evidence, which may deteriorate, be lost, or become inaccessible, and increasing the likelihood that witnesses' memories will fade or that they may become unavailable altogether. In <u>In re Turner</u>, 55 B.R. 498 (Bankr. N.D. Ohio 1985), the court recognized these risks and lifted the stay to prevent the loss of evidence and fading recollections of witnesses. Similarly, in PLAINTIFF's case, delays could result in defendants relocating or changing jobs, complicating their identification and participation, and in witnesses forgetting key events.

    26.    Granting relief from the stay will ensure that the case can proceed while evidence and testimony remain fresh, thereby preserving the integrity of the judicial process. Promptly proceeding with the litigation ensures that PLAINTIFF has the opportunity to fully and fairly

present her case. These considerations strongly support lifting the stay to prevent irreparable harm to PLAINTIFF and to enable the litigation to move forward without further disruption.

27. In contrast, the hardships to DEBTOR from allowing the case to proceed are minimal, particularly in light of the likely availability of insurance coverage and the relatively straightforward nature of the personal injury action.

28. The balance of hardships tips in favor of lifting the stay. PLAINTIFF'S need to proceed with discovery and adjudication of their personal injury claim outweighs any potential hardship to DEBTOR. Additionally, the presence of likely insurance coverage (discussed *infra*) reduces the risk to the bankruptcy estate. Therefore, the stay should be lifted to allow the personal injury litigation to continue. See In re Rexene Products Co., 141 B.R. 574 (Bankr. D. Del. 1992) (lifting the stay where litigation cannot be indefinitely postponed, and where the creditors' interest in resolving their claim are compelling).

### B. Lifting The Stay Will Not Cause Significant Prejudice to Debtor

> *"While the Bankruptcy Code provides for the automatic stay of litigation, this is not a carte blanche to delay justice indefinitely, particularly when it comes to the pressing needs of the claimants, and when the estate's resources and efforts are not significantly harmed by allowing the lawsuits to proceed."*
>
> In re Purdue Pharma L.P., 635 B.R. 26 (Bankr. S.D.N.Y. 2021)

29. The Court should find there will be no significant prejudice to DEBTOR in lifting the stay. Courts are generally more inclined to lift the stay in bankruptcy proceedings when doing so will not cause significant prejudice to the debtor, particularly when the debtor has substantial resources as is the case here. In In re Motors Liquidation Company, 447 B.R. 198 (Bankr. S.D.N.Y. 2011), the court found that lifting the stay would not prejudice the debtor's bankruptcy estate given its significant assets, thus allowing the litigation to proceed without harm to the debtor.

30. Additionally, courts consider the availability of the debtor's insurance coverage in determining whether the stay should be lifted. See In re City of Detroit, 524 B.R. 147 (Bankr. E.D. Mich. 2014) (finding continuing litigation did not disrupt the bankruptcy process due to insurance coverage). Taken together, these principles suggest that when the debtor has significant assets or insurance, and when the claimant's need for litigation is pressing, the stay should be lifted to allow the litigation to continue.

31. Here, there is a strong likelihood that DEBTOR has insurance coverage for personal injury claims, which would mitigate any significant impact on the bankruptcy estate.[5] Therefore, even if the action continues, the estate is not at risk of significant depletion, as the insurance would cover potential liabilities. According to established Fifth Circuit precedent, these insurance proceeds are classified as non-estate assets and therefore fall outside the scope of property protected by the automatic stay. See In re Edgeworth, 993 F.2d 51 (5th Cir. 1993).

32. Assuming, arguendo, the insurance proceeds could be classified otherwise, it will not greatly prejudice DEBTOR as the litigation will primarily focus on establishing DEBTOR'S liability and quantifying any covered damages, without reducing the assets of DEBTOR'S bankruptcy estate available to other creditors. "Numerous courts have permitted the stay to be lifted when the movant is simply seeking to establish the fact and amount of the debtor's liability and…the movant has stipulated that any recovery will be sought from the debtor's insurer or a codefendant." See In re Peterson, 116 B.R. 247 (D. Colorado 1990); see also May v. Wheeler Group, Inc. (In re Wheeler Group, Inc.), 75 B.R. 200, 200 (S.D. Ohio 1987) (most expeditious way to liquidate claim was to permit foreign action to proceed to conclusion); Elegant Concepts, Ltd.

