IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) ) ) | Chapter: 11 |
| WELLPATH HOLDINGS, INC., et al. , | ) ) | |
| Debtor. | ) ) ) | Lead Case No. 24-90533 (ARP) Case No. 24-90563 |

## CLAIMANT MARZAN WILLIAMS' MOTION FOR RELIEF FROM AUTOMATIC STAY AS TO NON-DEBTOR DEFENDANTS AND TO ALLOW INSURANCE COVERED LIABILITY ACTION TO PROCEED

THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF THIS IS GRANTED, THE MOVANT MAY ACT OUTSIDE THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

THERE WILL BE A HEARING ON THIS MATTER ON FEBRUARY 18, 2025 AT 2:00 PM IN COURTROOM 400, 515 RUSK, HOUSTON, TX, 77002, OR VIA VIDEO CONFERENCE AT HTTPS://MEET.GOTO.COM/JUDGEPEREZ OR DIAL-IN TELEPHONE NO: 832-917-1510; CONFERENCE CODE: 282694.

Movant, MARZAN WILLIAMS ("Mr. Williams"), by and through his attorneys, Hinshaw & Culbertson LLP, hereby moves this Honorable Court pursuant to 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and Bankruptcy Local Rule 4001-1 to enter an order modifying the automatic stay entered in this case, and in support states as follows:

06866\323310279.v1

## PRELIMINARY STATEMENT

1.      Mr. Williams is a tort claimant creditor of Wellpath, LLC and HCS Correctional Management, LLC, two of the debtors in the above-captioned, jointly administered Chapter 11 case, in connection with a lawsuit Mr. Williams filed against Wellpath, LLC along with non-debtor defendants including, but not limited to, the United States of America, the U.S. Bureau of Prisons, the Bureau of Prisons North Central Regional Office, the Chicago Metropolitan Correctional Center, the U.S. Department of Justice Marshals Service, as well as individuals employed by various offices of the federal government (the "U.S.A. Defendants"), seeking redress for the tortious conduct and constitutional violations caused by the defendants' deliberate indifference to Mr. Williams' serious medical needs. See *Williams v. Heisner, et al.*, Case No. 1:21-cv-00730 (N.D. Ill. Feb. 9, 2021) (the "Civil Case"), attached hereto as **Exhibit A**.

2.      For the reasons stated below, Mr. Williams requests relief from the automatic stay entered in this case (the "Automatic Stay") in order to proceed with his Civil Case (1) against the U.S.A. Defendants and (2) against Wellpath's insurance policies (the "Insurance Policies").

## FACTUAL BACKGROUND

3.      Between approximately April 2019 and May 2021, the defendants in Mr. Williams' Civil Case inflicted upon him cruel and unusual punishment by showing deliberate indifference to Mr. Williams' serious medical needs by withholding, without justification, medical care necessary to resolve the pain and swelling and infection in Mr. Williams' testicles, among other conditions.

4.      Mr. Williams' Civil Case alleges (1) state law claims against Wellpath, LLC; (2) Federal Tort Claims Act claims against the United States of America; (3) constitutional tort claims against the individual federal employees who acted on behalf of the government pursuant to the cause of action addressed under *Marbury v. Madison* and *Bivens v. Six Unknown Named Agents*;

06866\323310279.v1

and (4) an equal protection claim seeking judicial review of § 1983 of the Civil Rights Act of 1871, among other claims.

5.      Mr. Williams initially filed his case on February 9, 2021, and a Second Amended Complaint was filed on November 9, 2023. The various defendants filed a total of four motions to dismiss. As of Septembe 28, 2024, all motions to dismiss are fully briefed, and the parties await a ruling by the Honorable Sharon Johnson Coleman of the Northern District of Illinois.

6.      On September 12, 2024, the court in Mr. Williams' Civil Case ordered Plaintiff and all defendants other than the individual federal defendants to initiate written discovery.

7.      On November 11, 2024, Wellpath, LLC filed for Chapter 11 bankruptcy in this Court, along with the other jointly administered cases, triggering the Automatic Stay under 11 U.S.C. § 362.

8.      On November 12, 2024, the Debtor filed its motion to extend the Automatic Stay to non-debtor defendants [Dkt. #17]. In that stay motion, the Debtor specified which non-debtor parties should be protected by the stay, namely: "(a) certain Professional Corporations and their respective PC Physicians …, (b) the directors and officers of certain of Debtors' non-Debtor affiliates …, and (c) the Debtors' consultant and private equity sponsor, H.I.G. Capital, LLC." See Dkt. #17. Accordingly, the Debtor does not seek to apply the stay to the U.S.A. Defendants or the Debtor's insurance policies.

9.      Following Wellpath's bankruptcy filing, this Court issued an *Interim Order* on November 12, 2024, reinforcing the scope of the automatic stay. Notably, *Paragraph 3 of the Interim Order* explicitly preserves the rights of creditors to seek relief from the Automatic Stay under 11 U.S.C. § 362(d) [Dkt. #69]. This language clarifies that parties like Mr. Williams are not

06866\323310279.v1

prohibited from pursuing litigation against Wellpath to the extent that recovery is limited to non-estate assets, such as insurance proceeds or governmental liabilities.

10.     According to the Debtor's Emergency Motion Authorizing the Debtor to Continue Insurance Coverage [Dkt. #12] in this matter, Wellpath holds a variety of liability insurance policies that cover the claims asserted in Mr. Williams' Civil Case. Under established Fifth Circuit precedent, these insurance proceeds are considered non-estate assets and thus fall outside the scope of property protected by the Automatic Stay. See *In re Edgeworth*, 993 F.2d 51 (5th Cir. 1993).

11.     Mr. Williams seeks relief from the automatic stay to proceed with his Civil Case in the appropriate forum to proceed with his claims against the non-debtor U.S.A. Defendants and against Wellpath's insurance policies.

### LEGAL BASIS FOR STAY RELIEF AND REQUEST FOR ADEQUATE PROTECTION

12.     Movants may seek relief from the automatic stay under 11 U.S.C. §362(d)(1), which provides that the Court may grant relief "for cause," and because "for cause" is not defined, courts have exercised broad discretion in interpreting the term and liberally permitted stay relief. See *In re Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) ("The legislative history indicates that cause may be established by a single factor such as 'a desire to permit an action to proceed in another tribunal,' or lack of any connection with or interference with the pending bankruptcy case.") quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977). Moreover, in the Fifth Circuit, "section 362 is rarely, however, a valid basis on which to stay actions against non-debtors." *Reliant Energy Servs. V. Enron Can. Corp*, 349 F.3d 816, 825 (5th Cir. 2003). "The burden of proof to show that the automatic stay is applicable to a non-debtor is on the party invoking the stay." *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 111 (Bankr. S.D. Tex. 2014); *In re Divine Ripe, LLC*, 538 B.R. 300, 312 (S.D. Tex. 2015) ("a § 362 stay should

4

extend to non-bankrupt codefendants only when there is a formal or contractual relationship between the debtor and non-debtors such that a judgment against one would in effect be a judgment against the other.").

13.     Courts have applied a three-prong test that looks to (1) whether continuing the stayed lawsuit will cause prejudice to the bankruptcy estate; (2) whether the maintenance of the stay creates a greater hardship on the non-debtor than lifting of the stay creates for the debtor; and (3) whether the creditor seeking stay relief has a probability of success on the merits. See *In re Fowler*, 259 B.R. 856, 858-59 (Bankr. E.D. Tex. 2001); see also *Matter of Holtkamp*, 669 F.2d 505 (7th Cir. 1982); see also *In re Bock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984).

**The Court Should Lift the Stay as to the U.S.A. Defendants in Mr. Williams' Civil Case**

14.     Given the pleading standards established under the Federal Tort Claims Act ("FTCA") and the *Bivens* causes of action, Mr. Williams' Civil Case alleges completely separate causes of action against the U.S.A. Defendants than those alleged against Wellpath, LLC. Thus, the counts alleged exclusively against the U.S.A. Defendants threaten no prejudice to the bankruptcy estate in this matter. Moreover, lifting the stay as to the U.S.A. Defendants threatens no prejudice against the Debtor, while continuing the stay as to the U.S.A. Defendants will unnecessarily deny, delay, and defer the administration of justice as to Mr. Williams civil rights and FTCA claims. As to likelihood of success on the merits, Mr. Williams cited an abundance of legal support for his civil rights and FTCA in his opposition briefs to the U.S.A. Defendants' motions to dismiss, and will likely succeed upon the District Court Judge's ruling.

**The Court Should Lift the Stay as to the Debtor's Insurance Policies**

06866\323310279.v1

15.     Lifting the stay as to Mr. Williams' claims asserted against Wellpath, LLC will not prejudice the bankruptcy estate in this matter because damages stemming from those claims will be paid pursuant to the insurance policies noted in the Debtor's Emergency Motion Authorizing the Debtor to Continue Insurance Coverage [Dkt. #12]. See *In re Armstrong & Guy Law Office, LLC*, 2007 Bankr. LEXIS 4394, at \*4 (Bankr. S.D. Miss. Dec. 21, 2007); see also *In re Peterson*, 116 B.R. 247, 250-51 (D. Colo. 1990) ("Numerous courts permit the automatic stay to be lifted when the movant is simply seeking to establish the fact and amount of the debtor's liability and, as in this case, the movant has stipulated that any recovery will be sought from the debtor's insurer or a codefendant."); see also *In re Sonnax Indus.,* 907 F.2d 1280, 1286 (2d Cir. 1990) ("Where the claim is one covered by insurance or indemnity, continuation of the action should be permitted since hardship to the debtor is likely to be outweighed by hardship to the plaintiff."). As to the balancing factor, here again, lifting the stay as to the claims against Wellpath threatens no hardship to the bankruptcy estate because any payout on those claims derives from a funding source completely outside the estate. Lastly, Mr. Williams cited an abundance of legal support for his state law claims against Wellpath, LLC in his motion to dismiss opposition briefs and will likely succeed upon the District Court Judge's ruling.

## CONCLUSION

16.     Mr. Williams has satisfied the legal requirements to justify lifting the Automatic Stay pursuant to 11 U.S.C. 362(d)(1). The continuation of the Civil Case filed by Mr. Williams in the U.S. District Court for the Northern District of Illinois will cause no undue prejudice to the Debtor or the bankruptcy estate in this matter because any potential damages awarded to Mr. Williams will be paid from funding sources that are separate and distinct from the bankruptcy estate. Conversely, maintaining the stay would impose significant hardship to Mr. Williams by

06866\323310279.v1

delaying the administration of justice. Lastly, given the abundance of legal authority which exists to support Mr. Williams' claims cited in the briefs submitted to the District Court, Mr. Williams has demonstrated a reasonable probability of success on the merits. Thus, Mr. Williams has satisfied the minimal threshold required for lifting the stay. Allowing the Civil Case to proceed promotes judicial economy, ensures that the claims are resolved in the proper forum, and aligns with the equitable principles underlying the Bankruptcy Code.

17.     Therefore, Mr. Williams respectfully requests that this Court grant the instant motion for relief from the automatic stay.

Jack Shadid
6339658
Brian R. Zeeck
ARDC 6298798
HINSHAW & CULBERTSON LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
E-mail Address(es):
jshadid@hinshawlaw.com
bzeeck@hinshawlaw.com

## CERTIFICATE OF CONFERENCE

(Bankruptcy Local Rule 4001-1)

I hereby certify that I have attempted to confer with Debtor's Counsel, Marcus A. Helt (mhelt@mwe.com) and the Board's Counsel, David A. Agay (dagay@mcdonaldhopkins.com), by email on Monday, December 30, 2024, and on Friday, January 3, 2025.  Counsel for the Debtor and Board failed to respond.

