**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 21, 384, 563, 817** |

**NOTICE OF FILING OF PROPOSED SALE ORDER
RELATING TO THE RECOVERY SOLUTIONS ASSETS SALE**

**PLEASE TAKE NOTICE** that, on November 11, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (the "Court") commencing these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that, on December 11, 2024, the Court entered the *Stipulated and Agreed Amended Order (I) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving Entry Into a Stalking Horse Purchase Agreement for the Recovery Solutions Assets, (III) Authorizing the Recovery Solutions Expense Reimbursement, (IV) Authorizing Potential Selection of Stalking Horse Bidders for the Corrections Assets and Approving Related Corrections Asset(s) Bid Protections, (V) Establishing Related Dates and Deadlines, (VI) Approving the Form and Manner of Notice Thereof, (VII) Approving the Assumption and Assignment Procedures, and (VIII) Granting Related Relief* [Docket No. 384] (the "Bidding Procedures Order").[2]

**PLEASE TAKE FURTHER NOTICE** that, on December 20, 2024, the Debtors filed the *Notice of Amended Timeline for Recovery Solutions / Consolidated Sale Transaction* [Docket No. 563] (the "Amended Timeline"). The Amended Timeline set forth the revised dates and deadlines related to the Recovery Solutions / Consolidated Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to paragraph 8 of the Bidding Procedures Order and the Amended Timeline, the Debtors were to conduct a Recovery Solutions / Consolidated Auction on January 7, 2025 at 9:00 a.m. (prevailing Central Time) in the event that the Debtors timely received more than one Qualified Bid for the Recovery Solutions Assets.

---

[1]  A complete list of the Debtors (as defined below) in these chapter 11 cases may be obtained on the website of the debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

[2]  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Bidding Procedures Order or the Recovery Solutions Stalking Horse Agreement, as applicable.

**PLEASE TAKE FURTHER NOTICE** that the Debtors did not receive a Qualified Bid for the Recovery Solutions Assets (other than the Recovery Solutions Stalking Horse Bid) by the Recovery Solutions / Consolidated Bid Deadline (*i.e.,* January 6, 2025 at 4:00 p.m. (prevailing Central Time)) and, therefore, (a) the Recovery Solutions Stalking Horse Bid is the only Qualified Bid for the Recovery Solutions Assets and (b) the Debtors, after consulting with the Consultation Parties, designated the Recovery Solutions Stalking Horse Bid as the Successful Bid for the Recovery Solutions Assets and cancelled the Auction. *See Notice of Cancellation of Auction* [Docket No. 817].

**PLEASE TAKE FURTHER NOTICE** that a copy of the proposed sale order approving the Sale Transaction is attached hereto as **Exhibit A (**the "Sale Order"). The proposed Sale Order is filed in a proposed form and is subject to continued review, comment, and approval by the Recovery Solutions Stalking Horse Bidder and further consultation with the Consultation Parties.

**PLEASE TAKE FURTHER NOTICE** that the Recovery Solutions Stalking Horse Agreement contemplates the sale of, among other things, 100% of the equity interests in each of (a) Debtor Wellpath Recovery Solutions, LLC, (b) Debtor Correct Care of South Carolina, LLC, (c) Debtor Harborview Center, LLC, and (d) Debtor Behavioral Health Management Systems, LLC (collectively, the "Acquired Recovery Solutions Debtors") to the Recovery Solutions Stalking Horse Bidder. Accordingly, the proposed Sale Order provides for the dismissal of the chapter 11 cases of the Acquired Recovery Solutions Debtors (Case No. 24-90538 (ARP), Case No. 24-90545 (ARP), Case No. 24-90548 (ARP), and Case No. 24-90565 (ARP)) upon the Closing of the Sale Transaction contemplated by the Recovery Solutions Stalking Horse Agreement. The Debtors will file with the Court a notice of dismissal of the Acquired Recovery Solutions Debtors' chapter 11 cases following the Closing of the Sale Transaction contemplated by the Recovery Solutions Stalking Horse Agreement.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider approval of the Sale Transaction (the "Sale Hearing") is scheduled for Wednesday, January 8, 2025 at 1:00 p.m. (prevailing Central Time) before the Honorable Alfredo R Pérez, United States Bankruptcy Judge. Parties may appear in person or by remote participation at the Sale Hearing. Those who wish to appear in person may do so at Courtroom 400, 515 Rusk Street, Houston, TX 77002. For those who wish to participate remotely, the audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's home page. The meeting code is "Judge Perez." Click the settings icon in the upper right corner and enter your name under the personal information setting.

**PLEASE TAKE FURTHER NOTICE** that all documents filed in these chapter 11 cases, including the Bidding Procedures Order and the proposed Sale Order, and other relevant case information in these chapter 11 cases are available free of charge on the Debtors' case information website located at https://dm.epiq11.com/wellpath or can be requested by email at WellpathInfo@epiqglobal.com.

Dated:  January 6, 2025
Dallas, Texas

/s/ Marcus A. Helt
Marcus A. Helt (Texas Bar #24052187)
MCDERMOTT WILL & EMERY LLP
2501 N. Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone:     (214) 295-8000
Facsimile:      (972) 232-3098
Email:            mhelt@mwe.com

-and-

Felicia Gerber Perlman (admitted *pro hac vice*)
Bradley Thomas Giordano (admitted *pro hac vice*)
Jake Jumbeck (admitted *pro hac vice*)
Carole Wurzelbacher (admitted *pro hac vice*)
Carmen Dingman (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone:     (312) 372-2000
Facsimile:      (312) 984-7700
Email:            fperlman@mwe.com
                     bgiordano@mwe.com
                     jjumbeck@mwe.com
                     cwurzelbacher@mwe.com
                     cdingman@mwe.com

-and-

Steven Z. Szanzer (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone:     (212) 547-5400
Facsimile:      (212) 547-5444
Email:            sszanzer@mwe.com

*Counsel to the Debtors and Debtors in Possession*

3

**<u>Certificate of Service</u>**

I certify that, on January 6, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Marcus A. Helt*
Marcus A Helt

## Exhibit A

**Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Debtors. | (Jointly Administered)<br>**Re: Docket No. 21, 384** |

**ORDER (A) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS
AND CERTAIN EQUITY INTERESTS FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS, AND ENCUMBRANCES, (B) APPROVING THE ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES,
(C) DISMISSING THE CHAPTER 11 CASES OF THE ACQUIRED RECOVERY
SOLUTIONS DEBTORS, AND (D) GRANTING RELATED RELIEF**

Upon the *Debtors' Emergency Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Entry into a Stalking Horse Purchase Agreement for the Recovery Solutions Assets, (C) Authorizing the Recovery Solutions Expense Reimbursement, (D) Authorizing Potential Selection of Stalking Horse Bidders for the Corrections Assets and Approving Related Corrections Assets(s) Bid Protections, (E) Establishing Related Dates and Deadlines, (F) Approving the Form and Manner of Notice Thereof, And (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances (B) Authorizing the Assumption and assignment of Executory Contracts and Unexpired Leases, and (III) Granting*

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

*Related Relief* [Docket No. 21] (the "<u>Motion</u>"), [2] seeking entry of an order (this "<u>Order</u>") authorizing and approving (a) a sale of the Acquired Assets, including 100% of the equity interests in each of (i) Wellpath Recovery Solutions, LLC, (ii) Correct Care of South Carolina, LLC, (iii) Harborview Center, LLC, and (iv) Behavioral Health Management Systems, LLC (collectively, the "<u>Acquired Recovery Solutions Debtors</u>" and, the equity interests therein, the "<u>Acquired Equity Interests</u>") to RS Purchaser LLC (the "<u>Recovery Solutions Stalking Horse Bidder</u>" or the "<u>Buyer</u>"), in accordance with the terms and conditions contained in the Equity Interest and Asset Purchase Agreement by and among the Debtors and the Buyer (as amended, supplemented, or otherwise modified by the parties thereto, and including the disclosure schedules and exhibits attached thereto, the "<u>Recovery Solutions Stalking Horse Agreement</u>") free and clear of all liens, claims, and encumbrances to the fullest extent permitted by law, except for any assumed liabilities ("<u>Assumed Liabilities</u>") and certain permitted encumbrances as determined by the Debtors and the Buyer (solely to the extent expressly set forth and defined in the Recovery Solutions Stalking Horse Agreement, the "<u>Permitted Liens</u>"), (b) authorizing the assumption and assignment of the Assumed Contracts, and (c) granting related relief; and this Court having entered the *Stipulated and Agreed Amended Order (I) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving Entry Into a Stalking Horse Purchase Agreement for the Recovery Solutions Assets, (III) Authorizing the Recovery Solutions Expense Reimbursement, (IV) Authorizing the Potential Selection of Stalking Horse Bidders for the Corrections Assets and Approving Related Corrections Asset(s) Bid Protections, (V) Establishing Related Dates and Deadlines, (VI) Approving the Form and Manner of Notice Thereof, (VII) Approving the*

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Bidding Procedures Order, or the Recovery Solutions Stalking Horse Agreement, as applicable.

