IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF JAMES SEITZ AS
DIRECTOR OF INSURANCE OF WELLPATH HOLDINGS, INC.
AND CERTAIN OF ITS AFFILIATES AND SUBSIDIARIES IN
SUPPORT OF THE DEBTORS' OMNIBUS OBJECTION TO MOTIONS FOR
RELIEF FROM THE AUTOMATIC STAY AND STAY EXTENSION REPLY**

I, James Seitz, hereby declare under penalty of perjury:

1. I submit this declaration (this "Declaration") in support of the *Debtors' Omnibus Objection to Motions for Relief from the Automatic Stay*, filed contemporaneously herewith (the "Objection"), and the *Debtors' Omnibus Reply in Support of Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or In the Alternative to Extend the Automatic Stay to Non-Debtor Defendants*, to be filed ahead of the final hearing on the Stay Extension Motion (the "Stay Reply").[2]

2. I am the Director of Insurance for Wellpath Holdings, Inc. (together with its debtor affiliates, the "Debtors" and, collectively with their non-Debtor affiliates, "Wellpath"). I joined Wellpath in August 2018 and lead the Debtors' insurance team. I specialize in developing and implementing strategies to manage risk exposure and providing advice and support on insurance

---

[1] A complete list of the Debtors (as defined below) in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Objection or the Stay Reply, as applicable.

policies. I have more than 29 years of experience with the insurance industry. As a result of my tenure with Wellpath, I am generally familiar with the Debtors' insurance coverage and the administration of claims under such insurance policies.

3. Prior to joining Wellpath, I was employed by NIBCO Inc. as the Director of Administrative Services. I earned a B.S. in Business Administration from the Urbana University in 1985 and Associate in Risk Management ("ARM") from the Insurance Institute of America in 1987.

4. I have been working with members of the Debtors' legal department to evaluate and address the Lift Stay Motions and other stay-related requests. Over the course of these chapter 11 cases, there have been numerous stay-related requests, which the Debtors' legal team has worked tirelessly to handle in addition to their core business responsibilities.

5. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents of the Debtors, other information prepared or collected by the Debtors' employees, information supplied to me by other members of the Debtors' management and third-party advisors, or my opinion based on my experience with the Debtors' operations. In making my statements based on documents and other information prepared or collected by the Debtors' employees or my conversations with the Debtors' counsel or other advisors, I have relied upon the accuracy of such documentation and other information. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

## The Debtors' Insurance

6. In the ordinary course of business, the Debtors have maintained multiple layers of insurance coverage in each coverage period for general liability and medical professional liability, which cover the Debtors and their employees, as well as the non-debtor professional corporations

and their employees. In each coverage period, the Debtors obtained fronting policies from third-party insurers (each a "Fronting Policy," and collectively, the "Fronting Policies"), which do not establish any true risk transfer. The third-party insurers make no payments on account of the Fronting Policies. Instead, the Debtors utilize these fronting arrangements to meet their customers' evidence of coverage requirements. For example, the Debtors frequently contract with various state and local governments, many of which require proof of insurance from a licensed or authorized non-admitted insurer. While the Fronting Policies allow the Debtors to meet the requirements to provide healthcare services to their customers, such policies do not transfer any risk to the insurance companies underwriting the policies.

7. Since 2021, the Debtors have provided buffer layers of self-insured retention ("SIR," each a "Buffer SIR," and collectively, the "Buffer SIRs") as the next layer of coverage following the Fronting Policies.

8. Additionally, from 2023 to present, the Debtors have maintained insurance policies through a "captive" insurance entity, HH Risk, LLC (each a "Captive Policy," and collectively, the "Captive Policies"). The Captive Policies are additional forms of SIR.

9. Finally, the Debtors enter into various umbrella policies, which provide coverage for claims in excess of the Debtors' Fronting Policies, Buffer SIRs, and Captive Policies. Accordingly, with respect to general liability and professional liability, the Debtors must retain risk for claims made in each coverage period.

10. The insurance coverage tower for each coverage period is illustrated in **Exhibit A** attached hereto.

### A. The 2018-2020 Insurance Policies

11. From 2018-2020, the Debtors obtained various general liability and medical professional liability insurance policies, including those described in the Objection. During this coverage period, the Debtors reported, litigated, and settled various claims made under these policies. As of the time of the filing of this Objection, all umbrella insurance coverage has been exhausted for the 2018-2020 period. Accordingly, the Debtors must fully retain risk to pay for all claims made during this period that have not already been liquidated.

12. The Debtors coverage during this period is comprised of (a) the 2018-2020 Fronting Policy constituting $2 million per claim of SIR, (b) the 2018-2020 Umbrella Policy underwritten by ProAssurance covering $10 million per claim and $10 million in the aggregate, and (c) an umbrella policy underwritten by Scottsdale covering $10 million per claim and $10 million in the aggregate.

