IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>WELLPATH HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-90533 (ARP)<br><br>(Jointly Administered)<br>**Re: Docket No. 21, 111, 384, 818** |

**SUPPLEMENTAL DECLARATION OF JASON SCHOENHOLTZ IN SUPPORT OF ORDER (A) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS AND CERTAIN EQUITY INTERESTS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) DISMISSING THE CHAPTER 11 CASES OF THE ACQUIRED RECOVERY SOLUTIONS DEBTORS, AND (D) GRANTING RELATED RELIEF**

I, Jason Schoenholtz, declare as follows:

1. I am a Partner at MTS Health Partners, L.P. ("MTS"), which has its principal office at 623 Fifth Avenue, 14th Floor, New York, New York 10022. MTS is retained as the healthcare investment banker for the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases.

2. I submit this supplemental declaration (the "Declaration") in further support of the *Debtors' Emergency Motion for Entry of Orders (I)(A) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Entry into a Stalking Horse Purchase Agreement for the Recovery Solutions Assets, (C) Authorizing the Recovery Solutions Expense Reimbursement, (D) Authorizing Potential Selection of Stalking Horse Bidders for the Corrections Assets and*

---

[1] A complete list of the Debtors (as defined below) in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath.  The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

*Approving Related Corrections Asset(s) Bid Protections, (E) Establishing Related Dates and Deadlines, (F) Approving the Form and Manner of Notice Thereof, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (the "Motion").[2]

3.  Although MTS is compensated for its work as the Debtors' healthcare investment banker in these chapter 11 cases, I am not compensated separately for this Declaration or testimony. Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, the information provided to me by MTS professionals involved in advising the Debtors in these chapter 11 cases, or information provided to me by the Debtors or the Debtors' other advisors. If called upon to testify, I could and would testify to the facts set forth herein on that basis. I am over the age of 18 years and am authorized to submit this Declaration.

## Qualifications

4.  I have more than 20 years of experience, including significant experience representing public and private healthcare companies in privately negotiated transactions and financings across a wide range of healthcare sectors. My areas of expertise include, among other things, healthcare supply chain including med-surg/drug distribution, outsourced healthcare

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the *Stipulated and Agreed Amended Order (I) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving Entry Into a Stalking Horse Purchase Agreement for the Recovery Solutions Assets, (III) Authorizing the Recovery Solutions Expense Reimbursement, (IV) Authorizing the Potential Selection of Stalking Horse Bidders for the Corrections Assets and Approving Related Corrections Asset(s) Bid Protections, (V) Establishing Related Dates and Deadlines, (VI) Approving the Form and Manner of Notice Thereof, (VII) Approving the Assumption and Assignment Procedures, and (VIII) Granting Related Relief* [Docket No. 384] (the "Bidding Procedures Order"), as applicable.

services, durable medical equipment, home medical supplies, pharmacy, pharma outsourcing, and medical/dental products.

5. I joined MTS in April 2024. Before joining MTS, I was a Managing Director at Lazard Frères & Co. for three years, and prior to joining Lazard Frères & Co, I was a Managing Director at Cantor Fitzgerald for five years, and prior to joining Cantor Fitzgerald, I was a Managing Director at RBC Capital Markets for four years.

6. I received a Bachelor of Science from the University of Vermont in Mechanical Engineering, a Master of Science in Engineering from the University of Pennsylvania in Bioengineering, and a Master in Business Administration in Finance and Healthcare Management from the Wharton School of the University of Pennsylvania.

## MTS's Retention

7. In May 2024, the Debtors engaged MTS to serve as its healthcare investment banker and to commence the marketing process, in a co-advisory role along with Lazard Frères & Co. LLC ("Lazard"), for the sale of the Recovery Solutions Assets on a prepetition basis shortly thereafter. MTS also marketed the Corrections Assets, as well as the Recovery Solutions Assets, on a post-petition basis. In providing the foregoing, MTS worked closely with the Debtors' management team and their advisors, and has become well-acquainted with the Debtors' capital structure, liquidity needs, and business operations.

