**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*, | Case No. 24-90533 (ARP) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 17, 220, 231, 236, 237, 238, 239, 242, 245, 249, 250, 254, 258, 300, 314, 358, and 810** |

**DEBTORS' OMNIBUS REPLY**
**IN SUPPORT OF DEBTORS' EMERGENCY**
**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**TO ENFORCE THE AUTOMATIC STAY OR IN THE ALTERNATIVE**
**EXTEND THE AUTOMATIC STAY TO NON-DEBTOR DEFENDANTS**

The debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this reply (this "Reply") in support of the *Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or In the Alternative to Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 17] (the "Motion")[1] and in response to the following objections (collectively, the "Objections"):[2]

    i.    *Claimants' Gracienne Myers' and Daniel Myers Objection to Entry of a Final Order on Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 220] (the "Myers*

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Honor and Incur Obligations to Professional Corporations and (B) Obtain New Professional Corporation Contracts, (II) Extending the Statutory Protections to Professional Corporations, and (III) Granting Related Relief* [Docket No. 15] (the "PC Motion"), or the *Debtors' Omnibus Objection to Lift Stay Motions* [Docket No. 827] (the "Omnibus Lift Stay Objection"), as applicable.

[2]    Certain of the objecting parties also filed motions to lift the automatic stay. Arguments in opposition to lifting the automatic stay are made in the Omnibus Lift Stay Objection and are incorporated herein by reference to the extent applicable.

Objection") filed by Gracienne Myers and Daniel Myers (the "<u>Myers Plaintiffs</u>");

ii.     *Objection to the Amended Interim Order Enforcing the Automatic Stay* [Docket No. 231] (the "<u>Hill Objection</u>") filed by Ariel Hill, individually and as the next of kin of Clarence Manning, Shirley Nelson, as administrator of the estate of Clarence Manning, Jennifer O'Neal, individually as the surviving spouse of Joshua Cain Capes and Adel Tillman Capes, as administrator of the estate of Joshua Cain Capes (collectively, the "<u>Hill Plaintiffs</u>");

iii.    *Claimants Lonnie Wright's, Cedric Stewart's and Eugene Miller's Objection to Entry of a Final Order on Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants and Debtor Defendants* [Docket No. 236] (the "<u>Wright Objection</u>") filed by Lonnie Wright, Cedric Stewart, and Eugene Miller (collectively, the "<u>Wright Plaintiffs</u>");

iv.    *Response of Martin Vargas to Debtors' Emergency Motion to Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 237] (the "<u>Vargas Objection</u>") filed by Martin Vargas ("<u>Vargas</u>");

v.     *Edward Major's Objection to Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Stay to Non-Debtor Defendants* [Docket No. 238] (the "<u>Major Objection</u>") filed by Edward Major ("<u>Major</u>");

vi.    *Limited Objection to Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 239] (the "<u>Vinson Objection</u>") filed by Jamie Vinson, Administrator of the Estate of Philemon S. Vinson ("<u>Vinson</u>");

vii.   *United States of America's Response in Opposition to Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 242] (the "<u>United States Objection</u>") filed by the United States;

viii.  *Response of Certain Claimants to Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 245] (the "<u>Shannon Objection</u>") filed by various plaintiffs in the stayed litigation represented by Shannon & Lee LLP (the "<u>Shannon Plaintiffs</u>");

ix.    *Objection of Richard Reichart to Entry of a Final Order to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to*

*Non-Debtor Defendants Under Section 11 U.S.C. § 362(d)(1)* [Docket No. 249] (the "<u>Reichart Objection</u>") filed by Richard Reichart ("<u>Reichart</u>");

x.    *Deborah Young's Objection to Final Order/Automatic Stay* [Docket No. 250] (the "<u>Young Objection</u>") filed by Deborah Young, as the Personal Representative of the Estate of Gwendolyn Young, and her attorneys Smolen & Roytman (the "<u>Young Parties</u>");

xi.   *As Administrator of the Estate of Daruis Pizarro, Plaintiff Liza Pizarro's Objection to Entry of a Final Order on Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 254] (the "<u>Pizarro Objection</u>") filed by Liza Pizarro, as administrator of the Estate of Daruis Pizarro ("<u>Pizarro</u>");

xii.  *Response to Debtor's Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants, (D.E. # 17), or in the Alternative, Motion for Relief from the Automatic Stay* [Docket No. 258] (the "<u>Deputies Objection</u>") filed by Sheriff's Deputy Andelson Maximin and Sheriff's Deputy Dodou Jones (the "<u>Deputies</u>");

xiii. *Claimants' Michigan Department of Corrections and Michigan Department of Technology, Management and Budget's Objection to Entry of Interim and Final Orders and Request to Partially Set Aside Automatic Stay* [Docket No. 300] (the "<u>Michigan Objection</u>") filed by the Michigan Department of Corrections and Michigan Department of Technology, Management and Budget ("<u>Michigan</u>");

xiv.  *Response in Opposition to Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 314] (the "<u>Deppe Objection</u>") filed by Jordan Deppe, deceased, by and through his successor in interest, Michael Deppe, Michael Deppe, individually, John Adena, deceased, by and through his co-successors in interest, Circe Adena and Richard Adena, Circe Adena, individually, and Richard Adena, individually (the "<u>Deppe Plaintiffs</u>");

xv.   *Objection to the Entry of a Final Order on Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor and Debtor*

*Defendants* [Docket No. 385] (the "Crawford Objection") filed by Dawn Crawford as administrator of the estate of Marc Crawford ("Crawford");

xvi.    *Petitioner's Response to the Courts Amended Interim Order Enforcing the Automatic Stay* [Docket No. 358] (the "Bradley Objection") filed by pro se petitioner Deandre Bradley ("Bradley"); and

xvii.   *Statutory Unsecured Claimholders' Committee's Objection to Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay to Non-Debtor Defendants* [Docket No. 810] (the "Committee Objection") filed by the Statutory Unsecured Claimholders' Committee (the "Committee," and together with the Myers Plaintiffs, the Hill Plaintiffs, the Wright Plaintiffs, Vargas, Major, Vinson, the United States, the Shannon Plaintiffs, Reichart, the Young Parties, Pizarro, the Deputies, Michigan, the Deppe Plaintiffs, Crawford, and Bradley, collectively, the "Objectors").

As of the filing of this Reply, the Debtors have resolved the Myers Objection,[3] the United States Objection[4] and the Deputies Objection[5] and will continue to work with other parties in advance of the hearing.

In support of the Reply, the Debtors rely on the *Declaration of Timothy J. Dragelin as Chief Restructuring Officer and Chief Financial Officer of Wellpath Holdings, Inc. and Certain of its Affiliates and Subsidiaries in Support of the Debtors' Chapter 11 Petitions and First Day*

---

[3]    On December 16, 2024, this Court entered an order [Docket No. 460] (the "Myers Order") approving a stipulation as to the Myers Objection (the "Myers Stipulation") which, in part, provides that the relief sought in the Motion does not extend the automatic stay to claims or causes of action against non-debtor TB Isle Resort, LP. Furthermore, the Myers Stipulation provides that entry of the Myers Order resolves the Myers Objection and any other relief sought in the Myers Objection shall be deemed denied and any other objections shall be deemed overruled.

[4]    On December 17, 2024, the Court entered an order [Docket No. 485] (the "United States Order") approving a stipulation as to the United States Objection (the "United States Stipulation") which, in part, provides that the relief sought in the Motion does not extend the automatic stay to claims and causes of action against the United States in the Vargas Lawsuit. Furthermore, the United States Stipulation provides that entry of the United States Order resolves the United States Objection and any other relief sought in the United States Objection shall be deemed denied and any other objections shall be deemed overruled.

[5]    On January 2, 2025, the Court entered an order [Docket No. 769] (the "Deputies Order") approving a stipulation as to the Deputies Objection (the "Deputies Stipulation") which, in part, provides that the relief sought in the Motion does not extend the automatic stay to the Deputies' continuation of the underlying litigation for the sole purpose of litigating whether the doctrine of official immunity under Georgia state law requires dismissal of such claims against the Deputies. Furthermore, the Deputies Stipulation provides that entry of the Deputies Order resolves the Deputies Objection and any other relief sought in the Deputies Objection shall be deemed denied and any other objections to the Motion shall be deemed overruled.

*Pleadings* [Docket No. 20] (the "First Day Declaration"), the *Declaration of James Seitz as Director of Insurance of Wellpath Holdings, Inc. and Certain of Its Affiliates and Subsidiaries in Support of the Debtors' Omnibus Objection to Motions for Relief from the Automatic Stay and Stay Extension Reply* [Docket No. 828] (the "Seitz Declaration"), and the *Supplemental Declaration of James Seitz as Director of Insurance of Wellpath Holdings, Inc. and Certain of Its Affiliates and Subsidiaries in Support of the Debtors' Stay Extension Reply* (the "Supplemental Seitz Declaration"), filed contemporaneously herewith.  In further support thereof, the Debtors state as follows:

## Preliminary Statement

1.      The Debtors' ability to successfully conduct these chapter 11 cases depends upon their ability to focus on the pursuit and implementation of various transactions contemplated by the RSA, including the sales of the Debtors' assets.  The relief sought by the Motion—extending the automatic stay to stop the continued prosecution of claims and causes of action against the Non-Debtor Defendants in the Lawsuits—is critical to the Debtors' ability to achieve that purpose. Forcing the Debtors into expensive piecemeal and overlapping litigations in separate forums, wasting precious estate assets and creating the risk of inconsistent judgments would be detrimental to the Debtors' estates and parties in interest, including unsecured creditors.

2.      The relief requested by the Motion is limited to protecting only the Debtors' property interests and applies only for a limited period of time, given the expedited reorganization timeline the Debtors aim to meet.  Despite certain allegations to the contrary, the Debtors do not purport to extend the automatic stay to parties to the Lawsuits that are wholly unrelated to the

Debtors, and the Debtors are in no way seeking a national blanket stay.[6][7]  In addition, the Debtors are not requesting that this Court adjudicate the underlying claims and causes of action.[8]

3.      The Motion and this Reply set forth specific categories of Non-Debtor Defendants as to which the Debtors seek to have this Court extend the automatic stay.[9]  In particular, the Debtors seek to stay actions against Non-Debtor Defendants (a) that possess a contractual right to be indemnified by the Debtors, including (i) the Professional Corporations pursuant to the PC Management Services Agreements (*see* Motion, ¶¶ 14–15), (ii) the D&Os (*id.* at ¶¶ 16–17), (iii) HIG (*id.* at ¶¶ 18–19) and (iv) customers and clients pursuant to the terms of their underlying agreements with the Debtors, as described in more detail in Section IV herein, and (b) that are listed as an additional insured, or otherwise covered by, the Debtors' insurance policies, including the Debtors' employees and the Professional Corporations and their employees.  *Id.* at ¶ 23, Seitz Decl., ¶ 6.  All of the above categories present circumstances where a judgment against the Non-Debtor Defendant will in effect be a judgment against the Debtor and where the extension of the automatic stay to the Non-Debtor Defendants is justified.

4.      For the avoidance of doubt, "Non-Debtor Defendants" does not, and was never meant to, include governmental entities or other entities that are not connected to the Debtors and

---

[6]     Such allegations are asserted, in part, in the Deppe Objection (¶ 26), the Shannon Objection (¶¶ 4,6), the Pizarro Objection (incorporating arguments in the Shannon Objection (¶ 2)), Vinson Objection (¶ 6), the Vargas Objection (incorporating arguments in the Shannon Objection (¶ 3)) and the Committee Objection (¶¶ 1,4–5).

