**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*, | Case No. 24-90533 (ARP) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 504, 584, 589, 598, 613, 767, 773, 785, 795, 809, 812, 814, 846, 869, 920, 946, 986, 988, 990, 1000, 1003, 1005, 1014, 1144, & 1145** |

**DEBTORS' SECOND OMNIBUS OBJECTION TO
MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY**

The debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this omnibus objection (this "Objection") to the Lift Stay Motions[1] filed by the Movants.[2]  As of the filing of this Objection, the Debtors have

---

[1]  The "Lift Stay Motions" mean collectively, (a) *Plaintiff Samual Randolph's Motion for Relief from the Automatic Stay to Allow the Pending Person Injury and Civil Rights Claims Against the Debtor to Proceed* [Docket No. 504] (the "Randolph Motion"); (b) *Request for Consideration from Automatic Stay* [Docket No. 584] (the "MacPherson Motion"); (c) *Motion to Lift Automatic Stay* [Docket No. 589] (the "Wagner Motion"); (d) *Motion for Relief from Automatic Stay Under 11 U.S.C. § 362(d)(1)* [Docket No. 598] (the "Willie Motion"); (e) *Plaintiff Joseph Mrozek's Motion for Relief from the Automatic Stay Allow the Pending Personal Injury Claims Against the Debtor to Proceed* [Docket No. 613] (the "Mrozek Motion"); (f) *Omar Rivera Letter* [Docket No. 767] (the "Rivera Motion"); (g) *Motion for Relief from the Automatic Stay* [Docket No 786] (the "McGinnis Motion"); (h) *Motion for Relief from the Automatic Stay to Allow the Pending Personal Injury Litigation Against Debtor to Proceed* [Docket No. 795] (the "Jalal Motion"); (i) *Motion for Relief from Automatic Stay to Proceed with Litigation* [Docket No. 809] (the "O'Neal Motion"); (j) *Motion for Relief from Automatic Stay to Proceed with Litigation* [Docket No. 812] (the "Hill Motion"); (k) *Claimant Marzan Williams' Motion for Relief from Automatic Stay as to Non-Debtor Defendants and to Allow Insurance Covered Liability Action to Proceed* [Docket No. 814] (the "Williams Motion"); (l) *Nora Perkinson's Motion for Relief from the Automatic Stay to Allow the Pending Claims Brought Against the Debtor Pursuant to the Kentucky Civil Rights Act to Proceed* [Docket No. 846] (the "Perkinson Motion"); (m) *Motion for Relief from Automatic Stay* [Docket No. 869] (the "Salinas Motion"); (n) *Sonya Cypress, as Personal Representative of the State of Aaron Cypress, Ahlena Cypress, Ahlania Cypress, and Aaron Cypress, Natural Children of Aaron Cypress' Motion for Relief from the Automatic Stay* [Docket No. 920] (the "Cypress Motion"); (o) *Motion for Relief from Automatic Stay* [Docket No. 946] (the "Walker Motion"); (p) *Motion for Relief from Automatic Stay to Proceed with Litigation* [Docket No. 986] (the "Lamb Motion"); (q) *Motion for Relief from Automatic Stay to Proceed with Litigation* [Docket No. 988] (the "Sharpe Motion"); (r) *Motion for Relief from Automatic Stay* [Docket No. 990] (the "Allen Motion"); (s) *Motion for Relief from Automatic Stay* [Docket No. 1000] (the "King Motion"); (t) *Motion for Relief from Automatic Stay* [Docket No. 1003] (the "Assevero Motion"); (u) *Motion for Relief from Automatic Stay* [Docket No. 1005] (the "Buchanan Motion"); (v) *Motion for Relief from Automatic Stay to Proceed with Litigation Pending Before Non Bankruptcy Forum* [Docket No. 1014] (the "Garcia Motion"); (w) *Motion for Relief from the Automatic Stay to Allow Pending Civil Action Brought Against Debtor Pursuant to 42 U.S.C. § 1983 in United States District Court, Eastern District of Arkansas, Delta Division, by Steven Pinder to Proceed* [Docket No. 1144] (the "Pinder Motion"); (x) *Motion to Lift Stay on Civil Rights Action and Permission to Freeze Debtors' Assets* [Docket No. 1145] (the "Brown Motion") and (y) *Motion to Be Included in the Final Hearing on the Stayed Extension Motion and PC Order* [Docket No. 955] (the "Herndon Motion").

[2]  The "Movants" mean, collectively, collectively, (a) Samuel Randolph (the "Randolph Movant"); (b) Paul MacPherson (the "MacPherson Movant"); (c) Deborah Wagner (the "Wagner Movant"); (d) Diane Harris Willie, as Administratrix of the Estate of Akeem Juwan Willie (the "Willie Movant"); (e) Joseph Mrozek (the "Mrozek Movant"); (f) Omar Rivera (the "Rivera Movant"); (g) Vern E. McGinnis, Jr., pro se plaintiff (the "McGinnis Movant"); (h) Hasna Alaoui AKA Hasna Jalal (the "Jalal Movant"); (i) Jennifer O'Neal, individually as the surviving spouse of Joshua Cain Capes and Adel Tillman Capes, as Administrator of the Estate of Joshua Cain Capes (collectively, the "O'Neal Movants"); (j) Ariel Hill, individually and as the next of kin of Clarence Manning, and Shirley Nelson, as the Administrator of the Estate of Clarence Manning (collectively, the "Hill Movants"); (k) Marzan Williams (the "Williams Movant"); (l) Nora Perkinson (the "Perkinson Movant"); (m) Faith A. Salinas (the "Salinas Movant"); (n) Sonya Cypress, as Personal Representative of the State of Aaron Cypress, Ahlena Cypress, Ahlania Cypress, and Aaron Cypress, Natural Children of Aaron Cypress (collectively, the "Cypress Movants"); (o) Toni P. Walker and Anthony L. Walker (collectively, the "Walker Movants"); (p) Terri Lamb, as Administrator of Estate of Ashley Asuncion, and Frank Asuncion, Jr., as the Surviving Spouse of Ashley Asuncion (collectively, the "Lamb Movants"); (q) Marchelle Sharpe Nesbitt, as Administrator of the Estate of Brittny Sharpe, and individually as mother of Brittny Sharpe (the "Sharpe Movant"); (r) Scott Allen, as Administrator of the Estate of Brady Allen and individually as father of Brady Allen, and Karen Allen,

consensually resolved the Jalal Motion[3] and the O'Neal Motion[4] and partially resolved the Williams Motion,[5] McGinnis Motion,[6] Pinder Motion,[7] Brown Motion,[8] and Herndon Motion.[9]

---

individually as mother of Brady Allen (collectively, the "Allen Movants"); (s) Oliver King, pro se plaintiff (the "King Movant"); (t) Vicki Ann Asservero, as Administrator of the Estate of Michael Assevero (collectively, the "Assevero Movant"); (u) Christopher Buchanan, pro se plaintiff (the "Buchanan Movant"); (v) Maria Elena Garcia, Adrieana Garcia, C.G., a minor by and through his *guardian ad litem* Maria Elena Garcia; S.G., a minor by and through her *guardian ad litem* Maria Elena Garcia; J.G., a minor by and through her *guardian ad litem* Maria Elena Garcia, and Gloria Garcia (collectively, the "Garcia Movants"); (w) Steven Pinder, pro se plaintiff (the "Pinder Movant"); (x) Alton D. Brown, pro se plaintiff (the "Brown Movant"); and (y) John Elwin Herndon, pro se plaintiff (the "Herndon Movant").

[3]   Subject to this Court's approval, the Debtors and the Jalal Movant entered into a stipulation resolving the Jalal Motion [Docket No. 1285] (the "Jalal Stipulation") which, in part, provides that the relief sought in the Stay Extension Motion does not extend the automatic stay to claims or causes of action against the County of Hudson, Hudson County Correctional Center, and John and Jane Does Six Through Thirteen with respect to the Post-Transfer Claims (as defined in the Jalal Stipulation) in the Jalal Movant's underlying litigation.

[4]   Subject to this Court's approval, the Debtors and the O'Neal Movants entered into a stipulation resolving the O'Neal Motion [Docket No. 1314] (the "O'Neal Stipulation") which, in part, clarifies that the automatic stay does not prevent the O'Neal Movants from briefing and arguing their response to the motion filed by Cobb County's employees, Dodou M. Jones and Andelson Maxim (together, the "Deputies") as to whether the doctrine of official immunity under Georgia state law requires dismissal of the O'Neal Movants' claims against the Deputies (the "Official Immunity Issue") in the O'Neal State Court Action; *provided, however,* that, if the Georgia Court determines that any discovery is required in order to rule on the Deputies' motion related to the Official Immunity Issue, any such discovery will be subject to the automatic stay as set forth in the Second Stay Extension Order.

[5]   On January 23, 2025, the Court entered an order [Docket No. 1085] (the "Williams Order") approving a stipulation as to the Williams Motion (the "Williams Stipulation") which, in part, provides that the relief sought in the Stay Extension Motion does not extend the automatic stay to claims or causes of action against the United States, its agencies, bureaus, other subdivisions, or employees in the Williams Movant's underlying litigation.

[6]   On January 23, 2025, this Court entered an order [Docket No. 1090] (the "McGinnis Order") approving the Debtors' proposed order as to the McGinnis Motion, which, in part, provides that the relief sought in the Stay Extension Motion does not extend the automatic stay to motions for injunctive relief related to medical care, including, for avoidance of doubt, the right to have upcoming appointments and procedures. Furthermore, the Debtors reserved their right to object to any other relief sought in the McGinnis Motion. *See* Docket No. 997, ¶ 4.

[7]   On February 5, 2025, this Court entered an order [Docket No. 1248] (the "Pinder Order") approving the Debtors' proposed order as to the Pinder Motion, which, in part, provides that the relief sought in the Stay Extension Motion does not extend the automatic stay to motions for injunctive relief related to medical care, including, for avoidance of doubt, the right to have upcoming appointments and procedures. Furthermore, the Debtors reserved their right to object to any other relief sought in the Pinder Motion. *See* Docket No. 1237, ¶ 4.

[8]   On February 5, 2025, this Court entered an order [Docket No. 1249] (the "Brown Order") approving the Debtors' proposed order as to the Brown Motion, which, in part, provides that the relief sought in the Stay Extension Motion does not extend the automatic stay to motions for injunctive relief related to medical care, including, for avoidance of doubt, the right to have upcoming appointments and procedures. Furthermore, the Debtors reserved their right to object to any other relief sought in the Brown Motion. *See* Docket No. 1239, ¶ 4.

