## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Debtors. | (Jointly Administered) |

### DEBTORS' MOTION FOR ENTRY
### OF AN ORDER (I) FURTHER EXTENDING THE AUTOMATIC STAY TO
### THE NON-DEBTOR DEFENDANTS AND (II) GRANTING RELATED RELIEF

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on April 30, 2025, at 8:30 a.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Pérez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Pérez's homepage. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Pérez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of the Debtors (as defined below) in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

In support of this motion (this "Motion"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") rely on the *Declaration of Timothy J. Dragelin as Chief Restructuring Officer and Chief Financial Officer of Wellpath Holdings, Inc. and Certain of its Affiliates and Subsidiaries in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 20] (the "First Day Declaration"); the *Declaration of James Seitz as Director of Insurance of Wellpath Holdings, Inc. and Certain of its Affiliates and Subsidiaries in Support of the Debtors' Omnibus Objections to Motions for Relief from the Automatic Stay and Stay Enforcement Motion* [Docket No. 828] (the "Seitz Declaration"); the *Supplemental Declaration of James Seitz as Director of Insurance of Wellpath Holdings, Inc. and Certain of Its Affiliates and Subsidiaries in Support of the Debtors' Stay Extension Reply* [Docket No. 898] (the "First Supplemental Seitz Declaration"); the *Second Supplemental Declaration of James Seitz as Director of Insurance of Wellpath Holdings, Inc. and Certain of Its Affiliates and Subsidiaries in Support of the Debtors' Omnibus Objections to Motions for Relief from the Automatic Stay and Stay Enforcement Motion* [Docket No. 912] (the "Second Supplemental Seitz Declaration"); the *Third Supplemental Declaration of James Seitz as Director of Insurance of Wellpath Holdings, Inc. and Certain of Its Affiliates and Subsidiaries in Support of the Debtors' Second Omnibus Objection to Motions for Relief from the Automatic Stay and Stay Enforcement Motion* [Docket No. 1337] (the "Third Supplemental Seitz Declaration," and together with the First Supplemental Seitz Declaration, the Second Supplemental Seitz Declaration, and the Third Supplemental Seitz Declaration, the "Seitz Declarations")[2] and state as follows:

---

[2] The insurance descriptions set forth in the Seitz Declarations are incorporated herein by reference. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Seitz Declarations, the *Debtors' Omnibus Reply in Support of Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 897] (the "Stay Extension Reply"); the *Debtors' Omnibus Objection to Motions for Relief from the Automatic Stay* [Docket No. 827] (the "First Omnibus Objection"), the *Debtors' Second Omnibus Objection to Motions for Relief from the Automatic Stay* [Docket No. 1336] (the "Second Omnibus Objection"), or the *Debtors' Third*

**Preliminary Statement**

1. Over the last four months, the Debtors' ability to administer these chapter 11 cases in an efficient, timely, and successful manner has relied in no small part upon the "breathing spell" from prepetition litigation against the Debtors and Non-Debtor Defendants[3] in the Lawsuits.[4] Such breathing spell was provided, in part, by the Court's various orders and stipulated orders[5] extending the automatic stay, including the Final Stay Extension Order and the Final PC Order (each as defined herein). The automatic stay set forth in section 362 of the Bankruptcy Code has operated just as Congress intended, providing the Debtors the time and space necessary to negotiate a plan of reorganization, while also protecting (i) creditors from the proverbial "race to the courthouse" by similarly situated claimants and (ii) the Debtors' estates from incurring unnecessary expenses associated with such litigation.

2. The Debtors are at a critical juncture in these chapter 11 cases. The confirmation hearing with respect to the Debtors' proposed plan of reorganization is scheduled for April 30, 2025. The Debtors are hopeful that consummation of such plan will occur shortly

---

*Omnibus Objection to Motions for Relief from the Automatic Stay* [Docket No. 1746] (the "Third Omnibus Objection"), as applicable.

