IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Post-Restructuring Debtors. | (Jointly Administered) |

**SHANNON PLAINTIFFS' (A) OBJECTION TO PROPOSED FORM ORDER REGARDING LIFT STAY MOTIONS AND (B) REQUEST FOR HEARING**

The plaintiffs indicated in ECF No. 2746-1 (the "Shannon Plaintiffs") hereby object to the entry of the *Proposed Form Order Regarding Lift Stay Motions* [ECF No. 2853] (the "May 23 Proposed Order") as follows:

**BACKGROUND & PRELIMINARY STATEMENT**

1. The May 23 Proposed Order contains the kind of errors that motivated the *Shannon Plaintiffs' Statement Regarding Lift Stay Motions Set for May 20, 2025* [ECF No. 2762] (the "Shannon Plaintiffs' Statement"). Although there was no disagreement to the Shannon Plaintiffs' position raised by counsel for the Post-Restructuring Debtors or the Liquidation Trust at the hearing on May 20, 2025 (the "May 20 Hearing")—other than the correct party to be indicated as the nominal defendant—the May 23 Proposed Order is contrary to that position as well as the *Draft Proposed Notice of Termination of the Automatic Stay* [ECF No. 2750] (the "Draft Stay Termination Notice"), the statements of counsel at the May 20 Hearing, and the position positions maintained by the Debtors and Official Committee of Unsecured Creditors (the "Committee")

---

[1] A complete list of the Post-Restructuring Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

throughout the confirmation process. This outcome is not required by the confirmed plan of reorganization (the "Plan") or Trust Distribution Procedures and should be rejected by the Court. The May 23 Proposed Order will either misinform personal injury or wrongful death claimants of their rights or require a continued stream of motions for clarification.

        **A.    The May 23 Proposed Oder fails to clarify that liability of the Debtors can be established to recover claims against Non-Debtor Defendants.**

    2.    As described in the Shannon Plaintiffs' Statement, personal injury and wrongful death plaintiffs who opted out of the third-party releases can proceed to determine liability of the Debtors on a nominal basis under the terms of the confirmed Plan and section 524 of title 11 of the United States Code (the "Bankruptcy Code"). That position was not challenged at the May 20 Hearing, was reiterated in connection with various of the lift stay motions heard that day, and is required under applicable law.

    3.    The Plan does not contain an injunction that goes beyond that established by Bankruptcy Code § 524 with respect to parties that opted out of the third-party releases. Article IX.F of the Plan implements the plan injunction. It expressly provides, that "for the avoidance of doubt, this Article IX.F shall not apply to parties that timely opt out of the Third-Party Release to preserve their claims against the Released Parties." The entire injunction does not apply to parties that opt out of the releases.[2] This was a negotiated *feature* of the Plan.

    4.    Absent a supplemental plan injunction, the provisions of the Bankruptcy Code dictate the scope of the discharge injunction. Bankruptcy Code § 524(a)(2) only enjoins "commencement or continuation of an action . . . to collect, recover or offset any such debt as a

---

[2]    The Trust seemingly takes the position that that the limitation of Article IX.F only applies to Non-Debtor Defendants. But that is inconsistent with the grammar of the provision. The restrictive clause "that timely opt out of the Third-Party Release to preserve their claims against the Released Parties" modifies the "parties" to which "Article IX.F shall not apply."

2

personal liability of the debtor[.]" (emphasis supplied). Bankruptcy Code § 524 *does not* prevent a creditor from proceeding against a discharged debtor to determine the debtor's liability as a step to recover against a non-debtor. *See, e.g.*, 11 U.S.C. § 524(e); *Chapman v. Bituminous Ins. Co. (In re Coho Res., Inc.)*, 345 F.3d 338, 342 (5th Cir. 2003) (addressing insurance and indemnity); *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 54 (5th Cir. 1993) (addressing insurance). As asserted in the Shannon Plaintiffs' Statement, plaintiffs here may proceed against the Debtors on a nominal basis to determine their liability as a step to recover against non-debtors that have not been released.

5.  Neither the Post-Restructuring Debtors, the Trust, nor any other party disputed the Shannon Plaintiffs' position at the May 20 Hearing.[3] The only point of contention was whether the Debtors or the Trust was the appropriate nominal defendant.[4] The May 23 Proposed Order should clarify the issue for the large number of personal injury and wrongful death claimants in order to avoid unnecessary hearings in these cases going forward. The principal point of the detailed form order was to promote efficiency.

### B. The May 23 Proposed Order improperly requires the conclusion of the "non-binding dispute resolution process" prior to liquidation of the claim through existing civil litigation.

