**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Wellpath SF HoldCo, LLC,[1] | Case No. 24-90566 (ARP) |
| Post-Restructuring Debtor. | **Re: Docket No. 3387** |

**THE WELLPATH LIQUIDATING TRUST'S**
**OBJECTION TO MOTION TO CLARIFY AND**
**ENFORCE RIGHT TO PROCEED AGAINST WELLPATH AS NOMINAL**
**DEFENDANT AND OBTAIN DISCOVERY FROM DEBTOR AND NON-DEBTORS**

The Wellpath Liquidating Trust (the "Trust"), by and through counsel, hereby submits this objection (the "Objection") to the *Motion to Clarify and Enforce Right to Proceed Against Wellpath as Nominal Defendant and Obtain Discovery from Debtor and Non-Debtors* (the "Motion") [Docket No. 3387] filed by Creditors Kenneth Evans and Kenya Evans, as Independent Administrators of the Estate of Khayla J. Evans (the "Movants"), and states as follows:

**PRELIMINARY STATEMENT**

1.      The Trust's overarching purpose is to maximize recoveries to its beneficiaries, which include the holders of allowable general unsecured claims against the Debtors.  To provide maximum distributions, the Trust must preserve its limited resources and promote the value of its most significant asset: the 33.3% equity it holds in the Post-Restructuring Debtors.  The instant Motion is an example of the post-confirmation complications faced by the Trust and Post-Restructuring Debtors that threaten to significantly deplete the Trust's limited assets to the detriment of the Trust's beneficiaries, including Movants.  The Trust files this objection because

---

[1]      Wellpath SF HoldCo, LLC's mailing address is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

it believes the positions advanced by Movants are contrary to the terms of the Plan and express provisions of, and fundamental policies underpinning, the Bankruptcy Code.  The requested relief would accelerate the avalanche of nationwide lawsuits currently faced by the Trust and Post-Restructuring Debtors, and could have the tragic effect of wiping out creditor recoveries while undermining the Plan's discharge and injunction provisions.  The Trust is hopeful that in raising these issues to the Court, clarification can be provided to parties-in-interest that would reinforce the Trust Distribution Procedures and Bankruptcy Court as the centralized and cost-effective procedure for reconciling claims.

2.      Since the confirmation of the Plan, the Trust has been inundated with requests by individual personal injury and/or wrongful death claimants to become involved in litigation[2] outside of this Court, in forums across the country, in a variety of capacities, including but not limited to being added to such cases as a purportedly "nominal" defendant and/or being substituted for the one or more of the post-restructuring debtors (the "Debtors") into such cases.  Each such request sidesteps the Trust Distribution Procedures in the Plan, and requires the Trust to, among other things, retain counsel in these venues, quickly attempt to get up to speed on actions at various stages of development, and coordinate with the Post-Restructuring Debtors to attempt to obtain the necessary files and information (including attorney-client privileged or HIPAA protected information) to be able to defend or resolve such actions.  To be clear, any effort to bring in one or more of the Debtors into litigation arising from alleged pre-petition acts or omissions is an effort to bring in the Trust, even if the Trust is not expressly named, because, under the Plan, damages resulting from such acts or omissions, if proven, sound only in a potential liquidation of a

---

[2] Wellpath entities were, before the commencement of these Chapter 11 Cases, defendants in numerous actions where claimants alleged liability and sought damages for matters other than wrongful death or personal injury.  The treatment of claims arising from such litigation is different under both the Plan and the Bankruptcy Code and this objection does not speak to such claims or their holders except to the extent expressly stated otherwise.

corresponding timely-filed Chapter 11 proof of claim, and not in any payment obligation of any of the post-restructuring Debtors.

3.      These efforts have already resulted in significant time and expense borne by the Trust, which ultimately harms the creditors and claims administration process in two major ways. First, the time the Trust has been forced to devote to managing these requests and, in some instances, being asked or forced to appear in these cases on short notice negatively impacts the Trust's ability to perform its primary duties under the plan – administering the claims parties have filed in the Debtors' bankruptcy cases and moving closer to distribution of Trust assets and proceeds thereof in accordance with the Plan and Trust Documents.  Second, these and all other Trust expenses must be paid out of those same extremely limited assets and proceeds, meaning that every dollar of expense the Trust is forced to incur is a dollar less for distribution to claimants on their allowed claims.  The need to retain, coordinate and act through numerous law firms across the country in state and federal venues is a substantial strain on the Trust's current resources.