---

[5] Counsel at McDermott Will & Emery LLP concedes DEBTOR had insurance but to date has not provided your Affirmant the policy, declaration sheet or terms. Other creditors in this action have provided proof of insurance coverage that appear to provide coverage for these types of incidents, including coverage for defense costs and fees. See, e.g., [ECF#181]; [ECF#245]; [ECF#382].

v. Kristiansen (In re Elegant Concepts, Ltd.), 61 B.R. 723, 729 (Bankr. E.D.N.Y. 1986); In the Matter of Nkongho, 59 B.R. 85, 86 (Bankr. D. N.J. 1986) (risk that state judgment may exceed insurance coverage insufficient to justify stay).

33. Additionally, The Bankruptcy Code's automatic stay is not intended to delay justice indefinitely, particularly when the claimants' need for resolution is urgent and the debtor's resources are not significantly harmed by allowing the litigation to proceed. As held in in In re Purdue Pharma L.P., 635 B.R. 26 (Bankr. S.D.N.Y. 2021), courts recognize that while the automatic stay serves to protect the debtor, it should not unduly prevent claimants from seeking timely justice when the estate's resources remain unaffected.

34. Taken together and applied to this matter, the stay would not significantly prejudice DEBTOR, which has vast resources and likely insurance proceeds and PLAINTIFF's claim will serve to determine DEBTOR'S liability and the amount of any covered damages without diminishing DEBTOR'S bankruptcy estate assets available to other creditors.

### C. **Plaintiff Has a Reasonable Probability of Success on the Merits**

> *"Only strong defenses to state court proceedings can prevent a bankruptcy court from granting relief from the stay in cases…"*
>
> Fonseca v. Philadelphia Housing Authority (In re Fonseca), 110 B.R. 191, 196 (Bankr. E.D.Pa. 1990)

35. To lift an automatic stay, a plaintiff need only demonstrate a *reasonable* likelihood of success on the merits of the underlying claim. Even a slight probability of success on the merits may be sufficient to support lifting the automatic stay. See In re The SCO Group, Inc., 395 B.R. 852, 859 (Bankr. D. Del. 2007); In re Peterson, 116 B.R. 247 (D. Colo. 1990) (Courts do not require substantial proof but demand a non-frivolous showing that the claim has merit).

36. The seriousness of the plaintiff's injuries is a significant factor, as courts recognize that severe injuries may outweigh potential harm to the bankruptcy estate. <u>In re Chateaugay Corp.</u>, 167 B.R. 776 (Bankr. S.D.N.Y. 1994).

37. The allegations in the Lawsuit articulate specific instances of constitutional violations against DEBTOR, who was contracted to provide medical and psychiatric care to prisoners and detainees at HCCC pursuant to a contract with COUNTY.  PLAINTIFF'S lawsuit asserts state, federal, including under 42 U.S.C. § 1983, claims alleging significant constitutional violations including medical neglect and excessive force, during her detention at HCCC. PLAINTIFF claims, assert, among other things, that the policies and practices of DEBTOR – including failing to implement effective screening processes for detainees at the time of their initial detention, neglecting to recognize detainee's medical needs, responding inappropriately to detainees' emergent medical conditions, and not adequately training their staff, employees, and agents to avoid inappropriate physical restraint of individuals experiencing seizures – along with the actions and inactions of agents and employees of COUNTY, HCCC, and DEBTOR, led to her injuries.  <u>See</u> <u>Exhibits A and Exhibits B</u>.

38. PLAINTIFF'S injuries, both severe and demonstrable, clearly establish the seriousness of her claims.  PLAINTIFF'S injuries include her bleeding and vomiting blood, hematemesis, seizing, body tremors, left-sided facial droop, bi-lateral leg weakness, sensory loss difficulty/inability speaking, and altered mental status, partial and temporary paralysis, loss of motor function, inability to move portions of her body, pain, swelling, bruising, and pain, and was confined to a wheelchair for a significant period of time.  Her injuries, and what led to them, are well-documented and supported by evidence, including detailed accounts of her detention, custody, and subsequent medical attention.

39. Therefore, the claims against DEBTOR are well-founded and not speculative. PLAINTIFF'S claims highlight violations of constitutionally protected rights. Permitting PLAINTIFF'S Lawsuit to proceed will enable a full adjudication of these claims without causing prejudice to DEBTOR or the bankruptcy estate. Consequently, the strong likelihood of success on the merits further justifies lifting the automatic stay to allow the continuation of the Lawsuit.