Dated: January 6, 2025

_____
Jack Shadid
Counsel for Creditor Marzan Williams

06866\323310279.v1

**Certificate of Service**

I hereby certify that on Friday, January 6, 2025, I caused a true and correct copy of the foregoing Motion for Relief from Automatic Stay and Declaration of Jack Shadid to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas upon all parties who have entered an appearance in this case and are registered to receive electronic service.

Dated: January 6, 2025

Jack Shadid
Counsel for Creditor Marzan Williams

9

EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Marzan Williams, | ) | Case No. 1:21-cv-00730 |
| Plaintiff, | ) ) | Judge: Honorable Sharon Johnson |
| v. | ) ) | Coleman |
| R.A. Heisner; J.A. Dunn; D. Blakney; Dr. Brij | ) | Complaint for Violations of the U.S. |
| Mohan; United States of America; U.S. Bureau | ) | Constitution pursuant to Bivens v. Six |
| of Prisons; Metropolitan Correctional Center | ) | Unknown Named Agents of Federal |
| Chicago; Bureau of Prisons North Central | ) | Bureau of Narcotics, 403 U.S. 388 |
| Regional Office; U.S. Dept. of Justice - Marshals | ) | (1971) and Illinois State law |
| Service and the U.S. Marshals Justice Prisoner | ) | |
| and Alien Transport System (JPATS), and their | ) | |
| unnamed individual employees; Wellpath, LLC; | ) | Jury Trial Demanded pursuant to Fed. |
| C. Strickland; J. King, Sr.; Dr. Bonnie | ) | R. Civ. Pro. 38(a) & (b) |
| Nowakowski; C. Hurt; T. Miller; T. Holt- | ) | |
| Nicholson; Mr. Cleveland; Lt. Gutierrez; Lt. P. | ) | |
| Robinson; Mrs. Nedefee; Lt. Clark-Williams; | ) | |
| and L. Holubik, | ) | |
| Defendant. | ) ) | |

## SECOND AMENDED COMPLAINT

Plaintiff, Marzan Williams, by and through his attorneys, Brian R. Zeeck and Jack Shadid

of Hinshaw and Culbertson, LLP, and for his Second Amended Complaint, alleges:

### I.

### NATURE OF THE ACTION

1.     While incarcerated at the Federal Bureau of Prisons' Metropolitan Correctional

Center ("MCC") as a pretrial detainee, Plaintiff endured unconstitutional cruel and unusual

punishment inflicted by Defendants and their employees, despite his presumption of innocence.

2.     While detained, in April of 2019, Plaintiff developed a painful hydrocele condition

on his testicles, and the Defendants in this case treated that condition (and others) with deliberate

indifference by failing to provide physician-recommended, medically necessary care for

approximately eleven months.

3. Following the surgery, Defendants further showed deliberate indifference by failing to allow Plaintiff to return to the physician's office for a follow-up exam within the three week period recommended by the surgeon, causing a scrotal infection to develop.

4. Defendants also denied (and continue to deny) Plaintiff the equipment and resources Plaintiff needed to breathe at night by withholding the power cord for his continuous positive airway pressure (CPAP) machine and denying Plaintiff distilled water for the CPAP machine, allowing bacteria growth inside the machine.

5. The government and the health care administration companies it contracts with operate a health and welfare benefit plan for the benefit of federal inmates which exists as a constructive trust, and Defendants unjustly enrich themselves by managing the taxpayer funded trust assets with deliberate indifference to the serious medical needs of inmates and inflicting cruel, unusual, atypical, and significant punishment upon Plaintiff.

## II.

## SUBJECT MATTER JURISDICTION AND VENUE

6. This Court possesses original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under the Federal Tort Claims Act, other statutes, as well as the causes of action arising under the Fourth, Fifth and Eighth Amendments to the U.S. Constitution and acknowledged by the U.S. Supreme Court in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), *Carlson v. Green*, 446 U.S. 14 (1980), and *Davis v. Passman*, 442 U.S. 228 (1979).

7. This Court possesses supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. §1367(a) in that the federal claims substantially predominate over state law claims and the claims are so related that they form part of the same case or controversy.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

06866\315244940.v1

## III.

## THE PARTIES AND PERSONAL JURISDICTION

9.      Plaintiff Marzan Williams lived in Hazel Crest, Illinois prior to his incarceration and resided at the MCC facility during the period of time addressed in this complaint. Plaintiff resided in the prison as a pre-trial detainee, not a convicted prisoner, from January 2019 until approximately July of 2023, and he currently resides at the MCC facility awaiting sentencing.

**The Government Defendants**

10.     The parties referenced under this subheading shall be referred to as the "Government Defendants."

11.     Defendant United States of America (the "United States") is the appropriate defendant under the Federal Tort Claims Act (FTCA) for the federal Bureau of Prisons (the "BOP"). The BOP housed Plaintiff during the relevant period and violated his constitutional rights.

12.     The federal Bureau of Prisons North Central Regional Office oversees the operations of the federal prisons located in the north central region of the country and provides support and resources to the MCC.

13.     The BOP prison facility, the Metropolitan Correctional Center (the "MCC" or "MCC Chicago"), where Plaintiff resided and continues to reside, lies within the United States Northern District of Illinois.

14.     The U.S. Dept. of Justice - Marshals Service and the U.S. Marshals Justice Prisoner and Alien Transport System (JPATS), and their unnamed individual employees, bear responsibility for transporting Plaintiff and other inmates to off-site health care visits at medical provider offices. The U.S. Marshals Service and the JPATS failed to transport Plaintiff to his scheduled surgeries and surgery follow-up visits, and such failure caused Plaintiff's cruel and unusual testicular pain, emotional distress, scrotal infection, and other damages.

**The Trustee Defendants**

15.     The parties referenced under this subheading shall be referred to as the "Trustee Defendants."

3

16.     "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 42, 56 (1988).

17.     Defendant Wellpath, LLC (f/k/a Correct Care Solutions, LLC) (hereinafter "Wellpath") exists as a limited liability company organized under the laws of the State of Delaware authorized to do business in the State of Illinois. Wellpath contracts with the Bureau of Prisons to manage a welfare benefit health insurance plan for MCC inmates.

18.     Wellpath administers Health Cost Solutions Insurance Plan # 105269 (hereinafter, the "the Health Insurance Plan"), which operates as a joint venture with the BOP and MCC to manage processing and payment of claims and conduct utilization review processes.

**The Individual Defendants**

19.     The defendants noted under this subheading shall be referred to as the "Individual Defendants."

20.     On information and belief, all of the following defendants participated in the medical care request process, the grievance process, the utilization review process, and the scheduling of transportation for medical care pursuant to the Health Insurance Plan and the Bureau of Prisons policies and customs.

21.     R.A. Heisner serves as the Warden of the MCC facility and bears responsibility for supervising and directing the individuals who work for the Bureau of Prisons, Wellpath, any temporary staffing agencies who provide personnel to MCC, and others who work at the MCC facility. Defendant Heisner regularly showed deliberate indifference to Plaintiff's serious medical needs and imposed a penalty of severe testicular pain for approximately fourteen months. Defendant Heisner also punished Plaintiff by sentencing him to a devastating scrotal infection that no court of law ever imposed. Defendant Heisner also revoked Plaintiff's due process rights that

4

MCC vested Plaintiff with when MCC cancelled Plaintiff's approved and scheduled surgeries and follow-up appointments without notice, hearing, or explanation.

22.     Associate Warden J.A. Dunn serves as Associate Warden of the MCC facility and bears responsibility, subject to Defendant Heisner, for supervising and directing the individuals who work for the Bureau of Prisons, Wellpath, any temporary staffing agencies who provide personnel to MCC, and others who work at the MCC facility. Defendant Dunn bears the same culpability for the same conduct alleged against Defendant Heisner.

23.     Associate Warden D. Blakney serves as Associate Warden of the MCC facility and bears responsibility, subject to Defendant Heisner, for supervising and directing the individuals who work for the Bureau of Prisons, Wellpath, any temporary staffing agencies who provide personnel to MCC, and others who work at the MCC facility. Defendant Blakney bears the same culpability for the same conduct alleged against Defendant Heisner.

24.     Dr. Brij Mohan, MD serves as a doctor in the Health Services ward of the MCC. Defendant Mohan regularly administered deliberately indifferent medical care that intentionally avoided satisfying minimal standards of medical care pursuant to the profit motives of the Trustee Defendants. Defendant Mohan participated in the intentional delay and denial of Plaintiff's medically necessary treatments and off-site visits.

25.     Dr. Bonnie Nowakowski, MD serves as a doctor in the Health Services ward of the MCC. Defendant Nowakowski regularly administered deliberately indifferent medical care that intentionally avoided satisfying minimal standards of medical care pursuant to the policies and customs of the Government Defendants and Trustee Defendants..

26.     C. Hurt, RN, AHSA, serves as a health administrator at MCC Chicago and bears responsibility for the deliberately indifferent withholding of medical care alleged herein.

27.     J. King, Sr., Health Services Assistant serves at times as the UR Committee for MCC, but also serves other rolls.

28.     C. Strickland, Health Services Administrator, serves at times as the UR Committee for MCC, but also serves other rolls.

06866\315244940.v1

29.     T. Miller, RN works in the area of the MCC responsible for dispensing medications to inmates. T. Miller regularly ignored Plaintiff's requests for medication even though Plaintiff possessed a prescription entitling him to receive the drugs to relieve serious medical conditions.

30.     T. Holt-Nicholson, APN, BC works in the MCC Health Services ward and bears responsibility for the deliberately indifferent treatment of Plaintiff.

31.     Mr. Cleveland works as a staff personnel at MCC and bears responsibility for the deliberately indifferent treatment of Plaintiff.

32.     Lt. Gutierrez works as staff personnel at MCC and bears responsibility for the deliberately indifferent treatment of Plaintiff.

33.     Lt. P. Robinson worked as a counselor at MCC but was later promoted to Lieutenant.

34.     Mrs. Nedefee, RN works on site at the MCC and regularly instructed Plaintiff to leave the health services ward before Plaintiff could request assistance and regularly denied Plaintiff's requests for administrative remedy forms.

35.     Lt. Clark-Williams works as a Lieutenant and is an employee of MCC. Lt. Clark-Williams regularly received Plaintiff's complaints of pain, suffering, and emotional distress and regularly acted with deliberate indifference by ignoring those complaints.

36.     L. Holubik, RN works on site at the MCC facility and regularly showed deliberate indifference to the serious medical needs of Plaintiff by ignoring Plaintiff's requests for medical attention.

37.     Employees of the U.S. Dept. of Justice Marshals Service and the U.S. Marshals Justice Prisoner and Alien Transport System (JPATS) failed to transport Plaintiff to the surgeries and follow-up appointments scheduled and approved by Defendants.

38.     Based on the limited records provided to Plaintiff's counsel, and based on information and belief, all of the Defendants listed under this Individual Defendants subheading

participated in the imposition of cruel and unusual punishment upon Plaintiff by revoking his vested rights travel to an off-site hospital facility for surgery and follow-up care.