*Assumption and Assignment Procedures, and (VIII) Granting Related Relief* [Docket No. 384] (the "Bidding Procedures Order"), that, among other things, (a) authorized and approved the terms of and the Debtors' entry into the Recovery Solutions Stalking Horse Agreement, (b) approved the Recovery Solutions Expense Reimbursement, and (c) approved the Bidding Procedures for the sale of the Debtors' Assets, including the process, timeline, and notice thereof; and the Debtors having determined after an extensive marketing and sale process and the Debtors having received no Qualified Bids other than the Recovery Solutions Stalking Horse Bid by the Bid Deadline, that the Buyer has submitted the highest or otherwise best bid to purchase the Acquired Assets (including the Acquired Equity Interests); and the Debtors having selected the Buyer as the Successful Bidder in accordance with the Bidding Procedures; and upon due, adequate, and sufficient notice of the Motion, the Recovery Solutions Stalking Horse Agreement, and all other related transactions contemplated thereunder and in this Order (such transactions collectively, the "Sale"); and this Court having held a hearing to consider the relief requested in the Motion on a final basis (the "Sale Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion, the Tempke Declaration, the Schoenholtz Declaration, the First Day Declaration; the *Declaration of Timothy J. Dragelin as Chief Restructuring Officer and Chief Financial Officer of Wellpath Holdings, Inc. and Certain of its Affiliates in Support of Order (A) Approving the Sale of Certain of the Debtors' Assets and Certain Equity Interests Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Dismissing the Chapter 11 Cases of the Recovery Solutions Debtors, and (D) Granting Related Relief* (the "Dragelin Declaration"), and the *Supplemental Declaration of Jason Schoenholtz in Support of Order (A) Approving the Sale of Certain of the Debtors' Assets and Certain Equity Interests Free and Clear of Liens, Claims,*

3

*Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Dismissing the Chapter 11 Cases of the Acquired Recovery Solutions Debtors and (D) Granting Related Relief* (the "<u>Supplemental Declarations</u>" and, together with the Dragelin Declaration, the Tempke Declaration, the Schoenholtz Declaration, the First Day Declaration, the "<u>Declarations</u>") and at the Sale Hearing establish just cause for the relief granted herein; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

　　　　**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

**I.　　Jurisdiction, Final Order, and Statutory Predicates.**

　　　　A.　　This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges,* General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.);.  Venue of these chapter 11 cases and the Motion is proper in the United States District Court for the Southern District of Texas and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b).

　　　　B.　　This Court having found that it may enter a final order consistent with Article III of the United States Constitution.

---

[3]　These findings and conclusions constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.  All findings of fact and conclusions of law announced by this Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

C.      The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.

**II.      Notice.**

D.      As evidenced by the certificates of service and publication filed with this Court [Docket Nos. 230, 278, 341, 345, 495, 511, 579, 612, 712], and as demonstrated by the evidence presented at the Sale Hearing, proper, timely, adequate, and sufficient notice of the Motion, the contracts to be potentially assumed and assigned in connection with the Sale, including the Assumed Contracts, the Sale Hearing, the Sale, and the deadlines related thereto were provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and the Bidding Procedures Order, to each Sale Notice Party.  With respect to entities whose identities are not reasonably ascertained by the Debtors after reasonable diligence, publication of the Sale Notice (i) in the national edition of *USA Today* on November 25, 2024 and November 26, 2024, (ii) in *The New York Times* on November 26, 2024, (iii) in *Prison Legal Notice* on December 5, 2024, and (iv) on the website maintained by Epiq Corporate Restructuring LLC, the Debtors' claims and noticing agent in these chapter 11 cases, located at https://dm.epiq11.com/case/wellpath on November 12, 2024, , was, and is deemed, sufficient and reasonably calculated under the circumstances to reach such entities.  The notices described above and in the Motion and Bidding Procedures Order were good, sufficient, and appropriate under the circumstances and reasonably calculated to reach and apprise all known and unknown holders of the Liens, Claims, and Interests (each as defined below), and no other or further notice of the Motion, the Sale, the Sale Hearing, the potential assumption and assignment of the Assumed Contracts, or the related Cure Costs is, or shall be, required.

E.      A reasonable opportunity to object and be heard with respect to the Sale, the Motion, and the relief requested therein has been afforded to all interested parties.

F.      The disclosures made by the Debtors concerning the Motion, the Recovery Solutions Stalking Horse Agreement, the Bidding Procedures, and the Sale Hearing were good, complete, and adequate.

## III.    Business Justification

G.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and reasonable business purpose and justification for entering into the Recovery Solutions Stalking Horse Agreement, which provides for, among other things, the sale of the Recovery Solutions Assets (including, for the avoidance of doubt, the Acquired Equity Interests) to the Buyer.  The Acquired Recovery Solutions Debtors are set forth on Schedule 2.1(f)(i) to the Recovery Solutions Stalking Horse Agreement, which may be amended or revised in accordance with the Recovery Solutions Stalking Horse Agreement from time to time in accordance with the terms thereof.  The Debtors have, among other things, determined in their business judgment that, under the circumstances, the benefits of consummating the Sale on the terms and conditions embodied in the Recovery Solutions Stalking Horse Agreement are in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

## IV.    Compliance with Bidding Procedures and Bidding Procedures Order

H.      On December 11, 2024, this Court entered the Bidding Procedures Order.  The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Acquired Assets (including the Acquired Equity Interests). The Debtors conducted the marketing and sale process for the Acquired Assets (including the Acquired Equity Interests) without collusion and in accordance with the Bidding Procedures.

I.      As demonstrated by the Declarations, the testimony, and other evidence proffered or adduced at the Sale Hearing, and the representations of counsel made on the record at the Sale

Hearing, the Debtors have adequately marketed the Acquired Assets and conducted the sale process in compliance with the Bidding Procedures and the Bidding Procedures Order, and the sale process was conducted in a noncollusive, fair, and good-faith manner.  The Debtors have afforded potential purchasers a full and fair opportunity to participate in the bidding process for the Acquired Assets and to make higher or otherwise better offers.  In accordance with the Bidding Procedures Order, the bid submitted by the Buyer and memorialized by the Recovery Solutions Stalking Horse Agreement was deemed a Qualified Bid and the Buyer was a Qualified Bidder eligible to participate at the Auction.  In accordance with the Bidding Procedures and the Bidding Procedures Order, the Debtors determined that the bid submitted by the Buyer and memorialized by the Recovery Solutions Stalking Horse Agreement is the highest or otherwise best offer for the Acquired Assets received by the Debtors.

**V.      Sale in Best Interests**

J.      Approval of the Recovery Solutions Stalking Horse Agreement, the Sale, and all related transactions at this time, and the actions to be taken by the Debtors and the Buyer, are appropriate under the circumstances of these chapter 11 cases and are in the best interests of the Debtors, their estates and creditors, and all other parties in interest.  The Debtors have demonstrated both (i) good, sufficient, and reasonable business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan, in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' estates.

K.      The Debtors determined, in their reasonable business judgment, in a manner consistent with their fiduciary duties, that the Buyer's Qualified Bid, as documented in the Recovery Solutions Stalking Horse Agreement, was the highest or otherwise best Qualified Bid

for the Acquired Assets.  Consummating the Sale will yield greater value to the Debtors' estates than would have been provided by any other available alternative transaction.

## VI.    Good Faith of Buyer

L.      The Debtors and the Buyer, and their respective counsel and other advisors, have not engaged in any conduct that would cause or permit the Recovery Solutions Stalking Horse Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.  The Buyer has not acted in a collusive manner with any Person, and the purchase price was not controlled by any agreement among potential or actual bidders, all of whom acted in good faith, at arm's-length, and in a noncollusive manner.  The Recovery Solutions Stalking Horse Agreement was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions.