13. The insurance policies covering the Debtors and their employees as well as the non-debtor professional corporations and their employees relevant to the Crawford Motion, the Crawford Objection, the Peterson Motion, and the Hill Objection, are the 2018-2020 Fronting Policy and the 2018-2020 Umbrella Policy. Because the 2018-2020 umbrella policies have been exhausted and there are no proceeds remaining under these policies, the Debtors must fully retain risk to pay claims made pursuant to the Crawford Motion, the Crawford Objection, the Peterson Motion, and the Hill Objection, which were made during the 2018-2020 period.

### B. The 2020-2021 Insurance Policies

14. The Debtors coverage from 2020-2021 is comprised of (a) the 2020-2021 Fronting Policy constituting $3 million per claim of SIR, (b) the 2020-2021 Umbrella Policy underwritten by ProAssurance covering $5 million per claim and $5 million in the aggregate, (c) an umbrella

policy underwritten by Coverys Specialty Insurance Company covering $5 million per claim and $5 million in the aggregate, and (d) an umbrella policy underwritten by Scottsdale covering $10 million per claim and $10 million in the aggregate.

15. Damage and defense costs accrued in connection with the underlying actions covered by the 2020-2021 Fronting Policy are borne solely by the Debtors. The Debtors' third-party coverage only applies after $3 million is paid by the Debtors on account of each claim and is exhausted after $5 million in the aggregate. Such third-party coverage has not been triggered.

16. The insurance policies covering the Debtors and their employees as well as the non-debtor professional corporations and their employees relevant to the Strickland Motion are the 2020-2021 Fronting Policy and 2020-2021 Umbrella Policy.

C. **The 2021-2022 Insurance**

17. The Debtors coverage from 2021-2022 is comprised of (a) the 2021-2022 Fronting Policy constituting $3 million per claim of SIR, (b) the 2021-2022 Buffer SIR establishing $5 million per claim of SIR with a $15 million aggregate limit, (c) the 2021-2022 Umbrella Policy underwritten by Scottsdale covering $3 million per claim and $3 million in the aggregate, (d) an umbrella policy underwritten by Allied World Assurance Company (U.S.) Inc. covering $2 million per claim and $2 million in the aggregate, (e) an umbrella policy underwritten by National Fire & Marine Insurance Company covering $3 million per claim and $3 million in the aggregate, and (f) an umbrella policy underwritten by Scottsdale covering $7 million per claim and $7 million in the aggregate.

18. The Debtors fully retain risk to pay claims made under the 2021-2022 Fronting Policy, and ProAssurance is not liable for, and does not pay, any claims made pursuant to this

policy. Accordingly, damage and defense costs accrued in connection with the underlying actions covered by the 2021-2022 Fronting Policy are borne solely by the Debtors. The Debtors' third-party coverage only applies after $8 million is paid by the Debtors on account of each claim and is exhausted after $3 million is paid in the aggregate. Such third-party coverage has not been triggered.

19. The insurance policies covering the Debtors and their employees as well as the non-debtor professional corporations and their employees relevant to the Monk Motion and the Lamboy Motion are the 2021-2022 Fronting Policy and the 2021-2022 Umbrella Policy.

**D.     The 2022-2023 Insurance Policies**

20. The Debtors coverage from 2022-2023 is comprised of (a) the 2022-2023 Fronting Policy constituting $3 million per claim of SIR, (b) the 2022-2023 Buffer SIR establishing $5 million per claim of SIR with no aggregate limit, (c) the 2022-2023 Umbrella Policy underwritten by Scottsdale covering $3 million per claim and $3 million in the aggregate, (d) an umbrella policy underwritten by Allied World Assurance Company (U.S.) Inc. covering $2 million per claim and $2 million in the aggregate, (e) an umbrella policy underwritten by National Fire & Marine Insurance Company covering $3 million per claim and $3 million in the aggregate, and (f) an umbrella policy underwritten by Scottsdale covering $7 million per claim and $7 million in the aggregate.

21. The Debtors fully retain risk to pay claims made under the 2022-2023 Fronting Policy, and Texas Insurance Company is not liable for, and does not pay, any claims made pursuant to this policy. Accordingly, damage and defense costs accrued in connection with the underlying actions covered by the 2022-2023 Fronting Policy are borne solely by the Debtors. Thus, the Debtors' third-party coverage only applies after $8 million is paid by the Debtors on account of

each claim and is exhausted after $3 million is paid in the aggregate. Such third-party coverage has not been triggered.