## The Recovery Solutions Sale Process

8. In connection with the Bidding Procedures approved by the Court in the Bidding Procedures Order the Debtors, with the assistance of MTS, Lazard, and the Debtors' legal and other restructuring advisors implemented a process to market and sell the Recovery Solutions

Assets in a non-collusive, fair, and good-faith manner on both a prepetition and post-petition basis (the "Recovery Solutions Sale Process"), as well as Corrections Assets on a post-petition basis.

9. In connection with the Recovery Solutions Sale Process, the Debtors, with the assistance of their advisors, conducted a robust prepetition and post-petition marketing process that launched in April of 2024. The Recovery Solutions Sale Process included, among other things, (a) developing marketing materials that described the Recovery Solutions Assets, as well as the potential opportunities that the Recovery Solutions Assets present, (b) maintaining a virtual data room with information about the Debtors and the Recovery Solutions Assets, to which potential acquirers were granted access on a confidential basis to conduct diligence, (c) identifying and contacting potential strategic and financial acquirers for the Recovery Solutions Assets, (d) facilitating the diligence efforts of potential acquirers, including by holding numerous in-person, teleconference, and video-conference meetings in connection therewith, and (e) negotiating potential transaction structures with potential acquirers. By the end of June 2024, the Debtors received six preliminary indications of interest as part of a first-round process. The Debtors continued and further advanced the Recovery Solutions Sales Process during July and August of 2024. However, despite the Debtors' robust marketing process, after several weeks of further diligence and management presentations, the Debtors only received one formal second-round check-in bid, which was at a reduced valuation from the preliminary indication of interest. While Wellpath and its advisors tried to keep the bidder engaged, the Debtors also attempted to reengage with other bidders between August and September of 2024. The Debtors did not receive any acceptable bids at the conclusion of the Debtors' prepetition bidding process. Consequently, the Debtors temporarily put the marketing process on hold and pivoted to negotiating the terms of

an in-court value-maximizing transaction. These negotiations ultimately led to the execution of the Recovery Solutions Stalking Horse Agreement.

10. Shortly after the Petition Date and filing of the Recovery Solutions Stalking Horse Agreement, the Debtors, with the assistance of MTS and Lazard, re-engaged with prospective bidders on the Recovery Solutions Assets and also broadened the scope of marketing process to also account for a potential Consolidated Asset Sale or a Corrections Asset(s) Sale.

11. On a prepetition basis, the Recovery Solutions Sale Process included contacting over 140 parties, including financial sponsors and strategic parties, to solicit proposals to acquire the Recovery Solutions Assets. More than 70 prospective bidders executed confidentiality agreements and received access to private-side information on a prepetition basis. Post-petition, MTS and Lazard communicated with over 120 parties regarding a potential sale of the Assets, including the Recovery Solutions Assets. 23 prospective bidders executed confidentiality agreements on a post-petition basis to obtain private-side information. The Debtors, with the assistance of MTS and Lazard, worked with these parties as they engaged in due diligence in preparation for the Recovery Solutions / Consolidated Bid Deadline. Throughout the Recovery Solutions Sale Process, the Debtors, with the assistance of their advisors, also consulted with the Consultation Parties on matters relating thereto.

12. On December 20, 2024, as a result of the occurrence of an "Extension Event," the Debtors, after consulting with the Consultation Parties, filed the *Notice of Amended Timeline for Recovery Solutions / Consolidated Sale Transaction* [Docket No. 563] notifying parties of the extension of key dates and deadlines related to the Recovery Solutions / Consolidated Sale Transaction, including extending the Recovery Solutions / Consolidated Bid Deadline from

December 21, 2024 at 7:00 p.m. (prevailing Central Time) to January 6, 2025 at 4:00 p.m. (prevailing Central Time).

13. In the end, the Debtors did not receive a Qualified Bid for the Recovery Solutions Assets (other than the Recovery Solutions Stalking Horse Bid) by the Recovery Solutions / Consolidated Bid Deadline and, therefore, (a) the Recovery Solutions Stalking Horse Bid is the only Qualified Bid for the Recovery Solutions Assets and (b) the Debtors, after consulting with the Consultation Parties, designated the Recovery Solutions Stalking Horse Bid as the Successful Bid for the Recovery Solutions Assets and cancelled the Auction. *See Notice of Cancellation of Auction* [Docket No. 817].