[7]     The Committee contends that the "Debtors argue that the automatic stay should be extended to Lawsuits against non-debtor third parties because the automatic stay *already applies* to each of these Lawsuits."  *See* Committee Obj., ¶ 2.  Such is not the case.  Instead, the Motion and the Reply sufficiently demonstrate the showing necessary to extend the automatic stay under section 362 of the Bankruptcy Code to Non-Debtor Defendants pursuant to Fifth Circuit standards and applicable authority.  In addition, as set forth herein, the Fifth Circuit does not require the Debtors to satisfy the burden for a preliminary injunction under section 105(a) of the Bankruptcy Code to extend the automatic stay to non-debtors pursuant to section 362 of the Bankruptcy Code, nor must the Debtors initiate an adversary proceeding to do so.

[8]     *See* Major Obj., ¶ 19.

[9]     The Committee's assertions to the contrary are simply inaccurate.  *See* Committee Obj., ¶ 2.

as to which completely separate and distinct causes of action are asserted against such defendants. The Debtors do, however, seek to extend the automatic stay to such Non-Debtor Defendants whether or not the Debtors are a named party in the underlying litigation, as the same concerns set forth above are implicated by such litigation.[10]

5.      In addition to the clearly specified categories of Non-Debtor Defendants described above and in the Motion which more than satisfy the Debtors' burden to establish the necessary nexus between the Debtors and the Non-Debtor Defendants, the Debtors have gone even further with respect to all of the Objections.  As detailed in Section IV of this Reply, the Debtors conduct a specific analysis with respect to each of the lawsuits underlying the Objections and demonstrate the Debtors' shared interests with respect to each of the Non-Debtor Defendants implicated by each of the Objections' underlying lawsuits.  Moreover, when shared interests do not exist such that a third-party defendant does not constitute a Non-Debtor Defendant under the terms of the Motion, the Debtors acknowledge such fact.  Indeed, third parties not encompassed by the Motion have been identified (as described herein) with respect to the Myers Objection, the Major Objection, the Vargas Objection, the Pizarro Objection, the Wright Objection, the Bradley Objection, the Hill Objection, the Crawford Objection and the Shannon Objection.[11]  It cannot be seriously challenged that the Debtors have not met their burden to extend the automatic stay to the Non-Debtor Defendants implicated by the Objections.  More can simply not be required here.

6.      The Shannon Plaintiffs and the Committee, however, misconstrue the concept of "absolute indemnity" to argue that the Debtors' established and undisputed indemnification

---

[10]   Should this Court deem it appropriate, the Debtors intend that any final order approving the Motion will clarify the definitions of "Non-Debtor Defendants" and "Lawsuits" to address any such confusion and to provide additional guidance to other courts seeking to interpret and enforce this Court's order.

[11]   The Debtors have repeated this same fact specific analysis in the Omnibus Lift Stay Objection and identify the various Non-Debtor Defendants protected by this Motion in such objection.

obligations don't create an identity of interest necessary to extend the automatic stay to such indemnified Non-Debtor Defendants. *See* Committee Obj., ¶¶ 5, 17, 19–26; Shannon Obj., ¶¶ 3, 15–20. Simply put, the concept of "absolute indemnity" does not require the terms of indemnification to be unconditional. In practice, this would be an almost unworkable standard as most indemnification obligations contain some sort of condition or carveout. As described herein, applicable caselaw, however, demonstrates that "absolute indemnity" simply requires that, when the contractual conditions for indemnity are met, the obligation to provide such indemnity exists. Moreover, the fact that such indemnity obligations have not yet been triggered does not preclude the extension of the automatic stay to such obligations.

7.     Moreover, many of the Objectors seek to obtain possession of property of the estate, particularly the Debtors' insurance and proceeds therefrom. As described in the Omnibus Lift Stay Objection, the Seitz Declaration and in this Reply, however, all of the Debtors' primary insurance policies covering the lawsuits are fronting policies that establish no true transfer of risk. *See* Seitz Decl., ¶ 6. Accordingly, all damages and defense costs are borne solely by the Debtors under such fronting policies. The next layers of the Debtors' insurance coverage require the Debtors to expend millions of dollars per claim before transferring any liability to third-party insurers. *See* Seitz Decl., ¶¶ 7–10, Ex. A.

8.     Whether due to the Debtors' indemnification or insurance obligations (or in the case of the Professional Corporations, both such obligations), all of the specified categories of Non-Debtor Defendants present circumstances where a judgment against the Non-Debtor Defendant will in effect be a judgment against the Debtor. Allowing plaintiffs to pursue these claims against the Non-Debtor Defendants in the hundreds of Lawsuits will require the Debtors to cover the Non-Debtor Defendants defense costs and will most certainly diminish the assets of the

estate and negatively impact the recovery of all stakeholders.[12]  Again, there can be no real dispute otherwise.

9.      Finally, the Committee proclaims that "tort claimants deserve their day in court"[13] and the Debtors don't disagree.  Litigation against the Non-Debtor Defendants will continue after the effective date of a confirmed chapter 11 plan, which the Debtors estimate will occur by or in April.  As the Debtors are seeking to accomplish their reorganization expeditiously, the Debtors believe this is a matter of months, not years.  Such an extension allows the Debtors to focus on their primary goal in these chapter 11 cases—maximizing value for all stakeholders as soon and as fairly as possible against the backdrop of a proposed sale of the Debtors' assets.  Indeed, as opposed to incurring thousands, if not millions, of dollars from the continuance of such litigation, the extension of the automatic stay to the Non-Debtor Defendants ensures not only that such costs will be temporarily halted during the chapter 11 cases, but that the Debtors will never have to incur such expenditures.  Indeed, assuming a sale is consummated, such obligations will be transferred to the buyer(s).  Thus, extending the automatic stay to the Non-Debtor Defendants preserves the value of the Debtors' estates for the benefit of all of their creditors.

10.      Accordingly, for the reasons set forth herein and in the Motion, the Debtors submit that the Court should grant the Motion on a final basis and stay the Lawsuits against the Non-Debtor Defendants and deny, or otherwise overrule, all objections to the Motion.

---

[12]   The Committee asserts that the Debtors must "show that continued [litigation] activity would negatively impact creditors or property of the estate rather than simply inconveniencing Debtors, their parent company, and their affiliates."  *See* Committee Obj. ¶ 5.  The Committee also demands that the Debtors should not be permitted to rely on insurance-based arguments when the Debtors have failed to provide the information that would allow the Committee and creditors to evaluate whether those arguments are applicable to creditors' claims. *Id.* at ¶ 31. The Debtors have met both such burdens.

[13]   *See* Committee Obj., ¶ 5.

<u>Reply</u>

I.   **The Lawsuits Are Subject to the Automatic Stay Pursuant to Section 362(A)(3) of the Bankruptcy Code Because the Debtors' Insurance Policies Require the Debtors to Bear the Financial Burden of Defending Against the Lawsuits.**

11.   Section 362(a)(3) of the Bankruptcy Code stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  "The section 362(a)(3) stay applies to two types of claims: claims that belong to the debtor under applicable state (or federal) law, and claims that seek to recover property of the estate that is controlled by a person or entity other than debtor." *Highland Cap. Mgmt. LP, et al. v. Chesapeake Energy Corp., et al. (In re Seven Seas Petroleum)*, 522 F.3d 575, 588 (5th Cir. 2008).  Staying such actions furthers the purposes of the automatic stay, which are "to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003)

12.   The Fifth Circuit has long held that "[i]nsurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself.  Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate." *In re Ozcelebi*, 639 B.R. 365, 398 (Bankr. S.D. Tex. 2022) (quoting *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir. 1993)).  As established in the Motion, the Lawsuits are often attempts to recover proceeds of the Debtors' insurance policies constituting "property of the estate that is controlled by a person or entity other than debtor" and are therefore automatically stayed under section 362(a)(3) of the Bankruptcy Code.  *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir. 1986) (finding insurance contracts are property of the estate); *In re Quigley Co., Inc.*, 676 F.3d 45, 53 (2d Cir. 2012) (claims paid out of

10

insurance that is joint property among the debtor and a non-debtor could directly affect the debtor's bankruptcy estate).[14]

13.     The reference in certain Objections to insurance policies as a possible source of distribution illustrates a fundamental misunderstanding of how the Debtors' insurance policies apply to covered claims.  *See* Hill Obj., ¶¶ 7–8.  As discussed in the Seitz Declaration and the Omnibus Lift Stay Objection, the Debtors' insurance coverage dating back to 2018 is subject to millions of dollars of self-insured retentions ("SIR") prior to reaching any true risk transfer to third parties.  *See* Seitz Decl., ¶ 6; Omnibus Lift Stay Objection, ¶¶ 12–36.  Moreover, all umbrella insurance coverage has been exhausted for the 2018-2020 period.  As a result, the Debtors must pay for **all** claims, and the defense thereof, made during this period that have not already been liquidated.  *See* Seitz Decl., ¶ 11.

14.     Allowing parties to proceed against insurance providers would cause a run on estate assets, encourage a race to the courthouse, and should be stayed accordingly.[15]  As discussed herein, continuation of the Lawsuits would force the Debtors to continue to self-fund defense of

---

[14]     Although the Hill Plaintiffs cite to *In re Jet Florida Systems. Inc*, 883 F.2d 970, 975 (11th Cir. 1989) for the proposition that courts typically hold that debtors do not suffer prejudice when creditors obtain stay relief to liquidate claims covered by insurance proceeds, such proposition is inapplicable in the present circumstance where the Debtors must incur millions of dollars of self-funding prior to reaching any true risk transfer to third parties.  *See* Hill Obj., at 7.  In addition, while the Hill Plaintiffs also cite other non-binding caselaw for the proposition that the automatic stay should not be applied to non-debtors, the Fifth Circuit (as set forth in the Motion) is quite clear that the automatic stay bars the continued prosecution of actions that would ultimately require recovery from the Debtors, as is the case here.