[9]   On February 11, 2025, this Court entered an order [Docket No. 1317] (the "Herndon Order") approving the Debtors' proposed order as to the Herndon Motion, which, in part, provides that the relief sought in the Stay Extension Motion does not extend the automatic stay to motions for injunctive relief related to medical care, including, for avoidance of doubt, the right to have upcoming appointments and procedures. Furthermore, the Debtors reserved their right to object to any other relief sought in the Herndon Motion. *See* Docket No. 1262,

In support of the Objection, the Debtors rely on the *Declaration of Timothy J. Dragelin as Chief Restructuring Officer and Chief Financial Officer of Wellpath Holdings, Inc. and Certain of its Affiliates and Subsidiaries in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 20] (the "<u>First Day Declaration</u>"); the *Declaration of James Seitz as Director of Insurance of Wellpath Holdings, Inc. and Certain of its Affiliates and Subsidiaries in Support of the Debtors' Omnibus Objections to Motions for Relief from the Automatic Stay and Stay Enforcement Motion* [Docket No. 828] (the "<u>Seitz Declaration</u>"); the *Supplemental Declaration of James Seitz as Director of Insurance of Wellpath Holdings, Inc. and Certain of Its Affiliates and Subsidiaries in Support of the Debtors' Stay Extension Reply* [Docket No. 898] (the "<u>Supplemental Seitz Declaration</u>"); the *Second Supplemental Declaration of James Seitz as Director of Insurance of Wellpath Holdings, Inc. and Certain of Its Affiliates and Subsidiaries in Support of the Debtors' Omnibus Objections to Motions for Relief from the Automatic Stay and Stay Enforcement Motion* [Docket No. 912] (the "<u>Second Supplemental Seitz Declaration</u>"); and the *Third Supplemental Declaration of James Seitz as Director of Insurance of Wellpath Holdings, Inc. and Certain of Its Affiliates and Subsidiaries in Support of the Debtors' Second Omnibus Objection to Motions for Relief from the Automatic Stay and Stay Enforcement Motion* (the "<u>Third Supplemental Seitz Declaration</u>")[10] filed contemporaneously herewith and state as follows:

## **PRELIMINARY STATEMENT**

1.      The Debtors oppose entry of the Lift Stay Motions for all of the reasons set forth in the First Omnibus Objection, which is incorporated herein by reference.  Since the January 14,

---

¶ 4.

[10]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Seitz Declaration, the Supplemental Seitz Declaration, the Second Supplemental Seitz Declaration, the Third Supplemental Seitz Declaration, or the *Debtors' Omnibus Objection to Motions for Relief from the Automatic Stay* [Docket No. 827] (the "<u>First Omnibus Objection</u>"), as applicable.

2025 hearing on various stay motions, the Debtors have complied with the Court's directives by offering each Movant's counsel the opportunity to review on a confidential basis the Debtors' insurance policies and, where applicable, customer agreements.  The Debtors have also shared such confidential documents with the advisors to the Statutory Unsecured Claimholders' Committee (the "Committee").  Despite the progress that the Debtors have made resolving various motions (as described herein), many new stay motions have been filed against the Debtors in the last month, continuing to stress the Debtors' ability to address the multitude of stay requests while still focusing on the administration and restructuring objectives of these chapter 11 cases.

2.      The Movants, however, all fail to satisfy their heavy burden to lift the stay, particularly where, as is the case here, the Debtors are in the final stages of proposing a consensual chapter 11 plan of reorganization.  The Debtors' goal to move expeditiously toward confirmation will be undermined if the Movants' litigation is permitted to move forward.  Should the Court grant such requested stay relief, the floodgates would open to incentivize the pursuit of hundreds of identical stay motions and force the Debtors to continue to defend against all of the underlying lawsuits in various forums.  All of which would impair the Debtors' efforts to maximize value and distribute that value fairly and efficiently to their stakeholders.

3.      As dictated by the Debtors' primary insurance policies, all lawsuit-related damages and defense costs are first solely borne by the Debtors. The Debtors must pay substantial self-insured retentions before accessing any third-party coverage.  Approval of the Lift Stay Motions, therefore, would require significant estate resources to defend numerous lawsuits in various jurisdictions across the country, including costs for non-debtor defendants, such as employees, professional corporations, and certain customers.  Approving the Lift Stay Motions

could also encourage other claimants to race to various courthouses, hoping to satisfy their claims from the Debtors' estates ahead of other similarly situated creditors.

4.      For the reasons set forth herein and in the First Omnibus Objection, the Lift Stay Motions should be denied.

## **BACKGROUND**

### I.      **The Chapter 11 Cases**

5.      On November 11, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtors are operating their businesses and managing their property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      On November 12, 2024, the Debtors filed with this Court an *Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 17] (the "Stay Extension Motion"). As set forth in the Stay Extension Motion, the Debtors and various non-debtor defendants had approximately 1,500 lawsuits and pre-suit demands outstanding against them as of the Petition Date, the vast majority of which concern the quality of medical care provided to incarcerated individuals. *See* Stay Extension Motion, ¶ 1. In part, the Stay Extension Motion sought to extend the Automatic Stay to lawsuits involving certain Non-Debtor Defendants (as defined in the Stay Extension Motion) with a substantial identity of interest with the Debtors. *Id*. at ¶ 2.

7.      On November 12, 2024, the Court entered the *Amended Interim Order Enforcing the Automatic Stay* [Docket No. 69] (the "Interim Stay Extension Order") pursuant to which the Lawsuits (as defined in the Stay Extension Motion) were stayed in their entirety, including

plaintiffs' claims against the Non-Debtor Defendants (as defined in the Stay Extension Motion) on an interim basis pursuant to section 362 of the Bankruptcy Code.

8.    On November 14, 2024, the Court entered the *Amended Order (I) Authorizing the Debtors to (A) Honor and Incur Obligations to Professional Corporations and (B) Obtain New Professional Corporation Contracts, (II) Extending Statutory Protections to Professional Corporations, and (III) Granting Related Relief* [Docket No. 91] (the "PC Order").

9.    On November 25, 2024, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Committee.  *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 169].  To date, no trustee or examiner has been appointed in the chapter 11 cases.

10.   On January 7, 2025, the Debtors filed the First Omnibus Objection.  The arguments in the First Omnibus Objection are incorporated herein by reference to the extent applicable.

11.   On January 14, 2025, the Court entered the *Stipulated and Agreed Amended Order (I) Enforcing the Automatic Stay on a Final Basis with Respect to Certain Actions, (II) Enforcing the Automatic Stay on a Final Basis with Respect to Certain Actions, (III) Extending the Automatic Stay on an Interim Basis to Certain Actions Against Non-Debtors, (IV) Setting a Final Hearing for the Interim Relief Granted Herein, and (V) Granting Related Relief* [Docket No. 926] (the "Second Stay Extension Order") and the *Amended Order (I) Authorizing the Debtors to (A) Honor and Incur Obligations to Professional Corporations and (B) Obtain New Professional Corporation Contracts, (II) Extending Statutory Protections to Professional Corporations, and (III) Granting Related Relief* [Docket No. 963] (the "Amended PC Order").

## II.    The Debtors' Insurance

12.   In addition to the general and professional liability policies described in the First Omnibus Objection, the Debtors enter into various insurance policies that provide coverage for

employment practices liability (each, an "<u>EPL Policy</u>," and collectively, the "<u>EPL Policies</u>").  As described in the Third Supplemental Seitz Declaration, the Debtors' primary EPL Policies implicated by the Lift Stay Motions require the Debtors to first pay a deductible of $1 million for each and every claim before any third-party risk transfer occurs.  *See* Third Supplemental Seitz Decl., ¶¶ 7, 10, Ex. A.  The Debtors also enter into various umbrella policies, which provide coverage for claims in excess of the Debtors' deductibles.[11]  *See id.* at Ex. A.  Accordingly, the Debtors retain risk and the duty to defend for employment practices liability ("<u>EPL</u>") for claims made in each coverage period.

13.     In past years, the Debtors have also obtained insurance policies (each, a "<u>Carveout Policy</u>," and collectively, the "<u>Carveout Policies</u>") to provide a primary limit of coverage for individual providers who are required to participate in patient compensation fund programs in Pennsylvania, Wisconsin, and Kansas.[12]  The Carveout Policies provide coverage for professional liability claims and are subject to self-insured retentions ("<u>SIR</u>") as set forth in additional detail below.  *See* Third Supplemental Seitz Decl., ¶ 13, 16.  As a result, the Debtors retain risk and the duty to defend for such claims until the SIR is reached.  In the case of the 2018-2020 Carveout Policy (as defined herein), however, the Debtors are fully responsible for unliquidated claims because the third-party coverage has been completely exhausted with no remaining available proceeds.

---

[11]   This Objection outlines only the first layers of insurance coverage relevant to the Lift Stay Motions.  A summary of the full EPL coverage towers for each policy period is outlined in the Third Supplemental Seitz Declaration. *See* Third Supplemental Seitz Decl., ¶ 5–12; Ex. A.  In all circumstances, however, such EPL umbrella policies have not been triggered.

[12]   A summary of the full coverage towers following the Carveout Policies is outlined in the Third Supplemental Seitz Declaration.  *See* Third Supplemental Seitz Decl., n. 7–8.

A.    **The 2019-2020 EPL Policy**

14.    Debtor CCS-CMGC Parent Holdings, LP holds a claims-made EPL policy that was in effect from October 1, 2019, through October 1, 2020, and was issued by National Union Fire Insurance Company ("National Union," and such policy, the "2019-2020 EPL Policy").   The 2019-2020 EPL Policy clearly states that the Debtors are first required to pay a deductible of $1 million for each and every claim made under the 2019-2020 EPL Policy.  *See* 2019-2020 EPL Policy, Coverage Summary, Item 5; *see also* Third Supplemental Seitz Decl., ¶ 7.  As a result, the Debtors' third-party coverage only applies after $1 million is paid by the Debtors on account of each claim and is exhausted after $5 million in the aggregate.  *See* 2019-2020 EPL Policy, Coverage Summary, Item 3; *see also* Third Supplemental Seitz Decl., ¶ 7.

15.    Additionally, the 2019-2020 EPL Policy provides that the Debtors are expected to pay their own defense costs.  *See* 2019-2020 EPL Policy, EPL Coverage Section, § 6 ("The Insurer does not assume any duty to defend.  The Insureds shall defend any contest any Claim made against them.") (emphasis removed).  As a result, the Debtors must pay $1 million in defense costs, claims, or judgments prior to triggering any third-party coverage.  *See* Third Supplemental Seitz Decl., ¶ 7.

B.    **The 2024-2025 EPL Policy**

16.    Debtor CCS-CMGC Parent Holdings, LP holds a claims-made EPL policy that is in effect from March 1, 2024, through March 1, 2025, and was issued by Ironshore Indemnity Company (the "2024-2025 EPL Policy").   The 2024-2025 EPL Policy clearly states that the Debtors are first required to pay a deductible of $1 million for each and every claim made under the 2024-2025 EPL Policy.  *See* 2024-2025 EPL Policy, Coverage Summary, Item 4; *see also* Third Supplemental Seitz Decl., ¶ 10.  As a result, the Debtors' third-party coverage only applies after $1 million is paid by the Debtors on account of each claim and is exhausted after $2.5 million

in the aggregate.  *See* 2024-2025 EPL Policy, Coverage Summary, Items 3–4; *see also* Third Supplemental Seitz Decl., ¶ 10.

17.     Additionally, the 2024-2025 EPL Policy provides that the Debtors are expected to pay their own defense costs.  *See* 2024-2025 EPL Policy, EPL Coverage Section, § 6 VI.C ("The Insured, and not the Insurer, shall have the duty to defend all Claims, provided that the Insured shall only retain counsel as is mutually agreed upon with the Insurer.") (emphasis removed).  As a result, the Debtors must pay $1 million in defense costs, claims, or judgments prior to triggering any third-party coverage.  *See* Third Supplemental Seitz Decl., ¶ 10.