[3] "Non-Debtor Defendants" shall mean any non-Debtor party to a lawsuit wherein (a) the non-Debtor defendant is a beneficiary of an insurance policy of the Debtors and such insurance policy may be responsible for satisfaction of the underlying claim(s), (b) the non-Debtor defendant is the beneficiary of a contractual right of indemnification pursuant to an agreement that the Debtors may assume, (c) there is such an identity of interest that the adjudication of a claim against a non-Debtor defendant may impact the adjudication of a claim against a Debtor, and (d) litigation against such non-Debtor would interfere with the Debtors' restructuring efforts, and shall include specifically, without limitation, (i) the Debtors' current and former employees, (ii) the Professional Corporations and their current and former employees, (iii) H.I.G. Capital L.L.C. or its directors, officers, or current or former employees, (iv) the Debtors' officers and directors, and (v) current customers and clients of the Debtors that have contractual rights to indemnification obligations.

[4] "Lawsuits" shall mean any lawsuit against the Debtors and any lawsuit against a Non-Debtor Defendant, regardless if a Debtor is a named party in the lawsuit, that may have a direct impact, whether monetary or otherwise, on the Debtors' estates, including without limitation lawsuits that assert claims where an insurance policy under which the Debtor is a beneficiary may be responsible for the satisfaction of the underlying claim(s).

[5] A complete list of the stipulated and amended orders impacted by this Motion and the relief sought herein is set forth in the form of order attached hereto (collectively, the "Agreed Orders").

thereafter. As a result, the Debtors' efforts are focused on the solicitation, confirmation and the subsequent consummation of the plan and attempting to achieve a consensual resolution with respect to plan confirmation. By this Motion, the Debtors seek to continue to rely upon the contemplated breathing spell for an additional limited period of time in order to accomplish such goals.

3. In order to achieve a consensual solicitation schedule with other interested parties (including the Committee and the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee")),[6] and as previously communicated to this Court, the Debtors' original timeline has been slightly adjusted. Originally, the Debtors contemplated that plan confirmation would occur in March 2025, with the plan's effective date occurring shortly thereafter. As a result, the various stay orders entered by this Court, including the Final Stay Extension Order, the Final PC Order and the Agreed Orders, were based on such timeline. In particular, such orders provide that the automatic stay is extended to Non-Debtor Defendants until the earlier of: (a) the effective date of a confirmed chapter 11 plan, (b) dismissal of the chapter 11 cases of the Debtors, (c) conversion of these cases to chapter 7 of the Bankruptcy Code, or (d) April 30, 2025.

4. By this Motion, the Debtors request a one-month extension of the automatic stay to the Non-Debtor Defendants, until the earlier of: (a) the effective date of a confirmed chapter 11 plan, (b) dismissal of the chapter 11 cases of the Debtors, (c) conversion of these cases to chapter 7 of the Bankruptcy Code, or (d) May 31, 2025. Although the timeline has extended slightly, the justifications and necessity for extension of the stay to the Non-Debtor Defendants remains the same. As this Court has recognized, the Debtors have established an identify of interests with the Non-Debtor Defendants, warranting an extension of the automatic stay to such parties. The

---

[6] *See* Docket No. 1867.

4

Debtors have made this showing with respect to all categories of Non-Debtor Defendants and in connection with dozens of individual cases brought before this Court. Whether due to the Debtors' indemnification obligations, insurance obligations, or both, any judgment against a Non-Debtor Defendant constitutes a judgment against the Debtor.

5.  Terminating the breathing spell afforded by the automatic stay at this stage in the chapter 11 cases will force the Debtors to fund litigation defense costs and pay out individual tort claims, costs that would otherwise never be incurred by the Debtors during these chapter 11 cases, by extending the automatic stay. Moreover, termination of the stay extension will distract the Debtors' management, employees, and in-house legal team from crucial restructuring tasks, deplete the Debtors' scarce resources, and hinder the Debtors' ability to maximize value pursuant to solicitation and implementation of their plan of reorganization. Such an outcome would negatively impact the recovery of all stakeholders in these chapter 11 cases, including similarly situated unsecured creditors. By contrast, any prejudice to the plaintiffs in continuing the stay of the Lawsuits by an additional month would be minimal—particularly in light of the fact that such breathing spell will have only been in place for a little over five months by the end of April. At most, the Debtors are only seeking an additional thirty days, and, indeed, the Debtors are hopeful that the plan's effective date will occur well before such time.