6.  Paragraph 4 of the May 23 Proposed Order indicates that holders personal injury tort or wrongful death claims must exhaust the "non-binding alternative dispute resolution process" prior to liquidating their claims against the Debtors in civil court. That is contrary to what was indicated in the Draft Stay Termination Notice, asserted in connection with the lift stay

---

[3] Indeed, counsel for the Post-Restructuring Debtors indicated "complete agreement" with the substance of the Shannon Plaintiffs' Statement.

[4] The Post-Restructuring Debtors are likely correct that the Liquidating Trust (or insurer, if applicable) should be added as a nominal defendant with the Debtors remaining as a named party with no potential for liability or other need for involvement.

3

motions at the May 20 Hearing, and maintained by the Debtors and Committee throughout the confirmation process. Nor is it what the Plan or Trust Distribution Procedures provide. The Court should not enter an incorrect order that will prejudice the relevant parties and cause either confusion or unnecessary post-confirmation expense.

7. The Draft Stay Termination Notice indicated something different than the May 23 Proposed Order. It provided notice that:

> [P]ursuant to the Article IV.J of the Trust Distribution Procedures attached as Exhibit I-3 [Docket No. 2555], Holders of General Unsecured Claims may either (i) participate in the Liquidating Trust's non-binding alternative dispute resolution process to determine the allowed amount for the claim or (ii) proceed in the appropriate civil court and litigate such claim with the Liquidating Trust included as a nominal defendant.

The Notice Draft Stay Termination Notice correctly indicated—at least with respect to claims proceeding under 28 U.S.C. § 157(b)(5)—that the Trust's non-binding dispute resolution process was optional. That position was unchallenged by any party at the status conference at the May 20 Hearing where a single form order was discussed.

8. That same position was argued, presented, and accepted at the May 20 Hearing with respect to the lift stay matters. The Wilhite stay motion [ECF No. 1971] is illustrative. As counsel to the Post-Restructuring Debtors described to the Court:

> As to the Debtors themselves, as of May 9th the Plan went effective. The Debtors have been discharged and should be treated in accordance with the Plan. In particular, holders of unsecured claims may participate in either the Liquidating Trust non-binding alternative dispute resolution process to liquidate their claim or they can proceed with their underlying litigation. Regardless, there is nothing preventing that from going forward ***at this time***, and therefore, we believe that the motion should be terminated . . . .

(Audio of May 20 Hearing at 0:21:20-0:23:25 [ECF No. 2779] (emphasis supplied)). The Court called the matter the "quintessential example" of the order discussed at the status conference at the

4

beginning of the May 20 Hearing in which the litigation against the Debtors could continue nominally. *Id.* at 0:22:40-0:23:12. Indeed, other similarly situated pending lift stay motions were addressed by reference to the Wilhite stay motion. *See id.* at 1:05:00-1:05:15. Somehow, that got lost in the proposed order after the hearing supposedly reflected in the May 23 Proposed Order.

9. The positions indicated in the Draft Stay Termination Notice and asserted the May 20 Hearing were consistent with the positions maintained by the Debtors and Committee throughout the confirmation process. The issue came up for the first time at the February 18, 2025, hearing on the disclosure statement. The Court indicated that its understanding was that personal injury claims would go back to the court in which they were proceeding, and the Debtors agreed. (Feb. 18, 2025, Hrg. Tr. 138:3-139:8).[5] At the confirmation hearing, in response to a question from the Court, counsel for both the Debtors and the Committee expressly confirmed that personal injury and wrongful death claims could proceed in the existing courts and that the Trust Distribution Procedures were merely an option for such claimants. (Audio of April 30, 2025, Hrg. at 1:26:10-1:31:00 [ECF No. 2779]). Counsel to the Committee further confirmed that "at all moments" personal injury and wrongful death claimants could proceed in appropriate civil courts to liquidate their claims. *Id.* at 1:47:32-1:48:10. It was only *after* these representations at the confirmation hearing that the Shannon Plaintiffs announced their support for confirmation of Plan. *Id.* at 1:55:25-1:56:20.

10. Nothing in the Plan or Trust Distribution Procedures requires anything to the contrary to what was indicated in the Draft Stay Termination Notice, argued with respect to the stay relief motions at the May 20 Hearing, or asserted in connection with confirmation of the Plan.

---

[5] The limiting language to Article IX.F was added to the predecessor versions of the Plan after this hearing and negotiations with various parties. The change addressed comments by certain of the Shannon Plaintiffs to the then-pending version of the Plan.