4.      The Trust seeks to engage constructively with every claimant to efficiently resolve their claims.  The Plan requires that the Liquidating Trustee "implement procedures in accordance with the Liquidating Trust Agreement to reach resolution of General Unsecured Claims and determine the Liquidating Trust's liability for such Claims".   Plan Art. IV.N.2.  In accordance with the Plan, the Trustee established the Trust Distribution Procedures which contemplate, in the first instance, an exchange of information to determine whether the Trustee and claimant can consensually resolve the claim without need for litigation or motion practice.  If a consensual resolution cannot be achieved, the claimant can determine whether to engage in the ADR process or liquidate their claim in compliance with 28 U.S.C. § 157(b)(5).  Claimants, however, cannot do as Movants desire: sidestep the Trust Distribution Procedures and the discharge and injunction in

the Plan to proceed in full blown litigation against the Debtors (or Trust) in forums across the country. Such action undermines the centralized claims administration process and threatens to undo the meaningful progress made towards substantial creditor recoveries embodied in the Plan.[3]

## BACKGROUND

5.      The Movants' Motion relates to their action pending in the United States District Court for the Northern District of Illinois, with the case caption *Evans et al. vs. Lake County, et al.*, Case No. 23-cv-04248 (the "District Court Action"). In the Motion, Movants ask the Court to (a) hold that Movants opted out of the Third-Party Release in the Plan and as a result are not enjoined from proceeding against the Debtors as nominal defendants; (b) allow Movants to proceed in the District Court Action with the Debtors as nominal defendants; and (c) order that Movants may obtain discovery from Debtors, the Trust, and any non-debtor parties relating to liability or damages in the District Court Action.

## OBJECTION

**I.      Opting Out of the Third-Party Release Does Not Effectuate an Opt Out of the Discharge and Injunction Against any Debtor**

6.      In the Motion, the Movants state that under the Plan, "certain actions" may "continue post-confirmation for the purpose of liquidating claims against the Debtors and pursuing recovery from non-debtor sources" so long as the claimant "timely opted out of the plan's third-party release" and that Movants, by opting out, "preserv[ed] their rights to proceed against Wellpath as a nominal defendant and to pursue non-debtor parties." Motion at 5. The Motion then

---

[3] The Trust does not seek any order which would prevent a person alleging bodily injury or wrongful death from continuing to proceed nominally against the Trust *for the sole and limited purposes* of obtaining access to insurance coverage, without any requirement that the Trust appear in such litigation or otherwise expend any resources in connection with such litigation, without any attempt to obtain a liquidation of, or prejudice the liquidation of, a corresponding Chapter 11 proof of claim. However, such claimant must first demonstrate that insurance coverage exists for such claim, and Movants have failed to do so here.

4

goes on to purportedly quote from Article VIII.F and VIII.I of the Plan.  However, the quoted language that Movants base their proposition on is not contained in the Plan.  Nor does the Plan provide for a similar carveout as that advanced by Movants.

7.     At their core, Movants' statements conflate the concept of a third-party release opt-out with an opt-out of the discharge against the Debtors.  While the opt-out provision provides that claimants preserve their ability to pursue claims against non-debtors, the opt out had no effect on the Debtor's discharge or the injunction enjoining such litigation from proceeding against the Post-Restructuring Debtor.  *See* Plan, Art. IX.A, IX.D and IX.F.  As explained below, it is paramount that the discharge and injunction provisions of the Plan be enforced so as to provide the Debtors' their bargained- for fresh start, and prevent a continuation of the "race to the courthouse" that would strain the Debtors' and Trust's limited resources.

## II.     The Relief Sought by the Movants is Inconsistent with the Plan and 28 U.S.C. 157(b)

8.     Movants effectively seek to move forward in the District Court Action as though the bankruptcy proceedings and the Plan do not exist – they seek to litigate against the Debtor as a fully participating defendant in the case.  Moving forward against the Debtor in this manner is inconsistent with the discharge outlined in the Plan.  As the court in *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993), the leading case on these post-discharge proceedings, explained, there is a distinction between maintaining a case post-discharge solely to seek an insurance recovery, with no cost being borne by the debtor or any associated trust, and requiring a post-discharge debtor or trust to incur significant cost defending a civil action.  *Edgeworth*, 993 F.2d at 54-55; *accord In re Tailored Brands, Inc.*, No. 20-33900, 2021 WL 2021472, at *3 (Bankr. S.D. Tex. May 20, 2021) (refusing to allow continued litigation of claims in case where discharged debtor would bear costs defending the action).  Here, as explained in the Debtor's objection, there

is no insurance policy for Movants to collect against, and therefore no purpose served by proceeding against the Debtor in a nominal capacity.  Moreover, the Debtor's have incurred and would continue to incur substantial costs in defending against the District Court Action.  Accordingly, *Edgeworth* forecloses this type of action from proceedings against the Debtor's in a nominal capacity.