**II.   The Court Should Allow the Litigation to Continue in Superior Court.**

40. PLAINTIFF'S lawsuit, currently pending in the Superior Court of New Jersey, is the proper venue for adjudicating the claims against DEBTOR. The claims under 42 U.S.C. § 1983 involve complex legal and factual issues, including constitutional violations and the practices at Hudson County Correctional Facility. Additionally, state law claims necessitate the application of New Jersey law, which further underscores the Superior Court's suitability as the forum for resolving these matters. Given the court's existing familiarity with the case and its jurisdiction over the involved municipal and county entities, including local law enforcement, the Superior Court is well-positioned to effectively manage this litigation.

41. The Supreme Court in Stern v. Marshall, 564 U.S. 462 (2011), reaffirmed that bankruptcy courts do not have jurisdiction to adjudicate matters that are not directly related to the bankruptcy proceeding. While bankruptcy courts are granted broad authority under 28 U.S.C. §§ 1334 and 157(b)(1), Congress explicitly limited their jurisdiction over personal injury and wrongful death claims. Under 28 U.S.C. §§ 157(b)(2)(B), (b)(2)(O), and (b)(5), such claims must be determined by a district court or state court, even when the claims involve a debtor in bankruptcy. See In re Plumberex Specialty Products, Inc., 311 B.R. 551, 556-57. (Bankr. C.D. Cal. 2004) (It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties

to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

42. Allowing the lawsuit to proceed in the Superior Court promotes judicial efficiency by avoiding unnecessary duplication of efforts and preserving valuable judicial resources. Restarting the case in Bankruptcy Court, which lacks jurisdiction to adjudicate personal injury claims, would result in wasted time and unnecessary delays in resolving PLAINTIFF'S claims. As emphasized in In re Xenon Anesthesia of Texas, PLLC, 510 B.R. 106 (Bankr. S.D. Tex. 2014), courts consider the familiarity of federal and state courts with the subject matter as a key factor in deciding whether to lift the automatic stay. Here, the Superior Court has been managing the case, is well-acquainted with the claims, and is the most efficient venue for resolution.

43. Additionally, as highlighted in In re Martha Wash. Hosp., 157 B.R. 392 (N.D. Ill. 1993), it is often preferable to allow proceedings to continue in their original forum, especially when doing so does not prejudice the bankruptcy estate. Keeping the case in the Superior Court will expedite the resolution of PLAINTIFF'S claims while enabling the Bankruptcy Court to focus on matters within its jurisdiction, ensuring the efficient allocation of judicial resources.

## CONCLUSION

44. PLAINTIFF in this case has satisfied the legal standards for relief from the automatic stay, both under statute and case law. PLAINTIFF has shown the hardship she will face by the persistence of the stay far outweighs the hardship DEBTOR will face. PLAINTIFF has also shown that if the Court grants this motion and the stay is lifted, DEBTOR will face little to no prejudice, due to their vast resources, the existence of an insurance policy to cover personal injury claims, and the relatively straightforward nature of the 42 U.S.C. § 1983 action.

45.     PLAINTIFF has also more than satisfied the minimal threshold for a reasonable probability of success on the merits, a crucial factor in arriving at a decision to lift an automatic stay.  Allowing the litigation to proceed would be in the interest of justice and ensure that claims are resolved in the proper forum.  A lift of the stay will also guard against a potential loss of evidence or witnesses due to the passage of time.

46.     It is in consideration of these factors that PLAINTIFF respectfully requests the Court grant PLAINTIFF'S Motion For Relief From The Automatic Stay To Allow The Pending Personal Injury Claim Against DEBTOR To Proceed.


DATED: January 4, 2025

*/s/ JPDeV/*

JOHN PAUL DEVERNA, ESQ PC
John Paul DeVerna, Esq.
Attorney for PLAINTIFF
111 John Street, Suite 1850
New York, New York 10038
T- (212) 321-0025
F- (212) 321-0024

## CERTIFICATE OF CONFERENCE
### (Bankruptcy Local Rule 4001-1)

This is to certify that I attempted to confer with DEBTOR'S Counsel, Marcus A. Helt, concerning this Motion on December 30, 2024, at 6:00PM (EST). On January 2, 2025, at 1:00PM (EST), I conferred with associate counsel Landon W. Foody and discussed PLAINTIFF'S contemplated motion but we were unable to resolve the matter.

## CERTIFICATE OF SERVICE

This is to certify that on January 4, 2025, I caused a true and correct copy of the foregoing document to be served upon the following via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ John Paul DeVerna, Esq

Counsel for Hasna Alaoui aka Hasna Jalal