39.     Based on the limited records provided to Plaintiff's counsel, and based on information and belief, all of the Defendants listed under this Individual Defendants subheading contributed to the punishment on Plaintiff by sentencing him to approximately 14 months of avoidable testicular pain, scrotal infection, and depriving Plaintiff of the resources he needed to breathe at night.

40.     The Individual Defendants exhibited the same conduct that the U.S. Department of Justice described in their report on the administrative scheme that Wellpath used to violate the constitutional rights of inmates in the San Luis Obispo County Jail between approximately November 2018 and June 2020.[1]

## IV.

## FACTS AND ALLEGATIONS

41.     The MCC Utilization Review Committee (the "UR Committee") constitutes a decision making body that reviews the recommendations of medical professionals and determines their medical necessity. Employees who work at the MCC, such as C. Strickland and J. King, Jr., take turns acting for the UR Committee by making decisions concerning the approval or denial of medical care requested by inmates or recommended by health care providers.

### Chronology of Plaintiff's Efforts to Receive Health Care

42.     Defendants possessed knowledge of Plaintiff's conditions, understood the excessive risks associated with Plaintiff's serious medical problems, understood the corresponding likelihood of harm, disregarded those risks, and, with conscious and deliberate indifference, ignored and exacerbated Plaintiff's medical problems.

---

[1] See Letter to Wade Horton, County Administrative Officer, "Investigation of the San Luis Obispo County Jail" U.S. Dept. of Justice Civil Rights Division, August 31, 2021, at pp. 5-18; https://www.justice.gov/media/1164191/dl?inline (detailing the systemic deficiencies with the grievance process, medical screening and continuity of care, access to care, and quality of care provided by Wellpath).

43.     The deliberate indifference of Defendants falls so far outside the scope of acceptable professional conduct that it could not be grounded in the legitimate medical judgment of a professional, but rather abided by an illegal cost containment scheme designed to limit access to medical care to only those prisoners experiencing active risk of immediate loss of life or limb.

44.     As detailed below, Defendants caused severe pain, emotional distress, and a general decline to Plaintiff's physical and mental health when they denied, delayed, and intentionally interfered with Plaintiff's medical treatment without any medical justification.

45.     As detailed below, even after Defendants expressly granted Plaintiff the right to speak with off-site doctors and receive off-site medical and surgical care, Defendants repeatedly revoked those rights from Plaintiff without providing any notice to Plaintiff and without providing Plaintiff with any opportunity to be heard on the matter.

46.     As detailed below, Plaintiff exhausted administrative remedies.

*Plaintiff's Requests for Health Care Responding to Scrotum Pain and Testicular Hydrocele*

47.     Plaintiff' pretrial detention at the MCC facility began on January 22, 2019.

48.     Plaintiff repeatedly submitted grievance forms, but the Defendants' deliberately indifferent management rendered the grievance process unavailable because Defendants failed to timely receive, read, and respond in a reasonable manner.

49.     Bureau of Prisons Health Services History & Physical records indicate that Defendants became aware of the medical problems associated with Plaintiff's scrotum and testicles on or before April 9, 2019.

50.     Bureau of Prisons Health Services Clinical Encounter records dated April 16, 2019, describe swelling and a hydrocele in Plaintiff's left scrotum and call for the scheduling of a scrotal and testicular ultrasound as well as a urology evaluation on or around the target date of May 31, 2019.

51.     Dr. Brij Mohan, Clinical Director acting in the role of Institutional Clinical Director referred Plaintiff's case to the UR Committee on April 16, 2019, and J. King, Sr., the Health

8

Services Asst acting in the role of UR Committee, approved the scrotal and testicular ultrasound on April 18, 2019.

52.     Dr. Harry Brown performed a testicular ultrasound on Plaintiff on June 7, 2019, which indicated the presence of large bilateral hydroceles in both of Plaintiff's testicles and recommended follow-up care.

*The First Phantom Hydrocelectomy Surgery*

53.     Plaintiff and Dr. Bonnie Nowakowski discussed the need for surgery on Plaintiff's testicular hydrocele on June 11, 2019.

54.     Dr. Mohan discussed with Plaintiff the option for surgery to address Plaintiff's testicular hydrocele issue on June 17, 2019.

55.     Metro Chicago Surgical Oncology sent MCC Chicago a fax on June 17, 2019, noting Plaintiff's upcoming surgery appointment, scheduled for July 15, 2019, at 1:00 pm (the "First Phantom Hydrocelectomy").

56.     On June 17, 2019, Dr. Peter Vaselopulos sent Defendants a note acknowledging Plaintiff's doctor visit that day and containing Assessment/Plan medical records which note a return to office date of July 15, 2019 at 1:00 pm.

57.     A Bureau of Prisons Health Services Clinical Encounter note dated July 2, 2019, states, "'Urologist recommended surgery,' … Pt agreed for surgery.'[sic] Surgical consult already placed in BEMR & approved."

58.     As of July 2, 2019, Plaintiff's surgery was scheduled for July 15, 2019.

59.     Defendants' approval of the First Phantom Hydrocelectomy procedure and placement of the approval in the Bureau of Prisons Electronic Medical Record System (BEMR) on or around July 7, 2019.

60.     The BOP North Central Regional Office approved the First Phantom Hydrocelectomy.

9

61.     The approval of Plaintiff's appointment vested Plaintiff with life, liberty, and property interests in the administration of the health care benefits funded by the government and managed by Wellpath pursuant to the Health Insurance Plan.

62.     The actions of Defendants referenced in the paragraphs above vested Plaintiff with a liberty interest in associating with the driver of a transport vehicle for the purpose of transportation between the MCC facility and Thorek Hospital.

63.     The actions of Defendants referenced in the paragraphs above vested Plaintiff with a liberty interest in associating with a doctor for the purpose of both speaking with the doctor and receiving medical advice, and associating with the doctor for the purpose of receiving surgical treatment.

64.     Despite Defendants' act of vesting Plaintiff with life, liberty, and property interests in health care, Defendants failed to transport Plaintiff to the health care provider on July 15, 2019.

65.     The central meaning of procedural due process entitle prisoners to be heard before the constitutional rights that prison officials grant to prisoners may be revoked. *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005).

66.     In order for a prisoner to be heard before the government may revoke a constitutional right granted by the government to the prisoner, the prisoner must first be notified of the revocation. *Id*.

67.     Defendants failed to provide Plaintiff with notice as to why Defendants revoked the life, liberty, and property interests they vested in Plaintiff when they approved the First Phantom Surgery.

68.     Due to the failure of Defendants to provide advanced notice of their revocation of the life and liberty interests they vested in Plaintiff by approving the First Phantom Hydrocelectomy, Plaintiff discerned for himself that he would not be receiving surgery on July 15, 2019, when the hour of 1:00 pm arrived, and Plaintiff remained in the MCC facility.

69.     The U.S. Marshals failed to transport Plaintiff to Thorek Hospital on July 15, 2019.

70.     As of the date of filing of this Second Amended Complaint, Defendants have never provided Plaintiff with an explanation or meaningful opportunity to be heard as to why Defendants cancelled Plaintiff's July 15, 2019 surgery.

### _The Second Phantom Hydrocelectomy Surgery_

71.     Approximately four months after the scheduled date of the First Phantom Hydrocelectomy, Defendants permitted Plaintiff to visit Dr. Vaselopulos on November 4, 2019.

72.     As of November 4, 2019, Defendants knew that Plaintiff continued to suffer from testicular pain stemming from a testicular hydrocele condition, and Defendants constituted Plaintiff's only means of speaking and associating with a doctor for the purpose of receiving health care.

73.     On November 4, 2019, Dr. Vaselopulos once again recommended that Plaintiff undergo a hydrocelectomy surgery.

74.     On November 4, 2019, Defendants received a note from Dr. Peter Vaselopulos acknowledging Plaintiff's doctor visit that day and containing Assessment/Plan medical records which note a return to office date for Plaintiff's hydrocelectomy procedure on December 2, 2019 at 9:30 am.

75.     Metro Chicago Surgical Oncology sent MCC Chicago a fax noting Plaintiff's upcoming surgery appointment, scheduled for December 2, 2019 at 9:30 am (the "Second Phantom Hydrocelectomy").

76.     The MCC UR Committee approved Plaintiff to receive the Second Phantom Surgery on December 2, 2019.

77.     The BOP North Central Regional Office approved the Second Phantom Hydrocelectomy.

78.     As of November 4, 2019, Plaintiff's surgery was scheduled for December 2, 2019.

11

79.     A Bureau of Prisons Health Services Consultation Request form dated January 7, 2020 states, "Duplicate consult. Earlier the same consultation request approved by Region was sent to Wellpath too but Pt didn't have surgery."

80.     Defendants' approval of Plaintiff's hydrocelectomy procedure once again vested Plaintiff with life, liberty, and property interests in health care benefits.

81.     The actions of Defendants referenced under the Second Phantom Hydrocelectomy Surgery subheading vested Plaintiff with the same rights as the First Phantom Hydrocelectomy.

82.     Despite Defendants' act of vesting Plaintiff with the life, liberty, and property interests noted in the paragraph above, Defendants failed to transport Plaintiff to the health care provider.

83.     Plaintiff lacked the means of transporting himself to a health care provider.

84.     Despite Defendants' act of vesting Plaintiff with the life, liberty, and property interests noted in the paragraphs above, Plaintiff never received the Second Phantom Surgery through no fault of his own.

85.     Defendants failed to provide Plaintiff with advanced notice as to why Defendants revoked the life, liberty, and property interests they vested in Plaintiff when they approved Plaintiff to receive the Second Phantom Hydrocelectomy.

86.     Plaintiff's surgery scheduled for December 2, 2019 never existed.

*The Realized Hydrocelectomy Surgery*

87.     Greater Chicago Urology, LLC sent MCC Chicago a fax on January 6, 2020, providing hospital surgical service instructions for the hydrocelectomy scheduled for February 4, 2020 at 8:30 am (the "Realized Hydrocelectomy").

88.     The UR Committee and the BOP North Central Regional Office approved of the Realized Hydrocelectomy procedure and placement of the approval in the BEMR system on or around January 6, 2020.

12

89.     Approval of Plaintiff's appointment vested Plaintiff with life, liberty, and property interests under the Fifth Amendment to the U.S. Constitution and under Section 2 of the Illinois Constitution.

90.     C. Strickland, acted in the role of the UR Committee on January 9, 2020, and approved the Realized Hydrocelectomy.

91.     The UR Committee consists of only one individual who independently makes utilization review decisions that fail to adhere to legal and industry standards.

92.     Defendants cannot articulate a justification for depriving Plaintiff of reasonable, testicular-pain-relieving medical care for approximately eleven months.

93.     Plaintiff finally received a hydrocelectomy surgery on February 4, 2020.

94.     No medical or penological reason justified the withholding of the necessary hydrocelectomy surgery for eleven months.

*The Phantom Follow-Up Appointment and Resulting Scrotum Infection*

95.     No court of law ever sentenced Plaintiff to serve time while suffering from an infected scrotum.

96.     Defendants received notice from Greater Chicago Urology, LLC on February 17, 2020, of a follow-up appointment scheduled for the benefit of Plaintiff.

97.     Dr. Vaselopolus's Same Day Surgery Surgeon Discharge Instructions instruct Defendants to permit Plaintiff to meet with Dr. Vaselopolus approximately one to two weeks following the surgery.

98.     Elsevier Interactive Patient Education documents provided to Defendants by Thorek Hospital also instruct Defendants to permit Plaintiff to meet with Dr. Vaselopolus approximately two to three weeks following the surgery.