M.      None of the Debtors nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.  Among other things, (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets, (ii) the Debtors and the Buyer complied with the provisions of the Bidding Procedures Order and the Bidding Procedures, (iii) the Buyer agreed to subject its bid to the Bidding Procedures, (iv) the Debtors and the Buyer, and their respective management, board of directors, board of managers (or comparable governing authority), employees, agents, advisors, and representatives, each actively participated in the marketing and sale process, and each acted in good faith and without collusion or fraud of any kind, (v) all payments to be made by the Buyer, and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed, (vi) the Buyer was designated the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures and the Bidding Procedures Order, and (vii) no common

identity of directors or controlling stockholders exists between the Buyer, on the one hand, and the Debtors, on the other hand.

      N.     The Buyer is purchasing the Acquired Assets (including the Acquired Equity Interests) pursuant to the Recovery Solutions Stalking Horse Agreement in good faith and for fair and reasonable consideration, and the Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code. The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale, and the Buyer would not consummate the Sale without such protections. The Buyer is, therefore, entitled to the full rights, benefits, privileges, and protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and nonbankruptcy law in connection with this proceeding, the Sale, each term of the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto), and each term of this Order.

## VII.    Highest or Otherwise Best Offer

      O.     As demonstrated by the Declarations, the evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing, the Debtors' marketing and sale process with respect to the Acquired Assets (including the Acquired Equity Interests) in accordance with the Bidding Procedures afforded a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Acquired Assets. The Debtors conducted a marketing and sale process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures and the Bidding Procedures Order. As of the Bid Deadline, no higher or otherwise better offers for the Acquired Assets have been made.

      P.     As demonstrated by the Declarations, the evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing, (i) the Recovery

Solutions Stalking Horse Bid constitutes the highest or otherwise best offer for the Acquired Assets, and (ii) the Debtors' determination that the Recovery Solutions Stalking Horse Bid maximizes value for the benefit of the Debtors' estates and constitutes the highest or otherwise best offer for the Acquired Assets, each constitutes a valid and reasonable exercise of the Debtors' business judgment and is in accordance and compliance with the Bidding Procedures and the Bidding Procedures Order.   The Recovery Solutions Stalking Horse Agreement provides fair and reasonable terms for the purchase of the Acquired Assets.

Q.    Approval of the Motion and the Sale and the prompt consummation of the transactions contemplated thereby will maximize the value of each of the Debtors' estates and are in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

## VIII.   Corporate Authority

R.    Each applicable Debtor (i) has full requisite corporate or other organizational power and authority to execute, deliver, and perform the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto), and to consummate the Sale contemplated thereby, and such execution, delivery, and performance have been duly and validly authorized by all necessary corporate or other organizational action of each applicable Debtor, (ii) has taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto) and the consummation by the Debtors of the Sale contemplated thereby, including as required by their respective organizational documents, and, upon execution thereof, each such agreement executed by such Debtor will be duly and validly executed and delivered by such Debtor and enforceable against such Debtor in accordance with its terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, will constitute a valid

and binding obligation of such Debtor.  No government, regulatory, or other consents or approvals, other than those expressly provided for in the Recovery Solutions Stalking Horse Agreement, are required for the execution, delivery, and performance by the Debtors of the Recovery Solutions Stalking Horse Agreement or for the consummation of the Sale contemplated thereby, or to take, or cause to be taken, all such other actions as may be reasonably necessary to effectuate or evidence the Sale contemplated by the Recovery Solutions Stalking Horse Agreement.

## IX.     No Merger; Buyer Not an Insider; No Successor Liability

S.     The Buyer is not a "successor" to, a mere continuation of, or an alter ego of the Debtors or their estates, and there is no continuity of enterprise or common identity between the Buyer and the Debtors by reason of any theory of law or equity.  The Buyer is not holding itself out to the public as a successor to or a continuation of the Debtors or their estates.  The Sale does not amount to a consolidation, succession, merger, or de facto merger of Buyer and the Debtors. Immediately prior to the Closing Date, neither the Buyer, nor any of its affiliates, subsidiaries, officers, directors, members, partners or principals, or any of their respective representatives, successors or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code or an affiliate of the Debtors, or their "insiders," as the term "affiliate" is defined in section 101(2) of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling equityholders existed between the Debtors and the Buyer.  The transfer of the Acquired Assets to the Buyer, and the assumption of the Assumed Liabilities by the Buyer, except as otherwise explicitly set forth in the Recovery Solutions Stalking Horse Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the Debtors or the operation of the Debtors' businesses prior to the Closing or by reason of such transfer, including under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any foreign jurisdiction, based, in whole or in part, directly or indirectly, on any, or

11

any theory of, successor, vicarious, antitrust, environmental, revenue, pension, ERISA, tax, labor (including any WARN Act), employment or benefits, de facto merger, business continuation, substantial continuity, alter ego, derivative, transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line, products liability, or other applicable law, rule, or regulation (including filing requirements under any such law, rule, or regulation), or theory of liability, whether legal, equitable, or otherwise (collectively, the "Successor or Other Liabilities"). Pursuant to the Recovery Solutions Stalking Horse Agreement, the Buyer shall have no liability for the Excluded Liabilities.

**X.     Binding and Valid Transfer**

T.     The transfer of the Acquired Assets (including the Acquired Equity Interests) to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets (including the Acquired Equity Interests), and will vest the Buyer with all right, title, and interest that the Debtors or their estates possess with respect to the Acquired Assets (including the Acquired Equity Interests), free and clear, to the fullest extent permitted by law, of all Interests (as defined below) (other than the Permitted Liens and the Assumed Liabilities) in or against such assets and equity interests comprising the Acquired Assets (including the Acquired Equity Interests), as applicable, as set forth in the Recovery Solutions Stalking Horse Agreement.  Immediately prior to consummating the Sale, the Acquired Assets (including the Acquired Equity Interests) constitute property of the Debtors' estates, good title is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code, and the Debtors are the sole and rightful owners of the Acquired Assets (including the Acquired Equity Interests).  Upon and following the consummation of the Sale, the Buyer shall be vested with good and marketable title to the Acquired Assets (including the Acquired Equity Interests), and shall be the sole and rightful owner of the Acquired Assets (including the Acquired Equity Interests).

U.      The Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto) are valid and binding contracts between the Debtors and the Buyer.  The Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto) was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, or foreign jurisdiction.  As demonstrated by the Declarations, the consideration provided by the Buyer in respect of the Sale (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors more expeditiously than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, and similar laws and acts).  Neither the Debtors nor the Buyer is entering into the Sale contemplated by the Recovery Solutions Stalking Horse Agreement fraudulently for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer claims.

## XI.      Section 363(f) Is Satisfied

V.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full with respect to each Interest in the Acquired Assets (including the Acquired Equity Interests); therefore, the Debtors may sell the Acquired Assets (including the Acquired Equity Interests) free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities) in or against such assets and equity interests that comprise the Acquired Assets (including the Acquired Equity Interests).

W.      The Buyer would not have entered into the Recovery Solutions Stalking Horse Agreement, and would not consummate the transactions contemplated thereby, if (i) the Sale of the Acquired Assets (including the Acquired Equity Interests) to the Buyer was not free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities) of any kind or nature whatsoever or (ii) if the Buyer would, or in the future could, be liable for any of the Interests (other than the Permitted Liens and the Assumed Liabilities).   The Buyer will not consummate the transactions contemplated by the Recovery Solutions Stalking Horse Agreement unless this Court expressly orders that none of the Buyer, any of the Buyer's Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect equityholders (including any equity sponsor), professionals, or representatives, successors, or assigns (collectively referred to as the "Buyer Group"), or their respective assets or properties, including, without limitation, the Acquired Assets (including the Acquired Equity Interests), will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff, recoupment, or otherwise, directly or indirectly, any Interests (other than the Permitted Liens and the Assumed Liabilities), including rights or claims based on any Successor or Other Liabilities.   The total consideration to be provided under the Recovery Solutions Stalking Horse Agreement reflects the Buyer's reliance on this Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to and possession of the Acquired Assets (including the Acquired Equity Interests) free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities) of any kind or nature whatsoever (including, without limitation, any potential Successor or Other Liabilities).