22. In addition to the Debtors' insurance coverage, the Debtors from time to time in the ordinary course of business purchase insurance policies for their physicians. The Debtors purchased separate insurance policies through PAJUA covering Dr. Michael Herbik, Dr. Steven Wiener, Dr. Rajinder Malhi, Dr. Mathew Miceli and Dr. Sathiavathi Natarajan. PAJUA and the Debtors split the defense costs, and any settlement or judgment costs, for suits involving Dr Herbik, Dr. Wiener, Dr. Rajinder Malhi, Dr. Mathew Miceli and Dr. Sathiavathi Natarajan that are covered by the PAJUA policies. The claims related to the Henderson Motion, Major Objection, Reichart Objection, and Wright Objection are covered by the PAJUA policies, and, accordingly, the Debtors incur defense costs in connection therewith.

23. The insurance policies covering the Debtors and their employees relevant to the Evans Motion, Vinson Objection, and Eugene Miller's claims related to the Wright Objection are the 2022-2023 Fronting Policy, the 2022-2023 Buffer SIR, and the 2022-2023 Umbrella Policy.

E. **The 2023-2024 Insurance Policies**

24. The Debtors coverage from 2023-2024 is comprised of (a) the 2023-2024 Fronting Policy constituting $3 million per claim of SIR, (b) the 2023-2024 Buffer SIR establishing $5 million per claim of SIR with no aggregate limit, (c) the 2023-2024 Captive Policy covering $7 million per claim of SIR with no aggregate limit, (d) the 2023-2024 Umbrella Policy underwritten by AXA covering $5 million per claim and $5 million in the aggregate, (e) an umbrella policy underwritten by Allied World Assurance Company (U.S.) Inc. covering $2 million per claim and $2 million in the aggregate, and (f) an umbrella policy underwritten by Acrisure Re

7

UK Limited (d/b/a the Hamilton Insurance Group) covering $3 million per claim and $3 million in the aggregate.

25. The Debtors fully retain risk to pay claims made under the 2023-2024 Fronting Policy, and Texas Insurance Company is not liable for, and does not pay, any claims made pursuant to this policy. Accordingly, damage and defense costs accrued in connection with the underlying actions covered by the 2023-2024 Fronting Policy are borne solely by the Debtors. The Debtors' 2023-2024 Fronting Policy, 2023-2024 Buffer SIR, and 2023-2024 Captive Policy constitute $15 million of SIR coverage. AXA has liability for defense costs, damages, judgments, and settlements arising from any single claim only in excess of the Debtors' $15 million SIR for each and every claim. Such third-party coverage has not been triggered.

26. The Debtors' insurance policies relevant to the Myers Motion, the Harris Motion, the Henderson Motion, and Lonnie Wright's claims related to the Wright Objection covering the Debtors and their employees during the relevant period are the 2023-2024 Fronting Policy, the 2023-2024 SIR Buffer, the 2023-2024 Captive Policy, and 2023-2024 Umbrella Policy.

F.   **The 2024-2025 Insurance Policies**

27. The Debtors coverage from 2024-2025 is comprised of (a) the 2024-2025 Fronting Policy constituting $3 million per claim of SIR, (b) the 2024-2025 Buffer SIR establishing $5 million per claim of SIR with no aggregate limit, (c) the 2024-2025 Captive Policy covering $7 million per claim of SIR with no aggregate limit, (d) the 2024-2025 Umbrella Policy underwritten by AXA covering $7 million per claim and $7 million in the aggregate, (e) an umbrella policy underwritten by Allied World Assurance Company (U.S.) Inc. covering $2 million per claim and $2 million in the aggregate, and (f) an umbrella policy underwritten by Acrisure Re

8

UK Limited (d/b/a the Hamilton Insurance Group) covering $1 million per claim and $1 million in the aggregate.

28.     The Debtors fully retain risk to pay claims made under the 2024-2025 Fronting Policy, and Texas Insurance Company is not liable for, and does not pay, any claims made pursuant to this policy.  Accordingly, damage and defense costs accrued in connection with the underlying actions covered by the 2024-2025 Fronting Policy are borne solely by the Debtors.  The Debtors' 2024-2025 Fronting Policy, 2024-2025 Buffer SIR, and 2024-2025 Captive Policy constitute $15 million of SIR coverage.

29.     The Debtors' third-party coverage only applies after $15 million is paid by the Debtors on account of each claim and is exhausted after $7 million is paid in the aggregate.  Such third-party coverage has not been triggered.

30.     The insurance policies held by the Debtors relevant to the Slater Motion and Cedric Stewart's claims related to the Wright Objection are the 2024-2025 Fronting Policy, the 2024-2025 SIR Buffer, the 2024-2025 Captive Policy, and the 2024-2025 Umbrella Policy.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: January 7, 2025　　　　　　　　　　　/s/ *James Seitz*
　　　　　　　　　　　　　　　　　　　　　Name:  James Seitz
　　　　　　　　　　　　　　　　　　　　　Title:　Director of Insurance