14. I believe that the Debtors adequately marketed the Assets and conducted the Recovery Solutions Sale Process in compliance with the Bidding Procedures and the Bidding Procedures Order, and the Recovery Solutions Sale Process was conducted in a non-collusive, fair, and good-faith manner. The Debtors have afforded potential purchasers a full, fair, and reasonable opportunity to participate in the bidding process for the Assets and to make higher or otherwise better offers. In accordance with the Bidding Procedures and the Bidding Procedures Order, the Recovery Solutions Stalking Horse Bid memorialized by the Recovery Solutions Stalking Horse Agreement was deemed a Qualified Bid and the Recovery Solutions Stalking Horse Bidder was a Qualified Bidder. Moreover, the Debtors, following engaging in good faith arm's-length negotiations, determined, in their reasonable business judgment (in a manner consistent with their fiduciary duties), that the consideration provided by the Recovery Solutions Stalking Horse Bid in respect of the Sale (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Acquired Assets, and (c) will provide a greater recovery for the Debtors' creditors more expeditiously than would be provided by any other practical available alternative.

15. Accordingly, I believe that approval of the Recovery Solutions Stalking Horse Agreement, the Sale, and all related transactions at this time, and the actions to be taken by the Debtors and the Recovery Solutions Stalking Horse Bidder, are appropriate under the circumstances of these chapter 11 cases and are in the best interests of the Debtors, their estates and creditors, and all other parties in interest. I believe that the Debtors have demonstrated (a) good, sufficient, and reasonable business purposes and justifications for entering into the Recovery Solutions Stalking Horse Agreement and (b) compelling circumstances for the Sale, in that, among other things, (i) the Recovery Solutions Stalking Horse Agreement provides fair and reasonable terms for the purchase of the Acquired Assets and (ii) the immediate consummation of the Sale to the Recovery Solutions Stalking Horse Bidder is necessary and appropriate to maximize the value of the Debtors' estates.

16. As far as I am aware, I believe that the Debtors and the Recovery Solutions Stalking Horse Bidder, and their respective counsel and other advisors, have not engaged in any conduct that would cause or permit the Recovery Solutions Stalking Horse Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed. I believe that the Recovery Solutions Stalking Horse Bidder has not acted in a collusive manner with any person, and the purchase price was not controlled by any agreement among potential or actual bidders, all of whom acted in good faith, at arm's-length, and in a noncollusive manner. The Recovery Solutions Stalking Horse Agreement was negotiated, proposed, and entered into by the Debtors and the Recovery Solutions Stalking Horse Bidder without collusion, in good faith, and from arm's-length bargaining positions.

17. I believe that the Recovery Solutions Stalking Horse Bidder is purchasing the Acquired Assets (including the Acquired Equity Interests) pursuant to the Recovery Solutions

Stalking Horse Agreement in good faith and for fair and reasonable consideration, and the Recovery Solutions Stalking Horse Bidder is a good-faith purchaser. Among other things, (a) the Recovery Solutions Stalking Horse Bidder recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets, (b) the Debtors and the Recovery Solutions Stalking Horse Bidder complied with the provisions of the Bidding Procedures Order and the Bidding Procedures, (c) the Recovery Solutions Stalking Horse Bidder agreed to subject its bid to the Bidding Procedures, (d) the Debtors and the Recovery Solutions Stalking Horse Bidder, and their respective management, board of directors, board of managers (or comparable governing authority), employees, agents, advisors, and representatives, each actively participated in the Recovery Solutions Sale Process, and each acted in good faith and without collusion or fraud of any kind, (e) all payments to be made by the Recovery Solutions Stalking Horse Bidder, and other agreements or arrangements entered into by the Recovery Solutions Stalking Horse Bidder in connection with the Sale, have been disclosed, (f) the Recovery Solutions Stalking Horse Bidder was designated the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures and the Bidding Procedures Order, and (g) no common identity of directors or controlling stockholders exists between the Recovery Solutions Stalking Horse Bidder, on the one hand, and the Debtors, on the other hand.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 8, 2025
New York, New York

MTS HEALTH PARTNERS, L.P.

*/s/ Jason Schoenholtz*
NAME: Jason Schoenholtz
TITLE: Partner