[15]     It is surprising that the Committee, tasked as fiduciary for all unsecured creditors and not just tort claimants, is taking a position that would allow a multitude of litigation to proceed, thereby encouraging a race to the courthouse and allowing the inequitable treatment of similarly situated creditors in its constituency.

such claims.  The Debtors' insurance for general liability and medical professional liability is summarized in the following chart:

## GENERAL LIABILITY AND MEDICAL PROFESSIONAL LIABILITY COVERAGE TOWERS 3/15/2018 TO PRESENT

| $22,000,000 | $23,000,000 | $23,000,000 | $23,000,000 | $25,000,000 | $25,000,000 |
|---|---|---|---|---|---|
| | | | | | $1,000,000 Hamilton London |
| | | | | $3,000,000 Hamilton London | $2,000,000 Allied World |
| | $10,000,000 Scottsdale | $7,000,000 Scottsdale | $7,000,000 Scottsdale | $2,000,000 Allied World | $7,000,000 AXA London |
| $10,000,000 Scottsdale | | | | $5,000,000 AXA London | |
| | | $3,000,000 National Fire Marine | $3,000,000 National Fire Marine | | |
| | $5,000,000 Coverys | $2,000,000 Allied World | $2,000,000 Allied World | **$7,000,000 CAPTIVE** Fully Self-insured by Wellpath | **$7,000,000 CAPTIVE** Fully Self-insured by Wellpath |
| $10,000,000 ProAssurance | | $3,000,000 Scottsdale | $3,000,000 Scottsdale | | |
| | $5,000,000 ProAssurance | **$8,000,000 SELF-INSURANCE** $5M Self-Insured + Texas Insurance $3M Fronting | **$8,000,000 SELF-INSURANCE** $5M Self-Insured + Texas Insurance $3M Fronting | **$8,000,000 SELF-INSURANCE** $5M Self-Insured + Texas Insurance $3M Fronting | **$8,000,000 SELF-INSURED** $5M Self-Insured + Texas Insurance $3M Fronting |
| **$2,000,000 SELF-INSURED** ProAssurance Fronting $2M | **$3,000,000 SELF-INSURANCE** ProAssurance Fronting $3M | | | | |
| 2018-2020 | 2020-2021 | 2021-2022 | 2022-2023 | 2023-2024 | 2024-2025 |

15.   In the ordinary course of business, the Debtors have maintained multiple layers of insurance coverage in each coverage period for general liability and medical professional liability. *See* Seitz Decl., ¶ 6–10.  In each coverage period, the Debtors obtained fronting policies from third-party insurers (each a "Fronting Policy," and collectively, the "Fronting Policies"), which do not establish any true risk transfer.  *Id.*  The third-party insurers make no payments on account of

12

the Fronting Policies. *Id.* Instead, the Debtors utilize these fronting arrangements to meet their customers' evidence of coverage requirements. *Id.* For example, the Debtors frequently contract with various state and local governments, many of which require proof of insurance from a licensed or authorized non-admitted insurer. *Id.* While the Fronting Policies allow the Debtors to meet the requirements to provide healthcare services to their customers, such policies do not transfer any risk to the insurance companies underwriting the policies. *Id.*

16.     Since 2021, the Debtors have provided buffer layers of SIR (each a "Buffer SIR," and collectively, the "Buffer SIRs") as the next layer of coverage following the Fronting Policies. *Id.* at 7.

17.     Additionally, from 2023 to present, the Debtors have maintained insurance policies through a "captive" insurance entity, HH Risk, LLC (each a "Captive Policy," and collectively, the "Captive Policies"). *Id.* at 8. The Captive Policies are additional forms of SIR. *Id.*

18.     Finally, the Debtors enter into various umbrella policies, which provide coverage for claims in excess of the Debtors' Fronting Policies, Buffer SIRs, and Captive Policies. *Id.* at 9. Accordingly, with respect to general liability and professional liability, the Debtors must retain risk to pay for claims made in each coverage period. *Id.* The above-described insurance covers both the Debtors and their employees, as well as non-debtor professional corporations and their employees. *Id.* at 6.

19.     Any attempts to recover insurance proceeds are properly stayed pursuant to section 362(a)(3) as attempts "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). As the underlying insurance policies require the Debtors to incur the initial damage and defense costs per occurrence, the existence of insurance does not excuse the application of the automatic stay to the

Non-Debtor Defendants and failure to apply the automatic stay would result in a significant expenditure of estate assets.

## II.     The Lawsuits Are Subject to the Automatic Stay Pursuant to Section 362(A)(1) of the Bankruptcy Code Because the Debtors are the Real Party Defendants to the Lawsuits.

20.     The Fifth Circuit has established that the automatic stay may extend to proceedings against nonbankrupt co-defendants when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs.*, 349 F.3d at 825 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d at 999).[16]  Here, the Debtors share an identity of interests with the Non-Debtor Defendants due to indemnification obligations, such that "a judgment against one would in effect be a judgment against the other." *Nat'l Oilwell Varco, L.P. v. Mud King Prods., Inc.*, 2013 WL 1948766, at *2, *6 (S.D. Tex. May 9, 2013).  Continuation of the Lawsuits would also force the Debtors to maintain an active role to avoid a judgment or finding against the Non-Debtor Defendants constituting a judgment or finding against the Debtors, thereby causing the depletion of estate assets.

### A.     The Debtors' Indemnification Obligations to the Non-Debtor Defendants Establish an Identity of Interests Supporting the Stay of the Lawsuits.

21.     As the Fifth Circuit has explained, "a formal tie or contractual indemnification" can "create an identity of interests between the debtor and nondebtor" such that the automatic stay should be extended.  *Reliant Energy Servs.*, 349 F.3d at 825; *see also Nat'l Oilwell Varco, L.P.*, 2013 WL 1948766, at *2, *5 (staying action against third parties because debtor's indemnification

---

[16]     The Committee take issue with the fact that the automatic stay applies to the Non-Debtor Defendants where "the liability of the nonbankrupt is not independent of the debtor's liability and a judgment against the nonbankrupt will be binding upon the debtor's estate."  *See* Committee Obj., ¶ 29.  Such is the binding command of the Fifth Circuit, where (as is the case here) a debtor and nonbankrupt co-defendant have a "unitary interest."  *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1148 (5th Cir. 1987).  Indeed, the Committee cites no caselaw to the contrary.

obligations to third parties created an identity of interests).  The Debtors have met their burden establishing an identity of interest based upon indemnification obligations.

22.    Vargas, the Shannon Plaintiffs, and the Committee assert that "absolute indemnity" is required for the automatic stay to apply to non-debtors.  *See* Vargas Obj ¶ 16; Shannon Obj., ¶ 3; Committee Obj., ¶ 19–26.  Each of the Objectors cite to *A.H. Robins* from the Fourth Circuit to support their claim that the indemnifications must be "absolute."  However, a closer look reveals that the concept of "absolute indemnity" does not require indemnity obligations to have no qualifications or contingencies whatsoever, but merely that indemnity obligations exist.

23.    The *A.H. Robins* court is very clear that where "a debtor and nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law, then the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the [Bankruptcy] Code."  788 F.2d 994, 999 (4th Cir. 1986) (quoting *In re Metal Center*, 31 B.R. 458, 462 (D.Conn.1983)).  The Fourth Circuit went on to emphasize that "'[c]learly the debtor's protection must be extended to enjoin litigation against others if the result would be binding upon the debtor's estate,' and this is so, whether the debtor is a party or not."  *Id.*

24.    Indeed, the Objectors fail to mention that just one year later, the Fourth Circuit clarified it had "found that a stay was authorized under 11 U.S.C. § 362(a)(3) because [the third-party defendant] **might** seek indemnification from [the debtor] for any damages it had to pay, thus implicating the debtor's property."  *See In re A.H. Robins Co. Inc.*, 828 F.2d 1023, 1025 (4th Cir. 1987); *see also In re LTL MANAGEMENT, LLC*, 638 B.R. 291, 312 (Bankr. D.N.J. 2022) ("The Fourth Circuit's use of the word "might" suggests that conditional indemnification is

sufficient to trigger extension of automatic stay).  Accordingly, the Fourth Circuit has made clear that indemnity need not be "absolute" in the sense argued by the Objectors.

25.     Although the Committee, the Shannon Plaintiffs, and Vargas cite to *In re Divine Ripe, L.L.C.* in support of their contention that indemnification obligations to the Non-Debtor Defendants must be "absolute," such case does not discuss the concept of "absolute indemnity" in any detail other than to merely cite to *A.H. Robins*.[17]  These Objectors do not cite to any other case law in support of their interpretation of "absolute immunity."   Moreover, this unsupported interpretation of "absolute immunity" is self-serving and effectively renders the protection meaningless, as very few indemnities lack some qualification or condition, such as exceptions for fraud or gross negligence.   Indeed, many states prohibit the sort of unconditional indemnity insisted upon by such Objectors.[18]

26.     As set forth in more detail in the Motion, the Debtors' indemnification obligations to the Non-Debtor Defendants effectively render the Debtors the primary defendant in these disputes, making a judgment against any of the Non-Debtor Defendants a judgment against the Debtors, and thereby satisfying the Fifth Circuit's test for application of the automatic stay. Indeed, such an interpretation is consistent with the *A.H. Robins* court's express disapproval of the opposite result.   788 F.2d at 1000 (explaining that where a "third-party defendant . . . was found

---

[17]   *In re Divine Ripe, L.L.C.*, 538 B.R. 300, 312 (Bankr. S.D. Tex. 2015).  *In re Divine Ripe, L.L.C.* stands merely for the proposition that actions not directed against the debtor or the debtors' property are not subject to stay. *Id.* at 308.

[18]   *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 130.002 (invalidating agreements indemnifying a registered architect or licensed engineer from liability for damage that results from defects or negligence in their plans and cause personal injury, death, or property injury); *Constable v. Northglenn, LLC*, 248 P. 3d 714, 716–18 (Colo. 2011) (explaining public policy precluded indemnification for an indemnitee's "intentional or willful wrongful acts" based on Colorado's Premises Liability Act § 13-21-115, C.R.S. (2010)); *Austro v. Niagara Mohawk Power Corp.*, 66 N.Y.2d 674, 676 (N.Y. 1985) (noting that indemnification agreements are unenforceable as violative of public policy "to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury").

to be entitled to indemnity from the debtor, [and] the court held that the situation was not such as to qualify for a stay under section 362(a)(1) . . . [w]e do not accept such reasoning with its shocking result and would find a stay under (a)(1) acceptable").

**B.      Continuation of the Lawsuits Would Interfere with the Debtors' Restructuring Efforts.**

27.      The Lawsuits against the Non-Debtor Defendants constitute attempts to "recover a claim against the debtor" because the claims in the Lawsuits, whether asserted against the Debtors or the Non-Debtor Defendants, are predicated on the Debtors' purported prepetition conduct.  If plaintiffs in the Lawsuits are permitted to proceed against the Non-Debtor Defendants, the Debtors will have no choice but to maintain a role in the Lawsuits (notwithstanding the automatic stay) or risk facing collateral estoppel and *res judicata* concerns.

28.      Accordingly, courts extend the automatic stay to litigation that "could interfere with the reorganization of the debtor" or "would frustrate the statutory scheme of chapter 11, or diminish the debtor's ability to formulate a plan of reorganization." *In re W.R. Grace & Co.*, 115 F. App'x 565, 570 (3rd Cir. 2004) (internal citations omitted); *see also In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 614 (E.D. Pa. 2009) (holding that refusal to extend the stay to non-debtor parties would divert "the time and energy of key personnel from the reorganization effort at a critical time in the formulation of the plan"); *Calpin Corp. v. Nev. Power Co.*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006) (extending stay where the liability of the non-debtor was contingent on the liability of the debtor, the debtor risked being subject to collateral estoppel, the debtor was required to indemnify the non-debtor defendant, and continuance of the cases would distract key personnel from the debtor's reorganization efforts).  The continuation of the Lawsuits against the Non-Debtor Defendants implicates the Debtors' interests, would interfere with the Debtors' restructuring efforts, and should be stayed accordingly.

17

### III.   The Debtors Need Not Satisfy the Burden for a Preliminary Injunction Under Section 105(a) to Extend the Automatic Stay to Non-Debtor Defendants.

29.     The Debtors are not seeking an injunction, nor need they do so.[19]  The Fifth Circuit has long held that the automatic stay may be extended to third-party defendants pursuant to section 362 of the Bankruptcy Code when "there is such identity between the debtor and the third-party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."  *Reliant Energy Servs*., 349 F.3d at 825 (quoting *A.H. Robins*, 788 F.2d at 999).[20]

30.     Indeed, the Fifth Circuit has long acknowledged that automatic stays pursuant to section 362 of the Bankruptcy Code and stays pursuant to section 105 of the Bankruptcy Code and the Court's inherent equitable powers are separate and distinct stays invoking different analyses.[21]  *See Matter of S.I. Acquisition, Inc.*, 817 F.2d at 1146 n. 3 ("We do not address the propriety of a stay against Eastway's state court action based upon section 105 or the bankruptcy court's inherent equitable powers because S.I.A. did not ask the bankruptcy court to act on either of these grounds. Our decision will be limited to whether either section 362(a)(1) or 362(a)(3) automatically stayed Eastway's entire action in Texas state court against the debtor, S.I.A., and its codefendants."); *see also Edwards v. Armstrong World Indus., Inc.*, 6 F.3d 312, 316–20 (5th Cir. 1993) (analyzing the

---

[19]   The Committee mistakenly asserts that "the Debtors have sought to bring the Stay Motion as a contested matter under Fed. R. Bankr. P. 9014. . . ."  Committee Obj., ¶ 3.  The Motion, or the corresponding interim order, however, contain no reference to, or in any way assert relief under, such statutory provision.