      C.     **The 2018-2020 Carveout Policy**

18.     Debtor CCS-CMGC Parent Holdings, LP holds a claims-made professional liability policy that was in effect from December 15, 2018, through March 15, 2020, and was issued by ProAssurance Specialty Insurance Company, Inc. ("<u>ProAssurance</u>," and such policy, the "<u>2018-2020 Carveout Policy</u>").  The 2018-2020 Carveout Policy clearly states that the Debtors are first required to pay an SIR of $75,000 for each and every claim made under the 2018-2020 Carveout Policy.  *See* 2018-2020 Carveout Policy, Self-Insured Retention Endorsement, at ESL-LGCL-252B; *see also* Third Supplemental Seitz Decl., ¶ 15.  As a result, the Debtors' third-party coverage only applies after $75,000 is paid by the Debtors on account of each claim and is exhausted after $10 million in the aggregate.  *See* 2020-2021 Carveout Policy, Coverage Summary, Item 5; *see also* Third Supplemental Seitz Decl., ¶ 15.

19.     Additionally, the 2018-2020 Carveout Policy provides that the Debtors are expected to pay their own defense costs.  *See* 2018-2020 Carveout Policy, Large Group Combined Liability Policy Self-Insured Retention Endorsement ("Notwithstanding any other provision of the policy, our liability and duty to defend under any Coverage Part arise only after the policyholder has paid damages or defense costs in an amount equal to the Self-insured Retention applicable to

such Coverage Part, as specified in Schedule A of the Self-insured Retention Endorsement.")
(emphasis removed).  As a result, the Debtors must pay $75,000 in defense costs, claims, or
judgments prior to triggering any third-party coverage.  *See* Third Supplemental Seitz Decl., ¶ 13.
The 2018-2020 Carveout Policy and all related umbrella coverage, however, has been exhausted.
*Id.* at ¶ 14.  As a result, there are no remaining insurance proceeds and the Debtors are solely
responsible for, and fully fund, any open claims made during this period.  *Id.*

> **D.      The 2020-2021 Carveout Policy**

20.      Debtor CCS-CMGC Parent Holdings, LP holds a claims-made professional liability
policy that was in effect from March 15, 2020, through March 15, 2021, and was issued by
ProAssurance (the "2020-2021 Carveout Policy").  The 2020-2021 Carveout Policy clearly states
that the Debtors are first required to pay an SIR of $100,000 for each and every claim made under
the 2020-2021 Carveout Policy.  *See* 2020-2021 Carveout Policy, Coverage Summary, Item 6; *see
also* Third Supplemental Seitz Decl., ¶ 16.  As a result, the Debtors' third-party coverage only
applies after $100,000 is paid by the Debtors on account of each claim and is exhausted after
$10 million in the aggregate.  *See* 2020-2021 Carveout Policy, Coverage Summary, Item 5; *see
also* Third Supplemental Seitz Decl., ¶ 16.

21.      Additionally, the 2020-2021 Carveout Policy provides that the Debtors are
expected to pay their own defense costs.  *See* 2020-2021 Carveout Policy, Large Group Combined
Liability Policy Self-Insured Retention Endorsement ("Notwithstanding any other provision of the
policy, if a Self-Insured Retention ("SIR") is shown on the Coverage Summary or elsewhere in
the policy, our liability and duty to defend under any Coverage Part arise only after the
policyholder has paid damages or defense costs in an amount equal to the applicable SIR.")
(emphasis removed).  As a result, the Debtors must pay $100,000 in defense costs, claims, or
judgments prior to triggering any third-party coverage.  *See* Third Supplemental Seitz Decl., ¶ 16.

## **OBJECTION**

**I.      The Movants Have Failed to Demonstrate Cause for Relief from the Automatic Stay.**

22.      The Movants fail to meet their heavy burden to demonstrate "cause" for relief from the automatic stay through a showing of "extraordinary circumstances." *See In re Scalera*, 521 B.R. 513, 516 (Bankr. W.D. Pa. 2014); *In re Keene Corp.*, 171 B.R. 180, 185 (Bankr. S.D.N.Y. 1994) ("[A] court will not grant relief from the stay, absent 'extraordinary circumstances,' simply to liquidate an unsecured claim."). Here, the Movants do not establish extraordinary circumstances, nor have they carried their initial burden of demonstrating a prima facie showing of cause to lift the stay.

23.      The Movants primarily seek to recover from allegedly available insurance proceeds, arguing that the existence of such alleged insurance eliminates any prejudice to the Debtors' estates. As established in the First Omnibus Objection, however, the Debtors insurance policies require the Debtors to incur the initial damage and defense costs per claim and failure to apply the automatic stay would result in a significant expenditure of finite estate assets. Large expenditures for defense costs related to stayed actions were not sized into, or anticipated by, the Debtors' debtor-in-possession financing budget.

24.      Additionally, as further discussed in the First Omnibus Objection and as set forth in additional detail below, the harm to the Debtors if the stay were lifted would be substantial. Modification of the stay would distract and hinder the Debtors from their reorganization efforts and "invite other lift stay motions that will be filed by similarly situated claimants," leading to "an unnecessary drain on the Debtors'—and the Court's—resources." *See In re Celsius Network LLC*, 642 B.R. 497, 503 (Bankr. S.D.N.Y. 2022). Lifting the stay would also undercut the Debtors' and its key constituents' goals of a fair and equitable distribution to all claimants. Any harm endured by the Movants, on the other hand, is far outweighed by the detriment to the Debtors' estates. The

delay of financial relief and the advancement of litigation cited by most of the Movants does not constitute the "extraordinary circumstances" necessary to modify the stay. Indeed, such hardship is unfortunately present in nearly every chapter 11 case. Thus, the balance of harms weighs heavily against lifting the automatic stay.

25.     As set forth herein, each of the Movants fails to show cause why the automatic stay should be lifted in these chapter 11 cases. The Lift Stay Motions should therefore be denied.

## II.     The Lift Stay Motions

### A.     The Randolph Motion Should Be Denied in Part

26.     The Randoph Motion was filed on December 18, 2024. The Randolph Movant seeks to lift the automatic stay to prosecute a federal court action pending in the United States District Court for the Western District of Pennsylvania, in the case styled *Randolph vs Wetzel et al.*, Case No.: 2:19-cv-00790-MRH-PLD (the "Randolph District Court Action"). The Randolph District Court Action arose on or about June 21, 2019, against the Debtor's employees, Mike Hice,[13] Lori Ridings, Dr. Denise Smyth, and Lawrence Alpert,[14] and certain employees of the employees of the Pennsylvania Department of Corrections.

27.     The insurance policy relevant to the Randolph Motion covering the Debtors' employees during the relevant period is the 2020-2021 Carveout Policy,[15] described in paragraphs 23 through 24 of this Objection. *See also* Third Supplemental Seitz Decl., ¶ 18. As the Debtors are responsible for damages until reaching the required $100,000 SIR, as well as

---

[13]   Although identified as "Mark Hice" in the underlying complaint, upon information and belief, the Debtors submit that Mike Hice is the correct individual named in the Randolph District Court Action.

[14]   Although a former employee of the Debtors, Mr. Alpert has voluntarily determined to not have the Debtors defend him in connection with the Randolph District Court Action. As a result, the Debtors submit Lawrence Alpert is not a Non-Debtor Defendant.

[15]   The Debtors shared the 2021-2021 Carveout Policy with counsel to the Randolph Movant for review on a confidential basis.

defense costs, for its employees, the Debtors' estates would bear the financial burden of the Randolph District Court Action proceeding.  The Debtors' employees (other than Mr. Alpert) are Non-Debtor Defendants protected by the Second Stay Extension Order, and the Randolph Motion should be denied as to the Debtors' employees.

28.    Additionally, the Randolph District Court Action should remain stayed as to the Commonwealth of Pennsylvania's employees.  Wellpath, LLC ("Wellpath") (f/k/a Correct Care Solutions, LLC) is party to that certain Contract for Corrections Health Care Services (the "PA DOC Contract"),[16] whereby Wellpath has agreed to provide correctional health care services for the Commonwealth of Pennsylvania.  Pursuant to the PA DOC Contract, Wellpath is also required to indemnify the Commonwealth of Pennsylvania's employees for claims related to medical care:

> The Contractor shall hold the Commonwealth harmless from and indemnify the Commonwealth against any and all third party claims, demands and actions based upon or arising out of any activities performed by the Contractor and its employees and agents under this Contract, provided the Commonwealth gives Contractor prompt notice of any such claim of which it learns.

PA DOC Contract, at 75.  Several of the causes of action in the Randolph Movant's complaint relate to medical care, and therefore, are claims for which the Debtors may owe indemnification to the Commonwealth.  *See* Randolph Motion, Ex. A.  Accordingly, the Randolph District Court Action should remain stayed as to all claims related to medical care.[17]  If the Randolph Movant is permitted to proceed against any of the defendants, the Debtors will be required to pay defense

---

[16]    To avoid the disclosure of sensitive competitive and proprietary information, the customer agreements referenced herein have been designated as confidential and are not attached hereto.  The Debtors shared the PA DOC Contract with counsel to the Randolph Movant for review on a confidential basis.

[17]    Although the Randolph Movant asserts non-medical claims against the Commonwealth of Pennsylvania and its employees, the complaint appears to be written by Mr. Randolph himself.  *See id.*  Although the complaint contains numbered counts, such counts cannot be split easily into medical versus non-medical claims, as each count alleges many different claims.

costs and maintain a role in the Randolph District Court Action or risk facing collateral estoppel and *res judicata* concerns.

29.     Accordingly, Wellpath's indemnification obligations to the Commonwealth of Pennsylvania effectively render the Debtors the primary defendant for all claims relating to the provision of healthcare services in these disputes, making a judgment against the Commonwealth a judgment against the Debtors.   As a result, the Commonwealth of Pennsylvania and its employees, as well as the Debtor's employees, Mike Hice, Lori Ridings, and Dr. Denise Smyth, are Non-Debtor Defendants protected by the Second Stay Extension Order and the Randolph Motion should be denied as to the Debtor, the Debtors' employees (other than Mr. Alpert), and, for all medical claims, the Commonwealth of Pennsylvania defendants.

### B.     The MacPherson Motion is Moot

30.     The MacPherson Motion was filed on December 20, 2024.   The MacPherson Movant seeks to lift the automatic stay to prosecute a disability and employment discrimination complaint against Wellpath Recovery Solutions, LLC with the New Hampshire Human Rights Commission.   Recovery Solutions, LLC is no longer a debtor.   *See Notice of Closing of the Recovery Solutions Sale Transaction and Dismissal of Chapter 11 Cases of the Acquired Recovery Solutions Debtors* [Docket No. 1183].   Accordingly, the Debtors submit that the MacPherson Motion should be denied as moot.

### C.     The Wagner Motion Should Be Denied

31.     The Wagner Motion was filed on December 24, 2024.   The Wagner Movant seeks to lift the automatic stay so that she may prosecute a state court action pending in the Nevada County Superior Court in California, in the case styled *Deborah Wagner v. Wellpath Management, Inc., et al.*, Case No. CU0001661 (the "Wagner State Court Action").   The Wagner Movant alleges state law claims against Debtor Wellpath Management, Inc., California Forensic Medical Group,

Inc. ("CFMG"), CFMG's employee, George D. McKnight, the County of Nevada, and the County of Nevada's employee, Captain Mike Walsh.[18]  The Wagner Movant initiated the Wagner State Court Action on October 15, 2024.