6.  For these reasons, and the reasons set forth herein, the Debtors submit that the Court should grant this Motion on a final basis.

## Relief Requested

7.  By this Motion, and pursuant to section 362(a) of the Bankruptcy Code, the Debtors seek entry of an order, substantially in the form annexed hereto (the "Order"), further extending the application of the automatic stay to the Non-Debtor Defendants in the Lawsuits, until the earlier of: (a) the effective date of a confirmed chapter 11 plan, (b) dismissal of the chapter 11 cases of

5

the Debtors, (c) conversion of these cases to chapter 7 of the Bankruptcy Code, or (d) May 31, 2025.

## Jurisdiction and Venue

8. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).

9. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). In addition, the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

10. Venue of these chapter 11 cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

11. On November 11, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtors initiated these chapter 11 cases with their Restructuring Support Agreement, dated as of November 11, 2024 (the "RSA"), which is attached as Exhibit B to the First Day Declaration. Section 4.01 of the RSA set forth the Milestones (as defined by the RSA) for these cases, which as of the Petition Date, contemplated a plan effective date occurring no later than March 17, 2025.

12. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11

6

cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 27] entered by the Court on November 12, 2024 in each of these chapter 11 cases.

13. On November 12, 2024, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 17] (the "Stay Extension Motion"). As set forth in the Stay Extension Motion, approximately 1,500 lawsuits and pre-suit demands were outstanding against the Debtors and various non-debtor defendants as of the Petition Date, the vast majority of which concern the quality of medical care provided to incarcerated individuals. *See* Stay Extension Motion, ¶ 1. In part, the Stay Extension Motion sought to extend the automatic stay to lawsuits involving certain Non-Debtor Defendants (as defined in the Stay Extension Motion) with a substantial identity of interest with the Debtors. *Id.* at ¶ 2.

14. On November 12, 2024, the Court entered the *Amended Interim Order Enforcing the Automatic Stay* [Docket No. 69] (the "Interim Stay Extension Order"), pursuant to which the Lawsuits were stayed in their entirety, including plaintiffs' claims against the Non-Debtor Defendants (as defined in the Stay Extension Motion) on an interim basis pursuant to section 362 of the Bankruptcy Code.

15. On November 14, 2024, the Court entered the *Amended Order (I) Authorizing the Debtors to (A) Honor and Incur Obligations to Professional Corporations and (B) Obtain New Professional Corporation Contracts, (II) Extending Statutory Protections to Professional Corporations, and (III) Granting Related Relief* [Docket No. 91] (the "PC Order").

16. On November 25, 2024, the Office of the U.S. Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code. *See Notice of Organizational Meeting of the Official Unsecured Creditors' Committee* [Docket No. 170].

17. Following the Committee's formation, the Debtors worked with the Committee and other key constituents to establish a revised, extended timeline for the marketing process of the Debtors' assets, as set forth in the *Stipulated and Agreed Amended Order (I) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving Entry Into a Stalking Horse Purchase Agreement for the Recovery Solutions Assets, (III) Authorizing the Recovery Solutions Expense Reimbursement, (IV) Authorizing Potential Section of Stalking Horse Bidders for the Corrections Assets and Approving Related Corrections Asset(s) Bid Protections, (V) Establishing Related Dates and Deadlines, (VI) Approving the Form and Manner of Notice Thereof, (VII) Approving the Assumption and Assignment Procedures, and (VIII) Granting Related Relief* [Docket No. 384] (the "<u>Amended Bidding Procedures Order</u>") entered by the Court on December 11, 2024. The Amended Bidding Procedures Order set forth a sale timeline that was extended one week from the Milestones set forth in the RSA.