As set out above, the plan injunction under Article IX.F of the Plan does not apply to parties that opted out. While the Trust Distribution Procedures set out a non-binding process, nothing in the Plan or Trust Documents dictate that this process is mandatory. Indeed, Article 4.J of the Trust Distribution Procedures—pointed to by the counsel to the Committee at the April 30 confirmation hearing—provides:

> [T]o the extent a GUC Claim would be subject to 28 U.S.C. § 157(b)(5) and Claimant opposes having the Bankruptcy Court determine the allowed amount for the claim, the Claimant may proceed in the appropriate civil court and litigate such claim with the Liquidating Trust included as a nominal defendant. In such instances, the Liquidating Trust's liability will be limited to Trust Distributions pursuant to the theses [sic] procedures and any judgment obtained against the Liquidating Trust would be used to determine Claimant's Allowed Claim Amount as provided for herein.

[ECF No. 2555 at pp. 291 of 322]. That provision can and should be interpreted consistent with the statements of counsel that personal injury and wrongful death claimants may continue to liquidate claims though non-bankruptcy litigation "at all moments." There is nothing expressly contrary in the Plan or Trust Documents and the law does not imply injunctions from ambiguity. Further, to hold otherwise would give parties a free pass to file voluminous documents the night before a hearing—as with the Trust Documents here—misrepresent their effect when questioned by the Court or potential objecting parties, and change their story later when expedient. The system does not work under those circumstances.

11. Beyond the inherent importance of getting it right, accurately describing the limits of personal injury and wrongful death claimants' ability to proceed in the civil litigation is necessary to efficiently administering this case post-confirmation. The claimants need a guidepost outlining their rights to properly evaluate how to liquidate their claims and present to the trial courts. Under the May 23 Proposed Order, they will either (1) be misinformed about their rights

or (2) need to file a motion for an alternative order, leading to the same deluge of motions as with the automatic stay and its extension and attendant expense.[6] The best way to avoid that is with an order that correctly and completely describes the rights of the claimants.

## CONCLUSION

12. For the reasons set out above, the May 23 Proposed Order should be rejected by the Court. It is inconsistent with the Draft Stay Termination Notice, the representations and arguments at the May 20 Hearing, the representations and arguments throughout the plan and confirmation process, and the contents of the confirmed Plan. Moreover, it will either (a) increase the costs of administering these cases post-confirmation by inviting numerous motions for a different order or (b) avoid that outcome only at the expense of misinforming personal injury and wrongful death claimants. The Court should use an order substantially in the proposed order attached hereto.[7]

Dated: May 28, 2025

**SHANNON & LEE LLP**

/s/ *R. J. Shannon*
R. J. Shannon (State Bar No. 24108062)
2100 Travis Street, STE 1525
Houston, Texas 77002
Tel. (713) 714-5770
rshannon@shannonleellp.com

*Bankruptcy Co-Counsel to the Plaintiffs indicated in ECF No. 2746-1*

---

[6] From November 11, 2025, through March 31, 2025, the Debtors incurred $3,054,700 of attorneys' fees related to stay issues. [ECF Nos. 1888, 2081, 2377]. On information and belief, this cost would have been significantly less had the litigation had simply proceeded as it had prepetition. In the same vein, the cost in allowing litigation to continue nominally to determine the liability of the Debtors would be less than the cost of addressing a deluge of motions because none of the matters are set for trial after the now six (6) months of being stayed. Indeed, none of the cases would likely be set for trial over the next several months, even if the Trust agreed to an expedited trial.

[7] On May 21, 2025, the Shannon Plaintiffs provided a draft order substantially in the form the attached order to counsel to the Post-Restructuring Debtors and the Trust. Counsel to the Post-Restructuring Debtors indicated that the changes were acceptable, as reflected in Exhibit A. The minor changes from that draft are reflected in the redline attached as Exhibit B. Unsettlingly, the comments from the *Trust* were not sent to counsel to the Shannon Plaintiffs, and the May 23 Proposed Order was filed without informing counsel to Shannon Plaintiffs of revisions that substantially altered its effect. It was only by chance that counsel to the Shannon Plaintiffs reviewed the filings in this case on Tuesday, May 27, 2025. Typically, filings in this case are reviewed on Fridays.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service in the above-captioned case.

*/s/R. J. Shannon*
R. J. Shannon

## **CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with counsel to the Post-Restructuring Debtors and Liquidating Trust by email on May 21, 2025, and by teleconference on May 27, 2025. Notwithstanding efforts to resolve the disputes, there is no resolution as of the time of the filing of this Motion.

*/s/R. J. Shannon*
R. J. Shannon