9.      Nor is the solution to substitute the Trust in a nominal capacity. Doing so would not create insurance coverage where none exists.  And rather than depleting the Debtors' resources, these types of actions would deplete the trust's limited and fixed resources, while creating additional administrative hurdles by forcing the Trust to coordinate with the Debtors to obtain the necessary information (which often includes information that is attorney-client privileged or HIPAA protected) to defend such actions.

10.     In addition to the foregoing, there are procedural deficiencies with Movants' attempt to move forward against Debtors in a nominal capacity.[4]  These and other Movants' justification for attempting to pursue or liquidate claims against the Debtors in other forums is based on 28 U.S.C. § 157(b)(5).  That section does not provide a mechanism for claimants to simply continue pending matters in the court where they were pending pre-bankruptcy.  Rather, consistent with the purpose of the bankruptcy court acting as a centralized forum for claims reconciliation, it states that "[t]he district court *shall order* that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."  Thus, to the extent Movants' request to move forward with

---

[4] The attempts to move forward similarly against the Trust as outlined *infra* suffer from the same procedural deficiencies.  The Trust anticipates bringing this issue before the Court soon in the context of one or more of those pending proceedings.

CORE/3534030.0002/231341560.2

litigation against the Debtor or the Trust was not inconsistent with the Plan, it would nevertheless be inconsistent with the statute that allows such claims to be addressed in any capacity outside of the Bankruptcy Court.  Movants would need to seek such relief from the United States District Court for the Southern District of Texas (the "SDTX District Court"), and to the extent Movants believe the Illinois court rather than the bankruptcy court would be the proper venue, they must ask the SDTX District Court to make that determination in the first instance.  The Trust will evaluate such requests to the SDTX District Court on a case-by-case basis, giving due weight to the other District Court's history with the controversy, if any, efficiency, and to the convenience of the parties, and the Trust envisions that it likely will make no objection to motions to grant other District Courts the authority to liquidate personal injury

11.    The confirmed Plan and the Plan Supplement channel all General Unsecured Claims—including pre-petition personal-injury and wrongful-death actions—into the centralized claims-resolution regime established by the Trust Distribution Procedures ("TDPs"). Attempts to prosecute those Claims in the fora in which their underlying litigation was proceeding on the Chapter 11 petition date cannot proceed unless and until the TDP process has been exhausted or the ADR process contained therein has been expressly declined.  Article IV.N of the Plan provides that, on the Effective Date, "[t]he Liquidating Trustee shall implement procedures in accordance with the Liquidating Trust Agreement to reach resolution of General Unsecured Claims and determine the Liquidating Trust's liability for [General Unsecured] Claims" and further states that "[d]istributions in accordance with the Liquidating Trust Agreement, and in accordance with the [TDPs], shall be the sole source of recovery, if any, against the Debtors, their Estates, or the Post-Restructuring Debtors in respect of such General Unsecured Claims." Consistent with that requirement, the TDPs prescribe a sequential process: threshold eligibility review, valuation by

the Trustee, non-binding ADR, and—only if those steps fail—Bankruptcy Court adjudication

under Fed. R. Bankr. P. 9014, or liquidation in the appropriate district court pursuant to 28 U.S.C.

§ 157(b)(5) with the Trust named solely as a nominal defendant. Plan Supplement, Ex. 2 I.

Accordingly, the Trust respectfully requests that this Court decline to provide the relief

sought by the Movants, against the Debtor or the Trust, to confirm that Movants who seek to move

forward against any party in a nominal capacity must follow the statutory requirements for seeking

such relief, and to grant such other and further relief as this Court deems just and proper.

Dated: September 2, 2025

Respectfully submitted,

**STINSON LLP**

*/s/ Zachary Hemenway*
Nicholas Zluticky (SDTX Bar No. 3845893)
Zachary Hemenway (SDTX Bar No. 3856801)
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone:  (816) 842-8600
nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com

- and -

**PROSKAUER ROSE LLP**
Brian S. Rosen
Ehud Barak
Daniel Desatnik
Eleven Times Square
New York, New York 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
brosen@proskauer.com
ebarak@proskauer.com
ddesatnik@proskauer.com

*Counsel to the Wellpath Liquidating Trust*

CORE/3534030.0002/231341560.2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 2, 2025, the foregoing document was electronically filed with the court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF System.

*/s/ Zachary Hemenway*
Counsel to the Wellpath Liquidating Trust