06866\315244940.v1

99.     The UR Committee considered Dr. Vaselopulos's recommendation for Plaintiff to return for a follow-up visit approximately one to three weeks after the Realized Hydrocelectomy (the "Phantom Follow-Up Appointment").

100.     A March 3, 2020, Health Services Clinical Encounter Note states, "Medical folder for Pt Williams in R&D for trip date 03/02/2020. Note written states, 'Inmate was not scheduled for an appointment today. Was not examined by the doctor today 02 mar 2020'," [sic].

101.     Another March 20, 2020 Health Services Clinical Encounter Note states, "Pt was not seen by outside consultant on 3/2/20 because of wrong scheduling date by Wellpath. CCS/Wellpath notified to reschedule this Pt".

102.     Whether the first is correct, and Plaintiff was never scheduled for a follow-up appointment, or the second is correct, and Wellpath intentionally or unintentionally made a scheduling error, one way or another Plaintiff did not receive the care recommended by Dr. Vaselopulos following the Realized Hydrocelectomy Surgery.

103.     Plaintiff submitted an administrative remedy form dated April 20, 2020, which states, "One shower a week."

104.     Plaintiff never returned to Dr. Vaselopulos for the Phantom Follow-Up Visit.

105.     Defendants lack a justification for denying Plaintiff the Phantom Follow-Up Visit.

106.     Defendants' employee, Dr. Mohan, examined Plaintiff on May 5, 2020, and prescribed the antibiotic medication Doxycycline to Plaintiff.

107.     As a direct and proximate result of Defendants' denial of Plaintiff's follow-up visit, Defendants caused Plaintiff to develop an infection in his scrotum.

108.     Defendants refused to grant Plaintiff permission to see Dr. Vaselopulos for a follow up visit, even after Plaintiff experienced an infection in his scrotum related to the February 4, 2020 surgery.

14

109.     As of May 5, 2020, no court of law had ever sentenced Plaintiff to a prison term under the jurisdiction of the Defendants.

110.     Defendants enhanced Plaintiff's sentence when they elevated their unjust imposition of testicular pain to a more severe sentence of testicular pain accompanied by infection of the scrotum.

111.     A sentence of testicular pain accompanied by infection of the scrotum constitutes a punishment that can be described as (1) atypical and significant, (2) cruel and unusual, (3) deliberately indifferent, (4) a significant hardship, (5) inconsistent with the standards associated with the progress and maturity achieved by contemporary society, (6) torture, (7) soul-destroying, (8) a slow death, (9) life-depriving, and (10) consistent with conditions associated with the subsistence warehousing of an inmate who had not been convicted of any crime by a court of law.

112.     On May 5, 2020, Dr. Vaselopolus recommended that Plaintiff return for a follow-up on June 15, 2020.

113.     Defendants also prohibited Plaintiff from attending his June 15, 2020, follow-up visit without sufficient due process of law.

114.     Plaintiff possesses incomplete records from Defendants and reserves the right to replead upon the propounding of discovery.

**Plaintiff Exhausted Administrative Remedies**

115.     According to the 2014 Bureau of Prisons Administrative Remedy Program Statement OPI: OGC/LIT, Number 1330.18 at pp. 4, "These procedures may not operate to limit inmate access to formal filing of a Request."

116.     "Communication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of the communication between them necessarily impinges on the interest of each. Whatever the status of a prisoner's claim to uncensored correspondence with an outsider, it is plain that the latter's interest is grounded in the First Amendment's guarantee of freedom of speech. And this does not depend on whether

15

the non-prisoner correspondent is the author or intended recipient of a particular letter, for the addressee as well as the sender of direct personal correspondence derives from the First and Fourteenth Amendments a protection against unjustified governmental interference with the intended communication." *Procunier v. Martinez*, 416 U.S. 396 (1974); citing *Lamont v. Postmaster General*, 381 U.S. 301 (1965); accord *Kleindienst v. Mandel*, 408 U.S. 753, 762-65 (1972).

117.    Despite the policies in the Administrative Remedy Program Statement, Defendants maximize the amount of time between (a) the submission of grievance forms by inmates such as Plaintiff and (b) the prison's formal receipt of grievance forms.

118.    Maximizing the amount of time between submission and receipt of grievance forms serves no penological purpose but does successfully delay or prevent the necessary communications between inmates and medical professionals required for inmates to schedule medical care.

119.    By delaying or preventing the necessary communications between inmates and the employees who carry out the Administrative Remedy Program, the inmates such as Plaintiff become frustrated with the process and lose hope of receiving the remedies their serious medical conditions require.

120.    The unconstitutional, speech-chilling nature of the Administrative Remedy Program lacks any rational penological purpose.

121.    The unconstitutional, speech-chilling nature of the Administrative Remedy Program Statement serve no public purpose, but rather exist for the purpose of maximizing the profits of private businesses and contradict the duties of the Trustee Defendants as holder of legal title to the trust asset and corresponding benefits managed by Wellpath pursuant to the Health Insurance Plan.

122.    The administrative remedies and grievance processes feigned by Defendants are not actually available to prisoners because they are not capable of use to obtain some relief for the action complained of.

06866\315244940.v1

123.    Defendants withhold and obfuscate critical information, provide incorrect paperwork, deny access to governing policies and rules, and direct mean-spirited words and deeds toward prisoners who request medical care and to prisoners who seek to submit grievances addressing Defendants' inadequate health care administration regime.

### *Administrative Remedy Case Number 988047-R1*

124.    Plaintiff first submitted a BP-9 (referred to on BOP forms as BP-230(13)) grievance form immediately following the First Hydrocelectomy. Plaintiff's Regional Administrative Remedy Appeal form, submitted July 29, 2019, states, "I have been a pre-trial detainee since Jan. 22, 2019. For at least '4' months I have complained about an enlarged left testicle which pain is sometimes at a consistent Level '8' to where I have to lay down. … I requested surgery & was scheduled for 7.15.19 it is now 7.29.19. I have spoken with every last one of the medical nurse staff & Mrs. Nicholson who come by & ask if we need sick call *she just looks at me and has no answer about my surgery*. I even soopke [sic] to the Warden Dunn & he had Dr. Mohan come by, which he took name that was 10 days ago, no response. I need medical attention."

125.    Plaintiff filed the form provided by the employees of Defendants which refers to Case Number 988047-R1.

126.    The Administrative Remedy Program Statement OPI: OGC/LIT, Number 1330.18 instructs that "staff should counsel the inmate that informal resolution is ordinarily required" and "may reject" formal request paperwork if informal paperwork has not been submitted.

127.    Instead of rejecting Plaintiff's incorrect formal paperwork, Defendants waited nearly one month to respond to Plaintiff's Regional Administrative Remedy Appeal form. Defendants' Rejection Notice form states, "you must first file a BP-9 request through the institution for the warden's review and response before filing an appeal at this level."

128.    Despite Plaintiff's timely request for the correct form, Defendants did not provide Plaintiff with the proper BP-9 form until October 31, 2019, more than three months after Plaintiff requested the form. Ultimately, the Warden's office did not receive the form until November 13, 2019.

06866\315244940.v1

129.    Plaintiff's form states, "I have had an enlarged testicle for months … I was set for surgery and was not taken to my appointment, 'twice' July 15, 2019 & Sept. 15, 2019. I told the doctor Here and all of staff several times!" Plaintiff also requested to "Be able to not feel any more pain! Be taken to the doctor! Someone talk to the doctor & transport because some days I can not walk."

### *Administrative Remedy Case Number 996836*

130.    Plaintiff also submitted a BP-9 (referred to on BOP forms as BP-229(13)) form on October 31, 2019. The form states, "this is my second administrative remedy process. TO get medical treatment, for my surgery which was set for July 15th 2019. I received an letter from Thorek hospital saying I need to reschedule my appointment with a number to call. I have shown this to Dr. Mohan, Health Care Administration, the Warden of programs, & the A.W. to no avail. *I am in pain. I feel hopeless, I'm worried I will no longer be able to have kids if this continues.* I was told by all of staff we don't make appointments. I asked what about the doctor checking on me & setting one?" This form refers to Case Number 996836-F1.

131.    Defendants waited until November 14, 2019, nearly two weeks after Plaintiff submitted the grievance form for Case Number 996836-F1, to acknowledge receipt of the administrative remedy request.

132.    Defendants possess no just reason for waiting two weeks to merely receive Plaintiff's communication, and such a delay constitutes deliberate indifference to Plaintiff's clearly articulated testicular pain.

133.    Then, approximately three weeks later, on December 4, 2019, Defendants issued an Extension of Time for Response form to Plaintiff for Case Number 996836-F1, stating, "additional time is needed to respond to the administrative remedy request identified below. We are extending the time for a response as provided in the Administrative Remedy Program Statement.".

134.    Defendants possess no just reason for delaying the issuance of a formal response to Plaintiff's request for the scheduling of a hydrocelectomy surgery after Defendants already cancelled the hydrocelectomy surgery they scheduled for Plaintiff.

06866\315244940.v1

135.    As of December 4, 2019, Defendants had still not provided Plaintiff with any explanation or opportunity to be heard as to why they cancelled the Phantom Hydrocelectomy surgeries.

136.    Finally, more than a week after Defendants' response due date, Defendants sent Plaintiff a BP-229 Response form on December 12, 2019, which states, "As of December 2, 2019, the procedure was approved and has been scheduled for the near future."

137.    Plaintiff was not satisfied with Defendants' response regarding Case Number 996836-F1, so Plaintiff submitted a Central Office Administrative Remedy Appeal form noting Case Number 996836-R1 on April 18, 2020. The form states, "I am in pain, have been for months. My 'Eighth Amendment' Rights have been violated so many times. To no avail, my medical needs have been in Intentional denial. Just had surgery 1 hr on my scrotum, Doctor did not speak to me after or no follow up has been done. I'm worse than before! … I am suffering!"

138.    Despite the fact that Plaintiff submitted another form on April 18, 2020, Defendants did not even mark that form "Received" until June 5, 2020, nearly two months later.

139.    On June 8, 2020, Defendants issued Plaintiff a Rejection Notice form, which states, "this regional appeal is being rejected and returned to you" because "you did not submit your request or appeal on the proper form," "you must first file a BP-9 request through the institution for the warden's review and response before filing an appeal at this level," and "you may resubmit your appeal in proper form within 10 days of the date of this rejection notice."

140.    Even though the rejection notice form printed June 8, 2020, at the top of the form, somebody stamped the form as "received" on June 18, 2020, and a handwritten note states, "Delivered" 6/25 8:45 am.

### Administrative Remedy Case Number 1016953

141.    On April 20, 2020, Plaintiff submitted an Informal Resolution form which states, "After my surgery I was not seen by a doctor. No medication for pain 24 hrs was issued. I had to beg the staff officer on Unit 15 to get me help. It's been over a month later and still no follow up! Problem even worse than before." It also states, "I talked to Doctor Mohan, all of medical staff,

06866\315244940.v1

been to sick call three times. Went to outside hospital but no schedule appointment so turned away." Plaintiff specifically requests, "To get a follow by the doctor. He never talked to me before or after surgery."

142.    Even though Plaintiff submitted a Informal Resolution Form on April 20, 2020, the Warden's Office did not mark the document as received until approximately eight months later, on December 1, 2020.

143.    An Attempt at Informal Resolution statement issued by M. Kruger AHSA states, "This is in response to your Informal Resolution Attempt, in which you claim you want to be followed up by a doctor due to a past surgery. In review of your medical records, you have been properly evaluated by medical staff."