X.      Not transferring the Acquired Assets free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities), including rights or claims based on any successor,

14

transferee, derivative, or vicarious liability or any similar theory and/or applicable state, federal, foreign law, or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Acquired Assets other than pursuant to a transfer that is free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities) of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

Y.     The Debtors may sell the Acquired Assets (including the Acquired Equity Interests) free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests that did not timely object to the Sale or the Motion, or withdrew objections to the Sale or the Motion, are deemed to have consented to the Sale and the Motion pursuant to section 363(f)(2) of the Bankruptcy Code.  All Interests (except to the extent that such encumbrances are Permitted Liens or Assumed Liabilities) fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, all holders of Interests are adequately protected.

## XII.   Cure Costs and Adequate Assurance of Future Performance

Z.     The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order (i) is integral to the Recovery Solutions Stalking Horse Agreement, (ii) is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and (iii) represents the reasonable exercise of reasonable and prudent business judgment by the Debtors. The assumption and assignment of the Assumed Contracts (i) is necessary to sell the Acquired Assets to the Buyer, (ii) allows the Debtors to maximize the value of the Acquired Assets, including the Assumed Contracts, (iii) limits the losses suffered by the counterparties to the Assumed Contracts (the "Counterparties"), and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection

of the Assumed Contracts.  For these reasons, the Debtors have exercised reasonable business judgment in assuming and assigning the Assumed Contracts and such assumption and/or assignment is in the best interests of the Debtors' estates.

AA.    Pursuant to section 365(f) of the Bankruptcy Code, each Assumed Contract to be assumed and assigned under the Recovery Solutions Stalking Horse Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in such contract prohibiting, restricting, or conditioning its assignment or transfer. No section of any of the Assumed Contracts that would prohibit, restrict, or condition, whether directly or indirectly, the use, assumption, or assignment of any of the Assumed Contracts in connection with the Sale shall have any force or effect.

BB.    Subject to the terms of the Recovery Solutions Stalking Horse Agreement, the Debtors or the Buyer, as the case may be, have cured or have demonstrated the ability to cure any default under any Assumed Contract with respect to any act or omission that occurred prior to the date of assignment of such Assumed Contract.  The Debtors' or Buyer's, as applicable and in accordance with the Recovery Solutions Stalking Horse Agreement, promises to pay the Cure Costs upon the Closing Date, and the Buyer's promises to perform the obligations under the Assumed Contracts thereafter, shall constitute adequate assurance of their future performance of and under the Assumed Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  Pursuant to the Bidding Procedures Order, all counterparties to Assumed Contracts that failed to file with this Court and serve on the Objection Notice Parties a timely objection are forever barred from asserting any such objection with regard to the assumption or assignment of their Assumed Contract.  This Court finds that, with respect to all such Assumed Contracts, the payment of Cure Costs is appropriate and is deemed to fully satisfy the Debtors'

obligations under section 365(b) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the applicable Debtor to the Buyer of each of the Assumed Contracts.  To the extent any Assumed Contract is not an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Buyer in accordance with the terms of this Order that are applicable to the Acquired Assets.

**XIII.   Not a *Sub Rosa* Plan**

CC.     The Sale does not constitute a *sub rosa* chapter 11 plan or an element of such plan for which approval has been sought without the protection that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of any Debtor's creditors nor impermissibly dictates a liquidating plan for any Debtor.

**XIV.   Necessity of Order**

DD.     The Buyer would not have entered into the Recovery Solutions Stalking Horse Agreement and would not consummate the Sale without all of the relief provided for in this Order. The consummation of the Sale pursuant to this Order and the Recovery Solutions Stalking Horse Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of the Debtors, their estates and creditors, and all other parties in interest.

**XV.    Compelling Circumstances for an Immediate Sale**

EE.     The Debtors' decision to enter into the Recovery Solutions Stalking Horse Agreement and to consummate the Sale represents an exercise of reasonable business judgment. The Debtors have demonstrated both (i) good, sufficient, and reasonable business purposes and justifications for approving the Recovery Solutions Stalking Horse Agreement and (ii) compelling circumstances for the immediate approval and consummation of the Sale contemplated by the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments

delivered pursuant thereto) outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that the prompt consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' estates and to expedite cash distributions to creditors. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the Sale transaction contemplated by this Order.

## XVI.   Final Order

FF.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

### ORDERED, ADJUDGED, AND DECREED THAT:

## I.   General Provisions

1.     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

2.     The Motion and the relief requested therein is granted and approved, and the Sale transaction contemplated in the Motion and the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto) are approved, in each

case as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Order.

3.　　All objections to, reservations of rights regarding, or other responses to the Motion or the relief requested therein, the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto), the Sale, the entry of this Order, or the relief granted herein, including any objections to Cure Costs or the assumption and/or assignment of any of the Assumed Contracts, have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties to the extent not resolved.  Those parties who did not timely object to the Motion or the entry of this Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including pursuant to section 363(f)(2) of the Bankruptcy Code.

4.　　This Court's findings of fact and conclusions of law in the Bidding Procedures Order are incorporated herein by reference as if fully set forth in this Order.

## II.　　Approval of the Recovery Solutions Stalking Horse Agreement

5.　　The Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto), including, in each case, any amendments, supplements, and modifications thereto, and all of the terms and conditions thereof, are hereby approved.

6.　　Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto), (b) close the Sale as contemplated in the Recovery Solutions Stalking Horse Agreement and this Order, and (c) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of

their obligations as contemplated by the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto), including the assumption and assignment to the Buyer of the Assumed Contracts, in each case without further notice to or order of this Court, and including any actions that otherwise would require further approval by the Counterparties, equityholders, members, or boards of directors or managers, or similar governing bodies, as the case may be, without the need of obtaining such approvals, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto) and the Sale.  The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any amounts that become payable by the Debtors pursuant to the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto), together with other fees and expenses approved by this Court.  Such amounts shall (x) constitute allowed administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, (y) be treated with such priority if these chapter 11 cases convert to cases under chapter 7 of the Bankruptcy Code, and (z) not be discharged, modified, or otherwise affected by any reorganization or liquidation plan for any of the Debtors, except by written agreement with the Buyer (such agreement to be provided in the Buyer's sole discretion).

7.      The Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto) and this Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of Claims (whether known or unknown) against the Debtors, all holders of Liens or other Interests against, in, or on all or any portion of the Acquired Assets (including the Acquired Equity Interests),

all counterparties to any executory contract or unexpired lease of the Debtors (including all Counterparties), the Buyer, and all successors and assigns of each of the foregoing, including, any trustee subsequently appointed in these chapter 11 cases or upon a conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, and any Person seeking to assert rights on behalf of any of the foregoing or that belong to the Debtors' estates.

## III.    Transfer of the Acquired Assets

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors shall transfer the Acquired Assets, including, but not limited to, the Acquired Equity Interests and the Assumed Contracts, to the Buyer in accordance with the terms of the Recovery Solutions Stalking Horse Agreement; such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets; and the Buyer shall take title to and possession of such Acquired Assets free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities) in such assets and equity interests that comprise the Acquired Assets (including the Acquired Equity Interests).  Any and all valid and perfected Interests in the Acquired Assets (including the Acquired Equity Interests) shall attach to the net proceeds (if any) of the Sale with the same validity, force, and effect, if any, and in the same order of priority, that they have now as against the assets and equity interests comprising the Acquired Assets (including the Acquired Equity Interests), subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

9.      The transfer of the Acquired Assets to the Buyer in accordance with the terms of the Recovery Solutions Stalking Horse Agreement will be a legal, valid, enforceable, and effective sale and transfer of the Acquired Assets and the Assumed Liabilities and will render the Buyer fully liable for any and all Assumed Liabilities, and assumption of any Assumed Liabilities by the

Buyer shall constitute a legal, valid, and effective delegation of any Assumed Liabilities to the Buyer and shall divest the Debtors of all liability with respect to any Assumed Liabilities.

10.     The transfer of each of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets (including the Acquired Equity Interests), which transfer vests or will vest the Buyer with all right, title, and interest to the Acquired Assets free and clear of (a) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and encumbrances relating to, accruing, or arising any time prior to the Closing Date (collectively, the "Liens"), and (b) all debts (as that term is defined in section 101(12) of the Bankruptcy Code) arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trust, security interests or similar interests, conditional sale or other title retention agreements and other similar impositions, restrictions on transfer or use, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter ego liability, suits, credits, allowances, options, limitations, causes of action, choses in action, rights of first refusal or first offer, rebate, chargeback, credit, or return, proxy, voting trust or agreement or transfer restriction under any shareholder or similar agreement or encumbrance, easements, rights of way, encroachments, and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether imposed by agreement, understanding, law, equity, or otherwise (including rights with respect to Claims and liens (i) that purport to give to any party

a right or option to effect a setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Buyer's interests in the Acquired Assets (including the Acquired Equity Interests), or any similar rights, if any, or (ii) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attribute of ownership) (collectively, as defined in this clause (ii), the "<u>Claims</u>" and, together with the Liens and any other interests of any kind or nature whatsoever, the "<u>Interests</u>"), relating to, accruing, or arising any time prior to the Closing Date, with the exception of the Permitted Liens and the Assumed Liabilities.  For the avoidance of doubt, transfer of the Acquired Equity Interests shall be free and clear of Interests in such Acquired Equity Interests, but not free and clear of Interests in the assets held by the Acquired Recovery Solutions Debtors.