[20]   Indeed, the Fifth Circuit recognized the *A.H. Robins* test over twenty years ago in *Arnold v. Garlock, Inc.*  278 F.3d 426, 436 (5th Cir. 2001).  Although the Fifth Circuit declined to extend section 362 of the Bankruptcy Code to non-debtors in *Arnold*, the court based its decision on the fact that (unlike here) no claim of a formal tie or contractual indemnification had been made to create an identity of interests between the debtor and non-debtor. *Id.*

[21]   Thus, the Committee's assertion that the Debtors must seek relief under section 105(a) of the Bankruptcy Code disregards applicable authority in the Fifth Circuit making clear that extending the stay to non-debtor defendants under the authority of section 362 of the Bankruptcy Code is sufficient.  Committee Obj., ¶¶ 1–2.  Moreover, Shannon Plaintiffs' contention that the requested relief is a "disguised injunction" does not apply to these circumstances. *See* Shannon Obj. ¶¶ 1, 9–12.

potential stay of execution of a supersedeas bond under both sections 105 and 362 of the Bankruptcy Code*), rev'd sub nom. Celotex Corp. v. Edwards*, 514 U.S. 300, 315 (1995) (Stevens, J., dissenting) ("**[N]either** the automatic stay of proceedings against the debtor pursuant to § 362(a) of the Bankruptcy Code **nor** the Bankruptcy Judge's October 17, § 105(a) stay restrained Edwards from proceeding against Northbrook to enforce Northbrook's obligations under the bond.").[22]

31.    Thus, there is no need for this Court to extend the automatic stay under its equity jurisdiction pursuant to section 105 of the Bankruptcy Code.  As section 105(a) of the Bankruptcy Code has not been implicated by the Debtors, nor need they do so, there is no need to set forth and satisfy preliminary-injunction factors.  Simply put, governing law does not require a specific action to extend the automatic stay to the Non-Debtor Defendants.[23]

---

[22]    Furthermore, courts in other jurisdictions have also held that section 362 is an independent basis for the extension of the automatic stay to non-debtors.  *See e.g.*, *In re A.H. Robins Co (A.H. Robins Co. v. Piccinin)*, 788 F.2d 994, 1001–003 (4th Cir. 1986) (discussing each different source of authority to stay a proceeding against non-debtor co-defendants in a separate section of the decision); *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-288 (2d Cir. 2003) (finding independent grounds under 362 to extend the stay to non-debtors, then noting "the bankruptcy court's authority to stay the litigation was invoked not only under section 362(a) but also under section 105"); *In re LTL MANAGEMENT, LLC*, 638 B.R. at 300 ("In this Court's view, ample authority exists to conclude that § 362(a), § 105(a), or a court's inherent powers can each serve as independent bases for extension of a stay to nondebtor third parties."); *In re Brier Creek Corp. Ctr. Assocs. Ltd.*, 486 B.R. 681, 693 (Bankr. E.D.N.C. 2013) ("The 'unusual circumstances' exception to § 362(a)(1), and an injunction pursuant to the court's powers under § 105, are two separate and distinct grounds on which the court can stay non-debtor litigation."); *In re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R. 622, 654–55 (Bankr. S.D.N.Y. 2023) ("In nearly every case cited by the Debtor, the courts found that the actions at issue were stayed pursuant to section 362 in the first instance and granted an injunction on the additional basis of authority conferred by section 105(a).") (collecting cases).

[23]    The authority to which the Shannon Plaintiffs cite in support for the need for a "specific action" before the automatic stay may be applied to non-debtor defendants is inapplicable to, or easily distinguishable from, these circumstances.  For example, *Monson v. McClenny, Moseley & Assocs., PLLC* does not hold that section 105 of the Bankruptcy Code or equitable powers must be exercised by the bankruptcy court to extend the protections of section 362 of the Bankruptcy Code to non-debtor defendants.  2024 WL 4719892 2024, U.S. Dist. LEXIS 204784 (S.D. Tex. June 24, 2024).  *Monson* involved two non-debtor co-defendants independently asserting that the automatic stay applies to claims against them in the absence of the bankruptcy court taking any action to specifically extend the stay to them.  *Id.* at *1.  *Monson* is clearly distinguishable to these circumstances where this Court has taken express action by entering an order granting the Motion on an interim basis, thereby expressly extending the automatic stay to non-debtors.

Likewise, in *Everitt v. Pneumo Abex, LLC*, a non-debtor third party independently sought an order from the bankruptcy court extending the automatic stay to such non-debtor, a request that was rejected by the bankruptcy court.  703 F. Supp. 2d 630, 638 (S.D. Miss. 2009).  Again, in this case, such an extension of the automatic stay to non-debtor defendants has been expressly granted by the court pursuant to section 362(a) of the Bankruptcy Code.

## IV.     The Remaining Objections Should be Overruled.

### A.     The Wright Plaintiffs' Lawsuits Are Properly Subject to the Automatic Stay.

32.     Each of the Wright Plaintiffs' Lawsuits should be stayed because they are either an "act to obtain possession of property of the estate" or the Debtors are the "real party defendant." *First*, the Lawsuits against the Debtors' employees should be stayed for the reasons stated in Section I of this Reply.  The Lawsuits initiated by Lonnie Wright, Cedric Stewart, and Eugene Miller are covered by the Debtors' 2023-2024, 2024-2025, and 2022-2023 insurance policies, respectively.  *See* Seitz Decl., ¶¶ 23, 26, 30.  The Debtors' employees, Dr. Mathew Micelli, Joseph Walsh, Dr. Rajinder Malhi, Gabrielle Nalley, and Dr. Sathiavathi Natarajan,[24] are covered by such insurance policies, and the Debtors therefore cover the defense costs related to these Lawsuits.[25]

33.     *Second*, the Lawsuits against two PC Physicians should be stayed because the Debtors owe indemnification obligations to the PC Physicians pursuant to the Management Services Agreement, effective as of September 1, 2015, by and between Correct Care Solutions, LLC (n/k/a Debtor Wellpath LLC), as Manager, and Midwest Center, P.C., as the Company (the "Midwest Center, P.C. MSA").[26]  *See* Midwest Center, P.C. MSA, § 13.1.

---

Finally, the court *In re Bidermann Indus. U.S.A., Inc. v. Zelnik* notes that courts are split on whether the automatic stay automatically applies to non-debtors.  200 B.R. 779, 782 (Bankr. S.D.N.Y. 1996).  Such is not the case here where the Debtors requested the extension of the automatic stay pursuant to section 362 of the Bankruptcy Code, and the court granted such an extension.  As a result, the automatic stay was never automatically applied to non-debtor defendants

[24]   Dr. Marty Cole, a defendant in the Lawsuit brought by Eugene Miller, is not employed by the Debtors.  The Debtors submit that they owe no indemnification obligations to Dr. Cole.  As a result, the automatic stay does not apply to Dr. Cole, and the Lawsuit should not be stayed as to such defendant.

[25]   Although certain of the Non-Debtor Defendants, Dr. Rajinder Malhi, Dr. Mathew Miceli, and Dr. Sathiavathi Natarajan, in the Wright Plaintiff's Lawsuits are also covered by PAJUA policies, pursuant to agreements (attached hereto as **Exhibits A–C**), the Debtors are responsible for half of the defense costs with respect to Dr. Rajinder Malhi, Dr. Mathew Miceli and Dr. Sathiavathi Natarajan and the Wright Plaintiffs' Lawsuits.  *See also* Seitz Decl., ¶ 22.

[26]   Due to confidentiality concerns, the Professional Corporation management services agreements referenced herein have been designated as confidential and are not attached hereto.

34.     The Wright Plaintiffs argue that application of the stay is immaterial here as the Debtors' indemnify obligations "merely serve to transfer identity of the payee in the event of a judgment of settlement," but that is not the applicable standard.[27]  *See* Wright Obj. ¶ 9.  This Court need only look to determine whether a judgment against a third party defendant will in effect be a judgment against the debtor.  *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F. 3d. 816, 825 (5th Cir. 2003).  As prosecution of such action will ultimately require recovery from the Debtors, the Wright Plaintiff's litigation should be stayed.

**B.     The Vargas Lawsuit Should Be Stayed As to Non-Debtor Defendant the GEO Group.**

35.     While the Debtors agree with Vargas and the United States that the automatic stay is not properly applied as to the United States, the Vargas Lawsuit should be stayed as to the GEO Group.  In the underlying action, the claims made against Debtor Wellpath LLC and the GEO Group are identical.  Counts IV and V of Vargas's complaint (for violation of detention standards and negligence) name both Debtor Wellpath LLC and the GEO Group as defendants and accuse both parties of wrongdoing based on **<u>identical</u>** alleged conduct.  *See Vargas v. United States of America, et al.*, Case No. 5:23-cv-00380-JWH-SP (C.D. Cal. 2023) [Docket No. 1] (the "<u>Vargas Complaint</u>"), at 26–27, attached hereto as **<u>Exhibit D</u>**.

36.     Accordingly, the Lawsuit should be stayed as to the GEO Group because if Vargas is permitted to proceed against the GEO Group, the Debtors will have no choice but to maintain a role in the Lawsuit or risk facing collateral estoppel and *res judicata* concerns.  Furthermore, continued litigation would force key employees of the Debtors, including the Debtors' limited in-

---

[27]    This same argument is also made by Bradley.  *See* Bradley Obj. ¶ 12.

house legal team, to stay involved in the day-to-day management of the Lawsuit, rather than maintaining focus on the Debtors' restructuring efforts, to the detriment of all parties in interest.

### C. The Major Objection Should Be Denied.

37.     The automatic stay should apply to Non-Debtor Defendant Dr. Herbik in the Major Lawsuit.  Dr. Herbik is insured under a PAJUA claims-made policy which became effective March 15, 2021, with a September 1, 2014, retroactive date.  Pursuant to agreement (attached hereto as **Exhibit E**), the Debtor is responsible for half of the defense costs with respect to Dr. Herbik.  As the Debtors have the obligation to pay such costs, a sufficient identity of interest has been established.  Failure to apply the automatic stay to Dr. Herbik would result in an unnecessary expenditure of the estate and use of the Debtors' property.  The fact that Wellpath is not a named defendant in the Major Lawsuit does not lessen this fact or diminish the need for the automatic stay to apply to this Non-Debtor Defendant.[28]

38.     The Major Lawsuit should also be stayed as to Non-Debtor Defendants James Bright and Dr. Herbik.  In connection with the Major Lawsuit, the Debtors' employees are covered by the Debtors' 2022-2023 insurance policies, and the Debtors bear sole responsibility for all defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 12.

39.     Additionally, the Major Lawsuit should be stayed as to the Commonwealth of Pennsylvania defendants.  Wellpath (f/k/a Correct Care Solutions, LLC) is party to that certain Contract for Corrections Health Care Services (the "PA DOC Contract"),[29] whereby Wellpath has agreed to provide correctional health care services for the Commonwealth of Pennsylvania.