32.    The insurance policy held by the Debtors, covering Debtor Wellpath Management, Inc., CFMG, and CFMG's employee, relevant to the Wagner Motion is the 2024-2025 EPL Policy[19] described in paragraphs 19 through 20 of this Objection and the Third Supplemental Seitz Declaration.  *See* Third Supplemental Seitz Decl., ¶ 12.  As the Debtors must satisfy a deductible before third-party risk transfer and also fully retains the duty to defend with respect to claims under the 2024-2025 EPL Policy, the Debtors are responsible for all defense costs, as well as damages until reaching the required $1 million deductible.

33.    In addition, CFMG is a professional corporation to which the Debtors provide managerial services pursuant to that certain Assignment of Management Services Agreement (the "CFMG MSA") dated January 2019, and attached to the First Omnibus Objection as Exhibit A.  Under the CFMG MSA, the Debtors are required to "indemnify, defend and hold harmless [CFMG and its employees] from and against all Damages sustained or incurred by the [CFMG and its employees] arising from or related to illegal activity, intentional misconduct, negligence or breach of th[e] Agreement by the [Debtors and their employees]."  CFMG Management Services Agreement, § 7.1.  As a result, CFMG could assert an indemnification claim against the Debtors for any expenses incurred and damages ordered in connection with the Wagner District Court Action.   Accordingly, CFMG and its employee are Non-Debtor Defendants

---

[18]    The Debtors submit that they owe no indemnification obligations to the County of Nevada or its employee in connection with the Wagner State Court Action.  Therefore, the Wagner State Court Action should not be stayed as to such defendants.

[19]    The Debtors shared the 2024-2025 EPL Policy with counsel to the Wagner Movant for review on a confidential basis.

protected by the Second Stay Extension Order (as well as the Amended PC Order) and the Wagner Motion should be denied as to the Debtor, CFMG, and CFMG's employee.

### D.     The Willie Motion Should Be Denied

34.     The Willie Motion was filed on December 26, 2024.  The Willie Movant seeks to lift the automatic stay to prosecute an action pending in the United States District Court for the Western District of Pennsylvania, in the case styled *Diane Harris Willie, as Administratrix of the Estate of Akeem Juwan Willie v. Wellpath, L.L.C., et al.*, Case No. 2:24-cv-00494-WSH (the "<u>Willie District Court Action</u>").  The Willie Movant asserts survival and wrongful death claims against Debtor Wellpath LLC and its employees,[20] as well as the Pennsylvania Department of Corrections and its employees.  The Willie District Court Action was filed on January 16, 2024, in the Court of Common Pleas of Indiana County, Pennsylvania, and it was removed to federal court on April 2, 2024.

35.     The insurance policies covering Wellpath and its employees relevant to the Willie Motion are the 2023-2024 Insurance Policies[21] described in the First Omnibus Objection.  *See* First Omnibus Obj., ¶¶ 29–32; Seitz Decl., ¶ 23.  As the Debtors fully retain the risk with respect to such claims under the 2023-2024 Fronting Policy, the 2023-2024 Buffer SIR, and the 2023-2024 Captive Policy, the Debtors are responsible for damages and defense costs until reaching the required $15 million SIR.

36.     Additionally, the Willie District Court Action should remain stayed as to the Commonwealth of Pennsylvania defendants.  Wellpath (f/k/a Correct Care Solutions, LLC) is

---

[20]     For the avoidance of doubt, the Debtors submit that the automatic stay applies to Wellpath's employees, Karen M. Aloise, RN, Jessica L. Rummel, LPN, Christie Ambrose, RN, and Michelle Rearick, RN, pursuant to the Second Stay Enforcement Order.

[21]     The Debtors shared the 2023-2024 Fronting Policy and 2023-2024 Umbrella Policy with counsel to the Willie Movant for review on a confidential basis.

party to the PA DOC Contract[22] described in paragraph 31 of this Objection.  Each of the causes of action in the Willie Movant's complaint relate to medical care, and therefore, are claims for which the Debtors may owe indemnification to the Commonwealth.  *See* Willie Motion, Ex. A.

37.     Accordingly, Wellpath's indemnification obligations to the Commonwealth of Pennsylvania effectively render the Debtors the primary defendant for all claims relating to the provision of healthcare services in these disputes, making a judgment against the Commonwealth a judgment against the Debtors.  As a result, the Commonwealth of Pennsylvania defendants, as well as the Debtor's employees, Karen M. Aloise, Jessica L. Rummel, Christie Ambrose, and Michelle Rearick, are Non-Debtor Defendants protected by the Second Stay Extension Order and the Willie Motion should be denied as to the Debtor, the Debtors' employees, and the Commonwealth of Pennsylvania defendants.

### E.     The Mrozek Motion Should Be Denied

38.     The Mrozek Motion was filed on December 26, 2024.  The Mrozek Movant seeks to lift the automatic stay to prosecute an action pending in the Court of Common Pleas of Fayette County, Pennsylvania, in the case styled *Joseph Mrozek v. State Correctional Institution of Fayette, et al.*, Case No. 687 of 2020 GD (the "Mrozek State Court Action").  The Mrozek Movant alleges various professional liability claims against the Debtors' employee, Darla Cowden, and the Pennsylvania Department of Corrections' State Correctional Institution at Fayette ("SCI Fayette").  No Debtor is a named defendant in the Mrozek State Court Action.  The Mrozek Movant initiated the Mrozek State Court Action on March 23, 2020.

39.     The insurance policies covering the Debtors' employee relevant to the Mrozek

---

[22]    The Debtors shared the PA DOC Contract with counsel to the Willie Movant for review on a confidential basis.

Motion are the 2022-2023 Insurance Policies[23] described in the First Omnibus Objection. *See* First Omnibus Obj., ¶¶ 25–28; Seitz Decl., ¶ 20–21. As the Debtors fully retain the risk with respect to such claims under the 2022-2023 Fronting Policy and the 2022-2023 SIR Buffer, the Debtors are responsible for damages and defense costs until reaching the required $8 million SIR. As a result, the Debtors' employee is a Non-Debtor Defendant protected by the Second Stay Extension Order, and the Mrozek Motion should be denied as to the Debtors' employee.

40.     Additionally, the Mrozek State Court Action should remain stayed as to the Commonwealth of Pennsylvania defendants. Wellpath (f/k/a Correct Care Solutions, LLC) is party to the PA DOC Contract[24] described in paragraph 31 of this Objection. The sole cause of action in the Mrozek Movant's complaint relates to medical care, and, therefore, are claims for which the Debtors may owe indemnification to the Commonwealth. *See* Mrozek Motion, Ex. A.

41.     Accordingly, Wellpath's indemnification obligations to the Commonwealth of Pennsylvania effectively render the Debtors the primary defendant in this dispute, making a judgment against the Commonwealth of Pennsylvania defendant a judgment against the Debtors on such claims. As a result, SCI Fayette is a Non-Debtor Defendant protected by the Second Stay Extension Order and the Mrozek Motion should be denied both to the Debtor's employee and to SCI Fayette.

**F.     The Rivera Motion Should Be Denied**

42.     The Rivera Motion was filed on January 2, 2025. The Rivera Movant seeks to lift the automatic stay to prosecute an action pending in the Superior Court of New Jersey, Law Division, Hudson County, in the case styled *Rivera v. Lauture et al.*, Case No. HUD-L-003751-22

---

[23]   The Debtors shared the 2022-2023 Fronting Policy and 2022-2023 Umbrella Policy with counsel to the Mrozek Movant on a confidential basis.

[24]   The Debtors shared the PA DOC Contract with counsel to the Mrozek Movant on a confidential basis.

(the "Rivera State Court Action").  The Rivera Movant asserts medical malpractice claims against Debtor Wellpath LLC and its employees, Marie Lauture, Chukwudl Okolie, Ascar Boinett, Eurika Exile, Allison A. Grant, Lucie Ceran, Gbandi Nabine, and Lydia Kasani.  The Rivera Movant initiated the Rivera State Court Action on November 10, 2022.

43.     The insurance policies covering the Debtors' employees relevant to the Rivera Motion are the 2021-2022 Insurance Policies[25] described in the First Omnibus Objection.  *See* First Omnibus Obj., ¶¶ 21–24; Seitz Decl., ¶ 17–18.  As the Debtors fully retain the risk with respect to such claims under the 2021-2022 Fronting Policy and the 2021-2022 SIR Buffer, the Debtors are responsible for damages and defense costs until reaching the required $8 million SIR. As a result, the Debtors' employees are Non-Debtor Defendants protected by the Second Stay Extension Order, and the Rivera Motion should be denied as to the Debtors' employees.

44.     Additionally, the Rivera State Court Action should remain stayed as to the Hudson County Correctional and Rehabilitation Center.  Wellpah, LLC ("Wellpath") (f/k/a Correct Care Solutions, LLC) is party to that certain Professional Services Agreement (the "Hudson County Agreement"), whereby Wellpath has agreed to provide correctional health care and mental health care services for at the Hudson County Correctional and Rehabilitation Center.  Pursuant to the Hudson County Agreement, Wellpath is also required to indemnify Hudson County arising out to Wellpath's performance:

> The Contractor shall indemnify and hold harmless the County of Hudson, the Board of Chosen Freeholders, their Employees, Agents and Servants from and against any and all losses, penalties, damages, settlements, costs, charges, professional fees (including attorney's fees, whether prosecution or defense) or other expenses or liabilities including the investigation and defense of any claims, arising out of or resulting from the performance of the Contractor's

---

[25]  The Debtors reached out to counsel to the Rivera Movant to share the applicable insurance coverage and customer contract on a confidential basis.  At the time of the filing of this Objection, counsel to the Rivera Movant has not responded.

work provided that any such claim, damage, loss or expenses (a) are attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of the use resulting therefrom, or (b) result from the exercise of Contractor's administration of its responsibilities under this Agreement and (c) are caused, in whole or in part, by the act or omission of the Contractor, or anyone directly or indirectly employed by them or by anyone for whose acts the Contractor may have undertaken a duty or responsibility of supervision, control, monitoring and/or discipline by way of contract or agreement, including County employees under the supervision of the contractor.

Hudson County Agreement, § 5.18(g). Each of the causes of action in the Rivera State Court Action contain allegations related to the medical care provided to the Rivera Movant. Therefore, the Debtors may owe indemnification to Hudson County, and such indemnification obligations effectively render the Debtors the primary defendant for all claims in the dispute. Accordingly, the Rivera State Court Action is properly stayed as to the Debtor, its employees, and Hudson County.

### G.    The Remaining Relief in the McGinnis Motion Should Be Denied

45.    The McGinnis Motion was filed on December 31, 2024. The McGinnis Movant seeks to lift the automatic stay to prosecute an action pending in the United States District Court for the Western District of Pennsylvania, in the case styled *McGinnis v. Hill et al.*, Case No. 1:24-cv-00073 (the "McGinnis District Court Action"). The McGinnis Movant alleges various claims pursuant to 42 U.S.C. § 1983 ("1983 Claims") against Debtor Wellpath LLC and its employee, as well as the Pennsylvania Department of Corrections and its employee. The McGinnis Movant initiated the McGinnis District Court Action on March 7, 2024.