18. On January 10, 2025, the Debtors filed the *Debtors' Omnibus Reply in Support of Debtors' <u>Emergency</u> Motion for Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 897] (the "<u>Stay Extension Reply</u>").

19. On January 14, 2025, the Court entered the *Stipulated and Agreed Amended Order (I) Enforcing the Automatic Stay on a Final Basis with Respect to Certain Actions, (II) Enforcing the Automatic Stay on a Final Basis with Respect to Certain Actions, (III) Extending the Automatic Stay on an Interim Basis to Certain Actions Against Non-Debtors, (IV) Setting a Final Hearing*

*for the Interim Relief Granted Herein, and (V) Granting Related Relief* [Docket No. 926] (the "Second Stay Extension Order") and the *Amended Order (I) Authorizing the Debtors to (A) Honor and Incur Obligations to Professional Corporations and (B) Obtain New Professional Corporation Contracts, (II) Extending Statutory Protections to Professional Corporations, and (III) Granting Related Relief* [Docket No. 963] (the "Amended PC Order").

20. On January 20, 2025, the Committee filed *The Statutory Unsecured Claimholders' Committee's Emergency Motion to Extend the Deadlines for (I) the Bid Procedures Order and (II) the Solicitation Procedures Motion* [Docket No. 1024], seeking an additional 24-day sale extension and 51-day extension of the case timeline contemplated by the Amended Bidding Procedures Order.

21. On February 19, 2025, the Court entered the *Amended Order (I) Authorizing the Debtors to (A) Honor and Incur Obligations to Professional Corporations and (B) Obtain New Professional Corporation Contracts, (II) Extending Statutory Protections to Professional Corporations, and (III) Granting Related Relief* [Docket No. 1473] (the "Final PC Order").

22. On February 20, 2025, the Court entered the *Amended Final Order (I) Enforcing the Automatic Stay to Non-Debtor Defendants, and (II) Granting Related Relief* [Docket No. 1480] (the "Final Stay Extension Order"), pursuant to which the Lawsuits were stayed as to Non-Debtor Defendants until the earlier of:  (a) the effective date of a confirmed chapter 11 plan; (b) dismissal of the chapter 11 cases of the Debtors; or (c) April 30, 2025.

23. After continued negotiations between the Debtors and their key constituents, the parties agreed to a further revised solicitation and confirmation deadline.  On March 18, 2025, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement on a Conditional Basis, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the*

*Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 1867] (the "<u>Disclosure Statement Order</u>"), which set forth the amended case timeline for these cases, including a contemplated plan confirmation hearing date of April 30, 2025. The case timeline set forth in the Disclosure Statement order extended these cases by approximately two months from the timeline initially set forth in the RSA.

**Basis For Relief**

24. A limited extension of the automatic stay to Non-Debtor Defendants in the Lawsuits is warranted for all the reasons set forth in the Stay Extension Motion and the Stay Extension Reply, which are incorporated herein by reference.

**I.    As the Requested Extended Timing is Comfortably in the Parameters of a Standard Breathing Spell Afforded by the Automatic Stay, the Court Should Continue to Enforce and Extend the Automatic Stay as to Non-Debtor Defendants in the Lawsuits.**

25. The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (quoting H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296); *Halo Wireless, Inc. v. Alenco Commc'ns, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012) (same). "The purpose of the automatic stay" is to "give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the Debtor's assets." *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986) (citations omitted); *In re Cowin*, 864 F.3d 344, 352 (5th Cir. 2017) (same).