144.    On April 20, 2020, Plaintiff submitted a BP-9 (aka, BP-229(13)) Request for Administrative Remedy form.

145.    On April 29, 2020, Plaintiff submitted another Informal Resolution form, which requests, "to be cared for as I matter."

146.    On May 27, 2020, Defendants issued a BP-229 Response form which states, "You did not specify the relief you seek."

### *Defendants Deny Plaintiff the Right to File Grievances or Communicate with Administrators*

147.    Plaintiff again requested grievance forms from Defendant in July 2020. Plaintiff desired to submit two grievance forms, but Defendants only provided Plaintiff with one form.

148.    Because Defendants denied Plaintiff of the only form of communication that existed for Plaintiff, Plaintiff decided to use blank paper and a pen to hand-draw copies of new forms.

149.    Plaintiff submitted two hand-copied Informal Resolution forms to Defendants, one on July 20, 2020, which Plaintiff marked C.I.L.MCC 001, and one on July 21, 2020, which Plaintiff marked C.I.L.MCC 002.

06866\315244940.v1

150.     Based on the limited records available to Plaintiff's attorneys, even though Plaintiff submitted C.I.L.MCC 001 and C.I.L.MCC 002 to Defendants, Defendants never marked the forms as received or provided a response.

*Administrative Remedy Case Number 1057660-R1*

151.     Plaintiff submitted an additional BP-9 form sometime around January 25, 2021, which Defendants marked as Case Number 1057660-R1. Plaintiff lacks a copy of the BP-9 form but possesses a copy of the Receipt – Administrative Remedy response issued by the MCC.

152.     In response to Plaintiff's BP-9 form for Case Number 1057660-R1, Defendants issued an Extension of Time for Response form on January 28, 2021, which states, "additional time is needed to respond to the regional appeal identified below. We are extending the time for response as provided for in the administrative remedy program statement.

153.     Plaintiff wrote the following handwritten note on top of the document: "My finale Remedy for an issue from 2019 which the Real Reason I'm sick was being discovered. Doctor Mohan here at M.C.C.-Chicago took it upon himself to tell me don't worry about it."

**Mr. Williams Can't Breathe**

154.     On April 18, 2020, Plaintiff submitted a grievance form that states, "I waited 6 months for a sleep apnea test. Came back severe! Have been told to use sink water by staff! Also, it continues to beep & say Humidifier failure. 'Told staff.'!"

155.     On April 20, 2020, Plaintiff submitted another grievance form that states, "No proper cleaning solution for my sleep apnea machine."

156.     To this day, Defendants continue to show deliberate indifference to Plaintiff's asthma and CPAP needs.

**V.**

**CAUSES OF ACTION**

**Count 1**

21

### *Bivens*: Deliberate Indifference in Violation of the Eighth Amendment Prohibition on Cruel and Unusual Punishment

157.   Plaintiff incorporates every paragraph of this complaint as set forth herein, except that Count 1 only reincorporates those facts which accord with the facts alleged and analyzed by the U.S. Supreme Court in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and *Carlson v. Green*, 446 U.S. 14 (1980).

158.   Plaintiff alleges facts sufficiently similar in nature to the facts alleged in the complaint of Marie Green, Administrator of the Estate of Joseph Jones, Jr. (a/k/a Roscoe Simmons), which gave rise to the Supreme Court's opinion in *Carlson v. Green*, 446 U.S. 14 (1980). **Exhibit 1** (see paragraphs 7 – 11; 17; 21; 43; and 87).

159.   Plaintiff alleges Count 1 only against the following individual federal officers employed by the federal Bureau of Prisons and the MCC facility: R.A. Heisner; J.A. Dunn; Deborah Blakney; Dr. Brij Mohan; Dr. Bonnie Nowakowski; C. Strickland; J. King, Sr.; T. Miller; Z. Nedefee; Lt. Clark-Williams; L. Holubik; T. Holt-Nicholson; C. Hurt; Mr. Cleveland; Mr. Gutierrez; P. Robinson; and unnamed individual U.S. Marshals responsible for transport to and from medical providers.

160.   The wrongful and deliberately indifferent withholding of medical care of the aforenamed Defendants legally and proximately inflicted cruel and unusual punishment upon Plaintiff and caused atypical and significant physical pain, restriction on breathing, infection, the need for additional medical care, and emotional distress upon Plaintiff.

161.   Plaintiff reserves the right to name additional culpable individuals after the propounding of discovery.

162.   Congress has ratified the *Bivens* remedy. See *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 83 (2001) (Scalia and Thomas, J., concurring).

163.   The Supreme Court finds it "crystal clear" that Congress intended the FTCA and *Bivens* to serve as "parallel" and "complementary" sources of liability.

06866\315244940.v1

164.     The U.S. Supreme Court accords full respect to the *Bivens* remedy in the context of the deliberately indifferent withholding of necessary and reasonable medical care by federal prison officials causing the infliction of cruel and unusual punishment upon inmates.

165.     Both the U.S. Supreme Court and the Seventh Circuit Court of Appeals acknowledge, uphold, and emphasize the importance and necessity of maintaining the well-established *Bivens* causes of action in the contexts acknowledged by the Supreme Court, such as the cruel and unusual withholding of medical care.

166.     In Count 1, Plaintiff only alleges the facts of his case which are not meaningfully different from *Bivens* itself (or one of the other two cases in which the Supreme Court recognizes an implied constitutional remedy).

167.     Alternatively, if any factual distinctions between Plaintiff's case alleged herein and the allegations giving rise to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), such distinctions reflect a de minimus, trivial nature.

WHEREFORE, Plaintiff MARZAN WILLIAMS requests that this Court enter judgment in his favor and against defendants for an amount in excess of $100,000, plus punitive damages, costs, attorney fees, and for such additional relief this Court deems just and equitable.

## Count 2

### *Bivens*: Deprivation of Vested Constitutional Rights to Life, Liberty, and Property without Due Process of Law Under the Fifth Amendment

168.     Plaintiff incorporates every paragraph of this complaint as set forth fully herein.

169.     Plaintiff alleges Count 2 only against the following individual federal officers employed by the federal Bureau of Prisons and the MCC facility: R.A. Heisner; J.A. Dunn; Deborah Blakney; Dr. Brij Mohan; Dr. Bonnie Nowakowski; C. Strickland; J. King, Sr.; T. Miller; Z. Nedefee; Lt. Clark-Williams; L. Holubik; T. Holt-Nicholson; C. Hurt; Mr. Cleveland; Mr. Gutierrez; P. Robinson; and unnamed individual U.S. Marshals responsible for transport to and from medical providers.

06866\315244940.v1

170. Pursuant to the Illinois and U.S. constitutions, the aforenamed Defendants vested Plaintiff with the life, liberty, and property interests connected with traveling to and associating with a doctor and receiving the benefits of a welfare benefit plan when they approved Plaintiff's July 15, 2019 surgery.

171. Those Defendants deprived Plaintiff of such life, liberty, and property rights when they cancelled Plaintiff's July 15, 2019 surgery without providing Plaintiff with any notice, explanation, or opportunity for hearing.

172. Those Defendants deprived Plaintiff of the same vested constitutional rights when they cancelled the December 2, 2019 surgery without providing Plaintiff with any notice, explanation, or opportunity for hearing.

173. Those Defendants deprived Plaintiff of the same vested constitutional rights when they cancelled the February 17, 2020 follow-up appointment without providing Plaintiff with any notice, explanation, or opportunity for hearing.

WHEREFORE, Plaintiff MARZAN WILLIAMS requests that this Court enter judgment in his favor and against defendants for an amount in excess of $100,000, plus punitive damages, costs, attorney fees, and for such additional relief this Court deems just and equitable.

## Count 3

### *Bivens*: Imposition of Punishment in Violation of Plaintiff's Fifth Amendment Due Process Right to Pre-Conviction Presumption of Innocence

174. Plaintiff incorporates every paragraph of this complaint as set forth fully herein.

175. Plaintiff alleges Count 3 only against the following individual federal officers employed by the federal Bureau of Prisons and the MCC facility: R.A. Heisner; J.A. Dunn; Deborah Blakney; Dr. Brij Mohan; Dr. Bonnie Nowakowski; C. Strickland; J. King, Sr.; T. Miller; Z. Nedefee; Lt. Clark-Williams; L. Holubik; T. Holt-Nicholson; C. Hurt; Mr. Cleveland; Mr. Gutierrez; and P. Robinson;.

176. The above named Defendants imposed punishments upon Plaintiff, a pretrial detainee entitled to the presumption of innocence until found guilty by a court of law.

06866\315244940.v1

177.    Between April 2019 and July 2023, the above named Defendants imposed a punitive sentence of more than eleven months of unnecessary testicular pain and swelling upon Plaintiff without any rational justification for doing so.

178.    Between April 2019 and May 2023, the above named Defendants imposed an enhanced punitive sentence of approximately three months of scrotal infection and continued pain and suffering upon Plaintiff without any medical, penological, or rational justification for doing so.

179.    Between January 2019 and May 2023, the above named Defendants imposed a punitive sentence of diminished breathing capacity upon Plaintiff by withholding the power cord for Plaintiff's CPAP machine and allowing avoidable bacteria growth inside the CPAP machine without any rational justification for doing so.

180.    Defendants imposed such objectively unreasonable punishments upon Plaintiff despite the fact that the  criminal court responsible for conviction and sentencing had not yet declared Plaintiff guilty of a crime.

WHEREFORE, Plaintiff MARZAN WILLIAMS requests that this Court enter judgment in his favor and against defendants for an amount in excess of $100,000, plus punitive damages, costs, attorney fees, and for such additional relief this Court deems just and equitable.

## Count 4

### *Bivens*: Revocation of Plaintiff's First Amendment Right to Speech and Association

181.    Plaintiff incorporates every paragraph of this complaint as set forth fully herein.

182.    Plaintiff alleges Count 4 only against the following individual federal officers employed by the federal Bureau of Prisons and the MCC facility: R.A. Heisner; J.A. Dunn; Deborah Blakney; Dr. Brij Mohan; Dr. Bonnie Nowakowski; C. Strickland; J. King, Sr.; T. Miller; Z. Nedefee; Lt. Clark-Williams; L. Holubik; T. Holt-Nicholson; C. Hurt; Mr. Cleveland; Mr. Gutierrez; P. Robinson, and unnamed individual U.S. Marshals responsible for transport to and from medical providers.

25

183.    Plaintiff's constitutional speech and association rights, as well as the Bureau of Prisons' Administrative Remedy Program, compel Defendants to receive, listen to, and hear Plaintiff's communications in a reasonable manner.

184.    Defendants waited for unreasonably long periods of time to grant Plaintiff his constitutional right to have his grievance letters read by the addressee. See *Kleindienst v. Mandel*, 408 U.S. 753, 762-65 (1972); see also *Procunier v. Martinez*, 416 U.S. at 408-09; citing *Lamont v. Postmaster General*, 381 U.S. 301 (1965).

185.    Defendants use the administrative grievance process in bad faith to not only violate inmates' free speech and association rights but also to entirely cancel the speech and communications of Plaintiff and other inmates for weeks or months at a time and sometimes permanently.