11.     Except as expressly assumed by the Buyer under the Recovery Solutions Stalking Horse Agreement, the transfer of the Acquired Assets to the Buyer and the assignment to the Buyer of the Assumed Contracts will not subject the Buyer to any liability whatsoever that may become due or owing under the Assumed Contracts prior to the Closing Date, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or foreign jurisdiction, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any Successor or Other Liabilities.

12.     The Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto) are valid and binding contracts between the Debtors and the Buyer and shall be enforceable pursuant to their terms.  The Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto), the Sale, and

the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, or any converted or successor cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.  The Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto) was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, or foreign jurisdiction.  As demonstrated by the Declarations, the consideration provided by the Buyer for the Acquired Assets pursuant to the Recovery Solutions Stalking Horse Agreement (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Acquired Assets, (c) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, and similar laws and acts).  Neither the Debtors nor the Buyer is entering into the transactions contemplated by the Recovery Solutions Stalking Horse Agreement with any fraudulent or otherwise improper purpose, including for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer.

13.     Each and every federal, state, local, and other governmental agency, governmental department, filing agent, filing officer, title agent, recording agency, secretary of state, federal, state, and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any

documents or instruments or who may be required to report or insure any title in or to the Acquired Assets, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Recovery Solutions Stalking Horse Agreement.   Neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments or documents to effectuate, consummate, and implement the provisions of this Order.  The Buyer may, but shall not be required to, file a certified copy of this Order in any filing or recording office in any federal, state, county, or other territory or jurisdiction in which any of the Debtors or their Affiliates is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Order as of the Closing Date.

14.     On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, if any, in the Acquired Assets, as such Liens may otherwise exist.  If any Person that has filed a financing statement, mortgage, mechanic's lien, *lis penden*s, or other statement, document, or agreement evidencing an Interest in any portion of the Acquired Assets (other than statements or documents with respect to Permitted Liens or Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or other similar documents necessary for the purpose of documenting the release of all Interests that such Person has in the Acquired Assets, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such Person with respect to the Acquired Assets, (b) the Buyer is hereby authorized to file, register, or otherwise record a certified

copy of this Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature in the Acquired Assets, and (c) the Buyer and the Debtors may seek in this Court, or any other court of appropriate jurisdiction, to compel the appropriate parties to execute termination statements, instruments of satisfaction, releases, and/or other similar documents with respect to all Interests that such Person has in the Acquired Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

15.     The Debtors and the Buyer shall have no obligation to proceed with the Closing until all conditions precedent to its obligations to proceed have been met, satisfied, or waived in accordance with the terms of the Recovery Solutions Stalking Horse Agreement.

16.     Unless the Buyer otherwise consents, all Persons that are in or come into possession of any portion of the Acquired Assets, at any time prior to the Closing Date, are hereby directed to surrender possession of such Acquired Assets to the Buyer on the Closing Date, or at such time thereafter as the Buyer may request.  Subject to the terms of this Order, all Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyer in accordance with the terms of the Recovery Solutions Stalking Horse Agreement and this Order.

17.     This Order is and shall be binding upon and govern the acts of all Persons (including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons or entities) who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record

or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing Persons shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise consummate the transactions contemplated by the Recovery Solutions Stalking Horse Agreement and this Order.

18.     To the maximum extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations or approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the Recovery Solutions Stalking Horse Agreement, including the Sale and the assumption and assignment of the Assumed Contracts.  To the extent that any license or permit necessary for the operation of the business of the Debtors is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code or otherwise transferable to the Buyer, the Buyer may apply for and obtain any necessary license or permit promptly and the Debtors are hereby authorized to cooperate with the Buyer in connection with any such application as the Buyer deems reasonably necessary or desirable, pursuant to the provisions of the Recovery Solutions Stalking Horse Agreement.

19.     Notwithstanding anything to the contrary herein, as of or following the Closing Date, as applicable, the Buyer shall assume, discharge, perform, or otherwise satisfy or address the Assumed Liabilities, subject to the terms of the Recovery Solutions Stalking Horse Agreement.

20.     Except as provided in the Recovery Solutions Stalking Horse Agreement and this Order, after the Closing Date, the Debtors and their estates shall have no further liabilities or obligations with respect to any Acquired Assets or Assumed Contracts, and all holders of Liens, Claims, or Interests are forever barred and estopped from asserting such Liens, Claims, or Interests against the Debtors, their successors or assigns, their property, or their assets or estates.  The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Acquired Assets or Assumed Contracts, as applicable.

21.     Notwithstanding anything to the contrary herein, effective immediately upon the Closing Date, all security interests, pledges, and liens of any kind, nature, or description on all equity interests in, and assets and property of, each Acquired Recovery Solutions Debtor granted in favor of (a) the First Lien Agent (as defined in the *Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates* [Docket No. 564] (the "Plan")) under the First Lien Documents (as defined in the Plan) and the DIP Orders and (b) the Second Lien Agent (as defined in the Plan) under the Second Lien Documents (as defined in the Plan) and the DIP Orders shall be automatically released and terminated, and each Acquired Recovery Solutions Debtor shall be automatically released from its obligations (including, for the avoidance of doubt, its obligation to guarantee the obligations with respect to the First Lien Claims, the Second Lien Claims, and the Adequate Protection Claims (as defined in the DIP Orders)) from each of the First Lien Documents, the Second Lien Documents, and the DIP Orders, including for the avoidance of

doubt, the Adequate Protection Liens (as defined in the DIP Orders) (the "Prepetition Release"). The First Lien Agent and the Second Lien Agent and/or the Debtors are hereby authorized to file, record, execute, and/or deliver UCC termination statements and any further instruments, releases, terminations, and documents evidencing the Prepetition Release.

22.     Notwithstanding anything to the contrary herein, effective immediately upon the Closing of the Sale, all security interests, pledges and liens of any kind, nature or description on all equity interests in, and assets and property of, each Acquired Recovery Solutions Debtor granted in favor of the DIP Collateral Agent (as defined in the Final DIP Order) under the DIP Documents shall be automatically released and terminated, and each Acquired Recovery Solutions Debtor shall be automatically released from its obligations (including, for the avoidance of doubt, its obligation to guarantee the obligations with respect to the DIP Obligations) from the DIP Documents (the "DIP Release").   The DIP Collateral Agent and/or the Debtors are hereby authorized to file record, execute and/or deliver the UCC termination statements and any further instruments, releases, terminations and documents evidencing the DIP Release.

## IV.     Assumption and Assignment of Assumed Contracts

23.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale, the applicable Debtors' assumption and assignment, to the Buyer, and the Buyer's acceptance of, the Assumed Contracts, on the terms set forth in the Recovery Solutions Stalking Horse Agreement, is hereby approved, and the requirements of section 365(b)(1) and 365(f)(2) with respect thereto are hereby found and deemed to be satisfied.

24.     The Debtors are hereby authorized and, unless the Debtors and the Buyer otherwise agree, directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the Closing Date, the Assumed Contracts free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities and as

otherwise required pursuant to the Recovery Solutions Stalking Horse Agreement) and (b) execute and deliver to the Buyer such documents or other instruments as Buyer deems may be necessary to assign and transfer the Assumed Contracts to the Buyer.