---

[28]    The draft final order to be proffered to this Court in support of the Motion shall make clear the application of the automatic stay to Non-Debtor Defendants regardless of whether the Debtors are named parties to such litigation.

[29]    To avoid the disclosure of sensitive competitive and proprietary information, the customer agreements referenced herein have been designated as confidential and are not attached hereto.

Pursuant to the PA DOC Contract, Wellpath is also required to indemnify the city and its employees, Michael Edwards, William Nicholson, and Laurel R. Harry, for claims related to medical care:

> The Contractor shall hold the Commonwealth harmless from and indemnify the Commonwealth against any and all third party claims, demands and actions based upon or arising out of any activities performed by the Contractor and its employees and agents under this Contract, provided the Commonwealth gives Contractor prompt notice of any such claim of which it learns.

PA DOC Contract, at 75.  Accordingly, Counts II and V of Major's complaint (each for deliberate indifference to serious medical needs) are claims for which the Debtors may owe indemnification to the Commonwealth and its employees.  *See* Major Obj., Ex. A at 19–20, 24–25.  Accordingly, the Lawsuit should be stayed as to these claims.[30]  If Major is permitted to proceed against any of the defendants as to such counts, the Debtors will be required to pay defense costs and maintain a role in the Lawsuit or risk facing collateral estoppel and *res judicata* concerns.

40.     Moreover, the arguments made in the Major Objection regarding this Court's jurisdiction to liquidate Major's claims are inapplicable here.  *See* Major Obj. ¶ ¶19–20.  This Court is not being sought to adjudicate any underlying claims in the Major Lawsuit, or any other Lawsuit.  Pursuant to the Motion, the Debtors only seek to stay Lawsuits as to Non-Debtor Defendants for a limited period.  For the reasons stated herein and in the Motion, the Major Objection should be overruled.

**D.      The Vinson Lawsuit Should be Stayed as to the Debtor and Its Employee.**

41.     The Vinson Lawsuit should be stayed in its entirety.  In the underlying action, the claims made against Debtor Wellpath LLC and its employee, Sharon Rice, are identical.  Count I

---

[30]   For the avoidance of doubt, Counts I, III, and IV are not claims which the Debtors owe indemnification obligations for or, in the alternative, such counts are made against parties to which the Debtors do not owe indemnification obligations.  Accordingly, such claims should not be subject to the automatic stay.

of Vinson's complaint (for wrongful death and negligence) name both Debtor Wellpath LLC and Sharon Rice as defendants and accuse the Debtor of wrongdoing based on **<u>identical</u>** alleged conduct. *See* Vinson Obj., Ex. A at 18–19. In addition, Debtor Wellpath LLC is paying for the employee's defense pursuant to the 2022-2023 insurance policies. *See* Seitz Decl., ¶ 23. The Debtors therefore cover the defense costs related to this Lawsuit. Accordingly, the Lawsuit should be stayed as to the Debtor's employee as there is a more than sufficient identify of interest between the Debtor and Sharon Rice.

42.     Additionally, the Vinson Lawsuit should be stayed as to the City of Norfolk defendants. Wellpath (f/k/a Correct Care Solutions, LLC) is party to an agreement (the "<u>City of Norfolk Agreement</u>"), whereby Wellpath has agreed to provide comprehensive medical, dental, and mental health care to the inmates of the Norfolk City Jail. Pursuant to the City of Norfolk Agreement, Wellpath is also required to indemnify the city and its employees:

> The Contractor shall indemnify and hold harmless the NSO, and its representatives from and against losses and claims, demands, suits, actions, payments and judgments arising from personal injury or otherwise, brought or recovered against the NSO or its representatives by reason of any negligent act or omission of the Contractor, its agents, servants or employees, in the execution of the contracted work, including any and all expense, legal and otherwise, incurred by the NSO or its representatives in the defense of any claim or suit.

Accordingly, Wellpath's indemnification obligations to the City of Norfolk effectively render the Debtors the primary defendant in these disputes, making a judgment against the City of Norfolk a judgment against the Debtors. As a result, the City of Norfolk and it employees, as well as the Debtor's employee, Sharon Rice, are Non-Debtor Defendants protected by the Motion and the Interim Stay Extension Order and the Vinson Objection should be overruled.

### E. The Debtors Share an Identity of Interests with the Non-Debtor Defendant in the Reichart Lawsuit.

43.     The Reichart Lawsuit should be stayed as to Nicola S. Wiener, the representative of the estate of deceased Debtor's employee, Dr. Steven Wiener.  In the underlying action, the claims made against Debtor Wellpath LLC and its employee are identical.  Count II of Reichart's complaint (for deliberate indifference to serious medical needs) name both Debtor Wellpath LLC and its employee as defendants and accuse the Debtor of wrongdoing based on its employee's alleged conduct.  *See* Reichart Obj., Ex. 1 at 15–17.  Accordingly, the Lawsuit should be stayed as to the Debtor's employee.  If Reichart is permitted to proceed against the Debtor's employee, the Debtors will have no choice but to continue paying defense costs and maintain a role in the Lawsuit or risk facing collateral estoppel and *res judicata* concerns.[31]

### F. The Young Objection Should Be Overruled.

44.     The Young Objection alleges that the Debtor Correctional Healthcare Companies, LLC (f/k/a Correctional Healthcare Companies, Inc.) has no role or standing in Young's appeal to the Tenth Circuit Court of Appeals. *See* Young Obj. ¶ 2.  The Young Parties argue that allowing argument before the Tenth Circuit will have no economic or other impact upon the Debtors.  *Id*.  The Debtor, however, is named as the defendant-appellee and has taken an active role in the appeal.  For example, the Debtor has filed a motion to dismiss the appeal and would need to appear at and participate in upcoming oral arguments to advance and protect their interests.

45.     This is not an issue of whether the automatic stay should be extended against Non-Debtor Defendants.  This is an action directly against the Debtors, where there is no question that the automatic stay applies.  Thus, the Debtors will have no choice but to continue paying defense

---

[31]     Pursuant to agreement (attached hereto as **Exhibit F**), the Debtor is responsible for half of the defense costs with respect to Dr. Steven Wiener and the Reichart Lawsuit.  *See also* Seitz Decl., ¶ 22.

costs and maintain a role in the Lawsuit if the appeal were allowed to continue.  Consequently, the Young Lawsuit should remain stayed, and the Young Objection should be overruled.

### G. The Pizarro Lawsuit Implicates Property of the Estate and Should be Stayed in Part.

46.     The Lawsuit related to the Pizzaro Objection involves Debtor Wellpath, Wellpath's employees, Dr. Jerome Norton and Helene Bishop, New York Correct Care Solutions Medical Services, P.C. ("NYCCS"), Westchester County and the United States.[32]  Wellpath and its employees in Pizarro's Lawsuit are covered by the Debtors' 2023-2024 insurance policies, and the Debtors therefore cover the defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 15.

47.     As set forth in the Motion and the PC Motion, continuation of Lawsuits against the Professional Corporations would implicate property of the Debtors' estates.  NYCCS is a Professional Corporation and covered by the PC Motion, and Pizarro's Lawsuit should be stayed as to NYCCS.  Indeed, the Debtors owe indemnification obligations to NYCCS pursuant to the Management Services Agreement, effective as of September 1, 2019, by and between Debtor Wellpath LLC, as Manager, and New York Correct Care Solutions Medical Services, P.C., as the Company (the "NYCCS MSA").  *See* NYCCS MSA, § 5.2.

48.     NYCCS provides services to Westchester County pursuant to that certain Services Agreement between the County of Westchester and NYCCS (as amended, modified, or supplemented from time to time, the "Westchester County Services Contract") dated

---

[32]   The Debtors maintain that the United States is not a Non-Debtor Defendant, as no indemnification obligations or related claims exist.  Accordingly, the Lawsuit should not be stayed as to the United States.

September 30, 2019.  Pursuant to the Westchester County Services Contract, NYCCS is obligated to indemnify Westchester County:

> [E]xcept for the amount, if any, of damage contributed to, caused by, or resulting from the willful misconduct or negligence of the County, its agents, employees, or contractors, [NYCCS] shall indemnify and hold harmless the County, its officers, employees, agents, and elected officials from and against any and all liability, damage, claims, demands, costs, judgments, fees, attorney's fees or loss which may be made or instituted against them by reason of claims related to health care, including deprivation of constitutional rights and/or personal injury (including death) to any person or damage to property to the extent arising out of the willful misconduct or negligence of [NYCCS] or its agents or employees or arising directly or indirectly out of the performance or failure to perform hereunder by [NYCCS] or third parties under the direction or control of [NYCCS].

Westchester County Services Contract, § 7.

49.     Debtor Wellpath LLC, by and through the NYCCS MSA, is obligated to indemnify NYCCS for legal expenses it may incur as a result of providing services pursuant to the NYCCS MSA.  NYCCS, by and through the Westchester County Services Contract, is obligated to indemnify Westchester County for legal expenses it may incur as a result of providing services pursuant to the Westchester County Services Contract.  By virtue of the NYCCS MSA and the Westchester County Services Contract, the Debtors are ultimately liable for legal expenses incurred by Westchester County.

50.     As a result thereof, Wellpath's employees, Dr. Jerome Norton and Helene Bishop, as well as NYCCS and Westchester County, are Non-Debtor Defendants encompassed by the protections of the Interim Stay Extension Order.  The Pizarro Objection should be denied with respect to such Non-Debtor Defendants.

###### H.    The Deppe Lawsuits Implicate Property of the Estate and Therefore Should Be Stayed.

51.    The Lawsuits related to the Deppe Objection involve Non-Debtor Defendants California Forensic Medical Group, Inc. and their employees (collectively, "CFMG") and Shasta County, California and their employees (collectively, "Shasta County").   As described in the Motion and the PC Motion, continuation of Lawsuits against the Professional Corporations would implicate property of the Debtors' estates.   CFMG is a Professional Corporation and covered by the PC Motion and relief granted with respect to same.   Pursuant to the CFMG MSA, attached to the Omnibus Lift Stay Objection as Exhibit A, Wellpath LLC is obligated to indemnify CFMG:

> The [Debtors] will indemnify, defend and hold harmless the Management Company, its Affiliates and their respective directors, managers, officers, equity holders, employees, agents (including the Management Company Representative), successors and permitted assigns (collectively, the 'Management Company Indemnified Parties') from and against all losses, liabilities, demands, claims, actions or causes of action, regulatory, legislative or judicial proceedings or investigations, assessments, levies, fines, penalties, damages, costs and expenses (including reasonable attorneys', accountants', investigators' and experts' fees and expenses) incurred in connection with the defense or investigation of any claim . . . sustained or incurred by any Management Company Indemnified Party arising from or related to illegal activity, intentional misconduct, negligence or breach of this Agreement by the Company and its directors, managers, officers, equity holders, employees, agents, successors and permitted assigns (the 'Company Indemnified Parties').

CFMG Management Services Agreement, § 7.1.

52.    CFMG provides services to Shasta County pursuant to that certain Personal Services Agreement Between the County of Shasta and California Forensic Medical Group, Inc. dated June 2016 (as amended, modified, or supplemented from time to time, the "Shasta County Services Contract").