46.    The insurance policies covering Wellpath and its employee relevant to the McGinnis Motion are the 2024-2025 Insurance Policies described in the First Omnibus Objection. *See* First Omnibus Obj., ¶¶ 33–36; Seitz Decl., ¶ 27–29. As the Debtors fully retain the risk with respect to such claims under the 2024-2025 Fronting Policy, the 2024-2025 Buffer SIR, and the

2024-2025 Captive Policy, the Debtors are responsible for damages and defense costs until reaching the required $15 million SIR.  Accordingly, the McGinnis District Court Action should remain stayed as to the Debtor and its employee.

47.     Additionally, the McGinnis District Court Action should remain stayed as to the Commonwealth of Pennsylvania and its employee.  Wellpath (f/k/a Correct Care Solutions, LLC) is party to the PA DOC Contract described in paragraph 31 of this Objection.  The McGinnis Movant asserts claims related to medical care, which are claims for which the Debtors may owe indemnification to the Commonwealth.  Accordingly, Wellpath's indemnification obligations to the Commonwealth of Pennsylvania effectively render the Debtors the primary defendant for all claims relating to the provision of healthcare services in these disputes, making a judgment against the Commonwealth a judgment against the Debtors.  As a result, the Commonwealth of Pennsylvania and its employee are Non-Debtor Defendants protected by the Second Stay Extension Order and the McGinnis Motion should be denied as to the Debtor, the Debtors' employee, the Commonwealth of Pennsylvania, and the Commonwealth's employee.

**H.     The Hill Motion Should Be Denied**

48.     The Hill Motion was filed on January 6, 2025.  The Hill Movants seek to lift the automatic stay to prosecute an action pending in the State Court of DeKalb County, State of Georgia, in the case styled *Ariel Hill, individually and as the next of kin of Clarence Manning, and Shirley Nelson, as the Administrator of the Estate of Clarence Manning v. Wellpath, LLC et al.*, Case No. 21A04173 (the "Hill State Court Action").  The Hill Movants assert personal injury claims against Debtor Wellpath, LLC and its three employees, Tinisha Tiffany Ransome, William Brown and Denise S. Reid.  The Hill Movants initiated the Hill State Court Action on June 7, 2023.

49.     The insurance policies covering the Debtors' employees relevant to the Hill Motion

are the 2018-2020 Insurance Policies[26] described in the First Omnibus Objection. *See* First Omnibus Obj., ¶¶ 14–17; Seitz Decl., ¶ 11–12. Because the 2018-2020 Umbrella Policy has been exhausted and there are no insurance proceeds remaining under this policy, the Debtors are solely responsible for, and must fully fund, any open claims made during the 2018-2020 period pursuant to the Hill Motion.

50.     Furthermore, Count III of the Hill State Court Action asserts that Wellpath is liable for the actions of its employees as set forth in Counts I and II. Hill Motion, Ex. A. Thus, there is a clear identity of interest between Wellpath and its employees. As a result, the Debtors' employees are Non-Debtor Defendants protected by the Second Stay Extension Order, and the Hill Motion should be denied as to the Debtors and their employees.

**I.      The Remaining Relief in the Williams Motion Should Be Denied**

51.     The Williams Motion was filed on January 6, 2025. The Williams Movant seeks to lift the automatic stay to proceed with the action pending in the United States District Court for the Northern District of Illinois, in the case styled *Williams v. Heisner et al.*, Case No. 21-cv-730 (the "Williams District Court Action"). The Williams Movant alleges constitutional violations against Debtor Wellpath, LLC, Debtor HCS Correctional Management, LLC, and the Metropolitan Correctional Center in Chicago.[27] The Willaims Movant initiated the Williams District Court Action on February 9, 2021.[28]

52.     The insurance policies covering the Debtors relevant to the Williams Motion are

---

[26]     The Debtors reached out to counsel to the Hill Movant to share the applicable insurance coverage on a confidential basis. At the time of the filing of this Objection, the Hill Movant has not responded.

[27]     The Debtors submit that they owe no indemnification obligations to the Metropolitan Correctional Center in Chicago in connection with the Williams District Court Action. Therefore, the Williams District Court Action should not be stayed as to the Metropolitan Correctional Center in Chicago.

[28]     The Williams Order provides that the relief sought in the Stay Extension Motion does not extend the automatic stay to claims or causes of action against the United States, its agencies, bureaus, other subdivisions, or employees in the Williams District Court Action.

the 2023-2024 Insurance Policies[29] described in the First Omnibus Objection.[30]  *See* First Omnibus Obj., ¶¶ 29–32; Seitz Decl., ¶ 23.  As the Debtors fully retain the risk with respect to such claims under the 2023-2024 Fronting Policy, the 2023-2024 Buffer SIR, and the 2023-2024 Captive Policy, the Debtors are responsible for damages and defense costs until reaching the required $15 million SIR.  As a result, the Williams Motion should be denied as to the Debtors.

**J.**     **The Perkinson Motion Should Be Denied in Part**

53.     The Perkinson Motion was filed on January 8, 2025.  The Perkinson Movant seeks to lift the automatic stay to proceed with its action pending in the Commonwealth of Kentucky Oldham Circuit Court, in the case styled *Perkinson v. Correct Care Solutions, LLC et al.*, Case No. 21-CI-00123 (the "Perkinson State Court Action").  The Perkinson Movant alleges violations of the Kentucky Civil Rights Act against Debtor Wellpath, LLC (f/k/a Correct Care Solutions, LLC) and the Kentucky Department of Corrections.[31]   The Perkinson Movant initiated the Perkinson State Court Action on March 6, 2020.

54.     The insurance policy held by the Debtors relevant to the Perkinson Motion is the 2019-2020 EPL Policy[32] described in paragraphs 17 through 18 of this Objection and the Third Supplemental Seitz Declaration.  *See* Third Supplemental Seitz Decl., ¶ 9.  As the Debtors must satisfy a deductible before third-party risk transfer and the Debtors fully retain the duty to defend with respect to claims under the 2019-2020 EPL Policy, the Debtors are responsible for all defense

---

[29]   The Debtors shared the 2023-2024 Fronting Policy and 2023-2024 Umbrella Policy with counsel to the Williams Movant for review on a confidential basis.

[30]   For the avoidance of doubt, the Williams Movant's reference to any policy provided by Health Cost Solutions is inapplicable to the tort context.  Williams Motion, Ex. A, ¶ 18.  All policies provided by Health Cost Solutions were in connection with employer-sponsored health insurance coverage.

[31]   The Debtors submit that they owe no indemnification obligations to the Kentucky Department of Corrections in connection with the Perkinson State Court Action.  Therefore, the Perkinson State Court Action should not be stayed as to the Kentucky Department of Corrections.

[32]   The Debtors shared the 2019-2020 EPL Policy with counsel to the Perkinson Movant for review on a confidential basis.

costs and for damages until reaching the required $1 million deductible.  Accordingly, continuation of the Perkinson State Court Action will diminish the Debtors' estates, and the Perkinson Motion should therefore be denied as to the Debtors.

### K.     The Salinas Motion Should Be Denied

55.     The Salinas Motion was filed on January 9, 2025.  The Salinas Movant seeks to lift the automatic stay to proceed with its action pending in the United States District Court for the Northern District of Indiana, in the case styled *Salinas v. Captain David Lanzen et al.*, Case No. 3:24-cv-815 (the "Salinas District Court Action").  The Salinas Movant alleges constitutional violations against Debtor Wellpath, LLC and Elkhart County's employees.  The Salinas Movant initiated the Salinas District Court Action on October 3, 2024.

56.     The insurance policies covering Wellpath relevant to the Salinas Motion are the 2024-2025 Insurance Policies[33] described in the First Omnibus Objection.  *See* First Omnibus Obj., ¶¶ 33–36; Seitz Decl., ¶ 27–29.  As the Debtors fully retain the risk with respect to such claims under the 2024-2025 Fronting Policy, the 2024-2025 Buffer SIR, and the 2024-2025 Captive Policy, the Debtors are responsible for damages and defense costs until reaching the required $15 million SIR.  Accordingly, the Salinas District Court Action should remain stayed as to the Debtor.

57.     Additionally, the Salinas District Court Action should remain stayed as to Elkhart County's employees.  Debtor Wellpath, LLC (f//k/a Correct Care Solutions, LLC) is party to that certain Inmate Medical Services Agreement (as amended, modified, or supplemented from time to time, the "Elkhart County Contract"),[34] whereby Wellpath has agreed to provide correctional

---

[33]   The Debtors shared the 2024-2025 Fronting Policy and 2024-2025 Umbrella Policy with counsel to the Salinas Movant for review on a confidential basis.

[34]   The Debtors shared the Elkhart County Contract with counsel to the Salinas Movant for review on a confidential

health care services for Elkhart County.  Pursuant to the Elkhart County Contract, Wellpath is also

required to indemnify Elkhart County's employees for claims related to medical care:

> Contractor shall indemnify, hold harmless, and defend the County
> of Elkhart, Indiana and the Elkhart County Sheriff's Department and
> their officials, agents, and employees from and against all claims,
> demands, actions, lawsuits, damages, losses, expenses, or liabilities
> of any kind, including reasonable attorney's fees, arising out of or
> resulting from the performance of the program of health care
> services described herein, provided that such claim, demand, action,
> lawsuit, damage, loss, expense, or liability is attributable to personal
> injury, including bodily injury, sickness, disease or death, or to
> injury to or destruction of tangible property, and a loss of use
> resulting therefrom, or the loss of tangible property which has not
> been physically injured or destroyed, and is proximately caused by
> an act or omission of Contractor, its subcontractors, or anyone
> directly or indirectly employed by any of them or any one for whose
> acts any of them are liable.

Elkhart County Contract, § 9.  The causes of action in the Salinas Movant's complaint are identical

for all defendants.  If the Salinas Movant is permitted to proceed against any of the defendants, the

Debtors will be required to pay defense costs and maintain a role in the Salinas District Court

Action or risk facing collateral estoppel and *res judicata* concerns.  The Debtors, therefore, may

owe indemnification to Elkhart County's employees.  Accordingly, the Salinas District Court

Action should remain stayed in its entirety.

### L.    The Cypress Motion Should Be Denied

58.    The Cypress Motion was filed on January 13, 2025.  The Cypress Movant seeks to

lift the automatic stay to initiate an action alleging medical negligence and wrongful death against

Debtor Wellpath, LLC, two Wellpath employees, Marioara Lazar and Rolando Quiroz Santos,

Broward County, and the Broward County Sheriff's Office.

59.    The insurance policies covering Wellpath and its employees relevant to the Cypress

---

basis.

Motion are the 2024-2025 Insurance Policies[35] described in the First Omnibus Objection.  *See*
First Omnibus Obj., ¶¶ 33–36; Seitz Decl., ¶ 27–29.  As the Debtors fully retain the risk with
respect to such claims under the 2024-2025 Fronting Policy, the 2024-2025 Buffer SIR, and the
2024-2025 Captive Policy, the Debtors are responsible for damages and defense costs until
reaching the required $15 million SIR.  Accordingly, the Cypress Movant should not be permitted
to proceed against the Debtor and its employees.