26. The automatic stay protects estate assets by automatically staying any action "to recover a claim against the debtor." 11 U.S.C. § 362(a)(1), (3); *see A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) (finding that section 362(a)(3) of the Bankruptcy Code "directs stays of any action, *whether against the debtor or third-parties*, to obtain possession or to exercise

10

control over property of the debtor") (emphasis in original). The automatic stay is generally intended to remain in place until the earlier of case closure or dismissal. 11 U.S.C. § 362(c)(2). Accordingly, there is ample precedent in this District to support the debtors' breathing spell and extension of the automatic stay beyond the six months requested by this Motion. *See e.g.*, *Zachry Holdings, Inc., et al.*, Case No. 24-90377 (MI) (over one year); *Party City Holdco Inc. et al.*, Case No. 23-90005 (MI) (9 months); *Soft Surroundings Holdings, LLC, et al.*, Case No. 23-90769 (CML) (6.5 months); *Robertshaw US Holding Corp., et al.*, Case No. 24-90052 (CML) (7.5 months); *In re Talen Energy Supple, LLC, et al.*, Case No. 22-90054 (MI) (over one year); *In re Red River Waste Solutions, LLP*, Case No. 21-42423 (ELM) (11 months); *In re GVS Texas Holdings I, LLC, et al.*, Case No. 21-31121 (MVL) (9 months); *In re 1917 Heights Hospital, LLC*, Case No. 21-31811 (ER) (over one year); *In re Seadrill Limited, et al.*, Case No. 21-30427 (DRJ) (over one year); *In re Brazos Electric Power Cooperative Inc., et al.*, Case No. 21-30725 (DJR) (21 months).

27. The Debtors have clearly established that the claims against the Non-Debtor Defendants are attempts to "recover a claim against the debtor" because "the liability of the nonbankrupt is not independent of the debtor's liability and a judgment against the nonbankrupt will be binding upon the debtor's estate." *S.I. Acquisition*, 817 F.2d at 1148 (recognizing that "where the debtor and the nonbankrupt party can be considered one entity or as having a unitary interest, a section 362(a)(1) stay may suspend an action against a nonbankrupt codefendant"). As described in the Seitz Declarations, the Debtors' employees, the Professional Corporations, and the Professional Corporations' employees are named insureds under the Debtors' insurance policies. *See e.g.*, Seitz Decl., ¶ 6. The Debtors first layers of general liability and professional liability insurance policies, the "fronting policies," establish no true risk transfer. *Id.* Additionally,

11

the Debtors' insurance policies are subject to burdensome self-insured retentions of up to $15 million per claim. *See e.g.,* Seitz Decl., Ex. A. As the underlying insurance policies require the Debtors to incur the initial damage and defense costs for every claim, failure to apply the automatic stay to the Non-Debtor Defendants in the Lawsuits would result in a significant expenditure of estate assets. *Id.* Therefore, these actions against the Non-Debtor Defendants should remain stayed for the requested additional time period.

## II. The Court Should Grant the Limited Extension of the Automatic Stay to the Non-Debtor Defendants.

28. The Debtors have clearly met their burden to establish an identity of interest between the Debtors and the Non-Debtor Defendants, and the extension of the automatic stay for (at most) an additional month is warranted. *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir.2003) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986)) (noting that extension of the automatic stay to a non-debtor party is warranted where a contract imposes joint liability between a non-debtor party and debtor, and thus an identity of interests exists); *see also Fed. Life Ins. Co. (Mut.) v. First Fin. Grp., Inc.*, 3 B.R. 375, 376 77 (S.D. Tex. 1980) (extending the automatic stay to non-debtor parties where allegations against non-debtor parties and debtors arose from the same factual and legal basis); *see also In re Envision Healthcare Corporation*, Case No. 23-90342 (CML) (Bankr. S.D. Tex. May 15, 2023) [Docket No. 106] (extending the automatic stay to non-debtor parties to whom the Debtors owe indemnity obligations).