186.    Defendants revoke and cancel First Amendment and Illinois Constitutional rights by denying Plaintiff and other inmates of grievance forms, intentionally providing incorrect grievance forms to inmates, failing to receive or read grievance forms for weeks at a time, mischaracterizing and denying the plain meaning of the words written by inmates on grievance forms, ignoring inmates verbal cries for assistance after mocking inmate complaints, denying the existence of serious medical conditions, and ensuring systemic inefficiency of the informal resolution and administrative grievance communication systems in order to chill inmate desire request medical care.

187.    By operating the grievance process in bad faith, Defendants chill the speech of inmates like Plaintiff.

188.    Because of the above named Defendants' bad faith operation of the grievance process, Plaintiff actually did lose hope that his needs would be adequately addressed and eventually stopped submitting requests for medical care after his exhaustion of available avenues for redress failed.

189.    Despite the fact that Defendants so chilled Plaintiff's speech that he stopped requesting medical care, Plaintiff continued to require medical care during the period of chilled speech.

26

190.    Plaintiff suffered prolonged pain, breathing restrictions, and emotional distress during the period of chilled speech.

WHEREFORE, Plaintiff MARZAN WILLIAMS requests that this Court enter judgment in his favor and against defendants for an amount in excess of $100,000, plus punitive damages, costs, attorney fees, and for such additional relief this Court deems just and equitable.

### Count 5

### *Bivens*: *Monell* Liability for the Policies and Customs that Caused Employees to Deprive Plaintiff of His Rights

191.    Plaintiff incorporates every paragraph of this complaint as set forth fully herein.

192.    Plaintiff alleges Count 5 against the formal policies and informal customs of the federal Bureau of Prisons, the Bureau of Prisons North Central Office, the MCC facility, Wellpath, and the Health Insurance Plan.

193.    By virtue of their voluntary acceptance of a non-delegable government duty, Wellpath and the Health Insurance Plan constitute state actors under *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2000).

194.    *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) permits state inmates to challenge the policies and customs of state and county prisons and jails which give rise to constitutional violations.

195.    The employees of the above named Defendants acted unconstitutionally and violated Plaintiff's rights by virtue of such employees' implementation and execution of the policy statements, plan documents, procedural descriptions, informal customs, and decision making frameworks created and maintained by the above named Defendants.

196.    The policies and customs of the above named Defendants caused Plaintiff to experience repeated deprivations of his state and federal constitutional rights.

06866\315244940.v1

WHEREFORE, Plaintiff MARZAN WILLIAMS requests that this Court enter judgment in his favor and against defendants for an amount in excess of $100,000, plus punitive damages, costs, attorney fees, and for such additional relief this Court deems just and equitable.

## Count 6

### Equal Protection under the Illinois Constitution: 42 U.S.C. § 1983 Discriminates against Federal Prisoners without a Rational Basis by Denying Federal Prisoners Statutory Remedies Available to State Prisoners

197.    Plaintiff incorporates every paragraph of this complaint as set forth fully herein.

198.    Section 2 of the Illinois Constitution states, "No person shall be … denied the equal protection of the laws."

199.    Plaintiff alleges Count 6 at the Civil Rights Act and at 42 U.S.C. § 1983.

200.    The cause of action found at 42 U.S.C. § 1983 unconstitutionally discriminates against federal prison inmates by irrationally denying federal inmates statutory litigation rights and remedies that the law provides to state prison inmates, and such discrimination does not further any legitimate government interest.

201.    It is emphatically the province and duty of the judicial department to say what the law is. *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

202.    An inmate held in the custody of a state government possesses the right to challenge government takings of vested constitutional rights without due process.

203.    Plaintiff, as a federal inmate, lacks a cause of action to challenge the unconstitutional taking of the vested rights the government granted to him.

204.    A state pretrial detainee possesses the right to challenge the due process violations associated with the objectively unreasonable imposition of punishment in violation of the detainee's constitutional presumption of innocence.

06866\315244940.v1

205.     Plaintiff lacks a cause of action permitting them to challenge the due process violations associated with the objectively unreasonable imposition of punishment upon pretrial detainees, despite their constitutional entitlement to a presumption of innocence.

206.     An inmate held in the custody of a state government possesses the right to file a cause of action challenging the First Amendment violations of the state government.

207.     Plaintiff lacks a cause of action to challenge First Amendment violations of the federal government.

208.     An inmate held in the custody of a state government possesses the right to file a *Monell,* 436 U.S. 658, cause of action challenging the policies and customs of the government entity imprisoning him.

209.     Plaintiff lacks a cause of action to challenge the unconstitutional policies and customs of a federal government agency.

210.     For no rational reason, when compared to the litigation rights of state pretrial detainees and prisoners, Plaintiff possesses fewer legal remedies and fewer means of litigating the constitutional torts committed against him.

211.     A right without a remedy constitutes fictitious justice.

WHEREFORE, Plaintiff requests that this Court declare that 42 U.S.C. § 1983 violates the Equal Protection Clause of the Illinois State Constitution; and that this Court permit him to file causes of action (1) challenging the due process violations associated with Defendants' revocation of the life, liberty, and property interests they vested in Plaintiff without notice or a hearing; (2) challenging the constitutionality of the pretrial punishment imposed upon him; (3) challenging the deprivation of Plaintiff's First Amendment Rights under the U.S. Constitution and under Section 4 of the Illinois Constitution; and (4) challenging the objectively unreasonable imposition of punishment on pretrial detainees without due process of law.

## Count 7

### Declaratory Judgment Pursuant to 28 U.S.C. § 2201: Violation of Plaintiff's Speech and Association Rights

06866\315244940.v1

212.    Plaintiff incorporates every paragraph of this complaint as set forth fully herein.

213.    Plaintiff alleges Count 7 against R.A. Heisner, J.A. Dunn, and D. Blakney.

214.    Plaintiff also reserves the right to allege Count 7 against the unidentified individuals who serve in the following roles and requests that the Bureau of Prisons and MCC identify them: Camp Superintendents, Community Corrections Managers, Administrative Remedy Coordinator, Administrative Remedy Clerk, the Regional Director, the National Inmate Appeals Administrator, the Bureau of Prisons General Counsel and Regional Counsel, and the Unit Manager. All of the job titles herein listed bear responsibility for maintaining the availability of the Administrative Remedy Program pursuant to Bureau of Prisons Program Statement, OPI: OGC/LIT, 1330.18 published on January 6, 2014 and approved by Charles E. Samuels, Jr., Director of the Federal Bureau of Prisons.

215.    The Defendants and additional parties listed in this Count 7 failed to satisfy their Administrative Remedy Program duties established under BOP Administrative Remedy Program documents, the SENTRY Administrative Remedy Technical Reference Manual, and legal provisions contained under 28 CFR Part 542 as well as 28 CFR Part 543.

216.    Section 5 of the Illinois Constitution states, "The People have the right to … apply for redress of grievances."

217.    Defendants waited for unreasonably long periods of time to grant Plaintiff his constitutional right to have his grievance letters read by the addressee. See *Kleindienst v. Mandel*, 408 U.S. 753, 762-65 (1972); see also *Procunier v. Martinez*, 416 U.S. at 408-09; citing *Lamont v. Postmaster General*, 381 U.S. 301 (1965).

218.    Defendants' grievance process lacks meaningful availability.

219.    The rule of law exists in the MCC.

WHEREFORE, Plaintiff requests that this Honorable Court declare that the policy and process of intentionally refusing to receive, listen to, and respond to Plaintiff's requests for medical care in a timely manner or at all constitutes a violation of Plaintiff's rights under the federal and state constitutions; and that this Honorable Court further declare that the Defendants named under

30

this Count 7 failed to satisfy their legal obligations under the BOP Program Statement and 28 CFR Part 542 and Part 543.

## Count 8

### Federal Tort Claims Act: Negligence

220.     Plaintiff incorporates every paragraph of this complaint as set forth fully herein.

221.     Plaintiff alleges Count 8 at the United States of America for the personal injuries, losses, pain, loss of property, and emotional distress caused by the negligence of employees of the U.S. Bureau of Prisons, the Bureau of Prisons North Central Regional Office, and the Metropolitan Correctional Center in the scope of their employment. If private persons, the conduct of such employees would give rise to liability for negligence.

222.     The employees who unjustly cancelled Plaintiff's hydrocelectomy surgeries and follow-up care caused Plaintiff to experience approximately fourteen months of unnecessary testicular swelling and pain and approximately three months with an infected scrotum.

223.     Those employees possessed duties to satisfy the standards of care established under:

    a.     the reasonable person standard;

    b.     the non-delegable duty of the government to provide a medical care system that meets minimal standards of adequacy, see *Wellman v. Faulkner*, 715 F.2d 269, 271-71 (7th Cir. 1983);

    c.     the Administrative Remedy Program to reasonably communicate with Plaintiff in accordance with the rules;

    d.     the Eighth Amendment of the U.S. Constitution to avoid treating Plaintiff with deliberate indifference and inflicting cruel and unusual punishment;

    e.     the Fifth Amendment of the U.S. Constitution to avoid punishing Plaintiff, a pretrial detainee entitled to a presumption of innocence, without due process of law; and

    f.     other state and federal laws and regulations.

224.     Those employees breached their duties, and the breach actually and proximately caused Plaintiff's pain, suffering, injury, and emotional distress.

31

WHEREFORE, Plaintiff MARZAN WILLIAMS requests that this Court enter judgment in his favor and against defendants for an amount in excess of $100,000, plus punitive damages, costs, attorney fees, and for such additional relief this Court deems just and equitable.

## Count 9

### Federal Tort Claim Act: Intentional Infliction of Emotional Distress

225.    Plaintiff incorporates every paragraph of this complaint as set forth fully herein.

226.    Plaintiff alleges Count 9 at the United States of America for the personal injuries, losses, pain, loss of property, and emotional distress caused by the intentional acts of employees of the U.S. Bureau of Prisons, the Bureau of Prisons North Central Regional Office, and the Metropolitan Correctional Center in the scope of their employment. If private persons, the conduct of such employees would give rise to liability for the intentional infliction of emotional distress.

227.    Defendants intentionally cancelled Plaintiff's hydrocelectomy surgeries and follow-up appointment, causing prolonged periods of extreme pain, emotional anguish, and scrotal infection.

228.    The absence of any medical or penological justification for cancelling medically necessary care for a serious medical condition constitutes extreme and outrageous conduct.

229.    The cancellation of scheduled medical appointments constitutes the actual and proximate cause of Plaintiff's damages.

230.    The fourteen months of pain, fear, and anguish and three months of heightened pain, fear, and anguish constitute severe emotional distress.

WHEREFORE, Plaintiff MARZAN WILLIAMS requests that this Court enter judgment in his favor and against defendants for an amount in excess of $100,000, plus punitive damages, costs, attorney fees, and for such additional relief this Court deems just and equitable.

## Count 10

### Illinois Tort Law: Negligence

231.    Plaintiff incorporates every paragraph of this complaint as set forth fully herein.

06866\315244940.v1

232.     Plaintiff alleges Count 10 against Wellpath, the Health Insurance Plan, and their respective employees, for which these employer defendants bear vicarious responsibility.

233.     The U.S. Constitution, the Illinois Constitution, the Illinois Insurance Code (see 215 ILCS 5/121; 215 ILCS 5/121-1; 215 ILCS 5/364; 215 ILCS 5/367(2); 215 ILCS 5/355; 215 ILCS 5/143; 215 ILCS 5/367.3) the Illinois Managed Care Reform and Patient Rights Act (215 ILCS 134/5 and 215 ILCS 134/85), the Illinois Code of Criminal Procedure (725 ILCS 5/103-2), the standards maintained by the American Accreditation Healthcare Commission, and the standards marketed by Wellpath (see **Exhibit 2**), provide standards of care and impose duties upon Defendants.