25.     With respect to the Assumed Contracts, and with respect to the Sale of the Acquired Assets to the Buyer,  (a) the Debtors may assume each of the Assumed Contracts in accordance with section 365 of the Bankruptcy Code, (b) the Debtors may assign each Assumed Contract in accordance with the Recovery Solutions Stalking Horse Agreement and sections 363 and 365 of the Bankruptcy Code, and, to the extent provided in section 365 of the Bankruptcy Code, such assignment may occur notwithstanding and without giving effect to any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, which provisions constitute unenforceable anti-assignment or ipso facto provisions which are void and of no force and effect, (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment, as applicable, to the Buyer of each Assumed Contract have been satisfied, and (d) effective upon the Closing Date, the Assumed Contracts shall be transferred and assigned to, and from and following the Closing Date remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any Assumed Contract that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assumption and assignment to the Buyer, except as provided in the Recovery Solutions Stalking Horse Agreement.  To the extent that any provision in any Assumed Contract assumed and assigned pursuant to this Order (y) prohibits, restricts, or

conditions, or purports to prohibit, restrict, or condition, such assumption and assignment or assignment (including, without limitation, any "change of control" provision), or (z) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following:  (i) the commencement of these chapter 11 cases, (ii) the insolvency or financial condition of any of the Debtors at any time before the closing of these chapter 11 cases, (iii) the Debtors' assumption and/or assignment of such Assumed Contract, (iv) a change of control or similar occurrence, or (v) the consummation of the Sale, then such provision shall be deemed modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition such assumption and assignment or assignment, to modify, terminate, or declare a breach or default under such Assumed Contract, or to exercise any other default-related rights or remedies with respect thereto.  With respect to the Sale of the Acquired Assets to the Buyer, all such provisions constitute unenforceable anti-assignment or ipso facto provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

26.    All defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing Date, or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assumed Contracts, shall be cured by the Debtors or the Buyer, as applicable, as set forth in the Recovery Solutions Stalking Horse Agreement and this Order.

27.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Contracts have been satisfied.  Each of the Assumed Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms as of the Closing Date, subject to any amendments or modifications agreed to between a Counterparty to an Assumed

Contract and the Buyer.  Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assumed Contract, and each Assumed Contract shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by this Order.  To the extent provided in the Recovery Solutions Stalking Horse Agreement, the Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

28.     Upon payment of the Cure Costs pursuant to the terms hereof and the Recovery Solutions Stalking Horse Agreement, and the Debtors' assignment of the Assumed Contracts to the Buyer under the provisions of this Order, no default or other obligations arising prior to the Closing Date shall exist under any Assumed Contract, and each Counterparty to an Assumed Contract is forever barred, estopped, and permanently enjoined from (a) declaring a default by the Debtors or the Buyer under such Assumed Contract based on acts or occurrences arising prior to or existing as of the Closing Date, (b) raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts, or (c) taking any other action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assumed Contract.  Each counterparty to an Assumed Contract hereby is also forever barred, estopped, and permanently enjoined from (y) asserting against the Debtors or the Buyer, or the property of any of them, any default or Claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date and (z) imposing or charging against Buyer or its affiliates

any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to Buyer of the Assumed Contracts.

29.    Subject to the terms and conditions of the Recovery Solutions Stalking Horse Agreement, and upon the Closing Date, the Debtors and/or the Buyer (as applicable) shall have (a) to the extent necessary, cured or provided adequate assurance of cure of, any default existing prior to the date hereof under the Assumed Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under the Assumed Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(B) of the Bankruptcy Code.  The Debtors' and/or the Buyer's (as applicable) obligations to pay the Cure Costs under the Recovery Solutions Stalking Horse Agreement and the Buyer's agreement to perform the obligations under the Assumed Contracts in accordance with the terms of the Recovery Solutions Stalking Horse Agreement shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Counterparties.

30.    To the furthest extent permitted by law, any party that may have had the right to consent to the assumption or assignment of a Assumed Contract is deemed to have consented to such assumption and assignment or assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to timely object to the assumption or assignment of such Assumed Contract in accordance with the Bidding Procedures Order, and the Buyer shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assumed Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

Any Counterparty to an applicable Assumed Contract that may be assumed and assigned to the Buyer who has not timely filed and served an objection shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such applicable Assumed Contract, and such applicable Assumed Contract, if designated as a Assumed Contract in accordance with the terms of the Recovery Solutions Stalking Horse Agreement, shall be deemed assumed by the Debtors and assigned to the Buyer on the Closing Date pursuant to this Order.

31.     To the extent a Counterparty to an Assumed Contract failed to timely object to the Cure Costs for any applicable Assumed Contract in accordance with the Bidding Procedures Order, such Cure Costs shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time.

32.     The requirements of Bankruptcy Rule 6006(f)(6) are hereby waived, for cause shown, with respect to the Motion and the relief requested therein.

33.     Upon and as of the Closing Date, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assumed Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

34.     The Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Acquired Assets.

35.     From the date of the entry of this Order, the Debtors may, with the consent of the Buyer settle objections to assumption and assignment of any applicable Assumed Contract,

including to proposed Cure Costs, without any further notice to or action by any party or order of this Court (including by paying any agreed Cure Cost); *provided* that notice to and consent of the Buyer shall be required to the extent that the Buyer is liable for such Cure Costs pursuant to the Recovery Solutions Stalking Horse Agreement or the Buyer's rights and remedies are otherwise altered in any way by the resolution.  Unless this Court orders otherwise, contemporaneously with the resolution of any such objection, the executory contract or unexpired lease underlying such objection shall be deemed an Assumed Contract without the necessity of obtaining any further order of this Court.

36.     Notwithstanding anything to the contrary herein, no executory contract or unexpired lease as to which a Counterparty to an Assumed Contract timely files and serves an objection shall be considered an Assumed Contract under this Order unless and until any timely objection to the assumption and assignment of such executory contract or unexpired lease has been resolved or overruled in accordance with the procedures set forth in the Bidding Procedures Order.

37.     Nothing in this Order, the Motion, or any other notice or any other document is or shall be deemed an admission by the Debtors or the Buyer that any contract is an executory contract or must be assumed and assigned pursuant to the Recovery Solutions Stalking Horse Agreement or in order to consummate the Sale.

**V.     No Successor Liability; Prohibition of Actions Against the Buyer; Debtor Release of Acquired Recovery Solutions Debtors and Buyer Group**

38.     The Buyer is not a "successor" to, a mere continuation of, or an alter ego of any of the Debtors or their estates, and there is no continuity of enterprise or common identity between the Buyer and the Debtors by reason of any theory of law or equity.  Neither the purchase of the Acquired Assets by the Buyer, nor the fact that the Buyer is using any of the Acquired Assets previously operated by the Debtors, will cause the Buyer to be deemed a successor to, combination

of, or alter ego of, in any respect, any of the Debtors or the Debtors' businesses, or incur any liability derived therefrom within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, antitrust, environmental, labor law (including any WARN Act), employment or benefits law, de facto merger, business continuation, substantial continuity, successor, vicarious, alter ego, derivative, transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or other law, rule, regulation (including filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine, whether now known or unknown, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether matured or unmatured, whether contingent or noncontingent, whether liquidated or unliquidated, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise, including liabilities on account of warranties, intercompany loans, and receivables among the Debtors, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the cancellation of debt of the Debtors or their Affiliates, or in any way relating to the operation of any of the Acquired Assets or ratings experience of the Debtors prior to the Closing Date, in each case other than the Permitted Liens and Assumed Liabilities.

39.    Except with respect to Permitted Liens, Assumed Liabilities, and liabilities of the Acquired Recovery Solutions Debtors, the Buyer shall not have, assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Debtors or their estates, or any of the Debtors' predecessors or Affiliates with respect to the Acquired Assets or otherwise. Without limiting the generality of the foregoing, and except as otherwise specifically agreed in the Recovery Solutions Stalking Horse Agreement or with respect to the Acquired Recovery Solutions

Debtors, the Buyer shall not have any liability, responsibility, or obligation for any Interests of the Debtors or their estates, including any claims, liabilities, or other obligations related to the Acquired Assets, including, for the avoidance of doubt, and without limiting the generality of the foregoing, any Successor or Other Liabilities, which may become due or owing (a) prior to the Closing Date or (b) from and after the Closing Date but which arise out of or relate to any act, omission, circumstance, breach, default, or other event occurring prior to the Closing Date.