53. Pursuant to the Shasta County Services Contract, CFMG is obligated to indemnify Shasta County:

> To the fullest extent permitted by law, Contractor shall indemnify and hold harmless County, its elected officials, officers, employees, agents, and volunteers against all claims, suits, actions, costs, expenses (including, but not limited to, reasonable attorney's fees of County Counsel and counsel retained by County, expert fees, litigation costs, and investigation costs), damages, judgments, or decrees arising from the work or the provision of services undertaken pursuant to this agreement by Contractor, or by any of Contractor's subcontractors, any person employed under Contractor, or under any subcontractor, or in any capacity, except when the injury or loss is caused by the sole negligence or intentional wrongdoing of County.

Shasta County Services Contract, § 12.

54. Debtor Wellpath LLC, by and through the CFMG MSA, is obligated to indemnify CFMG for legal expenses it may incur as a result of providing services pursuant to the CFMG MSA. CFMG, by and through the Shasta County Services Contract, is obligated to indemnify Shasta County for legal expenses it may incur as a result of providing services pursuant to the Shasta County Services Contract. By virtue of the CFMG MSA and the Shasta County Services Contract, the Debtors are ultimately liable for legal expenses incurred by Shasta County. Indeed, Shasta County tendered its defense in the Lawsuit styled *Deppe et al. v. Cnty. of Shasta et al.*, Case No. 2:22-cv-00187-DAD-JDP (E.D. Cal.) to Wellpath, and Wellpath accepted the tender as outlined in the letter agreement attached hereto as **Exhibit G** (the "Shasta County Tender Acceptance Letter"). As a result thereof, CFMG and Shasta County are Non-Debtor Defendants encompassed by the protections of the Motion and the Interim Stay Extension Order.

55. Moreover, Shasta County is a client of the Debtors. Shasta County has a non-delegable duty to provide medical care to its detainees, so any findings against the Debtors or Shasta County could be imputed to the other party. As a result, allegations against Shasta County

and the Debtors are inextricably intertwined such that severance of such claims would be inappropriate.  Accordingly, the Deppe Lawsuits are properly subject to the automatic stay as to all defendants and the Deppe Objection should be denied.

     **I.**     **The Michigan Lawsuit Should Be Stayed in Its Entirety.**

     56.     The Lawsuit related to the Michigan Objection is properly stayed.  The Debtors are required to indemnify Grand Prairie Healthcare Services, P.C. ("Grand Prairie") for any "assessments, losses, costs, expenses, interest, fines, penalties, actual or punitive damages" related to the Lawsuit pursuant to the Management Services Agreement by and between Wellpath LLC and Grand Prairie, effective as of January 1, 2019 (the "Grand Prairie MSA").  *See* Grand Prairie MSA, § 5.2.

     57.     Furthermore, Debtor Wellpath LLC has made multiple good faith attempts to provide Michigan with the HIPAA compliant files referenced in the Michigan Objection and has continued to provide reporting on a post-petition basis in the ordinary course of business. *See* Michigan Obj., ¶ 8.  Accordingly, the Michigan Lawsuit should remain stayed as to both the Debtors and Grand Prairie.  In addition, the Debtors will continue to fulfill reporting obligations, and will continue discussions with Michigan to resolve formatting issues as to such reporting, in the ordinary course of business without the need for further order from this Court.

     **J.**     **The Bradley Lawsuits Should Be Stayed As to Certain Non-Debtor Defendants.**

     58.     Bradley filed two Lawsuits against Debtor Wellpath LLC.  *See Bradley v. Kane Cnty. Sheriff's Office, et al.*, Case No. 23-cv-05019 (N.D. Ill. 2023) (the "Kane County Case"); *Bradley v. Ronald Hain, et al.*, Case No. 23-cv-05020 (N.D. Ill. 2023) (the "Hain Case"). ***First***, the Kane County Case should remain stayed as to Debtor Wellpath LLC.  The Debtors do not assert the automatic stay as to any other defendants in the Kane County Case.  ***Second***, Debtor

Wellpath LLC was granted its motion to dismiss the claim against it in the Hain Case.  *See Opinion and Order*, *Bradley v. Ronald Hain, et al.*, Case No. 23-cv-05020 (N.D. Ill. 2023) [Docket No. 62]. Accordingly, the Debtors have no interest in the Hain Case, and it should not be stayed.  The Bradley Objection should therefore be overruled.

59.     Moreover, Bradley states that he is in the process of "filing another claim against the Debtors, specifically Wellpath LLC and several employees."  *See* Bradley Obj. ¶ 4.  The Court's November 11, 2024, order enforcing the Motion on an interim basis [Docket No. 69], as well as the automatic stay, prevents Bradley from filing such lawsuit against not only the Debtors but their employees.

**K.     The Hill Lawsuits Should Be Stayed In Part.**

60.     The Hill Plaintiffs filed two separate Lawsuits against Debtor Wellpath LLC in Georgia state court.  *See Hill v. Wellpath LLC, et al.*, Case No. 21A4173, in the State Court of DeKalb County, State of Georgia (the "Manning Case"); *O'Neal v. Wellpath LLC, et al.*, Cases No. 24-A-2129, in the State Court of DeKalb County, State of Georgia (the "Capes Case").

61.     The Manning Case should be stayed with respect to not only the Debtor, but its three employees, Tinisha Tiffany Ransome, William Brown and Denise S. Reid.  These employees are covered by the Debtors' 2019-2020 insurance policies, and the Debtors cover all defense costs related to this Lawsuit as all third-party insurance has been exhausted.  As a result thereof, the Debtors' obligations to its employees effectively render the Debtors the primary defendant in the Manning Case and would deplete estate resources.

62.     Likewise, the Capes Case should be stayed with respect to Debtor Wellpath LLC, as well as the other three Non-Debtor Defendants.[33]  In particular, defendant Johnetta M. Collins

---

[33]     Pursuant to the Deputies Order, the automatic stay was modified to allow the Deputies' continuation of the Capes Case for the sole purpose of litigating whether the doctrine of official immunity under Georgia state law requires

is an employee of the Debtors, and her defense is being paid for by the Debtors under the 2022 fronting policy and subject to the insurance obligations already described in this Reply.

63.     Although Dodou M. Jones and Andelson Maxim are not the Debtors' employees, the Debtors understand that they are employees of Cobb County, Georgia, a customer of the Debtors.  Pursuant to the terms of the agreement between the Debtors and the county (as amended, modified, or supplemented from time to time, the "Cobbs County Agreement"), the Debtors have indemnification obligations to the county and the claims with respect to such employees could be tendered to the Debtors.  *See* Cobb County Agreement, § 6.3 ("To the fullest extent permitted by law, [Wellpath] shall defend, indemnify and hold harmless the Sheriff, the County, and the Sheriff and the County's elected and appointed officials, officers, [and] employees . . . from and against any and all . . . liability of any kind whatsoever, . . . to the extent caused by . . . [Wellpath]. . . ."). Thus, a sufficient identity of interest exists between the Debtors and the three Non-Debtor Defendants in the Capes Case.  The Hill Objection should be denied.

**L.     The Shannon Lawsuit Should Be Stayed In Part.**

64.     The Shannon Plaintiffs' arguments related to "absolute immunity," "disguised injunction," and a nationwide stay are addressed elsewhere in this Reply.  Additionally, as set forth below, the Shannon Plaintiffs' Lawsuits should be stayed in part.

**1.     *Certain of the Shannon Lawsuits Implicate Only Debtors and Are Therefore Not Implicated by the Motion.***

65.     Five of the Lawsuits asserted by the Shannon Plaintiffs do not implicate any Non-Debtor Defendants.  *See Alameda Cnty. Male Prisoners, et al. v. Alameda Cnty. Sheriff's Office, et al.*, Case No. 3:19-cv- 07423-JSC (N.D. Cal.); *C.R.A et al. v. Fresno Cnty. et al.*,

---

dismissal of such claims against the Deputies.  *See* Deputies Order, ¶ 1. For the avoidance of doubt, the automatic stay was not modified as to any party to the Capes Case other than the Deputies or with respect to any other issues in the Capes Case.  *Id.* at ¶ 2.

Case No. 2:23- 00672 (E.D. Cal.); *O'Neil v. Las Vegas Metro. Police Dep't et al.*, Case No. 2:22-cv-00474-ART-NJK (D. Nev.); *Reynolds et al. v. Cnty. of Madera et al.*, Case No. 1:23-cv-00538 (E.D. Cal.); *Yang et al. v. Cnty. of Yuba et al.*, Case No. 2:23-cv-00066- TLN-JDP (E.D. Cal.). Such lawsuits only implicate the Debtors.  At present, the Shannon Plaintiff's have not sought relief from this Court to modify the automatic stay to pursue these five Lawsuits against the Debtors.  Accordingly, these Shannon Plaintiffs' Lawsuits are not affected by the Motion, and the Shannon Plaintiff's Objection should therefore be denied.

**2.  *The Majority of the Shannon Lawsuits Are Properly Stayed as to the Debtors and their Employees.***

66.  Many of the Lawsuits filed by the Shannon Plaintiffs are properly stayed as to the Debtors and their employees.  *See A.G. v. Tulare Cnty., et al.*, 1:23-cv-00500-JLT-SKO (E.D. Cal.) (the "A.G. Case"); *Balliet v. Luzerne Cnty. et al.*, Case No. 3:22-cv- 02032 (M.D. Penn.) (the "Balliet Case"); *Bush et al. v. Luzerne Cnty. et al.*, Case No. 23-cv- 01152 (M.D. Penn.) (the "Bush Case"); *Curtis v. Lackawana Cnty. et al.*, Case No. 3:23-cv-02092-JFS (M.D. Penn.) (the "Curtis Case"); *Desir v. Sheriff Gregory Tony et al.*, Case No. 0:23-cv- 60499 (S.D. Fla.) (the "Desir Case"); *Esparza v. Wellpath, LLC et al.*, Case No. 23-cv-02161-JCM-VCF (D. Nev.) (the "Esparza Case"); *Fahrni et al. v. Tulare Cnty., et al.*, 1:23-cv-01265- KES-SAB (E.D. Cal.) (the "Fahrni Case"); *Hirsch v. Will Cnty., et al.*, Case No. 19-CV-7398 (N.D. Ill.) (the "Hirsh Case"); *Johnston et al. v. Cnty. of Ventura, et al.*, 2:23-cv- 05902 (C.D. Cal.) (the "Johnston Case"); *J.S. et al. v. Cnty. of Fresno et al.*, Case No. :23-cv- 01070-NODJ-EPG (N.D. Cal.) (the "J.S. Case"); *K.C. et al. v. Alameda Cnty., et al.*, 4:22-cv-01817- DMR (N.D. Cal.) (the "K.C. Case"); *Laurel v. Cnty.of Alameda, et al.*, Case No. 3:24-cv- 04427 (N.D. Cal.) (the "Laurel Case"); *McCullough v. Clinton Cnty. et al.*, Case No. 4:23- cv-00171 (M.D. Penn.) (the "McCullough Case"); *Moone v. Bd. of Cnty. Comm'rs of the Cnty. of San Juan et al.*, Case

No. 1:21-cv-01130 (D. N.M.) (the "Moone Case"); *Ontiveros v. Bd. of Cnty. Comm'rs of San Juan, et al.*, Case No. D-1116-CV-2023-01315 (11th Judicial District Court for N.M.) (the "Ontiveros Case"); *Polachek v Luzerne Cnty. et al.*, Case No. 23-cv- 01545 (M.D. Penn.) (the "Polachek Case"); *Pugh v. Wellpath, LLC et al.*, 3:23-cv-03677-CRB (N.D. Cal.) (the "Pugh Case"); *Roberts et al. v. Wellpath, LLC et al.*, Case No. 3:23-cv- 03662 (N.D. Cal.) (the "Roberts Case"); *Smith et al. v. Bains et al.*, Case No. 24-cv-02102- TWT (N.D. Ga.) (the "Henrietta Smith Case"); *Smith v. Las Vegas Metro. Police Dep't et al.*, Case No. 23-cv-00092 (D. Nev.) (the "Mary Smith Case").