60.     Additionally, Debtor Wellpath, LLC (f/k/a Correct Care Solutions, LLC) is party
to that certain Agreement Between Scott J. Israel, as Sheriff of Broward County, Florida and
Correct Care Solutions, LLC, dated as of August 27, 2018 (as amended, modified, or supplemented
from time to time, the "Broward County Contract").  Pursuant to the Broward County Contract,
Wellpath must indemnify Broward County and the Broward County Sheriff's Office for claims
arising out of Wellpath's services to the county:

> CONTRACTOR shall, at all times hereafter, indemnify, hold
> harmless, defend and provide counsel to the Broward Sheriff's
> Office, the SHERIFF, Broward County, the Board of
> Commissioners of Broward County, and their officers, agents,
> employees and commission members from and against any and all
> claims, suits, actions, demands, causes of actions of any kind or
> nature, including all costs, expenses and attorneys' fees, arising out
> of the negligent or wrongful act or omission of CONTRACTOR, its
> officers, agents, employees, servants, independent contractors or
> subcontractors, and his/her fees, costs, expenses and charges shall
> be paid by CONTRACTOR on both the trial and appellate levels.

Broward County Contract, Art. XII.

61.     Additionally, the claims asserted against the Debtor, its employees, Broward
County, and the Broward County Sheriff's Office are inextricably interwoven such that allowing

---

[35]   The Debtors reached out to counsel to the Cypress Movant to share the applicable insurance coverage and
customer contract on a confidential basis.  At the time of the filing of this Objection, counsel for the Cypress
Movant has not responded.

claims against Broward County and the Broward County Sheriff's Office would require the Debtors to maintain an active role in the litigation to avoid collateral estoppel and *res judicata* concerns. *See Federal Life Ins. Co. v. First Fin. Group of Texas, Inc.*, 3 B.R. 375, 376 (S.D.Tex.1980). Indeed, the Cypress Movant concedes that severance of the claims is not feasible. *See* Cypress Motion, at 7. Accordingly, if the litigation were to commence, Broward County and the Broward County Sheriff's Office, would properly be considered Non-Debtor Defendants protected by the Second Stay Extension Motion. Accordingly, the Cypress Motion should be denied as to all defendants.

### M.   The Walker Motion Should Be Denied

62.     The Walker Motion was filed on January 14, 2025. The Walker Movants seek to lift the automatic stay to proceed with its action pending in the United States District Court for Northern District of Georgia, in the case styled *Walker et al. v. Ragazino et al.*, Case No. 1:23-cv-02827 (the "Walker District Court Action"). The Walker Movants allege constitutional violations against Debtor Wellpath, LLC, DeKalb County, and DeKalb County employees, Dingwu Jia, Andrea Grandison, Martell Williams, Shaq. Dunnegan, Orlanda Mahdi, A. Thibodeax, Anton Baptiste, Jasmine Gonzalez, J. Monroe, Marcilla Bush, Kindia Mathis, Ifeayni Onuoho, O. Soyomokokun, Mufutau Falade, Temetris Atkins, and Sheriff Melody M. Maddox. The Walker Movants initiated the Walker District Court Action on June 23, 2023.

63.     The insurance policies covering the Debtor relevant to the Walker Motion are the 2022-2023 Insurance Policies[36] described in the First Omnibus Objection. *See* First Omnibus Obj., ¶¶ 25–28; Seitz Decl., ¶ 20–21. As the Debtors fully retain the risk with respect to such

---

[36]   The Debtors reached out to counsel to the Walker Movant to share the applicable insurance coverage and customer contract on a confidential basis. The Debtors and counsel to the Walker Movant have corresponded, but at the time of the filing of this Objection, a confidentiality agreement has not been executed.

claims under the 2022-2023 Fronting Policy and the 2022-2023 SIR Buffer, the Debtors are responsible for damages and defense costs until reaching the required $8 million SIR.  As a result, the Walker Motion should be denied as to the Debtors.

64.     Additionally, the Walker District Court Action should remain stayed as to DeKalb County and its employees.  Wellpath, LLC ("Wellpath") (f/k/a Correct Care Solutions, LLC) is party to that certain Contract to Provide Inmate Medical Services at the DeKalb County Jail (the "DeKalb County Contract"), whereby Wellpath has agreed to provide correctional health care services for DeKalb County.  Pursuant to the DeKalb County Contract, Wellpath is also required to indemnify DeKalb County and its employees for claims related to medical care:

> The Service Provider shall be responsible . . . for all injury or damage of any kind resulting from the Work, to persons or property, including employees and property of the DKSO.  The Service Provider shall exonerate, indemnify, and save harmless the DKSO, County, its elected officials, officers, employees, agents and servants, hereinafter collectively referred to in this Section as "the County Indemnitees," from and against all claims or actions based upon or arising out of any damage or injury (including without limitation any injury or death to persons and any damage to property) caused by or sustained in connection with the performance of this Contract or by conditions created thereby or arising out of or any way connected with Work performed under this Contract, as well as all expenses incidental to the defense of any such claims, litigation, and actions.  Furthermore, Service Provider shall assume and pay for, without cost to the County Indemnitees, the defense of any and all claims, litigation, and actions suffered through any act or omission of the Service Provider, or any Subcontractors, or anyone directly or indirectly employed by or under the supervision of any of them. . . . The Service Provider expressly agrees to provide a full and complete defense against any claims brought or actions filed against the DKSO Indemnitees, where such claim or action involves, in whole or in part, the subject of the indemnity contained in this Contract, whether such claims or actions are rightfully or wrongfully brought or filed.

DeKalb County Contract, Art. V.H.  While there are allegations based on separate conduct by DeKalb County and its employees, each of the causes of action in the Walker Movants' complaint

implicate either the Debtor or the medical care provided by the Debtor.  The Debtors, therefore, may owe indemnification to DeKalb County and its employees.  Accordingly, the Walker District Court Action should remain stayed in its entirety.  If the Walker Movants are permitted to proceed against any of the defendants, the Debtors will be required to pay defense costs and maintain a role in the Walker District Court Action or risk facing collateral estoppel and *res judicata* concerns.

65.     Accordingly, Wellpath's indemnification obligations to the DeKalb County defendants effectively render the Debtors the primary defendant for all claims in this dispute, making a judgment against the DeKalb County defendants a judgment against the Debtors.  As a result, DeKalb County and its employees are Non Debtor Defendants protected by the Second Stay Extension Order and the Walker Motion should be denied as to the Debtor and the DeKalb County defendants.

### N.     The Lamb Motion Should Be Denied

66.     The Lamb Motion was filed on January 16, 2025.  The Lamb Movants seek to lift the automatic stay to prosecute a state court action pending in the State Court of Cobb County State of Georgia, in the case styled *Terrie Lamb, as the Administrator of the Estate of Ashley Asuncion, and Frank Asuncion, Jr., as the surviving spouse of Ashley Asuncion v. Wellpath, LLC et al.*, Case No. CU0001661 (the "Lamb State Court Action").  The Lamb Movants allege state law claims against Debtor Wellpath, LLC and its employees, LaQuilla Reynolds, LPN, Clint Holton, APRN, NP-C, Kayla Pugh, LPN, Donna Morton, LPN, Catherine E. Sims, RN, and Lee Ann Knebelsberger, LPN.  The Lamb Movants initiated the Lamb State Court Action on June 7, 2022.

67.     The insurance policies covering the Debtor and its employees relevant to the Lamb

Motion are the 2020-2021 Insurance Policies[37] described in the First Omnibus Objection.  *See* First Omnibus Obj., ¶¶ 18–20; Seitz Decl., ¶ 14–15.  As the Debtors fully retain the risk with respect to such claims under the 2020-2021 Fronting Policy, the Debtors are responsible for damages and defense costs until reaching the required $3 million SIR.  As a result, the Debtors' employees are Non-Debtor Defendants protected by the Second Stay Extension Order, and the Lamb Motion should be denied as to both the Debtors and the Debtors' employees.

### O.    The Sharpe Motion Should Be Denied

68.    The Sharpe Motion was filed on January 16, 2025.  The Sharpe Movant seeks to lift the automatic stay to prosecute a state court action pending in the State Court of Cobb County State of Georgia, in the case styled *Marchelle Sharpe Nesbitt as Administrator of the Estate of Brittny Sharpe and individually as mother of Brittny Sharpe v. Wellpath, LLC et al.*, Case No. 24-A-3159 (the "Sharpe State Court Action").  The Sharpe Movant alleges state law claims against Debtor Wellpath, LLC and its employees, Mark Rogge, Idris Burke, and Tamara Coward.  The Sharpe Movant initiated the Sharpe State Court Action on July 1, 2024.

69.    The insurance policies covering the Debtor and its employees relevant to the Sharpe Motion are the 2022-2023 Insurance Policies[38] described in the First Omnibus Objection.  *See* First Omnibus Obj., ¶¶ 25–28; Seitz Decl., ¶ 20–21.  As the Debtors fully retain the risk with respect to such claims under the 2022-2023 Fronting Policy and the 2022-2023 SIR Buffer, the Debtors are responsible for damages and defense costs until reaching the required $8 million SIR.  As a result, the Debtor's employees are Non-Debtor Defendants protected by the Second Stay

---

[37]    The Debtors shared the 2020-2021 Fronting Policy and 2020-2021 Umbrella Policy with counsel to the Lamb Movant on a confidential basis.

[38]    The Debtors reached out to counsel to the Sharpe Movant to share the applicable insurance coverage on a confidential basis.  The Debtors and counsel to the Sharpe Movant have corresponded, but at the time of the filing of this Objection, a confidentiality agreement has not been executed.

Extension Order, and the Sharpe Motion should be denied as to the Debtor and its employees.

     **P.    The Allen Motion Should Be Denied**

    70.    The Allen Motion was filed on January 16, 2025.  The Allen Movants seek to lift the automatic stay to prosecute an action pending in the United States District Court for the Northern District of Georgia, in the case styled *Allen et al. v. Owens et al.*, Case No. 1:23-cv-02240 (the "Allen District Court Action").  The Allen Movants allege various 1983 Claims and negligence claims against Debtor Wellpath, LLC, Wellpath employees, Jonathan Watson, Vicky Ngethe, Jessica Reynolds, Brooke Stevic, Donnette Duggan-Pierre, and Cobb County's employees, Sheriff Sergeant Lolita Mosley, Sheriff Sergeant Kent Vann, Sheriff Deputy Gregory Juedes, Sheriff Deputy William Gooch, Sheriff Deputy Demetrius Jones, Sheriff Deputy Deandre Brittingham, Sheriff Deputy Jennifer Williams, Sheriff Deputy Jessica Vega-Velez, Calamati Eyvette Long, Susan Warren, and Dania Wilson.  The Allen District Court Action was filed on May 17, 2023.

    71.    The insurance policies covering the Debtor and its employees relevant to the Allen Motion are the 2021-2022 Insurance Policies[39] described in the First Omnibus Objection.  *See* First Omnibus Obj., ¶¶ 21–24; Seitz Decl., ¶ 17–18.  As the Debtors fully retain the risk with respect to such claims under the 2021-2022 Fronting Policy and the 2021-2022 SIR Buffer, the Debtors are responsible for damages and defense costs until reaching the required $8 million SIR.  As a result, the Debtor's employees are Non-Debtor Defendants protected by the Second Stay Extension Order, and the Allen Motion should be denied as to the Debtor and its employees.