29. Extension of the automatic stay to non-debtors is warranted where an absence of such extension "could interfere with the reorganization of the debtor" or "would frustrate the statutory scheme of chapter 11 or diminish the debtor's ability to formulate a plan of reorganization." *In re W.R. Grace & Co.*, 115 F. App'x 565, 570 (3rd Cir. 2004) (quoting *A.H.*

12

*Robins*, 828 F.2d at 1025 and *In re Johns-Manville*, 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983)); *In re McConathy*, 2021 Bankr. LEXIS 1569, at *10 (Bankr. W.D. La. June 14, 2021) ("It is widely recognized that actions involving non-debtors that would have an 'adverse impact' upon the property of the estate are subject to the automatic stay under § 362(a)(3) [of the Bankruptcy Code].").

30. Here, nothing about the limited extensions to the Debtors' confirmation timeline has changed the fact that the Debtors share an identity of interests with the Non-Debtor Defendants due to indemnification obligations, such that "a judgment against one would in effect be a judgment against the other." *Reliant Energy Servs.*, 349 F.3d at 816 (quoting *A.H. Robins*, 788 F.2d at 999).

### A. The Debtors and the Non-Debtor Defendants Share an Identity of Interests.

31. As this Court has already established, the Debtors have met the Fifth Circuit's standard for extension of the automatic stay. A shared identity of interests exists between non-debtor parties and the debtor where "allegations raised against co-defendants are 'inextricably interwoven' with claims against the debtor, such that severance of the claims would be inappropriate." *Gigi's Cupcakes, LLC v. 4 Box LLC*, No. 3:17-CV-3009-B, 2019 WL 1767003, at *3 (N.D. Tex. Apr. 22, 2019) (internal citation omitted); *see Fed. Life*, 3 B.R. at 376-77 ("[T]he Court is persuaded that the automatic stay applies to judicial proceedings against a debtor in bankruptcy and its codefendants when, as here, the allegations against them arise from the same factual and legal basis.").[7] Indeed, as this Court has seen on review of various lift stay motions,

---

[7] *See also In re W.R. Grace & Co.*, 386 B.R. 17, 32 (Bankr. D. Del 2008) (granting stay as to non-debtor defendants where the overlap of issues in the two proceedings would "duplicate expenses and unnecessarily divert if not deplete the resources and assets of the estate"); *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510–11 (3d Cir. 1997) (enjoining an action against non-debtor where the debtor "was, in essence, the real party in interest") (collecting cases); *In re Ionosphere Clubs Inc.*, 124 B.R. 635, 642 (S.D.N.Y. 1991) (lawsuit against co-defendants

13

the allegations in the Lawsuits against the Debtors are largely "inextricably interwoven" with the allegations against the Non-Debtor Defendants, whether due to claims of vicarious liability or overlapping factual allegations. It is, therefore, imperative to continue to stay the Lawsuits; otherwise, the Debtors will be required to pay defense costs and maintain a role in the Lawsuits or risk facing collateral estoppel and *res judicata* concerns.

### B. The Debtors and the Non-Debtor Defendants Share an Identity of Interests Through Indemnification Obligations.

32. The Debtors' indemnification obligations to the Professional Corporations and their current customers establish a shared identity of interests. Where a debtor is contractually obligated to indemnify a non-debtor party, "a judgment against one would in effect be a judgment against the other." *Nat'l Oilwell Varco, L.P. v. Mud King Prods., Inc.*, 2013 WL 1948766, at *2, *6 (S.D. Tex. May 9, 2013); *Am. Honda Fin. Corp. v. Salyer*, 2007 WL 1158114, at *3 (S.D. Miss. Apr. 18, 2007) ("Fifth Circuit precedent . . . allows a court to extend the automatic stay . . . by applying the 'identity of interest' exception in cases in which a contractual indemnification agreement exists between a debtor and non-debtor defendant."); *Gigi's Cupcakes*, 2019 WL 1767003, at *1 (same). Indeed, the stay extension to non-debtors is warranted where such non-debtor "**might** seek indemnification from [the debtor] for any damages it had to pay, thus implicating the debtor's property." *See In re A.H. Robins Co. Inc.*, 828 F.2d 1023, 1025 (4th Cir. 1987); *see also In re LTL MANAGEMENT, LLC*, 638 B.R. 291, 312 (Bankr. D.N.J. 2022) ("The Fourth Circuit's use of the word "might" suggests that conditional indemnification is sufficient to trigger extension of automatic stay).