234.     Defendants breached the duties they owed to Plaintiff by failing to comply with legal and industry standards, imposing punishment on a pretrial detainee, cancelling surgeries and follow-up care without justification or due process of law, cancelling Plaintiff's speech and association rights, sentencing Plaintiff to prolonged and intense pain despite the absence of any penological purpose for doing so, sentencing Plaintiff to endure an infection in his scrotum, diminishing Plaintiff's ability to breathe by taking away his CPAP machine and distilled water, and other actions as well.

235.     Defendants possessed complete control over Plaintiff's access to health care.

236.     But for Defendants' deliberate indifference and intentional withholding of medical care, Plaintiff would not have suffered the pain, suffering, trauma, or emotional distress he endured.

237.     The deliberate indifference of Defendants constitutes the proximate cause of Plaintiff's damages.

238.     Plaintiff suffered damages as a result of Defendants' neglect.

239.     On information and belief, inmates at the MCC facility incur a payment obligation for their health care.

WHEREFORE, Plaintiff MARZAN WILLIAMS requests that this Court enter judgment in his favor and against defendants for an amount in excess of $100,000, plus punitive damages, costs, attorney fees, and for such additional relief this Court deems just and equitable.

## Count 11

### Illinois Tort Law: Intentional Infliction of Emotional Distress

240.    Plaintiff incorporates every paragraph of this complaint as set forth fully herein.

241.    Plaintiff alleges Count 11 against Wellpath; the Health Insurance Plan; and their respective employees, for which these employer defendants bear vicarious responsibility.

242.    Defendants' intentional and reckless conduct has been detailed thoroughly in this Second Amended Complaint.

243.    The extreme and outrageous nature of Defendants conduct has been detailed thoroughly in this Second Amended Complaint.

244.    But for the conduct of Defendants, Plaintiff would not have suffered the damages he incurred.

245.    Defendants' conduct constitutes the proximate cause of Plaintiff's damages.

246.    The emotional distress Plaintiff suffered for the eleven months he was deprived of surgery, the three months he was deprived of follow-up care, the time he spent with an infected scrotum, and the sleepless nights due to the inability to breath constitute severe emotional distress.

WHEREFORE, Plaintiff MARZAN WILLIAMS requests that this Court enter judgment in his favor and against defendants for an amount in excess of $100,000, plus punitive damages, costs, attorney fees, and for such additional relief this Court deems just and equitable.

## Count 12

### Illinois Common Law of Trusts: Trustee's Breach of Duty

247.    Plaintiff incorporates every paragraph of this complaint as set forth fully herein.

06866\315244940.v1

248. Plaintiff alleges Count 12 against Wellpath, the Health Insurance Plan, and their respective employees, for which these employer defendants bear vicarious responsibility.

249. Pursuant to the federal Bureau of Prisons' contract(s) with Wellpath, the Bureau of Prisons makes payments to Wellpath, which funds the Health Insurance Plan and allows the government to satisfy its nondelegable duty to satisfy the medical needs of inmates.

250. The federal Bureau of Prison's health care insurance and administration regime operates as a constructive trust fund for the benefit of the inmates of federal prison facilities.

251. The federal Bureau of Prisons serves as the settlor, and the contract payment to Wellpath constitutes the trust asset.

252. Wellpath serves as the trustee of the trust who retains legal title of the trust asset and administers the trust for the purpose of providing equitable title of the trust asset to the inmates.

253. The Illinois common law imposes a fiduciary duty upon the Trustee Defendants.

254. The fiduciary duty standards of the Illinois common law require the Wellpath Defendants to operate the Health Insurance Plan for the benefit of the inmates and avoid unjustly enriching themselves.

255. In the alternative, as it applies to pretrial detainees, the standards imposed by the Fifth and Fourteenth Amendments of the U.S. Constitution and by the Illinois Constitution requires the Wellpath Defendants to operate the plan with objective reasonableness.

256. In the alternative, the standards imposed by the Eighth Amendment to the U.S. Constitution requires the Wellpath Defendants to avoid operating the plan with deliberate indifference to the medical needs of inmates.

257. Defendants' deliberate indifference breached the duties imposed upon them by state and federal law and industry standards when they unjustly enriched themselves by unreasonably denying medically necessary care for serious medical conditions without penological justification, thus inflicting cruel, unusual, atypical, and significant punishment.

06866\315244940.v1

258.     Defendants breached their common law and constitutional duties to Plaintiff when they took the following actions:

    a.      Cancelled the First Phantom Hydrocelectomy;

    b.      Cancelled the Second Phantom Hydrocelectomy;

    c.      Cancelled the Phantom Follow-Up Appointment;

    d.      Sentenced Plaintiff to more than fourteen months of deliberate indifference causing excruciating pain and traumatic emotional distress;

    e.      Sentenced Plaintiff to suffer an infection in his scrotum;

    f.      Deprived Plaintiff of a power cord for the CPAP machine that Plaintiff needed to breath at night;

    g.      Deprived Plaintiff of the distilled water that Plaintiff's CPAP machine required in order to avoid bacteria growth;

    h.      Sentenced Plaintiff to prolonged constriction of his breathing organs by depriving him of a CPAP machine and depriving him of the distilled water he needed to avoid bacteria growth inside the machine.

259.     Such actions responded to Defendants' profit motive rather than their duties as trustee.

WHEREFORE, Plaintiff MARZAN WILLIAMS requests that this Court enter judgment in his favor and against defendants for an amount in excess of $100,000, plus punitive damages, costs, attorney fees, and for such additional relief this Court deems just and equitable.

Respectfully submitted,

HINSHAW & CULBERTSON LLP


/s/ Brian R. Zeeck
Brian R. Zeeck

36

Brian R. Zeeck – ARDC No. 6298787
Jack Shadid – ARDC No. 6339658
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
bzeeck@hinshawlaw.com
jshadid@hinshawlaw.com

06866\315244940.v1

# EXHIBIT 1

CaSase21-905683D0DnocumeufiA65eFibeFweS X6659202/6P/a0@ur P@a@e0IDf6297

FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

F I L E D
U.S. DISTRICT COURT
TERRE HAUTE DIVISION

JUN 1 8 1976

SOUTHERN DISTRICT OF INDIANA
ARTHUR J. BECK
CLERK

MRS. MARIE GREEN, Administrator )
of the Estate of JOSEPH JONES, )
JR. (a/k/a ROSCOE SIMMONS) and )
next of kin of JOSEPH JONES, JR., )
)
       Plaintiff, )
)
    vs. )
)
NORMAN CARLSON, Director, Federal )
Bureau of Prisons; C.L. BENSON, )
Warden, Terre Haute Penitentiary; )
ROBERT L. BRUTSHE, M.D., Assistant )
Surgeon General; JOINT COMMISSION )
ON ACCREDITATION OF HOSPITALS; )
DR. BENJAMIN B. deGARCIA, Chief )
Medical Officer; Medical Training )
Assistant WILLIAM WALTERS; Staff )
Officer Emmett Barry, )
)
       Defendants. )

NO. TH 76-93-C

## COMPLAINT

### INTRODUCTION

From January 6 through August 14, 1975, four black prisoners at the Federal Prison in Terre Haute died because of medical care so inappropriate as to evidence intentional maltreatment. The fact that all four inmates who died were black is not a mere coincidence, since it is the non-white prisoners who are the last to receive what little medical attention is available and are the last to be admitted to the prison hospital.

The prisoners at Terre Haute have tried all peaceful means available to bring to the attention of the authorities the blatant inappropriate medical care, which threatens the lives of all of them.

Despite letters of protest to prison officials and several Congressmen and a peaceful work stoppage joined by 900 prisoners, Defendants WARDEN BENSON, DIRECTOR CARLSON and their agents did nothing to change the blatant inadequate medical conditions at Terre Haute.

The instant Complaint is a classic case of medical care which is so clearly inadequate as to amount to a refusal to provide essential care, so inappropriate as to evidence intentional maltreatment causing death. Prisoners clearly do not surrender all their constitutional rights when they enter the prison gates.

APPENDIX B

Decent medical care is a basic human right which must be afforded all people, whether or not imprisoned.

## JURISDICTION

1. Jurisidction of the Court is invoked pursuant to 28 U.S.C. 1331(a) and under the substantive rights created by the Constitution of the United States. Plaintiff, MRS. MARIE GREEN, next of kin and administrator of the estate of her son JOSEPH JONES (a/k/a ROSCOE SIMMONS), is suing for monetary damages for the death of her son.

## PARTIES

2. Plaintiff MARIE GREEN is the next of kin and administrator of the estate of her son, JOSEPH JONES, JR. (a/k/a ROSCOE SIMMONS), who died at Terre Haute Prison from willful, wanton and criminally negligent medical care of such a degree to constitute intentional maltreatment.

3. Defendant NORMAN CARLSON is the Director of the Bureau of Prisons and is responsible for the care and management of federal prisons; sued individually and in his official capacity as Director of Bureau of Prisons.

4. Defendant C. L. BENSON is the Warden of Terre Haute Prison and is responsible for the care and management of the prisoners confined in his institution; sued individually and in his official capacity as Warden.

5. Defendant ROBERT T. BRUTSHE is the Assistant Surgeon General of the United States and is responsible for monitoring the medical services at Terre Haute Prison; sued individually and in his official capacity as Assistant Surgeon General.

6. Defendant JOINT COMMISSION ON ACCREDITATION OF HOSPITALS is in charge of inspecting hospital facilities and supplying them with accreditation if they meet set standards. This Commission accredited the hospital at Terre Haute Penitentiary.

Digitized by Google

7. Defendant DR. BENJAMIN B. DeGARCIA was Chief Medical

Officer at the time of the death of JOSEPH JONES, JR., and was directly responsible for the functioning of the prison medical services; sued individually and in his official capacity as Chief Medical Officer.

8. Defendant WILLIAM WALTERS was a Medical Training Assistant employed at Terre Haute Prison as a doctor's aide and on duty and in charge of the medical facilities on the day of JOSEPH JONES' death; sued individually and in his capacity as a Medical Training Assistant.

9. Defendant Staff Officer EMMETT BARRY, custodial guard at Terre Haute Penitentiary and on duty in the hospital on the day of JOSEPH JONES' death; sued individually and in his official capacity as Staff Officer.

### COUNT I

1. The deceased JOSEPH JONES, JR. was convicted of bank robbery under the name of ROSCOE SIMMONS in 1972 and placed in the custody of the Attorney General of the United States at the Federal Bureau of Prisons under a sentence of ten years.

2. The deceased, JOSEPH JONES, JR., had a history of asthma and was diagnosed as a chronic asthmatic upon his entry into the Federal Prison System.

3. In 1973 JOSEPH JONES, JR. was given steroids for the treatment of an acute asthmatic episode, and he was treated with oral steroids intermittently over the next two years.

4. After being incarcertated in McNeil Island Penitentiary in Washington, and Leavenworth Penitentiary in Kansas, JOSEPH JONES, JR. was transferred to Terre Haute Prison in July of 1974.

5. In July of 1975, JOSEPH JONES' asthmatic condition deteriorated and he required hospitalization outside the penitentiary. For eight days he was hospitalized at St. Anthony's Hospital in Terre Haute, Indiana.