40.     Except with respect to Permitted Liens, Assumed Liabilities, liabilities of the Acquired Recovery Solutions Debtors, or as otherwise specifically set forth in the Recovery Solutions Stalking Horse Agreement, all Persons (including all debt holders, equity holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, contract counterparties, customers, landlords, licensors, and employees), and other holders of Interests against or in any of the Debtors or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, known or unknown, contingent or noncontingent, liquidated or unliquidated, senior or subordinate, asserted or unasserted, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the Closing, or the transfer of the Acquired Assets to the Buyer (including, without limitation, any Successor or Other Liabilities or rights or claims based thereon) shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing against any member of the Buyer Group, or their respective assets or properties, including, without limitation, the Acquired Assets, the Interests of any kind or nature whatsoever such Person had, has, or may have against or in the Debtors, their estates, officers, directors, shareholders, or the Acquired Assets, including, without

limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) against any member of the Buyer Group, or their respective assets or properties, including the Acquired Assets; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any member of the Buyer Group, or their respective assets or properties, including the Acquired Assets; (c) creating, perfecting, or enforcing any Interest against any member of the Buyer Group, or their respective assets or properties, including the Acquired Assets; (d) asserting any setoff, or right of subrogation, of any kind against any obligation due any member of the Buyer Group or their respective assets or properties, including the Acquired Assets; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (f) to the extent prohibited by section 525 of the Bankruptcy Code, revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets. For the avoidance of doubt, each member of the Buyer Group is released under this Order solely in their capacity as a member of the Buyer Group and not in any other capacity.

41.     Except with respect to Permitted Liens, Assumed Liabilities, liabilities of the Acquired Recovery Solutions Debtors, or as provided in the Recovery Solutions Stalking Horse Agreement, and without limiting other applicable provisions of this Order, the Buyer is not, by virtue of the consummation of the Sale, assuming, nor shall it be liable or responsible for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed, or otherwise) in any way whatsoever relating to

or arising from the Debtors, the Acquired Assets, or the Debtors' operation of their businesses or use of the Acquired Assets on or prior to the Closing Date or any such liabilities, debts, commitments, or obligations that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged, or performed on or prior to the Closing Date (in each case, including, without limitation, Successor or Other Liabilities and any liabilities that result from, relate to, or arise out of tort or product liability claims), or any liabilities calculable by reference to the Debtors or their assets or operations (including by reference to the Debtors' experience or similar ratings), or relating to continuing conditions existing on or prior to the Closing Date, including with respect to any of the Debtors' predecessors or Affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to Successor or Other Liability.

42.     None of the Buyer nor any of its affiliates, equityholders, successors, and assigns, nor any of their professionals shall have, incur any liability to, or be subject to any action by, the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto) and the entry into and consummation of the Sale, except as expressly provided in the Recovery Solutions Stalking Horse Agreement and this Order.  Neither the Debtors nor any of their affiliates, successors, and assigns, nor any of their professionals shall have, incur any liability to, or be subject to any action by, the Buyer arising out of the negotiation, investigation, preparation, execution, or delivery of the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto) and the entry into and consummation of the

Sale, except as expressly provided in the Recovery Solutions Stalking Horse Agreement and this Order.

43. To the fullest extent permissible under applicable law, each of the Debtors and their Estates, for itself and for its successors and assigns, shall be deemed to fully and forever release each Acquired Recovery Solutions Debtor, the Buyer Group, and each member of the Buyer Group from any liability whatsoever on or otherwise in relation to all Interests (including any and all avoidance, recovery, subordination, or other claims and causes of action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or other similar or related state, federal, or foreign statutes, common law, or other applicable law) against or in any of the Acquired Recovery Solutions Debtors, the Buyer Group, or any member of the Buyer Group, or any portion of their assets or properties, that each Debtor has or is entitled to make or assert, file, or bring against any Acquired Recovery Solutions Debtor, the Buyer Group, or a member of the Buyer Group that directly or indirectly arises out of, in connection with, or in any way relating to, the Acquired Recovery Solutions Debtors, the Buyer Group, or any member of the Buyer Group, their assets or properties, or the operation of the Acquired Recovery Solutions Debtors' business prior to the Closing, other than any obligations of any Acquired Recovery Solutions Debtor, the Buyer Group, or any member of the Buyer Group arising under the Recovery Solutions Stalking Horse Agreement or this Order. All Debtors shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing against any Acquired Recovery Solutions Debtor, the Buyer Group, or any member of the Buyer Group, or their respective assets or properties, the Interests of any kind or nature whatsoever such Debtor had, has,

40

or may have against or in the Acquired Recovery Solutions Debtor, the Buyer Group, or any member of the Buyer Group, their estates, officers, directors, shareholders, or their assets or properties.  For the avoidance of doubt, each member of the Buyer Group is released under this Order solely in their capacity as a member of the Buyer Group and not in any other capacity.

## VI.    Dismissal of the Chapter 11 Cases of the Acquired Recovery Solutions Debtors

44.    The chapter 11 cases of the Acquired Recovery Solutions Debtors (Case No. 24-90538 (ARP), Case No. 24-90545 (ARP), Case No. 24-90548 (ARP), and Case No. 24-90565 (ARP)) are hereby dismissed, effective on the Closing Date.  In each case, such dismissal is without prejudice to the Acquired Recovery Solutions Debtors' rights to file future cases under any applicable chapter of the Bankruptcy Code.

45.    The Clerk of this Court shall enter this Order on the dockets of each of the Acquired Recovery Solutions Debtors and such dockets shall be marked as closed.

46.    This Order is without prejudice to any parties' right to seek to reopen any of the Acquired Recovery Solutions Debtors' closed chapter 11 cases for good cause shown.

47.    The Debtors are authorized to take such actions as are necessary to effectuate the dismissal of the chapter 11 cases of the Acquired Recovery Solutions Debtors.  No later than two business days following the Closing Date, the Acquired Recovery Solutions Debtors shall file a notice of dismissal of the Acquired Recovery Solutions Debtors' chapter 11 cases (the "Dismissal Notice") on the docket of the above-captioned chapter 11 cases and serve the Dismissal Notice on (a) the U.S. Trustee, (b) the Committee, (c) any federal, state, or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, or order of this Court, and(d) any party identified in section E of the *Procedures for Complex Cases in the Southern District of Texas*.

48.     From and after the entry of this Order, the Acquired Recovery Solutions Debtors and any of their respective directors, officers, employees, managers, attorneys, consultants, and advisors, to the extent such person or entity is a fiduciary of the Acquired Recovery Solutions Debtors' estates ("Exculpated Party"), is released and exculpated from any cause of action or claim in connection with, relating to, or arising from the Acquired Recovery Solutions Debtors' chapter 11 cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, the chapter 11 cases, the DIP Documents (including with respect to the DIP Facility and DIP Roll-Up Loans), the Bidding Procedures, the Recovery Solutions Stalking Horse Agreement or any transaction contract, instrument, release, or other agreement or document created or entered into in connection with the Recovery Solutions Stalking Horse Agreement, and the pursuit of, the marketing of, and the consummation of the Sale, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects the Acquired Recovery Solutions Debtors shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Sale.

## VII.    Other Provisions

49.     **Sureties.**    Pennsylvania Insurance Company, Atlantic Specialty Insurance Company, Argonaut Insurance Company, Westchester Fire Insurance Company, Ascot Insurance Company, and Berkley Insurance Company (collectively, the "Sureties" and, each individually, a "Surety") issued certain surety bonds on behalf of the Debtors (collectively, the "Surety Bonds" and, each individually, a "Surety Bond").   The Sureties issued their respective Surety Bonds pursuant to certain indemnity agreements executed by one or more of the Debtors (collectively, the "Indemnity Agreements" and, each individually, an "Indemnity Agreement").   Nothing in this Order, any related equity interest and/or asset purchase agreement(s), or any document, agreement,

or other instrument contemplated by or related to the foregoing or any Sale with respect to the Recovery Solutions Assets shall (a) be construed to authorize or permit the assumption and assignment of any Surety Bond, any Indemnity Agreement, or obligate a Surety to replace any Surety Bond and/or issue any new surety bond on behalf of the Buyer or (b) be deemed to provide a Surety's consent to the involuntary substitution of any principal under any Surety Bond and/or any Indemnity Agreement. For the avoidance of doubt, the Buyer shall not be a substitute principal under any Surety Bond or any Indemnity Agreement absent consent from the applicable Surety. Further, nothing in this Order, any related equity interest and/or asset purchase agreement(s), or any document, agreement, or other instrument contemplated by or related to the foregoing or any Sale with respect to the Recovery Solutions Assets shall be deemed to alter, limit, modify, release, waive, prime, or prejudice any rights, remedies, and/or defenses that the Sureties each have or may have (w) under applicable bankruptcy and non-bankruptcy law, (x) under the applicable Surety Bonds, Indemnity Agreements, or related agreements, (y) in and to any collateral held relating to the requisite Surety Bonds, Indemnity Agreements, or related agreements, or (z) against any non-Debtor or third party.