67.     With respect to all such employees of the Debtors, the Lawsuits should be stayed for the reasons stated in Section I of this Reply.  In particular, the A.G. Case is stayed as to Debtor Wellpath and should be stayed to Wellpath's former employees, Dr. Andrew P. Ho and Dr. Alla Liberstein.[34]  In connection with the A.G. Case, Wellpath and its employees are covered by the Debtors' 2022-2023 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 12.

68.     The Balliet Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current and former employees, Holly Green, Nelson Iannuzzi and Jade Talarico.[35]  In connection with the Balliet Case, Wellpath and its employees are covered by the Debtors' 2022-2023 insurance policies, and the Debtors therefore are responsible for the initial defense costs related to this Lawsuit.  *See id.*

---

[34]    Jose Sanchez Perez, James Dillon, and Rodrigo Deochoa, defendants in the A.G. Case, are not employed by the Debtors.  The Debtors submit that they owe no indemnification obligations to such defendants or Tulare County in connection with the A.G. Case.  As a result, the automatic stay does not apply to Jose Sanchez Perez, James Dillon, Rodrigo Deochoa, or Tulare County, and the A.G. Case should not be stayed as to such defendants.

[35]    C.O. Robert Calvey, Lt. Kate Romiski, and C.O. William Wilk, defendants in the Balliet Case are not employed by the Debtors.  The Debtors submit that they owe no indemnification obligations to such defendants or Luzerne County in connection with the Balliet Case.  Thus, the automatic stay does not apply to the C.O. Robert Calvey, Lt. Kate Romiski, C.O. William Wilk, or Lackawanna County, and the Balliet Case should not be stayed as to such defendants.

69.     The Bush Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's employee, Elizabeth Anselm.  In connection with the Bush Case, Wellpath and its employee are covered by the Debtors' 2022-2023 insurance policies, and the Debtors therefore are responsible for the initial defense costs related to this Lawsuit.  *See id.*

70.     The Curtis Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current and former employees, Dr. Haseebuddin Ahmed, Nelson Iannuzzi, June Mahoney, Stephanie Wayman, India Smith, Kimberly Peterson, Alexandria Geisler and Angela Furman.[36]  In connection with the Curtis Case, Wellpath and its employees are covered by the Debtors' 2023-2024 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 15.

71.     The Desir Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current and former employees, Etude Petit-Homme Datus, Leon Tennant and Veronica Edwards.[37]  In connection with the Desir Case, Wellpath and its employees are covered by the Debtors' 2023-2024 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See id.*

72.     The Esparza Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current and former employees, Larry Williamson, Catherine Ryan, Jessica Arabski, Richard Medrano, Vivek Shah, Cole Casey, Kesha Poland, Maria Hopkins, Rachel Clark, Kyle Martineau, Earl Salviejo, Ulyana Biloskurska and Amy Kathryn Anapolsky.  In connection with

---

[36]     The corrections officers and sergeants listed as defendants in the Curtis Case are not employed by the Debtors. The Debtors submit that they owe no indemnification obligations to such defendants or Lackawanna County in connection with the Curtis Case.  Therefore, the automatic stay does not apply to the corrections officers, the sergeants, or Lackawanna County, and the Curtis Case should not be stayed as to such defendants.

[37]     Sheriff Gregory Tony, a defendant in the Desir Case is not employed by the Debtors.  The Debtors submit that they owe no indemnification obligations to such defendant.  Accordingly, the automatic stay does not apply, and the Desir Case should not be stayed, as to Sheriff Gregory Tony.

the Esparaza Case, Wellpath and its employees are covered by the Debtors' 2023-2024 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit. *See id*.

73.     The Fahrni Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's former employees, Dr. Alla Liberstein, Anthony Cega, and Sureshubabu Kurra.[38]  In connection with the Fahrni Case, Wellpath and its employees are covered by the Debtors' 2022-2023 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit. *See* Supplemental Seitz Decl., ¶ 12.

74.     The Hirsch Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current and former employees, Penelope Johnson, Cindy Smith, Guadalupe Zuniga, Olivia Simpri-Mensah, Young Sun Kim, Kia Green, Amanda North-Shea, Carmina Feliciano, Corina Shaw, Deatrice Black, Molly Weigel, Dona Petrauskis, Tiffany Utke, Mohammed Ibrahim, Patricia Loparco and Sheila Corrigan.[39]  In connection with the Hirsh Case, Wellpath and its employees are covered by the Debtors' 2018-2020 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit. *See* Supplemental Seitz Decl., ¶ 6.

75.     The Johnston Case is stayed as to Debtors Wellpath and Wellpath Management, Inc. and should be stayed as to the Debtors' current and former employees, Leah James, Dr. John Riggs, Sylvia Meza, Griselda Beauvais, Jennifer Alvarez and Jessica Melger.[40]  In connection with

---

[38]   Precision Psychiatric Services, Inc., a defendant in the Fahrni Case, is unrelated to the Debtors.  The Debtors submit that they owe no indemnification obligations to such defendant.  As a result, the automatic stay does not apply, and the Fahrni Case should not be stayed, as to Precision Psychiatric Services, Inc.

[39]   Will County, Sheriff Mike Kelley, and Officers Frederick Abdullah, Derek Coppes, Edward Hayes, Jr., Villegas, Desadier, Nathan Little, and Charles Kavanaugh, defendants in the Hirsch Case, are not employed by the Debtors.  The Debtors submit that they owe no indemnification obligations to such defendants or Will County in connection with the Hirsch Case.  Accordingly, the Hirsch Case should not be stayed as to such defendants.

[40]   Sheriff Bill Ayub, Commander Mike Hartmann, Deputy Spencer Iwansky, and Deputy John Ennis, defendants in the Johnston Case, are not employed by the Debtors.  The Debtors submit that they owe no indemnification obligations to the County of Ventura, Ventura County Sheriff's Office and its employees in connection with the Johnston Case.  Thus, the Johnston Case should not be stayed as to such defendants.

the Johnston Case, Wellpath and its employees are covered by the Debtors' 2023-2024 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit. *See* Supplemental Seitz Decl., ¶ 15.

76.     The J.S. Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's former employee, Jessica Martinez.[41]   In connection with the J.S. Case, Wellpath and its employees are covered by the Debtors' 2022-2023 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 12.

77.     The K.C. Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current and former employees, Dr. Kerry-Ann Kelly, Janet Rubinson, Dr. Maria Magat, Dr. Szilvia Molitorisz, Gabriele Quaglia, Evelyn Hirsch, Stella Lewis, Rajbinder Mand, Felicidad C. Ramilo, Cela Barron, Harvin Ferrer, Rosalyn Williams, Chisa Earl, Hector Luz, Harpreet K. Sidhu, Jharana Shreesh, H. Singh and Michell Tadeo.[42] In connection with the K.C. Case, Wellpath and its employees are covered by the Debtors' 2021-2022 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 9.

78.     The Laurel Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's employees, Dr. Asaad Traina, Adiam Haile, Shelby Moore, Homayun Saleh, Laila Karim and K. Brown.[43]   In connection with the Laurel Case, Wellpath and its employees are covered by the Debtors' 2023-2024 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 15.

---

[41]   The Debtors submit that they owe no indemnification obligations to the County of Fresno or the Fresno County Sheriff's Office and its employees in connection with the J.S. Case.  Therefore, the J.S. Case should not be stayed as to such defendants.

[42]   The Debtors submit that they owe no indemnification obligations to the County of Alameda or its employees in connection with the K.C. Case.  As a result, the K.C. Case should not be stayed as to such defendants.

[43]   The Debtors submit that they owe no indemnification obligations to the County of Alameda or its employees in connection with the Laurel Case.  Accordingly, the Laurel Case should not be stayed as to such defendants.

79.    The McCullough Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's former employees, William Detterline and Christina Mazzulla.[44]  In connection with the McCullough Case, Wellpath and its employees are covered by the Debtors' 2022-2023 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit. *See* Supplemental Seitz Decl., ¶ 12.

80.    The Moone Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current employee, Susan Long.[45] In connection with the Moone Case, Wellpath and its employee are covered by the Debtors' 2021-2022 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 9.

81.    The Ontiveros Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current employee, Mya Donaldson.[46]  In connection with the Ontiveros Case, Wellpath and its employee are covered by the Debtors' 2021-2022 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See id*.

82.    The Polachek Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current employee, Elizabeth Anselm.[47]   In connection with the Polachek Case, Wellpath and its employee are covered by the Debtors' 2022-2023 insurance policies, and the

---

[44]   The Debtors submit that they owe no indemnification obligations to Clinton County, its employees, Lieutenant Muthler, Officer Etters, Officer Young, or Supplemental Health Care Services, Inc. in connection with the McCullough Case.  Therefore, the McCullough Case should not be stayed as to such defendants.

[45]   The Debtors submit that they owe no indemnification obligations to the Board of County Commissioners of the County of San Juan in connection with the Moone Case.  As a result, the Moone Case should not be stayed as to such defendant.

[46]   The Debtors submit that they owe no indemnification obligations to the Board of County Commissioners of the County of San Juan in connection with the Ontiveros Case.  Thus, the Ontiveros Case should not be stayed as to such defendant.

[47]   The Debtors submit that they owe no indemnification obligations to Luzerne County in connection with the Polachek Case.  As a result, the Polachek Case should not be stayed as to such defendant.

Debtors therefore cover the initial defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 12.

83.     The Pugh Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current employees, Dr. Dinesh Nagar, John Maike and Jordan Alarcon.[48]   In connection with the Pugh Case, Wellpath and its employees are covered by the Debtors' 2022-2023 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See id.*

84.     The Roberts Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current employees, Dr. Dinesh Nagar, Erin Estes and John Maike.[49]   In connection with the Roberts Case, Wellpath and its employees are covered by the Debtors' 2022-2023 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit. *See id.*

85.     The Henrietta Smith Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current and former employees, Jeronia Bowden, Tiarra Carter and Caryn Forbes.[50] In connection with the Henrietta Smith Case, Wellpath and its employees are covered by the Debtors' 2024-2025 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 19.

86.     The Mary Smith Case is stayed as to Debtor Wellpath and should be stayed as to Wellpath's current and former employees, Rachel Clark, Tanja Wasielewski, Geneva Bessie,

---

[48]   The Debtors submit that they owe no indemnification obligations to the County of Solano or its employees in connection with the Pugh Case.  Accordingly, the Pugh Case should not be stayed as to such defendants.

[49]   The Debtors submit that they owe no indemnification obligations to the County of Solano or its employees in connection with the Roberts Case.  Therefore, the Roberts Case should not be stayed as to such defendants.

[50]   The Debtors submit that they owe no indemnification obligations to Cobb County or its employees in connection with the Henrietta Smith Case.  Thus, the Henrietta Smith Case should not be stayed as to such defendants.

Sandra Celis, Meleka St. John, Stephanie Estala, Hugh Andrew Rosset, Shelley Ameduri, Andrea Balogh and Aynur Kabota.[51]  In connection with the Mary Smith Case, Wellpath and its employees are covered by the Debtors' 2022-2023 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 12.