---

[39]  The Debtors reached out to counsel to the Allen Movant to share the applicable insurance coverage and customer contract on a confidential basis.  The Debtors and counsel to the Allen Movant have corresponded, but at the time of the filing of this Objection, a confidentiality agreement has not been executed.

72.     The Allen Motion should also be denied as to Cobb County's employees.  Pursuant to the terms of the agreement between the Debtors and the county (as amended, modified, or supplemented from time to time, the "Cobbs County Agreement"), the Debtors have indemnification obligations to the county and the claims with respect to such employees could be tendered to the Debtors.  *See* Cobb County Agreement, § 6.3 ("To the fullest extent permitted by law, [Wellpath] shall defend, indemnify and hold harmless the Sheriff, the County, and the Sheriff and the County's elected and appointed officials, officers, [and] employees . . . from and against any and all . . . liability of any kind whatsoever, . . . to the extent caused by . . . [Wellpath]. . . .").

73.     Additionally, the Allen Movants' claims against the Debtors and the Cobb County employees effectively seek a judgment or findings against the debtor, both because (i) such claims depend on adverse findings against the Debtor Defendants, and "are inextricably interwoven with, and present common questions of fact and law," *see Federal Life Ins. Co.*, 3 B.R. at 376, and because (ii) certain claims implicate broad indemnification obligations owed to the Non-Debtor Defendants by the Debtors.  Accordingly, the Allen Motion should be denied as to the Debtor, its employees, and the Cobb County employees.

**Q.     The King Motion Should Be Denied**

74.     The King Motion was filed on January 13, 2025.  The King Movant seeks relief from the automatic stay to proceed with his action in the United States District Court for the Northern District of Illinois, in the case styled *King v. Porter et al.*, Case No. 1:23-cv-13983 (the "King District Court Action").  The King Movant alleges that Wellpath's employees, Shelbie Porter and Valeria Huerta-Perez failed to provide adequate medical care.  No Debtor is a named defendant in the King District Court Action.  The King District Court Action was filed on August 31, 2023.

75.     The insurance policies covering Wellpath's employees relevant to the King Motion

are the 2024-2025 Insurance Policies described in the First Omnibus Objection. *See* First Omnibus Obj., ¶¶ 33–36; Seitz Decl., ¶ 27–29. As the Debtors fully retain the risk with respect to such claims under the 2024-2025 Fronting Policy, the 2024-2025 Buffer SIR, and the 2024-2025 Captive Policy, the Debtors are responsible for damages and defense costs until reaching the required $15 million SIR. Accordingly, the King District Court Action should remain stayed as to the Debtor's employees.

### R. The Assevero Motion Should Be Denied in Part

76. The Assevero Motion was filed on January 17, 2025. The Assevero Movant seeks relief from the automatic stay to proceed with her pending action in the Georgia State Court of Gwinnett County, in the case styled *Assevero v. Centurion Health Services, LLC et al.*, Case No. 24-C-05767-S3 (the "Assevero State Court Action"). The Assevero Movant alleges wrongful death claims against Debtor Wellpath, LLC and DeKalb County's employees, Jeanise Monroe and Jaylin Lee, and other defendants.[40] The Assevero State Court Action was filed on June 25, 2024.

77. The insurance policies covering Wellpath relevant to the Assevero Motion are the 2023-2024 Insurance Policies[41] described in the First Omnibus Objection. *See* First Omnibus Obj., ¶¶ 29–32; Seitz Decl., ¶ 23. As the Debtors fully retain the risk with respect to such claims under the 2023-2024 Fronting Policy, the 2023-2024 Buffer SIR, and the 2023-2024 Captive Policy, the Debtors are responsible for damages and defense costs until reaching the required $15 million SIR. Accordingly, the Assevero State Court Action, particularly Counts I and II,

---

[40] The Debtors submit that they owe no indemnification obligations to Centurion Detention Health Services, LLC, MHM Health Professionals, LLC, or Lindsey Roth in connection with the Assevero State Court Action. Therefore, the Assevero State Court Action should not be stayed as to such defendants.

[41] The Debtors reached out to counsel to the Assevero Movant to share the applicable insurance coverage and customer contract on a confidential basis. At the time of the filing of this Objection, counsel for the Assevero Movant has not responded.

should remain stayed as to Wellpath.

78.     The Assevero State Court Action should also remain stayed as to DeKalb County's employees.  Pursuant to the DeKalb County Contract described in paragraph 68 of this Objection, the Debtors have indemnification obligations to DeKalb County's employees for claims related to medical care.  Accordingly, Count II, which is unrelated to medical care, should not be stayed as to DeKalb County's employees.  The allegations against all defendants in Count III, however, could result in the Debtor' indemnification obligations to DeKalb County's employees and should therefore remain stayed.  Accordingly, the Assevero State Court Action should remain stayed in full as to the Debtor and, in part, to DeKalb County's employees.

**S.     The Buchanan Motion Should Be Denied in Part**

79.     The Buchanan Motion was filed on January 14, 2025.  The Buchanan Movant seeks to proceed in the United States District Court for the Eastern District of Arkansas in the case styled *Buchanan v. Roberts et al.*, Case No. 3:24-cv-00074 (the "Buchanan District Court Action").  The Buchanan Movant alleges various 1983 Claims against Debtor Wellpath, LLC, Wellpath's employees, James Smith, M.D., Charlotte Gardner, Aric Simmons, Ashley Jackson, and Lynda Teague, and Arkansas Department of Corrections' employees, Medical Director Aundrea Culclager, Captain Clinton Baker, Major John Haynes, Warden Thomas Hurst, Classification Officer Megan Pigford, Deputy Warden Claudia Harris, Sgt. Jeremy Haverstick, Coach Scott Bata, Corporal Michael Roberts, and Michael Straughn.[42]

80.     The insurance policies covering Wellpath and its employees relevant to the Buchanan Motion are the 2024-2025 Insurance Policies described in the First Omnibus Objection.

---

[42]     In addition to his 1983 Claims, the Buchanan Movant seeks access to medical care.  The Debtors do not oppose the Buchanan Motion in so far as it is directed at the Movant's pursuit and receipt of medical care.

*See* First Omnibus Obj., ¶¶ 33–36; Seitz Decl., ¶ 27–29.  As the Debtors fully retain the risk with respect to such claims under the 2024-2025 Fronting Policy, the 2024-2025 Buffer SIR, and the 2024-2025 Captive Policy, the Debtors are responsible for damages and defense costs until reaching the required $15 million SIR.  Accordingly, the Buchanan District Court Action should remain stayed as to Wellpath and its employees.

81.     Additionally, the Buchanan District Court Action should remain stayed as to the Arkansas Department of Corrections' employees.  Wellpath is party to that certain Services Contract (the "Arkansas DOC Contract"), whereby Wellpath has agreed to provide correctional health care services for the Arkansas Department of Correction.  Pursuant to the Arkansas DOC Contract, Wellpath is also required to indemnify the Arkansas Department of Corrections' employees for claims related to medical care:

> The Contractor shall be fully liable for the actions of its agents, employees, partners, and assigns and shall fully indemnify, defend, and hold harmless the Department, and their officers, agents, and employees from third party suits, actions, damages, and costs of every name and description, including attorney's fees to the extent arising from or relating to personal injury and damage to real or personal property, caused in whole or in part by the negligence or willful misconduct of Contractor, its agents, employees, partners, or assigns.

Arkansas DOC Contract, § 13.  Many of the causes of action in the Buchanan Movant's complaint rely on factual allegations related to medical care, and therefore, are claims for which the Debtors may owe indemnification to the Arkansas Department of Corrections' employees.  Additionally, the Buchanan Movant makes claims related to alleged disregard for his safety while in custody, improper housing, and mismanagement of the facility, for which the Debtors would not owe indemnification to the Arkansas Department of Corrections' employees.

82.     Although the Buchanan Movant asserts such non-medical claims against the Arkansas Department of Corrections' employees, the complaint appears to be written by

Mr. Buchanan himself.  While the complaint contains headlines for causes of action, such causes of action cannot be split easily into medical versus non-medical claims, as each count alleges many different claims.  If the Buchanan Movant is permitted to proceed against any of the defendants, the Debtors will be required to pay defense costs and maintain a role in the Buchanan District Court Action or risk facing collateral estoppel and *res judicata* concerns.  Other than to allow the Buchanan Movant to seek access to medical care, the Buchanan District Court Action should otherwise remain stayed.

### T.     The Garcia Motion Should Be Denied in Part

83.     The Garcia Motion was filed on January 17, 2025.  The Garcia Movants seek relief from the automatic stay to continue in the United States District Court for the Eastern District of California, in the case styled *Garcia et al. v. City of Farmersville et al.*, Case No. 1:21-cv-00482 (the "Garcia District Court Action").  The Garcia Movants allege civil rights and wrongful death claims against CFMG, CFMG's employees, Tracia Anderson and Eric Krenz, Tulare County, Tulare County's employees, and other defendants.[43]  The Garcia District Court Action was filed on March 22, 2021.

84.     The insurance policies covering CFMG and its employees relevant to the Garcia Motion are the 2021-2022 Insurance Policies[44] described in the First Omnibus Objection.  *See* First Omnibus Obj., ¶¶ 21–24; Seitz Decl., ¶ 17–18.  As the Debtors fully retain the risk with respect to such claims under the 2021-2022 Fronting Policy and the 2021-2022 SIR Buffer, the Debtors are responsible for damages and defense costs until reaching the required $8 million SIR.

---

[43]   The Debtors submit that they owe no indemnification obligations to the City of Farmersville or the City of Visalia in connection with the Garcia District Court Action.  Therefore, the Garcia District Court Action should not be stayed as to such defendants.

[44]   The Debtors shared the 2021-2022 Fronting Policy and 2021-2022 Umbrella Policy with counsel to the Garcia Movant on a confidential basis.

As a result, CFMG and its employees are Non-Debtor Defendants protected by the Second Stay Extension Order, and the Garcia Motion should be denied as to the CFMG and its employees.

85.     Furthermore, CFMG is a Professional Corporation and covered by the Second Stay Extension Order and the Amended PC Order.  Pursuant to the CFMG MSA, attached to the Omnibus Lift Stay Objection as <u>Exhibit A</u>, Wellpath LLC is obligated to indemnify CFMG. CFMG Management Services Agreement, § 7.1 ("[T]he Management Company will indemnify, defend and hold harmless the Company Indemnified Parties from and against all Damages sustained or incurred by the Company Indemnified Parties arising from or related to illegal activity, intentional misconduct, negligence or breach of this Agreement by the Management Company Indemnified Parties.").

86.     CFMG provides services to Tulare County pursuant to that certain Services Agreement (as amended, modified, or supplemented from time to time, the "<u>Tulare County Services Contract</u>").[45]  Pursuant to the Tulare County Services Contract, CFMG is obligated to indemnify Tulare County:

> CONTRACTOR assumes sole and full responsibility for its acts and the acts of its personnel.  CONTRACTOR understands and agrees that COUNTY does not assume liability for the actions of CONTRACTOR's subcontractors or agents.  CONTRACTOR agrees that it has no right to indemnification or contribution from COUNTY for any judgments rendered against CONTRACTOR, its subcontractors or agents.

Tulare County Services Contract, § 14.8.1.