---

would involve, burden, and directly affect debtor, and would likely prejudice debtor's future defense of identical claims based upon identical fact).

14

33.     Here, as detailed in the Stay Extension Motion, the Stay Extension Reply, the First Omnibus Objection, the Second Omnibus Objection, and the Third Omnibus Objection, the Debtors are obligated to broadly indemnify the Professional Corporations and their current and former employees, H.I.G. Capital L.L.C. and its directors, officers, or current or former employees, and current customers and clients of the Debtors. The foregoing indemnification obligations effectively render the Debtors the primary defendant in these disputes. Thus, a judgment against any of the Non-Debtor Defendants essentially represents a judgment against the Debtors. Accordingly, extending the automatic stay in this limited circumstance is appropriate in light of the Debtors' indemnification obligations.

### C.     Continuation of the Lawsuits Would Burden the Estates and Key Personnel at a Pivotal Moment in the Chapter 11 Cases.

34.     Opening the floodgates to the continuation of the Lawsuits would force key employees of the Debtors, including the Debtors' in-house legal team, to become involved in the day-to-day management of the Lawsuits, thereby diverting attention from the plan solicitation and confirmation process, all to the detriment of all parties in interest in these chapter 11 cases, including unsecured tort claimants. In the final month of these chapter 11 cases, the Debtors' key personnel need to focus on the solicitation, confirmation, and consummation of the Debtors' plan of reorganization. This further justifies extending the automatic stay. *See, e.g., In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 614 (E.D. Pa. 2009) (holding that refusal to extend the stay to non-debtor parties would divert "the time and energy of key personnel from the reorganization effort at a critical time in the formulation of the plan"); *Calpin Corp. v. Nev. Power Co.*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006) (extending stay where liability of non-debtor was contingent on liability of debtor, debtor risked being subject to collateral estoppel, debtor was required to

indemnify non-debtor defendant, and continuance of cases would distract key personnel from debtor's reorganization efforts).

**Reservation of Rights**

35. Nothing contained herein or any actions taken pursuant to the relief requested in this Motion is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

**Notice**

36. Notice of this Motion will be provided to the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lenders; (d) counsel to the Ad Hoc Group; (e) counsel to the Prepetition First Lien

Administrative Agent; (f) counsel to the Prepetition Second Lien Administrative Agent; (g) all claimants or, where applicable, counsel to the plaintiffs in the Lawsuits; (h) the Office of the United States Attorney for the Southern District of Texas; (i) the state attorneys general for states in which the Debtors conduct business; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; and (l) any party identified in section E of the Procedures for Complex Cases in the Southern District of Texas (collectively, the "Notice Parties").  A copy of this Motion and the orders approving it will also be made available on the Debtors' case information website located at https://dm.epiq11.com/Wellpath.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: April 1, 2025
Dallas, Texas

/s/ Marcus A. Helt

Marcus A. Helt (Texas Bar #24052187)
MCDERMOTT WILL & EMERY LLP
2501 N. Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone:   (214) 295-8000
Facsimile:   (972) 232-3098
Email:       mhelt@mwe.com

-and-

Felicia Gerber Perlman (admitted *pro hac vice*)
Bradley Thomas Giordano (admitted *pro hac vice*)
James W. Kapp III (admitted *pro hac vice*)
Catherine Lee (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone:   (312) 372-2000
Facsimile:   (312) 984-7700
Email:       fperlman@mwe.com
             bgiordano@mwe.com
             jkapp@mwe.com
             clee@mwe.com

*Counsel to the Debtors and Debtors in Possession*

## Certificate of Service

I certify that, on April 1, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Marcus A. Helt
Marcus A. Helt