6. Upon his release from the hospital on August 6, 1975, the treating physician recommended that JONES not be sent back to Terre Haute Penitentiary, but instead that he be transferred to another climate. The doctor made two specific recommendations: Lexington,

which has a good management program for chronic diseases; and Sandstone, which has a drier climate.

7. The recommendation was ignored by the Defendants and their agents. JOSEPH JONES was placed back in Terre Haute Prison, where he died eight days later.

8. On his return to the prison hospital, the deceased was not given proper medication as directed by the local hospital, nor was the treatment of steroids continued, as ordered by the physician at the local hospital.

9. On August 14, JOSEPH JONES complained of an asthma attack and was admitted to the hospital at about 3:00 p.m. From that time on, the Defendants were responsible for a course of conduct which was willful, wanton and criminally negligent and so blatantly inappropriate as to evidence intentional maltreatment, and was directly responsible for the death of JOSEPH JONES, JR.

10. Although JONES was in serious condition for eight hours before he died, no doctor was on duty, nor was any doctor called to treat him. There was a deliberate indifference to the deceased's repeated cries for essential treatment.

11. Defendant DR. BENJAMIN DeGARCIA was not present at the prison hospital on weekends, nor did he provide a procedure to check in in case of emergencies. Defendant DeGARCIA allowed a prison hospital to function with totally inadequate staff, improperly trained, and without proper equipment and procedures.

12. Medical Training Assistant WALTERS, a non-licensed nurse, was left in charge of the hospital. Although JONES was becoming more agitated and having more and more difficulty breathing, WALTERS left JONES alone with inmate nurses while he went around to the floors dispensing medications.

13. When WALTERS returned, he brought the respirator with him. WALTERS had been put on notice two weeks prior that the respirator was broken, yet he still tried to go through the motions of administering the respirator. JONES pulled away from WALTERS, telling him that the respirator was making his breathing worse, and in fact the respirator was not functioning properly.

14. WALTERS then administered two shots of Thorazine (inter-

Digitized by Google

venously and intermuscularly) to JONES, who was having great diffi-
culty breathing.  The use of Thorazine is directly contradictory
to the treatment necessary for someone suffering from an asthma
attack.

15.  About one-half hour after the second shot of Thorazine
was administered, JOSEPH JONES had a respiratory arrest.  Defendant
Staff Officer BARRY and Medical Training Assistant WALTERS brought
an emergency cart to administer an electric jolt to the deceased,
but neither WALTERS nor BARRY knew how to operate this machine.
JONES was pronounced dead at St. Francis Hospital in Terre Haute.

16.  The death of inmate JONES was the fourth inmate death
at Terre Haute resulting from inadequate medical care in a seven-
month period.

17.  Defendants CARLSON, BENSON and BRUTSCHE were all put on
notice prior to the instant case that the medical treatment and
facilities in the Terre Haute prison hospital were grossly inade-
quate.  Letters were written to Director CARLSON and Warden BENSON
complaining of the lack of proper medical care.  In addition,
prisoners at Terre Haute staged a work stoppage and peaceful pro-
test to bring the serious problem of inadequate medical care to
the attention of the prison authorities.

18.  Despite the repeated requests for basic changes in the
procedures, facilities and personnel at the Terre Haute prison
hospital, Defendants CARLSON, BENSON and BRUTSHE did nothing to
adequately alter the grossly inadequate medical care being admin-
istered at Terre Haute.  They ignored the requests for change
despite three prior inmate deaths and allowed the prison hospital
to operate in a manner which perpetuated grossly inappropriate
medical care.

19.  Defendant Assistant Surgeon General ROBERT L. BRUTSHE
is employed by the United States Public Health Service and visited
Terre Haute twice in the last year 'to review specific cases, as
well as to inspect the total mecial program at Terre Haute.  He
gave the medical facilities his approval and failed to recommend
needed changes in equipment, procedures and availability of trained
medical staff.

Digitized by Google

20. THE JOINT COMMISSION ON ACCREDITATION OF HOSPITALS gave accreditation to the prison hospital despite its serious deficiencies in equipment, procedures, and availability of doctors and trained medical staff.

21. The above alleged acts of the Defendants and their agents, coupled with the complete failure of the Defendants to provide any positive medical treatment for JOSEPH JONES, JR., constitutes a course of medical care so clearly inadequate as to amount to the refusal to provide essential care. Such acts were so blatantly inappropriate as to evidence intentional maltreatment resulting in the deprivation of JOSEPH JONES, JR.'s life, in violation of the due process clause of the Fifth Amendment to the United States Constitution.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for $500,000 in actual damages, plus costs of this action, including attorneys fees; and such other relief as this Court deems just, proper and equitable.

## COUNT II

22-42. Plaintiff hereby realleges and incorporates paragraphs 1 through 21 of Count I as paragraphs 22 through 43 of this Count II, as if fully set forth herein.

43. The above alleged acts of the Defendants and their agents and the complete failure to provide any positive medical treatment for JOSEPH JONES, JR., as he suffered from a severe asthma attack which resulted in the loss of his life, constituted cruel and unusual punishment, violative of the Eighth Amendment to the United States Constitution.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for $500,000 in actual damages, plus the costs of this action, plus such other relief as this Court deems just and proper.

## COUNT III

44-64. Plaintiff hereby realleges and incorporates paragraphs

Digitized by Google

1 through 21 of Count I as paragraphs 44 through 64 of this Count III, as if fully set forth herein.

65. The above alleged acts of Defendants and the absolute failure to provide a positive course of essential medical treatment was caused in part by the fact that the deceased was black, and he was denied basic humane medical treatment, which resulted in his death, on the basis of race, in violation of the equal protection component of the Fifth Amendment of the United States Constitution.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for $500,000 in actual damages plus the costs of this action, including attorneys fees, and such other relief as this Court deems just and proper.

### COUNT IV

66-86. Plaintiff hereby realleges and incorporates paragraphs 1 through 21 of Count I as paragraphs 66 through 86 of this Count IV, as if fully set forth herein.

87. The above alleged actions of the Defendants were of a malicious and intentional nature and manifest a deliberate indifference of requests for essential treatment.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally, for $500,000 in punitive damages, plus costs and any relief which this Court deems appropriate.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL FOUR COUNTS.

Respectfully submitted,

MICHAEL DEUTSCH
DENNIS CUNNINGHAM
CHARLES HOFFMAN
Attorneys for Plaintiff
110 South Dearborn, Room 707
Chicago, Illinois 60603
312/236-3504

Digitized by Google

# EXHIBIT 2

2452\315269639.v1







## About

We believe in improving the health and quality of life of our patients one person at a time. We strive to create healthier communities—wherever we go. For too many of our patients, we provide their first formal medical examination in years, or ever. Many experience trauma, poor living conditions, or suffer from undiagnosed mental illnesses that adversely impact their lives and well-being. Our team of mission-driven professionals transform public health by delivering hope and healing and promoting health equity. We treat our patients with dignity and compassion, and work cooperatively with our partners to deliver the best care.

We deliver medical and mental healthcare through a family of local and state providers in correctional facilities, inpatient and residential treatment facilities, forensic treatment facilities, and civil commitment centers. Wellpath employs more than 15,000 professionals in 37 states across America and Australia, and cares for almost 300,000 patients each day.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter: 11 |
| | ) | |
| WELLPATH HOLDINGS, INC., et al. , | ) | |
| | ) | Lead Case No. 24-90533 (ARP) |
| Debtor. | ) | Case No. 24-90563 |
| | ) | |

## ORDER GRANTING CLAIMANT MARZAN WILLIAMS' MOTION FOR RELIEF FROM AUTOMATIC STAY AS TO NON-DEBTOR DEFENDANTS AND TO ALLOW INSURANCE COVERED LIABILITY ACTION TO PROCEED

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and Marzan Williams (the "Movant" or "Mr. Williams," as applicable, and together with the Debtors, the "Parties") hereby enter into this stipulation and agreed order (this "Stipulation and Agreed Order") as follows:

WHEREAS, in 2021, Mr. Williams brought an action alleging civil rights violations against non-debtor R.A. Heisner and other employees and contractors of the federal Metropolitan Correctional Center in Chicago, Illinois in the U.S. District Court for the Northern District of Illinois in the case styled *Williams v. Heisner et al.* Case No. 1:21-cv-730 (the "Lawsuit");

WHEREAS, in 2023, Mr. Williams amended his complaint to include claims against Wellpath, LLC as well as other non-Debtor defendants (collectively, the defendants in the Lawsuit are referred to as the "Defendants") in the Lawsuit;

WHEREAS, in the Lawsuit, Mr. Williams alleges that the Defendants showed deliberate indifference to Mr. Williams' serious medical needs resulting in cruel and unusual punishment related to the civil rights violations, torts, and other causes of action described in the Lawsuit;

WHEREAS, the Defendants dispute any and all liability with regard to any of the damages alleged to have been suffered by Mr. Williams;

WHEREAS, on November 11, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court");

WHEREAS, on November 12, 2024, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 17] (the "Stay Extension Motion") seeking extension of the automatic stay imposed by section 362(a) of the Bankruptcy Code to Non-Debtor Defendants (as defined in the Stay Extension Motion), and the Court entered the *Amended Interim Order Enforcing the Automatic Stay* [Docket No. 69] (the "Stay Extension Order") staying all Lawsuits (as defined in the Stay Extension Motion) in their entirety, including claims against the Non-Debtor Defendants, on an interim basis;

WHEREAS, on December 10, 2024, the Court entered its *Final Order (I) Authorizing the Debtors to (A) Continue Insurance Coverage Entered Into Prepetition and Satisfy Prepetition Obligations Related Thereto, (B) Honor and Renew the Premium Financing Agreements Entered Into Prepetition and Satisfy Obligations Related Thereto, (C) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies, (D) Continue to Pay Brokerage Fees, and (E) Maintain the Surety Bond Program and the Letters of Credit, and (II) Granting Related Relief* [Docket No. 361] (the "Insurance Coverage Order") which authorized the Debtors to take necessary actions to maintain and continue the insurance policies detailed in the Debtor's emergency motion seeking authorization to continue insurance coverage [Docket No. 11];

WHEREAS, the Insurance Coverage Order upholds the terms of the relevant insurance policies and permits the relevant insurers to provide coverage within the terms of the relevant policies.

WHEREAS, on January 6, 2025, the Movant filed *Claimant Marzan Williams' Motion for Relief from Automatic Stay as to Non-Debtor Defendants and to Allow Insurance Covered Liability Action to Proceed* [Docket No. 814] (the "Lift Stay Motion") seeking to lift the automatic stay with respect to the Defendants to continue the Lawsuit;

**NOW, THEREFORE, IT IS STIPULATED AND AGREED:**

1.      The Parties agree that the automatic stay imposed by section 362 of the Bankruptcy Code and extended to non-Debtor Defendants does not extend to claims or causes of action against non-Debtors governmental entities or their employees. As such, the Lawsuit, as it pertains to the non-Debtor governmental entities or their employees, may proceed and continue through its conclusion.

2.      The Parties agree that the automatic stay does not extend to claims or causes of action against alleged against Debtor, Wellpath, LLC, to the extent those claims are covered by one of the insurance policies referred to in the Insurance Coverage Order.

4.      The Court retains exclusive jurisdiction over any matter arising from or related to the implementation, interpretation, and enforcement of this Stipulation and Agreed Order.

5.      Any Bankruptcy Rule or Bankruptcy Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

*[signature page follows]*

Signed: _____

_____
Alfredo R. Perez
United States Bankruptcy Judge