50.    **Insurers**.  Notwithstanding anything to the contrary in the Motion, the Recovery Solutions Stalking Horse Agreement, the Assumption and Assignment Notice, any Supplemental Assumption and Assignment Notice or any other lists of executory contracts to be assumed and assigned, this Order, or any documents relating to any of the foregoing: nothing shall permit or otherwise effect a sale, an assignment or any other transfer of (a) any insurance policies that have been issued at any time by (i) Zurich American Insurance Company, American Zurich Insurance Company, Zurich American Insurance Company of Illinois, Steadfast Insurance Company and/or any of their affiliates and successors (collectively, the "Zurich Companies"), or (ii) ACE American

Insurance Company, ACE Property and Casualty Insurance Company, Illinois Union Insurance Company, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company and each of their U.S.-based affiliates and successors (collectively, the "Chubb Companies," and together with the Zurich Companies, the "Insurers") to or that provide coverage to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto (collectively the "Zurich/Chubb Insurance Contracts"), or any portion or subset thereof, and/or (b) any rights, proceeds, benefits, interests, claims, rights to payments and/or recoveries under such Zurich/Chubb Insurance Contracts to the Successful Bidder; provided, however, that to the extent any claim with respect to the Acquired Assets arises that is covered by the Zurich/Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Zurich/Chubb Insurance Contracts, and, if applicable, turn over to the Successful Bidder any such insurance proceeds (each, a "Proceed Turnover"), provided, further, however, that the Insurers shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

51.    **1199SEIU**.  The cure amount, if any, related to the assumption and assignment of the 1199SEIU Recovery Solutions CBA shall be satisfied in full by payment by the Debtors or the Buyer, as applicable and in accordance with the Recovery Solutions Stalking Horse Agreement, in the ordinary course, of all the Debtors' or the Buyer's obligations under the assumed 1199SEIU Recovery Solutions CBA, including PTO, severance, grievances, grievance and other settlements, arbitration awards, benefit fund contributions, and dues and other remittances, to the extent such obligations are valid and payable.  As a result, no Proof of Claim, request for administrative expense, or cure claim need be filed with respect to such cure amounts; *provided, however*, that the Debtors' and the Buyer's rights, defenses, claims, and counterclaims with respect to any such obligations are expressly preserved.

52.     **Governmental Units**.  Nothing in this Order or Recovery Solutions Stalking Horse Agreement shall release, nullify, discharge, bar, impair, enjoin, or otherwise preclude or affect (a) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5), (b) any claim of a Governmental Unit arising on or after the date hereof, (c) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner, agent, lessor, lessee, permittee, controller, or operator of property or rights to property that such entity owns, operates, licenses, or leases on or after the date hereof, or (d) any liability to a Governmental Unit on behalf of any non-Debtor.  Nor shall anything in this Order release the Debtors from any claim against their estates based on any pre-Closing actions nor enjoins, limits, or bars a Governmental Unit from asserting, exercising, or enforcing, outside this Court, any liability described in the preceding sentence or any police and regulatory powers.

53.     Further, nothing in this Order or related documents, including any agreement related to the sale of the purchased assets, authorizes the assumption, sale, transfer, or assignment of any governmental (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) intellectual property, (i) patents, (j) leases, (k) certifications, (l) applications, (m) registrations, (n) billing numbers, (o) national provider identifiers, (p) provider transaction access numbers, (q) licenses, (r) permits, (s) covenants, (t) inventory, (u) guarantees, (v) indemnifications, (w) data, (x) records, or (y) authorizations or approvals, or the discontinuation of any obligation thereunder, or (z) any other interests belonging to the United States or any Governmental Unit any other interests belonging to the United States (collectively, "Governmental Interests"), including Contract Nos. 4129-48 and 12980-84 as listed in the Debtors' Notice of Potential Assumption and Assignment of Executory Contracts or

Unexpired Leases and Cure Amount [Docket No. 194], without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order shall (a) be interpreted to set cure amounts with respect to Governmental Interests or require any Governmental Unit to novate, approve or otherwise consent to the assumption, sale, assignment or transfer of any Governmental Interests, (b) relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit, (c) affect any setoff or recoupment rights of any Governmental Unit, (d) divest any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order, or (e) expand the scope of section 525 of the Bankruptcy Code.

54.     For the avoidance of doubt, notwithstanding any other provision of this Order or any other order of this Court, no sale, transfer, or assignment of any rights and interests of the Debtors in any federal license or authorization issued by the Federal Communications Commission ("FCC") shall take place prior to the issuance of FCC regulatory approval for such sale, transfer, or assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated under such statutes.  The FCC's rights and powers to take any action pursuant to its regulatory authority, including, imposing any regulatory conditions on such sales, transfers, and assignments, and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

55.     In the event of an inconsistency or conflict between any provision of the Recovery Solution Stalking Horse Agreement, any other asset purchase agreements, and any provision of this Order, as to the United States, the provisions of this Order and federal law shall govern.

56.     The transactions contemplated by the Recovery Solutions Stalking Horse Agreement and this Order are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not alter, affect, limit, or otherwise impair the validity of the Sale (including the assumption, assignment, and/or transfer of the Assumed Contracts), unless such authorization and consummation of the Sale are duly stayed pending such appeal.  The Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.  As a good-faith purchaser of the Acquired Assets, the Buyer has not entered into any agreement with any other potential bidders and has not colluded with any potential or actual bidders, and therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided, pursuant to section 363(n) of the Bankruptcy Code.

57.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated under the Recovery Solutions Stalking Horse Agreement.

58.     For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6004(d) are hereby expressly waived and shall not apply.  Accordingly, the Debtors and Buyer are authorized and empowered to close the Sale immediately upon entry of this Order.

59.     The failure to include or specifically reference any particular provision of the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments

delivered pursuant thereto) in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto) be authorized and approved in its entirety.

60.     To the extent that this Order is inconsistent with the Motion, the terms of this Order shall control and govern.  To the extent that there are any inconsistencies between the terms of this Order, on the one hand, and the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto), on the other hand, the terms of this Order shall control and govern.  To the extent that any plan of reorganization or liquidation, or any order of any type or kind entered in these chapter 11 cases or any subsequent chapter 7 case into which these chapter 11 cases may be converted, conflicts with or derogates from the terms of the Recovery Solutions Stalking Horse Agreement (or any ancillary agreements or instruments delivered pursuant thereto) or this Order, the terms of the Recovery Solutions Stalking Horse Agreement (or any ancillary agreements or instruments delivered pursuant thereto) and this Order shall control and govern to the extent of any such conflict or derogation.  Unless otherwise provided herein, to the extent this Order is inconsistent with the Bidding Procedures Order or any other prior order or pleading in these chapter 11 cases, or the terms of the Recovery Solutions Stalking Horse Agreement, this Order shall govern.

61.     The Recovery Solutions Stalking Horse Agreement may be modified, amended, or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, in consultation with the Committee, without further notice to or order of this Court, so long as any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates and does not otherwise conflict with this Order.

62.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, without the need for further order of this Court, to allow the Buyer and the Debtors to deliver any notice provided for in the Recovery Solutions Stalking Horse Agreement and to allow the Buyer and the Debtors to take any and all actions permitted under the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto).

63.     From time to time, as and when requested by the other, the Debtors and the Buyer, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including, such actions as may be necessary to vest, perfect or confirm, record, or otherwise, in the Buyer its right, title, and interest in and to the Acquired Assets and the Assumed Contracts, subject to the provisions of the applicable Agreement.

64.     This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Recovery Solutions Stalking Horse Agreement (and any ancillary agreements or instruments delivered pursuant thereto), and any amendments thereto and any waivers and consents given thereunder, and to adjudicate, if necessary, any and all disputes concerning or in any way relating to the Sale, including retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Buyer, (b) interpret, implement, and enforce the provisions of this Order, including the injunctions and limitations of liability set forth in this Order, (c) decide any disputes concerning this Order and the Recovery Solutions Stalking Horse Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Recovery Solutions Stalking Horse Agreement and this Order including the

interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Acquired Assets and any Assumed Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Interests (other than the Permitted Liens and the Assumed Liabilities), and (d) enter any orders under sections 105, 363, and 365 of the Bankruptcy Code, or otherwise, with respect to the Acquired Assets and the Assumed Contracts.

Dated: _____, 2025
       Houston, Texas

_____
HONORABLE ALFREDO R. PÉREZ
UNITED STATES BANKRUPTCY JUDGE