### 3. *Certain of the Shannon Lawsuits Involve Professional Corporations and Should be Stayed in Part.*

87.     Five of the Shannon Plaintiffs' Lawsuits implicate, among other defendants, Professional Corporation CFMG and its employees.  *Beckner v. Cnty. of Santa Cruz, et al.*, Case No. 5:23-cv-05032-BLF (N.D. Cal.) (the "Beckner Case");[52] *Magana v. Cnty. of Alameda et al.*, Case No. 24-cv-04716-JD (N.D. Cal.) (the "Magana Case"); *Mohrbacher, et al. v. Alameda Cnty. Sheriff's Office, et al.*, Case No. 3:18-cv-00050-JD (N.D. Cal.) (the "Mohrbacher Case");[53] *Rodriguez-Gonzalez et al. v. Cnty. of Santa Barbara et al.*, Case No. 2:24-cv-04685-ODW-E (C.D. Cal.) (the "Rodriguez-Gonzalez Case"); *Smith et al. v. Cnty. of Santa Cruz, et al.*, Case No. 5:21-cv-00421 (N.D. Cal.) (the "Tamario Smith Case").[54]

88.     As set forth in the PC Motion and in paragraphs 51 of this Reply, CFMG is a Professional Corporation owed indemnification obligations by the Debtors.   Therefore, continuation of these Lawsuits against CFMG implicates property of the Debtors' estates.  As a

---

[51]   The Debtors submit that they owe no indemnification obligations to the Las Vegas Metropolitan Police Department or its employees, Corrections Officers Vanessa Mitchell, Don'te Mitchell, and Joshua Waldman, in connection with the Mary Smith Case.  Accordingly, the Mary Smith Case should not be stayed as to such defendants.

[52]   The Debtors submit that they owe no indemnification obligations to the County of Santa Cruz or its employees, Joshua Johnson and Buchanon in connection with the Beckner Case.  As a result, the Beckner Case should not be stayed as to such defendants.

[53]   The Debtors submit that they owe no indemnification obligations to the Alameda County Sheriff's Office and its employees or to Aramark Correctional Services, LLC and its employees in connection with the Mohrbacher Case. Therefore, the Mohrbacher Case should not be stayed as to such defendants.

[54]   For the avoidance of doubt, the Tamario Smith case should remain stayed as to Debtor Wellpath.

result, the Lawsuits should be stayed as to Non-Debtor Defendant CFMG and its employees in all five of the Lawsuits referenced in paragraph 87 herein.

89.     The Magana Case should also be stayed as to the Debtors' current and former employees, Peter Candelario, Rajendra Mahajan, Sumeet Chagger and Harpreet Hundal[55] for the reasons stated in Section I of this Reply.  In connection with the Magana Case, Wellpath and its employees are covered by the Debtors' 2023-2024 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 15.

90.     The Rodriguez-Gonzalez Case should also be stayed as to Wellpath, Debtor Wellpath Management, Inc., and the Debtors current and former employees, Jayna Liford, Kathleen McElroy, Hanna Fordahl and Caleb Tammar.[56] In connection with the Rodriguez-Gonzalez Case, Wellpath and its employees are covered by the Debtors' 2023-2024 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See id.*

### 4.     *Certain of the Shannon Lawsuits Implicate Property of the Estate and Should Be Stayed in Part.*

91.     The remaining Lawsuits brought by the Shannon Plaintiffs implicate property of the estate and therefore should be partially stayed.  *See Brazelton v. Wellpath, LLC et al.*, Case No. 1:22-cv-01324 (C.D. Ill.) (the "Brazelton Case"); *Capaci v. CO Dasraj, et al.*, Case No. 7:24-cv-4626 (PMH) (S.D.N.Y.) (the "Capaci Case").

---

[55]   The Debtors submit that they owe no indemnification obligations to defendants County of Alameda or Alameda County Sheriff's Office in connection with the Magana Case.  As a result, the Magana Case should not be stayed as to such defendants.

[56]   The Rodriguez-Gonzalez Case also names Wellpath Inc., an entity that the Debtors submit is improperly named.  The Debtors submit that they owe no indemnification obligations to defendants County of Santa Barbara and its employee John Hartly Freedman, Cottage Health System, Santa Barbara Cottage Hospital or Goleta Valley Cottage Hospital in connection with the Rodriguez-Gonzalez Case.  As a result, the Rodriguez-Gonzalez Case should not be stayed as to such defendants.

92.     The Brazelton Case should be stayed as to Wellpath and its current and former employees, Susan Brobston, Shamaila Gorsi, Carrie Joanne Roe, Jana Huston, Patricia Rice, Erin O'Malley, Susan Gilles, Emily Dawson, Lisa Stout, Michelle Newman, Morgan Renee Abraham, Patrica Eddlemon, Brittany Vanfleet and Deandra Snoddy, for the reasons set forth in Section I of this Reply.  In connection with the Brazelton Case, Wellpath and its employees are covered by the Debtors' 2022-2023 insurance policies, and the Debtors therefore cover the initial defense costs related to this Lawsuit.  *See* Supplemental Seitz Decl., ¶ 12.

93.     The Debtors also have indemnification obligations to Peoria County and its employees pursuant to that certain Health Services Agreement between Wellpath, LLC (f/k/a Correct Care Solutions, LLC) and Peoria County, dated as of July 1, 2014 (as amended, modified, or supplemented from time to time, the "Peoria County Services Agreement").  In relevant part, the Peoria County Services Agreement provides:

> [Wellpath] will indemnify, defend and hold Peoria County harmless from and against any and all claims against Peoria County based on [Wellpath's] performance of its obligations hereunder; provided, however, that [Wellpath] will not be responsible for any claim arising out of Peoria County's or its employees or agents actions, inactions, or omissions.

*See* Peoria County Services Agreement, § 8.2.

94.     Accordingly, Wellpath's indemnification obligations to Peoria County and its employees effectively render the Debtors the primary defendant in the Brazelton Case, making a judgment against the Peoria County a judgment against the Debtors.  As a result, Peoria County, as well as the Debtor's employees, are Non-Debtor Defendants, and the Brazelton Case should be stayed as to all such parties.

95.     The Capaci Case should be stayed as to Wellpath,[57] its employee, Teneshia Washington and the County of Orange and its employee, Cyrel Dasraj.  In connection with the Capaci Case, Wellpath and its employee are covered by the Debtors' 2023-2024 insurance policies, and the case should therefore be stayed for the reasons set forth in Section I of this Reply. *See* Supplemental Seitz Decl., ¶ 15.

96.     As described herein, NYCCS is a Professional Corporation, and the Debtors owe indemnification obligations to NYCCS pursuant to the NYCCS MSA.  *See* NYCCS MSA, § 5.2. NYCCS, in turn, owes indemnification obligations to the County of Orange pursuant to that certain Agreement for Consultant Services between County of Orange and NYCCS, dated as of January 1, 2021 (as amended, modified, or supplemented from time to time, the "County of Orange Agreement").  In relevant part, the County of Orange Agreement provides:

> To the fullest extent permitted by law, CONSULTANT agrees to defend, indemnify and hold harmless the COUNTY, including its officials, employees and agents, against all claims, losses, damages, liabilities, costs or expenses (including, without limitation, reasonable attorney fees and costs of litigation and/or settlement), arising out of any negligence, fault, act or omission of CONSULTANT, its officers, partners, employees, agents, contractors, assignees or other representatives in performance of the Services pursuant to this Agreement.

County of Orange Agreement, Art. 20.

97.     The Debtors, by and through the NYCCS MSA, are obligated to indemnify NYCCS and its employees for legal expenses it may incur as a result of providing services pursuant to the NYCCS MSA.  NYCCS, by and through the County of Orange Agreement, is obligated to indemnify the County of Orange and its employees for legal expenses it may incur as a result of providing services pursuant to the County of Orange Agreement.  By virtue of the NYCCS MSA

---

[57]    The Capaci Case also names Wellpath NY, LLC, an entity that the Debtors submit is improperly named.

and the County of Orange Agreement, the Debtors are ultimately liable for legal expenses incurred by the County of Orange and its employees.  Indeed, pursuant to agreement (attached hereto as **Exhibit H**), the Debtors cover the defense costs of the County of Orange in connection with the Capaci Case.  As a result thereof, the Capaci Case should be stayed with respect to NYCCS and its employees and the County of Orange and its employees as such parties constitute Non-Debtor Defendants.

> **M.      The Crawford Lawsuit Should Be Stayed As to the Non-Debtor Defendants.**

98.      Crawford's Lawsuit should be stayed to the extent that it constitutes an "act to obtain possession of property of the estate."  *See supra*, § 1.  Non-Debtor Defendants Kirstie Proctor, Janice Garth, and Sheridan Thomas are employees of the Debtors covered by the Debtors' 2018-2020 insurance policies.  Therefore, the Debtors are responsible for all defense costs related to this Lawsuit as the third-party insurance has been extinguished.  *See* Seitz Decl., ¶ 13.  As a result thereof, the Debtors' obligations to its employees effectively render the Debtors the primary defendant in their obligations and would deplete estate resources.  Therefore, the automatic stay should extend to litigation against these three employees for all purposes, including discovery.

99.      Additionally, Wellpath is party to an agreement with the Commonwealth of Kentucky Department of Corrections (the "Kentucky Agreement"), whereby Wellpath has agreed to serve as the Department of Corrections' comprehensive health care and mental health services provider.  Pursuant to the Kentucky Agreement, Wellpath is also required to "indemnify, defend and hold KYDOC harmless from and against any and all claims against KYDOC based on [Wellpath's] performance of its obligations hereunder."  *See* Kentucky Agreement, at 7–8.

100.      Accordingly, Wellpath's indemnification obligations to the Commonwealth of Kentucky Department of Corrections effectively render the Debtors the primary defendant in these disputes, making a judgment against the Commonwealth of Kentucky Department of Corrections

a judgment against the Debtors.[58]  As a result, the Crawford Lawsuit is properly stayed as to the Commonwealth of Kentucky Department of Corrections and its employees, as well as the Debtors' employees, as Non-Debtor Defendants, and the Crawford Objection should be overruled.

[*Remainder of page intentionally left blank*]

---

[58]  Crawford also asserts separate claims against Madison County Detention Center, and employees thereof, in its Lawsuit.  The Debtors submit that they owe no indemnification obligations to these defendants and that separate and distinct causes of action have been asserted against them by Crawford.  As a result, Crawford's Lawsuit should not be stayed as to such defendants.

## CONCLUSION

101.    For the foregoing reasons, and the reasons set forth in the Motion, the Debtors

request that the Court enter the Proposed Order, granting the relief requested in Motion.

Dated:  January 10, 2025
Dallas, Texas

/s/ Marcus A. Helt

Marcus A. Helt (Texas Bar #24052187)
MCDERMOTT WILL & EMERY LLP
2501 N. Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:    mhelt@mwe.com

-and-

Felicia Gerber Perlman (admitted *pro hac vice*)
Bradley Thomas Giordano (admitted *pro hac vice*)
James Kapp (admitted *pro hac vice*)
Jake Jumbeck (admitted *pro hac vice*)
Carole Wurzelbacher (admitted *pro hac vice*)
Carmen Dingman (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:    fperlman@mwe.com
        bgiordano@mwe.com
        jkapp@mwe.com
        jjumbeck@mwe.com
        cwurzelbacher@mwe.com
        cdingman@mwe.com

-and-

Steven Z. Szanzer (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone:    (212) 547-5400
Facsimile:    (212) 547-5444
Email:    sszanzer@mwe.com

*Counsel to the Debtors and Debtors in Possession*

## <u>Certificate of Service</u>

I certify that on January 10, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Marcus A. Helt*
Marcus A. Helt