87.     Debtor Wellpath LLC, by and through the CFMG MSA, is obligated to indemnify CFMG for legal expenses it may incur as a result of providing services pursuant to the CFMG

---

[45]   The Debtors shared the Tulare County Services Contract with counsel to the Garcia Movant on a confidential basis.

MSA. CFMG, by and through the Tulare County Services Contract, is obligated to indemnify Tulare County for legal expenses it may incur as a result of providing services pursuant to the Shasta County Services Contract. By virtue of the CFMG MSA and the Tulare County Services Contract, the Debtors are ultimately liable for legal expenses incurred by Tulare County. Indeed, on August 24, 2022, Tulare County tendered its defense in the Garcia District Court Action to Wellpath, and on October 11, 2022, Wellpath partially accepted the tender as outlined in the correspondence attached hereto as **Exhibit A** (the "Tulare County Tender Acceptance Correspondence"). As a result thereof, CFMG and Tulare County are Non-Debtor Defendants encompassed by the protections of the Second Stay Extension Order.

88.     Specifically, Wellpath agreed to defend Tulare County for Causes of Action 1 and 3. Wellpath did not accept tender for Causes of Action 4, 6, 7 and 10, but because the allegations are plead against both parties and it is possible to find negligence on one or both parties, the allegations are inextricably interwoven such that allowing claims against Tulare County and its employees would require the Debtors to maintain an active role in the litigation to avoid collateral estoppel and *res judicata* concerns. *See Federal Life Ins. Co.*, 3 B.R. at 376. Furthermore, the Debtors submit that they owe no indemnification obligations to Tulare County on account of Causes of Action 2, 5, 8 and 9 and that such Causes of Action are not properly stayed. Accordingly, the Garcia District Court Action should remain stayed as to CFMG, CFMG's employees, and Tulare County and its employees as to Causes of Action 1, 3, 4, 6, 7, and 10, and should be allowed to proceed as to Causes of Action 2, 5, 8, and 9 with respect to Tulare County.

### U.     The Remaining Relief in the Pinder Motion Should Be Denied

89.     The Pinder Motion was filed on January 24, 2025. The Pinder Movant seeks to continue in the United States District Court for the Eastern District of Arkansas in the case styled *Pinder v. Wellpath, LLC et al.*, Case No. 2:20-cv-00201 (the "Pinder District Court Action"). The

Pinder Movant seeks declaratory relief as to certain 1983 Claims against Wellpath's employees, Gary Kerstein and Tracy Bennet.[46]  No Debtor is a named defendant in the Pinder District Court Action.

90.     The insurance policies covering the Debtor's employees relevant to the Pinder Motion are the 2020-2021 Insurance Policies described in the First Omnibus Objection.  *See* First Omnibus Obj., ¶¶ 18–20; Seitz Decl., ¶ 14–15.  As the Debtors fully retain the risk with respect to such claims under the 2020-2021 Fronting Policy, the Debtors are responsible for damages and defense costs until reaching the required $3 million SIR.  As a result, the Debtor's employees are Non-Debtor Defendants protected by the Second Stay Extension Order, and the Pinder Motion should be denied as to all of the Debtor's employees.

### V.     The Remaining Relief in the Brown Motion Should Be Denied

91.     The Brown Motion was filed on January 23, 2025.  The Brown Movant seeks relief from the automatic stay to proceed in the United States District Court for the Western District of Pennsylvania, in the cases styled *Brown v. Wexford Health Sources, Inc.*, Case No. 2:16-cv-01680 (the "Wexford Case") and *Brown v. Wolf et al.*, Case No. 2:16-cv-1081 (the "Wolf Case," and together with the Wexford Case, the "Brown District Court Actions").  In the Wexford Case, the Brown Movant alleges constitutional violations and other tort claims against Debtor Wellpath, LLC (f/k/a Correct Care Solutions, LLC) and its employees[47] as well as Wexford Health Sources, Inc. ("Wexford") and its employees.[48]  In the Wolf Case, the Brown Movant asserts various 1983

---

[46]   As of the filing of this Objection, all other defendants have been dismissed from the Pinder District Court Action.

[47]   Wellpath's employees named as defendants in the Brown District Court Action are Jawad A. Salamen, Esther L. Mattes, John N. Robinson, Tyson D. Gillmen, Christina B. Doll, Deb Cutshall, Natalie Austin, Stacey Liberatore, Mike Hice, Felipe Arias, Andrew Dancha, Doctor Alpert, Doctor Malhi, C. Keldie, V. Capone, Lynne Gonzalez, Susan Lightbourn, Jack Zimmerly, J. Defrangesco, C. Agra, Stephen Kaminsky, C. Kephart, Byunghak Jin, Elon Mwaura, Paul Dascani, Arthur M. Santos, and Doctor Park.

[48]   The Debtors submit that they owe no indemnification obligations to Wexford or its employees in connection with the Brown District Court Action.  Therefore, the Brown District Court Action should not be stayed as to such

Claims against Wellpath, LLC (f/k/a Correct Care Solutions), Wellpath's employees Byunghak Jim, Dr. Park, Dr. Alpert, Dr. Malhi, S. Liberatore, Dr. Carl Keldie, Natalie Austin, Dr. Mathwe Miceli, Jay Cowan, Darla Cowden, and Mike Hice and over forty employees of the Pennsylvania Department of Corrections.

92.     The insurance policy relevant to the Brown District Court Actions covering the Debtor and its employees during the relevant period is the 2018-2020 Carveout Policy, described in paragraphs 21 through 22 of this Objection.  *See also* Third Supplemental Seitz Decl., ¶ 18. As the Debtors are fully responsible for all defense costs and damages for all unliquidated claims made on the 2018-2020 Carveout Policy, the Debtors' estates would bear the entire financial burden of the Brown District Court Action proceeding.  The Debtors' employees are Non-Debtor Defendants protected by the Second Stay Extension Order, and the Brown District Court Actions should remain stayed as to the Debtor and its employees.

93.     The Wolf Case should also be stayed as to the Pennsylvania Department of Corrections employees.  The Brown Movant makes the same allegations against all defendants in the Wolf Case, and most claims are related to factual allegations about the medical care provided to the Brown Movant.  Because of Wellpath's obligations under the PA DOC Contract described in paragraph 31 of this Objection, the Debtors may owe indemnification obligations to the Pennsylvania Department of Corrections employees.  Accordingly, the Wolf Case should remain stayed in its entirety, and the Brown Motion should be denied as to the Debtor, its employees, and the Pennsylvania Department of Corrections employees.[49]

---

defendants.

[49]   The Brown Movant also asserts issues with noticing.  The Debtors have addressed this concern with their claims and noticing agent and have confirmed that the Brown Movant is receiving service in these chapter 11 cases.

### W.    The Remaining Relief in the Herndon Motion Should Be Denied

94.     The Herndon Motion was filed on January 10, 2025.  The Herndon Movant seeks relief from the automatic stay to proceed in the United States District Court for the Western District of Arkansas, in the cases styled *Herndon v. Daniel et al.*, Case No. 6:23-cv-06122-SOH (the "Daniel Case") and *Herndon v. Wellpath, Inc. et al.*, Case No. 6:24-cv-06129-MEF (the "Wellpath Case," and together with the Daniel Case, the "Herndon District Court Actions"). In the Daniel Case, the Herndon Movant alleges constitutional violations and other claims against the Debtors' employees, Thomas Daniel, Crystal McCoy, and Nanette Vowell, as well as Arkansas Department of Corrections' employees, Warden Jared Byers, Lieutenant Rondoni, Lieutenant Walter, and Corporal Joshua Babineaux.  In the Wellpath Case, the Herndon Movant asserts various claims related to medical treatment he received against Wellpath, Inc.,[50] Wellpath's employees Crystal McCoy, and Nanette Vowell,[51] Arkansas Department of Corrections' employee, Corporal Scroggins, and Terra Patrom and Abigail Fryar of Arkansas Spinal Cord.[52]

95.     The insurance policy relevant to the Daniel Case covering the Debtors' employees are the 2023-2024 Insurance Policies described in the First Omnibus Objection.  *See* First Omnibus Obj., ¶¶ 29–32; Seitz Decl., ¶ 23.  As the Debtors fully retain the risk with respect to such claims under the 2023-2024 Fronting Policy, the 2023-2024 Buffer SIR, and the 2023-2024 Captive Policy, the Debtors are responsible for damages and defense costs until reaching the required $15 million SIR.

96.     The insurance policies covering the Debtors' employees relevant to the Wellpath

---

[50]   Upon information and belief, the Debtors submit that the proper party is Wellpath, LLC.

[51]   The Herndon Movant also named "CNA Harris."  Without a first name, the Debtors are unable to identify such defendant or his or her relationship to the Debtors.

[52]   The Debtors submit they owe no indemnification obligations to Arkansas Spinal Cord or its employees in connection with the Wellpath Case.  Therefore, the Wellpath Case should not be stayed as to such defendants.

Case are the 2022-2023 Insurance Policies described in the First Omnibus Objection.  *See* First Omnibus Obj., ¶¶ 25–28; Seitz Decl., ¶ 20–21.  As the Debtors fully retain the risk with respect to such claims under the 2022-2023 Fronting Policy and the 2022-2023 SIR Buffer, the Debtors are responsible for damages and defense costs until reaching the required $8 million SIR.  As a result, the Debtors' employees named in the Herndon District Court Actions are Non-Debtor Defendants protected by the Second Stay Extension Order, and the Herndon Motion should be denied as to the Debtors' employees.

97.    The Herndon District Court Actions should also be stayed as to the Arkansas Department of Corrections' employees.  The Herndon Movant makes allegations related to medical care against all defendants in both cases, and such claims rely on similar factual allegations that are therefore difficult to sever between defendants.  Because of Wellpath's obligations under the Arkansas DOC Contract described in paragraph 81 of this Objection, the Debtors may owe indemnification obligations to the Arkansas Department of Corrections' employees.  Accordingly, the Daniel Case should remain stayed in its entirety, the Wellpath Case should remain stayed as to the Debtor, its employees, and the Arkansas Department of Corrections' employees.  The Herndon Motion should be denied as to the Debtors, its employees, and the Arkansas Department of Corrections' employees.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, for the foregoing reasons, the Debtors respectfully request that this Court deny the Lift Stay Motions as to the Debtors and various Non-Debtor Defendants identified herein and grant such other and further relief as this Court deems just and proper.

Dated:  February 11, 2025
Dallas, Texas

/s/ Marcus A. Helt
Marcus A. Helt (Texas Bar #24052187)
MCDERMOTT WILL & EMERY LLP
2501 N. Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone:      (214) 295-8000
Facsimile:       (972) 232-3098
Email:             mhelt@mwe.com

-and-

Felicia Gerber Perlman (admitted *pro hac vice*)
Bradley Thomas Giordano (admitted *pro hac vice*)
James Kapp (admitted *pro hac vice*)
Jake Jumbeck (admitted *pro hac vice*)
Carole Wurzelbacher (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone:      (312) 372-2000
Facsimile:       (312) 984-7700
Email:             fperlman@mwe.com
                       bgiordano@mwe.com
                       jkapp@mwe.com
                       jjumbeck@mwe.com
                       cwurzelbacher@mwe.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that, on February 11, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<u>*/s/ Marcus A. Helt*</u>
Marcus A. Helt